1  Nicholas O. Kennedy (State Bar No. 280504)
   nicholas.kennedy@bakermckenzie.com
2  **BAKER & McKENZIE LLP**
   1900 North Pearl Street, Suite 1500
3  Dallas, TX 75201
   Telephone: 214 978 3000
4  Facsimile: 214 978 3099

5  Barry J. Thompson (State Bar No. 150349)
   barry.thompson@bakermckenzie.com
6  **BAKER & McKENZIE LLP**
   1901 Avenue of the Stars, Suite 950
7  Los Angeles, CA 90067
   Telephone: 310 201 4728
8  Facsimile: 310 201 4721

9  Attorneys for Plaintiff
   VITALY IVANOVICH SMAGIN
10

11            UNITED STATES DISTRICT COURT

12      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

13

14  VITALY IVANOVICH SMAGIN,          | **Case No.** _____

15            Plaintiff,               | **COMPLAINT**

16        v.                           | **[CIVIL RICO LIABILITY]**

17  COMPAGNIE MONÉGASQUE DE           | **(Civil RICO Liability under 18**
    BANQUE a/k/a CMB BANK; ASHOT      | **U.S.C. §1962(c), §1962(d), and**
    YEGIAZARYAN a/k/a ASHOT           | **§1964(c))**
18  EGIAZARYAN, an individual; SUREN
    YEGIAZARYAN a/k/a SUREN
19  EGIAZARIAN, an individual; ARTEM  | **DEMAND FOR JURY TRIAL**
    YEGIAZARYAN a/k/a ARTEM
20  EGIAZARYAN, an individual;
    STEPHAN YEGIAZARYAN aka
21  STEPHAN EGIAZARYAN, an
    individual; VITALY GOGOKHIA, an
22  individual; NATALIA DOZORTSEVA,
    an individual; MURIELLE JOUNIAUX,
23  an individual; ALEXIS GASTON
    THIELEN, an individual; RATNIKOV
24  EVGENY NIKOLAEVICH, an
    individual; H. EDWARD RYALS, an
25  individual; and PRESTIGE TRUST
    COMPANY, LTD.,
26
              Defendants.
27

28

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

1.      Defendant Ashot Yegiazaryan ("Mr. Yegiazaryan") is a Russian criminal on the Interpol "Red" list, living amongst us in a luxury estate in Beverly Hills as a citizen of California. From Beverly Hills, Mr. Yegiazaryan lords over a criminal empire worth hundreds of millions of dollars; his stock in trade is real estate fraud. He is a master scammer and manipulator who operates behind the scenes and carries out large scale criminal transactions, stealing funds and assets and then using a network of nominees to cover his tracks and to hide and protect the stolen funds. His nominees—all of whom know that he is a convicted felon, subject to an international arrest warrant, and a syndicate leader—are a "white collar" army of friends, family members, business associates, lawyers, and bankers. Key among them is the one-and-only bank that Mr. Yegiazaryan approached that would take his dirty money, Defendant Compagnie Monégasque De Banque ("**CMB Bank**"), which agreed to hold, hide, and defend his money at all costs and against all comers.

2.      CMB Bank and Mr. Yegiazaryan's cast of nominees follow commands just as the minions of a drug lord or war lord would do. They lie, cheat, steal, and break the law for this criminal enterprise, with a common purpose of supporting Mr. Yegiazaryan's schemes and secreting and protecting his ill-gotten gains, which he shares with them for supporting his enterprise. At times, these conspirators even use legal means, legal instruments, and legal proceedings (e.g., trusts, shell companies, offshore enterprises, lawsuits/litigation and overseas bank accounts) for the improper purpose of stealing, hiding and protecting Mr. Yegiazaryan's ill-gotten gains; they do the requested bidding, whatever that may be, including making false claims and bringing litigations directly for the enterprise (or indirectly for its benefit), in court systems around the world with the goal of sowing confusion, creating chaos and causing delay and frustrating the collection and redress efforts of Mr. Yegiazaryan's victims.

3.      The chaos and delay they create is not random or haphazard. From his mansion in Beverly Hills, Mr. Yegiazaryan carefully choreographs the actions and

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

events of his nominees. He "pulls the strings" like an international crime boss, and the power of the enterprise is its coordination, international scope, use of seemingly legal means (but for an improper purpose), willingness to stop at nothing to defraud and collect funds and to then work together to protect the fund by whatever means are necessary, legal and illegal. This type of coordinated syndicate conduct is precisely the type of organized activity that Congress sought to combat when enacting the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Oscar v. University Students Co-Operative Assn.*, 965 F.2d 783, 786 (9th Cir.1992). Mr. Yegiazaryan and his nominees must be stopped, the RICO statute is the proper tool for doing so, and this action is the proper vehicle for making it happen.

4. Accordingly, and as described more fully herein, Plaintiff Vitaly Ivanovich Smagin files this Civil RICO action to recover more than $90 million (plus legal interest) of which he has been defrauded, denied, and kept from recovering as a result of the enterprise scheme orchestrated by convicted criminal Mr. Yegiazaryan, CMB Bank and their nominees. The enterprise in question involves, at a minimum, material assistance from the following cast of characters: CMB Bank, Mr. Yegiazaryan's family members who have each served as fronts for his fraudulent activities (Suren Yegiazaryan, Artem Yegiazaryan and Stephan Yegiazaryan); a Russian criminal accomplice who has asserted fraudulent and collusive claims to try to encumber, secret, and protect Mr. Yegiazaryan's funds (Vitaly Gogokhia); French, Russian and Luxembourger individuals who have been falsely appointed as trust administrators for the Alpha Trust to interfere with Plaintiff's collection efforts in ways that Mr. Yegiazaryan is barred by court order from doing (Natalia Dozortseva, Murielle Jouniaux, and Alexis Gaston Thielen); a registered agent company (Prestige Trust Company, Ltd.) and its U.S. lawyer agent (H. Edward Ryals) all of whom colluded with the falsely appointed trustees and CMB Bank to fraudulently mislead Courts around the world as to various legal proceedings and dispute between Plaintiff and Mr. Yegiazaryan and thereby hinder Plaintiff's judgment enforcement; and a purported

2

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

"financial manager" who is improperly using colluding with Mr. Yegiazaryan concerning Russian bankruptcy to derail and deny Plaintiff's collection efforts (Ratnikov Evgeny Nikolaevich).

5.     Plaintiff Smagin has been injured in his inability to collect this massive judgment and interest on the judgment; he has incurred millions of dollars in attorney's fees litigating actions around the world against Mr. Yegiazaryan, CMB and their nominees (including hundreds of thousands of dollars in fees for legal proceedings in the Central District of California).  Plaintiff Smagin is entitled to treble damages on these amounts and all other relief as the Court and/or jury may deem just and proper.

## PARTIES

6.     Plaintiff Vitaly Smagin ("**Plaintiff**") is an individual Russian citizen and businessman residing at Desenovskoye settlement, Novovatutinsky Prospect, 10, bldg 1 apt. 44, Moscow, Russia.  Plaintiff is the successful claimant in the arbitration before the London Court of International Arbitration against Mr. Yegiazaryan (the "**Arbitration**").  The Arbitration award was confirmed by this Court and, on March 31, 2016, the Court entered a judgment in favor of Plaintiff and against Mr. Yegiazaryan in the amount of $92,503,652 (the "**California Judgment**").  A true and correct copy of the California Judgment is attached hereto as **Exhibit 1**.

7.     Defendant Ashot Yegiazaryan a/k/a Ashot Egiazaryan ("**Mr. Yegiazaryan**" or "**Ashot Yegiazaryan**"), is an individual residing at 655 Endrino Place, Beverly Hills, California 90201.  Mr. Yegiazaryan was the respondent in the Arbitration with Plaintiff and is now a judgment debtor pursuant to this Court's California Judgment as a result of Plaintiff's successful petition to confirm that arbitral award in this Court.  Mr. Yegiazaryan was also criminally convicted in Russia in 2018 for his fraud against Plaintiff and is currently living in the United States as a fugitive of Russia.

8.     Defendant Suren Yegiazaryan a/k/a Suren Egiazarian ("**Suren**"), is an individual residing at 1915 Carla Ridge, Beverly Hills, California 90201.  Suren is the

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

cousin of Ashot Yegiazaryan. Suren is also the nominal owner of Clear Voice, Inc., a Nevada corporation. Among other things, Suren acts as Mr. Yegiazaryan's "check book." He accesses and holds the ill-gotten funds from the enterprise for Mr. Yegiazaryan to keep Mr. Yegiazaryan at arms-length from the dirty money. On information and belief, he is being compensated by Mr. Yegiazaryan to do these things for the criminal enterprise run by Mr. Yegiazaryan.

9. Defendant Artem Yegiazaryan ("**Artem**") is an individual residing in Los Angeles, California at 342 Hauser Blvd 429, Los Angeles, CA, 90036. Artem is Ashot Yegiazaryan's brother. Artem was involved in the real estate scam that Mr. Yegiazaryan perpetrated on Plaintiff in Russia. Artem was criminally convicted in 2018 in Russia for his participation as an accomplice in Ashot Yegiazaryan's fraud. On information and belief, he is being paid by Mr. Yegiazaryan to do these things for the criminal enterprise run by Mr. Yegiazaryan.

10. Defendant Stephan Yegiazaryan a/k/a Stephan Egiazaryan ("**Stephan**") is an individual residing in Moscow, Russia at ul. Leninskiye Gory, 1, apt. 91, Moscow, 119234. Stephan is Ashot Yegiazaryan's son. He has made various misrepresentations in courts in Liechtenstein to encumber Mr. Yegiazaryan's assets. On information and belief, he is being paid by Mr. Yegiazaryan to do these things for the criminal enterprise run by Mr. Yegiazaryan.

11. Defendant Vitaly Gogokhia ("**Gogokhia**") is an individual residing in London, the United Kingdom at Flat 212 California Building, Deals Gateway, Lewisham, London, SE13 7SF. He is a longtime nominee of Ashot Yegiazaryan who, among other things, colluded with Mr. Yegiazaryan to create a false and fraudulent "Consent Judgment" in the United Kingdom to compete with Plaintiff Smagin's California Judgment for the funds that Mr. Yegiazaryan fraudulently conveyed into the Alpha Trust. In 2018, Gogokhia was criminally convicted in Russia for his participation as an accomplice in Mr. Yegiazaryan's fraud against Plaintiff. On information and

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

belief, he is being paid by Mr. Yegiazaryan to do these things for the criminal enterprise run by Mr. Yegiazaryan.

12.     Defendant Natalia Dozortseva ("**Dozortseva**") is a Russian individual residing in France at 9 rue des Etables, 06620 Greolieres.  With no authority to do so, Mr. Yegiazaryan "appointed" Dozortseva as a trustee for the Alpha Trust.  Under this false color of authority, Dozortseva has attempted to intervene in Plaintiff's legal proceedings in Liechtenstein, Nevis and Monaco.  She has successfully intervened in Monaco and her actions there have substantially delayed Plaintiff's enforcement efforts in each jurisdiction.  On information and belief, she is being paid by Mr. Yegiazaryan to do these things for the criminal syndicate run by Mr. Yegiazaryan.

13.     Defendant Murielle Jouniaux ("**Jouniaux**") is an individual residing in France at 108, Avenue St. Lambert, Nice.  Like Dozortseva, Jouniaux was improperly appointed as a trustee for the Alpha Trust and has fraudulently held herself out to be a trustee of the Alpha Trust.  She has similarly opposed Plaintiff's legal and proper attempts to enforce his judgment against the Alpha Trust, has attempted to intervene in Plaintiff's legal proceedings in Monaco, substantially delaying Plaintiff's enforcement efforts.

14.     Defendant Ratnikov Evgeny Nikolaevich ("**Ratnikov**") is an individual residing in Russia at Ulitsa Druzhby, 9, apt. 200, town of Lyubertsy, Moscow Region, 140013.  Ratnikov has falsely and fraudulently held himself out to be an impartial Russian bankruptcy officer overseeing Plaintiff's bankruptcy filing in Russia.  But, on information and belief, under this false color of authority, Ratnikov has colluded with Mr. Yegiazaryan, and Ratnikov has attempted to intervene in Plaintiff's legal proceedings in the United States, Liechtenstein and Monaco for the purpose of delaying Plaintiff's enforcement efforts in each.  On information and belief, he is being paid by Mr. Yegiazaryan to do these things for the criminal syndicate run by Mr. Yegiazaryan.

15.     Defendant Alexis Gaston Thielen ("**Thielen**") is an individual residing in Luxembourg at 10, rue Willy Goergen, L-1636 Luxembourg.  Thielen has fraudulently

5

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

held himself out to be the "protector" of the Alpha Trust. Under this false color of authority, Thielen has attempted to remove Plaintiff's lawfully appointed trustees of the Alpha Trust and confirm authority of the fraudulently appointed "trustees" Dozortseva and Jouniaux, substantially delaying Plaintiff's enforcement efforts. On information and belief, Thielen is being paid by Mr. Yegiazaryan to do these things for the criminal enterprise run by Mr. Yegiazaryan.

