# EXHIBIT 4

[handwritten:] [illegible] *16.01.2020 iv*



StGH 2018/111

# STATE COURT OF THE PRINCIPALITY OF LIECHTENSTEIN

[stamp:] RECEIVED Dec 19 2019

## IN THE NAME OF THE PRINCE AND THE PEOPLE

## JUDGMENT

The State Court of Justice as a Constitutional Court has, in its non-public meeting of 29 October 2019, in which the following persons participated: lic. iur. Marco Ender as ad hoc chairman; Prof. Peter Bussjäger and Prof. August Mächler as judges; Mirjam Amann and lic. iur. Brigitte Vogt as ad-hoc judges as well as Gitte Schädler as a secretary

in the complaint

| | |
|---|---|
| Plaintiff: | Ashot Egiazaryan<br>910 North Crescent Drive<br>US-Beverly Hills, CA 90210<br><br>represented by:<br>Advocate Beck & Partner AG<br>9495 Triesen |
| Respondent: | Vitaly Ivanovich Smagin<br>Krasnoproletarskaya st., h 9<br>R-127006 Moscow<br><br>represented by:<br>Advocate Seeger, Frick & Partner AG<br>9494 Schaan |
| Involved party: | CTX Treuhand AG as trustee of the Alpha Trust<br>9490 Vaduz<br><br>represented by:<br>Wilhelm & Büchel Attorneys<br>9490 Vaduz |
| Authority petitioned: | Princely Supreme Court, Vaduz |
| against: | Decision of the Princely Supreme Court of 7 |

September 2018, 08 EX.2016.5802-72

due to:                    Violation of constitutional rights
                           guaranteed by the ECHR (amount in
                           dispute: CHF 100,000.00)

**recognised:**

1.      The individual complaint is not accepted. The Plaintiff's constitutional rights
        guaranteed by the ECHR were not breached by the contested decision of the
        Princely Supreme Court of 7 September 2018, 08 EX.2016.5802-72.

2.      The provisional procedure for StGH 2018/111 is discontinued.

3.      The Plaintiff is ordered to reimburse the Respondent its legal expenses, in the
        amount of CHF 2,494.80 within four weeks for other executions.

4.      The Landeskasse must reimburse the Plaintiff for the court fees of CHF 25.00 that
        were overpaid with the value date of 21 September 2018. The remaining court fees
        of CHF 4,825.00 will be borne by the Plaintiff.

**FACTS**

1.      With the decision or execution approval dated 21 November 2016 (ON 3), the
        District Court decided as follows:

        "Based on the enforceable award of the London Court of International Arbitration
        (LCIA), London, Great Britain, of 11 November 2014 (corrected by decision of 9
        January 2015) on case no. 101721, in arbitration by the Plaintiff, Vitaly Ivanovich
        SMAGIN [Respondent], Krasnoproletarskaya st., H. 9, 127006 Moscow, Russia,
        against Defendant 1. KALKEN HOLDINGS LIMITED, 15 Agiou Paviou Street,
        Ledra House, Agios Andreas 1105, Nicosia, Cyprus, and 2. Ashot YEGIAZARYAN
        [Plaintiff], 655 Endrino Place, Beverly Hills, California, United States

        For the prosecuting party, Vitaly Ivanovich SMAGIN, Krasnoproletarskaya st., h.9,
        127006 Moscow, Russia,

        against the liable party Ashot YEGIAZARYAN, 655 Endrino Place, Beverly Hills,
        California, United States of America,

For bringing in the enforceable claim of
a.  USD 72,243,000.00 (principal), and
b.  USD 6,899,701.32 (capitalized interest) and
c.  GBP 2,776,473.68 and USD 672,354.08 and RUB 2,958,750.00 (at cost) and
d.  Additional interest at a quarterly compounded annual interest rate of 8% from
    USD 72,243,000.00 and USD 6,899,701.32 since 11 November 2014, and
e.  the costs of the execution request, determined at CHF 63,880.00,

the execution is approved by

1.    <u>seizure</u> of the obligated party as trustor, protector and beneficiary of the
      Alpha Trust (FL-0002.510.771-1), c/o JD Thomas Wilhelm, Lova Centre,
      9490 Vaduz, against

      CTX Treuhand Aktiengesellschaft as trustee of the Alpha Trust (FL- 0002-
      510.771-1), c/o JD Thomas Wilhelm, Lova Centre, FL- 9490 Vaduz,

      overall rights, in particular the right to receive payments and benefits of all
      kinds from the trust, the right to appoint and dismiss the trustees of the Alpha
      Trust (Art. (2) Written Instrument from 2 June 2015), the right of the trustee
      to terminate of the trust (Art. 3, 14.3 Declaration of Trust in conjunction with
      Art. (1) and (2) of the Written Instrument), the right of the trustee to appoint
      the beneficiaries of the Alpha Trust (Art. 8, 14.3 Declaration of Trust in
      conjunction with Art. (1) and (2) of the Written Instrument), the right of the
      trustee to change the trust deeds of the Alpha Trust (Art. 12, 14.3
      Declaration of Trust in conjunction with Art. (1) and (2) of the Written
      Instrument), the right of the trustee to delegate all of the Trustee's rights,
      including its discretionary powers (Art. 11, 14.3 Declaration of Trust in
      conjunction with Art. (1) and (2) of the Written Instrument), the Trustee's
      right to exercise all of the rights specified in the First Schedule of the
      Declaration of Trust placed rights (Art. 11, 14.3 Declaration of Trust in
      conjunction with Art. (1) and (2) of the Written Instrument) and the rights as
      asset manager of the trust (Minutes of a Meeting of the Directors of CTX
      Treuhand AG before 3 June 2015).

2.    The liable party Ashot YEGIAZARYAN shall be issued the order to abstain
      from any disposal of the rights indicated above (1.).

3.    To CTX Treuhand Aktiengesellschaft as trustee of the Alpha Trust (FL-
      0002-510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, FL-9490
      Vaduz, will prohibit from these claims or while exercising these rights (1.),
      to provide the liable party, Ashot YEGIAZARYAN and/or any third party, in
      particular instructions from the party to comply with Ashot YEGIAZARYAN
      and/or to accept the consent of the liable party Ashot YEGIAZARYAN and
      to base their decisions therein.

4.    Those claims already seized by the claim execution order of the Princely



Regional Court from 24 February 2016, 08 EX.2016.839, ON 4, namely those of the obliged party due to its legal status as beneficial owner, trustor, beneficiary and client of the Alpha Trust or other fiduciary relationships against the third-party debtors (i) CTX Treuhand AG as trustee of the Alpha Trust, (ii) Dr Thomas Wilhelm and (iii) Nikolaus Wilhelm are entitled to monetary claims and repayment claims, are excluded from this execution ruling."

2. Both the Plaintiff and the party involved appealed to the higher court against this first-instance court decision (ON 3).

3. The High Court concluded, with the decision of 3 August 2017 (ON 36) both recourses in the sense of a rejection of the execution applications.

4. Against this decision of the High Court (ON 36), the Respondent raised an appeal to the Supreme Court due to deficiency in proceedings, non-conformity with documents, and incorrect legal assessment. The request was made, inter alia, to amend the contested decision in such a way that the appeals of the Plaintiff and the party involved were not followed and the execution order of the district court (ON 3) was restored in full.

5. By order of 7 September 2018, the Supreme Court followed the Respondent's appeal for revision and restored the decision of the first instance court on 21 November 2016, ON 3. The Supreme Court of Justice justifies its decision mainly as follows:

5.1. According to Art. 242 Para. 1 EO (= Section 331 Para. 1 öEO), for the purpose of executing property rights that are not part of the claims, the court, at the request of the operating creditor, should issue the order to dispose of all rights (attachment). If a specific person is obliged due to this right for services, then the attachment is only deemed to have been effected when this third person has been issued the legal prohibition to provide for the liable party. As per Art. 242 Para. 2 EO, the type of exploitation of the right to the application of the prosecuting creditor must be determined by the court, upon application by the prosecuting creditor after examination of the liable party and all creditors, to whose benefit the attachment was carried out.

This legal situation of the Liechtenstein EO corresponds to the Austrian reception model in Sections 331 et seq öEO. Austrian literature and judicature can therefore be used to assess the legal issues in question.

5.2. In many cases, the operating creditor is only able to carry out the execution on a "universal right", especially since individual rights which are subsequently to be asserted or enforced by the operating creditor, only arise in the specific factual situation and individual situation. Under this aspect, only very personal or otherwise obviously untransferable rights or such rights, whose exercise is economically sensible for the liable party (öOGH 3 Ob 101/04f; Oberhammer in fear/Oberhammer, EO[3] § 331 Margin Number 4) cannot be attached. To the extent that the Plaintiff and the party involved refer to the unenforceability of individual

rights that can be derived from a universal right, they should be countered that the contested execution order does not relate to individual rights but to the Plaintiff's overall rights (öOGH 3 Ob 166/11z; see also RIS -Justice RS0004162 [T1]).

The catch-all element of the execution to other assets should ensure that all conceivable assets of the liable party can be drawn into the execution. The interpretation of §§ 331 ff. öEO (RIS-Justiz RS0120619), which also applies to the interpretation of Art. 242 ff. EO, has to be interpreted in this purpose of the law. "Other property rights" within the meaning of Art. 242 (1) EO are only those substantive claims of the defendant, which cannot be assigned to the immovable property or to those parts of the moveable property of the debtor, which are claims for money, physical property or as claims for surrender or Performance of physical matters should be defined (OGH 03 CG.2007.66 LES 2008, 266 recital 8.1; LES 1987, 80; RZ 1956, 111). Thus, an attachable asset is to be seen in the option right of the founder to be able to use itself as beneficiary. In addition, the Supreme Court further states that even the right to appoint a body, which does not directly provide an asset legal position, can indirectly result in a monetary benefit, for example from the income from the foundation's assets, as an influence of the founder on the board. Section 333 (1) ÖEO (Art. 244 (1) EO) is based on the fact that the seized right grants entitlement to the "surrender of wealth". The right itself does not have to be usable, but it must in turn enable access to a usable property (öOGH 3 Ob 177/1 Os; Oberhammer in Angst/Oberhammer, EO[3] Section 331 para. 3), such as the right to termination given in the law, for example (Art. 244 (1) EO). In principle, several steps from legal acts could lead to the "pursuit of wealth", since the law does not restrict the operating creditor to a single executive exploitation step.

5.3.    In the present case, contrary to what the Plaintiff and the party involved said, the issue was not the seizure of individual "claims" for which at least the "existence" had to be assumed, but an execution on "other property rights" within the meaning of Art. 242 et seq EO. For an execution on universal rights, the Supreme Court rightly asserts that it is just typical of the nature that usable claims are not (yet) available at the time of the executive access, because this type of execution is based on a universal right and on the occurrence of individual claims and requests. As a rule, the operating creditor only has to take further steps as part of the exploitation. (Oberhammer in Angst/Oberhammer, EO[3] Section 331 para. 3 et seq).

Austrian jurisprudence, according to the Supreme Court, also allows attachments in accordance with Section 331 öEO if further legal acts by the operating creditor only give rise to asset rights of the obligated party. That these already exist at the time of attachment, the EO does not assume (see öOGH 3 Ob 165/10a; 6 Ob 235/08i GesRZ 2009, 237 [Arnold]).

This difference - on the one hand, attachment of claims that presume conditional or committed claims, because merely expected claims are not attachable in the framework of the execution of financial claims and on the other hand, the attachment of total rights, when, e.g. attachable claims have not developed at all due to lack of termination of the underlying contractual relationship, - was just emphasised by öOGH in a decision regarding execution of trustor rights (öOGH 3 Ob 223/12h ecolex 2013/211). In the specific case, it concerned the execution of the claims of the trustor against the trustee, for which only execution can be carried out only in accordance with § 331 öEO (= Art. 242 EO) This provision was therefore used because the contractual trust relationship can only be terminated by a constitutive declaration of one of the contracting parties.

While not only the means of execution, but also the execution object in the case of the execution of claims differ from that in the case of the execution of "other property rights", there is only one thing in common in the question of the law that has already arisen: In this case, there is no difference in the fact that the right to conduct the execution was already developed at the time of the attachment. Such a right can then be applied for the execution- depending upon the execution object. For an execution on other property rights, it is therefore assumed that the universal right has already arisen and is due to the liable party (OGH 25.8.2014, 8 Ob A 56/14i ecolex 2014, 1061).

5.4.    In this case, the Respondent had asserted several legal positions of the Plaintiff as universal rights and had requested their seizure: In the approved application, it put forward the Plaintiff's position as trustor, protector and beneficiary of the Alpha Trust vis-à-vis the party involved and requested the seizure of the Plaintiff's overall rights to the party involved (item 1, paragraphs 1 - 3). The Plaintiff's position as a protector of the Alpha Trust included partial rights, such as that the Plaintiff had transferable rights under the trust deed, such as the right to consent as a protector to various rights and actions of the trustee: Termination of the trust by the trustee, to determine the beneficiaries, to delegate all rights of the trustee including its (alleged) discretionary power and to change the provisions of the trust deed. In addition, the Plaintiff had the sole right to appoint or remove the trustees of the Alpha Trust. In addition, the Plaintiff even let the trusts of the Alpha Trust (which he controls) act as asset managers of the trust.

However, the Respondent had made sufficient claims that the Plaintiff's total rights could be seized. The individual rights of the universal right would not have to be asserted and certified, if it does happen (as here, for example, "in particular"), it does not harm the Respondent, even if in this case are listed as examples that cannot be used by the Respondent. This execution request clearly states the overall rights to be seized, namely those of the Plaintiff as trustor, protector and beneficiary of the Alpha Trust vis-à-vis the party involved. It is not necessary to provide details or a list of the individual rights resulting from these legal positions.

The type of execution requested by the Respondent coincides with that of the ÖOGH in 3 Ob 223/12h (ecolex 2013/211; see Oberhammer in Angst/Oberhammer, EO[3] Section 325 para. 5) required execution type, namely the execution on other property rights. Sections 331 et seq öEO (öOGH 3 Ob 223/12h).

In this context, it did not catch the Plaintiff and the party involved's objection that the Alpha Trust only granted discretionary privileges and no entitlement to preferential treatment, since - as it may turn out in the course of the liquidation process - the Plaintiff could be exploited due to his overall rights by changing the trust deed Money claims can get. In addition, in the context of the exploitation of his overall rights, the Plaintiff could also end the trust with corresponding claims. This should not be examined and decided here, but rather reserved for any exploitation of the Plaintiff's overall rights. In addition, it was expressly pointed out that, in the absence of a corresponding ban in the trust deed, the Plaintiff was even entitled to use himself as a trustee, which is also legally permissible (Art. 910 para. in conjunction with Art. 923a, Section 40 para. 2 PGR). Therefore, it was neither contradictory nor incorrect if the Respondent listed the rights of the trustee in accordance with the exemplary rights listed in the Plaintiff's overall rights, including the rights of the trustee according to the trust certificates mentioned there, especially since he claimed that the Plaintiff could potentially be the trustee of the Alpha Trust himself (ON 1 margin No. 38).

It was also incorrect that the Respondent's arguments in the execution request were limited to the rights of the Plaintiff as a protector. The Respondent also argued that the Plaintiff still had unlimited control of the assets in the trust by instructing the trustees, and in particular that he could issue instructions to be followed by the trustees with regard to distributions from the trust assets. An application had been made to execute the Plaintiff's rights vis-à-vis the Alpha Trust trustee, whereby the Respondent referred to the Plaintiff's overall rights as a trustor. With regard to the legal position of the Plaintiff, the trust agreement of May 27, 2015 and the supplementary "Written Instrument" of June 2, 2015 were expressly asserted and the individual powers of consent of the Plaintiff to the trustee's agendas were set out in the "Declaration of Trust" (ON 1 para. 18 and in FN 3).

Therefore, one cannot speak of an inconclusiveness or indeterminality of the execution application: An execution application is inconclusive only if it misses the complete, specific and precise assertion of facts which involve the requested execution approval as a legal consequence (OGH 08 EX.2006.4224 LES 2009, 221). The Respondent had asserted all legal bases from which the Plaintiff's overall rights against the party involved resulted: According to the Respondent, the Plaintiff had overall rights as the trustor, protector and beneficiary of the Alpha Trust vis-à-vis the party involved.

The Respondent and the party involved alleged that the Respondent's specification of the rights "which he wishes to resort to" was also not present. The exploitation acts specified by law in Art. 243 et seq. EO, such as the division or initiation of a dispute procedure, dismissals, etc., and the Respondent's general clause-based authority, the "otherwise necessary declarations for exercising and utilizing the seized right effective for the liable party to deliver", should not be explained in detail in the execution request. For a seizure in accordance with the provision of Art. 242 EO, it is sufficient if the seized universal right in turn enables

access to a usable asset (Oberhammer in Angst Oberhammer, EO[3] Section 331 para. 3). The application should only be rejected if the unusability of the right is obvious from the records (öOGH 3 Ob 28/99k SZ 72/108; 3 Ob 243/11y JBl 2012, 535; RIS-Justiz RS0127665; RS0001249, RS0000085). However, this is not the case here: The Respondent has shown in detail that a usable property can be seized or exploited by means of the universal right to be attached, and there is no reason to assume that it is "obvious" that it cannot be used. The general legal position of the Plaintiff as trustor alone already affirms its possibility of bringing about claims against the trustee that are worthwhile.

5.5.    The decision of the ÖOGH 3 Ob 177/10s, cited several times in this procedure, is published in PSR 2011/47, 183 (Rassi/Zollner) = GesRZ 2011, 317 (Wurzer/Foglar-Deinhardstein; Zollner/Paulsen, overview of the Supreme Court Judicature in foundation matters in 2011, PSR 2012/18, 66 [68 f.]) affected an execution against a founder and only dealt with the question of the exploitation of legally seized overall rights of the obligated as a founder. In that case, the "comprehensive" right of amendment as well as the donor's right to determine the beneficiary were effectively seized and the command to the obligated person to abstain from any disposal of these rights and the foundation was prohibited from paying the obligated person or to accept its disposition of seized rights. Only within the framework of the exploitation proceedings (§ 331 Para. 2 EO), exploitation applications were specified and supplemented, and the court of first instance authorised the prosecuting party on its own behalf for the appointment of the liable party as beneficiary, but it rejected the additional requests for exploitation oriented to the authorisation for dismissal of members of the advisory board of the foundation and appointment of new advisory board members. The second instance accepted the recourses of both parties and abolished the decision of the court of first instance. There were recourse appeals against the revocation decision, whereby öOGH recognised the recourse of the prosecutor as partially justified. It stated that the total rights of the execution entitled to the founder against a private foundation pursuant to §§ 331 f. EO would then succumb if it had reserved the right to revoke and at least partially been the ultimate beneficiary in accordance with § 36, Para. 4 PSG, or reserved a right to amendment (RIS-Justiz RS0120752). Because, as long as a founder reserved amendment or revocation rights, the principle of complete separation of the foundation from the founder is not realised. However, a cumulative reservation of both rights to alter the legal relationship was not a prerequisite for an execution, contrary to the interpretation of the liable party, as per §§ 331 ff. EO (3 Ob 217/05s; 3 Ob 16/00 h).

In the case of the execution here, it did not concern the case of a foundation. However, it was significant for the judicature of the öOGH for the execution of founder rights for the case covered by the decision, that for the suitability of an execution object, its indirect usability in accordance with §§ 331 ff. oEO was already sufficient. For example, the ÖOGH saw "a property right" in any event as a donor's right to change, and may it first be necessary according to the legal arrangements to be initiated by the operator until he can access the donor's specific property rights (3 Ob 217/05s recital 3; 3 Ob 177/1 Os recital III 1 et seq; see Zollner/Paulsen, PSR 2012/18, 69). An amendment in the declaration of the foundation to support the founder (again), created prerequisites to such an extent

for the establishment of usable asset rights of the founder (öOGH 3 Ob 217/05s RdW 2006, 505). If the beneficiary (finally) had a disputed claim against the foundation, it was assignable, attachable and pledgeable (with reference to Csoklich, access to the assets of the private foundation by creditors of the founder and beneficiaries, ÖBA 2008, 416 [424 ff.]).

In the case of the execution against a donor, the theory also took the position that the creditor had the option of being authorized instead of the donor to change the declaration of foundation regarding the specific amount and due date of donations in order to provide the founder with an actionable (and executable) right to benefits (Rassi, PSR 2011/47, 189 [decision-making discussion]; RIS Justice RS0120753).

Therefore, the execution according to Art. 242 EO does not call for the immediate usability of the right to be attached, but the "indirect usability" is sufficient. In 3 Ob 16/06h ZIK 2006, 143, the öOGH assumed another attachable asset right, if a founder is the ultimate beneficiary, this was not to be doubted. In addition to this, OGH held it sufficient in this decision, that the attached rights to alter the legal relationship (of a founder) were only transferable by their exercise (with reference to öOGH 3 Ob 55/80) and emphasised that the exercise of the rights to alter the legal relationship (of the founder) could be carried out by third parties (see oGH 6 Ob 106/03 m for the custodian of the founder or öOGH 6 Ob 332/98m GesRZ 1999, 126 for the parents with legal guardianship of the founder with custodial approval). In this case, it is now a question of the Respondent being able to exercise the individual rights contained in the overall rights instead of the Plaintiff. It is not clear which obstacles as per execution law could be contradicting. Apart from this, an execution for other asset rights did not concern the transfer rights to alter the legal relationship to the third parties, but the legal authorisation of the prosecuting creditor to exercise the rights instead of the liable party in the execution process in order to be able to reach the proceeds from the individual right to be liquidated thereby, even if only indirectly. An authorisation granted by the execution court in the framework of an execution for other asset rights, namely, entitles the prosecuting creditor to all those to which the liable party was previously entitled (öOGH 3 Ob 33/84 SZ 57/102; 3 Ob 16/06h ZIK 2006, 143).

The provisions of the adoption template (§§ 331 ff. öEO) would also be aimed at extending the execution possibilities and would therefore want to record all asset items of the liable party, which are not yet covered by other executions (see Art. 242 Para. 1 Sentence 1 EO). It is true that öOGH therefore has the point of view that in the case of doubt, an execution subservience of other assets must be assumed. (öOGH 3 Ob 16/06 h; RIS-Justiz RS0120349). In the case presented for decision, this must not be referred back to, since such doubts would not exist at all.

It is therefore evident that as per doctrine and Rsp, an attachment of total rights is always possible if additional legal measures, in particular, by asserting the rights of alteration of the legal relationship of the liable party, a usable asset value of the liable party can emerge, or can be created. For the execution of universal rights according to Art. 242 EO, the so-called "indirect usability" of the universal right is sufficient.

5.6.   The following can be concluded from this: The attached asset right need not represent an asset value by itself. The prosecutor must not certify such an asset value. The rights of the prosecuting creditor would be determined according to the scope of the rights of the liable party and are identical to them. The prosecutor must be granted the legal authorisation, instead of the liable founder, to exercise its rights in order to be subsequently access possible proceeds. Nothing else could apply in the case of attachment of total rights by the creditor of a trustor, who is also beneficiary and protector of a trust here.

Moreover, the seizure of the donor's total rights does not automatically mean the admissibility of the exploitation by authorizing the operating creditor to exercise all of the donor's individual rights (öOGH 3 Ob 177/1 Os recital 5). The fact that the total rights of execution can be carried out in accordance with §§ 242 EO, therefore does not say anything about it, whether the total attached rights have asset value subsequently in the specific case to be assessed (see öOGH 6 Ob 228/17y PSR 2018, 90). The individual right of the liable party resulting from the total right must therefore not be asserted evidenced nor certified in the execution application, otherwise, one would encumber the prosecuting creditor with the assertion of a possible number of individual rights emerging from a total right, which does not correspond with the teleology of the execution right, to not unnecessarily make access to the asset objects of the liable party difficult for a prosecuting creditor. A claim of the asset value of the total right is only required insofar as the possibility of an asset value emerges from the exploitation of the individual rights. This can be affirmed in any case based on the statements of the Respondent in ON 1. The execution request would only be rejected if it already emerged from the execution request that it was obviously a non-seizable right (Oberhammer in Angst/Oberhammer, EO[3] Section 331 para. 10; Heller/Berger/Stix, Commentary on Execution Regulations III 2336), whereby however the Rsp generously assesses the claim of the possible assets of the right to be seized at the seizure stage (öOGH 3 Ob 217/05s; 3 Ob 26/08g GeS 2008, 112) and therefore, should there be a lack of usability at the exploitation stage, the individual application for exploitation - but not the seizure request with regard to the universal right - should

be rejected.

The decision of the Supreme Court 2R EX.2008.7877 quoted by the Plaintiff was about a security bot with which the liable party should be prohibited from having their claims against the third-party debtor up to the amount of the actual trust assets. Accordingly, it was not an execution on other property rights within the meaning of Article 242 et seq. EO, but rather a forced access to individual claims, hence an execution of claims. This decision does not provide anything for the question of the seizure of total rights in accordance with Art. 242 EO, since the requirements for the execution object "claim" are fundamentally different when executing claims: The Supreme Court had already ruled in LES 2008, 266 for the seizure of "claims" that these could not be imposed by a third-party ban if their legal basis had not yet been created at the time of the judicial decision and which is therefore still uncertain whether they will ever arise (LES 2008, 266; 2R EX.2008.7877). However, in this case, the issue is not the seizure or realization of individual asset "claims", but only the seizure of an overall right of the Plaintiff against the party involved, from which - if only indirectly - that is, only after the addition of further legal acts (to be done by the Respondent) - assets, in particular claims, could arise (Art. 242 para. 2, Art. 243 et seq EO).

Moreover, the Supreme Court has already affirmed an asset of universal rights several times: For example, in Decision 10 CG.2004.58 LES 2007, 141 although the beneficiary's claim was largely dependent on the discretion of the organs of a foundation, the management of the foundation was carried out on the basis of a mandate contract determined by the beneficiary. On this basis, the Supreme Court affirmed an asset of the respondent, because the access depended solely on the declaration of intent of the obligated party. He referred to the principle that conditional rights are property if the fulfilment of the condition depends only on an act of the defendant's will. This circumstance distinguished this decision from the facts on which the decision 2 R EX.2008.7877 was based, according to which the security opponent had no - even conditional - disposable right over the assets of the third-party debtor (2R EX.2008.7877 Erw 13.5.). In decision OGH 03 CG.2007.66 LES 2008, 266, the rights of a founder to revoke and change the declaration of foundation are expressly referred to as "other property rights within the meaning of Art. 241 et seq EO" has been recognized.

5.7.   In the Austrian Supreme Court, the execution of settlor's claims was assessed from the perspective of the execution of the settlor's claim against the trustee for restitution of the trust property. If the trust property consisted of money, the attachment of the claim pursuant to § 294 öEO (= Art. 217 EO) was affirmed. In the event that the fiduciary relationship has not yet ended and this has to be ended by the trustor in order for the claim for recovery to arise, the ÖOGH assumes that in such a case only a seizure in accordance with Section 331 EO can be considered (öOGH 3 Ob 223/12h ecolex 2013/211; Oberhammer in Angst/Oberhammer, EO[3] Section 325 para 5). The claim for repayment could not be seized beforehand because it had not yet arisen due to the lack of notice of termination. Since the boundaries between the individual types of execution in

question are "fluid", the ÖOGH even allows an application aimed at the wrong type of execution to be reinterpreted without further ado (öOGH 3 Ob 223/12h ecolex 2013/211; Oberhammer in Angst/Oberhammer, EO[3] Section 325 para 5). In the decision of the Austrian Supreme Court 2 Ob 166/02d ecolex 2002, 882, it was expressly pointed out that the creditors of the settlor could not lead directly to the trust property execution, but only to the claims of the settlor against the trustee. The Austrian Supreme Court also confirmed this legal interpretation in 3 Ob 85/08h ecolex 2008, 1021 = ÖBA 2009, 322.

The öOGH had already ruled in E 3 Ob 177/10s that the right to designate beneficiaries could be seized and exercised by the operating creditor, so that from this alone it is clear that the seizure of the Plaintiff's overall rights as a trustor on the one hand and for determination the beneficiary protector entitled to consent (Art. 8 Declaration of Trust) may be at least indirectly relevant to the trustee in terms of property law.

