# EXHIBIT 6

Translation from German to English                            page **1** of **35**

Deadline: 28-10-2020 mL

Advocatur

30 Sept. 2020

Seeger, Frick & Partner

PRINCIPALITY OF LIECHTENSTEIN

# PRINCELY COURT OF APPEAL
# OF LIECHTENSTEIN (FÜRSTLICHES OBERGERICHT)

Please mention file no. in all submissions
08 EX.2016.5802
Ref. no. (ON) 143

# ORDER

The Princely Court of Appeal, 1st Senate has, through the presiding judge, Dr. Wilhelm Ungerank, LL.M. as well as the deputy assessor Dr. Heinz Bildstein and the judge of the Court of Appeal Mag. Linn Berger as further members of the senate in the

# Enforcement Matter

| | |
|---|---|
| **Enforcing Party**: | Vitaly Ivanovich Smagin, REDACTED Moscow |
| | represented by Advocatur Seeger, Frick & Partner AG, Landstrasse 81, 9494 Schaan |
| **Obligated Party:** | Ashot YEGIAZARYAN, REDACTED Beverly Hills, USA 90201 California |
| | represented by Schurti Partners, Rechtsanwälte AG, Zollstrasse 2, 9490 Vaduz |
| **Third-Party Debtor:** | CTX Treuhand AG as Trustee of the Alpha Trust, represented by Wilhelm & Büchel, 9490 Vaduz |
| **For:** | Enforcement pursuant to Art. 241 of the Enforcement Act (Exekutionsordnung; EO) (Amount in litigation: CHF 91,605,445.97) |

following the recourse ("Rekurs") of the Obligated Party of 23-03-2020 (ref. no. ON 117) against the order of the Princely Court of Liechtenstein of 02-03-2020 (ref. no. ON 109) in a non-public hearing on **15-09-2020** (telephone conference and email correspondence pursuant to Art. 6 Covid-19-VJBG) in the presence of the recording clerk Eva Marte

**decided**

as follows:

Page 2

**The recourse is <u>not</u> granted.**

**The costs for the response to the recourse (Rekursbeantwortung) are determined with CHF 83,160.00 as further costs of enforcement.**

## <u>Grounds:</u>

1.  In its decision of 21-11-2016, the court of first instance has - based on the enforceable arbitral award of the London Court of International Arbitration (LCIA), dated 11-11-2014 - allowed the Enforcing Party the enforcement against the Obligated Party to recover the enforceable claim of a. USD 72,2243,000.00 [sic] (as principal), b. USD 6,899,701.32 (as capitalised interests), c. GBP 2,776,473.68 and USD 672,354.08 and RUB 2,958,750.00 (as costs),d. further interests in the amount of a quarterly compounded annual interest rate of 8% calculated based on USD 72,243,000.00 and USD 6,899,701.32 since 11-11-2014 as well as e. the costs of the enforcement application, determined with CHF 63,880.00, by means of

    "1. <u>seizure </u>of the consolidated rights belonging to the Obligated Party as trustor, protector and beneficiary of the Alpha Trust (FL- 0002.510 .771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, 9490 Vaduz, vis-à-vis the

    CTX Treuhand Aktiengesellschaft as trustee of the Alpha Trust (FL-0002-510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, FL- 9490 Vaduz,

    in particular the right to receive payments and benefits of all kinds from the fiduciary object, the right to appoint and remove the trustees of the Alpha Trust (Art. (2) of the Written Instrument of 2 June 2015), the Trustee's right to terminate the Trust (Art. 3, 14.3 Declaration of Trust in conjunction with Art. (1) and (2) of the Written Instrument), the Trustee's right to appoint the

Page 3

beneficiaries of the Alpha Trust (Art. 8, 14.3 Declaration of Trust in conjunction with Art. (1) and (2) of the Written Instrument), the Trustee's right to amend the Trust Deeds of the Alpha Trust (Art. 12, 14.3 Declaration of Trust in conjunction with Art. (1) and (2) of the Written Instrument), the Trustee's right to delegate all the Trustee's rights, including his discretionary powers (Art. 11, 14.3 Declaration of Trust in conjunction with Art. (1) and (2) of the Written Instrument), the right of the Trustee to exercise all the rights set out in the First Schedule of the Declaration of Trust (Art. 11, 14.3 Declaration of Trust in conjunction with Art. (1) and (2) of the Written Instrument) and the rights as asset manager of the trust (Minutes of a Meeting of the Directors of CTX Treuhand AG of 3 June 2015).

2.  It is hereby ordered that the Obligated Party Ashot YEGIAZARYAN has to refrain from any disposal of the rights described above (1.).

3.  It is hereby ordered that the CTX Treuhand Aktiengesellschaft as trustee of the Alpha Trust (FL-0002-510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, FL-9490 Vaduz is prohibited to perform[1] out of the title of these claims or in the exercise of these rights (1. ) to the Obligated Party Ashot YEGIAZARYAN and/or a third party, in particular to follow instructions by the Obligated Party Ashot YEGIAZARYAN and/or to accept consents by the Obligated Party Ashot YEGIAZARYAN and to base its decisions on them.

4.  Excluded from this authorization of enforcement are the claims covered by the authorization of enforcement on receivables (*Forderungsexekutionsbewilligung*) of the Princely Court of 24 February 2016, 08 EX.2016 .839, ref. no. (ON) 4, namely the claims already seized, namely the monetary claims (*Geldforderungen*) and repayment claims (*Rückzahlungsansprüche*) to which the Obligated Party is entitled due to its legal position as beneficial owner, trustor, beneficiary and principal of the Alpha Trust or other fiduciary relationships against the Third-Party Debtors (i) CTX Treuhand AG as trustee of the Alpha Trust, (ii) Dr. Thomas Wilhelm and (iii) Nikolaus Wilhelm."

---

[1] Translator's Note: „Leisten" may be "perform" or "make payments".

Page 4

**2.**   With order dated 03-08-2017, the Princely Court of Appeal granted the recourses ("Rekurse") filed against this order by the Obligated Party and the Third-Party Debtor and modified the contested decisions dismissing the applications for enforcement.

**3.**   Against this order of the Court of Appeal (Obergericht), the Enforcing Party filed a recourse on points of law (Revisionsrekurs) to the Princely Supreme Court (Fürstlicher Oberster Gerichtshof) which the Supreme Court granted by order of 07-09-2018 and restored the order of the Princely Court (Landgericht).

**4.**   The Obligated Party and the Third-Party Debtor filed in each case an individual complaint (Individualbeschwerde) against this order of the Supreme Court with the Constitutional Court (Staatsgerichtshof). In its rulings of 29-10-2019, the Constitutional Court did not grant the individual complaints.

**5.**   In a written submission dated 24-07-2017, substantiated by a written submission dated 11-02-2020, the Enforcing Party filed the application for realization and argued, in summary, that the enforcement in question would aim at taking out assets from the Alpha Trust, whereupon the Enforcing Party could then have access to these assets by way of enforcement. Pursuant to Article 244 para. 1 of the Enforcement Act (EO), the enforcing creditor was therefore to be authorized to perform the necessary legal acts on behalf of the Obligated Party. It was not necessary that the exercise of individual powers of the Obligated Party made an asset directly usable[2], as long as and to the extent that the concrete exercise - even if indirectly - was aimed at subjecting assets of the Obligated Party to enforcement.

As a possible type of realization, the Enforcing Party should in particular be authorized – instead of the Obligated Party and vis-à-vis the Alpha Trust- to

---

[2] Translator's Note: The German phrase says: "dass die Ausübung einzelner Befugnisse des Verpflichteten unmittelbar einen Vermögenswert nutzbar mache". There seems to be a grammatical error (einen Vermögenswert nutzbar machen).

Page 5

request the removal of the previous trustees of the Alpha Trust and the appointment of a person designated by the Enforcing Party as trustee of the Alpha Trust and then to request the trustee of the Alpha Trust designated by the Enforcing Party to distribute the amount of CHF 91,595,445. 97 plus costs and interests to the Obligated Party to a paying agent to be determined by the Enforcing Party and to consent to this distribution and its execution in its position as protector and beneficiary in place of the Obligated Party.

**6.**   The Obligated Party requested the application for realization to be rejected, or in eventu the dismissal of the application for realization. The Enforcing Party had failed to explain to what extent the consolidated rights of the Obligated Party or individual rights thereof would be subject to realization. The Enforcing Party had not fulfilled its obligation to provide substantiation and the application for realization had to be rejected for this reason alone.

Even if the application for realization were formally admissible, it would have to be dismissed as regards its contents, since there would be no realizability of the consolidated rights of the Obligated Party or of individual rights visibly resulting therefrom.

The beneficiaries of the Alpha Trust would all be discretionary beneficiaries. There would therefore be no reason why the Obligated Party in particular should receive a sum of more than USD 80 million as distribution from the trust assets.

Furthermore, any pecuniary claims of the Obligated Party against the Alpha Trust arising from its position as trustor and beneficiary would have already been seized in the proceedings under 08 EX.2016.839. The rights of the Obligated Party against the Alpha Trust arising from its position as protector would only be rights to consent and not rights of asset value. Therefore, the Enforcing Party simply could not obtain any money.

Page 6

Since the Obligated Party had reserved neither a right of revocation (*Widerrufsrecht*) nor a right to amend (*Änderungsrecht*), the consolidated rights would not be subject to realization. In accordance with the principle of gradual enforcement (*Grundsatz der stufenweisen Zwangsausübung*), the Enforcing Party would first of all also have had to realize the pecuniary claims and claims for payment to which the Obligated Party was entitled as the beneficial owner, trustor, beneficiary and principal of the Alpha Trust with regard to the seizure effected under 08 EX.2016.839 before it could seize further rights.

Apart from that, the realization was not proportionate. First of all, a realization should have been carried out with regard to the seizure that took place under 08 EX.2016.839. On the other hand, the realization proposals made by the Enforcing Party would interfere disproportionately with the nature of the Alpha Trust. Finally, the Enforcing Party would avoid the rescission proceedings and the reduction of the rights of the Obligated Party as party, as a consequence of which the application for realization would have to be dismissed.

7.    The Third-Party Debtor argued that the application for realization should be dismissed because the seized rights were not realizable. The realization of the rights of removal and appointment by the Enforcing Party would also be an inadmissible interference because, among other things, it would be a disproportionate interference with the nature and the organisational constitution of the trust. The seized rights would not grant access to the trust assets. It would therefore not be possible for the Enforcing Party to obtain satisfaction through the seized rights.

Page 7

**8.1.** With the order, which is now being contested, the court of first instance has decided upon application of the Enforcing Party as follows:

"1.1. The REALIZATION of the consolidated rights (*Gesamtrechte*) seized by authorization of enforcement (*Exekutionsbewilligung*) of the Princely Court (Fürstliches Landgericht) dated 21 November 2016, 08 EX.2016.5802, ref. no. (ON) 3 of the Obligated Party as Trustor, Protector and Beneficiary of the Alpha Trust (FL-0002-510.771-1), c/o Dr. iur. Thomas Wilhelm, Lova Center, FL-9490 Vaduz existing vis-à-vis the CTX Treuhand Aktiengesellschaft as Trustee of the Alpha Trust (FL-0002-510.771-1), c/o Dr. iur. Thomas Wilhelm, Lova Center, FL-9490 Vaduz, namely in particular the right to receive payments and contributions of any kind whatsoever from the fiduciary Object *(Treugut)*, the right to appoint and remove the Trustees of the Alpha Trust (Art. (2) *Written Instrument* dated 2 June 2015), the right of the Trustee to terminate the trust (Art. 3, 14.3 *Declaration of Trust* in connection with Art. (1) and (2) of the *Written Instrument*), the right of the Trustee to appoint the Beneficiaries of the Alpha Trust (Art. 8, 14.3. *Declaration of Trust* in connection with Art. (1) and (2) of the *Written Instrument*), the right of the Trustee to amend the trust deeds of the Alpha Trust (Art. 12, 14.3. *Declaration of Trust* in connection with Art. (1) and (2) of the *Written Instrument*), the right of the Trustee to delegate all rights of the Trustee, including its discretionary powers (Art. 11, 14.3. *Declaration of Trust* in connection with Art. (1) and (2) of the *Written Instrument*) and the right of the Trustee to exercise all rights set forth in the *First Schedule* of the *Declaration of Trust* (Art. 11, 14.3. *Declaration of Trust* in connection wit Art (1) and (2) of the *Written Instrument*) shall be allowed, namely by authorization of the Enforcing Party to claim the above-mentioned rights of the Obligated Party instead of the Obligated Party, namely in particular

a) Removal of CTX:

The right to remove with immediate effect the previous trustee of the Alpha Trust, CTX Treuhand AG, Lova-Center, 9490 Vaduz, in place of the Obligated Party pursuant to Art. 14.05 of the Trust Deed of the Alpha Trust as amended by the *Written Instrument of 02-06-2015*.

Page 8

b)  Nomination of new trustees:

To nominate and appoint new trustees of the Alpha Trust in accordance with Article 10.1. of the Trust Deed

- be it is the Enforcing Party,

- be it the attorneys at law Mag.iur. Rudolf Schächle and lic. iur. Raphael Näscher or

- be it other natural persons designated by the Enforcing Party or a trust company domiciled on the national territory or abroad.

c)  To claim and approve of distribution to Yegiazarian:

-  To demand and request the distribution of the claim which is the subject of the proceedings and which is enforceable in the amount of CHF 91,595,445.97 (08 EX.2016.5802, ref. no (ON) 3) plus interests (namely quarterly compounded annual interest rate of 8% calculated on the basis of USD 72,243,000.00 and USD 6,899,701.32 since 15 November 2016) and costs to the Obligated Party to a paying agent to be designated by the Enforcing Party,

from the current or newly appointed trustee of the Alpha Trust in place of the Obligated Party on the basis of the Letter of Wishes of the Obligated Party dated 03-07-2015 and the Trust Deed of the Alpha Trust as amended by the Written Instrument dated 02-06-2015 as well as on the basis of its actually existing right of instruction vis-à-vis the trustee of the Alpha Trust and

-  To consent instead of the Obligated Party to this distribution and its execution (including the paying agent designated by the Enforcing Party) in its position as protector (within the meaning of Art. 14.4 in conjunction with Art. 8.1.2 of the Trust Deed of the Alpha Trust of 27-05-2015 as amended by the Written Instrument of 02-06-2015) and beneficiary (within the meaning of Art. 1.1.2 and the Third Schedule of the Trust Deed of the Alpha Trust of 27-05-2015).

d)  To exercise rights arising under the Agreement on the Letter of Wishes:

To demand and request:

## Page 9

- the appointment of the Enforcing Party as beneficiary of the Alpha Trust,
- the distribution of the enforceable claim which is the subject of the proceedings in the amount of CHF 91,595,445.97 (08 EX.2016.5802, ON 3) plus interests (namely quarterly compounded annual interest rate of 8% calculated on the basis of USD 72,243,000.00 and USD 6,899,701.32 since 15 November 2016) and costs to the Enforcing Party (in its capacity as appointed beneficiary),

from the current or newly appointed trustee of Alpha Trust in place of the Obligated Party on the basis of the rights of the Obligated Party pursuant to the Agreement on the Letter of Wishes of 03-07-2015, as well as

- to consent instead of the Obligated Party to this distribution and its execution (including the paying agent designated by the Enforcing Party) in its position as protector (within the meaning of Art. 14.4 in connection with Art. 8.1.2 of the Trust Deed of the Alpha Trust of 27-05-2015 as amended by the Written Instrument of 02-06-2015) and beneficiary (within the meaning of Art. 1.1.2 and the Third Schedule of the Trust Deed of the Alpha Trust dated 27-05-2015).

d) [sic] To Exercise Administrative Rights of the Protector for Execution:

To consent - on the basis of the Deed of the Alpha Trust  as amended by the Written Instrument of 02-06-2015 and instead of the Obligated Party - to the actions of the trustee in accordance with points 4, 11, 16.2 and the First Schedule of the Trust Deed as well as to exercise all information rights of the Obligated Party vis-à-vis the trustee.

