# EXHIBIT 8



The Principality of Liechtenstein
PRINCELY
## LAND COURT

Deadline to file an appeal: 09.12.20

| Office of Attorneys |
| --- |
| **November 25, 2020** |
| Seeger, Frick & Partner |

Deadline for payment of costs: 23.12.20

Please always specify document number <u>08 EX.2016.5802</u> ON 158

# RULING

The Princely Land Court in Vaduz through the Judge of the Princely Land Court Dr Roger Beck in lawsuit of:

**Complainant Party:**   through Vitaly Ivanovich Smagin, Russian Federation, represented by office of attorneys Seeger, Frick & Partner AG, address: Landstrasse 81, 9494 Schaan,

vs.

**Obligated Party:**   through Ashot YEGIAZARYAN, REDACTED , USA-90210 Beverly Hills, California, represented by Schurti Partners Rechtsanwälte AG, address Zollstrasse 2, 9490 Vaduz,

**Claimant:**   Evgeniy Nikolaevich Ratnikov, Russian Federation, represented by Mag. Christian Maitz, address: Industriering 14, 9491 Ruggell

**in respect of:**   Approval of the enforcement claim (StW: CHF 91'605'445.97)

## held that:

**The Claimant's claim to the Princely Land Court for the suspension of the said proceedings under number 08 EX.2016.5802 in accordance with Art. 51 of the Enforcement Procedure Act in conjunction with Section 159 of the Civil Procedure Code, in conjunction with Art. 20, paragraph 1 of the Bankruptcy Procedure Act is <u>rejected</u>.**

**The Claimant is required to pay the Complainant party the costs of CHF 1,663.20 for the withdrawal of the claim to suspend within four weeks; otherwise, the enforcement will be sought.**

## Rationale:

In the claim in question (ON 141a) received on 11.09.2020, the Claimant requested the above and stated the following:

The Claimant is the insolvency administrator of the Complainant party, appointed on 20.08.2020 by the Moscow Arbitration Court. According to paragraph 159 in conjunction with paragraph 1 of Art. 20 of the Bankruptcy Procedure Act, all legal disputes where a party to the proceedings is an Insolvent Debtor shall be legally suspended when the bankruptcy proceedings are initiated, if this involves any property related to the bankruptcy estate. The same is valid for the enforcement and cassation proceedings under consideration. The suspension is due to the fact itself. The ruling on the suspension becoming effective is solely of a declarative effect. When initiating bankruptcy proceedings, the Insolvent Debtor loses its powers to manage and represent the bankruptcy estate and can no longer perform any procedural actions. This is equivalent to procedural incapacity and justifies the official acceptance of the invalidity of the proceedings affected by this defect. The Insolvent Debtor is replaced by the insolvency administrator on behalf of the bankruptcy estate. When starting the bankruptcy proceedings, the insolvency administrator becomes a party to the proceedings. The Claimant also refers to part 6 of Art. 1 of the Law of the Russian Federation "On Insolvency", according to which foreign court decisions in cases of insolvency (bankruptcy) are recognized within the territory of the Russian Federation in accordance with the international treaties of the Russian Federation (ON 141a).

The claim was sent to the Complainant party and the obligated party for consideration. There was no feedback from the obligated party. The **Complainant party** expressed its opinion of the Claimant's claim as follows (ON 154, ON 155, ON 156, and ON 157):

The Claimant's claim is an interlocutory dispute and, if the Complainant had won it, he would have been entitled to reimbursement of costs, which, in the absence of an agreement between Liechtenstein and the Russian Federation, could not have been enforced and therefore an claim for bail would have been submitted. None of the facts about the release from obligations will help the Claimant, and the alleged procedural costs will include a hearing on the examination of evidence, in which, apart from the Complainant and the Claimant, Pavel Viktorovich Novikov will also need to be heard. It will also be necessary to hear an expert on the RF bankruptcy legislation. Thus, the security deposit will be CHF 211,680.00.

The Claimant claims that bankruptcy proceedings have been initiated in respect of the Complainant's property in Moscow. However, in Moscow there are no bankruptcy

