# EXHIBIT 16

Case Number :NEVHCV2020/0027




Submitted Date:12/03/2020 23:03
Filed Date:13/03/2020 08:30
Fees Paid:22.00

**Filed on behalf of: Claimant/Applicant**
**Affidavit of Vitaly Gogokhia**
**Affidavit Number: First**
**Exhibits: V.G.1 – V.G.14**
**Date Sworn: March 12th, 2020**
**Date Filed: March 12th, 2020**

**THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**FEDERATION OF ST. CHRISTOPHER AND NEVIS**
**NEVIS CIRCUIT**
**A. D. 2020**
**(CIVIL)**

**CLAIM NO. NEVHCV2020/**

**BETWEEN:**

**VITALY GOGOKHIA** Claimant/ Applicant

**-AND-**

**(1) SAVANNAH ADVISORS INC.**
**(2) THOMAS WILHELM**
**(3) NIKOLAUS T. WILHELM**
**(4) CTX TREUHAND AKTIENGESELLSCHAFT [ALSO KNOWN AS CTX TREUHAND AG] AS TRUSTEE OF THE ALPHA TRUST**
**(5) ALPENROSE WEALTH MANAGEMENT AG**
**(6) ASHOT EGIAZARIAN**

Defendants/Respondents

---

**<u>FIRST AFFIDAVIT OF VITALY GOGOKHIA (also known as Vitali Gogokhia)</u>**
(*in support of the without notice of application dated 12th March, 2020*)

---

I, Vitaly Gogokhia also known as Vitali Gogokhia, formerly of , , London , now residing at , , London make oath and say as follows:

1. I am the Applicant herein and I swear this Affidavit in support of my Without Notice of Application for a Worldwide Freezing Order, Asset Preservation Order and permission to serve order out of the jurisdiction dated the 12th March, 2020. Insofar as the contents of this affidavit are within my personal knowledge they are true and insofar as is not within my personal knowledge it is true to the best of my knowledge information and belief. Where I

rely on matters not within my own knowledge the source I rely on for my information and on which my belief is based are the persons or documents I refer to or both.

2. I have been business partners with the Sixth Respondent from as far back as 2000. The nature of my involvement was that I would participate in businesses, provide funding and work with the Sixth Respondent, which said funds would then be used to undertake a variety of business ventures, including but not limited to oil and gas exploration and construction, development and renovation projects. The process was such that offshore vehicles were used as the vehicle through which these investment projects were undertaken. The Sixth Respondent has a very extensive understanding of and engagement with the use of offshore structures to undertake business.

3. These investments were made with the clear understanding that I would be guaranteed certain returns on my investment together with interest.

4. My role in the various projects ranged from shareholder, manager, investor, and beneficiary depending on the entity being utilised to conduct business. A true copy of a graphical representation of the ownership structure of some of the companies in January, 2009 is hereto attached and marked **V.G.1.**

5. While it was agreed that I would be repaid, with interest, the monies I invested into the various projects with the Sixth Defendant, I was not.

6. The Sixth Defendant always acknowledged that I invested in his various projects and that monies were owed to me by him. I received two (2) payments of Two Million Five Hundred Thousand from the Sixth Respondent in 2015 via the First Respondent. A copy of the payment Order form dated the 28th August, 2015 and the Account Statement are hereto bundled and marked **V.G.2.**

7. In 2015, the Sixth Defendant being the Protector and Beneficiary of the Fourth Defendant (Trust) offered me to become the Beneficiary owner of the Fourth Defendant (Trust) and by this, offered to gradually compensate me for all monies due and owing to me, at the time, by the Sixth Defendant. Payment of $5 Million USD in paragraph 6 was a part of this agreement. This time, the source of funds was the Fourth Defendant which was supposed to make annual payments of not less than $5 Million USD per year in order to compensate the debt. By letter dated the 12th November, 2018, the Second and Third Defendants in their capacity as directors of the Fourth Defendant Company, which was trustee of the Alpha Trust, wrote to me, confirming the source of funds of the payment made to me. A true copy of the Letter of Information dated the 12th November, 2018 is hereto attached and marked **V.G.3.**

