# EXHIBIT 24

Case Number :NEVHCV2020/0038

FILED
HIGH COURT
ST.CHRISTOPHER / NEVIS
(NEVIS CIRCUIT)

Submitted Date:19/08/2020 16:48

Filed Date:20/08/2020 08:30

Fees Paid:22.00

Second Affidavit
Exhibit: ND 2
Sworn on behalf of Applicant
Sworn on 19th August 2020
Filed on 19th August 2020

THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

FEDERATION OF SAINT CHRISTOPHER AND NEVIS

NEVIS CIRCUIT (CIVIL)

CLAIM NO. NEVHCV 2020/0038

IN THE MATTER OF SAVANNAH ADVISORS INC.

BETWEEN:

**NATALIA DOZORTSEVA**
A Trustee of the ALPHA TRUST, a Lichtenstein registered trust (FL-0002-510.771-1)

Applicant / Intended Party

AND

**SAVANNAH ADVISORS INC.**

Claimant / First Respondent

AND

**PRESTIGE TRUST COMPANY LTD.**

Defendant / Second Respondent

---

**SECOND AFFIDAVIT OF NATALIA DOZORTSEVA**

---

I, Natalia Dozortseva, a lawyer of the Russian Federation and resident in REDACTED, Greolieres, France, **MAKE OATH and say as follows:** -

1. I am a lawyer admitted to practice in the Russian Federation, by virtue of an instrument of appointment executed by Mr Ashot Egiazaryan, **("the Protector")** of a Lichtenstein registered trust on 31st March 2020, I am a Trustee of that Lichtenstein Registered Trust

-12-

   - ALPHA TRUST, a Lichtenstein registered trust (FL-0002-510.771-1) (**"Alpha Trust"**) and as a result have standing to make this application.

2. I have already sworn an affidavit in these proceedings, dated 16th July 2020. I make this second affidavit in these proceedings on behalf of myself as Applicant in response to the affidavit of Nicolas Reithner dated and filed 14th August 2020 (**"NR"**).

3. The facts and matter set out in this affidavit are within my own knowledge and belief unless stated otherwise, and I believe them to be true. Where I refer to information supplied by others, the source of the information is identified; facts and matters derived from other sources are true to the best of my knowledge and belief.

4. I am now shown and refer to a bundle of documents known as exhibit **"ND2"**. References to page numbers within this affidavit are references to page numbers of exhibit **"ND2"** unless otherwise indicated.

5. I make this second affidavit in support of an application for a freezing injunction and ancillary relief (inclusive of being added as a Party in these proceedings NEVHCV 2020/0038) against the Respondents and in the aftermath of a hearing in July 2020, ex parte on notice.

6. My native language is Russian, but I am fluent in Russian, English and French and make this affidavit in the English language. I read this affidavit in France (in English) and have sworn it in English.

7. I make this affidavit in the time within which I have had to do so, not having the benefit of legal advice in the Principality of Lichtenstein. My principal legal advisor is delayed outside of the jurisdiction as a result of the effect of the COVID – 19 pandemic on world travel impacting on his vacation and will respond to NR on or about the 24 August 2020. No discourtesy to this Honourable Court is intended for the lateness of his submission, and it is hoped that any sanctions that may be applied against the evidence of my Lichtenstein advisors.

8. My principal legal advisor is Mr. Thomas Struth of the law firm Kieber Nuener Struth, - Attorneys at Law, Austrasse 56, P.O. Box 452, 9490 Vaduz, Liechtenstein.

9. I respond to NR as follows and categorically reject the assertions of disingenuity made therein.

10. As the Court will appreciate, the overall context of this litigation as a worldwide contest between the Protector and Mr. Vitaly Smagin, who I believe is an agent of or at the very least allied to the Kremlin and its crackdown against those deemed to have fallen out of favour.

11. Open source documentation confirms my belief that the Protector has fallen out of favour (since at least 2011) and is the target of Russian – backed attacks legal or otherwise **[ND2/1-4]**, further that Vitaly Smagin's campaign against the Protector is such that, I believe that the world wide efforts to impoverish the Protector must have some level of Russian state backing. There is research to this effect done in a 2018 publication by the Atlantic Council, specific to Vitaly Smagin's efforts in the courts of the USA **[ND2/30-31]** which suggest that there are greater powers at play than just the enforcement of an arbitral award.