16. Defendant Compagnie Monégasque De Banque ("**CMB Bank**") is a private international bank with its principal place of business in Monaco at 23, Avenue de la Costa, 98000, Monaco. CMB Bank has correspondent accounts in the United States and has major clients in California, including Mr. Yegiazaryan, with which it regularly does business and carries out transactions in California. On information and belief, CMB Bank is taking direction from and being paid by Mr. Yegiazaryan to do these things for the criminal syndicate run by Mr. Yegiazaryan, including, but not limited to Mr. Yegiazarian paying CMB Bank's legal fees in the Monaco proceeding brought by Plaintiff and the Alpha Trustees.

17. Defendant Prestige Trust Company, Ltd. ("**Prestige**") is a Nevis company and the registered agent for non-party Savannah Advisors. Prestige's managing director, Stevyn L. Bartlette, is an individual residing in Florida, at 330 N. Lakeview Dr., Apt. 4211, Tampa, FL, 33618, U.S. At Mr. Yegiazaryan's request, Prestige drafted two fraudulent letters intended for and used by Dozortseva and CMB Bank to perpetrate a fraud on the Monaco Court proceeding where Plaintiff Smagin is trying to recover funds of the Alpha Trust deposited in a CMB Bank account. Prestige is liable for all actions of its employees, officers, and other agents under the doctrine of respondeat superior because (among other things); (1) Prestige benefited from its agents/employees' illegal conduct; (b) the conduct occurred substantially within the time and space limits authorized by the employment; (c) the agents/employees were motivated (wholly or in part) by a purpose to serve Prestige; and (d) the conduct was of the kind that the agents/employees were hired to perform. Further, the conduct is within

6

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

the scope of the agency/employment in that it is reasonably related to the kinds of tasks that the agents/employees were employed to perform and reasonably foreseeable in light of Prestige's business and the agents/employees' responsibilities. On information and belief, Prestige is being paid by Mr. Yegiazaryan to do these things for the criminal enterprise run by Mr. Yegiazaryan.

18.     Defendant H. Edward Ryals ("**Ryals**") is an individual residing at 6354 Treeridge Trail, Saint Louis, MO, 63129, U.S. Ryals is an agent and attorney acting on behalf of Prestige, including by sending two fraudulent letters relied on by Dozortseva and CMB Bank to perpetrate this fraud on the court and on Plaintiff Smagin. On information and belief, Ryals is being paid by Mr. Yegiazaryan to do these things for the criminal syndicate run by Mr. Yegiazaryan.

## NON-PARTIES

19.     The Alpha Trust ("**Alpha Trust**") is a Liechtenstein trust that was formed by Mr. Yegiazaryan and CTX Treuhand AG in Liechtenstein on May 27, 2015 for the purpose of hiding and secreting away a large arbitration settlement that Mr. Yegiazaryan had received in May 2015 and did not want subject to collection by Plaintiff Smagin. The Alpha Trust was never disclosed to Plaintiff Smagin, and he learned about it by pure chance. The Alpha Trust's funds reside in a bank account of CMB Bank, with the funds held in the name of Savannah Advisors, Inc. (an off-the-shelf entity created simultaneously by Mr. Yegiazaryan's nominees). Mr. Yegiazaryan was initially named as the Alpha Trust's settlor, beneficiary, investment advisor, and "Protector." As the Protector, Mr. Yegiazaryan had unfettered power to dismiss the trustee for any reason at any time and to appoint a new trustee—including even himself and to make decisions concerning management and dispersion of the funds. Once Plaintiff Smagin learned of the Alpha Trust, he petitioned the Princely Court in Liechtenstein, where the trust had been formed, and the Court stripped Mr. Yegiazaryan of his authority as Protector of the Alpha Trust; the Court also rejected his appointment of trustees (Dozortseva and

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Jouniaux). The Liechtenstein Court appointed Plaintiff Smagin as Protector, and he appointed Rudolf Schächle and Raphael Näscher as trustees for the Alpha Trust.

20. CTX Treuhand AG ("**CTX Treuhand**") is a stock corporation organized under the laws of Liechtenstein. CTX Treuhand created the Alpha Trust on behalf of Mr. Yegiazaryan and served as the trustee from the creation of the trust until on or around March 9, 2020, when CTX Treuhand withdrew following the Liechtenstein court's order authorizing Plaintiff to remove CTX Treuhand and appoint his own trustee.

21. Savannah Advisors, Inc. ("**Savannah**" or "**Savannah Advisors**") is a Nevis company owned by the Alpha Trust and, thus, beneficially owned by Mr. Yegiazaryan. Savannah Advisors has no assets or operations other than holding the funds of the Alpha Trust that reside in the CMB Bank account.

22. Clear Voice, Inc. ("**Clear Voice**") is a Nevada company created by Suren Yegiazaryan, but controlled by Ashot Yegiazaryan, for the purpose of sheltering Ashot Yegiazaryan's U.S. assets from his creditors, including specifically Plaintiff. As noted above, Suren is the funding source for Mr. Yegiazaryan and his criminal enterprise and on information and belief he funds Mr. Yegiazaryan in whole or in part from this entity.

## JURISDICTION AND VENUE

23. This Court has original subject matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises under the Federal Racketeer Influenced and Corrupt Organizations Act (Federal RICO).

24. This Court has personal jurisdiction over Ashot Yegiazaryan, Suren Yegiazaryan, and Artem Yegiazaryan because they each reside in the state of California. On information and belief, all of Ashot Yegiazaryan's, Suren Yegiazaryan's and Artem Yegiazaryan's acts have been committed in and for and/or directed from California.

25. This Court has personal jurisdiction over Gogokhia, Dozortseva, Jouniaux, Ratnikov, Stephan Yegiazaryan, Thielen, CMB Bank, Prestige, and Ryals because, among other contacts, they participated in the scheme to defraud Plaintiff that was

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

centered in and directed from California, served the central purpose of frustrating enforcement of a California judgment, wrongfully, fraudulently participated directly or indirectly in litigation or legal proceedings in the California, the United Kingdom, Nevis, Liechtenstein, and/or Monaco. As noted, in furtherance of that scheme, Defendants conducted their wrongful activities in California or purposefully directed their fraudulent acts at California in part as relates to Plaintiff Smagin's action centered here relating to enforcement of the California Judgment. CMB Bank has accepted deposits and instructions from individuals within the state of California as relates to the Alpha Trust funds, Mr. Yegiazaryan, and other nominees of Mr. Yegiazaryan and the enterprise. CMB Banks also holds correspondent accounts in the United States and, of course, is a key part of the conspiracy to hide, protect, and secure the ill-gotten gains of Mr. Yegiazaryan, who directs its actions and pays for its legal actions and defense as relates to CMB Bank's refusal to transfer Alpha Trust funds as ordered by the lawful trustees of the Alpha Trust. This Court also has personal jurisdiction over Defendants pursuant to 18 U.S.C. 1965(b) because in any action brought pursuant to the Federal RICO statute, the district court may summon other parties to that district where the "ends of justice require."

26. Venue is appropriate in the Western Division of the Central District of California pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district. Specifically, defendants Ashot Yegiazaryan, Suren Yegiazaryan and Artem Yegiazaryan reside in Los Angeles County, California, and the wrongful acts and plans were devised, initiated, and carried out by these Defendants through acts and communications initiated in and directed towards Los Angeles County, California. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found in and/or transacts affairs in this District given each Defendant's participation in the enterprise. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(c)(3).

9

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

27.     In October 2010, Plaintiff commenced an arbitration proceeding in London, U.K., against Mr. Yegiazaryan and his holding company Kalken Holdings Limited, entitled *Vitaly Ivanovich Smagin, Claimant, v. Kalken Holdings Limited[1] and Ashot Yegiazaryan, Defendants*, LCIA Case No. 101721 (defined above as the "Arbitration").   The Arbitration was conducted during the periods of September 23 through 27, 2013, January 14, 2014, and April 15, 2014.   On November 11, 2014, the Arbitration panel duly constituted under the Rules of the London Court of International Arbitration rendered a final award in favor of Plaintiff and against Mr. Yegiazaryan in the total amount of **$84,290,064.20** (with interest at the annual rate of eight percent, compounded quarterly, on the amount of $79,142,701.32, from November 11, 2014 until paid) (the "**London Award**").[2]   A true and correct copy of the London Award is attached hereto as **Exhibit 2**.

28.     On December 22, 2014, Plaintiff filed a petition with this Court to confirm the London Award and enter judgment against Ashot Yegiazaryan under the New York Convention. *Vitaly Ivanovich Smagin v. Ashot Yegiazaryan*, Case No. 2:14-cv-09764-R-PLA (C.D. Cal.), filed Dec. 22, 2014 (the "**Enforcement Action**").   On March 31, 2016, the Court entered a judgment in favor of Plaintiff Smagin and against Mr. Yegiazaryan in the amount of $92,503,652 (defined above as the "California Judgment").

29.     On February 24, 2016, the Liechtenstein Princely Court confirmed the London Award under the New York Convention and attached Mr. Yegiazaryan's beneficial interest in the Alpha Trust to prevent him from receiving a distribution from the Alpha Trust.   A true and correct copy of the German original and English translation

---

[1] Kalken Holdings Limited, a company existing under the laws of Cyprus and controlled by Mr. Yegiazaryan, was also a respondent in the Arbitration.   The London Award was issued jointly and severally as to both respondents, but confirmation was sought in this Court only as to Mr. Yegiazaryan.
[2] The London Award is a foreign arbitral award covered by the New York Convention because the place of arbitration and the place of the award is London, U.K..

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

of the Liechtenstein Princely Court's confirmation of the London Award is attached hereto as **Exhibit 3**. All appeals have been exhausted, and the London Award is now fully enforceable as a Liechtenstein judgment ("**Liechtenstein Judgment**").

30. In a subsequent Liechtenstein enforcement action, Plaintiff filed an action to attach a bundle of Mr. Yegiazaryan's rights as Protector of the Alpha Trust, including his right to appoint and dismiss trustees. The Liechtenstein trial court ruled that these rights could be attached by Plaintiff to satisfy the Liechtenstein Judgment. The Liechtenstein Supreme Court and Constitutional Court affirmed this ruling as of October 29, 2019 and all appeals are now exhausted. A true and correct copy of the German original and English translation of the October 29, 2019 Ruling is attached hereto as **Exhibit 4**.

31. Following this decision, a third enforcement action was filed in Liechtenstein to permit Plaintiff to seize and exercise Mr. Yegiazaryan's rights as Protector and beneficiary of the Alpha Trust. Specifically, Plaintiff sought to appoint new trustees to the Alpha Trust to replace CTX Treuhand, the prior trustee that had been appointed by Mr. Yegiazaryan. On March 2, 2020, the trial court authorized Plaintiff to appoint new trustees and dismiss CTX Treuhand. A true and correct copy of the German original and English translation of the March 2, 2020 Ruling is attached hereto as **Exhibit 5**. Mr. Yegiazaryan appealed the March 2 decision, but that appeal was rejected by Court of Appeal on September 15, 2020. A true and correct copy of the German original and English translation of the September 15, 2020 Ruling is attached hereto as **Exhibit 6**. On October 28, 2020, Mr. Yegiazaryan filed his last remaining appeal to the Liechtenstein Constitutional Court; however, the Liechtenstein Constitutional Court appeal is a limited review of constitutional deprivations (e.g., due process and procedural fairness). A true and correct copy of the German original and English translation of the October 28, 2020 Appeal is attached hereto as **Exhibit 7**. Mr. Yegiazaryan's appeal brief fails to cite any valid constitutional deprivations of his rights. To the contrary, his appeal is premised on narrow complaints regarding the

11

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

Court of Appeal's purported failure to rule on Ratnikov's request to intervene in the appeal, and Mr. Yegiazaryan's false assertion that he did not have the opportunity to review the Ratnikov intervention papers before the Court's ruling.

32. On November 23, 2020, however, the Liechtenstein court rejected Ratnikov's request to intervene noting that the Russian proceedings are in the "preliminary debt settlement process, not bankruptcy proceedings" and that "[Ratnikov] is trying, in an unprofessional and superficial way, to call these proceedings the bankruptcy proceedings or the proceedings on bankruptcy." The court further found that despite the "partially biased and incorrectly translated" Russian bankruptcy decision Ratnikov submitted, Ratnikov is a financial manager, not an insolvency officer authorized to make decisions, and that Plaintiff Smagin retains the right to collect his debts and manage his legal proceedings. Accordingly, the Court held that there were no bankruptcy proceedings which might warrant suspensive effect of the Court's rulings and Ratnikov's request was denied. A true and correct copy of the German original and English translation of the November 23, 2020 Ruling is attached hereto as **Exhibit 8**.