In the execution for settlor's rights, the Supreme Court did not consider the existence or non-existence of the alleged seized property right due to the lack of an application for exploitation (Austrian Supreme Court 3 Ob 143/93), which clearly shows that 1) settlor's rights are in principle seizable as universal law according to § 331 öEO and 2) this is possible regardless of whether at the time of this seizure the universal law in the specific case also allows executive access to the right alleged to be exploitable (a property there) or not. To the extent that the Plaintiff objects that individual rights of the liable party cannot be attached, this is not the subject of the procedure for requesting the seizure of all trustor rights.

5.8.    Contrary to the statements made by the Plaintiff and the party concerned, there was no "double seizure" because the execution request and the Respondent's submissions made it sufficiently clear that the Plaintiff's overall rights vis-à-vis the party concerned should be seized and as the legal position of the Plaintiff for his position as trustor, protector and beneficiary of the Alpha Trust. The merely exemplary requested attachment of various individual rights from the requested attachment of the universal right according to Point 1 (3) 1 para. 3 (from "in particular" to "3 June 2015)" was not necessary to describe the universal right to be attached. At the stage of exploitation, it should be examined in detail which individual rights flowing from the Plaintiff's overall right can be exploited and are assets.

Para. 4 of the Enforcement Order did not contradict the Enforcement Order (or the application for Enforcement), because it was clear from the above that the respondent did not want to seize the already seized claims with this execution, because this had already happened in the proceedings 08 EX.2016.839. With the execution request in question, only overall rights were seized, not individual claims, so that this point can remain to clarify that individual claims should not be seized, although this restriction would not have been necessary. A "double seizure", which the Plaintiff and the party involved have repeatedly designated as inadmissible, is simply not because the execution objects are different: In the matter at hand, it was the Plaintiff's overall rights, in case 08 EX.2016.839, it was claims. The objection raised, however, that granting the execution in question would lead to multiple

seizures, would be in vain.

6.    By letter of 12 September 2018, the Plaintiff initially applied for the suspensive effect to be granted and for a precautionary measure to be taken.

7.    The Respondent filed a counter statement to these requests on 18 September 2018, requesting that the requests for suspensive effect/precautionary measure be rejected. By letter dated 26 September 2018, the Respondent requested the Plaintiff to provide adequate security for the damage that the interim measures could potentially have caused.

8.    The Plaintiff replied to this on 27 September 2019 and maintained the application for recognising the suspensive effect and the application for a precautionary measure, and requested that the Respondent's applications be rejected.

9.    The Deputy President of the State Court granted the Plaintiff's request by decision of 9 October 2018, that until the individual complaint announced or submitted by it is settled in the decision of the Supreme Court of 7 September 2018, 08 EX. 2016.5802-72, certain costs of the appeal and revision recourse procedure do not have to be paid. The further applications were rejected.

10.  The Plaintiff lodged an individual complaint against the decision of the Supreme Court of 7 September 2018, 08 EX.2016.5802-72 with the state court in a letter dated 10 October 2018, denouncing a violation of the property guarantee pursuant to Art. 34 Para. 1 LV and Art. 1 1. ZP-ECHR, a breach of the prohibition of formal refusal of rights according to Art. 31 Para. 1 LV and Art. 6 Para. 1 ECHR, a violation of the right to the ordinary judge according to Art. 33 Para. 1 LV and Art. 6 Para. 1 ECHR, a violation of the right to lodge a complaint in accordance with Art. 43 LV, a violation of the duty to state reasons in accordance with Art. 43 LV, a violation of the right to equal treatment in accordance with Art. 31 (1) LV and a violation of the right to arbitrary treatment. It is requested that the State Court complies with the individual complaint in question and determines that the decision of the Supreme Court from 7 September 2018 to 08 EX.2016.5802 (ON 72) violates the Plaintiff's constitutionally guaranteed rights guaranteed by the ECHR, the decision of the Supreme Court should therefore be set aside and the case should be referred back to the Supreme Court for a new decision, subject to the legal view of the State Court, and the Respondent obliged to reimburse the costs of the proceedings to the Plaintiff for the account of his designated legal representative.

10.1.  Regarding the violation of the property guarantee in accordance with Art. 34 LV and Art. 1 1. ZP-ECHR essentially submits the following:

10.1.1.  According to the Supreme Court, the right seized in the context of an execution "must not be usable, but it must in turn enable access to usable property" (08 EX.2016.5802, ON 72, p. 36). According to the Supreme Court, after the Supreme Court assumed that the Plaintiff's overall rights as trustor, protector and beneficiary of the Alpha Trust can be seized and assigned to the third-party debtor CTX Treuhand AG, the Respondent had at least indirect access to the Plaintiff's assets. Thus, the factual situation regarding the type of rights falls under the scope of property guarantee.

Thus, the factual situation regarding the type of rights falls under the scope of property guarantee. According to the jurisprudence of the State Court, the property guarantee is not affected by a judicial decision if it is a civil lawsuit regarding a legal dispute between private individuals. In such a case, the decision should not be assessed with regard to the ownership guarantee, but rather under the arbitrary ban (StGH 2014/74, recital 9.2; Vallender/Vogt, Ownership Guarantee, op. cit., p. 711, para. 40 with numerous documents). The State Court justified its position as follows:

*"The judgmental decision of a court, for example, about who owns a certain thing, cannot be regarded as an interference with the property of those who lose this legal dispute. According to the jurisprudence of the State Court, in civil proceedings there are generally equivalent asset interests, which mutually nullifies the protection of fundamental rights"* (StGH 2006/15, recital 3.2)

10.1.2.   On the other hand, there is no civil litigation. Arbitration before the London Court of International Arbitration (LCIA), which preceded the execution proceedings, should be regarded as an equivalent to civil proceedings. It was decided there whether the claim existed or in what ownership the sum over which the claim was to be held. However, this arbitration was not the subject of this individual complaint. Rather, this revolves around the execution procedure, in which the Plaintiff is faced with a sovereign acting, state-owned and state-authorized executor. In this regard, there is also no CG procedure with which civil processes are identified, but an EX procedure. In this regard, no equivalent assets would conflict with interests, but there would be an asset interest of the Respondent, which he would try to enforce using state coercive means, while the Plaintiff did not have such state coercive power behind him. Consequently, the case law of the State Court cited above is not relevant, since there is no civil litigation and there are no equivalent assets in the interests. Accordingly, the guarantee of ownership can also be applied to the state intervention.

A limitation of the property guarantee, apart from the core salary guarantee, is possible if the provision is based on a legal basis - the more difficult the intervention, the more clearly and precisely in a formal law (StGH 2006/53, 3.) - it is in the public interest and proportionate (suitable, necessary and reasonable) (StGH in LES 2007, 19, recital 3.1).

10.1.3.   This is a massive intervention on the Plaintiff's property guarantee after the Respondent's claim amounted to USD 79,815,055.40, GBP 2,776,473.68 and RUB 2,958,750.00 plus interest.

This massive intervention is formally based on a legal basis - Art. 242 (1) EO - but this legal basis is not sufficient, especially given the seriousness of the intervention. Thus, only property rights of the liable party would fall under Art. 242 Para. 1 EO (Oberhammer, Section 331 EO, Rz 1 in Angst/Oberhammer, Execution Ordinance, 3rd edition, Vienna 2015). In fact, the Plaintiff had just given up his property rights by bringing them into the Alpha Trust. The property rights previously granted to him would now go to the Alpha Trust. Although the Plaintiff had certain rights in relation to the Alpha Trust, he was and remained a discretionary beneficiary. Therefore, he was not entitled to a certain amount from the Alpha Trust, but the extent of his privilege was at the discretion of the trustee. If one wanted to accuse the Plaintiff of not giving up his assets at all but continue to control the Alpha Trust (which is contested), then an execution procedure was not the right place for it. Instead, such an argument would have to be put forward in an appeal procedure. There it could be decided whether the establishment of the trust was void from the outset and not in an execution procedure. Otherwise, an enforcement procedure could simply result in a breach of trust by a trustee, without a court clarifying whether such a breach is even legally permissible within the meaning of the PGR. An enforcement standard therefore does not offer a sufficient legal basis to be able to take action.

Even if there were a sufficient legal basis, there would be no proportionality. The Plaintiff's overall rights to the Alpha Trust had been seized. It follows that the Plaintiff can no longer exercise a single right in relation to the Alpha Trust. In other

words, his legal relationship with Alpha Trust will be severed. Instead of seizing individual known assets of the debtor, as is customary in the case of a seizure, all of the Plaintiff's rights against the Alpha Trust were seized by the Supreme Court. The Supreme Court still owes an explanation as to why the milder means, namely the seizure confirmed by the Supreme Court and therefore legally binding according to 08 EX.2016.839 (ON 4), are not sufficient. In that proceeding, all "monetary claims and payment claims, in particular distribution and repayment claims [sic] in the amount of at least the outstanding claim" against CTX Treuhand AG, the trustee of the Alpha Trust, with regard to the Plaintiff's legal status as "beneficial owner, trustor, beneficiary and client of the Alpha Trust". Any money that the Plaintiff could receive from the Alpha Trust has already been seized. And the Respondent was not entitled to anything other than money. Accordingly, this seizure is completely sufficient and no further seizure is necessary. The Respondent had not even attempted to exploit the assets seized in 08 EX.2016.839.

For these reasons, the Plaintiff's property guarantee had been violated by the Supreme Court's decision of 07/09/2018 to 08 EX.2016.5802 (ON 72).

10.2.    In essence, the Plaintiff submits the following about the violation of the prohibition of formal refusal of rights under Art. 31 Para. 1 LV and Art. 6 Para. 1 ECHR:

10.2.1.    There is an area of application for the ban on formal refusal of rights in two aspects. On the one hand, the Supreme Court shifted any legal dispute over the applicability of the Plaintiff's overall rights to a subsequent procedure. On the other hand, the Supreme Court had declared (08 EX.2016.5802, ON 72, p. 35) that "highly personal or otherwise obviously non-transferable rights" are not attachable without going into detail later on whether the attached total rights are transferable or not.

With regard to the discussion of the applicability of the Plaintiff's overall rights, the Supreme Court (08 EX.2016.5802, ON 72, p. 36) initially stated that the attached right itself had to provide access to usable property, otherwise no seizure is possible. Subsequently (08 EX.2016.5802, ON 72, p. 42), it explained that the seizure request should only be rejected if the unusability of the right from the file situation was obvious. The Supreme Court is at odds with its own statements. A lack of obvious uselessness or it cannot be concluded can be used. This way, usability could not only be obvious, but also after a legal check. Simple unusability is also unusability. The Supreme Court omitted this legal examination of simple usability, although according to its own statements it would be necessary. As a result, the Supreme Court refused to examine whether it could not be used. If usability is simply impossible, the seizure procedure is no longer necessary.

In terms of the object, simple unusability already results from the fact that, according to Art. 927 Para. 1 PGR, the beneficiary is entitled to request the implementation of the trust provisions. However, this is only a dispositive legal standard. According to Art. 927 Para. 1 PGR, this right only exists "unless the trust deed stipulates otherwise or this execution is not dependent on the trustee's free discretion vis-à-vis individual or all beneficiaries". A discretionary beneficiary was therefore "excluded from actively influencing the trustee's dispositions and administrative acts" in accordance with the decision of the higher court in the present case (08 EX.2016.5802, ON 36, p. 32, rec. 6.6.6). Thus, according to the nature of the trust, it is not possible for a discretionary beneficiary like the Plaintiff to influence the trustee.

10.2.2.    Furthermore, the Plaintiff, as the trustor, could not simply issue instructions to the trustee. Such an approach would contradict the nature of the trust, which is laid down in the Liechtenstein legal system. According to Art. 918 para. 1 PGR: "Apart from that, the trustor cannot establish any provisions that bind the trustee to the trustor's ongoing instructions." The Plaintiff's rights as trustor are thus simply unusable.

In addition, the Plaintiff's rights as a protector were pure consent rights. Access to assets does not result indirectly after the rights have been assigned to the trustee

(cf. 08 EX.2016.5802, ON 36, p. 34, recital 6.6.7). An active legal arrangement by the protector is therefore excluded.

Ultimately, the Plaintiff's right to act as protector for the appointment and dismissal of the trustee remains. This right is by no means unconditional. For example, the Plaintiff could not threaten to be dismissed if the trustee complied with his obligations under the trust deed and the law. Rather, a dismissal right only serves "to control and enforce the duties of the trustee" (08 EX.2016.5802, ON 36, p. 35, recital 6.6.8). This case law is in line with the Austrian Supreme Court, which stipulated (3 Ob 177/10s, p. 14): "The right of dismissal serves to control and enforce the duties of the board."

10.2.3.  With regard to the examination of the transferability of the Plaintiff's overall rights, the Supreme Court had initially stated (08 EX.2016.5802, ON 72, p. 35) that "highly personal or otherwise obviously non-transferable rights" were not attachable. The Supreme Court had not examined whether the Plaintiff's overall rights were transferable at all. Rather, the Supreme Court subsequently stated (08 EX.2016.5802, ON 72, p. 46) that the issue was not the transfer of the design rights to third parties, but the judicial authorization of the creditor to exercise the rights of the liable party. The Supreme Court is at odds with its own statements.

After the Supreme Court had neither examined the simple usability of the Plaintiff's overall rights nor their transferability, it illegally removed decisive counter-arguments from the Respondent's request.


For these reasons, the Plaintiff was injured by the Supreme Court's decision of 09/07/2018 to 08 EX.2016.5802 (ON 72) prohibiting a formal denial of rights.

10.3.    The Plaintiff essentially submits the following about the violation of the right to the ordinary judge pursuant to Art. 33 (1) LV and Art. 6 (1) ECHR:

In concrete terms, the right to the ordinary judge was affected in such a way that the Supreme Court had not exercised its competence to determine at least a possible usability, but had shifted any legal discussion of the usability of the seized rights to a subsequent process. The Plaintiff's legal remedies were severely curtailed in the seizure proceedings. This led to a serious interference on the Plaintiff's rights, which was reinforced by the fact that his entire rights against the third-party debtor in connection with the Alpha Trust had been seized. Whether this seizure could lead to the Plaintiff's satisfaction at all is highly unclear in the best case and impossible in the worst case.

Furthermore, the right to the ordinary judge was affected to the extent that the Supreme Court had not exercised its competence to determine the transferability of the seized rights, but simply ignored this point despite its own statements that highly personal or otherwise obviously non-transferable rights cannot seized.

With regard to the substantive reasoning, reference should be made to the statements in violation of the prohibition of formal refusal of rights.

For these reasons, the Plaintiff's right to the ordinary judge was breached by the Supreme Court's decision of 7/09/2018 to 08 EX.2016.5802 (ON 72).

10.4.    The Plaintiff essentially submits the following about the violation of the right to lodge a complaint in accordance with Art. 43 LV:

In fact, the Supreme Court illegally restricted its own competence to the extent that, on the one hand, it had not exercised its competence to determine at least possible usability, but had shifted any legal discussion of the usability of the seized rights to a successor process, and on the other hand it had its competence to determine did not exercise the transferability of the seized rights, but simply ignored this point.

With regard to the substantive reasoning, reference should be made to the statements in violation of the prohibition of formal refusal of rights.

For these reasons, the Plaintiff's right to appeal was violated by the Supreme Court's decision of 09/07/2018 to 08 EX.2016.5802 (ON 72).

10.5.    The Plaintiff essentially submits the following about the violation of the duty to state reasons according to Art. 43 LV.

10.5.1.  The objective change in practice is that an execution on the total rights according to Austrian case law on Section 331 öEO, which corresponds to Art. 242 EO, must meet the following requirements with regard to the overall rights of a founder:

"The overall rights to which the founder is entitled towards a private foundation are subject to the provision of Section 3 (3) PSG of the execution according to Sections 331 et seq EO, if it reserves the right to withdraw and is at least partially the last beneficiary after the declaration of foundation or according to Section 36 (4) PSG and / or reserves the right to change it." (RS0120752)

The Supreme Court made several representations on the seizability of rights to a foundation (08 EX.2016.5802, ON 72, pp. 35 f., 43 ff.), In order to subsequently transfer this to the case in question, with which of these it can be assumed that the Supreme Court will make an analogy to the attachability of foundations.

However, the Plaintiff did not reserve itself the right of withdrawal or right of amendment. Such rights would not arise from the trust deeds, nor would the Supreme Court have shown that such rights would be apparent. The Supreme Court does not go into detail about this lack of right of revocation or amendment, although for its reasoning it explicitly refers to the decision of the Austrian Supreme Court from 14.07.2011 to 3 Ob 177/10s, which in turn refers to RS0120752. It only says: "This should not be examined and decided here, but rather reserved for any exploitation of the Plaintiff's overall rights." (08 EX.2016.5802, ON 72, p. 40) Thus, the Supreme Court failed to provide valid reasons why it deviated from the relevant Austrian case law. Rather, the Supreme Court gave no reason for it.

For these reasons, the claim of the Supreme Court from 07/09/2018 to 08 EX.2016.5802 (ON 72) had been violated in its claim to a constitutional reasoning.

10.5.2.  The Supreme Court concluded that the lack of obvious usability was based solely on the fact that the Plaintiff's position as a trustor "already affirmed his ability to bring about claims against the trustee on the basis of general principles" (08 EX.2016.5802, ON 72, p. 42). The Supreme Court did not describe what this is supposed to be due to. According to it, a trustor could generally get money from the trust at any time, which was absurd. Instead, Article 918 (1) PGR clearly states: "Apart from that, the trustor cannot establish any provisions that bind the trustee to the trustor's ongoing instructions."

The Supreme Court is referring to general principles without specifying what they are or what the nature of the trust is all about. Instead, the Supreme Court is content with a general reference which lacks any connection to the case in question. Moreover, the Supreme Court never stated which general principles would apply here.

For these reasons, the claim of the Supreme Court from 07/09/2018 to 08 EX.2016.5802 (ON 72) had been violated in its claim to a constitutional reasoning.

10.6.   The Plaintiff essentially submits the following about the violation of the right to equal treatment in accordance with Art. 31 Para. 1 LV:

The Supreme Court deviated from the practice of the country of reception to § 331 öEO - the equivalent to Art. 242 EO - in the fact that it had not checked, as part of the execution of the overall rights, whether the Plaintiff, as a trustor of the Alpha Trust, had at all or change rights in relation to the trust.

Regarding the substantive reasoning, reference should be made to the explanations under the obligation to state reasons.

For these reasons, the claim of the Supreme Court from 07/09/2018 to 08 EX.2016.5802 (ON 72) had been violated in its claim to a constitutional reasoning.

10.7.   The Plaintiff essentially submits the following about the violation of the right to arbitrary treatment:

10.7.1.   Specifically, arbitrariness is given, for example, if the reasoning of the court is contradictory (StGH in LES 2001, 163). The Supreme Court (08 EX.2016.5802, ON 72, p. 35) - as stated under the prohibition of formal refusal of rights - initially stated that "highly personal or otherwise obviously non-transferable rights" were not seizable. Rather, the Supreme Court subsequently stated (08 EX.2016.5802, ON 72, p. 46) that the issue was not the transfer of the design rights to third parties, but the judicial authorization of the creditor to exercise the rights of the liable party. So suddenly it should not matter whether the rights are personally or otherwise not transferable. This contradiction in the reasoning for the decision amounts to arbitrariness, after it has eliminated a further hurdle of proof and reasoning for the Respondent.

Furthermore, the Supreme Court's reasoning was also arbitrary in that the Supreme Court (08 EX.2016.5802, ON 72, p. 36) initially stipulated that the attached right should in turn enable access to a usable property, otherwise no seizure is possible. However, the Supreme Court has withdrawn this statement (08 EX.2016.5802, ON 72, p. 42) by claiming that the seizure request can only be rejected if the unusability of the right from the file situation is obvious. The possible usability does not necessarily derive from a lack of obvious uselessness. In between there is an area, namely the simple unusability, as was stated under the prohibition of formal refusal of rights. Objectively, as explained above, there is such a simple unusability. Although this is not necessarily obvious, it is nevertheless given. The Supreme Court has failed to provide legal clarifications. This was also

arbitrary insofar as the seizure had real effects without the Supreme Court having given any thought to whether it would be possible to continue the recovery process.

Furthermore, it was arbitrary that the Supreme Court had carried out another garnishment in addition to the garnishment granted in 08 EX.2016.839 (ON 4). As part of this seizure, all of the Plaintiff's monetary claims against the Alpha Trust had already been seized. What else could the Respondent want? If he had the feeling that the Plaintiff's seizure of all monetary claims against the Alpha Trust would not satisfy him, the Respondent would have to conduct an appeal procedure and would not actually achieve the challenge en passant as part of an execution procedure. The execution procedure is not the appropriate vehicle for this. Instead, it is precisely the case that the Alpha Trust knows no beneficiaries. All beneficiaries are discretionary beneficiaries. Therefore, there was no reason for which the Plaintiff in particular should receive a sum of over USD 80,000,000 from the trust assets. Such a sum could only be withdrawn through the appeal, otherwise the nature of the trust would be misunderstood. However, wanting to contest the back door of the execution proceedings was arbitrary and severely curtailed the Plaintiff's procedural rights. For example, an execution procedure is an accelerated procedure in which the debtor does not have the same rights as in a civil procedure where the parties are at the same level.

Finally, it should be emphasized once again that any claims in monetary value by the Plaintiff against the Alpha Trust from his position as trustor and beneficiary had already been seized in the procedure on 08 EX.2016.839. The Plaintiff's rights against the Alpha Trust from his position as a protector are only consent rights. The trustee has the actual right to make a decision in this connection, as the Supreme Court correctly stated (08 EX.2016.5802, ON 36, p. 33 et seq, recital 6.6.7). According to Art. 918 Para. 1 PGR, the trustor "cannot establish any provisions that bind the trustee to the trustor's ongoing instructions". Also, the protector could not make property orders instead of the trustee (08 EX.2016.5802, ON 36, p. 35, recitals 6.6.7). Therefore, none of these rights are asset rights. This means that the Respondent simply cannot get any money.

10.7.2.   In this context, the only thing left is the right of the protector to appoint and dismiss the trustee of the Alpha Trust. According to the documents, this is not tied to any requirements. However, the Supreme Court arbitrarily disregarded the legal basis of the trust. "Apart from that, the trustor cannot establish any provisions that bind the trustee to the trustor's ongoing instructions." So he could not constantly threaten a trustee with the Damocles sword of dismissal if he did not implement the trustor's wishes. Rather, a dismissal right only serves "to control and enforce the duties of the trustee" (08 EX.2016.5802, ON 36, p. 35, recital 6.6.8). This case law is in line with the Austrian Supreme Court, which stipulated (3 Ob 177/10s, p. 14): "The right of dismissal serves to control and enforce the duties of the board." However, it was not apparent in any way that the trustee had violated his duties; this was not even brought forward by the Respondent. Instead, it is at the discretion of the trustee - and must remain at his discretion - to which beneficiaries a distribution is made.

If, on the other hand, the Respondent's execution request was supported, a trust

could always be adopted in the future if the trustor was also a discretionary beneficiary. In this case, one could get an amount from the trust that is limited only by the amount of the claim. This dramatically disregards the nature of the trust and the interests of the other trust participants. So it says in öOGH, 3 Ob 177 / 10s, p. 17 et seq: An execution-friendly argument can "be countered by the counter-forecast" that "an advisory board appointed by the authorized operating creditor will act in disregard of the foundation's purpose and make excessive contributions to the beneficiary [namely the creditor]". Accordingly, it was "quite a bit in itself" that the board of trustees was only allowed to make decisions in accordance with the purpose of the foundation, which means that "donor rights to the dismissal and appointment of board members would not count as executable" (3 Ob 177/1 Os, p. 14) ,

10.7.3.  The interpretation by the Supreme Court of öOGH, 3 Ob 177/1 Os, was bizarre. It completely ignores the above quotations and is satisfied with the statement that the donor's overall rights to a private foundation would be subject to execution if he had reserved the right of revocation and was the last beneficiary or had reserved a right to make changes (08 EX. 2016.5802, ON 72, p. 43 et seq, recital 7.5.1). However, the Plaintiff did not reserve itself the right of withdrawal or right of amendment. Such rights would not arise from the trust deeds, nor would the Supreme Court have shown that such rights would be apparent.

In addition, the Supreme Court circumvents other legal principles that were also mentioned in öOGH, 3 Ob 177/1 Os, such as the principle of gradual enforcement (3 Ob 177/1 Os, p. 16): "To make it available to the creditor in advance because of fear of abuses by the board of directors in accordance with the principle of gradual compulsory exercise represented in the comparable injunction (here the claim to refrain from behaviour contrary to the purpose of the board) contradiction". In terms of this principle, the Respondent initially had to exploit the monetary claims and payment claims to which the Plaintiff was entitled as beneficial owner, trustor, beneficiary and client of the Alpha Trust, as of 08 EX.2016.839, before he could seize further rights.

For these reasons, the claim of the Supreme Court from 07/09/2018 to 08 EX.2016.5802 (ON 72) had been violated in its claim to a constitutional reasoning.

11.  With the letter dated October 17, 2018, the Supreme Court waived a counterpart of the present individual complaint.

12.  The Respondent lodged an appeal to the State Court against the decision of the Deputy President of the State Court on 9 October 2018, StGH 2018/111, on 22 October 2018. It requested that the State Court would follow up on the complaint to the extent that it is contested and amend the contested decision in such a way that the Plaintiff's requests for precautionary measures in accordance with Art. 52 et seq. StGHG, in which these applications may be rejected, the precautionary measure pursuant to Art. 53 Para. 1 StGHG, according to which the Plaintiff until the individual complaint was settled on 10 October 2018, StGH 2018/111, which was stated in the decision of the Supreme Court of 7 September 2018, 08 EX.2016.5802-72, certain costs of the appeal and revision recourse proceedings

are not payable, on the condition that the Plaintiff provides a security deposit of CHF 13'956.10 within four weeks; and in any event oblige the Plaintiff to reimburse the costs of the complaint procedure to the legal representative of the Respondent.

13.   The Respondent also filed a statement on 12 November 2018, with a counter statement to the Plaintiff's individual complaint against the decision of the Supreme Court of 7 September 2018, 08 EX.2016.5802-72, in which the individual complaint is to be rejected, with costs rejected and possibly rejected and not to follow this. The statements in this counterstatement will be dealt with, where relevant, in the statement of grounds for the judgment.

14.   On 5 November 2018, the Plaintiff made a counter-statement to the respondent's complaint against the decision of the Deputy President of the State Court of 9 October 2018, StGH 2018/111, which requests that the appeal of 22 October 2018 is not followed.

15.   By letter of 16 September 2018, the Plaintiff initially applied for the suspensive effect to be granted and for a precautionary measure to be taken.

16.   The Respondent made a counter statement to the Plaintiff's application of 16 November 2018, which was filed on 21 November 2018, requesting that the application for the suspensive effect or precautionary measure should not be followed and that the Plaintiff be obliged to pay the costs recorded to be replaced within 4 weeks for other executions. The statements in this counterstatement will be dealt with, where relevant, in the statement of grounds for the judgment.

17.   The Deputy President of the State Court of Justice approved the Plaintiff's request by decision of 27 November 2018, that the district court should take a precautionary measure pursuant to Art. 53 Para. 1 StGHG until the individual complaint in question was resolved on 10 October 2018 against the decision of the Supreme Court of 7 September 2018, 08 EX.2016.5802-72, is prohibited from continuing the execution or liquidation procedure in accordance with Art. 242 et seq EO.

18. Against the decision of the Deputy President of the State Court on 27 November 2018, StGH 2018/111, the Respondent again filed a complaint with the State Court on 12 December 2018. It is requested that the State Court want to follow the complaint and void the decision of the Deputy President of the State Court of 27 November 2018, without replacement, and pronounce that the Plaintiff's request of 16 November 2018 for the suspensive effect to be granted or for remission a precautionary measure is not followed; Eventually change the decision of the Deputy President of the State Court of 27 November 2018, so that the Plaintiff's request of 16 November 2018 for the suspensive effect to be granted or for a precautionary measure is not followed; sub-eventualiter annul the decision of the Deputy President of the State Court of 27 November 2018, and refer back to the (deputy) President of the State Court for a new hearing and decision within the meaning of this appeal; and in any case oblige the Plaintiff to reimburse the Respondent for the costs of this complaint procedure within four weeks, if otherwise executed, for the attention of his legal representative.