1.2.   The seizure (Pfändung) of the pecuniary claims and claims for payment to which the Obligated Party is entitled against the Alpha Trust or, respectively, its fiduciary agent on the basis of the realization in question pursuant to clause 1.1, in particular distribution claims in the amount of CHF 91,595,445.97, and the transfer (*Überweisung)* of these seized claims for collection *(Einziehung)* up to the amount of the enforceable claim, without prejudice to any previously acquired rights of third parties, shall be approved.

The Third-Party Debtor shall be prohibited from making payment to the Obligated Party. The latter shall be prohibited from any disposal of the seized claim as well as of the pledge created for it, in particular the total or partial

Page 10

Collection of this claim. Upon notification of this payment prohibition to the Third-Party Debtor, the approved seizure is considered to be effected, and a lien is acquired in favour of the enforceable claim of the Enforcing Party regarding the above-mentioned claim.

2.   The further enforcement costs of the Enforcing Party are determined with CHF 83,297.75."

## 8.2.  The court of first instance took the following facts as a basis:

"The Alpha Trust is a trust established under Liechtenstein law on 27 May 2015. The Trust has been registered in the Liechtenstein Commercial Register under registration number FL-0002.510.771-1 since 30 November 2015. CTX Treuhand AG acts as sole trustee.

(Enclosure A8)

CTX Treuhand AG is a stock corporation established under Liechtenstein law with its registered office in 9490 Vaduz, Lova-Center. It has been registered under the registration number FL-0002.042.435-5 in the Liechtenstein Commercial Register on 27 November 2001 and is (inter alia) represented by members of the Board of Directors Dr. Thomas Wilhelm and lic.iur. Martin Hörnig. Nikolaus Wilhelm is an authorized signatory (*Prokurist*) with collective right to sign in pairs

  (Enclosure A9)

The trust agreement of the Alpha Trust, the "*Declaration of Trust*" of 27 May 2015, has, inter alia, the following contents:

THIS DECLARATION OF TRUST was made on 27 May two thousand and fifteen


BY


CTX Treuhand AG ("Trustee", the term including - if the context permits it – the respective Trustee or the Trustees existing for the Trust in question)

PREREQUISITES

i.      The Trustees confirm that they have received the assets listed in the second Annex, to hold them in trust under the following conditions.

Page 11

ii.      This Trust is irrevocably established.

iii.     This Trust is called "ALPHA TRUST".

*THIS* DEED ATTESTS the following:

1. Definitions

(...)

1.1.2. "The beneficiaries" are and include the persons mentioned or described in the third Annex;

(...)

3. Termination of the Trust Relationship

  The Trustees have the power to fix a date (which may not be earlier than the date of issuance of this Deed) in the framework of a deed which is to be regarded as the end of the trust relationship.

4.       Sale of Trust Assets

  The Trustees will manage the Trust Assets in trust with respect to investments or property (other than cash) at their sole discretion in order to sell, collect or convert into cash all or part of such investments or property, subject however to the possibility of *deferring* such sale, collection or conversion *and* granting the possibility that these investments will be maintained and the money will be managed in trust, having equal discretion to invest the money or property in their name or under their control in a manner authorized by this Trust or by law, and the authority to alter or exchange such investments for other permitted ones as they deem appropriate in their sole discretion.

5.       Trust of Income and Capital

5.1.     The Trustees shall administer the capital and income of the Trust Assets in trust for the benefit of all, one or more beneficiaries, one or more other beneficiaries possibly being excluded, in the form of shares or in a certain proportion if more than one beneficiary is provided for, with and on the basis of powers and provisions for their maintenance, training, further development or other benefits or for the purpose of accumulating income (including administrative powers and regulations or discretionary trusts and powers to be performed or exercised by one or more persons whether or not they act as Trustees or whether or not the Trustees or a Trustee is/are included) so that the exercise of this power to designate beneficiaries may be delegated to a certain extent and in a manner which the Trustees may designate by one or more deeds which may be revoked during the trust period or which are irrevocable and are exercised during the trust period; PROVIDED, however, that the exercise

## Page 12

of such power shall not invalidate any prior payment or use of all of the capital or income, or of any part of the capital or income from the Trust Assets, made under any authority conferred by such deed or by law.

5.2.     Up to, subject to or in the absence of any provision under clause 5.1.

5.2.1.   the Trustees shall pay the income of the Trust Assets to, or use it for the benefit of, all, a particular Beneficiary or several Beneficiaries, the other or others possibly being excluded, if any, at the relevant time and - where there are several Beneficiaries - in such proportions and in such a manner as the Trustees, in their sole discretion, may deem appropriate from time to time.

5.2.2.   Notwithstanding the provisions of clause 5.2.1. the Trustees may, at one or more dates during the term of the Trust, in their sole discretion, accumulate the income by way of accrual rather than use it in whole or in part by investing or otherwise using the income or" [sic] the income derived therefrom, each in such manner as may be permitted by this Deed or by law; on the basis of clause 5.2.3. they shall manage such accumulations of capital as capital appreciation.

5.2.3.   The Trustees, may, at one or more dates during the term of the Trust, use all or part of the income accrued under clause 5.2.2. as if it was income accrued in the relevant year.

Page 13

5.2.4.   Notwithstanding the Trustees' powers of attorney and provisions set out and contained in this clause, the Trustees may

5.2.4.1       at any time during the term of the Trust, pay the capital of the Trust Assets in whole or in part to all, one beneficiary or more Beneficiaries under the exclusion of other beneficiaries or to use it for the benefit of such beneficiary/beneficiaries; in the case of more beneficiaries providing for appropriate shares and making payment(s) or using such in such a manner as the Trustees, in their sole discretion, may deem appropriate.

5.2.4.2.      pay income or capital from the Trust Assets to the Trustees of another trust or transfer such, irrespective of the place of establishment, in which one or more beneficiaries are involved (whether all beneficiaries or one or more beneficiaries are the only persons involved in that other trust or are eligible as usufructuaries), where the Trustees, in their sole discretion, consider that all, one or more beneficiaries should benefit from such payment or transfer.

5.3       In the event of failure to exercise the aforesaid powers granted to the Trustees by the preceding sub-clauses, and subject to the exercise of these powers, the Trustees may, upon the expiration of the term of the Trust, dispose of the Trust Assets FIDUCIALLY, the beneficiaries living at that time receiving absolutely equal shares.

5.4       On the basis of the foregoing, and if and to the extent that capital and income of the Trust Assets are not disposed of in their entirety for any reason whatsoever according to the foregoing provisions, capital and income of the Trust Assets shall be managed in trust for the Red Cross and Amnesty International, and in the event of failure of this Trust for charitable purposes in general.

(…)

## Page 14

**8.**     Power to add and exclude Beneficiaries

8.1     The Trustees may at any time during the term of the Trust declare in writing that

8.1.1.   a person, group or description of persons is no longer a beneficiary, so that such person, group or description of persons is no longer a beneficiary afterwards as if that beneficiary had initially been expressly excluded as a beneficiary, but without prejudice to previous payments of capital or income to such beneficiary/beneficiaries.

8.1.2.   any person, group or description of persons designated by the Trustees shall henceforth be a beneficiary; PROVIDED that any addition of beneficiaries shall not affect, alter or influence the provision already made for the use of capital or income.

(... )

10.     Change of trustees

10.1    This Trust must have at least two Trustees or a trust company and a maximum of five Trustees.

10.2    Where more than one Trustee is appointed, all Trustees must act unanimously. The Trustees shall, however, have the right to delegate all business transactions, the exercise of powers of attorney and discretionary powers to one or more of their Co-Trustees; provided that they consider such delegation to be advisable at their own discretion.

10.3.   A Trustee who wishes to resign and/or be removed from the trust relationship may send a written notice to the Co-Trustees (if any), and to the person(s) authorized to appoint new Trustees, and shall be dismissed one month after such notice has been sent, or at an earlier date if the person(s) entitled to appoint new Trustees pursuant to the provisions of this clause 10 give(s) its/their written consent, PROVIDED that such dismissal shall not take effect until at least one Trustee is in place after the dismissal.

10.4    If a Trustee wishes to resign and be dismissed from all trust relationships, or refuses

Page 15

to act, or becomes incapable of acting, or ceases to be legally competent, or dies, or if a company acting as a Trustee is dissolved, then

10.4.1.   the protector or if he is deceased (or in case of a company, if the company is being wound up) or if he is unable or unwilling to act;

10.4.2.   the beneficiaries (*other than* charity organizations), if they have legal capacity and have a majority vote, or if they are unable or unwilling to act;

10.4.3.   the Trustees respectively in office or if there are no Trustees;

10.4.4   the Liechtenstein Princely Court of Vaduz, by written instrument, appoint(s) one or more persons, whether resident at the Trust's administrative seat or elsewhere, to act as Trustees at the place of the deceased or dissolved Trustee or of the Trustee who wishes to be dismissed, refuses to act or is incapable or no longer legally competent to act, as stated above.

10.5.   The person entitled to appoint new Trustees according to subparagraphs 10.4.1. and 10.4.2. may appoint one or more persons as further Trustees in the same order as described above until the maximum permissible number is reached.

10.6.   A Trustee may reside anywhere in the world.

10.7.   The person entitled to appoint additional Trustees may at any time and without cause remove one or more Trustees by service of a notice in writing.

11.   Power to Delegate

3.11.1. [sic] A Trustee shall have the power (notwithstanding any statutory provisions to the contrary), by a deed which may be revoked during the term of the Trust or which is irrevocable, to delegate to a person the execution or exercise of all the fiduciary powers and discretionary powers which are hereby conferred upon the Trustee or by law.

Page 16

12.      Power to Amend or to Revoke

12.1     The Trustees may at any time, at their discretion, amend any of the provisions of this deed, but the exercise of such power shall not have the effect of a revocation of this Trust.

13.      Other Powers

13.1     The Trustees shall, in addition to and without prejudice to any statutory powers, have the powers of attorney and immunities defined in the first Annex, provided that the Trustees shall not exercise any of the powers in such a way as to conflict with the provisions of this Trust that are in relation with the benefits.

14.      The Protector

3.14.1 [sic] The Protector may have its place of residence or, in the case of a company, its registered office anywhere in the world.

3.14.2 [sic] The First Protector is Ashot Egiazaryan.

3.14.3 [sic] The Protector may delegate or transfer its powers, rights and/or duties for a fixed period of time or permanently at any time by written deed to any person or persons and on such terms and conditions as it deems appropriate, provided always that such transfer shall not take effect until the Trustees have been notified thereof in writing.

14.3.1   If such delegation fails or there is no Protector or if a Protector dies (or, in the case of a Company, is dissolved) or is unable or unwilling to act *without having* validly delegated its powers, rights and/or duties, then

14.3.1.1.      the beneficiaries (except in the case of charitable organisations), who have legal capacity and majority voting rights or if they are incapable or unwilling to act, appoint;

14.3.1.2.      the Liechtenstein Princely Court in Vaduz appoints a Protector within 90 days.

3.14.4. [sic]The written consent of the Protector shall be required for the exercise by the Trustees of the powers and rights under clauses 2.4, 2.5.1, 3.5, 8, 11, 12, 16.2, 16.3 and clause 11 of the first Annex.

(...)

Page 17

16.      Accountability and Information

16.1     The Trustees[3] shall keep full and accurate records of all transactions relating to the Trust Assets.

16.2     The records shall be available for inspection by the beneficiaries or their legal or duly authorized representatives within a reasonable period of time. Notwithstanding the foregoing, the Trustees are not required to inform a beneficiary of any other beneficiary to whom they have transferred capital or income from the Trust Assets or to whom they have made a payment from the capital or income of the Trust Assets, nor are they required to state reasons for the exercise or non-exercise or the manner in which they exercise their powers, rights and discretionary powers under the Trust

16.3     The Trustees may, at their own discretion, appoint a control authority under Art. 923 of the Persons' and Companies' Act (PGR), in which case the control authority shall be the only person to receive the above-mentioned information.

(... )


THIRD ANNEX

1.                  Ashot Egiazaryan

2. A person or persons respectively designated by the Trustees as further beneficiaries.

(Enclosure A10)

This trust agreement would be supplemented through the "*Written Instrument*" of 2 June 2015, which was concluded between the Trustee CTX on the one hand and the Obligated Party in its capacity as Protector of the Alpha Trust and signed by the Obligated Party. Among other things, it has the following contents:


(1)      In exercise of the powers set forth in clause 12 of the principal deed, the Trustee hereby amends the following Articles of the principal deed:


(A)      Article 14.4 now reads as follows: "The prior written consent of the Protector shall be required when the Trustees exercise their powers and rights under clauses 2.4,

---

[3] Translator's note: Due to a spelling error in the German text, it says "De Treuhänder führen"; since the verb is in plural, it probably should say "Die Treuhänder führen".

## Page 18

2.5.1, 3, 5, 8, 11, 12, 16.2, 16.3 and the powers set forth in the First Annex."

(B)    In Article 14, the following clause is added:

"14.05. The Protector has the power to dismiss and appoint Trustees by written instructions."

[Enclosure A11]

The Letter of Wishes of 27 May 2015 signed by the Obligated Party has the following contents:

LETTER OF WISHES OF MR. ASHOT EGIAZARYAN

To:    The Trustees of the ALPHA TRUST, established on 27 May 2015

1.     You are the Trustees of the ALPHA Trust, established on 27 May 2015.

2      I am writing this Letter of Wishes to inform you of my wishes regarding the administration of the Trust Assets both during my lifetime and also after my death. With regard to the ALPHA Trust, this is my first Letter of Wishes. I reserve the right to revoke or amend the wishes at any time. The information contained herein does not release you from the need to seek the consent of the Protector whenever required according to the Trust Deed.

It is my wish that you include me in the circle of possible beneficiaries of the Trust and that you provide me with income and capital respectively upon my request.

Furthermore, it is my wish that you accept

into the circle of possible beneficiaries of the Trust.

4.     For the time after my death, my wishes are the following:

A.     Should there be an outstanding balance which I owe from the time before establishment of the Trust and which can be legally determined to be owed to _____ and to_____. it is my wish that you will first settle this before the discretionary beneficiaries benefit from the Trust Assets.

B.     The Trust Assets are to be held in favour of _____.

4. [sic] I am aware that you are not legally bound to comply with my wishes as set out above, but I hope that you will take my wishes into account when exercising your power of discretion in the framework of the trust relationship.

Page 19

3 July 2015
(Enclosure H)


In an e-mail dated 1 July 2015, Nikolaus Wilhelm had sent the (new) draft of the Letter of Wishes to the Obligated Party, stating the following:


"Enclosed you will find a new draft for your Letter of Wishes.

As it is now drafted, you are the primary beneficiary of the Trust. This means that you will have access to the trust funds during your lifetime. If you have a creditor and want to pay, you can apply for a distribution to yourself so that you can pay the creditor. You don't have to name the creditors in the Letter of Wishes."


(Enclosure G)


In the internal form of the Third-Party Debtor, which has been countersigned by the Obligated Party, concerning the mandate "The Alpha Trust" (form "Discretionary Trust"), the Obligated Party is indicated under point IV. ("Information on curators/protectors and persons entitled to give instructions").