proceedings in the understanding of Liechtenstein. It is correct that the Moscow Arbitration Court began proceedings in respect of the Complainant's property under number A40-17597 / 20-4-36F by the resolution dated 20.08.2020. This is a type of proceedings that are similar to the litigation to prevent commercial insolvency in Liechtenstein. The proceedings are a preliminary debt settlement process, not bankruptcy proceedings, and are governed by the Russian bankruptcy law. The Claimant is trying, in an unprofessional and superficial way, to call these proceedings the bankruptcy proceedings or the proceedings on bankruptcy. The first section of the Russian bankruptcy law is a settlement procedure and designed to control the proper payment of debts and to establish a payment schedule. A financial manager is appointed, who, however, is inconsistent with the insolvency administrator. The former collects information, calls a meeting of creditors, keeps the appropriate minutes and gives conditions and recommendations regarding the payment schedule. In the process of debt settlement, the debtor, without the consent of the financial manager, has no right to purchase new goods or shares in the amount of more than RUB 50,000.00, to grant loans or guarantees, transfer or pledge assets. If the debtor does so without consent, the financial manager may challenge the orders in arbitration, but they could not be automatically cancelled. The financial manager does not have the right to dispose of the debtor's assets. The latter can still collect debts from debtors, continue legal proceedings, and has the full right to collect payments. All creditors can still make valid payments to it, and it can claim any debt to be reclaimed. The financial manager can join the debtor's proceedings and, according to the Liechtenstein law, become a third party to the process. The possibility to treat the proceedings by the resolution of the Moscow court as bankruptcy abroad in accordance with Art. 5 paragraph 2 of the Bankruptcy Procedure Act, should be determined taking into account the many ways of resolving insolvency in legal norms. It is necessary that the foreign bankruptcy proceedings comply with the principles of the Liechtenstein Bankruptcy Procedure Act.

The Complainant is in the process of settling the debt and thus the Complainant has the opportunity to restructure its liabilities under the supervision of the court and the financial manager. If this fails, and the next stage is reached, it will be possible to talk about foreign bankruptcy proceedings. Another difference is that the Complainant does not lose the right to dispose of its assets in the process of restoring solvency, even if certain transactions are subject to control and possible legal challenge by the financial manager.

The financial manager does not have the right to make his own decisions, he can only lodge claims to the court. The Complainant retains the right to collect debts on his own behalf. He retains his legal capability and capacity, and manages his own proceedings.

Thus, the Complainant is not in bankruptcy proceedings, so there are no conditions for suspension. The purpose of the suspension is to give the insolvency administrator the time to declare that the claim is admitted or the proceedings are continued. Nevertheless, the financial manager does not have such rights of disposition. The debt settlement process in Russia has no suspensive effect.

For pending enforcement proceedings, the suspensive effect in accordance with Art. 20 paragraph 1 of the Bankruptcy Procedure Act does not apply. They would not be suspended. Even if the ruling of the Moscow court had legal consequences within the country, it would not have led to the suspension of the active enforcement proceedings.

The Claimant does not claim that the current Russian proceedings are comparable to the bankruptcy proceedings in Liechtenstein. He only touched upon the question of Liechtenstein's bankruptcy law. He also does not argue that the Complainant has lost the right to dispose of its assets or that the proceedings in Russia have the suspensive effect.

Regarding the acknowledgement of legal decisions on bankruptcy between Liechtenstein and Russia, it is argued that there are neither bilateral agreements on the acknowledgement of legal decisions on bankruptcy, nor mutual claims of governments. In accordance with Art. 5 paragraph 2 of the Bankruptcy Procedure Act, movable property located in Liechtenstein was to be transferred to a foreign bankruptcy authority at its request, unless bankruptcy proceedings were initiated in Liechtenstein. The transfer is rejected if the foreign country does not respect the principle of reciprocity. The Russian courts did not reciprocate with respect to the insolvency proceedings opened in Liechtenstein. Liechtenstein's bankruptcy proceedings would not have been recognized in Russia.

The Moscow court's judgment submitted by the Claimant was partially biased or incorrectly translated. Thus, the term "insolvency administrator" is used throughout the translation, although the word "financial" should be used in the German translation. The Claimant was not appointed as an insolvency administrator, but as a financial manager and thus as a supervisor of the assets of the respective debtor. The Moscow court ruled not the bankruptcy, but the debt restructuring.

Thus, there are no such conditions as may be necessary for the suspension of the relevant enforcement proceedings (ON 154).

In conclusion, the Complainant party argued that there were no bankruptcy proceedings abroad, which would have the suspensive effect provided for in Art. 20 paragraph 1 of the Bankruptcy Procedure Act. In the civil proceedings between the Claimant and the Obligor in the United States District Court for the Central District of California (case no. 2: 14-cv-09764-RGK-PLA), the Claimant, on September 14, 2020, requested to be allowed to intervene in accordance with the ruling of the Moscow court and substantiated this by the fact that he wanted to protect the interests of the Complainant's creditors, which should have been ensured through supervision and prevention of dispersal of assets. This petition was rejected by the ruling of 09.11.2020 due to the absence of a preliminary claim for recognizing the Claimant as the legal representative of the Complainant or his assets (ON 156).

The Complainant party additionally stated that the Claimant, as a financial manager, sent the relevant draft petition by email dated 07.09.2020 to attorney Mark Williams, who supported the debtor in disputes with the Complainant in the United States. There was not a word about the fact that the Complainant may have lost the right to dispose of his own assets or that the applicant for the suspension of proceedings was treated as an "insolvency administrator". He describes that in Moscow the "debt restructuring" procedure is held in respect of the Complainant (ON 157).