8. Unfortunately, the Defendants failed to keep their word. No further payments were received by the Claimant (except the payment of USD$5 Million which was mentioned in paragraph 6 above). I demanded payment of the balance of the monies due and owing to me from the Sixth Respondent on several occasions. I made a point that I am old and a seriously ill man. I have heart problems (atherosclerosis of hart vessels), I am suffering from diabetes which

is getting worse, high hypertension. These court cases have seriously worsened my health. I need my money to be able to live. My solicitors have been provided with medical certificates evidencing my health conditions. A true copy of my medical report dated the 2nd October, 2019 is hereto attached and marked "**V.G.4**" The Sixth Defendant never denied that he owed me - I am afraid that the Sixth Defendant is simply hoping that I will pass away, get ill and would no longer be able to pursue the enforcement of the judgment.

9. In April 2019, my solicitors served a Letter before Action against the Sixth Defendant. In the letter, the Sixth Defendant was warned that a legal claim would be brought against him in the UK, if he does not pay the monies due. The Sixth Defendant did not deny that he owed me. Finally, via his solicitors, the Sixth Defendant offered a settlement and the parties agreed on a final settlement figure. However, I have not received even a penny from the Sixth Defendant. I was thereafter forced to commence proceedings and I am afraid that the Sixth Defendant was never intending to make further payments to me and might have used this time to remove, hide and change the structure of his assets (First Defendant, Second Defendant, Third Defendant, Fourth Defendant and Fifth Defendant). The Sixth Defendant chose the strategy of delaying progress of the matter. The recent letter dated the 13th March, 2019, in which the Second and Third Defendants wrote to me confirming that the Fourth Defendant wholly owned the First Defendant company and that a distribution was made on behalf of the Sixth Defendant to settle a debt accrued between him and myself is a attempt to return to the very beginning of the claim. A true copy of the letter dated the 13th March, 2019 is hereto attached and marked **V.G.5.**

10. I proceeded to reduce my request for repayment into writing and wrote a Demand Letter to the Sixth Defendant on the 17th April 2019. This was of no effect. A true copy of the letter is hereto attached and marked **V.G. 6.**

11. I held several discussions with the Sixth Respondent continuously asking for the return of monies due and owing to me, in which the Sixth Defendant informed that he had several claims and creditors pursuing debts against him and he was not in a position to pay what is owed to me.

12. On the 17th May, 2019, I commenced suit in the High Court of Justice Queen's Bench Division in the United Kingdom against the Second Respondent CASE NO: QB-2019-001805 (the "UK Claim"). The matter was determined in my favour as the Sixth Defendant admitted to owing me £149,280,569.62. A true copy of the Notice of Part Admission and Judgment are hereto bundled and marked **V.G.7**. and **V.G.8**, respectively.

13. Since the judgment was issued on the 30th October, 2019, the Sixth Defendant has not made any payments to me. The full balance remains due and owing.

14. I am a creditor of the Sixth Respondent and the Sixth Respondent refuses to honour his indebtedness to me but instead has sought to put his monies beyond the reach of his creditors.

15. I then retained and instructed an Attorney-at-Law in the Federation of St. Kitts and Nevis, Counsel Derriann Charles to initiate proceedings to have the UK Judgement registered within the Federation. On the 9th December, 2019, Counsel Charles caused to be filed an application with Notice to the Sixth Defendant, seeking to have the judgment registered as a Judgement of the Eastern Caribbean Supreme Court. The matter came up for hearing on the 26th February and the order was granted. A true copy of the order made on the 26th February, 2020 is hereto attached and marked **V.G.9.**

16. I am aware that the Sixth Respondent placed his monies into a Liechtenstein Trust named the Alpha Trust. The Fourth Defendant company is the Trustee of the Alpha Trust. The Fifth Defendant is a wealth management company that manages monies of the Trust. The Sixth Defendant is the Protector of the Trust. The majority of powers of the Fourth Defendant as Trustee of the Alpha Trust can only be exercised by that Trustee with the consent of the Sixth Respondent in his capacity as Protector of the trusts.

17. I am also aware that the Alpha Trust holds the First Defendant company entirely, as confirmed in the letter dated the 13th March, 2019. I am very concerned that the Sixth Defendant would remove and/or dissipate his assets, which would make it impossible for me to satisfy the judgment entered in my favour.