12. According the report prepared and published by the Atlantic Council, Mr Ashot Egiazaryan is one of the Russian businessmen who has been prosecuted for political reasons. Kremlin proxies have exploited US courts by pursuing superficially legitimate lawsuits with a two-part purpose: perpetrating global harassment campaigns against the Kremlin's enemies, while seeking to enrich themselves through bad faith claims made possible by the Russian state's abuse of disfavoured individuals and their businesses.

13. These lawsuits by Kremlin proxies are almost always part of a larger coordinated attack involving Russian government agencies, bogus criminal charges invented by Russian prosecutors, and judgments from sham trials overseen by corrupt Russian courts. **[ND2/2-29]**

14. The Report further states that the Russian authorities instituted a criminal action against Yegiazaryan based on a complaint submitted by Victor Smagin, a businessman characterized as a "government fixer" in the Russian media. Smagin alleged that Yegiazaryan engineered and put into action a scheme to misappropriate Smagin's interest in a shopping centre, 50 percent of which belonged to Yegiazaryan.

15. The group of Russian law enforcement officials charged with conducting this investigation included five individuals placed on the Magnitsky list: Aleksey Droganov, Viktor Grin, Andrei Krechetov, Oleg Lugunov, and Andrei Strizhov.

16. The beneficiaries to Alpha Trust that stand to lose provided the trust is stripped are the four children of the Protector, appointed in succession to Suren Egiazaryan. [ND2/38-39].

17. I have, for the benefit of the Court done a summary of all proceedings both administrative and substantive concerning the Alpha Trust. It is of note that the beneficiaries have made complaints to the Trust Regulator in the Principality and currently await determination. [ND2/40-41]

## SUBSTANTIVE ISSUE OF LICHTENSTEIN LAW

18. In correspondence sent to Prestige Trust Company Ltd. dated 15th May 2020, my previous set of attorneys detail the substantive issue of law which I adopt and summarise as follows (my legal advisors will update the court in due course) as being whether the detail of Smagin's enforcement right granted in 2018 is only granted in respect of the Protector's right as a Protector in respect of the then Trustees of Alpha Trust – CTX and no further.

19. The dismissal of CTX as Trustee ought to in my opinion, negate the further claims Smagin has on the rights of the Protector, as detailed in that correspondence. [ND2/42-43]

20. This appeal is still pending, despite NR's assertions concerning the security bond, the appeal remains live, to the best of my knowledge and belief.

## NR'S AFFIDAVIT

21. Paragraphs 8 – 13 of NR are denied, Both Ms Jouniaux and I are trustees of the Alpha Trust, legally appointed by its protector as detailed in my first affidavit, the law and practice will be expanded on in due course and for the reasons outlined above.

22. Paragraphs 15 – 40 are denied. My current lawyers will comment on this in due course; however, I am informed and do verily believe that the position ought not to vary from the correspondence of 15th May 2020.

23. Paragraphs 42 – 43 are denied and not understood, the activity undertaken by the previous Trustees and the Purported Trustees are in violation of the Trust Deed and are not backed

by any explicit order of Court invalidating that Trust Deed, or put another way, any action in respect of Alpha Trust requires unanimous approval by all of the Trustees.

24. Whether this is sustainable or not is a matter of Lichtenstein law and should be the purview of the Princely Courts of Lichtenstein.

25. Paragraphs 47 – 52 are of concern, I do not believe myself to be the subject to the jurisdiction of the courts of the State of California in the United States of America. I categorically deny that I am acting on behalf of the Protector in anything more than my role in the office of Trustee of Alpha Trust.

26. And to the best of my knowledge and belief no orders of any court in the United States of America have been enforced in the Principality of Monaco.

27. Paragraphs 53 – 55 are alarming to me and categorically denied that I had anything to do with any forgery. I set out here the history of my interaction with Prestige, the first time my lawyers contacted Prestige was on the 15th May 2020, when my former Lichtenstein lawyers BWB sent a letter to Prestige **[ND2/42-43]** explaining to them the situation with trustees of the Alpha Trust and asking them and the management of Savannah to refrain from any actions with Savannah's assets, shares and management.

28. Then I contacted Prestige again on 1st July 2020, as soon as I learnt about purported appointment of new directors of Savannah Advisors.