33. On August 18, 2017, Plaintiff filed an action for fraudulent conveyance with this Court against Mr. Yegiazaryan and CTX Treuhand based on their fraudulent transfer of over $188 million to a Monaco bank account with CMB Bank, held by the Alpha Trust, in order to prevent Plaintiff from recovering the London Award and impending California Judgment. *Vitaly Ivanovich Smagin v. Ashot Yegiazaryan, et al.,* Case No. 2:17-cv-6126, filed Aug. 18, 2017 (the "**First Fraudulent Conveyance Action**").

34. On March 27, 2020, Plaintiff filed a fraudulent transfer action with this Court against Mr. Yegiazaryan and Suren in relation to Mr. Yegiazaryan's attempt to bring sham proceedings in Nevis, allowing Suren to "prevail" in the enforcement of a false debt against Mr. Yegiazaryan and divert the Alpha Trust funds, thereby precluding Plaintiff's collection from the Alpha Trust. *Vitaly Ivanovich Smagin v. Ashot*

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

*Yegiazaryan, et al.,* Case No. 2:20-cv-02925-TJH-MAA, filed Mar. 27, 2020 (the "**Second Fraudulent Conveyance Action**").

35. On July 27, 2020, after the Liechtenstein Court authorized Plaintiff to appoint new trustees to the Alpha Trust to direct payment of the debts, Plaintiff's new trustees through Savannah Advisors, Inc.—now run by new directors who are cooperating with the Plaintiff Smagin's lawfully appointed trustees instead of doing Mr. Yegiazaryan's bidding—commenced an action in Monaco against Defendant CMB Bank for failure to effect the transfer of assets from Savannah's account at CMB Bank to Savannah's account with a Liechtenstein bank (the "**Monaco Action**").

## GENERAL ALLEGATIONS

### Mr. Yegiazaryan, Artem Yegiazaryan and Gogokhia Defraud Plaintiff Out of His Investment in the Europark Business Venture in Russia

36. Between 2003 and 2009, Mr. Yegiazaryan perpetrated a fraudulent scheme against Plaintiff to steal his shares (funds) in a joint real estate investment in Moscow called "Europark." Mr. Yegiazaryan initiated the scheme in 2003 when he approached Plaintiff about investing in Europark. Plaintiff and Mr. Yegiazaryan subsequently entered into an agreement for the division of profits in the Europark investment. In 2006, Mr. Yegiazaryan proposed that Europark be used as security for a Deutsche Bank loan to finance the refurbishment of a Moscow hotel (a project in which Plaintiff was not involved). Plaintiff agreed to Mr. Yegiazaryan's proposal based on his assurances that Plaintiff's interests would be protected and on a series of shareholder and escrow agreements the parties executed guaranteeing the same. Instead of making good on any of these agreements or assurances, Mr. Yegiazaryan, with the assistance of his brother Artem Yegiazaryan and nominee Vitaly Gogokhia, concocted an elaborate scheme to steal Plaintiff's shares and profits, which they accomplished through a series of fraudulent transactions using offshore nominee companies and nominees to divest Plaintiff of his interests.

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

37.    As a result of this fraud, on October 26, 2010, Plaintiff commenced arbitration proceedings in London, U.K., against Ashot Yegiazaryan for his misappropriation of Plaintiff's real estate investment and subsequent efforts to conceal his misconduct (defined above as the "Arbitration").  On November 11, 2014, the three-arbitrator panel rendered a final award in the Arbitration in favor of Plaintiff and against Mr. Yegiazaryan in the total amount of **$84,290,064.20** (defined above as the "London Award").

38.    Separately Mr. Yegiazaryan, Artem Yegiazaryan, and Gogokhia were criminally indicted in Russia for their fraud against Plaintiff relating to Europark. Rather than stand trial, Ashot and Artem Yegiazaryan fled to California in 2010, where Ashot Yegiazaryan has been hiding with his cousin Suren in a mansion in Beverley Hills as a fugitive of Russia.  Around the same time, Gogokhia fled to the U.K.

39.    On May 31, 2018, the Russian criminal court convicted Mr. Yegiazaryan of fraud *in absentia* and sentenced him to seven years in prison.  The Russian court also convicted Artem of fraud *in absentia* and sentenced him to five years in prison.  The Russian court convicted Gogokhia of being an accomplice of Mr. Yegiazaryan in misappropriating Plaintiff's assets, sentencing him to four years in prison *in absentia*. The court held Artem and Gogokhia accountable because it found that they were part of Mr. Yegiazaryan's criminal enterprise that defrauded Plaintiff of his investment.  A true and correct copy of the Russian original and English translation of the Russian Criminal Court Verdict is attached hereto as **Exhibit 9**.  It is incorporated herein by reference as though set forth in full.

**Plaintiff Pursues a Petition to Confirm the London Award in California**

40.    After absconding to the United States, Mr. Yegiazaryan refused to pay the London Award.  Four years later, on December 22, 2014, Plaintiff filed the Enforcement Action in this Court to confirm and enforce the London Award under the New York Convention.

14

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

41.     Plaintiff also sought preliminary injunctive relief in the form of an asset freeze against Mr. Yegiazaryan based on Mr. Yegiazaryan's acknowledged pattern and practice of concealing beneficial ownership of assets by holding them in the name of foreign nominee persons (such as his cousin, Defendant Suren Yegiazaryan, and his brother, Artem Yegiazaryan) or offshore shell companies.  Indeed, much of the basis of the London Award rests upon Mr. Yegiazaryan's past acts to conceal and misappropriate assets from Plaintiff Smagin through the use of entities in foreign jurisdictions, including in Cyprus and the British Virgin Islands.

42.     In his application for injunctive relief, Plaintiff Smagin advised this Court of one asset in particular that was a likely source of enforcement/satisfaction of the London Award.  Namely, Mr. Yegiazaryan was the recipient of a substantial arbitration award in an unrelated arbitration against fellow Russian businessman Suleyman Kerimov (the "**Kerimov Award**").  At the time Plaintiff discovered the existence of the Kerimov Award, the funds had not yet been paid to Mr. Yegiazaryan, but past experience suggested that once those funds were received, Mr. Yegiazaryan was likely to transfer the proceeds of the Kerimov Award into some nominee relationship or entity in a foreign country in order to avoid his payment obligations to Plaintiff on the London Award.

43.     On December 23, 2014, this Court granted Plaintiff Smagin's application for a temporary protective order freezing Mr. Yegiazaryan's assets in California, finding that, "based on [Plaintiff's] previous dealings with [Mr. Yegiazaryan] and on the evidence submitted with the application, the Court finds that [Plaintiff] will suffer great and irreparable injury if issuance of the orders is delayed until the matter may be heard on notice.  Accordingly, the Court will issue a Temporary Protective Order." (Order Granting in Part Plaintiff's Ex Parte Application for Right to Attach Order and Temporary Protective Order ("**Temporary Protective Order**" or "**TRO**"), Enforcement Action, ECF 9 at 3.)

44.     The Temporary Protective Order provided:

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

Respondent Ashot Yegiazaryan, his agents, and/or any person or entity acting under his direction and control shall not take any action to transfer, assign, conceal, diminish, or dissipate any property located in California--in an amount up to $84,290,064.20--that may be used to satisfy the foreign-arbitral award payable to Vitaly Smagin, including specifically and without limitation the amounts received or to be received by Respondent Yegiazaryan, his agents or any person or entity acting under his direction and control in payment or satisfaction of an arbitration award from Suleyman Kerimov, as well as any shares in Endrino Corporation or any other entity. (Temporary Protective Order, Enforcement Action, ECF 9 at 3.)

45. On February 3, 2015, by agreement of the parties, the TRO was converted to a preliminary injunction on the same terms. (Stipulation and Motion for Stay of Proceedings and Preliminary Injunction Preventing Transfer or Dissipation of Assets, Enforcement Action, ECF 23.) This injunction again referred specifically to the Kerimov Award proceeds and again enjoined Mr. Yegiazaryan from any actions to diminish or conceal those proceeds.

## Mr. Yegiazaryan Creates a Web of Offshore Entities and a Complex Ownership Structure to Secret the Kerimov Award Settlement Proceeds and Avoid this Court's Reach

46. Unbeknownst to Plaintiff or this Court, on May 26, 2015, Mr. Yegiazaryan received $198 million dollars as settlement of the Kerimov Award. A true and correct copy of the Kerimov Settlement Agreement is attached hereto as **Exhibit 10**.[3]

47. To conceal the Kerimov Award settlement proceeds from Plaintiff Smagin

---

[3] The majority of the documents attached as exhibits to this Complaint have been court-filed, produced and/or exchanged in the litigation between Mr. Yegiazaryan and Plaintiff Smagin. Many of the documents that were not obtained directly from Mr. Yegiazaryan were obtained from court files in foreign jurisdictions, or from Plaintiff Smagin's counsel in those foreign jurisdictions. All are true and correct copies of the original documents. Although some of these documents were originally designated by Mr. Yegiazaryan as "Confidential" or "Attorney's Eyes Only", Mr. Yegiazaryan subsequently agreed to remove those protections to allow their public filing in the prior case.

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

and to avoid the Court's asset freeze in California, Mr. Yegiazaryan accepted the $198 million settlement through his attorneys in London at the law firm of Gibson, Dunn & Crutcher LLP ("**Gibson Dunn**"). Although Gibson Dunn was fully aware of Plaintiff's arbitration award and this Court's asset freeze—through its representation of Mr. Yegiazaryan in California on these related matters—it accepted the funds into its client trust account in London while Mr. Yegiazaryan made arrangements to promptly move the funds through some to-be-formed nominee entities and an undisclosed bank account.

48. To hide the Kerimov Award funds, Mr. Yegiazaryan resorted to his usual tactics of creating a complex web of offshore entities to conceal the funds, similar to the scheme he, Artem, and Gogokhia originally employed to defraud Plaintiff Smagin of his investment. To accomplish this, Mr. Yegiazaryan deployed CTX Treuhand in Liechtenstein, Defendant CMB Bank in Monaco, and Savannah in Nevis.

49. First, on May 27, 2015, Mr. Yegiazaryan executed a trust instruments establishing the "Alpha Trust," in Liechtenstein. This Trust was established for the sole purpose of holding the proceeds of the Kerimov Award settlement. Using electronic means, Mr. Yegiazaryan transmitted the related documents from California to CTX Treuhand in Liechtenstein. A true and correct copy of the Trust Instrument of the Alpha Trust is attached hereto as **Exhibit 11**. CTX Treuhand had crafted the Trust Instrument such that Mr. Yegiazaryan would retain complete control over the assets, at the same time, moving the Kerimov Award settlement funds to the Alpha Trust's "possession" in name only. Of course, Mr. Yegiazaryan was named as the Alpha Trust's settlor, beneficiary, investment advisor, and "Protector." As the Protector, he had unfettered power to dismiss the trustee(s) for any reason at any time and to appoint a new trustee(s)—including even himself. While CTX Treuhand was named as the Alpha Trust's initial trustee, Mr. Yegiazaryan retained the power to approve all distributions and other material actions of the Alpha Trust and its trustee.

50. Second, in addition to forming the Alpha Trust, Mr. Yegiazaryan and CTX

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Treuhand purchased Savannah Advisors, Inc., an off-the-shelf Nevis corporation that had been previously formed and was used solely to create additional layers of complexity in transactions like this. Savannah Adivsors, which became a wholly-owned entity of the Alpha Trust, was created for the sole purpose of acting as a shell company that would hold the proceeds of the Kerimov Award settlement, creating another layer of entities that Plaintiff Smagin would have to pierce to recover the California Judgment.

51. Finally, Mr. Yegiazaryan and CTX Treuhand enlisted Defendant CMB Bank to establish a bank account in Monaco in the name of Savannah Advisors, which would accept, hold and shelter the fraudulent transfer of the Kerimov Award settlement (the "**Monaco Account**"). As was the case with the Alpha Trust, Mr. Yegiazaryan retained control over the Monaco Account and CMB Bank granted him signature authority on behalf of Savannah Advisors, even though he was not an officer or director of that entity.[4]

52. On June 5, 2015, Mr. Yegiazaryan, CTX Treuhand and Gibson Dunn transferred $188,146,102.08 of the proceeds from the Kerimov Award settlement from Gibson Dunn's client trust account to the Monaco Account held by Savannah Advisors with CMB Bank. The transfer of funds was performed with the specific intent and for the purpose of hindering, delaying and defrauding Plaintiff Smagin—who was not made aware of any of these machinations—and to prevent him from collecting the London Award and any associated judgment. In return for its services, Gibson Dunn retained $3 million of the Kerimov Award settlement.

53. As evidence of CMB Bank's complicity in the Yegiazaryan criminal enterprise, at the time that it opened the Monaco Account CMB Bank was fully aware that Mr. Yegiazaryan was a Russian fugitive on the Interpol "Most Wanted" (red) list.