19. By filing of 27 December 2018, the Plaintiff made a counter-statement to the Respondent's complaint against the decision of the Deputy President of the State Court of 27 November 2018, which requests that the appeal of 12 December 2018 be dismissed, and to follow any of the requests made therein.

20. The Respondent made a statement on 13 March 2019, stating that the deputy president would be rejected as biased.

21. The State Court consulted the preliminary files as far as necessary and decided, at the request of the rapporteur, to waive the holding of a public final hearing. After a non-public final negotiation, the decision was made, as can be seen from the statement.

**JUSTIFICATION**

1.       Under Article 39 StGHG, the State Court exercises its jurisdiction ex officio in every situation of the proceedings.

1.1.     Pursuant to Art. 43 StGHG, petitions which are not suitable for hearing due to failure to meet a statutory submission deadline or due to obvious lack of competence of the State Court or other obvious lack of admissibility are to be rejected without further proceedings in a closed session with a resolution.

         The State Court must therefore examine ex officio whether an individual complaint submitted to it for decision is admissible or whether the requirements for a substantive decision on the complaint exist (StGH 2018/100, recital 1; StGH 2018/068, recital 1 ; StGH 2017/191, recital 1 [all www.gerichtsentscheide.li]; see also Tobias Michael Wille, Liechtenstein constitutional procedural law, LPS vol. 43, Schaan 2007, 446 mw N.).

1.2.     The order of the Supreme Court of 7 September 2018, 08 EX.2016.5802-72, challenged in the appeal, was issued at last instance. Whether it should also be finalized within the meaning of Art. 15 Para. 1 StGHG and the judicature issued or developed by the State Court (cf. StGH 2004/006, recital 1 [www.gerichtsentscheide.li]; StGH 2004/028, Jus & News 3/2006, 361 [366 et seq., recital 1 - 1.5]; most recently 2018/074, recital 1.1 et seq; StGH 2018/026, recital 1.2 et seq. [Both www.gerichtsentscheide.li] and StGH 2016/102, recital 1.2 et seq; see. also Tobias Michael Wille, Liechtensteinisches Verfassungsprozessrecht, op. cit., 557 and Peter Bussjäger, Was ist eine enderledigende Entscheidung?, in: Hubertus Schumacher / Wigbert Zimmermann [ed.], Festschrift für Gert Delle Karth - 90 Jahre Fürstlicher Oberster Gerichtshof, Vienna 2013, 81 et seq., each with extensive further evidence of case law), is to be examined below.

1.3.     These proceedings are concerned with the seizure of overall rights within the meaning of Art. 241 (1) EO, but not the subsequent utilisation procedure (see also Art. 242 (2) EO). With its judgment of 7 April 2014 (StGH 2013/099, recital 1 [www.gerichtsentscheide.li]), the State Court ruled that a decision regarding the seizure of total rights pursuant to Art. 242 (1) EO with an interim reservation of utilisation can be qualified as final; however, the State Court did not deal in detail with the final criterion in the aforementioned decision, which was "made up" with this.

1.4.     Since leading decision StGH 2004/006 (loc. cit.) of the State Court on the admission criterion of final execution created with the then new State Court law (StGHG), last-instance decisions in comparable proceedings (in the specific case it was a matter of applying for legal aid) have basically been considered fully qualified.

         The State Court justified this by stating that violations of fundamental rights that

otherwise occurred could no longer be reprimanded before the State Court, as it only had the option of overriding the final decision, while it could intervene to prevent it from entering into those separate from the main proceedings - and indeed legally completed.

The State Court subsequently developed this into case law, but in principle adhered to it. In this regard, it considered the decision on the appeal to the indictment to be final (StGH 2004/062 [www.gerichtsenscheide.li]; StGH 2006/093), as well as the decision about the complaint against a ruling under which a house search has been ordered (see StGH 2012/157; StGH 2012/053 [both www.gerichtsentscheide.li]) or in the procedure for refusing a judge, unless a reason for exclusion has been asserted and which is also valid in the procedure as a reason for nullity (StGH 2008/078 [www.gerichtsentscheide.li]).

The decisive criterion as to whether a last instance decision made in an interim procedure is also final depends on whether the alleged violation of fundamental rights could even be remedied by repealing the last instance decision (instead of many: StGH 2014/125, recital 1.3 et seq; StGH 2013/063, recital 2.1 and StGH 2008/30, recital 1.4 [both www.gerichtsentscheide.li]; see also Peter Bussjäger, Was ist eine enderledigende Entscheidung?, op. cit., 85).

1.5.     Therefore, in this case it must be examined whether a possible violation of fundamental rights within the context of the seizure of universal rights (see Art. 242 para. 1 EO) could still be taken up by the State Court in a subsequent procedure or not. This would not be the case, for example, if the Respondent withdraws its utilisation request (see also Art. 242 (2) EO), for example because of other satisfaction, or a request to terminate the proceedings is granted afterwards. Moreover, it can be seen from comparative cases relevant to the foregoing that the contested decision is of such a final nature. In this regard, reference should also be made in particular to the decision of the State Court of 27 September 2004 (StGH 2004/028 [op. cit.]), according to which even a seizure decision of the actual legal proceedings for sequestration or mutual legal assistance is final. Nothing else can apply in regard to the seizure procedure preceding the recovery process (with regard to the overall rights).

1.6.    Based on these considerations, the State Court considers the contested decision of the Supreme Court (ON 72) to be final, contrary to the respondent's view, so that, since the rest of the appeal was filed on time and in accordance with formal requirements, with the exception of paragraph 4 in ON 3 (lack of complaint) to enter the matter materially.

2.      Regarding the Plaintiff's complaint that the property guarantee had been violated, the following should be stated:

2.1.    According to the jurisprudence of the State Court, the property guarantee has a limited scope of protection. It is only affected if there is a direct state intervention in a fixed ownership position, but not if monetary interests are affected (StGH 2018/123 = LES 2019,123; StGH 2017/089, recital 2.1; StGH 2017/087, recital 2.1 [all www.gerichtsentscheide.li]; see also Herbert Wille, Liechtensteinisches Verwaltungsrecht, LPS Vol. 38, Schaan 2004, 57). Especially in civil litigation and, accordingly, in arbitration proceedings, it can be assumed that generally there are equivalent asset interests. Each party to the proceedings is entitled to respect for their property right, which is protected by fundamental rights. In this respect, both parties have equal rights, so that the protective effect of the property guarantee balances out to a certain extent in this bilateral relationship. The same applies mutatis mutandis in an execution proceeding after the civil proceeding with the involvement of a third-party debtor (see also StGH 1993/13, LES 1994, 49).

2.2.    Such a structure currently exists: The execution procedure in question, in which the Plaintiff (as the third-party debtor) and the Respondent (as the operating party) face each other, is based on the enforceable arbitral award of the London Court of International Arbitration (LCIA) of 11 November 2014 (corrected by decision of 9 January 2015) on case No. 101,721. In such cases, the State Court regularly limits itself to an arbitrary examination (see StGH 2017/147, recital 3; StGH 2017/081, recital 3.2 and StGH 2009/17, recital 2.1 [both www.gerichtsentscheide.li]). which is why the State Court only examines the Plaintiff's arguments, as far as they relate to fundamental rights, within the framework of the rough arbitrary grid (see recital 6 et seq below).

3.      In addition to a violation of the right to lodge a complaint in accordance with Art. 43 LV, the Plaintiff also complains about a violation of the right to the ordinary judge pursuant to Art. 33 Para. 1 LV. Both under the title of "violation of the prohibition of formal refusal of right" (see Section 4 of the individual complaint) as well as under the titles "violation of the right to the ordinary judge" (see Section 5 of the individual complaint) and "violation of the right to lodge a complaint" (see Section 6 of the individual complaint), the complainant identifies the case. Specifically, the Plaintiff complains that the Supreme Court has shifted any legal dispute regarding the usability of the overall rights to a subsequent process, meaning the exploitation process. In addition, the Supreme Court spoke of the fact that highly personal or otherwise obviously non-transferable rights are not attachable without going into a later point as to whether the attached total rights are transferable or not. In this context, the complainant is of the opinion that a lack of obvious unusability cannot

be used to infer whether it can be used. A "simple unusability" is also an unusability, which is in any case given with regard to the seized total rights. In summary, the Plaintiff is of the opinion that the Supreme Court has unduly restricted the cognition to which it is entitled.

3.1.   Art. 33 Para. 1 LV is breached, among other things, if a judicial or administrative authority claims a decision that it is not competent to do, or vice versa, if it rejects a matter to which it is legally entitled (StGH 2018/063 = LES 2019.81; StGH 2017/197, recital 4.1; StGH 2017/090, recital 2.1 [both www.gerichtsentscheide.li]; Tobias Michael Wille, Recht auf den ordentlichen Richter, in: Andreas Kley/Klaus A. Vallender [ed.] , Grundrechtspraxis in Liechtenstein, LPS Vol. 52, Schaan 2012, 359, Paragraph 32). This also shows an overlap with the prohibition of formal refusal of rights (StGH 2010/104, recital 2.1 [www.gerichtsentscheide.li]; StGH 2004/009, LES 2006, 96 [100, recital 2.2]); see also Tobias Michael Wille, Beschwerderecht, in: Andreas Kley/Klaus A. Vallender [Hrsg.], Grundrechtspraxis in Liechtenstein, op. cit., 2012, 514 et seq, Margin no. 12). An authority not only refuses to act if it remains completely inactive, but also if it does not act to the required extent. The main case of this form of denial of rights is the lack or inadequate clarification of the facts or the impermissible restriction of cognition (StGH 2010/104, recital 2.1 [loc. cit.]; see also StGH 2004/010, recital 3.1 with reference to StGH 1991/12 a+b, LES 1994, 96 [97, recital 3.1)). If such a refusal of the right or the underuse of cognition takes place in the appeal proceedings, there is also an overlap with the fundamental right to appeal, which is also explicitly criticized here (StGH 2010/104, recital 2.1 [loc. cit.]; see also StGH 2004/009, recital 2.2 [loc. cit.] and StGH 1998/029, LES 1999, 276 [280, recital 3.2.1]).

In the event of a complaint, the right to the ordinary judge and the prohibition to refuse legal rights can ultimately offer no further protection of fundamental rights than the right to lodge a complaint, so it is sufficient if it is examined in the following whether the decision of the Supreme Court (ON 72) contested here violates the right of appeal to fundamental rights (see StGH 2009/168, recital 2.1 [www.gerichtsentscheide.li]).

3.2.   According to the established case law of the State Court, the right to appeal pursuant to Art. 43 LV, as well as Art. 6 Para. 1 ECHR, requires that proceedings before an independent court with full powers of examination as an expert and legal body are always open in the sense of effective legal protection (StGH 2018/091, recital 3.1 [www.gerichtsentscheide.li]; StGH 2018/069 + 064 = LES 2019, 18; StGH 2017/081, recital 4.1 [www.gerichtsentscheide.li]; see also Tobias Michael Wille, Beschwerderecht, in: Andreas Kley/Klaus A. Vallender [ed.], Grundrechtspraxis in Liechtenstein, op. cit., 518 f., margin no. 18 with citations).

According to Art. 43 LV, the right of appeal has a material content that does not allow the legislature to undermine it. However, legal restrictions are permitted in the public interest and if the principle of proportionality is respected, provided they do not unduly restrict the fundamental right. If the legislator restricts the right to lodge a complaint, restrictions should be interpreted in favour of granting the right to lodge a complaint (StGH 2018/091, recital 3.1; StGH 2017/045, recital 2.2; StGH 2016/064, recital 2.1 [all www.gerichtsentscheide.li]; see also Tobias Michael

Wille, Beschwerderecht, op. cit., 518, margin no. 17 with citations). In its previous case law, the State Court was particularly concerned about the basic content of the right of appeal developed by it, where an official measure could have drastic effects for the person concerned and possibly irreparable disadvantages (StGH 2018/091, recital 3.1; StGH 2017/045, recital 2.2; StGH 2016/029, recital 3.2.1 [all www.gerichtsentscheide.li]).

3.2.1    The Plaintiff's complaint mentioned above does not comply with the relevant literature or with the relevant case law: As the Supreme Court correctly points out, Art. 242 EO corresponds to the Austrian model of reception in Sections 331 et seq of öEO, which is why Austrian literature and judicature can be used (see detailed ON 72, p. 34). Within the scope of the approval of the execution, it must be checked on the basis of the file (execution request) whether the right drawn into execution is accessible for exploitation. There is no need to conduct any further research. The operating creditor in particular does not have to prove or certify in his application for execution that the attached right can be exploited. As with the execution of claims, the granting court does not have to examine whether the seized right exists. The execution must be approved if the unenforceability of the law is not obvious from the outset because it cannot be used. However, should it become apparent in the course of the exploitation stage that the seized right is impossible for legal or factual reasons, the proceedings must be terminated. If the procedure is otherwise null and void, the obligated party and all creditors in their attachment must be heard before deciding on the application for exploitation request (see Oberhammer, in: Angst/Oberhammer, EO[3], No. 10 to Section 331 öEO with reference to extensive literature and judicature; the Supreme Court rightly so, see namely ON 72, pp. 35 and 42). With reference to the teleology of Art. 242 EO, the Supreme Court then rightly states that the fact that the catch-all provisions of the execution is restricted to other property rights should ensure that all conceivable assets of the obligated person can be executed. The interpretation of Sections 331 et seq. ÖEO must be based on this purpose of the law, which also applies to the interpretation of Art. 242 et seq. EO (see ON 72, p. 35).

3.2.2    From the case-law just cited, it is clear that the Supreme Court did not, as the Plaintiff claims, fail to exercise its own competence with regard to assessing the usability of the seized universal rights. The Plaintiff fails to recognize that the Supreme Court does not have to examine under Article 242 (1) of the EO whether there is "plain uselessness", whatever that may mean in detail, but only whether the usability is not a priori, and It is obvious what the Supreme Court undoubtedly did in the contested decision (see in particular ON 72, p. 38 et seq). To this extent, the Plaintiff consistently fails to recognize that the question of concrete (actual) usability is reserved for the exploitation request process (see also Art. 242 Para. 2 EO). The case law cited above, according to which the Supreme Court has judged in ON 72, is constitutionally unobjectionable: The teleology of Art. 242 EO aims to ensure that all conceivable assets of the obligated person can be executed. As the Supreme Court rightly states, this purpose of the law must be interpreted in accordance with Sections 331 et seq of öEO, and thus also Art. 242 et seq of PO. In this respect, there is also no objection if the Supreme Court, in accordance with the relevant literature, comes to the conclusion that, when assessing whether a property right is subject to seizure, one must be broad-minded and, in case of

doubt, the subject of execution must be assumed. In addition, as is relevant above, the exploitation procedure is reserved, so the execution procedure must be discontinued if further examination within the scope of the utilization stage shows that the enforcement of the attached right is impossible for legal or factual reasons.

Furthermore, the Plaintiff should be advised that the Supreme Court's comments on the absence of any obvious unusability (see above) show that there is no obvious non-transferable right. In addition, the Supreme Court, referring to Austrian jurisprudence, points out that seized design rights merely must be transferable in their exercise and that the design rights can also be exercised by third parties. Furthermore, the Supreme Court rightly states that the objective is that the operator can exercise the individual rights contained in the overall rights instead of the obligated party and that it is not clear which obstacles to execution law should prevent this (see ON 72, p. 45). To what extent now the specification of the Supreme Court and the reference to Austrian jurisprudence, according to which an execution on other property rights is about the judicial authorization of the operating creditor, to exercise the rights instead of the obligated party in the execution proceedings in order to thereby, if only indirectly, The State Court does not have access to the proceeds of the individual right to be liquidated, which is said to be contradictory.

3.2.3   Therefore, the Plaintiff's alleged breach of the right to lodge a complaint, and thus also the alleged violation of the prohibition of formal refusal of rights and the violation of the right to the ordinary judge, is not present.

4.      To the extent recognizable, the Plaintiff further claims that its right to equal treatment and, in connection therewith, its duty to state reasons had been breached.

4.1.    Specifically, the Plaintiff complains that the Supreme Court deviated from the practice of the country of reception regarding Section 331 öEO when, in the course of the execution of the overall rights, it did not check whether the party involved, as the trustor of the Alpha Trust, had any right of revocation or modification in relation to the aforementioned trust. It would be up to the Supreme Court, according to the Plaintiff, to go into more detail about the non-existent "right of withdrawal or amendment", since the Supreme Court specifically refers to the decision of the Austrian Supreme Court of 14 July 2011 on 3 Ob 177/10s, which in turn refers to RS0120752. The Supreme Court failed to provide valid reasons why it deviated from the relevant Austrian case law.

4.2.    In line with the case law of the State Court, the Plaintiff rightly concludes that there is no need to deviate from the legal practice existing in the country of origin for a standard adopted in Liechtenstein ("law in action"). In any case, such a deviation from foreign practice must be justified in detail (StGH 2015/040, recital 2.1; StGH 2009/050, recital 2.6 and StGH 2006/024, recital 3.5 [all in www.gerichtsentscheide.li]). However, if a decision obviously differs from a comparable decision, it must either be shown that the two cases differ in one

essential point, or it must be justified why the other case, which is comparable per se, was wrongly decided and by this comparative case or in general there is a need to deviate from previous practice (see instead of many: StGH 2017/141, recital 4.1; StGH 2013/069, recital 2.1; StGH 2012/046, recital 4.1; [all www.gerichtsentscheide.li]; see also Tobias Michael Wille, justification, aa 0., 546 f., margin no. 7 with citations).

According to the case law of the State Court, a change in practice is obviously in conflict with the equality principle of the constitution and the interest in legal security. However, a factually justified change in practice does not violate the principle of equality, unless there are signs that the authority is not consistently applying or intending to apply the new practice (StGH 2013/005, recital 2.3; StGH 2008/118, recital 2.2; StGH 2008/002, recital 4 [all www.gerichtsentscheide.li]; see also Tobias Michael Wille, Begründungspflicht, aa 0., 546 et seq, Rz. 7). In the opinion of the State Court, the factual reasons necessary to justify a change in practice do not already exist if the new practice is only justifiable and therefore, in itself, can withstand the arbitrary ban. Instead, the requirements of the constitutional principle of equality for a change in practice will only be met if the previous practice as a whole is less convincing than the new one. Otherwise, the interest in a constant jurisprudence prevails (StGH 2004/049, recital 2.2; StGH 2003/033, recital 2.2; see also Andreas Kley/Hugo Vogt, Rechtsgleichheit und Grundsatz von Treu und Glauben, in: Andreas Kley/Klaus A Vallender [ed.], Grundrechtspraxis in Liechtenstein, op. cit. 0, 272 et seq, Margin no. 39 et seq).

4.3.    The Plaintiff now misjudges that the aforementioned decision of the Austrian Supreme Court of 14 July 2011 on 3 Ob 177/1 Os or RS0120752 is a case of a foundation, whereas the case in question is a trust, namely with regard to the attachment of the related overall rights the party involved. For this reason alone, there can be no change in practice from the outset as the Plaintiff thinks, and therefore there is no violation of the duty to state reasons regarding the change in practice claimed by the Plaintiff. It is also clear from the contested decision that the Supreme Court uses the Austrian decisions mentioned in order to justify "indirect usability" (see ON 72, p. 42 et seq). Specifically, referring to the aforementioned Austrian judicature, the Supreme Court stated that the execution case in question was not the case of a foundation. What is essential in the case law of the Austrian Supreme Court for execution on donor rights is, however, for the case in the decision, that the indirect usability is sufficient for the suitability of an execution object according to Sections 331 et seq of öEO. With reference to other Austrian judicature, the Supreme Court finally comes to the correct conclusion that the execution according to Art. 242 EO does not require immediate usability of the right to be seized, but indirect usability is sufficient (see detailed ON 72, p. 45 et seq).

4.4.    The Plaintiff's alleged breach of the principle of equal treatment and the related alleged violation of the duty to state reasons do not exist.

5.      The Plaintiff also claims that the duty to state reasons had been breached.

5.1.   According to Art. 43 LV, an essential purpose of the duty to give reasons is that the person affected by an order or decision can check its validity and defend itself against an incorrect reasoning. However, the scope of the fundamental right to justification is limited by the aspects of appropriateness and procedural economy. There is no general right to detailed justification (StGH 2018/047, recital 3.1; StGH 2016/078, recital 3.1; StGH 2012/173, recital 2.1 [all www.gerichtsentscheide.li]). The fundamental right to justify only contains a minimal claim to justification. Accordingly, it does not violate the constitutional obligation to state reasons if the obvious is not substantiated by the deciding authority (StGH 2018/068, recital 3.1; StGH 2018/041, recital 3.1 = LES 2019, 1; StGH 2016/078, recital 3.1 [all www.gerichtsentscheide.li]). This fundamental right is only breached if there is no comprehensible justification for a decision-relevant point or if there is a mere justification (StGH 2018/039, recital 5.1; StGH 2017/197, recital 2.1; StGH 2016/078, recital 3.1 [all www.gerichtsentscheide.li]; see also Tobias Michael Wille, justification, in: Andreas Kley/Klaus A. Vallender [ed.], Grundrechtepraxis in Liechtenstein, op. cit., 554 et seq, margin No. 16). In this sense, it is not the task of a decisive authority to discuss all legal questions in detail, regardless of their relevance to decision-making. Instead, it only has to deal with the legal issues relevant to the decision to such an extent that the decision can be understood and checked by the person concerned (StGH 2011/8, recital 2.2 [www.gerichtsentscheide.li]). In this context, it should also be pointed out that the material correctness of a justification is examined in the light of the respective specific fundamental right or the arbitrary prohibition and not the obligation to justify according to Art. 43 LV. Accordingly, a wrong reasoning does not violate Art. 43 LV (StGH 2012/173, recital 2.1 [loc. cit.]; StGH 2011/168, recital 3.1; see also StGH 1998/13, recital 2.1; StGH 1997/16, recital 2 and StGH 1996/46, LES 1998, 191 [195, recital 2.5]); as long as it is not a mock justification (StGH 2007/57, recital 2.2; StGH 2007/54, recital 2.3; StGH 1996/46, LES 1998, 191 [195, recital 1.2]).

5.2.   In para. 9 of its individual complaint, the Plaintiff stated that the Supreme Court concluded that there was no obvious uselessness from the fact that the Plaintiff's position as a trustor "already affirmed his ability to bring about claims against the trustees on the basis of general principles".

5.3.   Contrary to the Plaintiff's view, the Supreme Court did not base the lack of obvious usability solely on the introductory statement (see also ON 72, p. 42). Instead, the Supreme Court has given extensive reasons for the contested decision, with reference to academic material and case law, which is why it cannot be assumed that it is obviously unusable. In particular, the Supreme Court has stated that, in the light of the execution request made by the Respondent, which is relevant to the Supreme Court across several pages (see p. 38 et seq in ON 72), it appears that there is no obvious unusability (see also the reference of the Supreme Court on p. 42 of the contested decision). As mentioned above, the contested decision contains various statements on the (indirect) usability of the seized rights (see in particular p. 42 et seq and p. 50 et seq in ON 72), which is why there can be no question that the usability or the apparent illegality of the attached rights, as put forward by the Plaintiff, had not been justified. There is no breach of the duty to

state reasons.

6.      The Plaintiff finally claims that its right to arbitrary treatment has been breached.

6.1.    According to the case law of the State Court, this fundamental right is only
        breached if a decision cannot be justified with facts, is not justifiable or is offensive
        (see instead of many: StGH 2018/095 = LES 2019, 76; StGH 2018/091, recital 4.1;
        StGH 2018/015, recital 6.1 [both www.gerichtsentscheide.li] and Hugo Vogt,
        Willkürverbot, in: Andreas Kley/Klaus A. Vallender [ed.], Grundrechtepraxis in
        Liechtenstein, op. cit., et seq, Margin No. 26 with citations). As part of the
        rough arbitrariness claim, the State Court, unless the complaints have already
        been dealt with (see the subsidiary character of the arbitrary ban instead of many:
        StGH 2018/101 = LES 2019, 85; StGH 2018/091, recital 4.1; StGH 2018/064 ,
        recital 3.3; [both www.gerichtsentscheide.li]), considered the following:

6.2.    In para. 3.9 and No. 10.10 of its individual complaint, the Plaintiff argues that the
        Supreme Court misjudges that an exploitation must first take place with regard to
        the seizure made on 08 EX.2016.839 before any other rights, namely overall rights
        as representational, would be seized. In that regard, the Plaintiff also considers the
        contested decision to be disproportionate.

        First of all, it should be pointed out to the Plaintiff that the Supreme Court makes
        detailed considerations on "double seizure" and "multiple seizure" in this context
        (see ON 72, pp. 52 et seq). In particular, the Supreme Court rightly states that in
        the matter at hand, the debtor's overall rights were seized, but in the case of 08
        EX.2016.839, the debtor's claims were seized. In addition, the Plaintiff fails to
        recognize that there can only be a restriction on the means of execution if there is
        no doubt that individual means of execution will be sufficient to fully satisfy the
        operator's claim. The mere probability is not enough. It is undisputed that, as a
        matter of fact, this requirement is generally not recognizable to the court with
        sufficient certainty at the stage of the execution permit, which is why Art. 9, 2, was
        apparently (implicitly) addressed by the Plaintiff. Half sentence of EO is hardly used
        in practice in the present stage of the procedure (see the entire text in Jakusch,
        Angst, op. cit., No. 6 to Section 14 öEO). The same applies to the case in question
        since the contested decision seized overall rights and therefore is only at the
        exploitation stage that is necessary to examine in detail which individual rights
        flowing from the overall right of the obligated party can be utilized and are assets.
        In this respect, the decision of the Supreme Court withstands this arbitrary test.

6.3.    Furthermore, the Plaintiff considers it arbitrary that the Plaintiff's entire proceedings
        have access to the Plaintiff's overall rights with regard to the Alpha Trust or that
        the latter are seized, since "an execution proceeding is not the right place for it".
        Instead, such an argument would have to be put forward in an appeal procedure.

        With reference to the teleology of Art. 242 EO, the Supreme Court then rightly
        states that the fact that the catch-all provisions of the execution is restricted to
        other property rights should ensure that all conceivable assets of the obligated
        person can be executed. The interpretation of Art. 242 et seq EO must be based
        on precisely this purpose of the law (see also ON 72, p. 35 with reference to

judicature and case law). As is already relevant in detail, it is consequently sufficient to be able to indirectly utilize the total rights seized (see ON 72, p. 42 et seq). In this regard, it is unquestionable that the Respondent, as the Plaintiff believes, is in the "wrong" process: Instead, the Respondent is of the opinion that it is precisely not necessary within the context of the attachment of overall rights that the exercise of individual powers of the obligated person immediately makes an asset usable, as long and insofar as the concrete exercise is aimed at the assets of the obligated execution supply. In addition, and as mentioned above, it must then be examined in detail at the exploitation stage which individual rights flowing from the overall right of the obligated person can be exploited and which are assets. There can be no doubt of a breach of the arbitrary ban.

6.4.    Finally, the Plaintiff considers it arbitrary that the Supreme Court has seized his universal right as a protector of the Alpha Trust. All of these rights are not property rights and this Supreme Court practice misjudges "the nature of the trust".

The fact that the Plaintiff's argument is not justified as it already results from the above statements by the State Court (see in particular also the statements on the criteria of sufficient obvious usability and indirect usability). Insofar as the Plaintiff relies on the seizability of individual rights that can be derived from a universal right, it fails to recognize that the enforced execution permit does not refer to individual rights, but to the rights of the obligated party (so correctly the Supreme Court with reference to case law, see ON 72, P. 35). Ultimately and consistently, as is relevant to the Supreme Court, the complainant fails to recognize that the complainant can obtain usable monetary claims based on his overall rights. As the Supreme Court rightly states, whether the latter is actually the case in the future is neither to be examined in more detail nor to be decided, but rather to be reserved for any exploitation of the applicant's overall rights (see in particular ON 72, p. 40). For this reason too, the objections raised by the Plaintiff, in particular with regard to Art. 918 para. 1 PGR, are irrelevant. Even in the light of these explanations, it cannot be assumed that the decision of the Supreme Court has been qualified or grossly missed.