(Enclosure I)"

8.3.   From a legal point of view, the court of first instance held that the realization of the rights already seized in the sense of Art. 244 of the Enforcement Act (EO) required a two-stage procedure. In the present case, therefore, the realization had to take place - as applied for - by authorizing the Enforcing Party to assert the sized rights on behalf of the Obligated Party and to perform the necessary legal acts on behalf of the Obligated Party. In doing so, the court needed not, in principle, enumerate individual legal acts that may be taken into consideration. It was sufficient if - as applied for in the present case - the enforcing creditor – indicating the seized proprietary right -  was authorized to exercise the rights to which the Obligated Party was entitled or, respectively, to carry out the necessary acts regarding the consolidated rights on behalf of the Obligated Party that were seized with the enforcement authorization in question. In the present case, pursuant to Art. 244 para. 2 of the Enforcement Act (EO), the

Page 20

Enforcing Party had applied for the enforcement on the assets used in the manner of para. 2 leg.cit.). The application for realization was therefore to be completely granted in full.  All of the potestative rights and legal acts of the Obligated Party specified by the Enforcing Party, which the Enforcing Party was to be authorized to exercise, could all be transferred and were at least indirectly relevant in terms of assets under property law. The exercise of the individual rights mentioned in the award was in any case suitable for realizing realizable assets: By means of the authorization, the Enforcing Party might on the one hand, instead of the Obligated Party vis-à-vis the Alpha Trust, request the removal of the previous trustee of the Alpha Trust (CTX) and the appointment of a person designated by the Enforcing Party as trustee of the Alpha Trust and on the other hand then request a distribution – the distribution of the amount owed - from the trustee of the Alpha Trust (designated by the Enforcing Party) to the Obligated Party to a paying agent to be designated by the Enforcing Party. Furthermore, the Enforcing Party may instead of the Obligated Party (in its position as protector and beneficiary) agree to this distribution and its execution. Also the alternative applied for by the Enforcing Party in eventu, namely to authorize the Enforcing Party - on the basis of the Letter of Wishes - to request and approve a distribution directly to the beneficiary, undoubtedly constituted a right of asset value, especially since the Enforcing Party had access to this distribution under Art. 244 para. 2 of the Enforcement Act (EO). Finally, the exercise of the rights under the Letter of Wishes was also realizable and enabled the Enforcing Party to access realizable assets.

The objections of the Obligated Party and the Third-Party Debtor would to a large extent repeat the pleadings set out in the writs of legal remedies, which was of no longer relevance in the present realization proceedings and regarding which the Supreme Court and the Constitutional Court had already made a number of final and conclusive

Page 21

statements regarding which they had already made a final decision, so that there was no need to go into it further.

The application for realization had been filed in good time, was sufficiently substantiated and was undoubtedly admissible.

The seized consolidated rights were realizable, as also were the individual potestative rights and acts to which the Enforcing Party was to be authorized. Even an actual discretionary benefit would not prevent the realization of the seized rights, as the Supreme Court had also already pointed out.

If the Trust Deed and the Letter of Wishes were read in conjunction, one could arrive at no other conclusion than that the Obligated Party wanted to secure control of the Trust Assets.

To the extent that the Obligated Party referred to the "principle of proportionality" (*Verhältnismässigkeitsprinzip*), reference had to be made to Article 9 of the Enforcement Act (EO), where this principle had become the wording of the law. Accordingly, the simultaneous use of several means of enforcement was permitted.

In the case of Art. 242 para. 2 of the Enforcement Act (EO), the law only provided for an interrogation, but not for an oral hearing. The court had ordered the interrogation in writing and the Obligated Party had also submitted a written statement in accordance with the court order and was thus to be considered as "interrogated" in the sense of Art. 242 para. 2 in conjunction with Art. 34 of the Enforcement Act (EO).

9.    A recourse is lodged by the Obligated Party against this decision within the time limit applying to set the order aside on the grounds of invalidity due to lack of national jurisdiction and to declare the proceedings null and void, or, if necessary, to amend the contested order in such a way that the

Page 22

application of the Enforcing Party of 24-07-2017 is rejected in its entirety; in eventu, an application for setting aside is filed.

10.  In its response to the recourse ("Rekursbeantwortung"), which was also submitted in due time, the Enforcing Party requests the recourse of the Obligated Party to be disallowed.

11.  The recourse is not justified.

12.  The grounds of recourse brought forward are incorrect legal assessment, defectiveness of the proceedings and nullity.

13.  In his <u>objection on a point of law</u> ("Rechtsrüge"), the Appellant submits, in summary, that the contested order covered rights of third parties, namely of the trustee which is why the decision was therefore unlawful; that the rights covered by the order, in so far as they were vested in the Obligated Party, could not be realized; that, as a result, reach-through liability ("Haftungsdurchgriff") was asserted against a third party not involved in the enforcement proceedings without giving that third party the opportunity to defend itself in ordinary civil proceedings and, finally, that the contested order was grossly excessive and thus disproportionate.

13.1  Before going into the details of the case, it should be noted that the authorization of enforcement, which ordered the seizure of the consolidated rights of the Obligated Party as settlor, protector and beneficiary of the Alpha Trust, has become legally binding, so that at this stage of the proceedings only the question of the enforceability of the seized rights is of importance and must therefore be dealt with.

Page 23

Article 242 et seqq. of the Enforcement Act (EO) regulates the enforcement on property rights which are not part of the claims. In these cases, the court has, upon application of the creditor enforcing the claim, to issue an order to the Obligated Party to refrain from any disposal of the right (seizure). Pursuant to Art. 242 para. 2 of the Enforcement Act (EO), the manner in which the right is realized is to be determined by the court upon application of the creditor enforcing the claim after having heard the Obligated Party and all creditors in whose favour the seizure was effected. These provisions in the Enforcement Act (EO) (Art. 242 et seqq of the Enforcement Act, EO) correspond to the Austrian model for legal reception in sections 331 et seqq of the Austrian Enforcement Act. Austrian literature and judicature can therefore be used to assess the legal issues in question.

According to Austrian case law (3 Ob 177/10s with further sources), indirect realizability is sufficient for the suitability of an object of enforcement under sections 331 et seqq of the Austrian Enforcement Act (Art. 242 et seqq of the Enforcement Act; EO). For those cases in which the seized property right itself does not yet represent an asset, sec. 333 of the Austrian Enforcement Act (Art. 244 of the Enforcement Act, EO) regulates a two-stage realization procedure. Thereby, the rights of the enforcing creditor are determined by the extent of the rights of the Obligated Party and are identical with them. The Enforcing Party must be granted the judicial authorization to exercise the rights of the Obligated Party instead of the Obligated Party in order to be able to draw on conceivable proceeds.

The Princely Supreme Court has already commented on the seizure of the Obligated Party's  consolidated rights and the lack of specification of the rights by the Enforcing Party, as claimed by the Appellant in this context, in its decision of 07-09-2018 (point 7.4.6) and summarised the situation regarding indirect realizability:

The realization acts mentioned by the law in Art. 243 et seqq of the Enforcement Act (EO) do not have to be described in detail in the application for enforcement. For a seizure under the provisions of Art. 242 of the Enforcement Act (EO), it is

Page 24

sufficient if the seized consolidated right in turn allows access to a realizable asset. The application is only to be dismissed if the non-realizability of the right is obvious from the file.

The Princely Supreme Court did not assume such a non-realizability in this case and explained in the grounds that the enforcing creditor had demonstrated in detail that a realizable asset can be seized or, respectively, realized by means of the consolidated right to be seized and that there was indeed no reason to assume an "obvious" non-realizability. Solely due to the legal position of the Obligated Party as settlor asserted by the Enforcing Party the possibility of the Obligated Party to create claims with asset value against the trustee is given according to general principles. The enforcement pursuant to Art. 242 of the Austrian Enforcement Act (EO) did not require the seizing right to be directly realized, but "indirect realizability" was sufficient. In the present case - according to the Supreme Court - it was only a matter of the Enforcing Party being able to exercise the individual rights contained in the consolidated rights instead of the Obligated Party. It was not apparent what obstacles under enforcement law should prevent this. Apart from this, an enforcement on other property rights did not involve a transfer of the potestative rights to third parties, but it was rather about the judicial authorization of the enforcing creditor to exercise the rights of the Obligated Party in the enforcement proceedings in place of the Obligated Party in order to be able to use the proceeds from the individual right to be liquidated, even if only indirectly (point 7.5.4 of the quoted decision of the Princely Supreme Court).

Page 25

**13.2**   Regarding the details of the statements made in the recourse on points of law ("Rechtsrüge").

**13.2.1** The Appellant brings forward that the rights of third parties - and not those of the Obligated Party - were being realized.

In this respect, reference can be made in advance and once again to the statements made by the Princely Supreme Court in its decision of 07-09-2018, according to which the seizure of the consolidated rights to which the <u>Obligated Party</u> is entitled as settlor, protector and beneficiary – insofar as a lacking realizability of an individual application for realization does not turn out (in which case the realization proceedings would have to be discontinued) - is given. In its decision of 29-10-2019, the Constitutional Court also affirmed the seizability of the consolidated rights to which the Obligated Party is entitled and took the view that these would be seizable and realizable rights of third parties.

In the recourse, the following "rights" mentioned in the order are listed, which in the opinion of the Obligated Party would not be its rights but the rights of third parties:

- the trustee's right to terminate the Alpha Trust
- right of the trustee to appoint the beneficiaries of the Alpha Trust
- the the trustee's right to amend the Alpha Trust's trust deeds
- the trustee's right to delegate all the trustee's rights, including his/her discretionary powers; and
- the right of the trustee to exercise all the rights set out in the First Schedule of the Declaration of Trust

Page 26

In this context, it should be noted that according to the content of the Trust Agreement of the Alpha Trust dated 27-05-2015 and the supplement thereto of 02-06-2015 the consent of the Protector - the Obligated Party- to exercise the powers and rights of the Trustee in accordance with the individually listed clauses of the Trust Agreement is expressly required. Thus, the Trust Agreement mentions the termination of the trust relationship (clause 3), the power to add and exclude beneficiaries (clause 8), the power to delegate (clause 11) as well as the power to amend or revoke the Trust Agreement (clause 12). In the supplement to the Trust Agreement of 02-06-2015, the clause was added that the Protector also has the power to dismiss and appoint trustees by written instructions.

There can therefore be no doubt that the Obligated Party has the dominant role in the Alpha Trust and that he has at least indirect access to the realization of the assets of the Alpha Trust.

The rights to which the Obligated Party is entitled do not have to be directly realizable. He only has to be given access to realizable assets, such as the rights set out in the law, for example, namely to request the division or the initiation of repartition proceedings, to give notice of termination and to make the declarations otherwise required for the exercise and utilization of the seized right effectively on behalf of the Obligated Party.

The rights covered by the application for realization of the Enforcing Party, in respect of which the court of first instance has approved the realization and granted

Page 27

a corresponding authorization to assert same, are those which - at least indirectly - the Obligated Party is entitled to, so that the objection in this respect that these would be unseizable and non-realizable rights of third parties is not justified.

Since the rights referred to in the award of the contested decision are ("in particular")- at least indirectly - rights of the Obligated Party as protector, the mention of them in the award of the order is not unlawful.

**13.2.2.** Furthermore, the Appellant brings forward - as already in the seizure proceedings - that there is a lack of realizability of the (already legally binding) seized rights.

With regard to the realizability of rights and in order to avoid unnecessary repetitions, reference can be made for the time being to the already cited remarks of the Princely Supreme Court in its decision of 07-09-2018 under point 7.5., which in principle are also shared by the Constitutional Court in its judgements of 29-10-2019 (ref. no. ON 94 and 95).

In addition, the following is to be noted:

First of all, it must be assumed that it was not the seizure of individual potestative rights of the Obligated Party that was approved, but the seizure of the consolidated rights to which the Obligated Party is entitled as settlor, protector and beneficiary of the Alpha Trust. The individual rights listed by way of example in the now contested order correspond exactly to those which were also listed ("in particular") in the legally binding seizure of the consolidated rights. When assessing the realizability of the rights in the decision of 07-09-2018, which has already been cited several times, the Princely Supreme Court did not conclude - based on the situation of the file – that unrealizability was

Page 28

given, but rather affirmed at least the indirect realizability of the seized rights.

The fact that the circumstances had changed in the meantime in such a way that the rights listed in the order, which the Enforcing Party was now authorised to realize instead of the Obligated Party, would no longer be realizable, is not clear to the Court of recourse ("Rekursgericht") and is not shown in the recourse.

The realization of property rights within the meaning of Art. 242 et seqq of the Enforcement Act (EO) may be impossible for legal reasons, for example because the rights are strictly personal and could therefore not be transferred to another party. But even if the right as such could not be transferred, seizure is admissible if exercising the right can at least be transferred (cf. 3 Ob 16/06h).

In the present case, the Court of recourse is unable to see what obstacle would exist against the requested enforcement in the consolidated rights of the Obligated Party.

The question whether the consolidated rights of the Obligated Party as settlor are realizable, which probably could be assumed in view of the ascertained Letters of Wishes (LOW) of 27-05-2015 of the Obligated Party, is not decisive, as the rights of the Obligated Party as protector - as already described above - constitute (at least indirectly) realizable rights. These rights to which the Obligated Party as protector is entitled have already been listed. As already stated by the Princely Supreme Court under point 7.4.3 in its order of 07-09-2018, in the absence of a corresponding prohibition in the trust deed, the Obligated Party is even entitled to appoint himself as a trustee, which would also be legally permissible.

Page 29

Overall, the rights of the Obligated Party in its capacity as protector, which are listed by way of example, are in any case realisable assets in their entirety, so that the relevant objections in the recourse are no longer valid.

The reference to Art 918 of the Persons' and Companies' Act (Personen- und Gesellschaftsrecht (PGR)) is in any case meaningless in this respect, as this provision only regulates the duties (and rights) of the settlor, but does not restrict any powers of the protector.

In this context, it should be noted that - as admitted in the recourse itself - the right of the Obligated Party as protector to appoint and remove the trustees is not bound to any preconditions, so that this alone allows indirect access to assets of the Alpha Trust and the seized rights can be realised.

With regard to the rights of the Obligated Party <u>as beneficiary</u> of the Alpha Trust, the court of first instance correctly points out that the Princely Supreme Court has already ruled that the Obligated Party can obtain realisable pecuniary claims on the basis of his consolidated rights by amending the trust deed. In this context, it should also not be overlooked that the (then) trustee of the Alpha Trust pointed out in his e-mail of 01-07-2015 that the Obligated Party as beneficiary will have access to the trust fund during his lifetime, so that the status of the Obligated Party as beneficiary also constitutes an indirectly realisable asset and the objections raised hereto in the recourse concerning this matter must be denied as being justified.

In summary, it must therefore be held that the Enforcing Party has an interest in the authorisation applied for and granted by the court of first instance in the contested order with regard to the dominant role in the Alpha Trust which the

Page 30

Obligated Party is entitled to play and which enables it at least to have indirect access to the assets of that trust, so that the objection of the lack of realisability of the rights is not justified.

The objection on the point of law must therefore remain unsuccessful.