**In view of the above, the court considered the following:**

In accordance with Art. 20 of the Bankruptcy Procedure Act, the legal disputes in which a Complainant or a defendant is the Insolvent Debtor, with the exception of those proceedings described in Art. 19 paragraph. 3, shall be suspended when the bankruptcy proceedings are initiated. In this regard, the Princely Court of Appeal clarified that the principle of universality of bankruptcy proceedings applies by definition in accordance with the Liechtenstein law (In OGH of 06.05.2003, 2 Cg 2001.68, LJZ 1/04).

If the foreign insolvency proceedings are admitted in Liechtenstein, then this leads to the fact that, from the moment of the opening of the bankruptcy proceedings abroad, the power to conduct the proceedings (procedural legitimation), which shall be regulated in accordance with the procedural law of Liechtenstein and be a prerequisite for conducting the proceedings, shall be transferred to a foreign insolvency administrator (see also LES 2002, 302f).
The Princely Supreme Court has indicated that "foreign bankruptcy proceedings" in respect of the assets of one of the parties can have legal consequences in Liechtenstein only if the foreign state concerned is reciprocal (In OGH of 06.05.2003 to 2 Cg 2001.68, LJZ 1/04).

The Principality of Liechtenstein did not conclude bilateral agreements on bankruptcy proceedings with Russia. However, the principle of strict territoriality was "mitigated" in the proceedings in Liechtenstein, for example, by confirming the competence to proceed of the insolvency administrator in Switzerland (LES 1982, 81). In addition, the Princely Supreme Court upheld the "claim for acknowledgement" of reciprocity in relation to Germany - on the basis of paragraphs 237, 238 of the German Bankruptcy Procedure Act, the litigation practice of the German courts and the German Bankruptcy Regulations, and Art. 102 of the EU Bankruptcy Provisions. The German insolvency law establishes the corresponding powers of the insolvency officer, therefore the insolvency officer may in principle exercise all the powers to which he/she is entitled under the German law (In OGH of 06.05.2003 to 2 Cg 2001.68, LJZ 1/04). Accordingly, pursuant to the local litigation practice, in order to confirm the competence to proceed of a foreign insolvency administrator or officer in local court proceedings, it is first of all important that the person concerned in the foreign court proceedings is legally determined as an insolvency administrator or officer and, therefore, as a party to the proceedings.

Further, in terms of these proceedings, the Claimant claims that he is the insolvency administrator of the Complainant party. However, he does not indicate what his powers in the Russian legal proceedings are in this regard and what (procedural) rights the Complainant party still has. With regard to these proceedings, he only declares that the opening of the bankruptcy proceedings will lead to the fact that the Insolvent Debtor will lose the authority to manage and dispose of the bankruptcy estate, as well as the competence to proceed.

In contrast, the Complainant party argues that the Claimant is just a financial manager without the right to make his own decisions and can only apply to the court. The Complainant party retained the right to dispose of its assets and the right to collect debts on its own behalf. Regarding its proceedings, the Complainant party retained its legal capability and capacity, and it conducts these proceedings itself.

These claims by the Complainant party are based on the "declaration-notice" of the Claimant (ON 141). This declaration is the same document that was attached to the said claim and used by the Claimant as a substantiation for his claim. The only difference is that the Claimant submitted his "declaration-notice" to the Land Court on September 7, 2020, without any attorney's representation and attached a translation into German.

In the "declaration-notice", the Claimant party mentions that he was the "financial manager" of the Complainant party during the Complainant party's debt restructuring procedure. The Claimant does not mention that he is the insolvency administrator of the Complainant party or that the Complainant party does not have (no longer has) the right to collect debts on its own behalf or to conduct proceedings.

In addition, the Claimant also submitted a "legal opinion" dated 12.09.2020 (ON 144). It, particularly, says: "In accordance with Article 213.9 of Federal Law of 26.10.2002 No. 127-FZ, a financial manager has the right to participate in the debt restructuring procedure as a third party (...) In addition, in accordance with Articles 213.12-213.23 of Federal Law of 26.10.2002 No. 127-FZ "On Insolvency (Bankruptcy)" in respect of debts of persons against whom the debt restructuring procedure has been initiate. This plan must be submitted to the financial manager and approved by the court (...) In connection with the circumstances that have led to the recognition of the bankruptcy petition of JSCB "Absolut Bank" (PJSC) against Vitaly Ivanovich Smagin to be legitimate, the involvement of his financial manager as a third party to the court proceedings previously opened by the person in respect of whom the debt restructuring procedure was initiated seems to be the most appropriate and, to the maximum extent, legal way to exercise his rights, as well as the rights of his creditors and debtors"(ON 144).