18. I am very concerned about the state of the assets of the Sixth Defendant. I caused a search to be conducted on the First Defendant company in February, 2019 and the search showed that the Company was in good standing. A true copy of the search report dated the 12th February, 2019 is hereto attached and marked **V.G.10**. I then caused another search to be conducted in December, 2019 and the search report confirmed that the registered agent and address had changed and that the company was no longer in good standing. A true copy of the search report issued on the 3rd December, 2019 is hereto attached and marked **V.G.11.**

19. I am aware that by written instrument dated 2nd June 2015, the Sixth Defendant was effectively given controlling power over the Alpha Trust. A true copy of the 2nd June 2015 Written Instrument is hereto attached and marked **V.G.12.**

20. By an instrument of nomination dated 3rd July 2015, I was declared a beneficiary of Alpha Trust by the Fourth Respondent with the consent of the Sixth Respondent as Protector of the trust. A copy of my instrument of nomination as a beneficiary is hereto attached and marked **V.G.13.**

21. Though I was declared a beneficiary of Alpha Trust which based on the trust deed makes me a discretionary beneficiary of the Alpha Trust, the Sixth Respondent held money specifically for me in a bare trust, which monies he transferred to Alpha Trust making it such that Alpha Trust also stands now as a bare trustee just as the Sixth Respondent does of my trust fund.

22. As mentioned previously, on the 29th day of April 2015, the Sixth Respondent transferred Two Million Five Hundred Thousand to me from Savannah Advisors Inc, the First Respondent a duly incorporated Nevis International Business Corporation ("Savannah Nevis") which was a part payment for monies due and owing to me. The

Bank that ordered the transfer was Compagnie Monegasque De Banque S.A.M. which is a bank based in Monaco with its office situate at 23 avenue de la Costa 98000 Monaco.

23. I believe that my trust fund has unlawfully been placed in the bank account of Savannah Nevis at Compagnie Monegasque De Banque S.A.M. Savannah Nevis is managed by the trustees of Alpha Trust with the Sixth Respondent appointed as its financial advisors At every point, the Sixth Respondent has created an offshore structure which falls under his control to evade claims of his lawful creditors such as myself.

24. There have been lots of litigation against the Sixth Respondent brought against him in Russia, Cyprus, California, Territory of the Virgin Islands and, Arbitration in London which have unravelled the location of some of his assets. More recently, after I obtained my UK Judgment, I was made aware that litigation was commenced against the Sixth Respondent within the Federation.

25. In or about 2010, the Second Respondent arbitration commenced in Cyprus against Suleyman Karimov, Arkadiy Rotenberg and the Government of Russia to recover the asset taken over by the named parties with respect to the Moscow Hotel that was owned by the Second Respondent and another. The arbitration was also before the London Court of International Arbitration. In reaction to those proceedings, the Second Respondent was blacklisted and targeted by the Government of the Russian Federation. After protracted arbitration proceedings, in or around early to mid-2015, the parties came to a mutual settlement. As part of the Settlement Agreement, the Second Respondent would and did receive US$200 million. The terms of the Settlement Agreement were memorialised into a Confidential Settlement Agreement which agreement is being held by a Lawyer who the Second Respondent indicated to me was named as custodian of the Confidential Settlement Agreement, and who, based on the terms of the Settlement Agreement may only disclose that agreement on the production of an Order of a Court of competent jurisdiction. Though I am not privy to the terms of the said Confidential Settlement Agreement, the Second Respondent has confirmed with me its existence.

26. As the Sixth Respondent was not able to operate a Bank Account to deposit the US$200 million sum he received as referenced above. The only avenue available to the Sixth Respondent to be able to handle the US$200 million was to pay it into a trust which is the Alpha Trust previously mentioned by me. The Fourth Respondent in addition to being Trustee of the Alpha Trust also became custodian of $200 million which sums are being held constructively in the Alpha trust for me in a bare trust.

27. By a Written Instrument dated the 2nd June 2015 the Principal Trust Deed was changed making it such that the Sixth Respondent in his capacity as Protector of the Alpha Trust has to give his written consent for the Fourth Respondent to exercise powers relating to the termination of the Alpha Trust, income and capital of the Alpha Trust, to add and or exclude beneficiaries, and all powers listed in the First Schedule of the Principal

Trust Deed which includes but is not limited to the power of investment and self-dealing.