29. I sent an email to Mr. Kevin Wessel from General Corporate Services Inc., who was recommended to me by a beneficiary of the Alpha Trust as a representative of Prestige.

30. My email with explanation of situation about the appointment of trustees of the Alpha Trust and request for assistance in connection with purported change of directors was attached. I also resent to him the BWB letter of 15 May, my and Ms. Jouniaux's IDs and resolutions on appointment.

31. Mr. Wessel replied that he would help **[ND2/44-45]** and on the 1st of July we had a conference call where I described to Mr. Wessel the situation in detail, explaining, among other issues, that the new purported directors of Savannah were appointed ultra vires and without due resolution of all of the trustees of Alpha Trust. I also told him that the situation should be fixed and that JGT Treuuntemehmen reg. and Silvio Vogt could not be listed as directors of Savannah due to the nature of their "appointment".

-12-

32. Mr. Wessel forwarded my email with IDs and resolutions to Mr. Stevyn from Prestige, the one who appears in Tab 14 of Mr. Reithner's affidavit.

33. After the conference call I sent to Mr. Wessel and Mr. Stevyn an email **[ND2/46-49]** and thanked them for the conference call along with the now impugned letter from the attorney Mr. Edward Ryals.

34. On 15th July 2020, I received another letter from Prestige (now impugned) signed by Mr. Ryals. **[ND2/50]**

35. On the 4th August 2020 there is correspondence to the effect of my local counsel obtaining confirmation from Mr. Ryals. **[ND2/51-52]**

36. The Court should note that I had copied Prestige on 2nd July 2020, along with Mr. Ryals further nothing in the Prestige - branded correspondence and communications with me could have suggested that Mr. Ryals was not an attorney of Prestige, could not issue official documents on its behalf and that the letters I received from him were not authentic and originating from Prestige.

37. Paragraph 59 is denied, There is nothing in First Schedule of the Trust Deed, at Clause 17.1 that prevents trustees from becoming directors of the underlying company. The First Schedule only states that trustees "shall not be bound or required to interfere in the management", and that they "shall be at liberty to leave the conduct of its business wholly to the directors", but does not prevent the trustees from becoming directors if they choose to do so.

38. Indeed, former directors of Savannah were Mr. Thomas Wilhelm and Mr. Nikolaus Wilhelm, and the same Mr. Thomas Wilhelm is director of CTX Trehaud Aktiengesselschaft, first directors and shareholder of Savannah as exhibited in my first affidavit.

39. The tenor of Paragraph 71 is amenable to me, litigation is expensive, and I do not have the resources in my personal capacity to mount a relentless defense of Alpha Trust.

**CONCLUSION**

40. For these reasons, the Applicant seeks the grant of the Freezing Injunction and ancillary relief.

41. I make this affidavit in accordance with the law and procedure of the Republic of France.

SWORN by the said                    }
                                     }  _____
                                        NATALIA DOZORTSEVA
This 19ᵗʰ day of August 2020         }

BEFORE ME

Me TARAMARCAZ
Notaire è Nice

M° Wilfrid TARAMARCAZ
22, Av. Notre Dame
06000 NICE

NOTARY PUBLIC

Date of signature 19ᵗʰ August 2020

This Affidavit is filed on behalf of the Applicant by GREYS LEGAL CHAMBERS of Pond Road, Basseterre, Saint Kitts. Ref: Natasha Grey, info@greyslegalchambers.com (869) 466 -9839, Fax: (869) 466 – 9649

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
FEDERATION OF SAINT CHRISTOPHER AND NEVIS
NEVIS CIRCUIT (CIVIL)
CLAIM NO. NEVHCV 2020/0038
IN THE MATTER OF SAVANNAH ADVISORS INC.

BETWEEN:

NATALIA DOZORTSEVA
A Trustee of the ALPHA TRUST, a Lichtenstein registered trust (FL-0002-510.771-1

Applicant / Intended Party
AND

SAVANNAH ADVISORS INC.
Claimant / First Respondent

AND

PRESTIGE TRUST COMPANY LTD.
Defendant / Second Respondent

---

**SECOND AFFIDAVIT OF NATALIA DOZORTSEVA**

---

Natasha S. Grey
Grey's Legal Chambers

Pond Road, Basseterre
Saint Kitts and Nevis