---

[4] With signatory authority and control over Savannah Advisors, Yegiazaryan has paid tens of millions of dollars to his other creditors out of the Monaco Account (e.g., his lawyers in Liechtenstein and Cyprus, and criminal accomplice Defendant Gogokhia), but has not paid anything to Plaintiff Smagin.

18

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

CMB Bank's "diligence files" show that it knew Mr. Yegiazaryan was opening the Monaco Account to hide his assets and avoid substantial debts to creditors. These files reflect that CMB Bank knew of Plaintiff's 2010 Europark lawsuit and the $87.5 million claim against Mr. Yegiazaryan. The files also show that CMB Bank was aware that Mr. Yegiazaryan was stripped of his parliamentary immunity by the Russian State Duma shortly after Plaintiff Smagin filed his lawsuit, that Mr. Yegiazaryan was later indicted by a Moscow district court on charges of large scale fraud in 2011, a judgment which also attached Mr. Yegiazaryan's assets to compensate Plaintiff for the $87.5 million that Mr. Yegiazaryan embezzled through Europark, and that Mr. Yegiazaryan had fled to the U.S. to avoid arrest and prosecution. A true and correct copy of relevant documents from CMB Bank's due diligence files is attached hereto as **Exhibit 12**. Nevertheless, on information and belief, CMB Bank was handsomely paid to join the Mr. Yegiazaryan's criminal enterprise as the "bag man," to wit, the agent that would hold collect and distribute the proceed of Mr. Yegiazaryan's illicit scheme(s). In this regard, CMB Bank did what no other bank that Mr. Yegiazaryan approached would do. It looked the other way, ignoring the criminal acts committed by Mr. Yegiazaryan and took his dirty money because it wanted to profit as part of the enterprise; it received the $188 million into its Monaco branch account. On information and belief, Mr. Yegiazaryan stood at the time, and stands to this day, as one of CMB Bank's largest and most profitable clients, accounting for approximately 20% of CMB Bank's annual holdings.

54. The formation of the Alpha Trust and Savannah Advisors, and the transfer of assets to the Monaco Account held with CMB Bank to fund these entities, were not done for legitimate commercial purposes. Rather, these seemingly legal events and happenings were in fact done with malice and fraudulent aforethought. They were acts made with the specific intent of hiding stolen assets and funds from victims and creditors of Mr. Yegiazaryan. These acts were done with the goal and purpose of hindering, delaying, or defrauding Plaintiff in violation of, *inter alia*, California Civil

19

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Code section 3439.04(a)(1) and common law fraudulent conveyance.

55. By and before June 5, 2015, Mr. Yegiazaryan, Gibson Dunn, CTX Treuhand, and CMB Bank all knew that Mr. Yegiazaryan owed Plaintiff over $84 million pursuant to the London Award (which amounts have grown over the years to $130 million with interest). Likewise, they were all aware (or should have been aware) that this Court had issued an asset freeze against Mr. Yegiazaryan to prevent him from once again defrauding Plaintiff Smagin by hiding collectible assets/funds (Kerimov Award) that the court had ordered frozen and not to be dispersed. They also knew that it was only a short matter of time before Plaintiff would obtain a judgment against Mr. Yegiazaryan in California confirming the London Award in the Enforcement Action.

**This Court Issues a Worldwide Injunction, Confirms the London Award and Enters the California Judgment Against Mr. Yegiazaryan**

56. Upon learning of the Kerimov Award settlement, Plaintiff Smagin applied to this Court for a worldwide preliminary injunction restraining Mr. Yegiazaryan from concealing or dissipating the proceeds of the Kerimov Award and settlement. On September 18, 2015, this Court granted Plaintiff's motion for an expanded preliminary injunction accompanied by expedited discovery. The Court stated: "Plaintiff believes on good authority that Defendant Yegiazaryan has secured a $100 million settlement in an unrelated case. Afraid that Defendant Yegiazaryan will attempt to conceal the proceeds of the settlement, Plaintiff asks this Court to issue an expanded preliminary injunction to prevent Yegiazaryan's concealment of assets worldwide." (Preliminary Injunction, Enforcement Action, ECF 31 at 2.) This Court concluded: "The evidence demonstrates that Plaintiff Smagin will suffer irreparable harm if the current injunction is not expanded to encompass Defendant Yegiazaryan's worldwide reach. . . . Plaintiff Smagin has provided this Court with testimony from Defendant Yegiazaryan himself where he admits to using nominees and offshore companies to conceal his assets." (*Id.*) Accordingly, this Court issued a worldwide injunction enjoining and preventing

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Yegiazaryan, his agents, and/or any person or entity acting at his direction from transferring, concealing, diminishing or dissipating property in an amount up to $84,290,064.20. This injunction again included and *specifically referenced* the funds received in satisfaction of the Kerimov Award.

57. Unbeknownst to Plaintiff, by the time he filed the September 2015 application to this Court to expand the stipulated preliminary injunction to include worldwide assets, Mr. Yegiazaryan had already settled the Kerimov Award and had illegally and improperly taken steps to conceal the proceeds and place them out of reach of Plaintiff Smagin by depositing them in the Alpha Trust with the funds deposited in the CMB Bank account in Monaco, as detailed above.

58. Plaintiff did not learn of these facts until February 9, 2016, when his *ex parte* application to intervene in Mr. Yegiazaryan's Los Angeles Superior Court divorce proceedings was granted and Plaintiff was given access to documents improperly filed under seal in the divorce court. Review of these divorce court documents disclosed that Mr. Yegiazaryan settled the Kerimov Award while Plaintiff was pursuing enforcement of the London Award in this Court in May 2015. (*See Natalia Tsagalova v. Ashot Yegiazaryan*, LASC Case No. BD595136.)

59. Plaintiff also learned through a declaration filed by Mr. Yegiazaryan's wife in the divorce proceeding that Mr. Yegiazaryan, Suren and other members of their family had come up with a scheme to hide Ashot's assets in the U.S. by using shell companies owned by Suren and other members of Mr. Yegiazaryan's family. A true and correct copy of the Declaration of Natalia Tsagalova ("**Tsagalova Decl.**") is attached hereto as **Exhibit 13**. Specifically, Ms. Tsagalova stated that Mr. Yegiazaryan and Suren were involved in a complex scheme to funnel millions of dollars into the United States through various companies, including specifically Clear Voice, Inc., a company held in Suren's name. She further explained that, as part of this scheme, Mr. Yegiazaryan would transfer his assets into Clear Voice's accounts and, in turn, Clear Voice would write a check to Mr. Yegiazaryan and his wife every month to pay for the

21

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

couple's expenses under the guise of a loan. Mr. Yegiazaryan's wife also revealed in her sworn declaration that, in late 2014, Mr. Yegiazaryan sold thirteen of the couple's rental properties in the London area for nearly $17 million and had the proceeds of those sales transferred into the U.S. through Clear Voice's bank accounts.

60. Significantly, Ms. Tsagalova's testimony is corroborated by Mr. Yegiazaryan's own testimony in a separate litigation. (Tsagalova Decl. at ¶ 15, Ex. C.) In a lawsuit involving Ashot Yegiazaryan in the Southern District of New York, *Ashot Egiazaryan v. Peter Zalmayev*, Case No. 11-CV-02670, Mr. Yegiazaryan testified that he transferred $20 million to Suren. (Tsagalova Decl. at ¶ 15, Ex. C.) The federal court in that case noted Ashot's connection to Clear Voice, holding there was "clear evidence that Clear Voice is being used for Ashot's benefit" and that "Clear Voice is being used by Ashot to move money around." (Tsagalova Decl. at ¶ 17, Ex. E.)

61. On March 17, 2016, this Court granted Plaintiff's motion for summary judgment on his petition for confirmation of the London Award. On March 31, 2016, it entered judgment in favor of Plaintiff and against Mr. Yegiazaryan in the amount of $92,503,652, which included interest to the date of judgment (defined above as the "California Judgment"). (*See* Exhibit 1.)

62. The Court also granted a Post-Judgment Injunction on the same terms as before:

> Ashot Yegiazaryan, his agents, and/or any person or entity acting under his direction and control shall not take any action to transfer, assign, conceal, diminish, encumber, hypothecate, dissipate or in any way dispose of any proceeds, in an amount up to and including $115,629,565, derived by or held for the benefit of Ashot Yegiazaryan, his agents, nominees, trustees or any person or entity acting under his direction and control, in payment, settlement or satisfaction of an arbitration award obtained in his arbitration with Suleyman Kerimov, without prior order of the Court permitting such a transfer, including specifically the "Kerimov settlement funds" as identified in the Stipulation Re Advance Distribution of Funds executed by Petitioner and Respondent on July 6, 2015 and filed with the Los Angeles Superior Court and any proceeds of or

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

investments made with those funds, including specifically (but not limited to) any funds held by CTX Treuhand AG, Vaduz, Liechtenstein (under Alpha Trust or otherwise, or any other trustee), with Savannah Advisors Inc., c/o Alpenrose Wealth Management (or any other investment manager) and/or in an account at Compagnie Monegasque De Banque or in any other bank or financial institution. (Post-Judgment Injunction, Enforcement Action, ECF 90 at pp. 7-8.)

63.    The award and California Judgment are fully due and payable.  There are no legal challenges remaining to the substance of the London Award, as Mr. Yegiazaryan's legal challenges have all been rejected.   Moreover, while Mr. Yegiazaryan initially appealed this Court's award confirmation and resulting California Judgment to the Ninth Circuit Court of Appeals, he abandoned all legal challenges to the award confirmation.

### Mr. Yegiazaryan and CTX Treuhand Attempt to Block Enforcement of the California Judgment Through Legal Action in Liechtenstein

64.    In addition to pursuing relief in California, the jurisdiction in which Mr. Yegiazaryan is physically located and living, Plaintiff also commenced an enforcement action in Liechtenstein, the jurisdiction in which the Alpha Trust is located.   On February 24, 2016, the Liechtenstein Princely Court confirmed the London Award under the New York Convention and attached Mr. Yegiazaryan's beneficial interest in the Alpha Trust to prevent him from receiving a distribution from the trust (defined above as the "Liechtenstein Judgment").   All appeals have been exhausted, and the London Award is now a fully enforceable as the Liechtenstein Judgment.

65.    On September 20, 2017, Plaintiff obtained a Turnover Order from this Court requiring that Mr. Yegiazaryan turn over the assets in the Alpha Trust that are under his control to satisfy the California Judgment.   (Order Granting Petitioners' Motion for Turnover of Respondent's Assets, Enforcement Action, ECF 193.)   In entering the Turnover Order, the Court found:

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

> There is no dispute that this Court has jurisdiction over Mr. Yegiazaryan. Nor is there any dispute that Mr. Yegiazaryan has not paid the Judgment. The Award was issued nearly three years ago, and the Judgment is over a year old. The assets of the Alpha Trust remain within Mr. Yegiazaryan's reach. Mr. Yegiazaryan has retained control over the trust and may appoint and dismiss trustees at will and even appoint himself as a trustee. (*Id.* at 1, 3.)

66. Instead of complying, Mr. Yegiazaryan appealed. The Ninth Circuit held that the Turnover Order was premature on the basis that the District Court should wait for a ruling from the Liechtenstein Supreme Court determining Mr. Yegiazaryan's authority over the Alpha Trust in the Liechtenstein Action. Mr. Yegiazaryan's delay tactic worked, but only for a short time. On September 7, 2018, the Liechtenstein Supreme Court ruled in Plaintiff's favor, holding that Mr. Yegiazaryan had unrestricted control and access to the assets held by the Alpha Trust. Accordingly, he could be compelled to turn over the assets of the Alpha Trust to Plaintiff to satisfy his debts.

67. Despite the ruling in the Liechtenstein Action, Mr. Yegiazaryan again refused to pay the California Judgment from the assets of the Alpha Trust. On March 4, 2019, Plaintiff asked a second time for a turnover order directing Mr. Yegiazaryan to turn over the assets he had hidden in Liechtenstein. The Court accepted Mr. Yegiazaryan's argument that he had not exhausted his appellate remedies in Liechtenstein, thus the Court should wait until the Liechtenstein Constitutional Court resolved his limited appeal.