7.      Because of all of these considerations, the Plaintiff has been unsuccessful with any of its complaints regarding fundamental rights, so that, according to the assertion, the individual complaint cannot be accepted.

8.      As a result of the decision, the two main complaints of the Respondent on 22 October 2018 and 12 December 2018 against the two decisions of the Deputy President regarding the ordering of provisional measures from 9 October 2018 and 27 November 2018, are now apparent as devoid of purpose, so that the provisional procedure in question to StGH 2018/111 was to be discontinued in accordance with Art. 42 Para. 1 StGHG without incurring costs (StGH 2018/100, recital 4 [www.gehchtsentscheide.li]; StGH 2017/126, recital 5; see. also StGH 2006/15, recital 7 [www.gerichtsentscheide.li]).

9.      The successful respondent was therefore only entitled to the representative's costs for his counter-statement dated 12 November 2018 on the individual complaint.

The court costs to be borne by the Plaintiff in the total amount of CHF 4,825.00 are based on the assessment basis from the additional amount of CHF 25.00 for the payment order of 17 September 2018 in accordance with Art Amount of CHF 4,000.00 (Art. 56 para. 1 StGHG in conjunction with Art. 1 para. 1 let. B, Art. 35 para. 1 and Art. 30 para. 1 GGG) and from the flat fee for the provisional proceedings in the amount of CHF 800.00 (Art. 56 para. 1 StGHG in conjunction with Art. 1 para. 1 let. B, Art. 35 para. 2 and Art. 30 para. 1 GGG) together. In the two provisional decisions of 9 October 2018 and 27 November 2018 on StGH 2018/111, the imposition of the court costs of the provisional proceedings was made dependent on the outcome of the main proceedings in accordance with the constant practice of the State Court. Since the individual complaint is not followed up, the Plaintiff must now also be ordered to pay these costs. These court fees totalling CHF 4,825.00 have already been paid by the complainant with the value dates of 21 September 2018 and 16 October 2018, respectively. The excess of CHF 25.00 in court fees paid by the Plaintiff with the value date of 21 September 2018 for the provisional proceedings must be reimbursed to him by the state treasury.

**This judgment is final.**

Vaduz, 29 October 2019

The ad hoc chairman:

Mr Marco Ender

For the correctness of the copy

[seal:] STATE COURT OF THE PRINCIPALITY OF LIECHTENSTEIN
[Signature]
State Court Registry

**Issued to:**

–   Representative of the Respondent (+ 1 copy)
–   Representative of the Respondent (+ 1 copy)
–   Representative of the Party Involved (+ 1 copy)
–   Princely Supreme Court, 1. Senate, Vaduz (+ 1 copy)
–   Princely Regional Court, Section 8, Vaduz
–   Princely Government, Government Secretary Horst Schadler, in copy
–   Court file 08 EX.2016.5802, in copy

StGH 2018/111

# STAATSGERICHTSHOF
## DES FÜRSTENTUMS LIECHTENSTEIN

IM NAMEN VON FÜRST UND VOLK

**EINGEGANGEN**

**19. Dez. 2019**

## URTEIL

Der Staatsgerichtshof als Verfassungsgerichtshof hat in seiner nicht-öffentlichen Sitzung vom 29. Oktober 2019, an welcher teilnahmen: lic. iur. Marco Ender als ad-hoc-Vorsitzender; Prof. Peter Bussjäger und Prof. August Mächler als Richter; lic. iur. Mirjam Amann und lic. iur. Brigitte Vogt als ad-hoc-Richterinnen sowie Gitte Schädler als Schriftführerin

in der Beschwerdesache

| | |
|---|---|
| Beschwerdeführer: | Ashot Egiazaryan<br>910 North Crescent Drive<br>US-Beverly Hills, CA 90210<br><br>vertreten durch:<br>Advocatur Beck & Partner AG<br>9495 Triesen |
| Beschwerdegegner: | Vitaly Ivanovich Smagin<br>Krasnoproletarskaya st., h 9<br>R-127006 Moskau<br><br>vertreten durch:<br>Advocatur Seeger, Frick & Partner AG<br>9494 Schaan |
| Beteiligte Partei: | CTX Treuhand AG als Treuhänderin des Alpha Trust<br>9490 Vaduz<br><br>vertreten durch:<br>Wilhelm & Büchel Rechtsanwälte<br>9490 Vaduz |
| Belangte Behörde: | Fürstlicher Oberster Gerichtshof, Vaduz |

gegen:          Beschluss des Fürstlichen Obersten Gerichtshofes
                vom 7. September 2018, 08 EX.2016.5802-72

wegen:          Verletzung verfassungsmässig und
                durch die EMRK gewährleisteter Rechte
                (Streitwert: CHF 100'000.00)

### zu Recht erkannt:

1.  Der Individualbeschwerde wird keine Folge gegeben. Der Beschwerdeführer
    ist durch den angefochtenen Beschluss des Fürstlichen Obersten Gerichts-
    hofes vom 7. September 2018, 08 EX.2016.5802-72, in seinen verfas-
    sungsmässig und durch die EMRK gewährleisteten Rechten nicht verletzt.

2.  Das Provisorialverfahren zu StGH 2018/111 wird eingestellt.

3.  Der Beschwerdeführer ist schuldig, dem Beschwerdegegner die Kosten sei-
    ner Vertretung in Höhe von CHF 2'494.80 binnen vier Wochen bei sonstiger
    Exekution zu ersetzen.

4.  Die Landeskasse hat dem Beschwerdeführer die mit Valuta vom 21. Sep-
    tember 2018 zu viel bezahlten Gerichtsgebühren in Höhe von CHF 25.00 zu-
    rückzuerstatten. Die übrigen Gerichtsgebühren in Höhe von CHF 4'825.00
    trägt der Beschwerdeführer.

### SACHVERHALT

1.  Mit Beschluss bzw. Exekutionsbewilligung vom 21. November 2016 (ON 3)
    entschied das Landgericht wie folgt:

    „Aufgrund des vollstreckbaren Schiedsspruches des London Court of Inter-
    national Arbitration (LCIA), London, Grossbritannien, vom 11. November
    2014 (berichtigt mit Entscheid vom 9. Januar 2015) zu Fall No. 101721, in
    der Schiedssache der klagenden Partei Vitaly Ivanovich SMAGIN [Be-
    schwerdegegner], Krasnoproletarskaya st., h. 9, 127006 Moskau, Russland,
    gegen die beklagten Parteien 1. KALKEN HOLDINGS LIMITED, 15 Agiou
    Paviou Street, Ledra House, Agios Andreas 1105, Nikosia, Zypern, und 2.
    Ashot YEGIAZARYAN [Beschwerdeführer], 655 Endrino Place, Beverly Hills,
    California, Vereinigte Staaten von Amerika

Case 2:20-cv-11236-RGK-PLA Document 1-4 Filed 12/11/20 Page 41 of 78 Page ID #:172

wird der betreibenden Partei, Vitaly Ivanovich SMAGIN, Krasnoproletarskaya st., h.9, 127006 Moskau, Russland,

wider die verpflichtete Partei Ashot YEGIAZARYAN, 655 Endrino Place, Beverly Hills, California, Vereinigte Staaten von Amerika,

zur Hereinbringung der vollstreckbaren Forderung von
a.  USD 72'243'000.00 (an Hauptsache), und
b.  USD 6'899'701.32 (an kapitalisierten Zinsen) und
c.  GBP 2'776'473.68 und USD 672'354.08 und RUB 2'958'750.00 (an Kosten) und
d.  weiteren Zinsen in Höhe eines vierteljährlich aufgezinsten Jahreszinssatz von 8% aus USD 72'243'000.00 und USD 6'899'701.32 seit 11. November 2014 sowie
e.  der mit CHF 63'880.00 bestimmten Kosten des Exekutionsantrages,

die Exekution bewilligt durch

1.  <u>Pfändung</u> der der verpflichteten Partei als Treugeber, Protektor und Begünstigter des Alpha Trusts (FL-0002.510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, 9490 Vaduz, gegenüber der

    CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha Trust (FL-0002-510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, FL- 9490 Vaduz,

    zustehenden Gesamtrechte, insbesondere das Recht zum Erhalt von Zahlungen und Zuwendungen aller Art aus dem Treugut, das Recht zur Bestellung und Abberufung der Treuhänder des Alpha Trusts (Art. (2) Written Instrument vom 2. Juni 2015), das Recht des Treuhänders zur Beendigung des Trusts (Art. 3, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Bestellung der Begünstigten des Alpha Trusts (Art. 8, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Änderung der Treuhandurkunden des Alpha Trusts (Art. 12, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Delegation sämtlicher Rechte des Treuhänders einschliesslich seiner Ermessensbefugnisse (Art. 11, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Ausübung sämtlicher der im First Schedule der Declaration of Trust festgelegten Rechte (Art. 11, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument) und den Rechten als Vermögensverwalter des Trusts (Minutes of a Meeting of the Directors of CTX Treuhand AG vom 3. Juni 2015).

2.  An die verpflichtete Partei Ashot YEGIAZARYAN wird das Gebot erlassen, sich jeder Verfügung über die oben (1.) bezeichneten Rechte zu enthalten.



3.  An die CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha Trust (FL-0002-510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, FL-9490 Vaduz, wird das Verbot erlassen, aus diesen Ansprüchen oder unter Ausübung dieser Rechte (1.) an die verpflichtete Partei Ashot YE-GIAZARYAN und/oder einen Dritten zu leisten, insbesondere Weisungen durch die verpflichtete Partei Ashot YEGIAZARYAN zu befolgen und/oder Zustimmungen durch die verpflichtete Partei Ashot YEGIAZA-RYAN zu akzeptieren und ihren Entscheidungen zugrunde zu legen.

4.  Ausgenommen von dieser Exekutionsbewilligung sind die durch die For-derungsexekutionsbewilligung des Fürstlichen Landgerichtes vom 24. Februar 2016, 08 EX.2016.839, ON 4, bereits gepfändeten Forderungen, nämlich die der verpflichteten Partei aufgrund seiner Rechtstellung als wirtschaftlich Berechtigter, Treugeber, Begünstigter und Auftraggeber des Alpha Trusts oder anderer Treuhand-verhältnisse gegen die Dritt-schuldner (i) CTX Treuhand AG als Treuhänderin des Alpha Trust, (ii) Dr. Thomas Wilhelm und (iii) Nikolaus Wilhelm zustehenden Geldforde-rungen und Rückzahlungsansprüche."

2.  Gegen diesen erstgerichtlichen Beschluss (ON 3) erhoben sowohl der Be-schwerdeführer als auch die beteiligte Partei jeweils Rekurs an das Obergericht.

3.  Das Obergericht gab mit Beschluss vom 3. August 2017 (ON 36) beiden Re-kursen im Sinne einer Abweisung der Exekutionsanträge Folge.

4.  Gegen diesen Beschluss des Obergerichtes (ON 36) erhob der Beschwer-degegner Revisionsrekurs an den Obersten Gerichtshof wegen Mangelhaf-tigkeit des Verfahrens, Aktenwidrigkeit und unrichtiger rechtlicher Beurtei-lung. Beantragt wurde u. a., den angefochtenen Beschluss dahingehend ab-zuändern, dass den Rekursen des Beschwerdeführers und der beteiligten Partei keine Folge gegeben und die Exekutionsbewilligung des Landgerich-tes (ON 3) vollinhaltlich wiederhergestellt werde.

5.  Mit Beschluss vom 07.09.2018 hat der Oberste Gerichtshof dem Revisions-rekurs des Beschwerdegegners Folge gegeben und den Beschluss des Erstgerichts vom 21.11.2016, ON 3, wiederhergestellt. Der Oberste Ge-richtshof begründet seine Entscheidung im Wesentlichen wie folgt:

5.1.  Gemäss Art. 242 Abs. 1 EO (= § 331 Abs. 1 öEO) habe zum Zwecke der Exekution auf Vermögensrechte, die nicht zu den Forderungen gehören, das Gericht auf Antrag des betreibenden Gläubigers das Gebot zu erlassen, sich jeder Verfügung über das Recht zu enthalten (Pfändung). Ist kraft dieses Rechts eine bestimmte Person zu Leistungen verpflichtet, so sei die Pfän-dung erst dann als bewirkt anzusehen, wenn auch dieser dritten Person das gerichtliche Verbot, an den Verpflichteten zu leisten, zugestellt worden sei. Gemäss Art. 242 Abs. 2 EO sei die Art der Verwertung des Rechtes vom Gericht auf Antrag des betreibenden Gläubigers nach Einvernahme des

Verpflichteten und aller Gläubiger, zu deren Gunsten Pfändung erfolgte, zu bestimmen.

Diese Rechtslage der liechtensteinischen EO entspreche dem österreichischen Rezeptionsvorbild in §§ 331 ff. öEO. Es sei daher österreichische Literatur und Judikatur zur Beurteilung der gegenständlichen Rechtsfragen heranziehbar.

5.2.   In vielen Fällen vermöge der betreibende Gläubiger nur auf ein „Gesamtrecht" die Exekution zu führen, zumal sich vermögenswerte Einzelrechte, die vom betreibenden Gläubiger in der Folge geltend zu machen bzw. durchzusetzen sind, erst in der konkreten Sachlage und Einzelsituation ergeben. Unpfändbar seien unter diesem Aspekt nur höchstpersönliche oder sonst offenkundig nicht übertragbare Rechte oder solche, deren Ausübung nur für den Verpflichteten wirtschaftlich sinnvoll sei (öOGH 3 Ob 101/04f; Oberhammer in Angst/Oberhammer, EO[3] § 331 Rz 4). Soweit daher der Beschwerdeführer und die beteiligte Partei auf die Unpfändbarkeit einzelner aus einem Gesamtrecht ableitbarer Rechte verweisen, sei ihnen entgegenzuhalten, dass sich die bekämpfte Exekutionsbewilligung nicht auf Einzelrechte, sondern auf Gesamtrechte des Beschwerdeführers beziehe (öOGH 3 Ob 166/11z; vgl. auch RIS-Justiz RS0004162 [T1]).

Der Auffangtatbestand der Exekution auf andere Vermögensrechte solle sicherstellen, dass alle denkbaren Vermögenswerte des Verpflichteten in Exekution gezogen werden können. An dieser Zwecksetzung des Gesetzes habe sich die Interpretation der §§ 331 ff. öEO zu orientieren (RIS-Justiz RS0120619), was auch für die Auslegung der Art. 242 ff. EO zu gelten habe. "Andere Vermögensrechte" iS des Art. 242 Abs. 1 EO seien nur solche materiellrechtliche Ansprüche des Antragsgegners, die weder dem unbeweglichen Vermögen noch jenen Teilen des beweglichen Vermögens des Schuldners zuzuordnen seien, die als Geldforderungen, körperliche Sachen bzw. als Ansprüche auf Herausgabe oder Leistung körperlicher Sachen zu definieren seien (OGH 03 CG.2007.66 LES 2008, 266 Erw 8.1; LES 1987, 80; RZ 1956, 111). So sei in dem Optionsrecht des Stifters, sich selbst als Begünstigten einsetzen zu können, ein pfändbarer Vermögenswert erblickt worden. Sogar das Recht auf Organbestellung, welches unmittelbar keine vermögenswerte Rechtsposition verschaffe, könne als Einflussmöglichkeit des Stifters auf den Vorstand mittelbar zu einer Geldwertzuwendung, zB aus den Erträgnissen des Stiftungsvermögens, führen. § 333 Abs. 1 öEO (Art. 244 Abs. 1 EO) stelle darauf ab, dass das gepfändete Recht Anspruch auf „Ausfolgung einer Vermögensmasse" gewähre. Das Recht selbst müsse zwar nicht verwertbar sein, es müsse aber seinerseits den Zugriff auf ein verwertbares Vermögen ermöglichen (öOGH 3 Ob 177/10s; Oberhammer in Angst/Oberhammer, EO[3] § 331 Rz 3), wie etwa das im Gesetz beispielsweise angeführte Recht, eine Kündigung vorzunehmen (Art. 244 Abs. 1 EO). Grundsätzlich würden auch mehrere Schritte von Rechtshandlungen zur „Ausfolgung einer Vermögensmasse" führen können, das Gesetz beschrän-

ke den betreibenden Gläubiger nicht auf einen einzigen exekutiven Verwertungsschritt.

5.3.　Im gegenständlichen Fall gehe es nun entgegen den Ausführungen des Beschwerdeführers und der beteiligten Partei nicht um die Pfändung einzelner „Forderungen", für die zumindest das „Entstandensein" vorauszusetzen wäre, sondern um eine Exekution auf „andere Vermögensrechte" im Sinne der Art. 242 ff. EO. Es sei wesenstypisch für eine derartige Exekution, dass verwertbare Forderungen im Zeitpunkt des exekutiven Zugriffs (noch) nicht vorhanden sind, weil diese Art der Exekution auf ein „Gesamtrecht" greife und zum Entstehen einzelner Forderungen und Ansprüche in aller Regel erst weitere Schritte durch den betreibenden Gläubiger im Rahmen der Verwertung vorauszusetzen seien (Oberhammer in Angst/Oberhammer, EO[3] § 331 Rz 3 f.).

Die öRsp lasse denn auch Pfändungen gemäss § 331 EO dann zu, wenn erst weitere Rechtsakte durch den betreibenden Gläubiger vermögenswerte Rechte des Verpflichteten entstehen lassen. Dass diese bereits im Pfändungszeitpunkt bestehen setze die EO nicht voraus (vgl. öOGH 3 Ob 165/10a; 6 Ob 235/08i GesRZ 2009, 237 [Arnold]).

Diesen Unterschied – einerseits Pfändung von Forderungen, die bedingte oder betagte Forderungen voraussetzt, weil bloss erwartete Forderungen nicht im Rahmen der Exekution auf Geldforderungen pfändbar sind und andererseits die Pfändung von Gesamtrechten, wenn zB mangels Kündigung des zugrundeliegenden Vertragsverhältnisses pfändbare Forderungen noch gar nicht entstanden sind – habe der öOGH gerade in einer Entscheidung zur Exekution auf Treugeberrechte hervorgehoben (öOGH 3 Ob 223/12h ecolex 2013/211). Im konkreten Fall sei es um die Exekution auf Ansprüche des Treugebers gegen den Treuhänder gegangen, auf die nur nach § 331 öEO (= Art. 242 EO) Exekution geführt werden könne. Diese Bestimmung sei deshalb zur Anwendung gekommen, weil das treuhänderische Vertragsverhältnis nur durch eine Gestaltungserklärung einer der Vertragsparteien beendet werden könne.

Während sich sohin nicht nur das Exekutionsmittel, sondern auch das Exekutionsobjekt im Fall der Forderungsexekution von jenem im Fall der Exekution auf „andere Vermögensrechte" unterscheide, sei lediglich in der Frage des bereits zumindest entstandenen Rechts eine Gemeinsamkeit gegeben: Diesfalls bestehe kein Unterschied darin, dass das Recht, auf das Exekution geführt wird, zum Zeitpunkt der Pfändung bereits entstanden sei. Auf ein solches Recht könne dann - je nach Exekutionsobjekt - Exekution geführt werden. Auch für eine Exekution auf andere Vermögensrechte sei somit vorausgesetzt, dass das Gesamtrecht bereits entstanden ist und dem Verpflichteten zusteht (OGH 25.8.2014, 8 Ob A 56/14i ecolex 2014, 1061).

5.4.　Der Beschwerdegegner habe im vorliegenden Fall mehrere Rechtspositionen des Beschwerdeführers als Gesamtrechte geltend gemacht und deren

Pfändung beantragt: So habe er im bewilligten Antrag die Stellung des Beschwerdeführers als Treugeber, Protektor und Begünstigter des Alpha Trust gegenüber der beteiligten Partei vorgebracht und die Pfändung der hieraus dem Beschwerdeführer gegenüber der beteiligten Partei zustehenden Gesamtrechte begehrt (Pkt. 1 Abs. 1 - 3). Zur Position des Beschwerdeführers als Protektor des Alpha Trust seien im Einzelnen ua Teilrechte vorgebracht worden, wie zB dass der Beschwerdeführer nach der Trust-Urkunde übertragbare Rechte, so etwa das Recht zur Zustimmung als Protektor zu diversen Rechten und Handlungen des Treuhänders habe: so insbesondere zur Beendigung des Trusts durch den Trustee, zur Bestimmung der Begünstigten, zur Delegation sämtlicher Rechte des Trustees einschliesslich seiner (angeblichen) Ermessensbefugnis und zur Änderung von Bestimmungen der Treuhandurkunde. Überdies habe der Beschwerdeführer das alleinige Recht, die Trustee des Alpha Trusts zu bestellen oder abzuberufen. Es komme hinzu, dass sich der Beschwerdeführer von den (von ihm kontrollierten) Trustees des Alpha Trusts sogar als Vermögensverwalter des Trusts einsetzen habe lassen.

Damit seien aber vom Beschwerdegegner hinlängliche Behauptungen zur Pfändbarkeit der Gesamtrechte des Beschwerdeführers aufgestellt worden. Die Einzelrechte des Gesamtrechts müssten nicht behauptet und bescheinigt werden, wenn es doch (wie hier beispielhaft, verb „insbesondere") geschehe, schade es dem Beschwerdegegner nicht, selbst wenn idZ Rechte beispielhaft aufgezählt werden, die für den Beschwerdegegner nicht verwertbar seien. Der vorliegende Exekutionsantrag gebe klar die zu pfändenden Gesamtrechte, nämlich die des Beschwerdeführers als Treugeber, als Protektor und als Begünstiger des Alpha Trust gegenüber der beteiligten Partei an. Einer näheren Detaillierung bzw. Aufzählung der aus diesen Rechtspositionen resultierenden Einzelrechte bedürfe es nicht.

Die vom Beschwerdegegner begehrte Exekutionsart decke sich mit der vom öOGH in 3 Ob 223/12h (ecolex 2013/211; vgl. Oberhammer in Angst/Oberhammer, EO[3] § 325 Rz 5) geforderten Exekutionsart, nämlich der Exekution auf andere Vermögensrechte gem. §§ 331 ff. öEO (öOGH 3 Ob 223/12h). Es verfange in diesem Zusammenhang auch nicht der Einwand des Beschwerdeführers und der beteiligten Partei, dass der Alpha Trust lediglich eine Ermessensbegünstigung und keine Begünstigungsberechtigung einräume, da – was sich im Rahmen des Verwertungsverfahrens herausstellen kann – der Beschwerdeführer aufgrund seiner Gesamtrechte durch Änderungen der Treuhandurkunde zu verwertbaren Geldforderungen gelangen könne. Es komme hinzu, dass im Rahmen der Verwertung seiner Gesamtrechte der Beschwerdeführer auch zu einer Beendigung des Trusts mit entsprechenden Forderungen gelangen könnte. Dies sei hier nicht näher zu prüfen und zu entscheiden, sondern vielmehr einer allfälligen Verwertung der Gesamtrechte des Beschwerdeführers vorzubehalten. Darüber hinaus sei ausdrücklich darauf hingewiesen worden, dass mangels eines entsprechenden Verbots in der Treuhandurkunde der Beschwerdeführer sogar berechtigt sei, sich selbst als Treuhänder einzusetzen, was auch gesetzlich zulässig sei

(Art. 910 Abs. iVm Art. 923a, § 40 Abs. 2 PGR). Daher sei es weder widersprüchlich noch unrichtig, wenn der Beschwerdegegner im Rahmen der beispielhaften Aufzählung der in die Gesamtrechte des Beschwerdeführers fallenden Einzelrechte ua auch Rechte des Treuhänders laut den dort genannten Trusturkunden aufzähle, zumal er behaupte, der Beschwerdeführer könne potentiell selbst der Treuhänder des Alpha Trust werden (ON 1 Rz 38).

Es sei im Übrigen unrichtig, dass sich der Beschwerdegegner in seinem Vorbringen im Exekutionsantrag bloss auf die Rechte des Beschwerdeführers als Protektor beschränkt hätte. Der Beschwerdegegner habe auch vorgetragen, dass der Beschwerdeführer das Vermögen im Trust mittels Instruktionen an die Trustees nach wie vor uneingeschränkt kontrolliere und insbesondere von den Trustees zu befolgende Instruktionen in Bezug auf Ausschüttungen aus dem Trustvermögen erteilen könne. Beantragt worden sei die Exekution auf die dem Beschwerdeführer gegenüber dem Treuhänder des Alpha Trust zukommenden Rechte, womit sich der Beschwerdegegner auf die Gesamtrechte des Beschwerdeführers als Treugeber bezogen habe. Hinsichtlich der Rechtsposition des Beschwerdeführers sei auch die Treuhandvereinbarung vom 27. Mai 2015 und das diese ergänzende „Written Instrument" vom 2. Juni 2015 ausdrücklich behauptet und überdies die einzelnen Zustimmungsbefugnisse des Beschwerdeführers zu Agenden des Treuhänders in der „Declaration of Trust" dargelegt worden (ON 1 Rz 18 und in FN 3).

Von einer Unschlüssigkeit oder Unbestimmtheit des Exekutionsantrags könne daher keine Rede sein: Unschlüssig sei ein Exekutionsantrag nur dann, wenn er die vollständige, bestimmte und genaue Behauptung jener Tatsachen vermissen lasse, welche als Rechtsfolge die begehrte Exekutionsbewilligung nach sich zögen (OGH 08 EX.2006.4224 LES 2009, 221). Der Beschwerdegegner habe alle Rechtsgrundlagen behauptet, aus denen sich Gesamtrechte des Beschwerdeführers gegen die beteiligte Partei ergeben: Der Beschwerdeführer habe nach dem Vorbringen des Beschwerdegegners Gesamtrechte als Treugeber, Protektor und Begünstigter des Alpha Trust der beteiligten Partei gegenüber.

Auch die vom Beschwerdeführer und der beteiligten Partei behauptete mangelnde Spezifizierung der Rechte durch den Beschwerdegegner, „auf die er greifen will", liege nicht vor. Die vom Gesetz in den Art. 243 ff. EO genannten Verwertungshandlungen, wie die Teilung oder die Einleitung eines Auseinandersetzungsverfahrens, Kündigungen etc. und die generalklauselhaft angeführte Befugnis des Beschwerdegegners, die „sonst zur Ausübung und Nutzbarmachung des gepfändeten Rechtes erforderlichen Erklärungen wirksam für den Verpflichteten abzugeben", müssten im Exekutionsantrag nicht im Einzelnen dargetan werden. Für eine Pfändung nach der Bestimmung des Art. 242 EO sei es ausreichend, wenn das gepfändete Gesamtrecht seinerseits den Zugriff auf ein verwertbares Vermögensobjekt ermögliche (Oberhammer in Angst/Oberhammer, EO³ § 331 Rz 3). Der Antrag sei nur dann abzuweisen, wenn die Unverwertbarkeit des Rechts aus der Aktenlage

offensichtlich ist (öOGH 3 Ob 28/99k SZ 72/108; 3 Ob 243/11y JBl 2012, 535; RIS-Justiz RS0127665; RS0001249, RS0000085). Solches sei aber hier nicht der Fall: Dass ein verwertbares Vermögensobjekt mittels des zu pfändenden Gesamtrechts ergriffen bzw. verwertet werden könne, habe der Beschwerdegegner ausführlich dargetan, ein Grund, eine „offensichtliche" Unverwertbarkeit anzunehmen, liege gerade nicht vor. Allein die vom Beschwerdegegner geltend gemachte Rechtsposition des Beschwerdeführers als Treugeber lasse schon nach allgemeinen Grundsätzen dessen Möglichkeit zur Herbeiführung vermögenswerter Forderungen gegen die Treuhänderin bejahen.