**14.**     The alleged procedural deficiency ("Verfahrensmangel") is also not given.

According to sec. 428 of the Code of Civil Procedure (Zivilprozessordnung, ZPO) in conjunction with Art. 51 of the Enforcement Act (EO), decisions on conflicting applications - such as here - must be justified.  In this case, the applications on which a decision is made in the order and the facts of the case, if not both can be taken from the simultaneously communicated written pleadings or from the copy of the minutes, must be included in the grounds to the extent necessary for understanding of the award or the order (se. 428 para. 2 of the Code of Civil Procedure (ZPO)). A statement of grounds can only fulfil its purpose if it discloses and makes comprehensible considerations which have led the judge to regard certain (disputed) facts as established or, respectively, to answer the relevant questions of law in one direction or the other. Only if the bases for the decision remain unclear, there is a deficiency of reasoning ("Begründungsmangel") and thus usually a considerable procedural deficiency. In the present case, the judge of first instance has expressed in a sufficiently clear way the legal basis on which he arrived at the decision granting the application.

Apart from the fact that the reference in the order to a legal question already dealt with in the proceedings also constitutes a statement of grounds and the appellant does not show why a reliable review of the contested decision should not be possible - which is a prerequisite for the assumption that there is a deficiency of

Page 31

reasoning - the judge of first instance also gives sufficient reasons in legal terms for the facts he established; this also applies to the realisation of the property rights of the Obligated Party.

The contested decision or, respectively, the preceding proceedings do not suffer from a procedural deficiency.

**15.**   There is also no nullity given.

Pursuant to sec. 50 of Law on Jurisdictions (Jurisdiktionsnorm; JN), an application for enforcement can be filed to the Princely Court, among other things, against persons, who are not resident on the national territory, on account of pecuniary claims if the assets of this party are located in the national territory. In the case of claims, the residence ("Wohnsitz") of the third-party debtor is deemed to be the place where the assets are located.

The Enforcing Party shall only be required to assert the claim against the Obligated Party, which it intends to claim by way of third-party-prohibition ("Drittverbot"), and to provide the information required to individualise this claim. Whether and to what extent such a claim exists at all is not to be assessed when the enforcement is granted. Only if the lack of existence of the alleged legal relationship can be deduced from the application and thus the non-existence of the alleged claim is obvious, the application for enforcement must be dismissed (LES 2010, 70). It is irrelevant whether the third-party debtor denies such a claim, especially since the third-party prohibition is void anyway if the underlying basis of the claim alleged by the Enforcing Party does not exist (LES 1998, 166). Since the third-party debtor's registered office is on the national territory, jurisdiction for the third-party action ("Drittschuldnerklage") is given, so that domestic jurisdiction for the requested enforcement is thus already given. In addition, the Enforcing Party has made a specific pleading concerning the legal position of the Obligated Party in relation to the third-party debtor and has also certified the latter's function in relation to the Alpha Trust, so that the court

Page 32

of first instance was right to assume jurisdiction on the basis of section 50 of Law on Jurisdictions (Jurisdiktionsnorm; JN).

Given the jurisdiction of the Princely Court and domestic jurisdiction, there is consequently no nullity.

**16** .   As regards the objection of "inadmissible reach-through liability" ("Haftungsdurchgriff"), the Appellant fails to recognise that the catch-all circumstance of the enforcement in other property rights pursuant to Art 242 et seqq of the Enforcement Act (EO) is intended to ensure that all imaginable assets of the Obligated Party can be seized for enforcement. The interpretation of these legal provisions has to be governed by this purpose of the law. Consequently, it is sufficient that the seized property rights can be realized indirectly. In the context of the seizure of  consolidated rights - as here - it is not necessary that the exercise of individual powers of the Obligated Party directly makes an asset realizable, as long as and to the extent that the concrete exercise is aimed at subjecting assets of the Obligated Party to enforcement. As has already been explained, the individual rights covered by the contested order which flow from the consolidated right of the Obligated Party are realisable and have asset value - at least directly.

It is subject to an enforcement of claims, but also to an enforcement in other assets within the meaning of Art. 242 et seqq of the Enforcement Act (EO), that the enforcement proceedings are carried out without involving the third-party debtor in an adversarial manner. On the one hand, the third-party debtor has the right to objection proceedings ("Widerspruchsverfahren") within the meaning of Art. 20 of the Enforcement Act (EO), on the other hand, the enforcement would be in vain anyway if the seized right is not due to the Obligated party, which would make a third-party action against enforcement ("Widerspruchsklage") superfluous. In principle, only claims or, respectively, rights to

Page 33

which the Obligated Party is entitled can be seized. The Enforcing Party has been expressly authorised to assert the rights instead of the Obligated Party, i.e. only rights that are actually due to the Obligated Party can be asserted. An inadmissible reach-through liability in the enforcement proceedings is therefore not given.

17. As regards the alleged disproportionate nature of the enforcement, it should be pointed out in advance that the seizure of the consolidated rights of the Obligated Party as trustee, protector and beneficiary of the Alpha Trust was not called into question during the authorisation procedure. The principle of proportionality states that the measure chosen is appropriate to achieve the objective pursued. That and why this should not be the case cannot be demonstrated by the Appellant. In compliance with the principle of proportionality of the means to the desired success, it cannot be spoken of a disproportionate nature of the means of enforcement used in the case of an enforceable claim totalling CHF 91,595,445.97, even though in proceedings 08 EX.2016.839 claims of the Enforcing Party against the Obligated Party were subject to enforcement.

Consequently, the contested decision does not suffer from any infringement of the principle of proportionality, which is also applicable in principle to the Enforcement Act.

18. In summary, it must therefore be held that the Enforcing Party was legitimately granted the realization of the consolidated rights of the Obligated Party as settlor, protector and beneficiary of the Alpha Trust and that it was granted the appropriate authorisations. The contested decision is therefore unobjectionable and, consequently, the recourse of the Obligated Party is not justified.

Page 34

15.    The costs of the response to the recourse, which were duly recorded in the recourse proceedings by the Enforcing Party as being the winning party, must be determined as further enforcement costs in the amount recorded.

**PRINCELY COURT OF APPEAL (FÜRSTLICHES OBERGERICHT), 1st senate**

Vaduz, on 15-09-2020

The presiding judge

Dr. Wilhelm Ungerank, LL.M.


For the correctness of the execution.

[Signature: Marte Eva]

Eva Marte

[Seal: PRINCELY COURT OF APPEAL; National Emblem]

Page 35

**Legal Remedies**

Against this decision, no legal remedy can be filed.

*In my capacity as a translator for the English and French language, duly appointed, commissioned and sworn in by the President of the Regional Court of Innsbruck, Austria, as well as in my capacity as interpreter and translator accredited before the Liechtenstein courts and authorities, I hereby certify that the foregoing is a true and complete English translation of the copy submitted to me in the German language and was established to my best knowledge and belief. IN WITNESS WHEREOF I have hereunder set my hand and seal*



*Innsbruck, on 07-10-2020*



FÜRSTENTUM LIECHTENSTEIN
**FÜRSTLICHES**
OBERGERICHT

Advocatur

**3 0. Sep. 2020**

Seeger, Frick & Partner

Aktenzeichen bitte immer anführen
08 EX.2016.5802
ON 143

# BESCHLUSS

Das Fürstliche Obergericht, 1. Senat, hat durch den vorsitzenden Richter Dr. Wilhelm Ungerank LL.M. sowie den stv. Beisitzer Dr. Heinz Bildstein und die Oberrichterin Mag. Linn Berger als weitere Mitglieder des Senates in der

## Exekutionssache

**Betreibende Partei:**  Vitaly Ivanovich Smagin, REDACTED Moskau

vertreten durch Advocatur Seeger, Frick & Partner AG, Landstrasse 81, 9494 Schaan

**Verpflichtete Partei:**  Ashot YEGIAZARYAN, REDACTED Beverly Hills, USA 90201 California

vertreten durch Schurti Partners, Rechtsanwälte AG, Zollstrasse 2, 9490 Vaduz

**Drittschuldnerin:**  CTX Treuhand AG als Treuhänderin des Alpha Trust, vertreten durch Wilhelm & Büchel, 9490 Vaduz

**wegen:**  Exekution nach Art. 241 EO
(StW: CHF 91'605'445.97)

infolge Rekurses der verpflichteten Partei vom 23.03.2020 (ON 117) gegen den Beschluss des Fürstlichen Landgerichtes vom 02.03.2020 (ON 109) in nicht-öffentlicher Sitzung am **15.09.2020** (Telefonkonferenz und E-Mail-Korrespondenz gemäss Art. 6 Covid-19-VJBG) im Beisein der Schriftführerin Eva Marte

## beschlossen:

**Dem Rekurs wird <u>nicht</u> Folge gegeben.**

**Die Kosten für die Rekursbeantwortung werden mit CHF 83'160.00 als weitere Exekutionskosten bestimmt.**

## <u>Begründung:</u>

1.  Mit Beschluss vom 21.11.2016 hat das Erstgericht der betreibenden Partei aufgrund des vollstreckbaren Schiedsspruchs des London Court of International Arbitration (LCIA) vom 11.11.2014 wider die verpflichtete Partei zur Hereinbringung der vollstreckbaren Forderung von a. USD 72'2243'000.00 (an Hauptsache), b. USD 6'899'701.32 (an kapitalisierten Zinsen), c. GBP 2'776'473.68 und USD 672'354.08 und RUB 2'958'750 .00 (an Kosten), d. weiteren Zinsen in Höhe eines vierteljährlich aufgezinsten Jahreszinssatzes von 8 % aus USD 72'243'000.00 und USD 6'899'701.32 seit 11.11.2014 sowie e. der mit CHF 63'880.00 bestimmten Kosten des Exekutionsantrages die Exekution bewilligt durch:

    „1.  Pfändung der der verpflichteten Partei als Treugeber, Protektor und Begünstigter des Alpha Trusts (FL-0002.510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, 9490 Vaduz, gegenüber der

    CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha Trust (FL-0002-510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, FL- 9490 Vaduz,

    zustehenden Gesamtrechte, insbesondere das Recht zum Erhalt von Zahlungen und Zuwendungen aller Art aus dem Treugut, das Recht zur Bestellung und Abberufung der Treuhänder des Alpha Trusts (Art. (2) Written Instrument vom 2. Juni 2015), das Recht des Treuhänders zur Beendigung des Trusts (Art. 3, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Bestellung der

Begünstigten des Alpha Trusts (Art. 8, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Änderung der Treuhandurkunden des Alpha Trusts (Art. 12, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Delegation sämtlicher Rechte des Treuhänders einschliesslich seiner Ermessensbefugnisse (Art. 11, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Ausübung sämtlicher der im First Schedule des Declaration of Trust festgelegten Rechte (Art. 11, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument) und den Rechten als Vermögensverwalter des Trusts (Minutes of a Meeting of the Directors of CTX Treuhand AG vom 3. Juni 2015).

2. An die verpflichtete Partei Ashot YEGIAZARYAN wird das Gebot erlassen, sich jeder Verfügung über die oben (1.) bezeichneten Rechte zu enthalten.

3. An die CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha Trust (FL-0002-510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, FL-9490 Vaduz, wird das Verbot erlassen, aus diesen Ansprüchen oder unter Ausübung dieser Rechte (1.) an die verpflichtete Partei Ashot YEGIAZARYAN und/oder einen Dritten zu leisten, insbesondere Weisungen durch die verpflichtete Partei Ashot YEGIAZARYAN zu befolgen und/oder Zustimmungen durch die verpflichtete Partei Ashot YEGIAZARYAN zu akzeptieren und ihren Entscheidungen zugrunde zu legen.

4. Ausgenommen von dieser Exekutionsbewilligung sind die durch die Forderungsexekutionsbewilligung des Fürstlichen Landgerichtes vom 24. Februar 2016, 08 EX.2016.839, ON 4, bereits gepfändeten Forderungen, nämlich die der verpflichteten Partei aufgrund seiner Rechtstellung als wirtschaftlich Berechtigter, Treugeber, Begünstigter und Auftraggeber des Alpha Trusts oder anderer Treuhand-verhältnisse gegen die Drittschuldner (i) CTX Treuhand AG als Treuhänderin des Alpha Trust, (ii) Dr. Thomas Wilhelm und (iii) Nikolaus Wilhelm zustehenden Geldforderungen und Rückzahlungsansprüche."

**2.**   Den gegen diesen Beschluss von der verpflichteten Partei und der Drittschuldnerin erhobenen Rekursen hat das Fürstliche Obergericht mit Beschluss vom 03.08.2017 Folge gegeben und die angefochtene Entscheidung dahin abgeändert, dass die Exekutionsanträge abgewiesen wurden.

**3.**   Gegen diesen Beschluss erhob die betreibende Partei einen Revisionsrekurs, dem der Fürstliche Oberste Gerichtshof mit Beschluss vom 07.09.2018 Folge gab und den Beschluss des Fürstlichen Landgerichts wieder herstellte.

**4.**   Dagegen haben die verpflichtete Partei und die Drittschuldnerin Individualbeschwerde an den Staatsgerichtshof erhoben. Mit Urteilen vom 29.10.2019 hat der Staatsgerichtshof den Individualbeschwerden keine Folge gegeben.

**5.**   Mit Schriftsatz vom 24.07.2017, konkretisiert mit jenem vom 11.02.2020, hat die betreibende Partei einen Verwertungsantrag gestellt und zur Begründung zusammengefasst vorgebracht, dass es bei der gegenständlichen Exekution darum gehen würde, dass Vermögen aus dem Alpha Trust herauszulösen, wo dann die betreibende Partei auf dieses Vermögen exekutiv zugreifen könne. Nach Art. 244 Abs. 1 EO sei der betreibende Gläubiger zu ermächtigen, die erforderlichen Rechtshandlungen namens des Verpflichteten vorzunehmen. Nicht erforderlich sei, dass die Ausübung einzelner Befugnisse des Verpflichteten unmittelbar einen Vermögenswert nutzbar mache, so lange und insoweit die konkrete Ausübung – wenn auch indirekt – darauf gerichtet sei, Vermögen des Verpflichteten der Zwangsvollstreckung zuzuführen.

Als mögliche Verwertungsart sei die betreibende Partei insbesondere zu ermächtigen, anstelle des Verpflichteten gegenüber dem Alpha Trust die Abberufung der bisherigen Treuhänder des Alpha Trusts und die Einsetzung einer von der

betreibenden Partei bestimmten Person als Trustee des Alpha Trust zu verlangen und sodann vom von der betreibenden Partei bestimmten Trustee die Ausschüttung von CHF 91'595.445.97 zzgl. Kosten und Zinsen an die verpflichtete Partei an eine von der betreibenden Partei zu bestimmende Zahlstelle zu begehren und anstelle des Verpflichteten diese Ausschüttung und ihre Durchführung in seiner Position als Protektor und Begünstigter zuzustimmen.

6.   Die verpflichtete Partei beantragte die Zurück-, hilfsweise die Abweisung des Verwertungsantrags. Die betreibende Partei habe es unterlassen darzulegen, inwiefern die Gesamtrechte der verpflichteten Partei oder einzelne Rechte daraus der Verwertung unterliegen würden. Die betreibende Partei sei ihrer Substantiierungspflicht nicht mehr nachgekommen und sei der Verwertungsantrag schon aus diesem Grund zurückzuweisen.

Selbst wenn der Verwertungsantrag formell zulässig wäre, müsse er inhaltlich abgewiesen werden, nachdem keine Verwertbarkeit der Gesamtrechte der verpflichteten Partei oder einzelner sichtbar daraus ergebender Rechte bestehen würde.

Die Begünstigten des Alpha Trusts seien allesamt Ermessensbegünstigte. Es gäbe somit keinen Grund, warum gerade die verpflichtete Partei eine Summe von USD 80 Mio. aus dem Trustvermögen ausgeschüttet erhalten solle.