For all these reasons, the Russian procedure is a debt settlement procedure or rather a debt restructuring procedure for the Complainant party. In this case, the Claimant acts as a financial manager, who, even in Russian court proceedings, is a third party and not a party to the proceedings. In this regard, neither in the Russian legal proceedings, nor in these proceedings, the powers of the Complainant party to conduct proceedings have not, by definition, been revoked, therefore it can continue to perform procedural actions in terms of these proceedings. Thus, in Russia, in fact, there are no bankruptcy proceedings against the Complainant party, therefore the current proceedings cannot be suspended in accordance with Art. 20 paragraph 1 of the Enforcement Procedure Act.

Thus, the Claimant party's claim for bail was no longer subject to consideration. Based on the foregoing, the court made this decision.

Princely Land Court
Vaduz, November 23, 2020
Dr Roger Beck
Judge of the Princely Land Court

Certified

/*stamp*/: PRINCELY LAND COURT/

Iris Feuerstein

## Appeal

An appeal against this ruling can be lodged with the Princely Court of Appeal, Vaduz, within 14 days without extension from the date of delivery of the writ of appeal. The writ of appeal shall be submitted in writing in duplicate to the Princely Land Court in Vaduz, but it can also be declared orally for the record. It shall contain a specific statement about the extent to which the ruling is challenged, a brief description of the grounds for the challenge (causes for the writ of appeal), the factual arguments and evidence, using which the causes for the complaint can be proved true, and a statement whether the ruling should be cancelled or changed, and if applicable, what was requested (Claim for the Writ of Appeal).

If the amount of money declared in the enforcement claim or the value of the subject matter in dispute does not exceed CHF 5,000.00 (petty case), then the ruling of the Princely Land Court may be challenged by filing an appeal solely on the grounds listed in paragraph 485 of the Civil Procedure Code.



**FÜRSTENTUM LIECHTENSTEIN**
**FÜRSTLICHES LANDGERICHT**

Advocatur
TRIST: 09.12.20/ml
25. Nov. 2020
Seeger, Frick & Partner

G-TRIST: 23.12.20/ml

Aktenzeichen bitte immer anführen
<u>08 EX.2016.5802</u>
ON 158

# BESCHLUSS

Das Fürstliche Landgericht in Vaduz hat durch den Fürstlichen Landrichter Dr. Roger Beck in der Rechtssache der

**betreibenden Partei:**     Vitaly Ivanovich Smagin, Russische Föderation
vertreten durch Advocatur Seeger, Frick & Partner
AG, Landstrasse 81, 9494 Schaan

wider die

**verpflichtete Partei:**     Ashot YEGIAZARYAN, REDACTED
USA-90210 Beverly Hills, California
vertreten durch Schurti Partners Rechtsanwälte
AG, Zollstrasse 2, 9490 Vaduz

**Antragsteller:**     Evgeniy Nikolaevich Ratnikov
Russische Föderation
vertreten durch Mag. Christian Maitz, Industriering
14, 9491 Ruggell

**wegen:**     Exekutionsbewilligung (StW: CHF 91'605'445.97)

## beschlossen:

Der Antrag des Antragstellers, das Fürstliche Landgericht möge das gegenständliche Verfahren zu 08 EX.2016.5802 gemäss Art. 51 EO iVm § 159 ZPO iVm Art. 20 Abs 1 KO unterbrechen, wird <u>abgewiesen.</u>

Der Antragsteller ist schuldig, der betreibenden Partei die mit CHF 1'663.20 bestimmten Kosten der Äusserung zum Unterbrechungsantrag, dies binnen vier Wochen bei sonstiger Eekution zu bezahlen.

## Begründung:

Mit dem hg. am 11.09.2020 eingelangten Antrag (ON 141a) beantragt der Antragsteller wie im Spruch ersichtlich und brachte dazu vor:

Beim Antragsteller handle es sich um den am 20.08.2020 vor dem Konkursgericht Moskau bestellten Masseverwalter der betreibenden Partei. Gemäss § 159 iVm Art. 20 Abs 1 KO würden durch eine Konkurseröffnung sämtliche Rechtsstreitigkeiten, in denen der Gemeinschuldner Partei ist, ex lege unterbrochen werden, soweit diese das zur Konkursmasse gehörende Vermögen betreffen würde. Dies gelte auch für hängige Exekutions- und Rechtsmittelverfahren. Die Unterbrechung trete ipso facto ein. Der Beschluss über den Eintritt der Unterbrechung habe nur deklarative Wirkung. Mit der Konkurseröffnung verliere der Gemeinschuldner die Verwaltungs- und Vertretungsbefugnis über die Konkursmasse und könne keine Verfahrenshandlungen mehr setzen. Dies sei der Prozessunfähigkeit gleichzusetzen und begründe eine amtswegig wahrzunehmende Nichtigkeit des von diesem Mangel betroffenen Verfahrens. An die Stelle des Gemeinschuldners trete der Masseverwalter namens der Konkursmasse. Der Masseverwalter sei durch die Konkurseröffnung Verfahrenspartei. Der Antragsteller weist zudem auf Art. 1 Z 6 russInsG hin, wonach bei Fehlen internationaler Verträge, Entscheidungen ausländischer Gerichte in Konkursangelegenheiten in Russland auf Grundlage der Gegenseitigkeit anerkennt werden würden (ON 141a).