28. Some of the assets of the Sixth Defendant are held in the Alpha Trust and those assets have been transferred by the Trustee of Alpha Trusts with the consent of the Second Respondent as Protector to Savannah Nevis. Those assets are being held in the Monaco Bank. Further, those assets were transferred not in the best interest of all of the beneficiaries of the trust but for the benefit solely of the Second Respondent. Those monies were transferred in breach of trust and without my consent and or approval. It is therefore evident, that Savannah Nevis is being used for an improper purpose and that I have a right to trace trust property so that it can be rightfully restored to the trust.

29. Though I do not know who the beneficial owner of the Savannah Nevis is, I am aware that Savannah Nevis is controlled by the Second and Third Respondents as confirmed by a Certificate of Incumbency, which is hereto attached and marked **V.G.14**. That is to say, the Fourth Respondent and First Respondent share primarily the same controlling minds as Savannah Nevis which are all interconnected and are subject to the control and approval of the Sixth Respondent as Protector and Beneficiary of the Alpha Trust.

30. Further, as far as I am aware, Savannah Nevis is not engaged in active business and or trading.

31. The Respondents are highly experienced and knowledgeable in using offshore structures to conceal and move assets and have created a complex structure. There is a real risk that the Sixth Respondent and the Fourth Respondent if given notice of this Application, may redomicile Savannah Nevis placing it beyond the jurisdiction of the Nevis Court, and or dissolve Savannah Nevis. Further, unless restrained, the Sixth Respondent and Fourth Respondent are at liberty to dispose, deal with and diminish the assets of Savannah Nevis which is being held constructively for me. It is highly likely that my efforts to satisfy judgment, which was issued in my favour, will be defeated if all the Respondents are not restrained by granting me the injunctive relief being sought. Those Respondents are likely to dissipate the assets from Savannah Nevis to another structure and make it impossible for me to trace my trust property and or enforce any judgment I obtain to recover my trust property.

32. I am seriously concerned about the Respondents acting together and the risk that they may take steps to cause the money that was supposed to be in the trust to me to disappear or be lost. Without the assistance of the Court, I will have no protection against this duplicity by the Respondents.

33. I am therefore seeking the assistance of the Court that the Respondents acting jointly and or severally be restrained from any action to transfer, assign, conceal, diminish, encumber, hypothecate, or dissipate or in any way dispose of the assets in Savannah Nevis wherever held.

34. Damages in the circumstances of this case are an inadequate remedy for me as Savannah Nevis is not known to me and or to otherwise be engaged in any business activities. If those assets are removed, then Savannah Nevis is likely to be nothing more than a shell with no assets to enforce against and my property will again be placed beyond my reach.

SERVICE OUT OF THE JURISDICTION OR SERVICE BY ELECTRONIC MAIL

35. I ask the Court to grant me permission to serve the Claim and all other Court documents outside the jurisdiction on the Second Respondent and Third Respondent. I believe that those Respondents may be found in the following locations and may be personally served at the below referenced addresses:

a. Personally on the Second Respondent, THOMAS WILHELM, to his last known office address of Lova-Center, P.O. Box 1150, 9490 Vaduz, Liechtenstein or alternatively, by electronic mail to the frequently used electronic mail address of twilhelm@codextrust.com, which said electronic mail address is publicly displayed on the homepage of the 2nd Respondent's Trust company (Codex Trust Company Ltd.) website which URL is given as https://codextrust.com/li/home or any method not contrary to the laws of Liechtenstein.

b. Personally on the Third Respondent, NIKOLAUS T. WILHELM, to his last known office address of Lova-Center, P.O. Box 1150, 9490 Vaduz, Liechtenstein or alternatively, by electronic mail to the frequently used electronic mail address of nwilhelm@codextrust.com, which said electronic mail address is publicly displayed on the homepage of the 2nd Respondent's Trust company (Codex Trust Company Ltd.) website which URL is given as https://codextrust.com/li/home or any method not contrary to the laws of Liechtenstein.

c. By delivery to the last known registered office of the Fourth Respondent, CTX TREUHAND AKTIENGESELLSCHAFT situate at Lova-Center Fl-9490 Vaduz Liechtenstein or to its last known electronic mail address of office@codextrust.com which said official electronic mail address is given on the Liechtenstein Association of Professional Trustees webpage given as http://login.gmgnet.li/thv/documents/MitgliederOeffentlichengl.20080331_522.pdf or any method not contrary to the laws of Liechtenstein.