68. On October 29, 2019, the Liechtenstein Constitutional Court rejected Mr. Yegiazaryan's appeal. That order, like the one before it, concluded Mr. Yegiazaryan controlled the assets in the Alpha Trust.[5]

---

[5] Specifically, the Court held:

[Mr. Yegiazaryan]'s position as a protector of the Alpha Trust included partial rights, such as that [Mr. Yegiazaryan] had transferable rights under the trust deed, such as the right to consent as a protector to various rights and actions of the trustee: Termination of the trust by the trustee, to determine the beneficiaries, to

24

## Defendants Lodge a Coordinated, Multi-Jurisdictional Attack to Encumber the Alpha Trust

69.     Recognizing that the Liechtenstein Constitutional Court's ruling marked the end of Mr. Yegiazaryan's frivolous legal maneuvers to obstruct Plaintiff's access to the Alpha Trust, Mr. Yegiazaryan hatched a scheme to block Plaintiff's recovery.  This time, Suren and Gogokhia would file fraudulent claims against him in various jurisdictions—claims that Mr. Yegiazaryan would not contest—in order to obtain sham judgments that they would seek to enforce against the Alpha Trust to move the funds out of Plaintiff's reach or, at a minimum, encumber the funds.  These fabricated and fraudulent judgments were designed to compete with the Liechtenstein Judgment and the California Judgment and create chaos in the courts there and in Nevis, where part of the attack by Suren and Gogokhia took place.  These false judgments caused Plaintiff Smagin to have to file pleadings and present evidence in courts in the U.K., Liechtenstein, Monaco, the U.S. (California), and Nevis and incur hundreds of thousands if not millions of dollars in fees to set the record straight and show these several courts that the so-called judgments of Suren and Gogokhia were a complete sham manufactured for the sole purpose of hindering and delaying Plaintiff Smagin's enforcement.

70.     But Mr. Yegiazaryan was far from done with his tactical maneuvers against Plaintiff Smagin.  After the attacks/fraudulent judgment efforts of Suren and Gogokhia failed due to active opposition from Plaintiff, Mr. Yegiazaryan first directed Defendants Natalia Dozortseva and Murielle Jouniax (together, the "**Trustee**

delegate all rights of the trustee including its (alleged) discretionary power and to change the provisions of the trust deed. In addition, [Mr. Yegiazaryan] had the sole right to appoint or remove the trustees of the Alpha Trust. In addition, [Mr. Yegiazaryan] even let the trusts of the Alpha Trust (which he controls) act as asset managers of the trust. . . This execution request clearly states the overall rights to be seized, namely those of [Mr. Yegiazaryan]as trustor, protector and beneficiary of the Alpha Trust vis-à-vis the party involved. . . [B]ecause of all of these considerations, [Mr. Yegiazaryan] has been unsuccessful with any of its complaints regarding fundamental rights, so that, according to the assertion, the individual complaint cannot be accepted.

25

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

**Defendants**") and later Alexis Gaston Thielen to try and reclaim control of the Alpha Trust, Savannah Advisors, and the Monaco Account for Mr. Yegiazaryan. These Trustee Defendants falsely held themselves out to be legally appointed trustees of the Alpha Trust and sought to intervene in legal proceedings in Nevis and Monaco allegedly protecting the interests of the Trust but in actuality seeking to advance only the interests of Mr. Yegiazaryan and his criminal enterprise. Similarly, Thielen falsely declared himself the Protector of the Alpha Trust. They lied and misrepresented their credentials, the nature of the dispute between Plaintiff, Mr. Yegiazaryan, the Alpha Trust and more, all with the goal of furthering the Yegiazaryan syndicate and denying victims of the syndicate the relief and recourse they are due and owed.

71.     Mr. Yegiazaryan also directed Ratnikov to try and block Plaintiff's ability to recover his judgment by fraudulently holding himself out as a Russian insolvency officer and falsely claiming that he has the authority to take over Plaintiff's enforcement action against Mr. Yegiazaryan. He also directed Ratnikov to intervene in a Monaco proceeding under the same fraudulent auspices, which he did, and that intervention successfully delayed Plaintiff Smagin's ability to gain access to the Alpha Trust funds in Monaco.

72.     As part of this coordinated effort: (1) Suren commenced a proceeding against Mr. Yegiazaryan in the Caribbean Island of Nevis for the assets of the Alpha Trust, (2) Gogokhia commenced a legal proceeding against Mr. Yegiazaryan in the United Kingdom for the assets of the Alpha Trust, (3) Dozortseva and Jouniaux sought to seize control of the Alpha Trust by fraudulently holding themselves out as "trustees" to the Courts of Nevis and Monaco, (4) Dozortseva enlisted Ryals and Prestige to sow confusion and give CMB Bank the pretext excuse it needed to refuse to transfer the funds owned by Savannah Advisors and the Alpha Trust, (5) CMB Bank refused to acknowledge Plaintiff's validly appointed trustees of the Alpha Trust and Directors of Savannah or make any transfer of funds of Savannah as requested by them, (6) Stephan commenced an action in Liechtenstein seeking to remove Plaintiff's appointed trustees

26

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

of the Alpha Trust, (7) Ratnikov, in coordination with Mr. Yegiazaryan, Stephan Yegiazaryan and Dozortseva, has attempted to intervene in the Enforcement Action, Liechtenstein actions and Savannah's action against CMB Bank in Monaco, asserting false claims that he has the right to control Plaintiff's assets, including his interest in the Alpha Trust, and (8) Thielen has fraudulently held himself out as the new "Protector" of the Alpha Trust and directed the removal of Plaintiff's lawfully appointed trustees.

**Defendants Execute a Fraudulent Agreement and Defendant Suren Yegiazaryan Files a False Claim Against the Assets of the Alpha Trust in Nevis**

73.     In an attempt to move their tactics to the Caribbean Island of Nevis and other jurisdictions, Mr. Yegiazaryan, his brother, Artem, and his cousin, Suren, fabricated a handwritten "agreement," purportedly entered into on February 20, 2011. A true and correct copy of the 2011 agreement typewritten in Russian and translated to English is attached hereto as **Exhibit 14**.

74.     Pursuant to the fraudulent and trumped up agreement, Suren supposedly provided Mr. Yegiazaryan with a "personal loan" to pay for legal and living expenses— but in an amount no greater than $20 million—in exchange for one-third of the $180 million Kerimov Award settlement.  The agreement also purportedly required Mr. Yegiazaryan to "compensate" Suren for tens of millions of losses caused to Suren by others that were unrelated to Mr. Yegiazaryan.

75.     For his part, Artem was purportedly required to "fund necessary legal procedures, as well as to render, if necessary, any other financial support" to Mr. Yegiazaryan also in an amount up to $20 million, including expenses in the amount of €550,000 previously paid by Artem.  This "loan" was also in exchange for one-third of the $180 million Kerimov Award settlement and required Mr. Yegiazaryan to "compensate" Artem for losses related to "Sofiyskaya Embankment", another project with which Mr. Yegiazaryan had no involvement.

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

76. Per the agreement, both Suren and Artem were required to "take part in hearings in the court and render other feasible assistance to [Mr. Yegiazaryan]."

77. Just days after Plaintiff's victory in the Liechtenstein Constitutional Court in October 2019, Suren filed a sham action in the Eastern Caribbean Supreme Court (St. Christopher and Nevis) claiming that he was entitled to $180 million based on the fabricated 2011 agreement with Mr. Yegiazaryan (the "**Nevis Action**"). A true and correct copy of Suren's November 5, 2019 Nevis Claim filing is attached hereto as **Exhibit 15**. Significantly, neither Mr. Yegiazaryan nor Suren ever disclosed this purported agreement to Plaintiff prior to the Liechtenstein ruling, nor had Suren or Artem ever tried to enforce the alleged agreement against Mr. Yegiazaryan. That is because the agreement is a post-hoc sham concocted to encumber the Alpha Trust. The "funds" Suren and Artem purportedly provided to Mr. Yegiazaryan were not theirs to begin with, but were funneled from Mr. Yegiazaryan through his companies and surrogates for use by him and his syndicate.

78. When Plaintiff learned of this baseless Nevis Action, he brought a motion to clarify the Post-Judgment Injunction ("**Motion to Clarify**") in the Enforcement Action, requesting that this Court clarify the scope of the Post-Judgment Injunction and its application to the coordinated effort between Mr. Yegiazaryan, Artem, and Suren to encumber the Alpha Trust. In their Oppositions to the Motion to Clarify, Mr. Yegiazaryan and Suren fraudulently misrepresented to the Court and Plaintiff that they were not working together in Nevis and that Mr. Yegiazaryan was opposing the Nevis Action. But that claim was demonstrably false.

79. In January 2020, Suren filed an application for default judgment, which was set for hearing on March 9, 2020. Although Mr. Yegiazaryan represented to this Court that he was opposing the Nevis Action, Mr. Yegiazaryan did not contest Suren's request for default judgment and instead allowed the Nevis Court to enter a $180 million judgment against him. In addition, Defendants intentionally misrepresented the status of the Nevis Action and concealed these facts from both Plaintiff and the Court as part

28

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

of a calculated effort to circumvent this Court's order and move the funds out of the Alpha Trust before Plaintiff could reach the assets. Indeed, on April 3, 2020, Suren took his fraudulently obtained default judgment in the Nevis Action to the Monaco Courts and sought a freeze of the Monaco Account held with Defendant CMB Bank.

**Defendant Vitaly Gogokhia's Files a Fraudulent Claim Against the Assets of the Alpha Trust in the United Kingdom**

80. At the same time that Suren was pursuing fabricated claims in Nevis, Defendant Vitaly Gogokhia, a long-time nominee and convicted accomplice of Mr. Yegiazaryan, was pursuing another sham lawsuit against Mr. Yegiazaryan in the U.K. Like Suren's bogus Nevis Action, Gogokhia's claim was based on a fabricated "agreement" with Mr. Yegiazaryan, but this time Mr. Yegiazaryan and Gogokhia did not even bother to forge a written document and instead claimed they had an "oral" agreement to compensate Gogokhia for his purported investments in Mr. Yegiazaryan's real estate projects through payments from the Alpha Trust—despite the fact that Mr. Yegiazaryan had already paid Gogokhia $5 million from the Alpha Trust. As was the case with Suren's Nevis Action, Mr. Yegiazaryan did nothing to oppose Gogokhia's claim. Instead, in October 2019 Mr. Yegiazaryan and Mr. Gogokhia entered a *stipulated judgment* of £149 million in favor of Gogokhia—an amount that, after conversion, would equal approximately $180 million, roughly corresponding with the amount of funds in the Alpha Trust.

81. On December 9, 2019, Gogokhia sought to enforce his U.K. stipulated judgment in Nevis "against" Mr. Yegiazaryan. On March 13, 2020, Gogokhia filed an ex parte application in Nevis seeking a freeze of Savannah Advisor's assets held in Monaco bank accounts, *i.e.*, the Alpha Trust funds. A true and correct copy of Gogokhia's March 13, 2020 Freezing Order Affidavit is attached hereto as **Exhibit 16**. According to Gogokhia's pleadings, Mr. Yegiazaryan did not object to his action to confirm the stipulated judgment in Nevis or freeze the Alpha Trust assets in Nevis

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

against Savannah Advisors and in Monaco against the Alpha Trust. Gogokhia further instructed Defendant CMB Bank that it was not to release any of the funds of the Monaco Account to Plaintiff. CMB Bank complied.

82. Plaintiff Smagin is not aware of any actions brought by Artem to enforce the purported agreement against the Alpha Trust to date; however, despite the Clarifying Order, Artem still has not disavowed the agreement, and thus an action by Artem in a foreign jurisdiction similar to that brought by Suren in Nevis is possible and could be brought at any time.

**Defendants Natalia Dozortseva and Murielle Jouniaux Attempt to Seize Control of Savannah Advisors and the Alpha Trust Funds to Block Plaintiff's Efforts to Transfer the Funds to a Liechtenstein-Based Bank**

83. On March 2, 2020, the Princely Court of Liechtenstein issued an order awarding Plaintiff the power to remove CTX Treuhand as the trustee of the Alpha Trust and to appoint his own trustees. The order also authorized Plaintiff to demand distribution from the Alpha Trust in satisfaction of the Liechtenstein Judgment. Following this order, Plaintiff nominated two trustees to the Alpha Trust: Rudolf Schächle and Raphael Näscher. Mr. Yegiazaryan appealed the March 2nd decision, but his appeal was rejected by the Court of Appeal on September 15, 2020. The only remaining appeal available to Mr. Yegiazaryan was a limited appeal focusing on constitutional deprivations (e.g., due process and procedural fairness) to the Liechtenstein Constitutional Court.

84. On March 30 and 31, 2020—in direct disregard of the Liechtenstein court's multiple orders eliminating Mr. Yegiazaryan's authority over the Alpha Trust, and without any authority whatsoever to do so—Mr. Yegiazaryan purported to "appoint" Artur Airapetov and Defendant Natalia Dozortseva as trustees of the Alpha Trust by executing two "Instruments of Appointment of Additional Trustees"; he also attempted to add his children (including Defendant Stephan Yegiazaryan) as beneficiaries of the Alpha Trust. True and correct copies of the March 30 and 31, 2020

30

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

Appointments of Additional Trustee are attached respectively hereto as **Exhibit 17** and **Exhibit 18** respectively. The Instruments of Appointment were signed by Mr. Yegiazaryan and apparently sent to his false-trustee counterparts in France and Russia, where the false trustees signed the documents. On April 16, 2020, Mr. Yegiazaryan removed Mr. Airapetov due to health reasons and replaced him with Defendant Murielle Jouniaux as an additional "appointed" trustee of the Alpha Trust. A true and correct copy of the April 16, 2020 Appointment of Additional Trustee is attached hereto as **Exhibit 19**. Dozortseva (together with Jouniaux, the "Trustee Defendants") thereafter filed claims in Nevis seeking to seize control of Savannah Advisors and prevent Plaintiff from accessing the Alpha Trust assets in the Monaco Account. In so doing, they radically misrepresented the dispute between Mr. Yegiazaryan and Plaintiff Smagin, the state of legal affairs as between them, the status and purpose of the relevant entities, and mischaracterized the legal instruments involved.