5.5.    Die in diesem Verfahren mehrfach zitierte Entscheidung des öOGH 3 Ob 177/10s, publiziert ua in PSR 2011/47, 183 (Rassi/Zollner) = GesRZ 2011, 317 (Wurzer/Foglar-Deinhardstein; Zollner/Paulsen, Überblick über die höchstgerichtliche Judikatur in Stiftungssachen im Jahr 2011, PSR 2012/18, 66 [68 f.]) habe eine Exekution gegen einen Stifter betroffen und habe sich lediglich mit der Frage der Verwertung von bereits rechtskräftig gepfändeten Gesamtrechten des Verpflichteten als Stifter befasst. Dort sei das „umfassende" Änderungsrecht sowie das dem Stifter zustehende Recht zur Bestimmung des Begünstigten wirksam gepfändet und gegenüber dem Verpflichteten das Gebot, sich jeder Verfügung über diese Rechte zu enthalten und der Stiftung gegenüber das Verbot ausgesprochen worden, an den Verpflichteten zu leisten bzw. dessen Verfügungen über gepfändete Rechte zu akzeptieren. Erst im Rahmen des Verwertungsverfahrens (§ 331 Abs. 2 EO) seien Verwertungsanträge präzisiert und ergänzt worden und habe das Erstgericht die betreibende Partei im eigenen Namen zur Bestellung des Verpflichteten als Begünstigten ermächtigt, habe aber das auf die Ermächtigung zur Abberufung der Mitglieder des Beirats der Stiftung und Bestellung neuer Beiratsmitglieder gerichtete Verwertungsmehrbegehren abgewiesen. Die zweite Instanz habe den Rekursen beider Parteien Folge gegeben und habe den Beschluss des Erstgerichtes aufgehoben. Gegen den Aufhebungsbeschluss hätten sich Revisionsrekurse gerichtet, wobei der öOGH den Rekurs des Betreibenden als teilweise berechtigt erkannt habe. Er habe ausgesprochen, dass die dem Stifter gegenüber einer Privatstiftung zustehenden Gesamtrechte der Exekution nach §§ 331 f. EO dann unterliegen würden, wenn er sich das Recht auf Widerruf vorbehalten habe und nach der Stiftungserklärung oder gemäss § 36 Abs. 4 PSG zumindest zum Teil Letztbegünstigter sei oder sich ein Änderungsrecht vorbehalten habe (RIS-Justiz RS0120752). Denn, solange sich ein Stifter Änderungs- oder Widerrufsrechte vorbehalte, sei das Prinzip der vollständigen Trennung der Stiftung vom Stifter nicht verwirklicht. Ein kumulativer Vorbehalt beider Gestaltungsrechte sei entgegen der Auffassung des Verpflichteten jedoch keine Voraussetzung für eine Exekution nach §§ 331 ff. EO (3 Ob 217/05s; 3 Ob 16/00h).

Bei der hier vorliegenden Exekutionssache handle es sich nicht um einen Stiftungsfall. Wesentlich an der Judikatur des öOGH zur Exekution auf Stifterrechte sei aber für den entscheidungsgegenständlichen Fall, dass für die Tauglichkeit eines Exekutionsobjektes nach §§ 331 ff. öEO bereits dessen

mittelbare Verwertbarkeit genüge. So habe der öOGH im Änderungsrecht eines Stifters „jedenfalls ein Vermögensrecht" erblickt, möge es auch zuerst entsprechend der durch den Betreibenden zu veranlassenden Rechtsgestaltungen bedürfen, bis er auf konkrete Vermögensrechte des Stifters greifen könne (3 Ob 217/05s Erw 3; 3 Ob 177/10s Erw III 1 ff; vgl. Zollner/Paulsen, PSR 2012/18, 69). Eine Änderung der Stiftungserklärung, den Stifter (wieder) zu begünstigen, schaffe dergestalt die Voraussetzungen für die Begründung von verwertbaren Vermögensrechten des Stifters (öOGH 3 Ob 217/05s RdW 2006, 505). Stehe dem Begünstigten (schliesslich) ein klagbarer Anspruch gegen die Stiftung zu, sei dieser zedierbar, verpfändbar und pfändbar (unter Hinweis auf Csoklich, Zugriff auf Vermögen der Privatstiftung durch Gläubiger der Stifter und Begünstigten, ÖBA 2008, 416 [424 ff.]).

In der öLehre sei für den Fall der Exekution gegen einen Stifter ebenso der Standpunkt vertreten worden, dass für den Gläubiger die Möglichkeit bestehe, sich anstelle des Stifters dazu ermächtigen zu lassen, die Stiftungserklärung auch hinsichtlich der konkreten Höhe und Fälligkeit von Zuwendungen zu ändern, um dem Stifter damit einen klagbaren (und exekutiv verwertbaren) Anspruch auf die Leistung von Zuwendungen zu verschaffen (Rassi, PSR 2011/47, 189 [Entscheidungsbesprechung]; RIS-Justiz RS0120753).

Die Exekution nach den Art. 242 EO fordere daher keine unmittelbare Verwertbarkeit des zu pfändenden Rechts, sondern es genüge die „mittelbare Verwertbarkeit". In 3 Ob 16/06h ZIK 2006, 143 habe der öOGH ein pfändbares anderes Vermögensrecht angenommen, wenn ein Stifter Letztbegünstigter ist, dies sei nicht in Zweifel zu ziehen. Überdies habe es der OGH in dieser Entscheidung genügen lassen, dass gepfändete Gestaltungsrechte (eines Stifters) bloss ihrer Ausübung nach übertragbar seien (unter Verweis auf öOGH 3 Ob 55/80) und habe hervorgehoben, dass die Ausübung der Gestaltungsrechte (des Stifters) auch durch Dritte erfolgen könnte (vgl. öOGH 6 Ob 106/03m für den Sachwalter des Stifters bzw. öOGH 6 Ob 332/98m GesRZ 1999, 126 für die obsorgeberechtigten Eltern des Stifters mit pflegschaftsbehördlicher Genehmigung). Vorliegendenfalls gehe es nun darum, dass der Beschwerdegegner die in den Gesamtrechten enthaltenen Einzelrechte anstelle des Beschwerdeführers ausüben könne. Es sei nicht ersichtlich, welche exekutionsrechtlichen Hindernisse dem entgegenstehen sollten. Abgesehen davon gehe es bei einer Exekution auf andere Vermögensrechte nicht um Übertragung der Gestaltungsrechte an Dritte, sondern um die gerichtliche Ermächtigung des betreibenden Gläubigers, im Exekutionsverfahren anstelle des Verpflichteten dessen Rechte auszuüben, um dadurch, wenngleich auch erst mittelbar, auf den Erlös aus dem zu liquidierenden Einzelrecht greifen zu können. Eine vom Exekutionsgericht im Rahmen einer Exekution auf andere Vermögensrechte erteilte Ermächtigung berechtige nämlich den betreibenden Gläubiger zu all dem, zu dem zuvor der Verpflichtete berechtigt gewesen sei (öOGH 3 Ob 33/84 SZ 57/102; 3 Ob 16/06h ZIK 2006, 143).

Auch die Bestimmungen der Rezeptionsvorlage (§§ 331 ff. öEO) würden auf eine Erweiterung der Exekutionsmöglichkeiten abzielen und würden daher all jene Vermögenspositionen des Verpflichteten erfassen wollen, die noch nicht von anderen Exekutionen erfasst werden (vgl. Art. 242 Abs. 1 Satz 1 EO). Es sei zutreffend, dass der öOGH deshalb auf dem Standpunkt stehe, dass im Zweifel von einer Exekutionsunterworfenheit anderer Vermögensrechte auszugehen sei (öOGH 3 Ob 16/06h; RIS-Justiz RS0120349). Hierauf müsse im zu entscheidenden Fall aber nicht rekurriert werden, da solche Zweifel gar nicht bestehen würden.

Es zeige sich somit, dass nach Lehre und Rsp eine Pfändung von Gesamtrechten immer dann möglich ist, wenn durch weitere rechtliche Schritte, so insbesondere auch durch Geltendmachung von Gestaltungsrechten des Verpflichteten, ein verwertbarer Vermögenswert des Verpflichteten entstehen oder geschaffen werden könne. Für die Exekution auf Gesamtrechte gemäss Art. 242 EO genüge daher die sog „mittelbare Verwertbarkeit" des Gesamtrechts.

5.6.     Hieraus sei weiter zu folgern: Das gepfändete Vermögensrecht müsse selbst noch keinen Vermögenswert repräsentieren. Der Betreibende müsse einen solchen Vermögenswert auch nicht bescheinigen. Die Rechte des betreibenden Gläubigers würden sich nach dem Umfang der Rechte des Verpflichteten bestimmen und seien mit ihnen identisch. Dem Betreibenden sei die gerichtliche Ermächtigung zu erteilen, anstelle des verpflichteten Stifters dessen Rechte auszuüben, um in der Folge auf einen denkbaren Erlös greifen zu können. Nichts anderes könne im Fall der Pfändung von Gesamtrechten durch den Gläubiger eines Treugebers gelten, der hier überdies Begünstigter und Protektor eines Trusts sei.

Überdies bedeute die Pfändung der Gesamtrechte des Stifters noch nicht automatisch die Zulässigkeit der Verwertung durch Ermächtigung des betreibenden Gläubigers, alle Einzelrechte des Stifters auszuüben (öOGH 3 Ob 177/10s Erw. 5). Dass auf Gesamtrechte Exekution nach §§ 242 EO geführt werden könne, sage daher nichts darüber aus, ob in der Folge im konkret zu beurteilenden Fall die gepfändeten Gesamtrechte einen Vermögenswert haben (vgl. öOGH 6 Ob 228/17y PSR 2018, 90). Das sich aus dem Gesamtrecht ergebende Einzelrecht des Verpflichteten müsse daher im Exekutionsantrag weder behauptet, bewiesen noch bescheinigt werden, andernfalls würde man dem betreibenden Gläubiger die Behauptung einer möglichen Vielzahl der aus einem Gesamtrecht potentiell sich ergebenden Einzelrechte aufbürden, was nicht der Teleologie des Exekutionsrechts entspreche, einem betreibenden Gläubiger den Zugriff auf Vermögensobjekte des Verpflichteten nicht unnötig zu erschweren. Eine Behauptung des Vermögenswertes des Gesamtrechts sei nur insoweit erforderlich, als sich aus der Verwertung der Einzelrechte die Möglichkeit eines Vermögenswertes ergebe. Dies sei aufgrund der Ausführungen des Beschwerdegegners in ON 1 jedenfalls zu bejahen. Nur dann, wenn sich schon aus dem Exekutionsantrag ergeben würde, dass es sich offensichtlich um ein nicht pfändbares Recht handle,  wäre  der  Exekutionsantrag  abzuweisen  (Oberhammer  in

Angst/Oberhammer, EO[3] § 331 Rz 10; Heller/Berger/Stix, Kommentar zur Exekutionsordnung III 2336), wobei jedoch die Rsp die Behauptung der möglichen Vermögenshaltigkeit des zu pfändenden Rechts im Pfändungs- stadium grosszügig beurteile (öOGH 3 Ob 217/05s; 3 Ob 26/08g GeS 2008, 112) und daher, sollte sich eine fehlende Verwertbarkeit im Verwertungssta- dium herausstellen, der einzelne Verwertungsantrag – nicht aber schon der Pfändungsantrag hinsichtlich des Gesamtrechts – abzuweisen sei.

In der vom Beschwerdeführer zitierten Entscheidung des Obersten Gerichts- hofs 2R EX.2008.7877 sei es um ein Sicherungsbot gegangen, mit dem der Verpflichteten verboten werden sollte, über ihre Forderungen gegenüber dem Drittschuldner bis zur Höhe des tatsächlichen Trustvermögens zu ver- fügen. Demnach habe es sich nicht um eine Exekution auf andere Vermö- gensrechte im Sinne Art. 242 ff. EO gehandelt, sondern um einen zwangs- weisen Zugriff auf einzelne Forderungen, daher also um eine Forderungs- exekution. Diese Entscheidung gebe für die Frage nach der Pfändung von Gesamtrechten gemäss Art. 242 EO nichts her, da bei der Forderungsexe- kution schon grundsätzlich die Voraussetzungen für das Exekutionsobjekt „Forderung" andere seien: Für die Pfändung von „Forderungen" habe der Oberste Gerichtshof bereits in LES 2008, 266 ausgesprochen, dass diese dann nicht durch ein Drittverbot getroffen werden könnten, wenn deren Rechtsgrund im Zeitpunkt der richterlichen Beschlussfassung noch nicht ge- schaffen sei und von denen es daher noch ungewiss sei, ob sie überhaupt jemals zur Entstehung gelangen (LES 2008, 266; 2R EX.2008.7877). Im vor- liegenden Fall gehe es aber nicht um die Pfändung oder Verwertung einzel- ner vermögenswerter „Forderungen", sondern allein um die Pfändung eines Gesamtrechts des Beschwerdeführers gegen die beteiligte Partei, aus dem – wenn auch nur mittelbar, also erst nach Hinzukommen weiterer (vom Be- schwerdegegner vorzunehmender) Rechtshandlungen – Vermögenswerte, insbesondere Forderungen, entstehen könnten (Art. 242 Abs. 2, Art. 243 ff. EO).

Einen Vermögenswert von Gesamtrechten habe der Oberste Gerichtshof im Übrigen bereits mehrfach bejaht: So sei etwa in der Entscheidung 10 CG.2004.58 LES 2007, 141 der Anspruch des Begünstigten zwar weitge- hend vom Ermessen der Organe einer Stiftung abhängig gewesen, die Ver- waltung der Stiftung sei jedoch aufgrund eines vom Begünstigten bestimm- ten Mandatsvertrags durchgeführt worden. Hievon ausgehend habe der Oberste Gerichtshof einen Vermögenswert der Sicherungsgegnerin bejaht, weil der Zugriff allein von der Willenserklärung der Verpflichteten abgehan- gen habe. Er habe auf den Grundsatz hingewiesen, wonach bedingte Rech- te Vermögen sind, wenn der Eintritt der Bedingung nur von einem Willensakt des Beklagten abhänge. Dieser Umstand unterscheide diese Entscheidung von dem der Entscheidung 2 R EX.2008.7877 zugrundeliegenden Sachver- halt, nach dem gerade kein – auch nicht bedingt – disponibles Recht der Si- cherungsgegnerin über das Vermögen des Drittschuldners bestanden habe (2R EX.2008.7877 Erw 13.5.). In der Entscheidung OGH 03 CG.2007.66 LES 2008, 266 seien die Rechte eines Stifters auf Widerruf und Änderung



der Stiftungserklärung ausdrücklich als sogenannte „andere Vermögensrechte iS der Art. 241 f. EO" anerkannt worden.

5.7.     In der öRsp sei die Exekution auf Treugeberansprüche unter dem Aspekt der Exekution auf den Anspruch des Treugebers gegen den Treuhänder auf Herausgabe des Treuguts beurteilt worden. Dabei sei dann, wenn das Treugut in Geld bestand, die Pfändung der Forderung gemäss § 294 öEO (= Art. 217 EO) bejaht worden. Für den Fall, dass das Treuhandverhältnis noch nicht beendigt sei und dieses zur Entstehung des Rückforderungsanspruchs durch den Treugeber erst zu beendigen sei, gehe der öOGH davon aus, dass in einem solchen Fall nur eine Pfändung nach § 331 EO in Betracht komme (öOGH 3 Ob 223/12h ecolex 2013/211; Oberhammer in Angst/Oberhammer, EO³ § 325 Rz 5). Der Rückforderungsanspruch könne zuvor nicht gepfändet werden, weil er mangels Kündigung noch nicht entstanden sei. Da die Grenzen zwischen den einzelnen in Frage kommenden Exekutionsarten „fliessend" seien, lasse es der öOGH sogar zu, einen auf die falsche Exekutionsart hinzielenden Antrag ohne weiters umzudeuten (öOGH 3 Ob 223/12h ecolex 2013/211; Oberhammer in Angst/Oberhammer, EO³ § 325 Rz 5). In der Entscheidung des öOGH 2 Ob 166/02d ecolex 2002, 882, sei ausdrücklich darauf hingewiesen worden, dass die Gläubiger des Treugebers nicht direkt auf das Treugut Exekution führen können, sondern nur auf die Ansprüche des Treugebers gegen den Treuhänder. Diese Rechtsauffassung habe der öOGH auch in 3 Ob 85/08h ecolex 2008, 1021 = ÖBA 2009, 322 bestätigt.

Dass das Recht zur Benennung von Begünstigten vom betreibenden Gläubiger gepfändet und ausgeübt werden könne, habe der öOGH in der E 3 Ob 177/10s bereits entschieden, sodass schon allein hieraus erhelle, dass die Pfändung der Gesamtrechte des Beschwerdeführers als Treugeber einerseits und dem zur Bestimmung der Begünstigten zustimmungsberechtigten Protektor (Art. 8 Declaration of Trust) dem Treuhänder gegenüber vermögensrechtlich zumindest mittelbar relevant sein könne.

Bei der Exekution auf Treugeberrechte sei der OGH mangels Verwertungsantrags nicht auf den Bestand oder Nichtbestand des behaupteten gepfändeten Vermögensrechtes eingegangen (öOGH 3 Ob 143/93), was deutlich zeige, dass 1) Treugeberrechte grundsätzlich gemäss § 331 öEO als Gesamtrecht pfändbar seien und 2) dies unabhängig davon möglich sei, ob im Zeitpunkt dieser Pfändung das Gesamtrecht im konkreten Fall auch einen exekutiven Zugriff auf das als verwertbar behauptete Recht (dort eine Liegenschaft) zulasse oder nicht. Soweit daher der Beschwerdeführer und die beteiligte Partei einwenden würden, dass Einzelrechte des Beschwerdeführers nicht pfändbar wären, sei dies nicht Gegenstand des Verfahrens über den Antrag auf Pfändung von Treugeber-Gesamtrechten.

5.8.     Eine „Doppelpfändung" liege entgegen den Ausführungen des Beschwerdeführers und der beteiligten Partei nicht vor, weil aus dem Exekutionsantrag und dem Vorbringen des Beschwerdegegners hinlänglich klar hervorgehe,

dass die Gesamtrechte des Beschwerdeführers der beteiligten Partei gegenüber gepfändet werden sollen und als Rechtsposition des Beschwerdeführers hiefür seine Stellung als Treugeber, Protektor und Begünstigter des Alpha Trusts angeführt werden. Die nur beispielhaft begehrte Pfändung diverser Einzelrechte aus der beantragten Pfändung des Gesamtrechts laut Pkt. 1 Abs. 3 (von „insbesondere" bis „3. Juni 2015") sei zur Bezeichnung des zu pfändenden Gesamtrechts nicht erforderlich. Im Verwertungsstadium sei im Einzelnen zu prüfen, welche aus dem Gesamtrecht des Beschwerdeführers fliessenden Einzelrechte verwertbar und vermögenswert seien.

Pkt. 4 der Exekutionsbewilligung mache die Exekutionsbewilligung (bzw. den Exekutionsantrag) auch nicht widersprüchlich, weil sich aus dem vorher Ausgeführten klar ergebe, dass der Beschwerdegegner die bereits gepfändeten Forderungen mit dieser Exekution nicht pfänden wolle, weil dies schon im Verfahren 08 EX.2016.839 geschehen sei. Mit dem gegenständlichen Exekutionsantrag seien ausschliesslich Gesamtrechte gepfändet worden, nicht einzelne Forderungen, so dass dieser Pkt. allein zur Klarstellung, dass nicht einzelne Forderungen gepfändet werden sollen, bestehen bleiben könne, wenngleich diese Einschränkung gar nicht notwendig gewesen wäre. Eine vom Beschwerdeführer und der beteiligten Partei mehrfach als unzulässig bezeichnete „Doppelpfändung" liege allein schon deshalb nicht vor, weil die Exekutionsobjekte unterschiedlich seien: Im gegenständlichen Verfahren seien es Gesamtrechte des Beschwerdeführers, im Verfahren 08 EX.2016.839 seien es Forderungen gewesen. Damit gehe aber der erhobene Einwand, die Bewilligung der gegenständlichen Exekution würde zu einer Mehrfachpfändung führen, ins Leere.

6.   Mit Schriftsatz vom 12. September 2018 beantragte der Beschwerdeführer zunächst die Zuerkennung der aufschiebenden Wirkung sowie den Erlass einer vorsorglichen Massnahme.

7.   Der Beschwerdegegner erstattete mit Schriftsatz vom 18. September 2018 eine Gegenäusserung zu diesen Anträgen, worin die Abweisung der Anträge auf aufschiebende Wirkung/vorsorgliche Massnahme beantragt wurde. Mit Schreiben vom 26. September 2018 beantragte der Beschwerdegegner der Beschwerdeführer wolle eine angemessene Sicherheitsleistung für den Schaden leisten, den dieser mit einstweiligen Massnahmen potentiell erzeugt habe.

8.   Dazu nahm der Beschwerdeführer mit Replik vom 27. September 2019 Stellung und hielt am Antrag auf Zuerkennung der aufschiebenden Wirkung und dem Antrag auf Erlass einer vorsorglichen Massnahme fest und beantragte, den Anträgen des Beschwerdegegners keine Folge zu geben.

9.   Der stellvertretende Präsident des Staatsgerichtshofes gab dem Antrag des Beschwerdeführers mit Beschluss vom 9. Oktober 2018 dahingehend Folge, dass der Beschwerdeführer bis zur Erledigung der von ihm angekündigten bzw. noch einzureichenden Individualbeschwerde die im Beschluss des

Obersten Gerichtshofes vom 7. September 2018, 08 EX.2016.5802-72, bestimmten Kosten des Rekurs- und Revisionsrekursverfahrens nicht zu bezahlen hat. Die weiteren Anträge wurden abgewiesen.

10.    Gegen den Beschluss des Obersten Gerichtshofes vom 7. September 2018, 08 EX.2016.5802-72, erhob der Beschwerdeführer mit Schriftsatz vom 10. Oktober 2018 Individualbeschwerde an den Staatsgerichtshof, wobei eine Verletzung der Eigentumsgarantie gemäss Art. 34 Abs. 1 LV und Art. 1 1. ZP-EMRK, eine Verletzung des Verbots der formellen Rechtsverweigerung gemäss Art. 31 Abs. 1 LV und Art. 6 Abs. 1 EMRK, eine Verletzung des Rechs auf den ordentliche Richter gemäss Art. 33 Abs. 1 LV und Art. 6 Abs. 1 EMRK , eine Verletzung des Beschwerderechts gemäss Art. 43 LV, eine Verletzung der Begründungspflicht gemäss Art. 43 LV, eine Verletzung des Anspruchs auf Gleichbehandlung gemäss Art. 31 Abs. 1 LV sowie eine Verletzung des Rechts auf willkürfreie Behandlung geltend gemacht wird. Beantragt wird, der Staatsgerichtshof wolle der gegenständlichen Individualbeschwerde Folge geben und feststellen, dass der Beschluss des Obersten Gerichtshofes vom 7. September 2018 zu 08 EX.2016.5802 (ON 72) gegen die verfassungsmässig gewährleisteten und durch die EMRK garantierten Rechte des Beschwerdeführers verstosse, den Beschluss des Obersten Gerichtshofes daher aufheben und die Rechtssache zur neuerlichen Entscheidung unter Bindung an die Rechtsansicht des Staatsgerichtshofes an den Obersten Gerichtshof zurückverweisen sowie den Beschwerdegegner zum Ersatz der verzeichneten Verfahrenskosten an den Beschwerdeführer zuhanden seines ausgewiesenen Rechtsvertreters verpflichten.

10.1.    Zur Verletzung der Eigentumsgarantie gemäss Art. 34 LV und Art. 1 1. ZP-EMRK bringt der Beschwerdeführer im Wesentlichen Folgendes vor:

10.1.1.    Gegenständlich müsse laut Ausführungen des Obersten Gerichtshofes das im Rahmen einer Exekution gepfändete Recht "zwar nicht verwertbar sein, es muss aber seinerseits den Zugriff auf ein verwertbares Vermögen ermöglichen" (08 EX.2016.5802, ON 72, S. 36). Nachdem der Oberste Gerichtshof gegenständlich davon ausgegangen sei, dass die Gesamtrechte des Beschwerdeführers als Treugeber, Protektor und Begünstigter des Alpha Trusts gegenüber der Drittschuldnerin CTX Treuhand AG pfändbar sind, müsse dies laut dem Obersten Gerichtshof dem Beschwerdegegner zumindest mittelbar den Zugriff auf vermögenswerte Rechte des Beschwerdeführers verschaffen. Somit falle der gegenständliche Sachverhalt hinsichtlich der Art der Rechte unter den Anwendungsbereich der Eigentumsgarantie.

Auch hinsichtlich des staatlichen Eingriffs falle der gegenständliche Sachverhalt unter den Anwendungsbereich der Eigentumsgarantie. Laut der Rechtsprechung des Staatsgerichtshofes werde die Eigentumsgarantie durch eine gerichtliche Entscheidung nicht tangiert, wenn es sich um einen Zivilprozess betreffend eine Rechtsstreitigkeit zwischen Privaten handelt. Die Entscheidung sei in einem solchen Fall nicht im Hinblick auf die Eigentumsgarantie, sondern unter dem Willkürverbot zu beurteilen (StGH 2014/74,

Erw. 9.2; Vallender/Vogt, Eigentumsgarantie, a.a.O., S. 711, Rz. 40 mit zahl-
reichen Nachweisen). Der Staatsgerichtshof begründe seine Position wie
folgt:

"*Die urteilsmässige Entscheidung eines Gerichtes etwa darüber, in wessen
Eigentum eine bestimmte Sache stehe, kann nicht als Eingriff in das Eigen-
tum dessen angesehen werden, der diesen Rechtsstreit verliert. Nach der
Rechtsprechung des Staatsgerichtshofes stehen sich im Zivilprozess in der
Regel gleichwerte vermögenswerte Interessen gegenüber, was den Grund-
rechtsschutz gegenseitig aufhebt*" (StGH 2006/15, Erw. 3.2)

10.1.2.  Gegenständlich sei demgegenüber gerade kein Zivilprozess vorgelegen. Als
Äquivalent zum Zivilprozess sei das dem Exekutionsverfahren vorausgegan-
gene Schiedsverfahren vor dem London Court of International Arbitration
(LCIA) zu betrachten. Dort sei entschieden worden, ob die Forderung beste-
he bzw. in welchem Eigentum die Summe, über die sich die Forderung
dreht, stehen solle. Dieses Schiedsverfahren sei jedoch nicht Gegenstand
der vorliegenden Individualbeschwerde. Vielmehr drehe sich diese um das
Exekutionsverfahren, bei dem sich der Beschwerdeführer einem hoheitlich
agierenden, staatlich angestellten und mit staatlichen Befugnissen ausge-
statteten Exekutor gegenübersehe. In diesem Sinne liege auch kein CG-
Verfahren vor, womit Zivilprozesse gekennzeichnet sind, sondern ein EX-
Verfahren. In diesem würden sich keine gleichwerten vermögenswerten Inte-
ressen gegenüberstehen, sondern es liege ein vermögenswertes Interesse
des Beschwerdegegners vor, welches er mit staatlichen Zwangsmitteln
durchzusetzen versuche, während der Beschwerdeführer eine solche staatli-
che Zwangsgewalt nicht hinter sich habe. Folglich sei die oben zitierte
Rechtsprechung des Staatsgerichtshofes gegenständlich nicht einschlägig,
nachdem kein Zivilprozess vorliege und keine gleichwerten vermögenswer-
ten Interessen vorhanden seien. Dementsprechend sei die Eigentumsgaran-
tie auch hinsichtlich des staatlichen Eingriffs gegenständlich anwendbar.

Eine Einschränkung der Eigentumsgarantie sei, abgesehen von der Kernge-
haltsgarantie, möglich, sofern die Bestimmung auf einer gesetzlichen Grund-
lage – je schwerer der Eingriff, desto klarer und genauer in einem formellen
Gesetz (StGH 2006/53, 3.) – beruhe, im öffentlichen Interesse liege und ver-
hältnismässig (geeignet, erforderlich und zumutbar) sei (StGH in LES 2007,
19, Erw. 3.1).

10.1.3.  Gegenständlich liege ein massiver Eingriff in die Eigentumsgarantie des Be-
schwerdeführers vor, nachdem sich die Forderung des Beschwerdegegners
auf USD 79'815'055.40, GBP 2'776'473.68 und RUB 2'958'750.00 plus Zin-
sen belaufe.