Im Übrigen seien jegliche geldwerten Ansprüche der verpflichteten Partei gegen den Alpha Trust aus ihrer Stellung als Treugeber und Begünstigter bereits im Verfahren zu 08 EX.2016.839 gepfändet worden. Die Rechte der verpflichteten Partei gegen den Alpha Trust aus ihrer Stellung als Protektor seien lediglich Zustimmungsrechte und keine vermögenswerte Rechte. Die betreibende Partei könne daher schlicht nicht an Geld kommen.

Nachdem sich die verpflichtete Partei weder ein Widerrufsrecht noch ein Änderungsrecht vorbehalten hätten, würden die Gesamtrechte nicht einer Verwertung unterliegen. Im Sinne des Grundsatzes der stufenweisen Zwangsausübung habe die betreibende Partei zunächst auch eine Verwertung im Hinblick auf die zu 08 EX.2016.839 erfolgte Pfändung der verpflichteten Partei als wirtschaftlich Berechtigte, Treugeberin, Begünstigte und Auftraggeberin des Alpha Trust zustehenden Geldforderungen und Zahlungsansprüche vorzunehmen, bevor sie weitere Rechte pfänden könne.

Im Übrigen fehle es an der Verhältnismässigkeit der Verwertung. Zunächst hätte eine Verwertung im Hinblick auf die zu 08 EX.2016.839 erfolgte Pfändung erfolgen sollen. Andererseits würden die Verwertungsvorschläge der betreibenden Partei unverhältnismässig in das Wesen des Alpha Trusts eingreifen. Schliesslich umgehe die betreibende Partei das Anfechtungsverfahren und verkürze die Parteirechte der verpflichteten Partei, sodass der Antrag auf Verwertung abzuweisen sei.

7.  Die Drittschuldnerin brachte vor, dass der Verwertungsantrag deshalb abzuweisen sei, weil die gepfändeten Rechte nicht verwertbar seien. Die Verwertung von Abberufungs- und Bestellungsrechten durch die betreibende Partei sei auch ein unzulässiger, weil unter anderem unverhältnismässiger Eingriff in das Wesen und in die Organisationsverfassung des Trusts. Die gepfändeten Rechte würden keinen Zugriff auf das Trustvermögen gewähren. Es sei der betreibenden Partei damit nicht möglich, über die gepfändeten Rechte Befriedigung zu erlangen.

**8.1**    Mit dem nunmehr angefochtenen Beschluss hat das Erstgericht über den Antrag der betreibenden Partei wie folgt entschieden:

„1.1   Die <u>VERWERTUNG</u> der mit Exekutionsbewilligung des Fürstlichen Landgerichts vom 21. November 2016, 08 EX.2016.5802, ON 3, gepfändeten, der verpflichteten Partei als Treugeber, Protektor und Begünstigter des Alpha Trusts (FL-0002-510.771-1), c/o Dr. iur. Thomas Wilhelm, Lova Center, FL-9490 Vaduz gegenüber der CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha Trust (FL-0002-510.771-1), c/o Dr .iur. Thomas Wilhelm, Lova Center, FL-9490 Vaduz zustehenden Gesamtrechte, nämlich insbesondere des Rechts zum Erhalt von Zahlungen und Zuwendungen aller Art aus dem Treugut, des Rechts zur Bestellung und Abberufung der Treuhänder des Alpha Trusts (Art. (2) *Written Instrument* vom 2. Juni 2015), des Rechts des Treuhänders zur Beendigung des Trusts (Art. 3, 14.3 *Declaration of Trust* i.V.m. Art. (1) und (2) des *Written Instrument),* des Rechts des Treuhänders zur Bestellung der Begünstigten des Alpha Trusts (Art. 8, 14.3 *Declaration of Trust* i.V.m. Art. (1) und (2) des *Written Instrument),* des Rechts des Treuhänders zur Änderung der Treuhandurkunden des Alpha Trusts (Art. 12, 14.3 *Declaration of Trust* i.V.m. Art. (1) und (2) des *Written Instrument),* des Rechts des Treuhänders zur Delegation sämtlicher Rechte des Treuhänders einschliesslich seiner Ermessensbefugnisse (Art. 11,14.3 *Declaration of Trust* i.V.m. Art. (1) und (2) des *Written Instrument)* und des Rechts des Treuhänders zur Ausübung sämtlicher der im *First Schedule* des *Declaration of Trust* festgelegten Rechte (Art. 11, 14.3 *Declaration of Trust* i.V.m. Art. (1) und (2) des *Written Instrument),* wird <u>bewilligt</u>, und zwar durch_Ermächtigung der betreibenden Partei, die oben bezeichneten Rechte der verpflichteten Partei anstelle des Verpflichteten geltend zu machen, nämlich <u>insbesondere:</u>

a)    Abberufung der CTX:

Das Recht anstelle des Verpflichteten gemäss Art. 14.05 des Trust Deeds des Alpha Trusts i.d.F.d. des *Written Instruments vom 2.6.2015* die bisherige Treuhänderin des Alpha Trusts, die CTX Treuhand AG, Lova-Center, 9490 Vaduz mit sofortiger Wirkung abzuberufen.

b)   Benennung neuer Treuhänder:

Im Einklang mit Art. 10.1. der Treuurkunde neue Treuhänder des Alpha Trust zu benennen und zu bestellen,

-       sei dies die betreibende Partei,

-       die Herren Rechtsanwälte Mag.iur. Rudolf Schächle und lic. iur. Raphael Näscher oder

-       sonstige von der betreibenden Partei bestimmte natürliche Personen oder eine Treuhandgesellschaft mit Sitz im In- oder Ausland,

c)   Ausschüttung an Yegiazarian begehren und genehmigen:

Von der gegenwärtigen oder neu bestellten Treuhänderin des Alpha Trust anstelle des Verpflichteten auf Basis des Letter of Wishes des Verpflichteten vom 3.7.2015 und der Treuurkunde des Alpha Trusts i.d.F.d. des Written Instruments vom 2.6.2015 sowie auf Basis seines tatsächlich bestehenden Instruktionsrechts gegenüber der Treuhänderin des Alpha Trusts

-       die Ausschüttung der verfahrensgegenständlich vollstreckbaren Forderung von CHF 91'595'445.97 (08 EX.2016.5802, ON 3) zuzüglich Zinsen (nämlich vierteljährlich aufgezinsten Jahreszinssatz von 8% aus USD 72'243'000.00 und USD 6'899'701.32 seit 15. November 2016) und Kosten an die verpflichtete Partei an eine von der betreibenden Partei zu bestimmende Zahlstelle zu fordern und zu wünschen, und

-       anstelle des Verpflichteten dieser Ausschüttung und ihrer Durchführung (einschliesslich der von der betreibenden Partei bestimmten Zahlstelle) in seiner Position als Protektor (i.S.d. Art. 14.4 i.V.m. Art. 8.1.2 des Trust Deeds des Alpha Trust vom 27.5.2015 i.d.F.d. des Written Instruments vom 2.6.2015) und Begünstigter (i.S.d. Art. 1.1.2 und des Third Schedules des Trust Deeds des Alpha Trust vom 27.5.2015) zuzustimmen.

d)   Rechte aus der Vereinbarung zum Letter of Wishes ausüben:

Von der gegenwärtigen oder neu bestellten Treuhänderin des Alpha Trust anstelle des Verpflichteten auf Basis der Rechte des Verpflichteten gemäss der Vereinbarung zum Letter of Wishes vom 3.7.2015

- die Bestellung der betreibenden Partei als Begünstigter des Alpha Trusts,

- die Ausschüttung der verfahrensgegenständlich vollstreckbaren Forderung von CHF 91'595'445.97 (08 EX.2016.5802, ON 3) zuzüglich Zinsen (nämlich vierteljährlich aufgezinsten Jahres-zinssatz von 8% aus USD 72'243'000.00 und USD 6'899'701.32 seit 15. November 2016) und Kosten an die betreibende Partei (in deren Eigenschaft als bestellte Begünstigte) zu fordern und zu wünschen, sowie

- anstelle des Verpflichteten dieser Ausschüttung und ihrer Durchführung (einschliesslich der von der betreibenden Partei bestimmten Zahlstelle) in seiner Position als Protektor (i.S.d. Art. 14.4 i.V.m. Art. 8.1.2 des Trust Deeds des Alpha Trust vom 27.5.2015 i.d.F.d. des Written Instruments vom 2.6.2015) und Begünstigter (i.S.d. Art. 1.1.2 und des Third Schedules des Trust Deeds des Alpha Trust vom 27.5.2015) zuzustimmen

d) Administrative Rechte des Protektors zur Durchführung ausüben:
   Anstelle des Verpflichteten auf Basis der Treuurkunde des Alpha Trusts i.d.F.d. des Written Instruments vom 2.6.2015 die Zustimmung zu Handlungen des Treuhänders gemäss der Punkte 4,11,16.2 und des First Schedule der Treuurkunde geben sowie alle Informationsrechte des Verpflichteten gegenüber dem Treuhänder auszuüben.

1.2 Die Pfändung der der verpflichteten Partei aufgrund der gegenständlichen Verwertung nach Ziff. 1.1 gegen den Alpha Trust bzw. dessen Treuhänder zustehenden Geldforderungen und Zahlungsansprüche, insbesondere Ausschüttungsansprüche in Höhe von CHF 91'595'445.97 und Überweisung dieser gepfändeten Forderungen zur Einziehung bis zur Höhe der vollstreckbaren Forderung unbeschadet etwa früher erworbener Rechte dritter Personen, wird bewilligt.

Der Drittschuldnerin wird verboten, an die verpflichtete Partei Zahlung zu leisten. Letzterer wird jede Verfügung über die gepfändete Forderung sowie über das für sie bestellte Pfand insbesondere die gänzliche oder teilweise Einziehung dieser

Forderung untersagt. Mit Zustellung dieses Zahlungsverbotes an die Drittschuldnerin ist die bewilligte Pfändung als bewirkt anzusehen und zu Gunsten der vollstreckbaren Forderung der betreibenden Partei an der oben bezeichneten Forderung ein Pfandrecht erworben.

2.    Die weiteren Exekutionskosten der betreibenden Partei werden mit CHF 83'297.75 bestimmt."

**8.2**    Das Erstgericht ging von folgendem Sachverhalt aus:

„Der Alpha Trust ist eine am 27. Mai 2015 nach liechtensteinischem Recht errichtete Treuhänderschaft. Der Trust ist seit 30. November 2015 unter Registernummer FL-0002.510.771-1 im liechtensteinischen Handelsregister eingetragen. Als alleinige Treuhänderin (Trustee) agiert die CTX Treuhand AG. (Beilage A8)

Die CTX Treuhand AG ist eine nach liechtensteinischem Recht errichtete Aktiengesellschaft mit Sitz in 9490 Vaduz, Lova-Center. Sie ist seit 27. November 2001 unter der Registernummer FL-0002.042.435-5 im liechtensteinischen Handelsregister eingetragen und wird (u.a.) durch Mitglieder des Verwaltungsrates Dr. Thomas Wilhelm und lic.iur. Martin Hörnig vertreten. Nikolaus Wilhelm ist Prokurist mit Kollektivzeichnungsrecht zu zweien. (Beilage A9)

Die Treuhandvereinbarung des Alpha Trust, die „*Declaration of Trust*" vom 27. Mai 2015, hat unter anderem folgenden Inhalt:

DIESE TREUHANDERKLÄRUNG erfolgt am 27. Mai zweitausendfünfzehn

<u>DURCH</u>

CTX Treuhand AG („Treuhänder", wobei der Begriff - sofern der Kontext es erlaubt - den oder die

zum jeweiligen vorhandenen Treuhänder des Trusts einschliesst).

<u>VORAUSSETZUNGEN</u>

i.    Die Treuhänder bestätigen, das im zweiten Anhang angegebene Vermögen erhalten zu haben,

um es nach den folgenden Bedingungen treuhänderisch zu verwalten.

ii.    Dieser Trust wird unwiderruflich errichtet.

iii.   Dieser Trust wird als „ALPHA TRUST" bezeichnet.

*DIESE* URKUNDE BEZEUGT Folgendes:

1.    <u>Definitionen</u>

(...)

1.1.2. „die Begünstigten" sind und umfassen die Personen, die im dritten Anhang genannt oder beschrieben werden;

(...)

3.              <u>Beendigung des Treuverhältnisses</u>

Die Treuhänder haben die Befugnis, im Rahmen einer Urkunde ein Datum festzulegen (das nicht vor dem Datum der Ausfertigung dieser Urkunde liegen darf), das als Ende des Treuhandverhältnisses anzusehen ist.

4.              <u>Verkauf von Trustvermögen</u>

Die Treuhänder verwalten das Trustvermögen im Hinblick auf Investitionen oder Eigentum (ausser Geld) treuhänderisch nach ihrem eigenen Ermessen, um diese Investitionen oder das Vermögen insgesamt oder teilweise zu verkaufen, einzuziehen oder in Geld umzuwandeln, wobei jedoch die Möglichkeit besteht, diesen Verkauf, die Einziehung oder die Umwandlung *zu verschieben und* die Möglichkeit einzuräumen, dass diese Investitionen erhalten bleiben und das Geld treuhänderisch verwaltet wird, wobei sie denselben Ermessenspielraum haben, das Geld oder Eigentum in ihrem Namen oder unter ihrer Kontrolle in einer von diesem Trust oder vom Gesetz genehmigten Weise anzulegen, und die Befugnis diese Anlagen zu ändern oder gegen andere zulässige auszutauschen, wenn sie dies nach eigenem Ermessen für angebracht halten.

5.              <u>Treuhänderschaft von Einkünften und Kapital</u>

5.1.   Die Treuhänder verwalten das Kapital und die Einkünfte des Treuhandvermögens treuhänderisch zugunsten von allen, einem oder mehreren Begünstigten, wobei ein oder mehrere andere Begünstigte ausgeschlossen sein können, in Form von Anteilen oder in einem bestimmten Verhältnis, wenn mehr als ein Begünstigter vorgesehen ist, mit und auf der Basis von Befugnissen und Bestimmungen für deren Unterhalt, Ausbildung, Weiterentwicklung oder sonstigen Vorteilen oder

zur Ansammlung von Einkünften (einschliesslich Verwaltungsbefugnissen und Bestimmungen oder Ermessens-Trusts und Befugnissen, die von einer oder mehreren Personen auszuführen oder auszuüben sind, ob diese nun als Treuhänder fungieren oder nicht oder ob die Treuhänder oder ein Treuhänder eingeschlossen ist oder nicht), so dass die Ausübung dieser Befugnis zur Bestimmung von Berechtigten in einem bestimmten Umfang und in einer Art und Weise delegiert werden kann, die die Treuhänder durch eine oder mehrere Urkunden, die während der Trust-Dauer widerrufen werden können oder die unwiderruflich sind und während der Trust-Dauer ausgeübt werden, benennen können, wobei jedoch VORAUSGESETZT wird, dass durch die Ausübung dieser Befugnis eine vorherige Zahlung oder Verwendung des gesamten Kapitals oder Einkommens oder eines Teils des Kapitals oder Einkommens aus dem Treuhandvermögen nicht ungültig gemacht wird, die im Rahmen einer Befugnis vorgenommen wurde, welche von dieser Urkunde oder vom Gesetz erteilt wird.

5.2.  Bis zu einer Bestimmung nach Klausel 5.1., in Abhängigkeit oder in Ermangelung davon

5.2.1.  zahlen die Treuhänder die Einkünfte des Treuhandvermögens an alle, einen bestimmten oder mehrere Begünstigte oder verwenden es zu dessen/deren Gunsten, wobei der andere oder andere ausgeschlossen sein können, wenn zum jeweiligen Zeitpunkt vorhanden und - bei mehreren Begünstigten - in Anteilen und in einer Art und Weise, die die Treuhänder nach ihrem alleinigen Ermessen jeweils für angemessen halten.