Der Antrag wurde der betreibenden und verpflichteten Partei zur Äusserung zugestellt. Seitens der verpflichteten Partei ist keine Äusserung eingelangt. Die **betreibende Partei** äusserte sich zum Antrag des Antragstellers zusammengefasst wie folgt (ON 154, ON 155, ON 156 und ON 157):

Der Antrag des Antragstellers stelle einen Zwischenstreit dar und sollte der Betreibende in diesem obsiegen, stünde ihm eine Kostenersatzanspruch zu, wobei mangels entsprechender Abkommen zwischen Liechtenstein und der Russischen Föderation dieser nicht vollstreckt werden könnte und sohin ein Kautionsantrag gestellt werden würde. Dem Antragsteller komme kein Befreiungstatbestand zugute und der voraussichtliche Verfahrensaufwand erstrecke sich auf eine Tagsatzung zur Beweisaufnahme, in welcher neben dem Betreibenden und dem Antragsteller auch Pavel Viktorovich Novikov einzuvernehmen sei. Erforderlich sei auch ein Sachverständiger für russisches Insolvenzrecht einzuvernehmen. Die Sicherheitsleistung belaufe sich sohin auf CHF 211'680.00.

Der Antragsteller behaupte, dass in Moksau über das Vermögen des Betreibenden ein Konkursverfahren eröffnet worden sei. In Moskau gebe es aber kein Konkursverfahren im liechtensteinischen Sinn. Richtig sei, dass ein Moskauer Handelsgericht hinsichtlich des Vermögens des Betreibenden zu Aktenzeichen A40-17597/20-4-36F mit Verfügung vom 20.8.2020 ein Verfahren eröffnet habe. Dabei handle es sich um eine Verfahrensart, die dem liechtensteinischen Nachlassvertragsverfahren ähnle. Dieses Verfahren sei ein vorgelagerter Schuldenregulierungsprozess und kein Konkursverfahren und sei in der russischen Insolvenzverordnung geregelt. Der Antragsteller versuche, dieses laienhaft und oberflächlich als Konkurs- oder Insolvenzverfahren zu bezeichnen. Beim ersten Abschnitt im russischen Insolvenzrecht handle es sich um ein Regulierungsverfahren und sei dazu da, eine ordentliche Zahlung der Schulden zu überwachen und einen Zahlungsplan festzustellen. Es werde ein Finanzverwalter ernannt, dem allerdings nicht die Rolle des Masseverwalters zukomme. Dieser sammle Informationen, berufe die Gläubigerversammlung ein, führe das entsprechende Protokoll und bringe Vorbehalte oder Empfehlungen zum Zahlungsplan an. Während dem Schuldenregulierungsverfahren dürfe der Schuldner ohne Zustimmung des Finanzverwalters keine neuen Güter oder Geschäftsanteile über RUB 50'000.00 erwerben, keine Darlehen gewähren oder Garantien eingehen, Vermögenswerte übertragen oder verpfänden. Wenn der Schuldner dies ohne Zustimmung tue, dann könne der Finanzverwalter die Dispositionen beim Konkursgericht anfechten, diese seien jedoch nicht automatisch nichtig. Der Finanzverwalter habe keine Verfügungsgewalt über das Vermögen des Schuldners. Letzterer könne trotzdem Schuldner betreiben, Gerichtsverfahren fortführen und sei auch vollständig zum Inkasso bevollmächtigt. Alle Gläubiger könnten nach wie vor gültig an ihn zahlen und er könne jede Forderung fällig stellen. Der Finanzverwalter könne einem Gerichtsverfahren des Schuldners beitreten und würde nach der liechtensteinischen Diktion zu einem Nebenintervenienten. Ob das Verfahren aufgrund des Moskauer Entscheids als Konkurs im Ausland gemäss Art. 5 Abs 2 KO zu qualifizieren sei, sei unter Berücksichtigung der Vielfalt der Insolvenzbereinigung in den Rechtsordnungen zu bestimmen. Erforderlich sei, dass das ausländische Insolvenzverfahren den Grundsätzen der liechtensteinischen Konkursordnung entspreche.