d. Personally, on the Fifth Respondent, ALPENROSE WEALTH MANAGEMENT AG at Seestrasse 69 SZ-8806 Bach or by electronic mail of one of the Company's partners, Mr. Pierre Gabris whose electronic mail address is given as pierre.gabris@alpenrosewealth.com on the Company's webpage given as https://alpenrosewealth.com/contact-us/#pr-contact, together with the general office electronic mail of info@alpenrosewealth.com.

e. Personally, on the Sixth Respondent, ASHOT EGIAZARYIAN, at 655 Endrino Place, Beverly Hills, California 90210 United States of America or alternatively by

electronic mail at his last known email address of forashot1@gmail.com, which said electronic mail address was used as recent as the 1st November, 2019 to effect service of the UK Order dated the 30th October, 2019 and from which the 6th Respondent answered on the said 1st November, 2019 acknowledging receipt.

36. There is a real issue to be tried in the jurisdiction of Nevis relating to First Respondent in which the Sixth Respondent and Fourth Respondent are all involved. The issue for determination relates to the administration, management and or conduct of the affairs of the First Respondent which is controlled by the directly and or indirectly by the Sixth Respondent and Fourth Respondent which amounts to a good arguable case relating to Savannah Nevis dishonestly and knowingly receiving trust property and facilitating a breach of trust, for which I have a right to trace and be paid.

DISCLOSURE

37. I am not aware of any information which the Defendants may have which may be adverse to the application being requested.

UNDERTAKING

38. I undertake to the Court to comply with any order that it may make, should it find that the injunctive and or other Orders sought has caused loss to any party.

39. In the circumstances, I humbly request that the Court grants the Orders I have sought in my Application.

I make this Affidavit honestly, sincerely and consciously knowing the contents to be true to the best of knowledge, information and belief.

SWORN by the said Vitaly Gogokhia )
also known as Vitali Gogokhia )
at London, UK )
this 12th day of March 2020 )

[signature]
Vitaly Gogokhia

**CERTIFICATE OF ACKNOWLEDGMENT**

This *12th day of March 2020*, before me, **Shabana Walayat**, the undersigned Solicitor of **'Shortlands Law Firm Ltd.'**, practicing in the city of London, personally met **/Mr Vitaly Gogokhia/**, who provided satisfactory identification evidence to be the authorized person and **Mr Vitaly Gogokhia** signed this Affidavit in my presence.

*[Solicitor's Stamp & Signature]:* [signature]
SHABANA WALAYAT
SOLICITOR
12.03.2020

Shabana Walayat LLB
Shortlands Law Firm Ltd
4 Cambridge Court
210 Shepherds Bush Road
London W6 7NJ
T 0207 629 9905 F 0207 603 3600

**THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**FEDERATION OF ST. CHRISTOPHER AND NEVIS**
**NEVIS CIRCUIT**
**A.D. 2020**
**(CIVIL)**

**CLAIM NO. NEVHCV2020/**

**BETWEEN:**

**VITALY GOGOKHIA** Claimant/ Applicant

**-AND-**

**(1) SAVANNAH ADVISORS INC.**
**(2) THOMAS WILHELM**
**(3) NIKOLAUS T. WILHELM**
**(4) CTX TREUHAND AKTIENGESELLSCHAFT [ALSO KNOWN AS CTX TREUHAND AG] AS TRUSTEE OF THE ALPHA TRUST**
**(5) ALPENROSE WEALTH MANAGEMENT AG**
**(6) ASHOT EGIAZARIAN**

Defendants/Respondents

---

**FIRST AFFIDAVIT OF VITALY GOGOKHIA (also known as Vitali Gogokhia)**
(*in support of the without notice of application dated 12th March, 2020*)

---

Filed by:

Derriann P. Charles
**CHARLES & ASSOCIATES**
Attorneys-at-Law for the Claimant/Applicant
Unit 102 (Office B), St. Kitts Castle,
Frigate Bay, St. Kitts
Telephone: (869) 466-7162
Office Mobile: (869) 667-7162
Email: derriann@charlesandassociateslaw.com