85. Significantly, on April 27, 2020, the Liechtenstein Office of Justice removed Dozortseva and Airapetov from the Liechtenstein Public Registry following a finding that Mr. Yegiazaryan lacked the authority to appoint them. As it turns out, Defendant Jouniaux was never even registered in the Liechtenstein Public Registry as a trustee of the Alpha Trust. Notwithstanding that removal, the Trustee Defendants continue to hold themselves out as trustees of the Alpha Trust in Nevis, Liechtenstein and Monaco. Moreover, despite knowing that the Trustee Defendants are not authorized appointees of the Alpha Trust, CMB Bank continued to feign ignorance, take spurious legal positions, and wrongfully withhold the Monaco Account funds from the rightful Trustees of the Alpha Trust, as part of Defendants' scheme to defraud, hide, and withhold critical funds from Mr. Yegiazaryan's victims, falsely claiming that it must do so based on the Trustee Defendants' obviously fabricated claims. Following this removal, on July 27, 2020, the Liechtenstein Princely Court commenced an investigation into Dozortseva on the basis that she was "suspected of having committed an offence according to sec. 228 par. 1 of the Penal Code" in connection with her

31

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

conduct with regard to the Alpha Trust. Mr. Yegiazaryan and several of his other accomplices are similarly under criminal investigation in Liechtenstein.

86. On July 20, 2020, Dozortseva filed an ex parte application in the Nevis Court seeking an order (1) appointing herself as a director of Savannah Advisors, (2) restraining Savannah Advisors' exercise of authority over its assets and administration without her written consent, and (3) permitting her to intervene in an action between Savannah Advisors and its registered agent in Nevis, Prestige Trust Company, LTD.

87. On July 3, 2020, Dozortseva's counsel sent a letter to CMB Bank instructing it to disregard the instructions of Plaintiff Smagin's appointed trustees Schächle and Näscher and not to transfer any Alpha Trust funds held in the Monaco Account.

88. On August 5, 2020, knowing the falsehood of Dozortseva's appointment, in its Defense and Counterclaims filed in Monaco, CMB Bank relied on Dozortseva's July letter as the basis of its refusal to transfer of Alpha Trust funds held in the Monaco Account. A true and correct copy of the French original and English translation of CMB Bank's Defense and Counterclaims is attached hereto as **Exhibit 20**.

**Dozortseva Deploys Prestige and Ryals to Impede Savannah Advisors and Block the Lawful Transfer of Alpha Trust Funds from CMB Bank**

89. On July 2, 2020, Prestige sent a letter, executed by H. Edward Ryals, to CMB Bank. The July 2, 2020 letter stated that Ryals "[understood] there was a legal dispute over" the Alpha Trust funds held by Savannah Advisors and had "been directed to ask that we place a hold on the change of directors until the court solves the dispute between the parties." A true and correct copy of July 2, 2020 Letter is attached hereto as **Exhibit 21**. On information and belief, this letter was sent as a deliberate falsehood and was sent as part of Mr. Yegiazaryan's scheme to defraud the court, delay the legal proceedings, and further the goals and purpose of the Yegiazaryan syndicate.

32

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

90.     Also on July 2, 2020, Stevyn Bartlette, managing director of Prestige, emailed Walkers Global, counsel to Savannah Advisors, stating that he had received "alarming news" that Dozortseva and Mr. Yegiazaryan were requesting to be added as directors of Savannah Advisors, and asked, "Who are these people?" A true and correct copy of July 2, 2020 Email is attached hereto as **Exhibit 22**.

91.     On July 15, 2020, a second letter, also executed by Ryals and sent on behalf of Prestige, was sent to CMB Bank. This letter stated: "It is our position that the underlying litigation in Liechtenstein and Nevis should decide who are the officers and directors of Savannah Advisors, Inc. It is our view that the Certificate of Incumbency appointing directors on the 31st of March 2020 should not be used for the purpose of bank signatory accounts in the name of the company until the courts in Liechtenstein and Nevis have ruled on the issue." A true and correct copy of July 15, 2020 Letter is attached hereto as **Exhibit 23**. On information and belief, this letter was sent as a deliberate falsehood and was sent as part of Mr. Yegiazaryan's scheme to defraud the court, delay the legal proceedings, and further the goals and purpose of the Yegiazaryan syndicate.

92.     A declaration filed by Dozortseva in Nevis and a series of communications attached to Dozortseva's filings in Nevis—true and correct copies of which are attached hereto as **Exhibit 24** and **Exhibit 25**, respectively—demonstrate that the July 2, 2020 and July 15, 2020 letters were procured through the efforts of Dozortseva and her counsel, and, on information and belief, they were sent at the request of the Yegiazaryan syndicate for its benefit:

a. On May 15, 2020, counsel for Dozortseva sent a letter to Prestige, asserting that "after the dismissal of CTX by Mr. Smagin, [Mr. Yegiazaryan] was entitled to appoint new trustees" and that "the appointment of Mr. Schachle and Mr. Nascher by Mr. Smagin is not valid in our opinion[.]" The letter further states that for these reasons, Prestige must "refrain from any actions

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

with regard to the assets, shares and management of Savannah without explicit consent of our client[.]"

    b.  On July 1, 2020, Dozortseva contacted Kevin Wessell of General Corporate Services, Inc., whom she believed was a representative of Prestige, and requested to speak to him about Prestige. Sometime shortly thereafter, Dozortseva had a conference call with Mr. Wessel in which she informed him that Savannah Advisors' directors were not properly appointed. (*See* Exhibit 22.)

    c.  On July 2, 2020, Dozortseva sent an email to Mr. Wessell, Mr. Bartlette, and Dozortseva's counsel in Nevis, Monaco, and Liechtenstein, in which she thanked Mr. Wessell for the conference call and his affirmation that Prestige is "a firm that always complies with the law and would never assist the fraudulent party." Dozortseva also stated that she intends to file an ex parte application in Nevis and requested that Mr. Wessell send her the "exact names of current shareholders of Savannah Advisors Inc." to bring before Nevis court.

    d.  On July 2, 2020, Mr. Wessell sent an email to Mr. Bartlette, Dozortseva, and an unknown party at trustcontact15@gmail.com appearing to attach the trustee appointments of Jouniaux and Dozortseva and stating: "Here is the very request to urgently add the new directors to Savannah Advisors."

    e.  On July 15, 2020 (the same date reflected on the second letter sent by Ryals), Ryals sent an email to Dozortseva: "As discussed, please find attached the correspondence that we discussed."

    93.  On July 21, 2020, Walkers Global sent a letter to Prestige, informing it that CMB Bank notified Savannah Advisors that it received the July 2, 2020 from Ryals and that, as a result of the letter, CMB Bank placed a freeze on Savannah Advisors' account holding the Alpha Trust funds. Walkers also reminded Prestige of its duties as an agent of Savannah Advisors and demanded that Prestige execute a letter to CMB Bank

34

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

correcting the false information contained in the July 2, 2020 letter. A true and correct copy of July 21, 2020 Letter is attached hereto as **Exhibit 26**.

94.     On July 28, 2020, Mr. Bartlette emailed Savannah Advisors, informing it that Prestige does not take responsibility for the false letter:

> As indicated, we have nothing to do with the letter submitted to the bank and we would not take any responsibility for that. Also, the contents of that letter would suggest that the bank did not act professional as a bank should. How can someone just submit a letter like this with no supporting documents, and the bank accepts that? We would not take responsibility for the bank taking such decision.

95.     Mr. Bartlette agreed to draft a correction letter explaining that the July 2, 2020 letter to CMB Bank was fraudulent, but informed Savannah Advisors that there would be a "fee" for this correction. A true and correct copy of July 28, 2020 Email is attached hereto as **Exhibit 27**.

96.     Despite Prestige's agreement to provide a corrective letter, Dozortseva and her counsel continued to put pressure on Ryals. On August 4, 2020, Dozortseva's attorney, Natasha Grey, requested that Ryals "issue fresh correspondence" detailing Dozortseva's understanding that Ryals "would have issued some documentation prior to Nevis court proceedings being filed - namely, a fresh directors register and certificate of incumbency, that the named directors (JGT Treuuntemehmen reg. and Silvio Vogt) has no powers to act on behalf of Savannah Advisors Inc., and that both of these documents cannot be relied on by any party."

97.     On August 4, 2020, Mr. Ryals responded to Ms. Grey's email: "This will confirm that I wrote and executed the July 15, 2020 letter that is attached to your email. I am also aware that there is ongoing litigation in several jurisdictions." A true and correct copy of August 4, 2020 Email is attached hereto as **Exhibit 28**.

Baker & McKenzie LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

**The Court Finds that Mr. Yegiazaryan, Suren, Artem, Gogokhia and Mr. Yegiazaryan's Trustees Were Acting in Concert to Prevent, Hinder or Delay Plaintiff's Judgment**

98.     On April 1, 2020, this Court issued its order on Plaintiff's Motion to Clarify the scope of the Court's post-judgment injunction (the "**Clarifying Order**"). (Enforcement Action, ECF 245.) The Court found that Mr. Yegiazaryan, Artem, Suren, and Gogokhia were acting in concert and must cease their actions to prevent, hinder and delay Plaintiff's ability to collect on the assets of the Alpha Trust:

> Mr. Yegiazaryan, his cousin Suren Yegiazaryan, his brother Artem Yegiazaryan, Vitaly Gogokhia, the trustees of the Alpha Trust and any others acting on behalf of Mr. Yegiazaryan, directly or indirectly, including but not limited to attorneys or nominees for each of these parties must immediately cease all actions in Nevis or any other jurisdiction that would prevent, hinder, or delay Mr. Smagin's ability to collect on the assets of the Alpha Trust pursuant to the current and forthcoming orders of the Liechtenstein Court or this Court.

> To the extent any such enforcement actions have already begun, they must be immediately stopped and any funds held by or on behalf of Suren Yegiazaryan or Judgment Debtor Yegiazaryan must be immediately returned to the Monaco Bank Account of Savannah Advisors, or any other location, from which they came. (Clarifying Order, Enforcement Action, ECF 245 at 8.)

99.     Based on Defendants' ongoing violations of the Post-Judgment Injunction, on July 9, 2020 this Court issued another order imposing additional restrictions on Defendants:

> The Court . . . prohibits Defendant, or his trustees, associates, attorneys or agents, from making or attempting to make any further modifications to the Alpha Trust, including but not limited to the addition or substitution of trustees or beneficiaries, without first obtaining this Court's approval. It likewise prohibits Defendant

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

from making any attempt to alter or amend the administration of either the company Savannah Advisors or the Monaco bank account, or from taking any further actions with respect to those entities, without this Court's approval. To the extent that any such acts are in progress, they must be stopped.

**The Court Finds Mr. Yegiazaryan in Contempt of Court**

100.    As a result of Dozortseva's attempt to intervene in Nevis, on September 16, 2020, this Court found Mr. Yegiazaryan in contempt of the July 9 and April 1 Orders ("**Contempt Order**").  (Enforcement Action, ECF 315.)  Pursuant to the Contempt Order, Mr. Yegiazaryan was required to order Dozortseva to withdraw her application and related filings seeking to intervene Nevis "or elsewhere seeking relief related to the Alpha Trust and/or Savannah Advisors." (ECF 315 at 6.)  In the event Dozortseva failed to comply, Mr. Yegiazaryan was required to remove her as a trustee.  Failure to provide the Court with proof of compliance within seven days would result in the issuance of sanctions in the amount of $2,000 a day.

101.    Following the Contempt Order, Dozortseva refused to withdraw her action in Nevis and, in violation of the order, Mr. Yegiazaryan did not remove Dozortseva. Instead, on September 23, 2020, Mr. Yegiazaryan falsely claimed that he was too ill to sign a document removing her.  (Enforcement Action, ECF 320.)  In an attempt to bolster this story, on September 29, 2020, Mr. Yegiazaryan submitted to the Court a falsified or altered "doctor's note" from Dr. Julia Sverdlova of Medistar, Inc. purporting to support of his claims of illness.  (Enforcement Action, ECF 326-1, 326-2.)