Dieser massive Eingriff stütze sich zwar formell auf eine gesetzliche Grund-
lage – Art. 242 Abs. 1 EO – doch genüge diese gesetzliche Grundlage nicht,
insbesondere angesichts der Schwere des Eingriffes. So würden unter Art.
242 Abs. 1 EO nur Vermögensrechte des Verpflichteten fallen (Oberham-

mer, § 331 EO, Rz 1 in Angst/Oberhammer, Exekutionsordnung, 3. Aufl., Wien 2015). Gegenständlich habe sich der Beschwerdeführer jedoch gerade seiner Vermögensrechte begeben, indem er diese in den Alpha Trust einge-bracht habe. Die ihm vorher zugestandenen Vermögensrechte würden nun-mehr dem Alpha Trust zukommen. Zwar habe der Beschwerdeführer gewis-se Rechte in Bezug auf den Alpha Trust, doch sei und bleibe er ein Ermes-sensbegünstigter. Somit habe er keinen Anspruch auf eine bestimmte Sum-me aus dem Alpha Trust, sondern der Umfang seiner Begünstigung liege im Ermessen des Treuhänders. Wenn man dem Beschwerdeführer vorwerfen wollte, dass er sich seiner Vermögenswerte gar nicht begab, sondern den Alpha Trust weiterhin kontrolliere (was bestritten werde), dann sei ein Exeku-tionsverfahren nicht der richtige Ort dafür. Vielmehr müsste eine solche Ar-gumentation in einem Anfechtungsverfahren vorgebracht werden. Dort kön-ne entschieden werden, ob die Einrichtung des Trusts von vornherein nichtig sei, und nicht in einem Exekutionsverfahren. Andernfalls könne im Rahmen eines Exekutionsverfahrens schlicht ein Durchgriff durch eine Treuhänder-schaft erfolgen, ohne dass von einem Gericht geklärt würde, ob ein solcher Durchgriff im Sinne des PGR überhaupt rechtlich zulässig ist. Eine Exekuti-onsnorm biete also keine ausreichende gesetzliche Grundlage, um einen Durchgriff vornehmen zu können.

Selbst wenn eine genügende gesetzliche Grundlage vorhanden wäre, fehle es an der Verhältnismässigkeit. So seien die Gesamtrechte des Beschwer-deführers am Alpha Trust gepfändet worden. Daraus folge, dass der Be-schwerdeführer kein einzelnes Recht in Bezug auf den Alpha Trust mehr ausüben könne. Mit anderen Worten werde seine Rechtsbeziehung zum Al-pha Trust vollständig durchtrennt. Anstatt, wie bei einer Pfändung üblich, je-weils auf einzelne bekannte Vermögenswerte des Schuldners zu greifen, seien gegenständlich vom Obersten Gerichtshof alle Rechte des Beschwer-deführers gegenüber dem Alpha Trust gepfändet worden. Der Oberste Ge-richtshof bleibe dabei eine Erklärung schuldig, warum das mildere Mittel, nämlich die vom Obergericht bestätigte und somit rechtskräftige Pfändung gemäss 08 EX.2016.839 (ON 4) nicht genüge. In jenem Verfahren seien jeg-liche "Geldforderungen und Zahlungsansprüche, insbesondere Ausschüt-tungs- und Rückzahlungsansprüche [sic] in Höhe von zumindest der ausste-henden Forderung" gegenüber CTX Treuhand AG, der Treuhänderin des Al-pha Trust, im Hinblick auf die Rechtsstellung des Beschwerdeführers als "Wirtschaftlich Berechtigter, Treugeber, Begünstigter und Auftraggeber des Alpha Trusts" gepfändet worden. Jegliches Geld, welches der Beschwerde-führer aus dem Alpha Trust bekommen könnte, sei also bereits gepfändet. Und auf mehr als Geld habe der Beschwerdegegner nicht Anspruch. Dem-entsprechend genüge diese Pfändung vollends und es sei keine weiterge-hende Pfändung nötig. Eine Verwertung der in 08 EX.2016.839 gepfändeten Ansprüche sei vom Beschwerdegegner bisher noch nicht einmal versucht worden.

Aus diesen Gründen sei der Beschwerdeführer durch den Beschluss des Obersten Gerichtshofes vom 07.09.2018 zu 08 EX.2016.5802 (ON 72) in seiner Eigentumsgarantie verletzt worden.

10.2.    Zur Verletzung des Verbots der formellen Rechtsverweigerung gemäss Art. 31 Abs. 1 LV und Art. 6 Abs. 1 EMRK bringt der Beschwerdeführer im Wesentlichen Folgendes vor:

10.2.1.  Gegenständlich sei ein Anwendungsbereich für das Verbot der formellen Rechtsverweigerung in zweifacher Hinsicht gegeben. Einerseits habe der Oberste Gerichtshof jegliche rechtliche Auseinandersetzung mit der Verwertbarkeit der Gesamtrechte des Beschwerdeführers in ein nachfolgendes Verfahren verlagert. Andererseits habe der Oberste Gerichtshof davon gesprochen (08 EX.2016.5802, ON 72, S. 35), dass "höchstpersönliche oder sonst offenkundig nicht übertragbare Rechte" nicht pfändbar seien, ohne an späterer Stelle darauf einzugehen, ob die gepfändeten Gesamtrechte übertragbar sind oder nicht.

Hinsichtlich der Auseinandersetzung mit der Verwertbarkeit der Gesamtrechte des Beschwerdeführers habe der Oberste Gerichtshof (08 EX.2016.5802, ON 72, S. 36) zunächst ausgeführt, dass das gepfändete Recht seinerseits den Zugriff auf ein verwertbares Vermögen ermöglichen müsse, ansonsten keine Pfändung möglich sei. Anschliessend (08 EX.2016.5802, ON 72, S. 42) habe er jedoch dargelegt, dass der Pfändungsantrag nur dann abzuweisen sei, wenn die Unverwertbarkeit des Rechts aus der Aktenlage offensichtlich sei. Hierbei befinde sich der Oberste Gerichtshof mit seinen eigenen Ausführungen im Widerspruch. Aus einer mangelnden offensichtlichen Unverwertbarkeit könne nämlich nicht auf eine mögliche Verwertbarkeit geschlossen werden. So könne sich die Unverwertbarkeit nicht nur offensichtlich, sondern auch nach rechtlicher Prüfung ergeben. Eine schlichte Unverwertbarkeit sei auch eine Unverwertbarkeit. Diese rechtliche Prüfung über die schlichte Unverwertbarkeit habe der Oberste Gerichtshof unterlassen, obwohl sie laut seinen eigenen Ausführungen notwendig wäre. Dadurch habe sich der Oberste Gerichtshof einer Prüfung der Unverwertbarkeit verweigert. Wenn nämlich die Verwertbarkeit schlicht unmöglich ist, erübrige sich bereits das Pfändungsverfahren.

Gegenständlich ergebe sich die schlichte Unverwertbarkeit bereits daraus, dass gemäss Art. 927 Abs. 1 PGR der Begünstigte zwar berechtigt sei, die Ausführung der Treuhandbestimmungen zu verlangen. Allerdings stelle dies nur eine dispositive Gesetzesnorm dar. So bestehe dieses Recht gemäss Art. 927 Abs. 1 PGR nur dann, "soweit nicht durch die Treuhandurkunde es anders bestimmt oder diese Ausführung nicht an das freie Ermessen des Treuhänders gegenüber einzelnen oder allen Begünstigten geknüpft ist". Ein Ermessensbegünstigter werde demnach gemäss dem in der gegenständlichen Rechtssache ergangenen Beschluss des Obergerichts (08 EX.2016.5802, ON 36, S. 32, Erw. 6.6.6) "von der aktiven Einflussnahme auf Verfügungen und Verwaltungshandlungen des Treuhänders ausgeschlos-



sen". Somit sei es für einen Ermessensbegünstigten wie den Beschwerde-
führer gemäss dem Wesen des Trusts nicht möglich, den Treuhänder zu be-
einflussen.

10.2.2.   Weiter könne der Beschwerdeführer als Treugeber nicht einfach Anweisun-
gen an den Treuhänder tätigen. Ein solches Vorgehen würde dem in der
liechtensteinischen Rechtsordnung festgeschriebenen Wesen des Trusts wi-
dersprechen. So sehe Art. 918 Abs. 1 PGR vor: "Der Treugeber kann im Üb-
rigen keine Bestimmungen aufstellen, welche den Treuhänder an fortlaufen-
de Weisungen des Treugebers binden." Auch die Rechte des Beschwerde-
führers als Treugeber seien somit schlicht unverwertbar.

Zudem seien die Rechte des Beschwerdeführers als Protektor reine Zu-
stimmungsrechte. Ein Zugriff auf ein Vermögen ergebe sich dadurch auch
mittelbar gerade nicht, nachdem die Rechte an sich dem Treuhänder zu-
kommen (vgl. 08 EX.2016.5802, ON 36, S. 34, Erw. 6.6.7). Eine aktive
Rechtsgestaltung durch den Protektor sei somit ausgeschlossen.

Es verbleibe schliesslich das Recht des Beschwerdeführers als Protektor auf
Bestellung und Abberufung des Treuhänders. Dieses Recht sei keineswegs
voraussetzungslos. So könne der Beschwerdeführer nicht mit der Abberu-
fung drohen, sofern der Treuhänder seinen aus Treuurkunde und Gesetz
erwachsenden Pflichten nachkomme. Vielmehr diene ein Abberufungsrecht
lediglich "der Kontrolle und Durchsetzung der Pflichten des Treuhänders" (08
EX.2016.5802, ON 36, S. 35, Erw. 6.6.8). Diese Rechtsprechung stehe im
Einklang mit dem österreichischen Obersten Gerichtshof, welcher stipulierte
(3 Ob 177/10s, S. 14): "Das Abberufungsrecht dient der Kontrolle und
Durchsetzung der Pflichten des Vorstands."

10.2.3.   In Bezug auf die Auseinandersetzung mit der Übertragbarkeit der Gesamt-
rechte des Beschwerdeführers habe der Oberste Gerichtshof zunächst dar-
gelegt (08 EX.2016.5802, ON 72, S. 35), dass "höchstpersönliche oder sonst
offenkundig nicht übertragbare Rechte" nicht pfändbar seien. Ob die Ge-
samtrechte des Beschwerdeführers überhaupt übertragbar sind, sei vom
Obersten Gerichtshof nicht näher geprüft worden. So habe der Oberste Ge-
richtshof im Anschluss vielmehr ausgeführt (08 EX.2016.5802, ON 72, S.
46), dass es gar nicht um die Übertragung der Gestaltungsrechte an Dritte
gehe, sondern um die gerichtliche Ermächtigung des Gläubigers, anstelle
des Verpflichteten dessen Rechte auszuüben. Damit befinde sich der Obers-
te Gerichtshof im Widerspruch zu seinen vorherigen Ausführungen.

Nachdem der Oberste Gerichtshof weder die schlichte Unverwertbarkeit der
Gesamtrechte des Beschwerdeführers noch deren Übertragbarkeit geprüft
habe, habe er dem Beschwerdeführer auf rechtswidrige Weise entscheiden-
de Gegenargumente zum Antrag des Beschwerdegegners entzogen.

Aus diesen Gründen sei der Beschwerdeführer durch den Beschluss des Obersten Gerichtshofes vom 07.09.2018 zu 08 EX.2016.5802 (ON 72) im Verbot der formellen Rechtsverweigerung verletzt worden.

10.3.    Zur Verletzung des Rechts auf den ordentlichen Richter gemäss Art. 33 Abs. 1 LV und Art. 6 Abs. 1 EMRK bringt der Beschwerdeführer im Wesentlichen Folgendes vor:

Gegenständlich sei das Recht auf den ordentlichen Richter dahingehend betroffen, dass der Oberste Gerichtshof seine Kompetenz zur Feststellung einer zumindest möglichen Verwertbarkeit nicht wahrgenommen habe, sondern jegliche rechtliche Auseinandersetzung mit der Verwertbarkeit der gepfändeten Rechte auf einen Nachfolgeprozess verlagert habe. So seien die Rechtsmittelmöglichkeiten des Beschwerdeführers im Pfändungsverfahren gravierend beschnitten worden. Dies habe zu einem schwerwiegenden Eingriff in die Rechte des Beschwerdeführers geführt, was dadurch verstärkt werde, dass seine gesamten Rechte gegenüber der Drittschuldnerin im Zusammenhang mit dem Alpha Trust gepfändet seien. Ob diese Pfändung überhaupt zur Befriedigung des Beschwerdeführers führen könne, sei höchst unklar im besten Fall und unmöglich im schlechtesten Fall.

Weiter sei das Recht auf den ordentlichen Richter dahingehend betroffen, dass der Oberste Gerichtshof seine Kompetenz zur Feststellung einer Übertragbarkeit der gepfändeten Rechte nicht wahrgenommen habe, sondern diesen Punkt trotz der eigenen Ausführungen, dass höchstpersönliche oder sonst offenkundig nicht übertragbare Rechte nicht pfändbar seien, schlicht übergangen habe.

Hinsichtlich der substantiellen Argumentation sei auf die Ausführungen unter der Verletzung des Verbots der formellen Rechtsverweigerung zu verweisen.

Aus diesen Gründen sei der Beschwerdeführer durch den Beschluss des Obersten Gerichtshofes vom 07.09.2018 zu 08 EX.2016.5802 (ON 72) in seinem Recht auf den ordentlichen Richter verletzt worden.

10.4.    Zur Verletzung des Beschwerderechts gemäss Art. 43 LV bringt der Beschwerdeführer im Wesentlichen Folgendes vor:

Gegenständlich habe der Oberste Gerichtshof seine eigene Kompetenz gesetzwidrig dahingehend eingeschränkt, dass er einerseits seine Kompetenz zur Feststellung einer zumindest möglichen Verwertbarkeit nicht wahrgenommen habe, sondern jegliche rechtliche Auseinandersetzung mit der Verwertbarkeit der gepfändeten Rechte auf einen Nachfolgeprozess verlagert habe, und er andererseits seine Kompetenz zur Feststellung einer Übertragbarkeit der gepfändeten Rechte nicht wahrgenommen habe, sondern diesen Punkt schlicht übergangen habe.

Hinsichtlich der substantiellen Argumentation sei auf die Ausführungen unter der Verletzung des Verbots der formellen Rechtsverweigerung zu verweisen.

Aus diesen Gründen sei der Beschwerdeführer durch den Beschluss des Obersten Gerichtshofes vom 07.09.2018 zu 08 EX.2016.5802 (ON 72) in seinem Beschwerderecht verletzt worden.

10.5.    Zur Verletzung der Begründungspflicht gemäss Art. 43 LV trägt der Beschwerdeführer im Wesentlichen Folgendes vor:

10.5.1.  Die gegenständliche Praxisänderung liege darin, dass eine Exekution auf die Gesamtrechte gemäss österreichischer Rechtsprechung zu § 331 öEO, welcher Art. 242 EO entspreche, folgende Voraussetzungen im Hinblick auf die Gesamtrechte eines Stifters vorzuliegen haben:

„Die dem Stifter gegenüber einer Privatstiftung zustehenden Gesamtrechte unterliegen ungeachtet der Bestimmung des § 3 Abs. 3 PSG der Exekution nach §§ 331 ff EO, wenn er sich das Recht auf Widerruf vorbehielt und nach der Stiftungserklärung oder nach § 36 Abs. 4 PSG zumindest zum Teil Letztbegünstigter ist, und/oder sich ein Änderungsrecht vorbehielt." (RS0120752)

Gegenständlich tätige der Oberste Gerichtshof an mehreren Stellen Ausführungen zur Pfändbarkeit von Rechten bei einer Stiftung (08 EX.2016.5802, ON 72, S. 35 f., 43 ff.), um diese im Anschluss daran auf den gegenständlichen Fall zu übertragen, womit davon ausgegangen werden könne, dass der Oberste Gerichtshof einen Analogieschluss zur Pfändbarkeit bei Stiftungen vornimmt.

Allerdings habe sich der Beschwerdeführer gegenständlich weder ein Widerrufsrecht noch ein Änderungsrecht vorbehalten. Solche Rechte würden sich weder aus den Treuurkunden ergeben noch sei vom Obersten Gerichtshof dargelegt worden, woraus erkennbar wäre, dass solche Rechte bestehen. Auf diesen Mangel an Widerruf- bzw. Änderungsrechten gehe der Oberste Gerichtshof nicht näher ein, obwohl er für seine Begründung explizit den Beschluss des österreichischen Obersten Gerichtshofes vom 14.07.2011 zu 3 Ob 177/10s heranziehe, welcher wiederum auf RS0120752 Bezug nehme. Er sage einzig: "Dies ist hier nicht näher zu prüfen und zu entscheiden, sondern vielmehr einer allfälligen Verwertung der Gesamtrechte des Verpflichteten vorzubehalten." (08 EX.2016.5802, ON 72, S. 40) Somit habe es der Oberste Gerichtshof versäumt, triftige Gründe zu benennen, warum er von der einschlägigen österreichischen Rechtsprechung abweiche. Vielmehr habe der Oberste Gerichtshof keinerlei Gründe dafür vorgebracht.

Aus diesen Gründen sei der Beschwerdeführer durch den Beschluss des Obersten Gerichtshofes vom 07.09.2018 zu 08 EX.2016.5802 (ON 72) in seinem Anspruch auf eine verfassungsmässige Begründung verletzt worden.

10.5.2.  Das mangelnde Vorliegen einer offensichtlichen Unverwertbarkeit habe der Oberste Gerichtshof einzig daraus geschlossen, dass die Position des Beschwerdeführers als Treugeber "schon nach allgemeinen Grundsätzen dessen Möglichkeit zur Herbeiführung vermögenswerter Forderungen gegen die Treuhänderin bejahen" lasse (08 EX.2016.5802, ON 72, S. 42). Worauf dies konkret zurückzuführen sein soll, habe der Oberste Gerichtshof mit keinem Wort beschrieben. Laut seinen Ausführungen könne ein Treugeber ganz allgemein jederzeit an Geld aus dem Trust kommen, was absurd sei. Vielmehr halte Art. 918 Abs. 1 PGR klar fest: "Der Treugeber kann im übrigen keine Bestimmungen aufstellen, welche den Treuhänder an fortlaufende Weisungen des Treugebers binden."

Gegenständlich beziehe sich der Oberste Gerichtshof auf allgemeine Grundsätze, ohne zu konkretisieren, worin diese liegen oder sich überhaupt mit dem Wesen des Trusts näher auseinanderzusetzen. Vielmehr begnüge sich der Oberste Gerichtshof mit einem allgemeinen Verweis, welchem jeglichen Zusammenhang zum gegenständlichen Fall fehle. Überdies lege der Oberste Gerichtshof mit keinem Wort dar, welches die allgemeinen Grundsätze sind, die hier zur Anwendung kommen würden.

Aus diesen Gründen sei der Beschwerdeführer durch den Beschluss des Obersten Gerichtshofes vom 07.09.2018 zu 08 EX.2016.5802 (ON 72) in seinem Anspruch auf eine verfassungsmässige Begründung verletzt worden.

10.6.  Zur Verletzung des Anspruchs auf Gleichbehandlung gemäss Art. 31 Abs. 1 LV bringt der Beschwerdeführer im Wesentlichen Folgendes vor:

Gegenständlich sei der Oberste Gerichtshof dahingehend von der Praxis des Rezeptionslandes zu § 331 öEO – dem Äquivalent zu Art. 242 EO – abgewichen, dass er im Rahmen der Exekution der Gesamtrechte nicht geprüft habe, ob der Beschwerdeführer als Treugeber des Alpha Trusts überhaupt über Widerruf- bzw. Änderungsrechte in Bezug auf den Trust verfüge.

Hinsichtlich der substantiellen Argumentation sei auf die Ausführungen unter der Begründungspflicht zu verweisen.

Aus diesen Gründen sei der Beschwerdeführer durch den Beschluss des Obersten Gerichtshofes vom 07.09.2018 zu 08 EX.2016.5802 (ON 72) in seinem Anspruch auf Gleichbehandlung verletzt worden.

10.7.  Zur Verletzung des Rechts auf willkürfreie Behandlung trägt der Beschwerdeführer im Wesentlichen Folgendes vor:

10.7.1.  Konkret sei Willkür beispielsweise dann gegeben, wenn die Begründung des Gerichts widersprüchlich sei (StGH in LES 2001, 163). Gegenständlich habe der Oberste Gerichtshof (08 EX.2016.5802, ON 72, S. 35) – wie unter dem Verbot der formellen Rechtsverweigerung dargelegt – zunächst dargelegt, dass "höchstpersönliche oder sonst offenkundig nicht übertragbare Rechte"

nicht pfändbar seien. Dies habe den Obersten Gerichtshof nicht davon ab-gehalten, im Anschluss daran auszuführen (08 EX.2016.5802, ON 72, S. 46), dass es gar nicht um die Übertragung der Gestaltungsrechte an Dritte gehe, sondern um die gerichtliche Ermächtigung des Gläubigers, anstelle des Verpflichteten dessen Rechte auszuüben. Somit solle es also plötzlich egal sein, ob die Rechte höchstpersönlich oder sonst offenkundig nicht über-tragbar sind. Dieser Widerspruch in der Begründung der Entscheidung komme Willkür gleich, nachdem dadurch eine weitere Beweis- und Argu-mentationshürde für den Beschwerdegegner weggefallen sei.

Weiter sei die Begründung des Obersten Gerichtshofes auch dahingehend willkürlich, dass der Oberste Gerichtshof (08 EX.2016.5802, ON 72, S. 36) zunächst stipuliert habe, dass das gepfändete Recht seinerseits den Zugriff auf ein verwertbares Vermögen ermöglichen müsse, ansonsten keine Pfän-dung möglich sei. Diese Aussage habe der Oberste Gerichtshof jedoch wie-der zurückgenommen (08 EX.2016.5802, ON 72, S. 42), indem er behauptet habe, dass der Pfändungsantrag nur dann abzuweisen sei, wenn die Unver-wertbarkeit des Rechts aus der Aktenlage offensichtlich sei. Die mögliche Verwertbarkeit schliesse sich nämlich nicht zwingend aus einer mangelnden offensichtlichen Unverwertbarkeit. Dazwischen existiere ein Bereich, nämlich die schlichte Unverwertbarkeit, wie unter dem Verbot der formellen Rechts-verweigerung dargelegt worden sei. Gegenständlich liege, wie oben ausge-führt, sehr wohl eine solche schlichte Unverwertbarkeit vor. Zwar sei diese nicht zwangsweise offensichtlich, aber nichtsdestotrotz gegeben. Rechtliche Abklärungen dazu habe der Oberste Gerichtshof unterlassen. Dies sei auch insofern willkürlich, als dass die Pfändung reale Wirkungen zeitige, ohne dass sich der Oberste Gerichtshof darüber Gedanken gemacht hätte, ob ei-ne Fortsetzung des Verfahrens im Rahmen einer Verwertung überhaupt möglich sei.

Überdies sei es willkürlich, dass der Oberste Gerichtshof über die in 08 EX.2016.839 (ON 4) bewilligte Pfändung hinaus eine weitere Pfändung vor-genommen habe. Im Rahmen dieser Pfändung seien bereits alle geldwerten Ansprüche des Beschwerdeführers gegenüber dem Alpha Trust gepfändet worden. Was könne der Beschwerdegegner noch mehr wollen? Wenn er das Gefühl habe, dass er durch die Pfändung aller geldwerten Ansprüche des Beschwerdeführers gegen den Alpha Trust nicht zur Befriedigung kommt, dann müsste der Beschwerdegegner ein Anfechtungsverfahren durchführen und nicht die Anfechtung en passant im Rahmen eines Exekutionsverfahren faktisch erreichen. Dafür sei das Exekutionsverfahren nicht das geeignete Vehikel. Vielmehr sei es gerade so, dass der Alpha Trust keine Begünsti-gungsberechtigten kenne. Alle Begünstigten seien Ermessensbegünstigte. Es gebe somit keinen Grund, warum gerade der Beschwerdeführer eine Summe von über USD 80'000'000 aus dem Trustvermögen ausgeschüttet erhalten sollte. Die Entnahme einer solchen Summe könne nur über die An-fechtung geschehen, da ansonsten das Wesen des Trusts verkannt werde. Eine Anfechtung jedoch über die Hintertür des Exekutionsverfahrens vor-nehmen zu wollen, sei willkürlich und beschneide die Prozessrechte des Be-

schwerdeführers erheblich. So sei ein Exekutionsverfahren ein beschleunigtes Verfahren, bei welchem der Schuldner gerade nicht die gleichen Rechte habe wie in einem Zivilverfahren, wo sich die Parteien auf gleicher Ebene gegenüberstehen.

Schliesslich sei nochmals zu betonen, dass jegliche geldwerten Ansprüche des Beschwerdeführers gegen den Alpha Trust aus seiner Stellung als Treugeber und Begünstigter bereits im Verfahren zu 08 EX.2016.839 gepfändet worden seien. Die Rechte des Beschwerdeführers gegen den Alpha Trust aus seiner Stellung als Protektor seien lediglich Zustimmungsrechte. Das eigentliche Entscheidungsrecht komme in diesem Zusammenhang dem Treuhänder zu, wie das Obergericht korrekt ausgeführt habe (08 EX.2016.5802, ON 36, S. 33 f., Erw. 6.6.7). Gemäss Art. 918 Abs. 1 PGR könne der Treugeber "keine Bestimmungen aufstellen, welche den Treuhänder an fortlaufende Weisungen des Treugebers binden". Auch könne der Protektor nicht anstelle des Treuhänders Vermögensverfügungen treffen (08 EX.2016.5802, ON 36, S. 35, Erw. 6.6.7). All diese Rechte seien somit keine vermögenswerten Rechte. Der Beschwerdegegner könne dadurch nämlich schlicht nicht an Geld kommen.

10.7.2.   Ausstehend sei in diesem Zusammenhang einzig noch das Recht des Protektors zur Bestellung und Abberufung des Treuhänders des Alpha Trusts. Zwar sei dieses gemäss den Urkunden nicht an Voraussetzungen gebunden. Allerdings habe der Oberste Gerichtshof hierbei in willkürlicher Weise die gesetzlichen Grundlagen des Trusts missachtet. So könne der Treugeber "keine Bestimmungen aufstellen, welche den Treuhänder an fortlaufende Weisungen des Treugebers binden". Er könne also nicht einem Treuhänder dauernd mit dem Damoklesschwert der Abberufung drohen, wenn dieser die Wünsche des Treugebers nicht umsetze. Vielmehr diene ein Abberufungsrecht lediglich "der Kontrolle und Durchsetzung der Pflichten des Treuhänders" (08 EX.2016.5802, ON 36, S. 35, Erw. 6.6.8). Diese Rechtsprechung stehe im Einklang mit dem österreichischen Obersten Gerichtshof, welcher stipuliert habe (3 Ob 177/10s, S. 14): "Das Abberufungsrecht dient der Kontrolle und Durchsetzung der Pflichten des Vorstands." Es sei gegenständlich jedoch in keiner Weise ersichtlich, dass der Treuhänder seine Pflichten verletzt habe; dies bringe noch nicht einmal der Beschwerdegegner vor. Vielmehr sei es im Ermessen des Treuhänders – und müsse es in seinem Ermessen bleiben –, an welche Begünstigten eine Ausschüttung erfolgt.

Würde demgegenüber der Exekutionsantrag des Beschwerdegegners gestützt, so könnte man in Zukunft immer dann durch einen Trust durchgreifen, wenn der Treugeber auch gleichzeitig Ermessensbegünstigter sei. Hierbei könnte man eine nach oben einzig durch die Höhe der Forderung beschränkte Summe aus dem Trust herausholen. Dies verkenne das Wesen des Trusts und auch die Interessen der anderen Trustbeteiligten in dramatischer Art und Weise. So heisse es denn auch in öOGH, 3 Ob 177/10s, S. 17 f.: Einer exekutionsfreundlichen Argumentation kann „die Gegenprognose entgegengestellt werden", dass „ein vom ermächtigten betreibenden Gläubi-

ger bestellter Beirat unter Missachtung des Stiftungszwecks tätig sein und übermäßige Zuwendungen an den Begünstigten [nämlich den Gläubiger] vornehmen werde". Dementsprechend habe es „durchaus einiges für sich", dass der Stiftungsrat nur entsprechend dem Stiftungszweck entscheiden dürfe, woraus folge, dass „Stifterrechte auf Abberufung und Bestellung von Vorstandsmitgliedern als nicht exekutionsfähig" gelten würden (3 Ob 177/10s, S. 14).