5.2.2.  Ungeachtet der Bestimmungen in Klausel 5.2.1. können die Treuhänder zu einem oder mehreren beliebigen Zeitpunkten während der Trust-Dauer nach ihrem alleinigen Ermessen die Einkünfte im Wege der Aufzinsung ansammeln anstatt es insgesamt oder teilweise zu verwenden, indem sie die Einkünfte oder" die daraus resultierenden Einkünfte jeweils in einer Art und Weise anlegen oder anderweitig verwenden, die von dieser Urkunde oder vom Gesetz gestattet ist; auf der Basis von Klausel 5.2.3. verwalten sie diese Kapitalansammlungen als Kapitalzuwachs.

5.2.3.  Die Treuhänder können zu einem oder mehreren Zeitpunkt/en während der Trust-Dauer die nach Unterpunkt 5.2.2. angesammelten Einkünfte

insgesamt oder teilweise verwenden, als wenn es sich um Einkünfte handeln würde, die in dem jeweiligen Jahr angefallen sind.

5.2.4. Ungeachtet der Treuhandvollmachten und Bestimmungen, die in dieser Klausel aufgeführt werden und enthalten sind, können die Treuhänder

5.2.4.1 zu einem beliebigen Zeitpunkt während der Trust-Dauer das Kapital des Trustvermögens insgesamt oder teilweise an alle, einen oder mehrere Begünstigte/n unter Ausschluss von anderen Begünstigten zahlen oder zu dessen/deren Gunsten verwenden, wobei bei mehreren Begünstigten entsprechende Anteile vorzusehen sind und die Auszahlung oder Verwendung in einer Art und *Weise* erfolgen kann, die die Treuhänder nach ihrem alleinigen Ermessen für angebracht halten.

5.2.4.2. Einkommen oder Kapital aus dem Trustvermögen an die Treuhänder eines anderen Trusts bezahlen der übertragen, unabhängig von dem Ort der Errichtung, an dem ein oder mehrere Begünstigte beteiligt sind (unabhängig davon ob alle Begünstigten oder ein oder mehrere Begünstigte die einzigen Personen sind, die an diesem anderen Trust beteiligt sind oder als Nutzniesser in Frage kommen), wenn die Treuhänder nach ihrem alleinigen Ermessen der Meinung sind, dass diese Zahlung oder Übertragung allen, einem oder mehreren Begünstigten zugute kommen soll.

5.3. Bei Nichtausübung der genannten Befugnisse, die den Treuhändern durch die vorhergehenden Unterpunkte erteilt wurden, und in Abhängigkeit von der Ausübung dieser Befugnisse können die Treuhänder bei Ablauf der Trust-Dauer TREUHÄNDERISCH Ober das Trustvermögen verfügen, wobei die Begünstigten, die zu dem betreffenden Zeitpunkt leben, absolut gleiche Teile erhalten.

5.4 Auf der Basis der obigen Ausführungen und wenn und sofern Kapital und Einkünfte des Treuhandvermögens nicht aus einem beliebigen Grund nach den obigen Bestimmungen insgesamt veräussert werden, werden Kapital und Einkünfte des Treuhandvermögens treuhänderisch für das Rote Kreuz und Amnesty International verwaltet, und im Falle eines Scheiterns dieses Trusts für wohltätige Zwecke im Allgemeinen.

(…)

8. <u>Befugnis. Begünstigte hinzuzufügen und auszuschliessen</u>

8.1. Die Treuhänder können zu einem beliebigen Zeitpunkt während der Trust-Dauer schriftlich erklären, dass

8.1.1. eine Person, Gruppe oder Beschreibung von Personen kein Begünstigter mehr ist, so dass diese Person, Gruppe oder Beschreibung von Personen daraufhin kein Begünstigter mehr ist, als wenn dieser Begünstigte bereits ursprünglich als Begünstigter ausdrücklich ausgeschlossen worden wäre, jedoch unbeschadet bisheriger Zahlungen von Kapital oder Einkünften an diese/n Begünstigten.

8.1.2. eine Person, Gruppe oder Beschreibung von Personen, die von den Treuhändern benannt worden ist, von nun an Begünstigter ist, VORAUSGESETZT, dass eine Hinzufügung von Begünstigten die bereits getroffene Bestimmung für die Verwendung von Kapital oder Einkünften nicht beeinträchtigt, ändert oder beeinflusst.

(...)

10. <u>Änderung der Treuhänder</u>

10.1. Für diesen Trust sind mindestens zwei Treuhänder oder eine Trustgesellschaft und maximal fünf Treuhänder vorzusehen.

10.2. Bei mehr als einem ernannten Treuhänder müssen alle Treuhänder einstimmig handeln. Die Treuhänder haben jedoch das Recht, alle geschäftlichen Vorgänge, die Ausübung von Vollmachten und Ermessensfragen an einen oder mehreren ihrer Mit-Treuhänder zu delegieren, sofern sie diese Übertragung nach eigenem Ermessen für ratsam halten.

10.3. Ein Treuhänder, der zurücktreten und oder aus dem Treuhandverhältnis entlassen werden möchte, kann den Mit-Treuhändern (sofern vorhanden), und der/den Person/en, die befugt sind, neue Treuhänder zu ernennen, eine schriftliche Nachricht schicken und wird einen Monat nach dem Versand dieser Nachricht entlassen, oder zu einem früheren Zeitpunkt, wenn die Person/en, die zur Ernennung neuer Treuhänder berechtigt sind, nach den Bestimmungen dieser Klausel 10 ihre schriftliche Zustimmung erteilen, VORAUSGESETZT, dass diese Entlassung erst dann wirksam wird, wenn nach der Entlassung mindestens ein Treuhänder vorhanden ist.

10.4. Wenn ein Treuhänder zurücktreten und aus allen Treuhandverhältnissen

entlassen werden möchte oder er es ablehnt zu handeln oder er handlungsunfähig wird, oder er nicht mehr geschäftsfähig ist oder stirbt oder wenn eine Gesellschaft, die als Treuhänder fungiert, aufgelöst wird, dann ernennt

10.4.1. der Protektor oder wenn er verstorben ist (oder es sich dabei um eine Gesellschaft handelt, die aufgelöst wird) oder wenn er nicht in der Lage oder bereit ist zu handeln;

10.4.2. die Begünstigten *(ausser* Wohltätigkeitsorganisationen), wenn sie geschäftsfähig sind und mehrheitlich entscheiden, oder wenn sie nicht in der Lage oder bereit sind zu handeln;

10.4.3. die jeweils im Amt befindlichen Treuhänder oder wenn es keine Treuhänder gibt;

10.4.4 das Liechtensteinische Landgericht Vaduz durch schriftliche Urkunde eine oder mehrere Personen, unabhängig davon, ob sie am Verwaltungssitz des Trusts wohnen oder an einem anderen Ort, zu Treuhändern am Ort des verstorbenen oder aufgelösten Treuhänders oder des Treuhänders, der entlassen werden möchte, eine Handlung ablehnt oder handlungsunfähig ist oder nicht mehr geschäftsfähig ist, wie oben angegeben.

10.1. Die Person, die zur Ernennung neuer Treuhänder nach Unterpunkt 10.4.1. und 10.4.2. berechtigt ist kann in derselben Reihenfolge wie oben beschrieben eine oder mehrere Personen zu weiteren Treuhändern ernennen bis die maximal zulässige Anzahl erreicht ist.

10.2. Ein Treuhänder kann überall in der Welt wohnen.

10.3. Die Person, die zur Ernennung zusätzlicher Treuhänder berechtigt ist, kann jederzeit und ohne Grund einen oder mehrere Treuhänder durch Zustellung einer schriftlichen Nachricht absetzen.

11.          Befugnis zu delegieren

3.11.1. Ein Treuhänder hat die Befugnis (ungeachtet aller anderslautenden gesetzlichen Vorschriften), mit einer Urkunde, die während der Trust-Dauer widerrufen werden kann oder die unwiderruflich ist, an eine Person die Ausführung oder Ausübung aller treuhänderischen Befugnisse und Ermessensspielräume zu delegieren, die dem Treuhänder hiermit oder per Gesetz übertragen wurden.

12.                    Befugnis zu ändern oder zu widerrufen

12.1. Die Treuhänder können jederzeit nach ihrem Ermessen Bestimmungen dieser Urkunde ändern, wobei die Ausübung dieser Befugnis nicht die Wirkung einer Widerrufung dieses Trusts hat.

13.                    Weitere Befugnisse

13.1. Die Treuhänder haben zusätzlich und unbeschadet aller gesetzlichen Befugnisse die Vollmachten und Immunitäten, die im ersten Anhang definiert werden, vorausgesetzt, dass die Treuhänder keine der Befugnisse so ausüben, dass sie mit den Bestimmungen dieses Trusts in Verbindung mit den Begünstigungen in Konflikt geraten.

14.                    Der Protektor

3.14.1. Der Protektor kann seinen Wohnsitz oder - im Falle einer Gesellschaft - seinen Firmensitz an einem beliebigen Ort in der Welt haben.

3.14.2. Der erste Protektor ist Ashot Egiazaryan.

3.14.3. Der Protektor kann seine Befugnisse, Rechte und/oder Pflichten für einen bestimmten Zeitraum oder dauerhaft zu jeder Zeit durch ein Schriftstück an eine Person oder Personen delegieren oder übertragen und zu Bedingungen, die er für angemessen hält, wobei immer vorausgesetzt wird, dass diese Übertragung erst wirksam wird, wenn die Treuhänder darüber schriftlich in Kenntnis gesetzt wurden.

14.3.1. Wenn diese Übertragung scheitert oder kein Protektor vorhanden ist oder wenn ein Protektor stirbt (oder - im Falle einer Gesellschaft - aufgelöst wird) oder unfähig oder nicht bereit ist zu handeln, *ohne seine* Befugnisse, Rechte und/oder Pflichten gültig übertragen zu haben, dann ernennt/ernennen

14.3.1.1.     die      Begünstigten      (ausser      im      Falle      von Wohltätigkeitsorganisationen), die geschäftsfähig sind und mehrheitlich entscheiden oder wenn sie unfähig oder nicht bereit sind zu handeln

14.3.1.2.     das Liechtensteinische Landgericht Vaduz innerhalb von 90 Tagen einen Protektor.

3.14.4. Für die Ausübung der Befugnisse und Rechte nach den Klauseln 2.4., 2.5.1., 3.5., 8., 11., 12., 16.2., 16.3. und Klausel 11 des ersten Anhangs durch die Treuhänder ist die schriftliche Zustimmung des Protektors erforderlich.

(…)

16.     Rechenschaftspflicht und Informationen

16.1. De Treuhänder führen vollständige und genaue Aufzeichnungen über alle Transaktionen im Zusammenhang mit dem Trustvermögen.

16.2. Die Aufzeichnungen stehen den Begünstigten oder ihren rechtlichen oder ordnungsgemäss bevollmächtigten Vertretern innerhalb eines angemessenen Zeitraums zur Prüfung zur Verfügung. Ungeachtet der obigen Ausführungen sind die Treuhänder nicht verpflichtet, einem Begünstigten mitzuteilen, welchem anderen Begünstigten sie Kapital oder Einkünfte aus dem Trustvermögen haben zukommen lassen oder an welchen Begünstigten sie eine Zahlung aus dem Kapital oder den Einkünften des Trustvermögens geleistet haben; sie müssen auch keine Gründe für die Ausübung oder Nichtausübung oder die Art der Ausübung ihrer Befugnisse, Rechte und Ermessensspielräume im Rahmen des Trusts nennen.

16.3. Die Treuhänder können nach eigenem Ermessen eine Kontrollstelle nach Art. 923 PGR ernennen, wobei die Kontrollstelle dann die einzige Person ist, die die oben genannten Informationen erhält.

(…)

DRITTER ANHANG

1.              Ashot Egiazaryan

2.     Eine Person oder Personen, die die Treuhänder jeweils als weitere Begünstigte benennen.


(Beilage A10)

Diese Treuhandvereinbarung werde durch das „*Written Instrument*" vom 2. Juni 2015 ergänzt, welches zwischen dem Treuhänder CTX einerseits und dem Verpflichteten in seiner Eigenschaft als Protektor des Alpha Trusts geschlossen und vom Verpflichteten unterfertigt worden ist. Dieses hat unter anderem folgenden Inhalt:

(1)     In Ausübung der in Klausel 12 der Haupturkunde genannten Befugnisse ändert der Treuhänder hiermit die folgenden Paragraphen der Haupturkunde:

(A)     Paragraph 14.4 hat ab jetzt den folgenden Wortlaut: „Die vorherige schriftliche Zustimmung des Protektors ist erforderlich, wenn die Treuhänder ihre Befugnisse und Rechte nach den Klauseln 2.4, 2.5.1, 3., 5.,

8., 11., 12., 16.2., 16.3 und die Befugnisse in ersten Anhang ausüben".

(B)   In Paragraph 14 wird die folgende Klausel hinzugefügt:

„14.05. Der Protektor hat die Befugnis, durch schriftliche Anweisungen Treuhänder zu entlassen und zu ernennen."

(Beilage A11)

Das vom Verpflichtete unterfertigte Letter of wishes vom 27. Mai 2015 hat folgenden Inhalt:

LETTER OF WISHES VON HERRN ASHOT EGIAZARYAN

An:   Die Treuhänder des ALPHA TRUSTS, errichtet am 27. Mai 2015

1.   Sie sind die Treuhänder des ALPHA Trusts, errichtet am 27. Mai 2015.

2.   Ich erstelle diesen Letter of Wishes, um Ihnen meine Wünsche in Bezug auf die Verwaltung des Treuvermögens sowohl zu meinen Lebzeiten als auch nach meinem Ableben zur Kenntnis zu bringen. In Bezug auf den ALPHA Trust handelt es sich dabei um meinen ersten Letter of Wishes. Ich behalte mir das Recht vor, die Wünsche jederzeit zu widerrufen oder abzuändern. Die hierin enthaltenen Angaben entbinden Sie nicht von der Notwendigkeit, die Zustimmung des Protektors einzuholen, wann immer dies gemäss Treuhandurkunde erforderlich ist.

Es ist mein Wunsch, dass Sie mich in den Kreis möglicher Begünstigter der Treuhänderschaft aufnehmen und mir jeweils auf mein Verlangen Erträgnisse und Kapital zur Verfügung stellen.

Weiters ist es mein Wunsch, dass Sie

:      in den Kreis möglicher Begünstigter des Trusts aufnehmen.

4.   Für die Zeit nach meinem Ableben sind meine Wünsche folgende:

A.   Sollte es einen ausstehenden Saldo geben, den ich aus der Zeit vor Errichtung des Trusts schulde und von dem rechtskräftig festgestellt werden kann, dass er _____ und _____ und _____ gebührt, so ist es mein Wunsch, dass Sie diesen zuerst ausgleichen, bevor die Ermessensbegünstigten in den Genuss des Treuvermögens kommen.

B.   Das Treuvermögen ist zugunsten von _____ zu halten.

4.   Ich bin mir bewusst, dass Sie rechtlich nicht gebunden sind, meine oben dargelegten Wünsche zu befolgen, hoffe jedoch, dass Sie meine Wünsche bei der Ausübung Ihrer Ermessensfreiheit im Rahmen des Treuhandverhältnisses berücksichtigen.