Der Betreibende befinde sich im Schuldenregulierungsverfahren und so habe der Betreibende die Möglichkeit, seine Verbindlichkeiten unter Aufsicht des Gerichts und des Finanzverwalters zu restrukturieren. Sollte dies misslingen und es zur nächsten Phase kommen, könne von einem Auslandskonkurs gesprochen werden. Ein weiterer Unterschied sei, dass der Betreibende während des Sanierungsverfahrens die Verfügungsgewalt über sein Vermögen nicht verliere, selbst wenn bestimmte Geschäfte der Aufsicht und möglichen gerichtlichen Anfechtung durch den Finanzverwalter unterliegen.

Der Finanzverwalter habe kein eigenes Entscheidungsrecht, sondern könne nur gerichtliche Anträge stellen. Der Betreibende sei weiterhin berechtigt, Forderungen im eigenen Namen einzuziehen. Er behalte die Prozess- und Handlungsfähigkeit und führe seine Prozesse selbst.

Der Betreibende befinde sich daher in keinem Konkursverfahren, sodass es gegenständlich an den Voraussetzungen einer Unterbrechung fehle. Sinn der Unterbrechung sei es, dem Masseverwalter Zeit zu geben, sich zur Anerkennung der Forderung oder Fortführung des Verfahrens zu erklären. Dem Finanzverwalter stehe aber keine solche Verfügungsbefugnis zu. Das russische Schuldenregulierungsverfahren habe keine Unterbrechungswirkung.

Für anhängige Exekutionsverfahren gelte die Unterbrechungswirkung der Konkurseröffnung gemäss Art. 20 Abs 1 KO nicht. Diese würden nicht unterbrochen werden. Selbst wenn der Moskauer Entscheid im Inland Rechtsfolgen entfalten würde, würde es nicht zu keiner Unterbrechung des aktiven Exekutionsverfahrens kommen.

Der Antragsteller behaupte nicht, dass das derzeit hängige russische Verfahren mit dem liechtensteinischen Konkurs vergleichbar sei. Er bringe nur zum liechtensteinischen Konkursrecht etwas vor. Er behaupte auch nicht, dass der Betreibende die Verfügungsgewalt über sein Vermögen verloren habe oder dass das russische Verfahren in Russland eine Unterbrechungswirkung habe.

Hinsichtlich der Anerkennung konkursrechtlicher Entscheidungen zwischen Liechtenstein und Russland wird vorgebracht, dass keine bilateralen Abkommen über die Anerkennung insolvenzrechtlicher Entscheidungen bestehen und es gebe keine Gegenrechtserklärung der Regierung. Gemäss Art. 5 Abs 2 KO sei das im Inland befindliche bewegliche Vermögen der ausländischen Konkursbehörde auf deren Verlangen auszufolgen, sofern nicht der Konkurs im Inland eröffnet werde. Die Ausfolgung sei abzulehnen, insoweit der ausländische Staat nicht Gegenseitigkeit beobachte. Seitens russischer Gerichte werde gegenüber den in Leichenstein eröffneten Insolvenzverfahren keine Gegenseitigkeit gewährt. In Russland würde ein liechtensteiner Konkurs nicht anerkannt werden.

Der vom Antragsteller vorgelegte Moskauer Entscheid sei teilweise tendenziös bzw falsch übersetzt worden. So ziehe sich die Bezeichnung Konkursverwalter über die gesamte Übersetzung, obwohl die deutsche Übersetzung das Wort „finanz-„ enthalten müsste. Der Antragsteller sei nicht zum Masseverwalter, sondern zum financial manager und damit zum Aufseher über das Vermögen des betreffenden Schuldners bestellt worden. Vom Moskauer Gericht sei nicht der Konkurs, sondern die Umstrukturierung der Schulden gewährt worden. Die

Voraussetzungen für die Unterbrechung des gegenständlichen Exekutionsverfahrens seien daher nicht gegeben (ON 154).

Abschliessend brachte die betreibende Partei vor, dass kein Konkursverfahren im Ausland vorliege, dem die Unterbrechungswirkung nach Art. 20 Abs 1 KO zukommen würde. Im Zivilverfahren zwischen dem Antragsteller und dem Verpflichteten vor dem United States District Court for the Central District of California (AZ: 2:14-cv-09764-RGK-PLA) begehre der Antragsteller mit Eingabe vom 14.09.2020 zufolge des Moskauer Entscheids einschreiten zu dürfen und habe dies damit begründet, dass er den Schutz der Interessen der Gläubiger des Betreibenden, welcher durch Aufsicht und Verhinderung der Vermögensverstreuung sichergestellt werden solle. Dieser Antrag sei mangels vorgängigen Antrags auf Anerkenntnis des Antragstellers als gesetzlicher Vertreter des Betreibenden bzw. seines Vermögens mit Beschluss vom 09.11.2020 abgewiesen worden (ON 156).