102.    Believing that the "doctor's note" was forged, on October 7, 2020, Plaintiff served Mr. Yegiazaryan with notice that Plaintiff would be taking the deposition of Dr. Sverdlova and requesting that she produce documents relating to her purported treatment of Mr. Yegiazaryan's alleged medical emergency pursuant to a deposition subpoena.  Plaintiff believes that Mr. Yegiazaryan, upon receiving notice of the subpoena, knowingly used intimidation, threats, or corrupt persuasion to influence Dr.

37

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Sverdlova, a witness residing in California, to avoid service of the subpoena with the intent to delay or prevent her from providing documentary and testimonial evidence in connection with the Enforcement Action. Sverdlova now claims she has a medical condition that prevents her from being deposed.

103. Despite apparently no longer suffering from any purported medical emergencies, Mr. Yegiazaryan still has not removed Dozortseva as a "trustee" of the Alpha Trust. Dozortseva has continued to interfere with the proceedings in Nevis and Monaco along with Ratnikov.

**Mr. Yegiazaryan Purports to Appoint Thielen as "Protector" of the Alpha Trust**

104. Although Mr. Yegiazaryan represented to the Court on September 23, 2020 that he was too ill to execute a document removing Dozortseva as a trustee, that very same day he executed a Notice of Transfer of Powers of the Alpha Trust purporting to appoint Defendant Alexis Gaston Thielen as Protector of the Alpha Trust, despite having no authority whatsoever to do so. Thus, not only were his representations to the Court regarding his inability to sign documents removing Dozortseva demonstrably false, but, even in the face of contempt sanctions, he has continued to further his scheme to hinder, delay and defraud Plaintiff. A true and correct copy of the September 23, 2020 Notice of Transfer of Powers of the Alpha Trust Instrument is attached hereto as **Exhibit 29**.

105. On October 28, 2020, Defendant Thielen executed an Instrument of Removal, purporting to remove the Trustees Schächle and Näscher for failing to "act unanimously" with Dozortseva and Jouniaux. A true and correct copy of the Instrument of Removal is attached hereto as **Exhibit 30**.

**CMB Bank Knowingly Perpetuates Defendants' Fraud**

106. On July 3, 2020, Plaintiff's legally appointed directors of Savannah Advisors directed CMB Bank to transfer the assets of the Alpha Trust from the Monaco Account at CMB Bank to a Liechtenstein account of Savannah Advisors. Rather than

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

complying with the request, CMB Bank schemed with Mr. Yegiazaryan to hinder, delay or defraud Plaintiff in the collection of and execution on his $92 million judgment. This makes sense, of course, because CMB Bank was selected by Mr. Yegiazaryan precisely for its willingness to defy fair and reasonable banking practices, to collaborate with Mr. Yegiazaryan to further his criminal syndicate, and to benefit financially by participating in his fraudulent schemes and hiding of assets and funds.

107. In furtherance of Defendants' scheme, CMB Bank refused to make any transfer of funds to Liechtenstein on the basis that Suren, Gogokhia and Dozortseva also had claims pending against the Monaco Account's assets. CMB Bank was fully aware that these claims were false and fraudulent, as evidenced by the numerous notifications of such provided to CMB Bank, including orders from several courts (including this court). However, for pretextual purposes, CMB Bank relied on the bogus claims of Mr. Yegiazaryan and his nominees to refuse to release the funds, and that forced Trustees Schächle and Näscher to order the Directors of Savannah to commence the Monaco Action against CMB Bank.

108. All of CMB Bank's actions (among others) evidence its notice and knowledge that its receipt of the Kerimov Award proceeds and its subsequent retention of those funds for the benefit of Mr. Yegiazaryan and the syndicate were fraudulent. Despite having this knowledge, CMB Bank created the Monaco Account and accepted payment from Mr. Yegiazaryan and Gibson Dunn in an effort to obstruct Plaintiff's ability to reach the funds in satisfaction of the London Award and the subsequent California Judgment. It continues to follow Mr. Yegiazaryan's instructions, and those of his nominees, by exchanging full information and documents with Mr. Yegiazaryan, Dozortseva and others on their behalf, and refusing to release the funds to Savannah Advisors with absolutely no basis and based on claims that it knows to be false and fraudulent. Indeed, CMB Bank refuses to send even simple account statements to the legally appointed directors of Savannah Advisors, but still sends these statements to

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

1  CTX Treuhand, the former directors, despite the fact that CTX Treuhand has confirmed
2  in writing that Schächle and Näscher were the new directors of Savannah Advisors.

### Defendant Stephan Yegiazaryan Asserts a Fraudulent Claim to Remove Plaintiff's Appointed Trustees in Liechtenstein

109.    On August 5, 2020, well after the Court ordered Suren and Gogokhia to cease their actions, Stephan Yegiazaryan—Ashot Yegiazaryan's son and purported discretionary beneficiary of the Alpha Trust—filed a fraudulent "Report" in the Princely Court of Justice in Liechtenstein seeking to remove Trustees Schächle and Näscher as trustees of the Alpha Trust and prohibit them from transferring any of the assets from the Monaco Account.   A true and correct copy of the German original and English translation of the August 5, 2020 Report is attached hereto as **Exhibit 31**. Stephan's Report was filed in furtherance of Defendants' scheme to hinder, delay or defraud Mr. Yegiazaryan's creditors.

110.    On August 24, 2020, the Liechtenstein Court rejected Stephan's requests and ordered him to reimburse Plaintiff and Trustees Schächle and Näscher for their costs of litigation.   A true and correct copy of the German original and English translation of the August 24, 2020 Ruling is attached hereto as **Exhibit 32**.

### Defendant Ratnikov Evgeny Nikolaevich Injects Himself into the Enforcement Action, Liechtenstein Action and Monaco Action

111.    On August 20, 2020, the Arbitrazh [State Commercial] Court of Moscow ("**Moscow Commercial Court**") commenced a debt restructuring process against Plaintiff and appointed Ratnikov as financial manager of the proceedings (Case No. A40-17597/20-4-36 Ф).   The approximately $15 million in debts at issue in the proceedings—primarily outstanding loans granted to Plaintiff to fund attorneys' fees during the LCIA litigation—arose out Plaintiff decades years-long effort to recover on the London Award and resulting California and Liechtenstein judgments and to protect the Alpha Trust funds against attacks from Mr. Yegiazaryan and his associates.

40

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

112.    The debt restructuring phase of Russian bankruptcy proceedings is the first phase of a two-stage proceeding.  During this stage, Plaintiff is not declared bankrupt and Ratnikov is not entitled to dispose of Plaintiff's assets or take over legal proceedings or Judgments Plaintiff Smagin is bringing or pursuing.

113.    On information and belief, Ratnikov is colluding with Mr. Yegiazaryan to try to reduce or nullify his debt and judgments to Plaintiff Smagin.  They are conspiring together by sharing information and working in tandem together for the improper purpose of delaying and hindering Plaintiff's enforcement efforts.  On September 7, 2020, Ratnikov, in collusion with Mr. Yegiazaryan, sent a "notification" letter to CMB Bank ("**Notification Letter**") requesting that CMB Bank prevent any transfer of the Alpha Trust funds by Plaintiff, on his behalf, or in his favor and "impose a ban on the disposal of the funds of the Alpha Trust" by Plaintiff.  The question must be asked, why would Ratnikov, a supposed financial manager who claims to be trying to deal with debt of Plaintiff Smagin that is estimated at $15 million try to stop or block Smagin from recovering over $100 million in funds from the Alpha Trust, an amount that could easily cover the debt he is supposedly addressing?  The answer is that Ratnikov is not a bona fide, impartial financial manager.  Rather, he is an agent of Mr. Yegiazaryan's enterprise working to impede Plaintiff Smagin's debt collection.  A true and correct copy of the French original and English translation of the Notification Letter of Ratnikov to CMB, which were attached to Dozortseva's Nevis Filing, is attached hereto as **Exhibit 33**.  As evidence of Ratnikov's collusion with the Yegiazaryan syndicate, on September 7, 2020, Ratnikov emailed his Liechtenstein intervention papers to Mr. Yegiazaryan's counsel in advance of his submission to the Liechtenstein courts.  A true and correct copy of the September 7, 2020 Ratnikov Email is attached hereto as **Exhibit 34**.

114.    In addition, Ratnikov is over-stating his credentials to delay and excuse critical court proceedings that Plaintiff Smagin is pursuing to recover the Liechtenstein Judgment and California Judgment.  For example, on September 8, 2020, counsel for

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

41

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

Ratnikov informed the Court in the Enforcement Action via email that Ratnikov intended to intervene in the action to supplant Plaintiff in the case and assume his rights to recover on the California Judgment. Ratnikov's counsel also falsely claimed that Ratnikov is an insolvency offer and that Plaintiff had been deemed bankrupt by the Russian courts. Less than twenty minutes later, counsel sent a follow-up email acknowledging that the bankruptcy proceedings are in the early stages, but still asserted that "a claim to declare Mr. Smagin insolvent has been found to be justified." A true and correct copy of the September 8, 2020 Ratnikov Emails is attached hereto as **Exhibit 35**.

115. On September 11, 2020, Ratnikov filed a Request for Interruption in the Liechtenstein courts to replace Plaintiff in Plaintiff's pending action to enforce the Liechtenstein Judgment against the Alpha Trust.

116. On September 14, 2020, Ratnikov filed a Motion to Intervene in the Enforcement Action. (Intervention Motion, Enforcement Action, ECF 312.) Ratnikov argued that intervention was necessary to "monitor" and "consent to" Plaintiff's transactions, despite the fact that there are no transactions before the Court or pending in the Enforcement Action. Ratnikov also claimed that he may be required to sell Plaintiff's rights under the London Award, even though he admitted he had no such authority at this time.

117. On September 18, 2020, Dozortseva attached Ratnikov's Notification Letter to a filing she made in Nevis. On information and belief, Mr. Yegiazaryan put the Ratnikov Notification Letter in Dozortseva's hands as part of his coordination of the enterprise efforts to thwart Plaintiff Smagin.

118. On September 24, 2020, in a filing in the Monaco Action, CMB Bank cited Ratnikov's Notification Letter as a reason why it should not turn over the Alpha Trust funds to Savannah.

119. In a further effort coordinated by Mr. Yegiazaryan, on September 30, 2020, Ratnikov appeared with Dozortseva in the Monaco Action seeking to intervene in that

42

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

case and urging the Court to freeze the assets of the Alpha Trust so that Plaintiff could not reach them.

120.   On October 5, 2020, Ratnikov filed a declaration in the Monaco Action seeking to intervene on these bases.  A true and correct copy of French original and English translation of Ratnikov's October 5, 2020 Monaco Action Declaration is attached hereto as **Exhibit 36**.

121.   On October 15, 2020, Ratnikov's counsel sent a letter to Trustees Schächle and Näsche Rudolf stating that, at this stage in the bankruptcy proceedings, Ratnikov "is obliged to control the assets of [Plaintiff] and his (intended) asset dispositions." Ratnikov's counsel further informed the Trustees that the transfer of the Alpha Trust assets from Monaco to Liechtenstein is "illegal" and threatened the Trustees—claiming they will be "held accountable" if such transfers are made.  A true and correct copy of the German original and English translation of the Trustee Letter is attached hereto as **Exhibit 37**.

122.   It is apparent from his filings and appearances that Ratnikov is privy to nonpublic information regarding the litigation between Mr. Yegiazaryan and Plaintiff and relating to the Alpha Trust and that he came about these documents and this information from Mr. Yegiazaryan.  Notably, the dockets in Liechtenstein and Monaco are not open to the public, and therefore Ratnikov must have been informed of those proceedings by a party to the proceedings or someone with knowledge thereof.  On information and belief, it was through Mr. Yegiazaryan.  Further, in the Monaco Action, Ratnikov produced copies of the London Award and the Liechtenstein Court's March 2, 2020 ruling, which were not publicly filed and are not in Plaintiff's possession.  These documents could only have been provided to Ratnikov by Mr. Yegiazaryan.

123.   On October 7, 2020, Ratnikov's counsel emailed a letter to Plaintiff Smagin's counsel stating that he was aware that Mr. Yegiazaryan had deposited $12,000 in contempt sanctions in a client trust account with Plaintiff's counsel.  Again, this information was not public and the only way Ratnikov could have obtained it is from

43

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

Mr. Yegiazaryan or his counsel. A true and correct copy of the October 7th Letter is attached hereto as **Exhibit 38**.

124. On October 15, 2020, Ratnikov's counsel sent an additional letter to counsel for Plaintiff Smagin claiming that Plaintiff's counsel could not continue to represent him and asserting, without any basis, that Mr. Yegiazaryan was now subject to Russian bankruptcy proceedings that prevented Plaintiff from recovering from Mr. Yegiazaryan. A true and correct copy of the October 15th Letter is attached hereto as **Exhibit 39**. However, there is no legitimate basis for this claim and, what is more, Ratnikov's position directly contradicts his assertion that he is a purported insolvency officer acting for the benefit of Plaintiff's creditors in Russia. Indeed, as noted above, if he was acting in the interest of such creditors, he would do everything in his power to assist Plaintiff in recovering the judgment from Mr. Yegiazaryan to pay those creditors, not obstruct Plaintiff's ability to enforce his judgment. This is, of course, because he is not a legitimate agent of the Russian court as he holds himself out to be, but rather is yet another agent in Mr. Yegiazaryan's army of nominees; Ratnikov is supporting the fraudulent scheme and takes instructions from Mr. Yegiazaryan and acts for the benefit of Mr. Yegiazaryan's enterprise.