10.7.3.   Die vom Obersten Gerichtshof vorgenommene Auslegung von öOGH, 3 Ob 177/10s, mute bizarr an. So übergehe er obenstehende Zitate vollständig und begnüge sich mit der Aussage, dass die dem Stifter gegenüber einer Privatstiftung zustehenden Gesamtrechte dann der Exekution unterliegen würden, wenn er sich das Recht auf Widerruf vorbehalten habe und Letztbegünstigter sei oder sich ein Änderungsrecht vorbehalten habe (08 EX.2016.5802, ON 72, S. 43 f., Erw. 7.5.1). Hierbei sei zu betonen, dass sich der Beschwerdeführer gegenständlich weder ein Widerrufsrecht noch ein Änderungsrecht vorbehalten habe. Solche Rechte würden sich weder aus den Treuurkunden ergeben noch sei vom Obersten Gerichtshof dargelegt worden, woraus erkennbar wäre, dass solche Rechte bestehen.

Überdies umschiffe der Oberste Gerichtshof andere Rechtsprinzipien, welche in öOGH, 3 Ob 177/10s, ebenfalls genannt worden seien, so z.B. der Grundsatz der stufenweisen Zwangsausübung (3 Ob 177/10s, S. 16): "Es [das Recht auf Abberufung und Neubestellung] dem Gläubiger schon vorweg wegen befürchteter Missbräuche des Vorstands zur Verfügung zu stellen steht mit dem in der vergleichbaren Unterlassungsexekution (hier der Anspruch auf Unterlassung eines dem Stiftungszweck zuwiderlaufenden Verhaltens des Vorstands) vertretenen Grundsatz der stufenweisen Zwangsausübung in Widerspruch". Gegenständlich habe der Beschwerdegegner im Sinne dieses Prinzips zunächst eine Verwertung im Hinblick auf die zu 08 EX.2016.839 erfolgte Pfändung der dem Beschwerdeführer als wirtschaftlich Berechtigter, Treugeber, Begünstigter und Auftraggeber des Alpha Trusts zustehenden Geldforderungen und Zahlungsansprüche vorzunehmen, bevor er weitere Rechte pfänden könne.

Aus diesen Gründen sei der Beschwerdeführer durch den Beschluss des Obersten Gerichtshofes vom 07.09.2018 zu 08 EX.2016.5802 (ON 72) in seinem Anspruch auf willkürfreie Behandlung verletzt worden.

11.   Der Oberste Gerichtshof verzichtete mit Schreiben vom 17. Oktober 2018 auf eine Gegenäusserung zur vorliegenden Individualbeschwerde.

12.   Gegen den Beschluss des stellvertretenden Präsidenten des Staatsgerichtshofes vom 9. Oktober 2018, StGH 2018/111, erhob der Beschwerdegegner mit Schriftsatz vom 22. Oktober 2018 Beschwerde an den Staatsgerichtshof. Beantragt wird, der Staatsgerichtshof wolle der Beschwerde im bekämpften Umfang Folge geben und den bekämpften Beschluss dahingehend abändern, dass die Anträge des Beschwerdeführers auf vorsorgliche Massnah-

men gemäss Art. 52 f. StGHG zurückgewiesen, in eventu diese Anträge abgewiesen werden, die vorsorgliche Massnahme gemäss Art. 53 Abs. 1 StGHG, wonach der Beschwerdeführer bis zur Erledigung der Individualbeschwerde vom 10. Oktober 2018, StGH 2018/111, die im Beschluss des Obersten Gerichtshofes vom 7. September 2018, 08 EX.2016.5802-72, bestimmten Kosten des Rekurs- und des Revisionsrekursverfahrens nicht zu zahlen hat, unter der Bedingung angeordnet wird, dass der Berufungsgegner binnen vier Wochen eine Sicherheitsleistung von CHF 131'956.10 gerichtlich erlegt; und jedenfalls den Beschwerdeführer zum Ersatz der Kosten des Beschwerdeverfahrens zuhanden des Rechtsvertreters des Beschwerdegegners verpflichten.

13.   Der Beschwerdegegner erstattete mit Schriftsatz vom 12. November 2018 auch eine Gegenäusserung zur vorliegenden Individualbeschwerde des Beschwerdeführers gegen den Beschluss des Obersten Gerichtshofes vom 7. September 2018, 08 EX.2016.5802-72, worin beantragt, wird die Individualbeschwerde kostenpflichtig zurückzuweisen, eventualiter kostenpflichtig abzuweisen und dieser keine Folge zu geben. Auf die Ausführungen in dieser Gegenäusserung wird, soweit relevant, im Rahmen der Urteilsbegründung eingegangen.

14.   Der Beschwerdeführer erstattete mit Schriftsatz vom 5. November 2018 eine Gegenäusserung zur Beschwerde des Beschwerdegegners gegen den Beschluss des stellvertretenden Präsidenten des Staatsgerichtshofes vom 9. Oktober 2018, StGH 2018/111, worin beantragt wird der Beschwerde vom 22. Oktober 2018 keine Folge zu geben.

15.   Mit Schriftsatz vom 16. November 2018 beantragte der Beschwerdeführer erneut den Erlass einer vorsorglichen Massnahme bzw. die Zuerkennung der aufschiebenden Wirkung.

16.   Der Beschwerdegegner erstattete mit Schriftsatz vom 21. November 2018 wiederum eine Gegenäusserung zum diesem Antrag des Beschwerdeführers vom 16. November 2018, worin beantragt wird, dem Antrag auf aufschiebende Wirkung bzw. vorsorgliche Massnahme keine Folgen zu geben und den Beschwerdeführer zu verpflichten, die verzeichneten Kosten binnen 4 Wochen bei sonstiger Exekution zu ersetzen. Auf die Ausführungen in dieser Gegenäusserung wird, soweit relevant, im Rahmen der Urteilsbegründung eingegangen.

17.   Der stellvertretende Präsident des Staatsgerichtshofes gab dem Antrag des Beschwerdeführers mit Beschluss vom 27. November 2018 dahingehend Folge, dass dem Landgericht im Sinne einer vorsorglichen Massnahme gemäss Art. 53 Abs. 1 StGH bis zur Erledigung der gegenständlichen Individualbeschwerde vom 10. Oktober 2018 gegen den Beschluss des Obersten Gerichtshofes vom 7. September 2018, 08 EX.2016.5802-72, untersagt wird, das Exekutions- bzw. Verwertungsverfahren gemäss den Art. 242 ff. EO fortzusetzen.

18.     Gegen den Beschluss des stellvertretenden Präsidenten des Staatsgerichts-
        hofes vom 27. November 2018, StGH 2018/111, erhob der Beschwerdegeg-
        ner mit Schriftsatz vom 12. Dezember 2018 wiederum Beschwerde an den
        Staatsgerichtshof. Beantragt wird, der Staatsgerichtshof wolle der Be-
        schwerde Folge geben und den Beschluss des stellvertretenden Präsiden-
        des Staatsgerichtshofs vom 27. November 2018, ersatzlos als nichtig aufhe-
        ben und aussprechen, dass dem Antrag des Beschwerdeführers vom 16.
        November 2018 auf Zuerkennung der aufschiebenden Wirkung bzw. auf Er-
        lass einer vorsorglichen Massnahme keine Folge gegeben werde; eventuali-
        ter den Beschluss des stellvertretenden Präsidenten des Staatsgerichtshofs
        vom 27. November 2018, dahingehend abändern, dass dem Antrag des Be-
        schwerdeführers vom 16. November 2018 auf Zuerkennung der aufschie-
        benden Wirkung bzw. auf Erlass einer vorsorglichen Massnahme keine Fol-
        ge gegeben werde; sub-eventualiter den Beschluss des stellvertretenden
        Präsidenten des Staatsgerichtshofs vom 27. November 2018, aufheben und
        zur neuerlichen Verhandlung und Entscheidung im Sinne dieses Rechtsmit-
        tels an den (stellvertretenden) Präsidenten des Staatsgerichtshofs zurück-
        verweisen; und in jedem Falle den Beschwerdeführer verpflichten, dem Be-
        schwerdegegner die verzeichneten Kosten dieses Beschwerdeverfahrens
        binnen vier Wochen bei sonstiger Exekution zu Handen seines Rechtsvertre-
        ters zu ersetzen.

19.     Der Beschwerdeführer erstattete mit Schriftsatz vom 27. Dezember 2018
        eine Gegenäusserung zur Beschwerde des Beschwerdegegners gegen den
        Beschluss des stellvertretenden Präsidenten des Staatsgerichtshofes vom
        27. November 2018, worin beantragt wird, die Beschwerde vom 12. Dezem-
        ber 2018 zurückzuweisen, in eventu den darin gestellten Anträgen keine
        Folge zu geben.

20.     Der Beschwerdegegner erstattete mit Schriftsatz vom 13. März 2019 eine
        Mitteilung dahingehend, dass der stellvertretende Präsident als befangen
        abgelehnt werde.

21.     Der Staatsgerichtshof zog die Vorakten, soweit erforderlich, bei und be-
        schloss auf Antrag des Berichterstatters in Folge Spruchreife, auf die Durch-
        führung einer öffentlichen Schlussverhandlung zu verzichten. Nach Durch-
        führung einer nicht-öffentlichen Schlussverhandlung wurde wie aus dem
        Spruch ersichtlich entschieden.

## BEGRÜNDUNG

1.    Nach Art. 39 StGHG nimmt der Staatsgerichtshof seine Zuständigkeit in jeder Lage des Verfahrens von Amtes wegen wahr.

1.1.    Gemäss Art. 43 StGHG sind Eingaben, die sich wegen Versäumung einer gesetzlichen Einbringungsfrist oder wegen offenbarer Unzuständigkeit des Staatsgerichtshofes oder sonstigen offensichtlichen Mangels der Zulässigkeit nicht zur Verhandlung eignen, ohne weiteres Verfahren in nichtöffentlicher Sitzung mit Beschluss zurückzuweisen.

Der Staatsgerichtshof hat sohin von Amtes wegen zu prüfen, ob eine ihm zur Entscheidung vorgelegte Individualbeschwerde zulässig ist bzw. ob die Voraussetzungen für eine materielle Entscheidung über die Beschwerde vorliegen (StGH 2018/100, Erw. 1; StGH 2018/068, Erw. 1; StGH 2017/191, Erw. 1 [alle www.gerichtsentscheide.li]; siehe auch Tobias Michael Wille, Liechtensteinisches Verfassungsprozessrecht, LPS Bd. 43, Schaan 2007, 446 m. w. N.).

1.2.    Der im Beschwerdefall angefochtene Beschluss des Obersten Gerichtshofes vom 7. September 2018, 08 EX.2016.5802-72, ist letztinstanzlich ergangen. Ob er auch als enderledigend im Sinne des Art. 15 Abs. 1 StGHG und der dazu ergangenen bzw. entwickelten Judikatur des Staatsgerichtshofes ist (vgl. StGH 2004/006, Erw. 1 [www.gerichtsentscheide.li]; StGH 2004/028, Jus & News 3/2006, 361 [366 ff., Erw. 1 - 1.5]; zuletzt 2018/074, Erw. 1.1 ff; StGH 2018/026, Erw. 1.2 ff. [beide www.gerichtsentscheide.li] und StGH 2016/102, Erw. 1.2 ff.; vgl. hierzu auch Tobias Michael Wille, Liechtensteinisches Verfassungsprozessrecht, a. a. O., 557 und Peter Bussjäger, Was ist eine enderledigende Entscheidung?, in: Hubertus Schumacher/Wigbert Zimmermann [Hrsg.], Festschrift für Gert Delle Karth - 90 Jahre Fürstlicher Oberster Gerichtshof, Wien 2013, 81 ff., jeweils mit umfangreichen weiteren Rechtsprechungsnachweisen), ist im Folgenden zu prüfen.

1.3.    Im vorliegenden Verfahren geht es um die Pfändung von Gesamtrechten im Sinne von Art. 241 Abs. 1 EO, nicht aber das anschliessende Verwertungsverfahren (vgl. auch Art. 242 Abs. 2 EO). Der Staatsgerichtshof hat zwar mit Urteil vom 7. April 2014 (StGH 2013/099, Erw. 1 [www.gerichtsentscheide.li]) judiziert, dass eine Entscheidung hinsichtlich der Pfändung von Gesamtrechten gemäss Art. 242 Abs. 1 EO bei einstweiligem Vorbehalt der Verwertung wie gegenständlich als enderledigend zu qualifizieren ist, jedoch hat sich der Staatsgerichtshof in der erwähnten Entscheidung mit dem Enderledigungskriterium nicht im Detail auseinandergesetzt, was hiermit "nachgeholt" wird.

1.4.    Seit der Leitentscheidung StGH 2004/006 (a. a. O.) des Staatsgerichtshofes zu dem mit dem damals neuen Staatsgerichtshofgesetz (StGHG) geschaffenen Eintretenskriterium der Enderledigung werden letztinstanzliche Ent-

scheidungen in vergleichbaren Verfahren (im konkreten Fall ging es um einen Antrag auf Gewährung der Verfahrenshilfe) grundsätzlich als enderledigend qualifiziert.

Der Staatsgerichtshof begründete dies damit, dass sonst in deren Rahmen erfolgte Grundrechtsverletzungen nicht mehr vor dem Staatsgerichtshof gerügt werden könnten, da dieser eben nur die Möglichkeit hätte, die verfahrensabschliessende Endentscheidung aufzuheben, während es ihm verwehrt wäre, in die vom Hauptverfahren getrennten - und auch schon rechtskräftig abgeschlossenen - Instanzenzüge einzugreifen.

Der Staatsgerichtshof hat diese Rechtsprechung in der Folge weiterentwickelt, aber im Grundsatz an ihr festgehalten. Er hat in diesem Sinne etwa die Entscheidung über den Einspruch gegen die Anklageerhebung ebenso als enderledigend betrachtet (StGH 2004/062 [www.gerichtsentscheide.li]; StGH 2006/093) wie die Entscheidung über die Beschwerde gegen einen Beschluss, mit dem eine Hausdurchsuchung angeordnet wurde (vgl. StGH 2012/157; StGH 2012/053 [beide www.gerichtsentscheide.li]) oder im Verfahren über die Ablehnung eines Richters, sofern kein Ausschlussgrund geltend gemacht wurde, der auch noch im Verfahren in der Hauptsache als Nichtigkeitsgrund geltend gemacht werden kann (StGH 2008/078 [www.gerichtsentscheide.li]).

Entscheidendes Kriterium, ob eine in einem Zwischenverfahren ergangene, letztinstanzliche Entscheidung auch enderledigend ist, ist demnach, ob die gerügte Grundrechtsverletzung überhaupt noch durch die Aufhebung der letztinstanzlichen Entscheidung behoben werden könnte (statt vieler: StGH 2014/125, Erw. Erw. 1.3 ff.; StGH 2013/063, Erw. 2.1 und StGH 2008/30, Erw. 1.4 [beide www.gerichtsentscheide.li]; vgl. auch Peter Bussjäger, Was ist eine enderledigende Entscheidung?, a. a. O., 85).

1.5.   Im vorliegenden Fall ist somit zu prüfen, ob eine allfällige Grundrechtsverletzung im Rahmen der Pfändung der Gesamtrechte (vgl. Art. 242 Abs. 1 EO) in einem nachfolgenden Verfahren vom Staatsgerichtshof noch aufgegriffen werden könnte oder nicht. Dies wäre etwa dann nicht der Fall, wenn der Beschwerdegegner seinen Verwertungsantrag (vgl. auch Art. 242 Abs. 2 EO), etwa wegen anderweitiger Befriedigung, zurückzieht bzw. hiernach die Einstellung des Verfahrens beantragt. Im Übrigen ergibt sich bereits aus oben relevierten Vergleichsfällen, dass es sich bei der angefochtenen Entscheidung um eine solche enderledigender Natur handelt. Namentlich ist in diesem Zusammenhang auch auf die Entscheidung des Staatsgerichtshofes vom 27. September 2004 (StGH 2004/028 [a. a. O.]) zu verweisen, wonach selbst ein dem eigentlichen Ausfolgungs- bzw. Rechtshilfeverfahren vorgelagerter Beschlagnahmebeschluss enderledigend ist. Nichts Anderes kann hinsichtlich des dem Verwertungsverfahren vorgelagerten Pfändungsverfahrens (hinsichtlich der Gesamtrechte) gelten.

1.6.    Aus diesen Erwägungen erachtet der Staatsgerichtshof den angefochtenen Beschluss des Obersten Gerichtshofes (ON 72) entgegen der Ansicht des Beschwerdegegners als enderledigend, sodass er, da die Beschwerde im Übrigen fristgerecht und den Formerfordernissen entsprechend eingebracht wurde, mit Ausnahme von Spruchpunkt zu 4. in ON 3 (mangelnde Beschwer), materiell in die Sache einzutreten hat.

2.      Zur Rüge der Beschwerdeführer, wonach die Eigentumsgarantie verletzt sei, ist Folgendes festzuhalten:

2.1.    Die Eigentumsgarantie hat nach der Rechtsprechung des Staatsgerichtshofes einen eingeschränkten sachlichen Schutzbereich. Sie ist nur dann betroffen, wenn ein direkter staatlicher Eingriff in eine gefestigte Eigentumsposition stattfindet, nicht aber schon dann, wenn geldwerte Interessen betroffen sind (StGH 2018/123 = LES 2019, 123; StGH 2017/089, Erw. 2.1; StGH 2017/087, Erw. 2.1 [alle www.gerichtsentscheide.li]; vgl. auch Herbert Wille, Liechtensteinisches Verwaltungsrecht, LPS Bd. 38, Schaan 2004, 57). Gerade im Zivilprozess und entsprechend auch in einem Schiedsverfahren ist davon auszugehen, dass sich in der Regel gleichwertige vermögenswerte Interessen gegenüberstehen. Jede Verfahrenspartei hat dabei Anspruch auf Achtung ihres grundrechtlich geschützten Eigentumsrechts. Insoweit sind beide Parteien gleichberechtigt, so dass sich die Schutzwirkung der Eigentumsgarantie in diesem zweiseitigen Verhältnis gewissermassen ausgleicht. Selbiges gilt mutatis mutandis in einem dem Zivilverfahren nachgelagerten Exekutionsverfahren (vgl. auch StGH 1993/13, LES 1994, 49).

2.2.    Eine solche Konstellation liegt hier gerade vor: Das gegenständliche Exekutionsverfahren, in welchem sich der Beschwerdeführer und der Beschwerdegegner als Parteien gegenüberstehen, basiert auf dem vollstreckbaren Schiedsspruch des London Court of International Arbitration (LCIA) vom 11. November 2014 (berichtigt mit Entscheid vom 9. Januar 2015) zu Fall No. 101721. Der Staatsgerichtshof beschränkt sich in solchen Fällen regelmässig auf eine Willkürprüfung (siehe StGH 2017/147, Erw. 3; StGH 2017/081, Erw. 3.2 und StGH 2009/17, Erw. 2.1 [beide www.gerichtsentscheide.li]), weshalb der Staatsgerichthof das Vorbringen des Beschwerdeführers lediglich im Rahmen des groben Willkürrasters prüft (vgl. nachfolgend, insbesondere Erw. 6 ff.).

3.      Der Beschwerdeführer rügt neben einer Verletzung des Beschwerderechtes gemäss Art. 43 LV auch eine Verletzung des Rechtes auf den ordentlichen Richter gemäss Art. 33 Abs. 1 LV sowie eine Verletzung des Rechtsverweigerungsverbotes. Sowohl unter dem Titel der "Verletzung des Verbots der formellen Rechtsverweigerung" (vgl. Ziff. 4. der Individualbeschwerde) als auch unter den Titeln "Verletzung des Rechts auf den ordentlichen Richter" (vgl. Ziff. 5. der Individualbeschwerde) und "Verletzung des Beschwerderechts" (vgl. Ziff. 6. der Individualbeschwerde) trägt der Beschwerdeführer ident vor. Konkret rügt der Beschwerdeführer zusammengefasst jeweils, dass der Oberste Gerichtshof jegliche rechtliche Auseinandersetzung hin-

sichtlich der Verwertbarkeit der Gesamtrechte in ein nachfolgendes Verfahren, gemeint das Verwertungsverfahren, verlagere. Zudem spreche der Oberste Gerichtshof davon, dass höchstpersönliche oder sonst offenkundig nicht übertragbare Rechte nicht pfändbar seien, ohne an späterer Stelle darauf einzugehen, ob die gepfändeten Gesamtrechte übertragbar seien oder nicht. Der Beschwerdeführer ist in diesem Zusammenhang der Ansicht, dass aus einer mangelnden offensichtlichen Unverwertbarkeit nicht auf eine mögliche Verwertbarkeit geschlossen werden könne. Eine "schlichte Unverwertbarkeit" sei auch eine Unverwertbarkeit, welche mit Blick auf die gepfändeten Gesamtrechte jedenfalls gegeben sei. Der Beschwerdeführer ist zusammengefasst der Ansicht, dass der Oberste Gerichtshof die ihm zustehende Kognition unzulässigerweise beschränkt habe.

3.1.    Art. 33 Abs. 1 LV ist u.a. dann verletzt, wenn eine Gerichts- oder Verwaltungsbehörde eine Entscheidung in Anspruch nimmt, die ihr kompetenzmässig nicht zusteht oder umgekehrt, wenn sie eine ihr gesetzlich zustehende de Angelegenheit ablehnt (StGH 2018/063 = LES 2019, 81; StGH 2017/197, Erw. 4.1; StGH 2017/090, Erw. 2.1 [beide www.gerichtsentscheide.li]; Tobias Michael Wille, Recht auf den ordentlichen Richter, in: Andreas Kley/Klaus A. Vallender [Hrsg.], Grundrechtspraxis in Liechtenstein, LPS Bd. 52, Schaan 2012, 359, Rz. 32). Dabei zeigt sich auch eine Überschneidung mit dem Verbot der formellen Rechtsverweigerung (StGH 2010/104, Erw. 2.1 [www.gerichtsentscheide.li]; StGH 2004/009, LES 2006, 96 [100, Erw. 2.2]); siehe dazu auch Tobias Michael Wille, Beschwerderecht, in: Andreas Kley/Klaus A. Vallender [Hrsg.], Grundrechtspraxis in Liechtenstein, a. a. O., 2012, 514 f., Rz. 12). Rechtsverweigerung begeht eine Behörde nicht nur, wenn sie völlig untätig bleibt, sondern auch, wenn sie nicht im geforderten Masse tätig wird. Hauptfall dieser Form der Rechtsverweigerung bildet die fehlende oder mangelnde Abklärung des Sachverhaltes oder die unzulässige Beschränkung der Kognition (StGH 2010/104, Erw. 2.1 [a. a. O.]; siehe auch StGH 2004/010, Erw. 3.1 mit Verweis auf StGH 1991/12 a+b, LES 1994, 96 [97, Erw. 3.1]). Wenn eine solche Rechtsverweigerung bzw. Nichtausschöpfung der Kognition im Rechtsmittelverfahren erfolgt, liegt auch eine Überschneidung mit dem hier ebenfalls explizit gerügten grundrechtlichen Beschwerderecht vor (StGH 2010/104, Erw. 2.1 [a. a. O.]; siehe auch StGH 2004/009, Erw. 2.2 [a. a. O.] und StGH 1998/029, LES 1999, 276 [280, Erw. 3.2.1]).

Der Anspruch auf den ordentlichen Richter und das Rechtsverweigerungsverbot können im Beschwerdefall letztlich keinen weitergehenden Grundrechtsschutz bieten als das Beschwerderecht, sodass es genügt, wenn im Folgenden geprüft wird, ob der hier angefochtene Beschluss des Obersten Gerichtshofes (ON 72) das grundrechtliche Beschwerderecht verletzt (vgl. StGH 2009/168, Erw. 2.1 [www.gerichtsentscheide.li]).

3.2.    Nach der ständigen Rechtsprechung des Staatsgerichtshofes verlangt das Beschwerderecht gemäss Art. 43 LV ebenso wie Art. 6 Abs. 1 EMRK, dass ein Verfahren vor einem unabhängigen Gericht mit voller Prüfungsbefugnis

als Sach- und Rechtsinstanz im Sinne eines effektiven Rechtsschutzes grundsätzlich immer offen steht (StGH 2018/091, Erw. 3.1 [www.gerichtsentscheide.li]; StGH 2018/069+064 = LES 2019, 18; StGH 2017/081, Erw. 4.1 [www.gerichtsentscheide.li]; siehe auch Tobias Michael Wille, Beschwerderecht, in: Andreas Kley/Klaus A. Vallender [Hrsg.], Grundrechtspraxis in Liechtenstein, a. a. O., 518 f., Rz. 18 m. w. N.).

Dem Beschwerderecht nach Art. 43 LV kommt ein materieller Gehalt zu, der eine Aushöhlung durch den Gesetzgeber nicht zulässt. Gesetzliche Beschränkungen sind aber im öffentlichen Interesse und bei Wahrung des Grundsatzes der Verhältnismässigkeit zulässig, sofern sie das Grundrecht nicht übermässig einschränken. Schränkt der Gesetzgeber das Beschwerderecht ein, sind Einschränkungen im Zweifel zugunsten der Gewährung des Beschwerderechts zu interpretieren (StGH 2018/091, Erw. 3.1; StGH 2017/045, Erw. 2.2; StGH 2016/064, Erw. 2.1 [alle www.gerichtsentscheide.li]; siehe auch Tobias Michael Wille, Beschwerderecht, a. a. O., 518, Rz. 17 m. w. N.). In seiner bisherigen Rechtsprechung trug der Staatsgerichtshof insbesondere dort Sorge zu dem von ihm entwickelten Grundgehalt des Beschwerderechts, wo eine behördliche Massnahme für den Betroffenen einschneidende Auswirkungen und möglicherweise nicht wieder gutzumachende Nachteile zur Folge haben konnte (StGH 2018/091, Erw. 3.1; StGH 2017/045, Erw. 2.2; StGH 2016/029, Erw. 3.2.1 [alle www.gerichtsentscheide.li]).

3.2.1    Die oben genannte Rüge des Beschwerdeführers geht weder mit der einschlägigen Literatur noch mit der einschlägigen Judikatur konform: Wie der Oberste Gerichtshof richtig ausführt, entspricht Art. 242 EO dem österreichischen Rezeptionsvorbild der §§ 331 ff. öEO, weshalb auf österreichische Literatur und Judikatur zurückgegriffen werden kann (vgl. ausführlich ON 72, S. 34). Im Rahmen der Bewilligung der Exekution ist auf der Grundlage der Aktenlage (Exekutionsantrag) zu prüfen, ob das in Exekution gezogene Recht einer Verwertung zugänglich ist. Darüberhinausgehende Nachforschungen sind nicht anzustellen, der betreibende Gläubiger muss insbesondere in seinem Exekutionsantrag weder beweisen noch bescheinigen, dass das gepfändete Recht verwertbar ist. Gleich wie bei der Forderungsexekution hat das Bewilligungsgericht nicht zu prüfen, ob das gepfändete Recht besteht. Die Exekution ist sohin zu bewilligen, wenn die Unpfändbarkeit des Rechts wegen Unverwertbarkeit nicht von vornherein offenkundig ist. Sollte sich jedoch im Laufe des Verwertungsstadiums herausstellen, dass eine Verwertung des gepfändeten Rechts aus rechtlichen oder tatsächlichen Gründen unmöglich ist, so ist das Verfahren einzustellen. Vor der Entscheidung über den Verwertungsantrag sind bei sonstiger Nichtigkeit des Verfahrens zwingend der Verpflichtete und alle Gläubiger zu deren Gunsten Pfändung erfolgte, zu vernehmen (vgl. Oberhammer, in: Angst/Oberhammer, EO³, N 10 zu § 331 öEO unter Hinweis auf umfangreiche Literatur und Judikatur; so richtigerweise auch der Oberste Gerichtshof, vgl. namentlich ON 72, S. 35 und 42). Unter Verweis auf die Teleologie des Art 242 EO hält der Oberste Gerichtshof sodann zutreffend fest, dass der Auffangtatbestand der

Exekution auf andere Vermögensrechte sicherstellen soll, dass alle denkbaren Vermögenswerte des Verpflichteten in Exekution gezogen werden können. An dieser Zwecksetzung des Gesetzes hat sich die Interpretation der §§ 331 ff. öEO zu orientieren, was sohin auch für die Auslegung der Art. 242 ff. EO zu gelten hat (vgl. ON 72, S. 35).