3. Juli 2015

(Beilage H)

Mit E-Mail vom 1. Juli 2015 hatte Nikolaus Wilhelm den (neuen) Entwurf für den Letter of Wishes an den Verpflichteten übermittelt und dabei folgendes ausgeführt:

„Anbei finden Sie einen neuen Entwurf für Ihren Letter of Wishes.

So wie er jetzt verfasst ist, sind  Sie der Erstbegünstigte des Trusts. Das bedeutet, dass Sie zu Ihren Lebzeiten Zugriff auf den Treuhandfonds haben. Falls Sie einen Gläubiger haben und zahlen wollen, können Sie eine Ausschüttung an sich selbst beantragen, damit Sie den Gläubiger bezahlen können. Sie müssen die Gläubiger im Letter of Wishes nicht nennen."

(Beilage G)

Im internen, vom Verpflichteten gegengezeichneten Formular der Drittschuldnerin betreffend das Mandat „The Alpha Trust" (Form „Discretionary Trust") ist unter Punkt IV. („Angaben zu Kuratoren/Protektoren und weisungsberechtigten Personen") der Verpflichtete angeführt.

(Beilage I)"

**8.3**   In rechtlicher Hinsicht erwog das Erstgericht, dass die Verwertung der bereits gepfändeten Rechte im Sinne des Art. 244 EO ein zweistufiges Verfahren vorsehe. Vorliegend habe die Verwertung – wie beantragt – dadurch zu geschehen, dass die betreibende Partei ermächtigt werde, die gepfändeten Rechte im Namen der verpflichteten Partei geltend zu machen und die erforderlichen Rechtshandlungen namens des Verpflichteten vorzunehmen. Dabei müsse vom Gericht keine Aufzählung einzelner in Betracht kommender Rechtshandlungen vorgenommen werden. Es genüge, den betreibenden Gläubiger unter Anführung des gepfändeten Vermögensrechts zur Ausübung der dem Verpflichteten zustehenden Rechte bzw. dazu zu ermächtigen, die erforderlichen und mit gegenständlicher Exekutionsbewilligung gepfändeten Gesamtrechtshandlungen namens des Verpflichteten vorzunehmen. Die betreibende Partei habe vorliegend gemäss Art. 244 Abs. 2 EO die Exekution des auf

die Weise des Abs. 2 leg. cit. herangezogenen Vermögens beantragt. Dem Verwertungsantrag sei vollinhaltlich stattzugeben. Die von der betreibenden Partei genannten Gestaltungsrechte und Rechtshandlungen des Verpflichteten, zu deren Ausübung die betreibende Partei ermächtigt werde, könnten allesamt übertragen werden und seien vermögensrechtlich zumindest mittelbar relevant. Die Ausübung der im Spruch genannten Einzelrechte sei jedenfalls geeignet, verwertbares Vermögen zu realisieren: Durch die Ermächtigung könne die betreibende Partei einerseits anstelle des Verpflichteten gegenüber dem Alpha Trust die Abberufung der bisherigen Treuhänderin des Alpha Trusts und die Einsetzung einer von der betreibenden Partei bestimmten Person als Trustee des Alpha Trusts begehren und andererseits sodann vom Trustee des Alpha Trusts eine Ausschüttung an die verpflichtete Partei an eine von der betreibenden Partei zu bestimmende Zahlstelle begehren. Darüber hinaus könne die betreibende Partei anstelle des Verpflichteten (in dessen Position als Protektor und Begünstigter) dieser Ausschüttung und ihrer Durchführung zustimmen. Auch die von der betreibenden Partei alternativ beantragte Variante, sie zu ermächtigen, eine Ausschüttung direkt an den Begünstigten zu begehren und zu genehmigen, stelle zweifellos ein vermögenswertes Recht dar, zumal die betreibende Partei auf diese Ausschüttung nach Art. 244 Abs. 2 EO exekutiv zugreifen könne. Schliesslich sei auch die Ausübung der Rechte aus dem Letter of Wishes verwertbar und ermögliche der betreibenden Partei den Zugriff auf ein verwertbares Vermögen.

Die Einwendungen der verpflichteten Partei und der Drittschuldnerin würden über weite Strecken das in den Rechtsmittelschriften bereits Vorgebrachte wiederholen, was im gegenständlichen Verwertungsverfahren nicht mehr relevant und vom Obersten Gerichtshof und vom Staatsgerichtshof bereits

abschliessend beurteilt worden sei. Darauf sei daher nicht näher einzugehen.

Der Verwertungsantrag sei rechtzeitig gestellt, ausreichend substantiiert und zweifellos zulässig.

Die gepfändeten Gesamtrechte seien verwertbar und seien dies auch die einzelnen Gestaltungsrechte und Handlungen, zu welchen die betreibende Partei ermächtigt werden solle. Selbst eine tatsächliche Ermessensbegünstigung würde einer Verwertung der gepfändeten Rechte nicht entgegenstehen, wie der Oberste Gerichtshof bereits ausgeführt habe.

Man komme bei Zusammenschau der Treuurkunde und dem Letter of Wishes zu keinem anderen Ergebnis, als dass der Verpflichtete sich die Kontrolle über das Treuhandvermögen sichern habe wollen.

Soweit die verpflichtete Partei das „Verhältnismässigkeitsprinzip anspreche, sei sie auf Art. 9 EO zu verweisen, wo dieser Grundsatz Gesetzestext geworden sei. Demnach sei die gleichzeitige Anwendung mehrerer Exekutionsmittel gestattet.

Im Falle des Art. 242 Abs. 2 EO sehe das Gesetz nur eine Einvernahme, nicht aber eine mündliche Verhandlung vor. Die Einvernahme habe das Gericht schriftlich angeordnet und habe die verpflichtete Partei auch entsprechend dem gerichtlichen Auftrag schriftlich Stellung genommen, und sei damit im Sinne des Art. 242 Abs. 2 iVm Art. 34 EO als einvernommen anzusehen.

9.  Gegen diesen Beschluss richtet sich der fristgereichte Rekurs der verpflichteten Partei mit dem Antrag, diesen wegen Nichtigkeit mangels inländischer Gerichtsbarkeit aufzuheben und das Verfahren für nichtig zu erklären, in eventu den bekämpften Beschluss dahingehend abzuändern, dass der Antrag der

betreibenden Partei vom 24.07.2017 vollumfänglich abgewiesen wird; hilfsweise wird ein Aufhebungsantrag gestellt.

10.  Die betreibende Partei hat in ihrer ebenfalls rechtzeitigen Rekursbeantwortung beantragt, dem Rechtsmittel der verpflichteten Partei keine Folge zu geben.

11.  Dem Rekurs kommt keine Berechtigung zu.

12.  Als Rekursgründe werden unrichtige rechtliche Beurteilung, Mangelhaftigkeit des Verfahrens und Nichtigkeit geltend gemacht.

13.  In der <u>Rechtsrüge</u> macht der Rekurswerber zusammengefasst geltend, dass vom angefochtenen Beschluss Rechte Dritter, nämlich der Treuhänderin, umfasst seien, weshalb die Entscheidung rechtswidrig sei, dass die vom Beschluss erfassten Rechte, soweit sie dem Verpflichteten zustehen würden, nicht verwertbar seien, dass im Ergebnis im Rahmen eines Exekutionsverfahrens ein Haftungsdurchgriff auf einen unbeteiligten Dritten vorgenommen worden sei, ohne diesem die Gelegenheit zu geben, sich in einem ordentlichen Zivilverfahren zur Wehr zu setzen, und schliesslich dass der angefochtene Beschluss krass überschiessend und damit unverhältnismässig sei.

13.1  Bevor auf die Ausführungen im Einzelnen eingegangen wird, ist vorwegzuschicken, dass die Exekutionsbewilligung, die die Pfändung der Gesamtrechte des Verpflichteten als Treugeber, Protektor und Begünstigten des Alpha Trust anordnete, in Rechtskraft erwachsen ist, sodass im nunmehrigen Verfahrensstadium ausschliesslich die Frage der Verwertbarkeit der gepfändeten Rechte von Bedeutung und somit zu behandeln ist.

Art. 242ff EO regelt die Exekution auf Vermögensrechte, die nicht zu den Forderungen gehören. In diesen Fällen hat das Gericht auf Antrag des betreibenden Gläubigers das Gebot an den Verpflichteten zu erlassen, sich jeder Verfügung über das Recht zu enthalten (Pfändung). Gemäss Art. 242 Abs. 2 EO ist die Art der Verwertung des Rechts vom Gericht auf Antrag des betreibenden Gläubigers nach Einvernahme des Verpflichteten und allen Gläubiger, zu deren Gunsten die Pfändung erfolgte, zu bestimmen. Diese Bestimmungen in der EO (Art. 242ff EO) entsprechen dem österreichischen Rezeptionsvorbild in §§ 331ff öEO. Es ist daher österreichische Literatur und Judikatur zur Beurteilung der gegenständlichen Rechtsfragen heranzuziehen.

Nach österreichischer Rechtsprechung (3 Ob 177/10s mwN) genügt für die Tauglichkeit eines Exekutionsobjekts nach den §§ 331ff öEO (Art. 242ff EO) die mittelbare Verwertbarkeit. Für jene Fälle, in denen das gepfändete Vermögensrecht selbst noch keinen Vermögenswert repräsentiert, regelt § 333 öEO (Art. 244 EO) ein zweistufiges Verwertungsverfahren. Dabei bestimmen sich die Rechte des betreibenden Gläubigers nach dem Umfang der Rechte des Verpflichteten und sind mit ihnen identisch. Dem Betreibenden ist die gerichtliche Ermächtigung zu erteilen, anstelle des Verpflichteten dessen Rechte auszuüben, um in der Folge auf einen denkbaren Erlös greifen zu können.

Zur Pfändung der Gesamtrechte des Verpflichteten und der in diesem Zusammenhang vom Rekurswerber behaupteten mangelnden Spezifizierung der Rechte durch den Betreibenden, hat der Fürstliche Oberste Gerichtshof bereits in seiner Entscheidung vom 07.09.2018 (Pkt. 7.4.6) Stellung genommen und zur mittelbaren Verwertbarkeit zusammengefasst ausgeführt:

Die vom Gesetz in den Art. 243ff EO genannten Verwertungshandlungen müssen im Exekutionsantrag nicht im Einzelnen dargetan werden. Für eine Pfändung nach den

Bestimmungen des Art. 242 EO ist ausreichend, wenn das gepfändete Gesamtrecht seinerseits den Zugriff auf ein verwertbares Vermögensobjekt ermöglicht. Der Antrag ist nur dann abzuweisen, wenn die Unverwertbarkeit des Rechts aus der Aktenlage offensichtlich ist.

Eine solche Unverwertbarkeit hat der Fürstliche Oberste Gerichtshof vorliegend nicht angenommen und begründend ausgeführt, dass der betreibende Gläubiger ausführlich dargetan habe, dass ein verwertbares Vermögensobjekt mittels des zu pfändenden Gesamtrechts ergriffen bzw. verwertet werden kann und ein Grund, eine „offensichtliche" Unverwertbarkeit" anzunehmen, gerade nicht vorliege. Allein die vom Betreibenden geltend gemachte Rechtsposition des Verpflichteten als Treugeber lasse schon nach allgemeinen Grundsätzen dessen Möglichkeit zur Herbeiführung vermögenswerter Forderungen gegen die Treuhänderin bejahen. Die Exekution nach den Art. 242 öEO fordere keine unmittelbare Verwertbarkeit des pfändenden Rechts, sondern es genüge die „mittelbare Verwertbarkeit". Vorliegendenfalls – so der OGH - gehe es nur darum, dass der Betreibende die in den Gesamtrechten enthaltenen Einzelrechte anstelle des Verpflichteten ausüben kann. Es sei nicht ersichtlich, welche exekutionsrechtlichen Hindernisse dem entgegenstehen sollten. Abgesehen davon gehe es bei einer Exekution auf andere Vermögensrechte nicht um eine Übertragung der Gestaltungsrechte an Dritte, sondern um die gerichtliche Ermächtigung des betreibenden Gläubigers, im Exekutionsverfahren anstelle des Verpflichteten dessen Rechte auszuüben, um dadurch, wenngleich auch erst mittelbar, auf den Erlös aus dem zu liquidierenden Einzelrecht greifen zu können (Pkt. 7.5.4 der zitierten Entscheidung des Fürstlichen Obersten Gerichtshofs).

**13.2**  Zu den Ausführungen im Rekurs zur Rechtsrüge im Einzelnen.

**13.2.1**  Der Rekurswerber bringt vor, dass Rechte Dritter – und nicht des Verpflichteten – verwertet würden.

Hiezu kann vorab und nochmals auf die Ausführungen des Fürstlichen Obersten Gerichtshofs in seiner Entscheidung vom 07.09.2018 verwiesen werden, wonach die Pfändung der <u>der verpflichteten Partei</u> als Treugeber, Protektor und Begünstigter zustehenden Gesamtrechte – soweit sich nicht eine fehlende Verwertbarkeit eines einzelnen Verwertungsantrag herausstellen sollte (diesfalls wäre das Verwertungsverfahren einzustellen) – gegeben ist. Auch der Staatsgerichtshof hat in seiner Entscheidung vom 29.10.2019 die Pfändbarkeit der der verpflichteten Partei zustehenden Gesamtrechte bejaht und die Ansicht vertreten, dass es sich dabei um pfänd- und verwertbare Rechte Dritter handeln würde.

Im Rekurs werden folgende im Beschluss genannten „Rechte" aufgezählt, bei welchen es sich nach Ansicht des Verpflichteten nicht um seine Rechte, sondern um Rechte Dritter handeln würde:

→  Recht des Treuhänders zur Beendigung des Alpha Trusts
→  Recht des Treuhänders zur Bestellung der Begünstigten des Alpha Trusts
→  das Recht des Treuhänders zur Änderung der Treuhandurkunden des Alpha Trusts
→  das Recht des Treuhänders zur Delegation sämtlicher Rechte des Treuhänders einschliesslich seiner Ermessensbefugnisse und
→  das Recht des Treuhänders zur Ausübung sämtlicher Rechte der in der First Schedule der Declaration of Trust festgelegten Rechte

Hiezu ist festzuhalten, dass nach dem Inhalt der Treuhandvereinbarung des Alpha Trusts vom 27.05.2015 und der Ergänzung hiezu vom 02.06.2015 ausdrücklich die Zustimmung des Protektors – des Verpflichteten – zur Ausübung der Befugnisse und Rechte des Treuhänders nach den einzeln aufgezählten Klauseln des Treuhandvertrages verlangt wird. So wird in der Treuhandvereinbarung die Beendigung des Treueverhältnisses (Klausel 3.), die Befugnis, Begünstigte hinzuzufügen und auszuschliessen (Klausel 8.), die Befugnis zu delegieren (Klausel 11.) sowie die Befugnis, die Treuhandvereinbarung zu ändern oder zu widerrufen (Klausel 12.), genannt. Hinzugefügt wurde in der Ergänzung zur Treuhandvereinbarung vom 02.06.2015 die Klausel, dass dem Protektor auch die Befugnis zusteht, durch schriftliche Anweisungen Treuhänder zu entlassen und zu ernennen.

Es kann deshalb kein Zweifel daran bestehen, dass dem Verpflichteten im Alpha Trust die dominierende Rolle zukommt und er jedenfalls zumindest mittelbaren Zugriff auf die Verwertung des Vermögens des Alpha Trusts hat.