Die betreibende Partei brachte dazu ergänzend vor, dass der Antragsteller als Finanzverwalter dem Rechtsanwalt Marc Williams, dessen Unterstützung sich der Verpflichtete in Auseinandersetzungen mit dem Betreibenden in den Vereinigten Staaten bediene, mit E-Mail vom 07.09.2020 einen Entwurf der entsprechenden Eingabe zukommen. Darin finde sich kein Wort davon, dass der Betreibende etwa seine Verfügungsmacht über eigenes Vermögen verloren hätte oder der Unterbrechungswerber als „Masseverwalter" eingesetzt worden wäre. Er beschreibe selbst, dass in Moskau ein Verfahren „zur Umstrukturierung der Schulden" des Betreibenden stattfinde (ON 157).

**Das Gericht hat hiezu erwogen:**

Gemäss Art. 20 KO werden anhängige Rechtsstreitigkeiten, in denen der Gemeinschuldner Kläger oder Beklagter ist, mit Ausnahme der im Art. 19 Abs. 3 bezeichneten Streitigkeiten, durch die Konkurseröffnung unterbrochen. Diesbezüglich hat der Fürstliche Oberste Gerichtshof klargestellt, dass nach liechtensteinischem Recht grundsätzlich das Prinzip der Universalität des Konkursverfahrens gilt (B OGH vom 06.05.2003, 2 Cg 2001.68, LJZ 1/04).

Wenn ein ausländisches Insolvenzverfahren in Liechtenstein anerkannt wird, hat dies zur Folge, dass damit ab dem Zeitpunkt der Konkurseröffnung im Ausland die nach liechtensteinischem Prozessrecht zu beurteilende und eine Prozessvoraussetzung darstellende Prozessführungsbefugnis (Prozesslegitimation) auf den ausländischen Insolvenzverwalter übergeht (siehe dazu auch LES 2002, 302f).

Der Fürstliche Oberste Gerichtshof hat darauf hingewiesen, dass ein „Auslandskonkurs" über das Vermögen einer Partei nur dann Rechtsfolgen im

Inland entfalten kann, wenn der betreffende ausländische Staat die Gegenseitigkeit beobachtet (B OGH vom 06.05.2003 zu 2 Cg 2001.68, LJZ 1/04).

Das Fürstentum Liechtenstein hat mit Russland keine bilateralen Konkursverträge abgeschlossen. Allerdings wurde das strikte Territorialitätsprinzip etwa durch die Bejahung der Partei- und Prozessfähigkeit einer schweizerischen Konkursverwaltung auch im liechtensteinischen Prozess „gelockert" (LES 1982, 81). Zudem hat der Fürstliche Oberste Gerichtshof das „Anerkenntniserfordernis" der Gegenseitigkeit auch im Verhältnis zu Deutschland – auf der Grundlage der §§ 237, 238 dKO, der Rechtspraxis der deutschen Gerichte sowie der dInsO und Art 102 dEG InsO – bejaht. Das deutsche Insolvenzrecht stecke die jeweiligen Befugnisse des Insolvenzverwalters ab, weshalb der deutsche Insolvenzverwalter grundsätzlich alle Befugnisse ausüben dürfe, die ihm nach deutschem Recht zustehen würden (B OGH vom 06.05.2003 zu 2 Cg 2001.68, LJZ 1/04). Demnach ist gemäss hiesiger Rechtsprechung für die Bejahung der Partei- und Prozessfähigkeit eines ausländischen Masse- oder Insolvenzverwalter in einem Inlandsverfahren primär relevant, dass die jeweilige Person im ausländischen Verfahren rechtlich als Masse- bzw Insolvenzverwalter und damit als Partei beurteilt wird.

Auch im gegenständlichen Verfahren behauptet der Antragsteller, er sei Masseverwalter der betreibenden Partei. Er trägt aber nicht vor, was im russischen Verfahren seine diesbezüglichen Befugnisse sind und welche (Verfahrens-)Rechte der betreibenden Partei weiterhin zukommen. Er behauptet lediglich betreffend das gegenständliche Verfahren, dass mit Konkurseröffnung der Gemeinschuldner die Verwaltungs- und Verfügungsbefugnis über die Konkursmasse sowie die Prozessführungsbefugnis verliere.

Demgegenüber trägt die betreibende Partei vor, dass der Antragsteller lediglich Finanzverwalter ohne eigenes Entscheidungsrecht sei und nur gerichtliche Anträge stellen könne. Die betreibende Partei habe weiterhin die Verfügungsmacht über sein Vermögen und sei berechtigt, Forderungen im eigenen Namen einzuziehen. Für seine Prozesse habe die betreibende Partei weiterhin die Prozess- und Handlungsfähigkeit und führe diese selbst.