125. On November 9, 2020, this Court denied Ratnikov's motion to intervene for failure to comply with Chapter 15 of the Bankruptcy Code. (Enforcement Action, ECF 346.)

126. All of Ratnikov's conduct—including fraudulently holding himself out as the insolvency officer for Plaintiff Smagin, making misrepresentations to this Court about the status of the bankruptcy proceedings in Russia and his role in such proceedings, attempting to intervene in Plaintiff's Enforcement Action, Liechtenstein court proceedings and the Monaco Action and misrepresentations to Plaintiff—was done with the intent to further Defendants' scheme to hinder, delay and defraud Plaintiff and this Court.

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

# FIRST CLAIM FOR RELIEF

## (Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) — Against all Defendants)

127. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 144, inclusive, as set forth above.

128. Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and Ryals are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

129. Defendants' conduct constitutes a "pattern" of racketeering activity under 18 U.S.C. § 1961(5) because their activities include at least two acts of racketeering activities in the past 10 years, including, but not limited to, the following acts:

f. Ashot Yegiazaryan fraudulently created the Alpha Trust and Savannah Advisors by executing instruments in California that he transmitted to CTX Truehand in Liechtenstein using transmissions in interstate or foreign commerce.

g. Suren Yegiazaryan initiated a fraudulent lawsuit in Nevis against Ashot Yegiazaryan and Savannah from California based on forged documents in Eastern Caribbean Supreme Court (St. Christopher and Nevis) using transmissions in interstate or foreign commerce.

h. Ashot Yegiazaryan intentionally filed documents with this Court in the Enforcement Action containing material misrepresentations and false statements, including, for example, that Mr. Yegiazaryan was contesting the Nevis Action, to deceive the Court using transmissions in interstate or foreign commerce.

i. Suren Yegiazaryan submitted his fraudulently obtained default judgment in the Nevis Action to the Monaco Courts and sought a freeze of Monaco

45

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

Account held with Defendant CMB Bank using transmissions in interstate or foreign commerce.

j. Ashot Yegiazaryan and Gogokhia entered a fraudulent stipulated judgment against Mr. Yegiazaryan and in favor of Gogokhia in the United Kingdom using transmissions in interstate or foreign commerce, on which they subsequently sought to enforce that stipulated judgment against Savannah through a sham lawsuit in Nevis.

k. Vitaly Gogokhia filed a fraudulent ex parte application in Nevis seeking a freeze of Savannah Advisor's assets held in Monaco bank accounts, *i.e.*, the Alpha Trust funds using transmissions in interstate or foreign commerce. Vitaly Gogokhia further instructed Defendant CMB Bank that it was not to release any of the funds of the Monaco Account to Plaintiff.

l. Ashot Yegiazaryan fraudulently appointed Defendant Trustees and Thielen to "administer" the Alpha Trust using transmissions in interstate or foreign commerce.

m. Defendant Trustees and Ashot Yegiazaryan procured fraudulent letters from Ryals and Prestige to hinder Savannah Advisors' efforts to transfer the Alpha Trust funds from its account with CMB Bank in Monaco using transmissions in interstate or foreign commerce.

n. Ashot Yegiazaryan submitted forged or altered documents to this Court in the form of a letter from Dr. Julia Sverdlova in an attempt to deceive the Court with regard to his failure to comply with the Court's Contempt Order using transmissions in interstate or foreign commerce.

o. Ashot Yegiazaryan knowingly used intimidation, threats, or corrupt persuasion to influence Dr. Sverdlova, a witness residing in California, to avoid service of the subpoena with the intent to delay or prevent her from providing documentary and testimonial evidence in connection with the Enforcement Action.

46

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

p. Ratnikov intervened in Monaco, Liechtenstein, and this Court, using transmissions in interstate or foreign commerce, fraudulently holding himself out as a Russian insolvency officer and falsely claiming that he has the authority to take over Plaintiff's enforcement action against Mr. Yegiazaryan.

q. Defendant Trustees intervened in Monaco using transmissions in interstate or foreign commerce to confuse the court and support CMB Banks efforts to deny Savannah Advisors to exercise its control over its funds held therein.

130.    Savannah Advisors is a legal entity and constitute the "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c). At all relevant times, Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Thielen, Prestige and Ryals conducted, participated in, engaged in, and operated and managed (directly or indirectly) the affairs of Savannah Advisors through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).

131.    In the alternative to Paragraph 130, Ashot Yegiazaryan, Suren, Artem Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and Ryals (or any subset thereof) constituted an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(c), in that they were "a group of individuals associated in fact" for the common purpose of intentionally and willfully defrauding Plaintiff and this Court through a scheme to fraudulently file claims and actions in multiple jurisdictions to encumber the assets of the Alpha Trust and prevent Plaintiff from recovering his judgment.

132.    All Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity for the unlawful purpose of intentionally defrauding Plaintiff.

133.    Defendants' racketeering acts consisted of, but are not limited to, multiple acts of wire fraud, including submitting fraudulent documents through interstate or

47

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

foreign commerce to create the Alpha Trust and Savannah Advisors, fraudulently "appoint" Defendant Trustees and Thielen to positions of authority over the Alpha Trust, and direct Defendants to pursue sham litigations in various jurisdictions. Additionally, Defendants have engaged in witness tampering and obstruction of justice and made numerous false statements of facts and law in courts of various jurisdictions as outlined above. All of Defendants acts were committed for the unlawful purpose of intentionally defrauding Plaintiff and furthering the interests of the enterprise. As explained in detail above, the Defendants coordinated their activities, shared critical information and documents that support their enterprise, and acted in concert to further the interests of the enterprise.

134. All of the acts of racketeering described herein were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. §1962(c), in that their common purpose was to further the interests of Mr. Yegiazaryan and his real estate fraud schemes, plus hide funds and assets of the enterprise, and deny and defraud their victims, including Plaintiff Smagin of money and property. They further sought to place Mr. Yegiazaryan's assets and funds beyond the reach of Plaintiff Smagin and this Court; their common result and goal was to defraud Plaintiff of money and property and/or to place Mr. Yegiazaryan's assets beyond the reach of Plaintiff and this Court; Mr. Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and Ryals, through their employees, members, or agents, directly or indirectly, participated in the acts and employed the same or similar methods of commission; Plaintiff was the victim of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

135. To the extent Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and Ryals have suspended their acts of racketeering against Plaintiff, they have only done so because of legal action taken by Plaintiff, including this Court's post-judgment injunction

48

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

entered against Mr. Yegiazaryan and his agents and nominees. The ongoing nature of Defendants' pattern of racketeering is not obviated by this fortuitous interruption.

136. As a direct and proximate result of, and by reason of, the activities of Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and Ryals and their conduct in violation of 18 U.S.C. §1962(c), Plaintiff was injured in his business or property, within the meaning of 18 U.S.C. §1964(c). Among other things, Plaintiff suffered damages and injury to his property, including specifically damage to his California Judgment, including without limitation in the form of decreased value of the assets to be levied upon caused by Defendants' delay and interference; damages from Defendants' fraudulent transfers; delay and loss in the use, enjoyment, benefits, profits, revenues, interest and interests and delay and loss of opportunity to execute on and recover against the property fraudulently transferred and/or encumbered resulting from the delay and interference; damage caused by waste, loss, plunder, and devaluation of the assets committed by Mr. Yegiazaryan during the delay and interference; damages in the form of attorney fees and costs resulting from the interference, including attorney fees incurred in California, U.K., Russia, Nevis, Monaco and Liechtenstein and costs incurred in addressing the fraudulent conduct in litigation; and all other damages, injuries, and harms caused by the fraudulent transfers and interference. Plaintiff is, therefore, entitled to recover threefold the damages he sustained together with the cost of the suit, reasonable attorneys' fees and reasonable experts' fees.

137. WHEREFORE Plaintiff demands judgment against Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige and Ryals jointly and severally, for the following: Treble damages pursuant to 18 U.S.C. §1964(c); Attorney fees and costs pursuant to 18 U.S.C. §1964(c); and such other and further relief as this Court may deem just and proper.

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

## SECOND CLAIM FOR RELIEF

## (Civil RICO Conspiracy—18 U.S.C. § 1962(D) — All Defendants)

138.   Plaintiff realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 144, inclusive, as set forth above.

139.   As alleged in Count I, one or more of the following individuals violated 18 U.S.C. § 1962(c): Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige and Ryals.  Any person(s) who is found to have violated 18 U.S.C. § 1962(c) is hereafter referred to as the "Operator / Manager" for the remainder of this Count.

140.   Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and/or Ryals conspired with the Operator(s)/Manager(s) to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises, defined *supra*, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

141.   In particular, Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and/or Ryals intended to or agreed to further an endeavor of the Operator(s)/Manager(s) which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c)) and adopted the goal of furthering or facilitating the criminal endeavor. Defendants' conduct includes, but is not limited to:

    r.  Defendants Suren, Gogokhia, Stephan, Trustee Defendants, and Ratnikov agreed to file fraudulent claims or fraudulently intervene in court cases in various jurisdiction to hinder, delay or prevent Plaintiff from enforcing his judgment;

    s.  Trustee Defendants and Defendant Thielen agreed to fraudulently misrepresent their authority over the Alpha Trust and use such false color of authority to obstruct Plaintiff's access to the trust assets in order to hinder, delay or prevent him from enforcing his judgment;

50

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

t.  Defendant Ryals and Defendant Prestige agreed to procure fraudulent letters for the purposes of hindering Plaintiff's access to the Alpha Trust funds held in CMB Bank in Monaco; and

u.  Defendant CMB Bank agreed to create and maintain the Monaco Account as a vehicle to secrete Mr. Yegiazaryan's assets and shield the funds from Plaintiff's enforcement actions.

142.  Plaintiff was injured by Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux Ratnikov, Thielen, CMB Bank, Prestige, and/or Ryals' overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which included (among other acts) acts of wire fraud, witness tampering and obstruction of justice committed through the enterprises alleged in Count I.

143.  As a direct and proximate result of, and by reason of, the activities of Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and/or Ryals and their conduct in violation of 18 U.S.C. §1962(d), Plaintiff was injured in his business or property, within the meaning of 18 U.S.C. §1964(c).  Among other things, Plaintiff suffered damages, i.e., damages for the fraudulent transfers; decreased value of the assets to be levied upon caused by the delay and interference; delay and loss in the use, enjoyment, benefits, profits, revenues, interest and interests and delay and loss of opportunity to execute on and recover against the property fraudulently transferred and/or encumbered resulting from the delay and interference; damage caused by waste, loss, plunder, and devaluation of the assets committed by Mr. Yegiazaryan during the delay and interference; attorney fees and costs resulting from the interference, including attorney fees and costs incurred in setting aside the fraudulent actions; all other damages, injuries, and harms caused by the fraudulent actions and interference. Plaintiff is therefore, entitled to recover threefold the damages he sustained together with the cost of the suit, reasonable attorneys' fees and reasonable experts' fees.

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA  90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

# **PRAYER FOR RELIEF**

144.  WHEREFORE Plaintiffs demand judgment against Ashot Yegiazaryan, Suren, Artem, Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and Ryals jointly and severally, for the following:

    a.  all actual damages suffered as a result of this fraudulent scheme, in an amount no less than $130 million, which amount grows daily due to the applicable interest;

    b.  Costs and attorneys' fees he has incurred dealing with bogus and trumped up litigations, disputes and claims in numerous legal forums around the world;

    c.  treble damages pursuant to 18 U.S.C. §1964(c);

    d.  attorney fees and costs pursuant to 18 U.S.C. §1964(c);

    e.  pre-and post-judgment interest;

    f.  and such other and further relief as this Court may deem just and proper.

Dated:  December 10, 2020        BAKER & McKENZIE LLP


By:/s/ Nicholas O. Kennedy
Nicholas O. Kennedy
Attorneys for Plaintiff
VITALY IVANOVICH SMAGIN

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES

Baker & McKenzie LLP
1901 Avenue of the Stars,
Suite 950
Los Angeles, CA 90067
Tel: 310.201.4728

1    **JURY DEMAND**

2    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Smagin

3    demands trial by jury in this action of all issues so triable.

4

5    Dated:   December 10, 2020          BAKER & McKENZIE LLP

6

7                                        By:/s/ Nicholas O. Kennedy
                                          Nicholas O. Kennedy
8                                         Attorneys for Plaintiff
                                          VITALY IVANOVICH SMAGIN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO.
CIVIL RICO COMPLAINT FOR DAMAGES