3.2.2   Aus der soeben referierten Rechtsprechung ergibt sich zwanglos, dass der Oberste Gerichtshof mitnichten, wie der Beschwerdeführer vermeint, seine eigene Kompetenz im Hinblick auf die Beurteilung der Verwertbarkeit der gepfändeten Gesamtrechte nicht wahrgenommen hat. Der Beschwerdeführer verkennt, dass der Oberste Gerichtshof im Rahmen von Art. 242 Abs. 1 EO nicht zu prüfen hat, ob eine "schlichte Unverwertbarkeit", was auch immer das im Detail bedeuten mag, vorliegt, sondern lediglich, ob die Unverwertbarkeit nicht von vornherein offenkundig ist, was der Oberste Gerichtshof im angefochtenen Beschluss zweifelsohne unternommen hat (vgl. insbesondere ON 72, S. 38 f.). Der Beschwerdeführer verkennt insoweit auch durchgängig, dass die Frage der konkreten (tatsächlichen) Verwertbarkeit dem Verwertungsverfahren (vgl. auch Art. 242 Abs. 2 EO) vorbehalten ist. Die oben referierte Rechtsprechung, gemäss welcher der Oberste Gerichtshof in ON 72 judiziert hat, ist unter verfassungsmässigen Gesichtspunkten nicht zu beanstanden: Die Teleologie des Art. 242 EO zielt nämlich darauf ab, sicherzustellen, dass alle denkbaren Vermögenswerte des Verpflichteten in Exekution gezogen werden können. An dieser Zwecksetzung des Gesetzes hat sich, wie der Oberste Gerichtshof richtig festhält, die Interpretation der §§ 331 ff. öEO und damit auch der Art. 242 ff. EO zu richten. Insoweit ist auch nicht zu beanstanden, wenn der Oberste Gerichtshof im Einklang mit der einschlägigen Literatur zum Ergebnis gelangt, dass bei der Beurteilung, ob ein Vermögensrecht pfändbar ist, grosszügig vorzugehen und im Zweifel die Exekutionsunterworfenheit anzunehmen ist. Hinzukommt, dass, wie oben releviert, das Verwertungsverfahren vorbehalten ist, das Exekutionsverfahren sohin einzustellen ist, wenn die weitere Prüfung im Rahmen des Verwertungsstadiums ergibt, dass die Verwertung des gepfändeten Rechts aus rechtlichen oder tatsächlichen Gründen unmöglich ist.

Weiter ist der Beschwerdeführer darauf hinzuweisen, dass sich bereits aus den Ausführungen des Obersten Gerichtshofes zum Nichtvorliegen einer offensichtlichen Unverwertbarkeit ( vgl. oben) ergibt, dass gegenständlich auch nicht offenkundig ein nicht übertragbares Recht vorliegt. Ergänzend weist der Oberste Gerichtshof in weiterer Folge unter Hinweis auf österreichische Rechtsprechung darauf hin, dass gepfändete Gestaltungsrechte bloss ihrer Ausübung nach übertragbar sein müssen und die Ausübung der Gestaltungsrechte auch durch Dritte erfolgen kann. Weiter hält der Oberste Gerichtshof richtigerweise fest, dass es gegenständlich darum geht, dass der Betreibende die in den Gesamtrechten enthaltenen Einzelrechte anstelle des Verpflichteten ausüben kann und es nicht ersichtlich ist, welche exekutionsrechtlichen Hindernisse dem entgegenstehen sollten (vgl. ON 72, S. 45). Inwieweit nunmehr die Konkretisierung des Obersten Gerichtshofes und der Hinweis auf österreichische Rechtsprechung dahingehend, wonach es bei

einer Exekution auf andere Vermögensrechte um die gerichtliche Ermächtigung des betreibenden Gläubigers geht, im Exekutionsverfahren anstelle des Verpflichteten dessen Rechte auszuüben, um dadurch, wenn gleich auch erst mittelbar, auf den Erlös aus dem zu liquidierenden Einzelrecht greifen zu können, widersprüchlich sein soll, erschliesst sich dem Staatsgerichtshof nicht.

3.2.3   Die vom Beschwerdeführer geltend gemachte Verletzung des Beschwerderechts und damit auch die geltend gemachte Verletzung des Verbots der formellen Rechtsverweigerung und der Verletzung des Rechts auf den ordentlichen Richter liegt damit nicht vor.

4.   Der Beschwerdeführer macht weiter geltend, dass er in seinem Anspruch auf Gleichbehandlung und damit zusammenhängend auch in seiner Begründungspflicht verletzt worden sei.

4.1.   Konkret rügt der Beschwerdeführer, dass der Oberste Gerichtshof dahingehend von der Praxis des Rezeptionslandes zu § 331 öEO abgewichen sei, als er im Rahmen der Exekution der Gesamtrechte nicht geprüft habe, ob der Beschwerdeführer als Treugeber des Alpha Trusts überhaupt über Widerruf- bzw. Änderungsrechte in Bezug auf den erwähnten Trust verfüge. Es wäre am Obersten Gerichtshof gelegen, so der Beschwerdeführer, auf den gegenständlichen "Mangel an Widerruf- bzw. Änderungsrechten" näher einzugehen, da der Oberste Gerichtshof explizit den Beschluss des österreichischen Obersten Gerichtshofes vom 14. Juli 2011 zu 3 Ob 177/10s heranziehe, welcher wiederum auf RS0120752 Bezug nehme. Der Oberste Gerichtshof versäume es, im Ergebnis triftige Gründe zu benennen, weshalb er von der einschlägigen österreichischen Rechtsprechung abweicht.

4.2.   Der Beschwerdeführer führt im Sinne der Rechtsprechung des Staatsgerichtshofes zutreffend aus, dass ohne Not nicht von der im Herkunftsland zu einer in Liechtenstein rezipierten Norm bestehenden Gerichtspraxis abgewichen werden soll ("law in action"). Jedenfalls ist eine solche Abweichung von der ausländischen Praxis ausführlich zu begründen (StGH 2015/040, Erw. 2.1; StGH 2009/050, Erw. 2.6 und StGH 2006/024, Erw. 3.5 [alle www.gerichtsentscheide.li]). Wenn jedoch eine Entscheidung offensichtlich von einer vergleichbaren Entscheidung abweicht, so ist entweder aufzuzeigen, dass sich die beiden Fälle doch in einem wesentlichen Punkt unterscheiden, oder aber es ist zu begründen, weshalb der an sich vergleichbare andere Fall falsch entschieden wurde und von diesem Vergleichsfall oder generell von einer entsprechenden bisherigen Praxis abzuweichen ist (siehe statt vieler: StGH 2017/141, Erw. 4.1; StGH 2013/069, Erw. 2.1; StGH 2012/046, Erw. 4.1; [alle www.gerichtsentscheide.li]; siehe auch Tobias Michael Wille, Begründungspflicht, a. a. O., 546 f., Rz. 7 m. w. N.).

Nach der Rechtsprechung des Staatsgerichtshofes steht nämlich eine Praxisänderung in einem offensichtlichen Spannungsverhältnis zum Gleichheitssatz der Verfassung und zum Rechtssicherheitsinteresse. Allerdings

verstösst eine sachlich begründete Praxisänderung nicht gegen das Gleich-heitsgebot, ausser es bestünden Anzeichen dafür, dass die Behörde die neue Praxis nicht konsequent anwenden bzw. anzuwenden beabsichtigt (StGH 2013/005, Erw. 2.3; StGH 2008/118, Erw. 2.2; StGH 2008/002, Erw. 4 [alle www.gerichtsentscheide.li]; vgl. auch Tobias Michael Wille, Begrün-dungspflicht, a. a. O., 546 ff., Rz. 7). Die zur Rechtfertigung einer Praxisän-derung erforderlichen sachlichen Gründe sind nach Auffassung des Staats-gerichtshofes nicht schon dann gegeben, wenn die neue Praxis bloss ver-tretbar ist und somit für sich gesehen vor dem Willkürverbot standhält. Viel-mehr ist den Anforderungen des Gleichheitssatzes der Verfassung an eine Praxisänderung nur dann Genüge getan, wenn die bisherige Praxis insge-samt weniger überzeugt als die neue. Anderenfalls überwiegt das Interesse an einer konstanten Rechtsprechung (StGH 2004/049, Erw. 2.2; StGH 2003/033, Erw. 2.2; siehe auch Andreas Kley/Hugo Vogt, Rechtsgleichheit und Grundsatz von Treu und Glauben, in: Andreas Kley/Klaus A. Vallender [Hrsg.], Grundrechtspraxis in Liechtenstein, a. a. O., 272 ff., Rz. 39 ff.).

4.3.  Der Beschwerdeführer verkennt nunmehr, dass es sich beim Beschluss des österreichischen Obersten Gerichtshofes vom 14. Juli 2011 zu 3 Ob 177/10s bzw. bei RS0120752 um einen Stiftungsfall handelt, wohingegen dem ge-genständlichen Fall ein Trust, nämlich hinsichtlich der Pfändung der bezügli-chen Gesamtrechte des Beschwerdeführers, zugrunde liegt. Schon deshalb kann von Vorneherein keine Praxisänderung wie vom Beschwerdeführer vermeint und damit auch keine Verletzung der Begründungspflicht hinsicht-lich der vom Beschwerdeführer behaupteten Praxisänderung vorliegen. Aus der angefochtenen Entscheidung ergibt sich im Übrigen klar, dass der Oberste Gerichtshof die erwähnten österreichischen Entscheidungen zwecks Begründung der "mittelbaren Verwertbarkeit" (vgl. ON 72, S. 42 ff.) heran-zieht. Konkret führt der Oberste Gerichtshof unter Hinweis auf die erwähnte österreichische Judikatur aus, dass es sich bei der gegenständlich vorlie-genden Exekutionssache um keinen Stiftungsfall handle. Wesentlich an der Judikatur des österreichischen Obersten Gerichtshofes zur Exekution auf Stifterrechte sei aber für den entscheidungsgegenständlichen Fall, dass für die Tauglichkeit eines Exekutionsobjekts nach den §§ 331 ff. öEO bereits dessen mittelbare Verwertbarkeit genüge. Unter Hinweis auf anderweitige österreichische Judikatur gelangt der Oberste Gerichtshof dann schliesslich zum richtigen Schluss, dass die Exekution nach den Art. 242 EO keine un-mittelbare Verwertbarkeit des zu pfändenden Rechts einfordere, sondern ei-ne mittelbare Verwertbarkeit genügt (vgl. ausführlich ON 72, S. 45 f.).

4.4.  Die vom Beschwerdeführer geltend gemachte Verletzung des Gleichbehand-lungsgebotes und die damit zusammenhängend geltend gemachte Verlet-zung der Begründungspflicht liegt damit nicht vor.

5.  Weiter macht der Beschwerdeführer die Verletzung der Begründungspflicht geltend.

5.1.    Wesentlicher Zweck der Begründungspflicht gemäss Art. 43 LV ist, dass der
        von einer Verfügung oder Entscheidung Betroffene deren Stichhaltigkeit
        überprüfen und sich gegen eine fehlerhafte Begründung wehren kann. Aller-
        dings wird der Umfang des grundrechtlichen Begründungsanspruchs durch
        die Aspekte der Angemessenheit und Verfahrensökonomie begrenzt. Ein
        genereller Anspruch auf ausführliche Begründung existiert nicht (StGH
        2018/047, Erw. 3.1; StGH 2016/078, Erw. 3.1; StGH 2012/173, Erw. 2.1 [alle
        www.gerichtsentscheide.li]). Die grundrechtliche Begründungspflicht beinhal-
        tet nur einen Minimalanspruch auf Begründung. Entsprechend verletzt es die
        verfassungsmässige Begründungspflicht nicht, wenn Offensichtliches von
        der entscheidenden Behörde nicht näher begründet wird (StGH 2018/068,
        Erw. 3.1; StGH 2018/041, Erw. 3.1 = LES 2019, 1; StGH 2016/078, Erw. 3.1
        [alle www.gerichtsentscheide.li]). Nur wenn in einem entscheidungsrelevan-
        ten Punkt eine nachvollziehbare Begründung gänzlich fehlt oder eine blosse
        Scheinbegründung vorliegt, ist dieses Grundrecht verletzt (StGH 2018/039,
        Erw. 5.1; StGH 2017/197, Erw. 2.1; StGH 2016/078, Erw. 3.1 [alle
        www.gerichtsentscheide.li; siehe auch Tobias Michael Wille, Begründungs-
        pflicht, in: Andreas Kley/Klaus A. Vallender [Hrsg.], Grundrechtspraxis in
        Liechtenstein, a. a. O., 554 ff., Rz. 16). In diesem Sinne ist es nicht Aufgabe
        einer entscheidenden Behörde, sämtliche Rechtsfragen ungeachtet ihrer
        Entscheidungsrelevanz bis ins kleinste Detail zu erörtern. Vielmehr hat sie
        sich mit den entscheidungsrelevanten Rechtsfragen lediglich soweit ausei-
        nanderzusetzen, dass die Entscheidung für den Betroffenen nachvollziehbar
        und überprüfbar ist (StGH 2011/8, Erw. 2.2 [www.gerichtsentscheide.li]). In
        diesem Zusammenhang ist zudem auch noch darauf hinzuweisen, dass die
        materielle Richtigkeit einer Begründung im Lichte des jeweiligen spezifischen
        Grundrechtes bzw. des Willkürverbots und nicht der Begründungspflicht ge-
        mäss Art. 43 LV geprüft wird. Entsprechend verletzt auch eine falsche Be-
        gründung Art. 43 LV nicht (StGH 2012/173, Erw. 2.1 [a. a. O.]; StGH
        2011/168, Erw. 3.1; vgl. auch StGH 1998/13, Erw. 2.1; StGH 1997/16, Erw. 2
        sowie StGH 1996/46, LES 1998, 191 [195, Erw. 2.5]); soweit es sich dabei
        nicht gerade um eine Scheinbegründung handelt (StGH 2007/57, Erw. 2.2;
        StGH 2007/54, Erw. 2.3; StGH 1996/46, LES 1998, 191 [195, Erw. 1.2]).

5.2.    Zu Ziff. 9. seiner Individualbeschwerde führt der Beschwerdeführer aus, dass
        der Oberste Gerichtshof das mangelnde Vorliegen einer offensichtlichen Un-
        verwertbarkeit einzig daraus schliesse, dass die Position des Beschwerde-
        führers als Treugeber "schon nach allgemeinen Grundsätzen dessen Mög-
        lichkeit zur Herbeiführung vermögenswerter Forderungen gegen die Treu-
        händer bejahen" lasse.

5.3.    Entgegen der Ansicht des Beschwerdeführers hat der Oberste Gerichtshof
        das mangelnde Vorliegen einer offensichtlichen Unverwertbarkeit nicht ledig-
        lich auf die einleitend erwähnte Wendung gestützt (vgl. auch ON 72, S. 42).
        Vielmehr hat der Oberste Gerichtshof an weiteren Stellen der angefochtenen
        Entscheidung umfangreich und unter Hinweis auf Lehre und Rechtspre-
        chung begründet, weshalb nicht von einer offensichtlichen Unverwertbarkeit
        auszugehen ist. Namentlich hat der Oberste Gerichtshof festgehalten, dass

sich im Lichte des durch den Beschwerdegegner gestellten Exekutionsan-
trages, welcher vom Obersten Gerichtshof über mehrere Seiten hinweg rele-
viert wird (vgl. S. 38 ff. in ON 72), ergibt, dass keine offensichtliche Unver-
wertbarkeit vorliegt (vgl. auch den Hinweis des Obersten Gerichtshofes auf
S. 42 des angefochtenen Beschlusses). Wie erwähnt, beinhaltet der ange-
fochtene Beschluss diverse weitere Ausführungen zur (mittelbaren) Verwert-
barkeit der gepfändeten Rechte (vgl. namentlich S. 42 ff. und S. 50 ff. in ON
72), weshalb keine Rede davon sein kann, dass die Verwertbarkeit bzw. die
offensichtliche Unverwertbarkeit der gepfändeten Rechte, wie vom Be-
schwerdeführer vermeint, nicht begründet worden sei. Eine Verletzung der
Begründungspflicht liegt somit nicht vor.

6.      Der Beschwerdeführer macht schliesslich geltend, dass er in seinem An-
        spruch auf willkürfreie Behandlung verletzt worden sei.

6.1.    Nach der Rechtsprechung des Staatsgerichtshofes liegt ein Verstoss gegen
        dieses Grundrecht nur dann vor, wenn eine Entscheidung sachlich nicht zu
        begründen, nicht vertretbar bzw. stossend ist (siehe statt vieler: StGH
        2018/095 = LES 2019, 76; StGH 2018/091, Erw. 4.1; StGH 2018/015, Erw.
        6.1 [beide www.gerichtsentscheide.li] sowie Hugo Vogt, Willkürverbot, in:
        Andreas Kley/Klaus A. Vallender [Hrsg.], Grundrechtspraxis in Liechtenstein,
        a. a. O., 317 f., Rz. 26 m. w. N.). Im Rahmen des groben Willkürrasters hat
        der Staatsgerichtshof, sofern die Rügen nicht ohnehin schon behandelt wur-
        den (siehe zum subsidiären Charakter des Willkürverbots statt vieler: StGH
        2018/101 = LES 2019, 85; StGH 2018/091, Erw. 4.1; StGH 2018/064, Erw.
        3.3; [beide www.gerichtsentscheide.li]), Folgendes erwogen:

6.2.    Zu Ziff. 3.9 und Ziff. 10.10 der Individualbeschwerde führt der Beschwerde-
        führer ins Feld, dass der Oberste Gerichtshof verkenne, dass zunächst eine
        Verwertung im Hinblick auf die zu 08 EX.2016.839 erfolgte Pfändung zu er-
        folgen habe, bevor weitere Rechte, eben Gesamtrechte wie gegenständlich,
        gepfändet würden. Insoweit erachtet der Beschwerdeführer die angefochte-
        ne Entscheidung auch als nicht verhältnismässig.

        Zunächst ist der Beschwerdeführer darauf hinzuweisen, dass der Oberste
        Gerichtshof in diesem Zusammenhang ausführliche Erwägungen zur "Dop-
        pelpfändung" und "Mehrfachpfändung" vornimmt (vgl. ON 72, S. 52 f.). Na-
        mentlich hält der Oberste Gerichtshof richtigerweise fest, dass im gegen-
        ständlichen Verfahren Gesamtrechte des Verpflichteten, im Verfahren zu 08
        EX.2016.839 jedoch Forderungen des Verpflichteten gepfändet wurden. Zu-
        dem verkennt der Beschwerdeführer, dass es nur dann zu einer Beschrän-
        kung hinsichtlich der Exekutionsmittel kommen darf, wenn keine Zweifel am
        Hinreichen einzelner Exekutionsmittel zur vollen Befriedigung des Betrei-
        bendenanspruchs bestehen. Die blosse Wahrscheinlichkeit genügt nicht.
        Unstrittig ist, dass diese Voraussetzung in der Regel im Stadium der Exeku-
        tionsbewilligung, wie gegenständlich, für das Gericht mit ausreichender Si-
        cherheit nicht erkennbar ist, weshalb der vom Beschwerdeführer offenbar
        (implizit) angesprochene Art. 9, 2. Halbsatz EO im gegenständlichen Verfah-


rensstadium in der Praxis kaum zur Anwendung kommt (vgl. zum ganzen Jakusch, in: Angst, a. a. O., N 6 zu § 14 öEO). Soebiges gilt für den gegenständlichen Fall umso mehr, als mit der angefochtenen Entscheidung Gesamtrechte gepfändet wurden und sohin erst im Verwertungsstadium im Einzelnen zu prüfen ist, welche aus dem Gesamtrecht des Verpflichteten fliessenden Einzelrechte verwertbar und vermögenswert sind. Insoweit hält der Beschluss des Obersten Gerichtshofes unter diesem Aspekt einer Willkürprüfung stand.

6.3.    Weiter erachtet es der Beschwerdeführer als willkürlich, dass mittels dem gegenständlichen Exekutionsverfahren überhaupt auf die Gesamtrechte des Beschwerdeführers hinsichtlich des Alpha Trusts zugegriffen wird bzw. Letztere gepfändet werden, da "ein Exekutionsverfahren nicht der richtige Ort dafür" sei. Vielmehr müsste eine solche Argumentation in einem Anfechtungsverfahren vorgebracht werden.

Diese Rüge des Beschwerdeführers verkennt zunächst wiederum, dass der Auffangtatbestand der Exekution auf andere Vermögensrechte gemäss Art. 242 EO sicherstellen soll, dass alle denkbaren Vermögenswerte des Verpflichteten in Exekution gezogen werden können. An eben dieser Zwecksetzung des Gesetzes hat sich die Interpretation der Art. 242 ff. EO zu richten (vgl. auch ON 72, S. 35 unter Hinweis auf Judikatur und Rechtsprechung). Es genügt dabei konsequenterweise, wie bereits schon ausführlich releviert, eine mittelbare Verwertbarkeit der gepfändeten Gesamtrechte (vgl. ON 72, S. 42 ff.). Es kann insoweit keine Rede davon sein, dass sich der Beschwerdegegner, wie der Beschwerdeführer vermeint, im "falschen" Verfahren befindet: Vielmehr ist mit dem Beschwerdegegner dafür zu halten, dass es im Rahmen der Pfändung von Gesamtrechten gerade nicht erforderlich ist, dass die Ausübung einzelner Befugnisse des Verpflichteten unmittelbar einen Vermögenswert nutzbar macht, solange und insoweit die konkrete Ausübung darauf gerichtet ist, Vermögen des Verpflichteten der Zwangsvollstreckung zuzuführen. Im Übrigen ist in weiterer Folge, wie erwähnt, dann im Verwertungsstadium im Einzelnen zu prüfen, welche aus dem Gesamtrecht des Verpflichteten fliessenden Einzelrechte verwertbar und vermögenswert sind. Von einer Verletzung des Willkürverbots kann insoweit keine Rede sein.

6.4.    Schliesslich erachtet es der Beschwerdeführer als willkürlich, dass der Oberste Gerichtshof sein Gesamtrecht als Protektor des Alpha Trusts gepfändet hat. All diese Rechte seien keine vermögenswerten Rechte und diese Vorgehensweise des Obersten Gerichtshofes verkenne "das Wesen des Trusts".

Dass dieses Vorbringen des Beschwerdeführers unberechtigt ist, ergibt sich bereits aus den vorstehenden Ausführungen des Staatsgerichtshofes (vgl. insbesondere auch die Ausführungen zu den Kriterien der hinreichenden offensichtlichen Unverwertbarkeit und der mittelbaren Verwertbarkeit). Soweit sich der Beschwerdeführer auf die Unpfändbarkeit einzelner aus einem Gesamtrecht ableitbarer Rechte stützt, verkennt er ohnehin, dass sich die be-

kämpfte Exekutionsbewilligung nicht auf Einzelrechte, sondern auf Gesamtrechte des Verpflichteten bezieht (so zutreffend der Oberste Gerichtshof unter Hinweis auf Rechtsprechung, vgl. ON 72, S. 35). Letztlich und durchgängig verkennt der Beschwerdeführer, wie vom Obersten Gerichtshof ausführlich releviert, dass der Beschwerdeführer aufgrund seiner Gesamtrechte zu verwertbaren Geldforderungen gelangen kann. Ob Letzteres in weiterer Folge tatsächlich der Fall ist, ist, wie der Oberste Gerichtshof richtig festhält, im gegenwärtigen Verfahrensstadium weder näher zu prüfen, noch zu entscheiden, sondern vielmehr einer allfälligen Verwertung der Gesamtrechte des Beschwerdeführers vorzubehalten (vgl. namentlich ON 72, S. 40). Auch deshalb sind die vom Beschwerdeführer erhobenen Einwendungen, namentlich mit Blick auf Art. 918 Abs. 1 PGR, unbeachtlich. Auch im Lichte dieser Ausführungen ist sohin nicht von einer qualifiziert bzw. grob verfehlten Entscheidung des Obersten Gerichtshofes auszugehen.

7.      Aufgrund all dieser Erwägungen ist der Beschwerdeführer mit keiner seiner Grundrechtsrügen erfolgreich, sodass der vorliegenden Individualbeschwerde spruchgemäss keine Folge zu geben ist.

8.      Damit erweisen sich nunmehr aufgrund der Entscheidung in der Hauptsache auch die beiden Beschwerden des Beschwerdegegners vom 22. Oktober 2018 bzw. 12. Dezember 2018 gegen die beiden Beschlüsse des stellvertretenden Präsidenten betreffend die Anordnung von Provisorialmassnahmen vom 9. Oktober 2018 bzw. 27. November 2018 als gegenstandslos, sodass das gegenständliche Provisorialverfahren zu StGH 2018/111 unter sinngemässer Anwendung des Art. 42 Abs. 1 StGHG ohne Kostenzuspruch spruchgemäss          einzustellen          war          (StGH          2018/100,     Erw.     4 [www.gerichtsentscheide.li]; StGH 2017/126, Erw. 5; vgl. auch StGH 2006/15, Erw. 7 [www.gerichtsentscheide.li]).

9.      Dem obsiegenden Beschwerdegegner waren daher lediglich die Vertreterkosten für seine Gegenäusserung vom 12. November 2018 zur Individualbeschwerde antragsgemäss zuzusprechen.

Die vom Beschwerdeführer zu tragenden Gerichtskosten im Gesamtbetrag von CHF 4'825.00 setzen sich gemäss der gegenständlichen Bemessungsgrundlage aus dem Mehrbetrag von CHF 25.00 für den Zahlungsauftrag vom 17. September 2018 gemäss Art. 7 Abs. 2 GGG, aus der Pauschalgebühr für das gegenständliche Individualbeschwerdeverfahren in Höhe von CHF 4'000.00 (Art. 56 Abs. 1 StGHG i. V. m Art. 1 Abs. 1 Bst. b, Art. 35 Abs. 1 und Art. 30 Abs. 1 GGG) sowie aus der Pauschalgebühr für das Provisorialverfahren in Höhe von CHF 800.00 (Art. 56 Abs. 1 StGHG i. V. m Art. 1 Abs. 1 Bst. b, Art. 35 Abs. 2 und Art. 30 Abs. 1 GGG) zusammen. In den beiden Provisorialbeschlüssen vom 9. Oktober 2018 bzw. 27. November 2018 zu StGH 2018/111 wurde die Auferlegung der Gerichtskosten des Provisorialverfahrens gemäss ständiger Praxis des Staatsgerichtshofes vom Ausgang des Hauptverfahrens abhängig gemacht. Nachdem der Individualbeschwerde keine Folge gegeben wird, sind dem Beschwerdeführer nunmehr auch

diese Kosten aufzuerlegen. Diese Gerichtsgebühren im Gesamtbetrag von CHF 4'825.00 wurden vom Beschwerdeführer mit Valuta vom 21. September 2018 bzw. 16. Oktober 2018 bereits beglichen. Die vom Beschwerdeführer mit Valuta vom 21. September 2018 zu viel bezahlten Gerichtsgebühren von CHF 25.00 für das Provisorialverfahren sind ihm von der Landeskasse zurückzuerstatten.

**Dieses Urteil ist endgültig.**

Vaduz, den 29. Oktober 2019

Der ad-hoc-Vorsitzender:

lic. iur. Marco Ender

Für die Richtigkeit der Ausfertigung

Staatsgerichtshofkanzlei

**Ergeht an:**
- Vertreterin des Beschwerdeführers (+ 1 Kopie)
- Vertreterin des Beschwerdegegners (+ 1 Kopie)
- Vertreter der beteiligten Partei (+ 1 Kopie)
- Fürstlicher Oberster Gerichtshof, 1. Senat, Vaduz (+ 1 Kopie)
- Fürstliches Landgericht, Abteilung 8, Vaduz
- Fürstliche Regierung, Herrn Regierungssekretär lic. iur. Horst Schädler, in Kopie
- Gerichtsakt 08 EX.2016.5802, in Kopie