Die dem Verpflichteten zustehenden Rechte müssen nicht unmittelbar verwertbar sein. Es muss ihm lediglich der Zugriff auf ein verwertbares Vermögen ermöglicht werden, wie etwa die im Gesetz beispielsweise angeführten Rechte, nämlich die Teilung oder die Einleitung des Auseinandersetzungsverfahrens zu begehren, Kündigungen vorzunehmen und die sonst zur Ausübung und Nutzbarmachung des gepfändeten Rechtes erforderlichen Erklärungen wirksam für den Verpflichteten abzugeben.

Die vom Verwertungsantrag der betreibenden Partei umfassten Rechte, hinsichtlich derer das Erstgericht die Verwertung bewilligt und eine entsprechende Ermächtigung zur Geltendmachung derselben erteilt hat, sind solche, die – zumindest mittelbar – dem

Verpflichteten zustehen, sodass der diesbezügliche Einwand, dass es sich um unpfändbare und nicht verwertbare Rechte Dritter handeln würde, nicht berechtigt ist.

Nachdem es sich bei den im Spruch der angefochtenen Entscheidung genannten Rechte („insbesondere") um – zumindest mittelbare – Rechte des Verpflichteten als Protektor handelt, ist die Nennung derselben im Spruch des Beschlusses nicht rechtswidrig.

**13.2.2** Weiters bringt der Rekurswerber – wie bereits im Pfändungsverfahren – vor, dass es an der Verwertbarkeit der (bereits rechtskräftig) gepfändeten Rechte mangle.

Um unnötige Wiederholungen zu vermeiden, kann vorerst zur Verwertbarkeit von Rechten auf die bereits zitierten Ausführungen des Fürstlichen Obersten Gerichtshofs in seiner Entscheidung vom 07.09.2018 unter Pkt. 7.5. verwiesen werden, die grundsätzlich auch vom Staatsgerichtshof in seinen Urteilen vom 29.10.2019 (ON 94 und 95) geteilt werden.

Darüber hinaus ist Folgendes festzuhalten:

Auszugehen ist zunächst davon, dass nicht die Pfändung einzelner Gestaltungsrechte des Verpflichteten bewilligt wurde, sondern die dem Verpflichteten zustehenden Gesamtrechte als Treugeber, Protektor und Begünstigter des Alpha Trusts. Die in dem nunmehr angefochtenen Beschluss beispielhaft aufgezählten Einzelrechte decken sich exakt mit jenen, welche auch bei der rechtskräftigen Pfändung der Gesamtrechte („insbesondere") aufgezählt werden. Der Fürstliche Oberste Gerichtshof sah bei der Beurteilung der Verwertbarkeit der Rechte in der bereits mehrfach zitierten Entscheidung vom 07.09.2018 nach der Aktenlage keine Unverwertbarkeit, sondern

hat vielmehr zumindest die mittelbare Verwertbarkeit der gepfändeten Rechte bejaht.

Dass sich zwischenzeitlich die Umstände derart geändert hätten, dass die im Beschluss aufgezählten Rechte, zu deren Verwertung der Betreibende anstelle des Verpflichteten nunmehr ermächtigt wurde, nicht mehr verwertbar wären, erhellt sich für das Rekursgericht nicht und wird im Rekurs auch nicht aufgezeigt.

Die Verwertung von Vermögensrechten im Sinne der Art. 242ff EO kann aus rechtlichen Gründen unmöglich sein, etwa weil die Rechte höchstpersönlich sind und daher auf einen anderen nicht übertragen werden können. Aber auch wenn das Recht als solches nicht übertragen werden könnte, ist die Pfändung zulässig, wenn es wenigstens seiner Ausübung nach übertragen werden kann (vgl. 3 Ob 16/06h).

Vorliegend ist für das Rekursgericht nicht erkennbar, welches Hindernis gegen die beantragte Exekutionsführung in die Gesamtrechte des Verpflichteten vorliegen würde.

Die Frage, ob die Gesamtrechte des Verpflichteten als <u>Treugeber</u> verwertbar sind, was wohl im Hinblick auf die festgestellten Letter of wishes (LOW) vom 27.05.2015 des Verpflichteten angenommen werden könnte, ist nicht entscheidend, stellen doch die Rechte des Verpflichteten <u>als Protektor</u> – wie bereits oben dargestellt – (zumindest mittelbar) verwertbare Rechte dar. Diese dem Verpflichteten als Protektor zustehenden Rechte wurden bereits aufgezählt. Wie schon der Fürstliche Oberste Gerichtshof unter Pkt. 7.4.3 im Beschluss vom 07.09.2018 festhält, ist der Verpflichtete mangels eines entsprechenden Verbots in der Treuhandurkunde sogar berechtigt, sich selbst als Treuhänder einzusetzen, was auch gesetzlich zulässig wäre.

Die beispielhaft aufgezählten Rechte des Verpflichteten in seiner Eigenschaft als Protektor stellen gesamthaft gesehen jedenfalls verwertbare Vermögensrechte dar, sodass den diesbezüglichen Einwendungen im Rekurs der Boden entzogen ist.

Der Hinweis auf Art. 918 PGR geht insoweit jedenfalls ins Leere, da diese Bestimmung ausschliesslich Pflichten (und Rechte) des Treugebers regelt, nicht aber allfällige Befugnisse des Protektors einschränkt.

In diesem Zusammenhang ist festzuhalten, dass – wie im Rekurs selbst eingeräumt – das Recht des Verpflichteten als Protektor zur Bestellung und Abberufung der Treuhänder an keine Voraussetzungen gebunden ist, sodass bereits dadurch ein mittelbarer Zugriff auf Vermögenswerte des Alpha Trust möglich ist und eine Verwertbarkeit der gepfändeten Rechte vorliegt.

Zutreffend weist das Erstgericht hinsichtlich der Rechte des Verpflichteten als Begünstigter des Alpha Trust darauf hin, dass der Fürstliche Oberste Gerichtshof bereits entschieden hat, dass der Verpflichtete aufgrund seiner Gesamtrechte durch Änderungen der Treuhandurkunde zu verwertbaren Geldforderungen gelangen kann. Übersehen werden darf in diesem Zusammenhang auch nicht die Feststellung, dass vom (damaligen) Treuhänder des Alpha Trusts in seiner E-Mail vom 01.07.2015 darauf hingewiesen wird, dass der Verpflichtete als Begünstigter zu seinen Lebzeiten Zugriff auf den Treuhandfonds haben wird, sodass auch die Eigenschaft des Verpflichteten als Begünstigter einen mittelbaren verwertbaren Vermögenswert darstellt und den im Rekurs hiezu erhobenen Einwendungen eine Berechtigung abgesprochen werden muss.

Zusammengefasst ist daher festzuhalten, dass ein Interesse des Betreibenden an der beantragten und vom Erstgericht mit dem angefochtenen Beschluss erteilten Ermächtigung im Hinblick auf

die dem Verpflichteten zukommenden dominierenden Rolle im Alpha Trust, die ihm zumindest einen mittelbaren Zugriff auf das Vermögen dieses Trustes ermöglicht, auf der Hand liegt, sodass der Einwand der mangelnden Verwertbarkeit der Rechte keine Berechtigung zukommt.

Die Rechtsrüge hat daher erfolglos zu bleiben,

14.   Auch der behauptete Verfahrensmangel liegt nicht vor.

Gemäss § 428 ZPO iVm Art. 51 EO sind Beschlüsse über widerstreitende Anträge – wie hier – zu begründen. Hiebei sind die Anträge, über welche im Beschluss entschieden wird, und der Sachverhalt, falls nicht beides aus den gleichzeitig mitgeteilten Schriftsätze oder aus der Protokollabschrift zu entnehmen ist, in die Begründung insoweit aufzunehmen, als es zum Verständnis des Ausspruches oder der Verfügung erforderlich ist (§ 428 Abs. 2 ZPO). Eine Begründung kann nur dann ihren Zweck erfüllen, wenn sie Erwägungen offenlegt und nachvollziehbar macht, die den Richter dazu veranlasst haben, bestimmte (strittige) Tatsachen als feststehend anzusehen bzw. die massgeblichen Rechtsfragen in die eine oder die andere Richtung zu beantworten. Nur wenn die Entscheidungsgrundlagen unklar bleiben, liegt eine mangelhafte Begründung und damit regelmässig ein erheblicher Verfahrensmangel vor. Vorliegend hat der Erstrichter ausreichend deutlich zum Ausdruck gebracht, aufgrund welcher rechtlichen Grundlage er zur stattgebenden Entscheidung gelangt ist.

Abgesehen davon, dass auch der Hinweis im Beschluss auf eine bereits im Verfahren abgehandelte Rechtsfrage eine Begründung darstellt und der Rekurswerber nicht aufzeigt, weshalb eine zuverlässige Überprüfung der angefochtenen Entscheidung nicht möglich sein sollte – was Voraussetzung für die Annahme des Vorliegens eines Begründungsmangels ist –, begründet der Erstrichter den von ihm festgestellten Sachverhalt auch in

rechtlicher Hinsicht ausreichend; dies auch was die Verwertbarkeit der Vermögensrechte des Verpflichteten betrifft.

Ein Verfahrensmangel haftet der angefochtenen Entscheidung bzw. dem vorangehenden Verfahren nicht an.

15.    Es liegt aber auch keine Nichtigkeit vor.

Gemäss § 50 JN kann gegen Personen, welche im Inland keinen Wohnsitz haben, wegen vermögensrechtlicher Ansprüche bei dem Landgericht u.a. Exekution beantragt werden, wenn sich Vermögen dieser Partei im Inland befindet. Bei Forderungen gilt der Wohnsitz des Drittschuldners als der Ort, an welchem sich das Vermögen befindet.

Die betreibende Partei hat die Forderung gegen den Verpflichteten, auf welche sie im Wege des Drittverbotes greifen will, nur zu behaupten und die zur Individualisierung dieser Forderung erforderlichen Angaben zu machen. Ob und inwieweit ein solcher Anspruch überhaupt besteht, ist bei der Bewilligung der Exekution nicht zu beurteilen. Nur dann, wenn die mangelnde Existenz des behaupteten Rechtsverhältnisses aus dem Antrag abzuleiten und damit das Nichtbestehen der behaupteten Forderung offenkundig ist, muss der Exekutionsantrag abgewiesen werden (LES 2010, 70). Es ist unerheblich, ob der Drittschuldner einen solchen Anspruch verneint, zumal das Drittverbot ohnehin ins Leere geht, falls das von der betreibenden Partei behauptete Anspruchsverhältnis nicht besteht (LES 1998, 166). Nachdem hier der Sitz des Drittschuldners im Inland liegt, ist eine Zuständigkeit für die Drittschuldnerklage gegeben, sodass schon daher die inländische Gerichtsbarkeit für die beantragte Exekution gegeben ist. Darüber hinaus hat die betreibende Partei ein konkretes Vorbringen zur Rechtsstellung des Verpflichteten in Bezug auf die Drittschuldnerin erstattet und auch deren Funktion in Bezug auf den Alpha Trust bescheinigt, sodass das Erstgericht

auf Basis des § 50 JN zu Recht seine Zuständigkeit angenommen hat.

Zufolge Zuständigkeit des Fürstlichen Landgerichts und inländischer Gerichtsbarkeit liegt daher keine Nichtigkeit vor.

16.  Was den Einwand des „unzulässigen Haftungsdurchgriffs" betrifft, verkennt der Rekurswerber, dass der Auffangtatbestand der Exekution auf andere Vermögensrechte gemäss Art. 242ff EO sicherstellen soll, dass alle denkbaren Vermögenswerte des Verpflichteten in Exekution gezogen werden können. An eben dieser Zwecksetzung des Gesetzes hat sich die Interpretation dieser Gesetzesstellen zu richten. Es genügt dabei konsequenterweise eine mittelbare Verwertbarkeit der gepfändeten Gesamtrechte. Es ist im Rahmen der Pfändung von Gesamtrechten – wie hier – gerade nicht erforderlich, dass die Ausübung einzelner Befugnisse des Verpflichteten unmittelbar einen Vermögenswert nutzbar macht, solange und insoweit die konkrete Ausübung darauf gerichtet ist, Vermögen des Verpflichteten der Zwangsvollstreckung zuzuführen. Wie bereits dargelegt sind die vom angefochtenen Beschluss umfassten aus dem Gesamtrecht des Verpflichteten fliessenden Einzelrechte – zumindest unmittelbar – verwertbar und vermögenswert.

Es ist einer Forderungsexekution, aber auch einer Exekution auf andere Vermögenswerte im Sinne der Art. 242ff EO, immanent, dass das Exekutionsverfahren ohne kontradiktorische Einbeziehung des Drittschuldners durchgeführt wird. Dem Drittschuldner steht einerseits das Widerspruchsverfahren im Sinne des Art. 20 EO offen, andererseits ginge die Exekution ohnehin ins Leere, wenn das gepfändete Recht nicht dem Verpflichteten zusteht, was eine Widerspruchsklage überflüssig machen würde. Es können grundsätzlich nur Forderungen bzw. Rechte gepfändet werden, die dem Verpflichteten zustehen. Der betreibenden Partei wurde ja ausdrücklich die Ermächtigung erteilt, die Rechte

anstelle des Verpflichteten geltend zu machen, d.h., dass ausschliesslich Rechte geltend gemacht werden können, die auch tatsächlich dem Verpflichteten zustehen. Ein unzulässiger Haftungsdurchgriff im Exekutionsverfahren liegt daher nicht vor.

17. Was die behauptete Unverhältnismässigkeit der Exekution betrifft, ist vorab darauf hinzuweisen, dass bereits im Bewilligungsverfahren die Pfändung der Gesamtrechte des Verpflichteten als Treuhänder, Protektor und Begünstigter des Alpha Trusts nicht in Zweifel gezogen wurde. Das Verhältnismässigkeitsprinzip sagt, dass die gewählte Massnahme zur Erreichung des angestrebten Ziels geeignet ist. Dass und weshalb dies nicht der Fall sein sollte, vermag der Rekurswerber nicht aufzuzeigen. In Beachtung des Grundsatzes der Verhältnismässigkeit der Mittel zum angestrebten Erfolg kann bei einer vollstreckbaren Forderung von insgesamt CHF 91'595'445.97 von keiner Unverhältnismässigkeit der herangezogenen Exekutionsmittel gesprochen werden, wenngleich im Verfahren 08 EX.2016.839 Forderungen der betreibenden Partei gegen den Verpflichteten in Exekution gezogen wurden.

Der angefochtenen Entscheidung haftet demzufolge auch kein Verstoss gegen das Verhältnismässigkeitsprinzip, welches grundsätzlich auch in der Exekutionsordnung Anwendung findet, an.

18. Zusammenfassend ist daher festzuhalten, dass der betreibenden Partei zulässigerweise die Verwertung der Gesamtrechte des Verpflichteten als Treugeber, Protektor und Begünstigter des Alpha Trusts bewilligt und ihr die entsprechenden Ermächtigungen erteilt wurden. Die angefochtene Entscheidung ist daher nicht zu beanstanden und kommt dem Rekurs des Verpflichteten sohin keine Berechtigung zu.

15. Die von der betreibenden Partei als im Rechtsmittelverfahren obsiegend zutreffend verzeichneten Kosten für die Rekursbeantwortung sind als weitere Exekutionskosten in der verzeichneten Höhe zu bestimmen.


**FÜRSTLICHES OBERGERICHT, 1. Senat**

Vaduz,   am 15.09.2020S

Der Vorsitzende

Dr. Wilhelm Ungerank LL.M.



Für die Richtigkeit der Ausfertigung

Eva Marte

# Rechtsmittelbelehrung

Gegen diesen Beschluss ist kein Rechtsmittel zulässig.