Diese Ausführungen der betreibenden Partei lassen sich auf die „Erklärung – Mitteilung" des Antragstellers (ON 141) stützen. Bei dieser Erklärung handelt es sich um dasselbe Dokument, welches dem gegenständlichen Antrag beigefügt war und auf welches der Antragsteller seinen Antrag stützt. Der Unterschied liegt einzig darin, dass der Antragsteller seine „Erklärung – Mitteilung" am 07.09.2020 dem Landgericht noch noch ohne anwaltliche Vertretung vorlegte und dabei eine deutsche Übersetzung beifügte. In der

„Erklärung – Mitteilung" erwähnt der Antragsteller selbst, er sei „Finanzverwalter" der betreibenden Partei während des Verfahrens zur Umstrukturierung der Schulden der betreibenden Partei. Auch der Antragsteller erwähnt nicht, dass er Masseverwalter der betreibenden Partei sei oder dass die betreibende Partei nicht (mehr) berechtigt sei, im eigenen Namen Forderungen einzuziehen oder Prozesse zu führen.

Zudem hat der Antragsteller auch das „Rechtsgutachten" vom 12.09.2020 vorgelegt (ON 144). Darin wird unter anderem folgendes festgehalten: „*In Übereinstimmung mit dem Artikel 213.9 des Föderalen Gesetzes Nr. FZ-127 vom 26.10.2002 ist der Finanzverwalter berechtigt, sich am Schuldenbereinigungsverfahren zu beteiligen, als eine Drittperson (…) Ferner kann gemäss Artikeln 213.12-213.23 des Föderalen Gesetzes Nr. FZ-127 vom 26.10.2002 zu Insolvenz (Konkurs) in Bezug auf die Schulden der Person, gegen die ein Schuldenbereinigungsverfahren aufgestellt werden. Dieser Plan ist dem Finanzverwalter zu übermitteln und vom Gericht anzuerkennen (…) Da Umstände entstanden sind, in deren Folge der Insolvenzantrag der AKB Abso\ut Bank (PAO) gegen smagin, Vitali Ivanovitch, als begründet anerkannt wurde, scheint die Involvierung seines Finanzverwalters als Dritter in die Gerichtsverhandlungen, früher eröffnet durch die Person, gegen die ein Schuldenbereinigungsverfahren eingeleitet wurde, die sinnvollste und im höchsten Grad gesetzliche Weise zur Wahrnehmung seiner Rechte, sowie der Rechte seiner Kreditgeber und Debitoren zu sein*" (ON 144).

Aus all diesen Gründen handelt es sich beim russischen Verfahren um ein Schuldenbereinigungsverfahren bzw ein Verfahren zur Umstrukturierung der Schulden der betreibenden Partei. Dabei fungiert der Antragsteller als Finanzverwalter, der selbst im russischen Verfahren Dritter und nicht Partei ist. Vor diesem Hintergrund ist der betreibenden Partei die Prozessführungsbefugnis weder im russischen, noch im gegenständlichen Verfahren grundsätzlich entzogen, sodass sie im gegenständlichen Verfahren weiterhin Prozesshandlungen vornehmen kann. Daher liegt in Russland betreffend die betreibende Partei kein eigentliches Konkursverfahren vor, sodass das gegenständliche Verfahren nicht gemäss Art 20 Abs 1 EO zu unterbrechen ist.

Daher war auf den Kautionsantrag der betreibenden Partei nicht mehr einzugehen. Es war spruchgemäss zu entscheiden.

Fürstliches Landgericht
Vaduz, 23.11.2020
Dr. Roger Beck
Fürstlicher Landrichter

Für die Richtigkeit der Ausfertigung

Iris Feuerstein

## Rechtsmittel

Gegen diesen Beschluss ist binnen der unerstreckbaren Frist von 14 Tagen ab Zustellung das Rechtsmittel des Rekurses an das Fürstliche Obergericht, Vaduz, zulässig, Der Rekurs ist schriftlich in zweifacher Ausfertigung beim Fürstlichen Landgericht in Vaduz einzubringen, kann aber auch mündlich zu Protokoll erklärt werden. Er hat eine bestimmte Erklärung, inwieweit der Beschluss angefochten wird, die ebenso bestimmte kurze Bezeichnung der Gründe der Anfechtung (Rekursgründe), das tatsächliche Vorbringen und die Beweismittel, durch welche die Wahrheit der Rekursgründe erwiesen werden kann, und die Erklärung, ob die Aufhebung oder Abänderung des Beschlusses und gegebenenfalls welche beantragt werde (Rekursantrag) zu enthalten.

Wenn die im Exekutionsantrag geforderte Geldsumme oder der Wert des Streitgegenstandes den Betrag von CHF 5'000.00 nicht übersteigt (Bagatellsache), kann der Beschluss des Fürstlichen Landgerichts nur wegen der in § 485 ZPO aufgezählten Gründe mittels Rekurs angefochten werden.