EXHIBIT 32

[handwritten: 20/42-15]
RECEIVED ON 25 AUGUST 2020

[National Emblem]
PRINCIPALITY OF LIECHTENSTEIN
# PRINCELY COURT
# OF LIECHTENSTEIN (FÜRSTLICHES LANDGERICHT)

Please mention file no. in all submissions
07 HG. 2020.112
Ref. no. (ON) 9

# ORDER

# Legal Matter

**Applicant**:                          **Stephan Egiazaryan,**

REDACTED                                                    Moskva,

Russia REDACTED

represented by Walser Rechtsanwälte AG,

Lettstrasse 37, P.O. Box 580, 9490 Vaduz


**Respondent:**          1st    **Mag. Rudolf Schächle**, born on

REDACTED 1968, REDACTED                          Vaduz


**Respondent:**          2nd **Mag. iur. Raphael Näscher**, born on

REDACTED 1977, REDACTED                          Vaduz

represented by Wohlwend Näscher

Schächle Rechtsanwälte AG,

Pflugstrasse 16, P.O.Box 635, 9490 Vaduz


**Further Party:**          **Vitaly Ivanovich Smagin**

represented by Advocatur Seeger, Frick &

Partner AG, 9494 Schaan


**For:**                  Supervision of a trust

(amount in litigation: CHF 30,000.00)


1.      **Pursuant to Art. 8 par. 4 of the Attorneys' Tariff Act
        (Rechtsanwaltstarifgesetz, RATG) the assessment basis is established
        with an amount of CHF 500,000.00.**


2.      **The application with the following contents**

Page 2

1.      *If it pleases the Court, the Princely Court of Liechtenstein may –
        based on the objective notification having regard to Art 929 par. 3 of
        the Persons' and Companies' Act (Personen- und Gesellschaftsrecht,
        PRG) take the appropriate measures in the framework of a
        supervisory proceedings to ensure that no over-utilization exceeding
        the purposes of the enforcement proceedings under 08 EX.2016.5802
        and no other damage to the assets of the ALPHA Trust occurs, not
        only but particularly by:*

        *a) the dismissal of Mr. Mag. iur. Rudolf Schächle and Mr. Mag. iur.
        Raphael Näscher from their function as trustees of the ALPHA Trust
        and instead appointing neutral persons as new trustees.*

        *in eventu:*

        *b) the appointment of a neutral third trustee for the ALPHA Trust.*

2.      *If it pleases the Court, the Princely Court of Lichtenstein may -until
        the conclusion of the supervisory proceedings to be initiated – in any
        case prohibit Mr. Mag. iur. Rudolf Schächle and Mr. Mag. iur. Raphael
        Näscher by way of preliminary injunction ("einstweilige Verfügung")
        from performing acts as trustees for the ALPHA Trust, which directly
        or indirectly go beyond the purpose of collecting the claim within the
        meaning of the proceedings under 08 EX.2016.5802. In particular, if it
        pleases the Court, the Princely Court of Liechtenstein may prohibit
        Mr. Mag. iur. Rudolf Schächle and Mr. Mag. iur. Raphael Näscher from*

Page 3

> *transferring the assets of the Trust from the Compagnie Monégasque de Banque to another banking institution via the directors of Savannah Advisors Inc, Nevis.*

> **3.**   *If it pleases the Court, the Princely Court of Liechtenstein also may immediately revert the actions of Mr. Mag. iur. Rudolf Schächle and Mr. Mag. iur. Raphael Näscher performed as trustees of the ALPHA Trust, which go beyond the purpose of the collection of the claim within the meaning of the proceedings under 08 EX.2016.5802, namely the recognition of Mrs. Natalia Tsaglolva as a beneficiary of the ALPHA Trust, the appointment of new directors of Savannah Advisors Inc, Nevis, as well as the dismissal of Alpenrose Wealth Management AG as asset manager of the ALPHA Trust.*

**is rejected.**

**3.**   **The Applicant is liable to reimburse the costs of litigation determined with an amount of CHF 7,374.05 (including CHF 527.21 of VAT) within four weeks to the Respondents to the attention of their representative and to reimburse the costs of litigation determined with an amount of CHF 6,224.40 to the Further Party to the attention of their representative.**

**4.**   **An ex officio proceeding is not initiated.**

# Grounds

With the notification received on 05-08-2020, ref. no. (ON 1), the Applicant requested as can be seen from the award. For justification purposes, he brought forward as follows:

[OMISSIS: Page 4 to Page 65]

Page 66

The fact that the Respondents have made dispositions in connection with beneficiaries does not follow from the letter of Mrs. Tsaglolva's legal representatives, especially since the reference to the status of beneficiary probably refers to the Instrument of Nomination dated 03-07-2015, by which the then trustee CTX Treuhand AG as well as the protector Ashot Egiazaryan appointed his wife (Mrs. Tsaglolva) as beneficiary [Enclosure 1.12]. There is no evidence at all that the Respondents have made any disposals in connection with beneficiaries.

The following results thereout from a legal point of view:

A trust under Liechtenstein law is - as the representative of the Further Party correctly explained - a legal relationship between persons which, unlike stock corporations or foundations, has no legal personality of its own and can only be entitled and obliged by its trustee (as a natural or legal person). Due to the publicity required for the creation of lien rights, the CTX (as trustee at the time of the issuance of the authorization of enforcement ("*Exekutionsbewilligung*")) was therefore to be included in the award.

It may also be deemed known that when claims are asserted against a trust, the designation of the parties must not be the trust name, but "Trustee of the Trust X". Mentioning the CTX in the award did therefore not mean a fixation on CTX, but only the correct designation of the trust relationship subject to seizure at that time. The Court does not understand how one can come to the conclusion that the authorization of enforcement had expired with the dismissal of the CTX and that the Respondents had not effectively become trustees.  There is nothing to add to the detailed explanations given by the representative of the Further Party in this regard.

Page 67

By order of the Princely Court of Liechtenstein of 02-03-2020 under 08 EX.2016.5802, all - already seized - rights of Ashot Egiazaryan as trustor, protector and beneficiary were transferred to Mr. Smagin. As a result, he lacked the authority to appoint new trustees and to appoint the Applicant with Instrument of Appointment dated 31-03-20 as beneficiary. Irrespective of the fact that a discretionary beneficiary does not have the right to file an application under Art 929 of the Persons' and Companies' Act (PGR), the Applicant is not a discretionary beneficiary. Therefore, he is not an interested party to the proceedings; that is why his applications had to be rejected.

In addition, it could not be established that the Respondents had made dispositions in connection with beneficiaries. A possible breach of duty can therefore not result therefrom. Based on the Instrument of Nomination dated 03-07-2015, by which the then trustee CTX Treuhand AG as well as the protector Ashot Egiazaryan appointed his wife (Mrs. Tsaglolva) as beneficiary, the Respondents could also not be required to contest her status as beneficiary.

The asset management was changed by Savannah Advisors Inc. among other reasons because same[1] did not recognize the new directors and did not cooperate with them. This is an understandable and unobjectionable reason. Since the change was made by Savannah Advisors Inc. and not by the trustees, this alone cannot therefore be a reason for a breach of duty by the trustees.

However, even if the trustees had made the change, this is within the normal scope of discretion of a trustee, in particular when changing from an asset manager who does not have a license of the Financial Market Authority to one who does have same.

---

[1] Translator's Note: The German text says "weil diese die neuen Direktoren nicht anerkannten". The pronoun „diese" (engl. same) is grammatically ambiguous and could – from a grammatical point of view - refer to "Savannah Advisors Inc" and/or "Vermögensverwaltung". Given the context, it might rather refer to "Vermögensverwaltung" (engl. asset management), since the Savannah cannot recognize its directors but this is done automatically.

Page 68

As far as the attempt to transfer the assets of the trust to Liechtenstein is concerned, it is not clear to the Court why this should constitute a breach of duty. The trust and the trustees are domiciled in Liechtenstein and it is the good right of a trustee to transfer the assets to Liechtenstein as well.

There are therefore no breaches of duty by the Respondents which would justify official action and the opening of supervisory proceedings.

Regarding the costs:

Since the Applicant - even if he ultimately only "suggested" measures - thus made it necessary for the Respondents to make a statement, as well as for Vitaly Smagin, to whom comprehensive rights are granted in relation to the trustees by virtue of the  realization of the right, he must bear these costs within the meaning of Art 78 of the Non-Contentious Litigation Act (Ausserstreitgesetz; AussStrG).

The Respondents have objected that the amount in dispute of CHF 30'000.00 is far too low. An amount of CHF 500'000.00 should be taken as a basis.

The objection of the Respondents is justified. As can be seen from the pleading, the issue at stake is the control and the right of disposal over trust assets in the three-digit million range. Given this starting point, even CHF 500'000.00 as a basis of assessment is a moderate approach. According to Art 8 par. 4 of the Attorneys' Tariff Act (Rechtsanwaltstarifgesetz, RATG), the assessment basis therefore was to be established with CHF 500,000.00.

Based on this assessment basis, the Respondents and the Further Party are therefore entitled to compensation for their counter-statement.

Page 69


Princely Court of Liechtenstein

Vaduz, on 24-08-2020

Mag. Stefan Rosenberger

Judge of the Princely Court of Liechtenstein


For the correctness of the copy

[Signature: illegible]

Tanja Verling


[Seal: PRINCELY COURT OF LIECHTENSTEIN; national emblem]

Page 70

## Instruction on legal remedies

Against this order, the legal remedy of "Recourse" *(Rekurs*) may be lodged with the Princely Court of Appeal (Fürstliches Obergericht), Vaduz, within the unextendable period of 4 weeks from service. The Recourse must be lodged in writing in two copies with the Princely Court (Fürstliches Landgericht). The Recourse may also be declared orally for the record by parties not represented by an attorney. The Recourse must contain the description of the case, the first name, surname and address of the Appellant, and a description of the order against which it is being appealed. The Recourse must not contain a specific request, but must sufficiently indicate the reasons for which the party considers itself to be adversely affected by and which other decision it seeks (recourse petition); in case of doubt, the order against which a Recourse has been lodged shall be deemed to be contested in its entirety.

*In my capacity as a translator for the English and French language, duly appointed, commissioned and sworn in by the President of the Regional Court of Innsbruck, Austria, as well as in my capacity as interpreter and translator accredited before the Liechtenstein courts and authorities, I hereby certify that the foregoing is a true and complete English translation of the copy submitted to me in the German language and was established to my best knowledge and belief. The English passages that were already translated in the original document were omitted, which was marked with OMISSIS.*
*IN WITNESS WHEREOF I have hereunder set my hand and seal*



*Innsbruck, on 26-08-2020*



FÜRSTENTUM LIECHTENSTEIN
**FÜRSTLICHES**
LANDGERICHT

EINGEGANGEN AM  2 5. AUG. 2020

Aktenzeichen bitte immer anführen
07 HG.2020.112
ON 9

# BESCHLUSS

## Rechtssache

| | | |
|---|---|---|
| **Antragsteller:** | | **Stephan Egiazaryan**, REDACTED Moskva, Russia REDACTED vertreten durch Walser Rechtsanwälte AG, Lettstrasse 37, Postfach 580, 9490 Vaduz |
| **Antragsgegner:** | 1. | **Mag. iur. Rudolf Schächle**, geboren am REDACTED 1968, REDACTED Vaduz |
| **Antragsgegner:** | 2. | **Mag. iur. Raphael Näscher**, geboren am REDACTED 1977, REDACTED Vaduz vertreten durch Wohlwend Näscher Schächle Rechtsanwälte AG, Pflugstrasse 16, Postfach 635, 9490 Vaduz |
| **Weitere Partei:** | | **Vitaly Ivanovich Smagin** vertreten durch Advocatur Seeger, Frick & Partner AG, 9494 Schaan |
| **wegen:** | | Aufsicht über eine Treuhänderschaft (STW. CHF 30'000.00) |

1. **Gemäss Art 8 Abs 4 RATG wird die Bemessungsgrundlage mit CHF 500'000.00 festgesetzt.**

2. **Der Antrag mit dem folgenden Inhalt**

■   Seite 2   ■

1. *Das Fürstliche Landgericht wolle aufgrund der gegenständlichen Anzeige gestützt auf Art. 929 Abs. 3 PGR im Rahmen eines Aufsichtsverfahrens die geeigneten Massnahmen setzen, um zu gewährleisten, dass keine über die Zwecke des Exekutionsverfahrens zu 08 EX.2016.5802 hinausgehende Überverwertung und auch keine sonstige Schädigung des Vermögens des ALPHA Trust eintritt, dies nicht nur aber insbesondere durch:*

   a) *die Enthebung der Herren Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher von ihrer Funktion als Treuhänder des ALPHA Trust und stattdessen Einsetzung von neutralen Personen als neue Treuhänder.*

      *eventualiter:*

   b) *die Bestellung eines neutralen dritten Treuhänders für den ALPHA Trust.*

2. *Das Fürstliche Landgericht wolle jedenfalls bis zum Abschluss des einzuleitenden Aufsichtsverfahren den Herren Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher per einstweiliger Verfügung untersagen, Handlungen als Treuhänder für den ALPHA Trust zu setzen, welche direkt oder indirekt über den Zweck der Hereinbringung der Forderung im Sinne des Verfahrens zu 08 EX.2016.5802 hinausgehen. Insbesondere wolle das Landgericht den Herren Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher untersagen, via die Direktoren der Savannah Advisors Inc., Nevis, das Vermögen*

■ Seite 3 ■

*des Trusts von der Compagnie Monégasque de Banque auf ein anderes Bankinstitut zu übertragen.*

3. *Das Fürstliche Landgericht wolle zudem die von den Herren Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher als Treuhänder des ALPHA Trust gesetzten Handlungen, welche über den Zweck der Hereinbringung der Forderung im Sinne des Verfahrens zu 08 EX.2016.5802 hinausgehen, namentlich die Anerkennung von Frau Natalia Tsaglolva als Begünstigte des ALPHA Trust, die Bestellung von neuen Direktoren der Savannah Advisors Inc., Nevis, sowie die Abberufung der Alpenrose Wealth Management AG als Vermögensverwalterin des ALPHA Trusts, unverzüglich rückgängig machen.*

**wird zurückgewiesen.**

3. Der Antragsteller ist schuldig, binnen vier Wochen den Antragsgegnern zu Handen deren Vertreter die mit CHF 7'374.05 bestimmten Prozesskosten (darin CHF 527.21 MwSt) und der weiteren Partei zu Handen deren Vertreter die mit CHF 6'224.40 bestimmten Prozesskosten zu ersetzen.

4. Ein amtswegiges Verfahren wird nicht eingeleitet.

# Begründung

Mit der am 05.08.2020 eingelangten Anzeige ON 1 begehrte der Antragsteller wie aus dem Spruch ersichtlich. Zur Begründung brachte er vor wie folgt:

## I.   Parteien

1.   Der Anzeiger Stephan Egiazaryan, geboren am 11.08.1998, ist Ermessensbegünstigter der in Liechtenstein unter dem Namen «ALPHA Trust» bestehenden Treuhänderschaft gemäss Art. 879 ff. PGR. Der Trust ist im Handelsregister unter der Registernummer FL-0002-510.771-1 eingetragen.

2.   Partei eines Ausserstreitverfahrens ist nach Art. 2 Abs. 1 lit. c AussStrG jede Person, soweit ihre rechtlich geschützte Stellung durch die begehrte oder vom Gericht in Aussicht genommene Entscheidung oder durch eine sonstige gerichtliche Tätigkeit unmittelbar beeinflusst würde. Die rechtlich geschützte Stellung einer Person wird dann unmittelbar beeinflusst, wenn die in Aussicht genommene Entscheidung oder gerichtliche Tätigkeit Rechte oder Pflichten dieser Person ändert, ohne dass noch eine andere Entscheidung gefällt werden muss.

Zusätzlich werden auch solche Personen Partei eines Ausserstreitverfahrens, die durch irgendeine andere gerichtliche Tätigkeit in ihrer rechtlich geschützten Stellung unmittelbar beeinflusst werden (OGH 03.03.2017, LES 2017, 66). Gemäss Rechtsprechung des Staatsgerichtshofs steht Ermessensbegünstigten jederzeit die Möglichkeit offen, Missstände in der Trustverwaltung beim Gericht anzuzeigen (StGH 30.06.2015, StGH 2015/047). Der Anzeiger ist in seiner Position als Ermessensbegünstigter des ALPHA Trusts sohin zur Einbringung der gegenständlichen Anzeige legitimiert.

3.   Die belangten Personen zu 1. sowie zu 2. wurden von Vitaly Smagin am 09.03.2020 gestützt auf den Beschluss des Fürstlichen Landgericht vom 02.03.2020 zu 08 EX.2016.5802 (ON 109) als Treuhänder des ALPHA Trusts eingesetzt.

## II.   Sachverhalt

4. *Die Vermögenswerte des ALPHA Trusts sind derzeit Gegenstand diverser Gerichtsverfahren in Liechtenstein. Ausgangspunkt dieser Verfahrenseinleitungen ist ein Schiedsspruch des London Court of International Arbitration vom 11.11.2014, in welchem Ashot Egiazaryan zur Bezahlung eines Betrages in Höhe von rund USD 92.5 Mio. an Vitaly Smagin angehalten wurde.*

*Zur Durchsetzung dieser Forderung – und nur dafür – wurden im Verfahren zu 08 EX.2016.5802 mit Exekutionsbewilligung vom 21.11.2016 (ON 3) die Ashot Egiazaryan in seiner Eigenschaft als Treugeber, Protektor und Begünstigter des ALPHA Trusts gegenüber der CTX Treuhand AG als Treuhänderin des ALPHA Trusts zustehenden und nachfolgend aufgezählten Gesamtrechte gepfändet:*

a) *das Recht auf Erhalt von Zahlungen und Zuwendungen aller Art aus dem Treugut;*

b) *das Recht zur Bestellung und Abberufung der Treuhänder des ALPHA Trusts;*

c) *das Recht des Treuhänders zur Beendigung des ALPHA Trusts;*

d) *das Recht des Treuhänders zur Bestellung der Begünstigten des ALPHA Trusts;*

e) *das Recht des Treuhänders zur Änderung der Treuhandurkunden des ALPHA Trusts;*

f) *das Recht des Treuhänders zur Delegation sämtlicher Rechte des Treuhänders einschliesslich seiner Ermessensbefugnisse;*

g) *das Recht des Treuhänders zur Ausübung sämtlicher Rechte der in der First Schedule der Declaration of Trust festgelegten Rechte; sowie*

h) *die Rechte als Vermögensverwalter des Trusts.*

*Gegen diesen Pfändungsbeschluss erhoben sowohl Vitaly Smagin als auch Ashot Egiazaryan Rekurs an das Obergericht und es wurde mit Beschluss vom 03.08.2017 beiden Rekursen im Sinne einer Abweisung der*

*Exekutionsanträge Folge gegeben. Dem hiergegen erhobenen Revisionsrekurs von Vitaly Smagin wurde mit Beschluss des Obersten Gerichtshofs vom 07.09.2018 (ON 72 zu 08 EX.2016.5802) Folge gegeben, die angefochtene Entscheidung des Obergerichts aufgehoben und der Beschluss des Erstgerichts vom 21.11.2016 (ON 3) wiederhergestellt. Den hiergegen erhobenen Individualbeschwerden an den Staatsgerichtshof wurde mit Urteilen vom 29.10.2019 keine Folge gegeben.*

*Mit Schriftsätzen vom 24.07.2017 sowie 11.02.2020 stellte Vitaly Smagin (sodann) einen Verwertungsantrag und das Landgericht bewilligte mit Beschluss vom 02.03.2020 (ON 109) die Verwertung der obgenannten Gesamtrechte. Hiergegen erhob Ashot Egiazaryan mit Schriftsatz vom 23.03.2020 Rekurs an das Obergericht. Das hierdurch eingeleitete Rekursverfahren ist nach wie vor hängig.*

5. *Obwohl sich die obgenannte Exekutionsbewilligung vom 21.11.2016 (ON 3) explizit auf die Pfändung der der verpflichteten Partei als Treugeber, Protektor und Begünstigter zustehenden Rechte «gegenüber der CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha Trust» bezieht, hat Vitaly Smagin mit Beschluss vom 09.03.2020 die CTX Treuhand AG als Treuhänderin abberufen und die beiden belangten Personen Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher als nunmehrige Treuhänder des ALPHA Trusts eingesetzt.*

*In Wahrung seiner Pflichten als Protektor des ALPHA Trusts ernannte Ashot Egiazaryan gestützt auf die «Declaration of Trust vom 27.05.2015» sowie das «Instrument of Appointment of Additional Trustees vom 31.03.2020» Natalia Dozortseva als Treuhänderin für den ALPHA Trust. Am 23.04.2020 wurde sie als Treuhänderin des ALPHA Trusts ins Handelsregister eingetragen. Mit Verfügung vom 27.04.2020 hat das Amt für Justiz den genannten Eintrag nachträglich abgewiesen. Hiergegen wurde Vorstellung an das Amt für Justiz bzw. die Beschwerde an die Beschwerdekommission für Verwaltungsangelegenheiten erhoben. Zwischenzeitlich wurde zudem Frau Murielle Jouniaux zur Treuhänderin*

◼ Seite 7 ◼

*bestellt. Die Angelegenheit ist bis zum heutigen Zeitpunkt nach wie vor rechtsanhängig.*

*Derzeit ist daher ungeachtet der obigen Ausführungen davon auszugehen, dass die von Vitaly Smagin bestellten Treuhänder Mag iur. Rudolf Schächle sowie Mag. iur. Raphael Näscher die belangten Personen der gegenständlichen Anzeige sind, zumal sie tatsächlich ihre Funktionen als Treuhänder des ALPHA Trust wahrnehmen, dabei aber über den Zweck des Verfahrens zu 08 EX.2016.5802 hinausschiessen und ihre Kompetenzen überschreiten, was nachfolgend dargelegt wird.*

6. *Mit Klage vom 09.03.2016 hat Vitaly Smagin zur Durchsetzung seines Anspruches beim Landgericht im Verfahren zu 04 CG.2016.115 bzw. neu 04 CG.2019.5 eine Gläubigeranfechtungsklage gegen die CTX Treuhand AG als vormalige Treuhänderin des Alpha Trust eingereicht, wobei anstelle der CTX Treuhand AG zwischenzeitlich die belangten Personen Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher als beklagte Parteien in den Prozess eingetreten sind (Beschluss Landgericht vom 09.04.2020, ON 121 zu 04 CG.2019.5). Ashot Egiazaryan (als Settlor und Protektor) und der Anzeiger (als Begünstigter) sowie in der Folge auch Natalia Dzortseva und Murielle Jouniaux (als neu bestellte Treuhänderinnen) haben sich diesem Verfahren als Nebenintervenienten beigeschlossen. Im Verfahren zu 04 CG.2019.5 ist derzeit die Frage der aktorischen Kaution beim Staatsgerichtshof anhängig.*

*Im Verfahren zu 04 CG.2019.5 macht Vitaly Smagin zur Hereinbringung seiner Ansprüche aus dem Schiedsurteil gegen Ashot Egiazaryan gegenüber dem APLHA Trust einerseits einen (umgekehrten) Haftungsdurchgriff geltend und andererseits eine Anfechtung der seinerzeitigen Vermögensübertragung auf den Trust. Diese Klage wurde parallel zum Antrag auf Exekutionsbewilligung (08 EX.2016.5802) eingereicht. Offenbar ging Vitaly Smagin seinerzeit (zu Recht) davon aus, dass ein umgekehrter Haftungsdurchgriff auf das Trustvermögen für persönliche Verbindlichkeiten von Ashot Egiazaryan nur in einem*

*separaten Zivilverfahren erfolgen kann, in dem der ALPHA Trust bzw. dessen Treuhänder auch selbst Partei sind. Letzteres ist im Exekutionsverfahren zu 08 EX.2016.5802 gerade nicht der Fall; verpflichtete Partei ist dort (nur) Ashot Egiazaryan.*

### III.   Pflichtverletzung der Treuhänder

7.   *Aufgrund dieser – dem Anzeiger unvollständig bekannten – Sachlage ergibt sich, dass in verschiedenen Verfahren rund um den ALPHA Trust diverse Rechts- bzw. Vorfragen nicht geklärt sind. So unter anderem die Frage, welche Personen derzeit effektiv rechtmässig als Treuhänder des ALPHA Trust bestellt worden sind.*

   *Angesichts dieser Situation richtet sich die gegenständliche Anzeige jedenfalls gegen die von Vitaly Smagin bestellten Treuhänder Mag. iur. Rudolf Schächle sowie Mag. iur. Raphael Näscher, die zwischenzeitlich für den Trust effektiv Rechtshandlungen vorgenommen haben.*

8.   *Die grundsätzliche Aufgabe eines Treuhänders (Trustees) besteht darin, die Interessen des Trusts und der Begünstigten zu wahren und gemäss diesen zu handeln. Im Verfahren zu 08 EX.2016.5802 wurden die Treuhänder Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher allerdings lediglich zum Zweck der Sicherung der Betragsforderung von Vitaly Smagin in Höhe von rund USD 92.5 Mio. eingesetzt. Darüberhinausgehende Aufgaben und Funktionen kommen diesen im gegenständlichen Fall nicht zu.*

   *So hält auch das Landgericht in seinem Beschluss vom 21.04.2020 (ON 125 zu 08 EX.2016.5802) ausdrücklich folgendes fest:*

   *«Einzig noch die Gefahr, dass die neuen Treuhänder bzw. der Rekursgegner sich das gesamte Treugut (und nicht nur Treugut in Höhe der gegenständlichen Forderung) auszahlen würden, wird geltend gemacht. Dem ist zu erwidern, dass die gegenständliche*

■ Seite 9 ■

*Exekutionsbewilligung nur zur Hereinbringung einer konkreten Forderung bewilligt worden ist und demgemäss auch Verwertungshandlungen nur bis zur Höhe dieser Forderung zulässig sind.»*

*Wie sohin selbst das Landgericht ausführt, ist evident, dass sich die Handlungen der belangten Personen als eingesetzte Treuhänder jedenfalls auf den in der Exekutionsbewilligung beschlossenen Umfang zu beschränken haben und keinerlei Vorkehrungen darüber hinaus getroffen werden dürfen, widrigenfalls dies jedenfalls eine Haftung der Treuhänder gegenüber dem Trust zur Folge hätte. Über die Exekutionsbewilligung hinaus gehende Verwertungshandlungen sind unzulässig.*

9.  *Wie dem Anzeiger nun aber bekannt geworden ist, beschränken sich die Handlungen der von Vitaly Smagin eingesetzten Treuhänder Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher nicht auf deren eigentliche Funktion, sondern haben diese vielmehr darüberhinausgehende Rechtshandlungen zu Lasten des ALPHA Trusts gesetzt.*

*So haben die belangten Personen zu 1. und 2. bereits Besprechungen mit der rechtsfreundlichen Vertreterin der (Noch-)Ehefrau von Ashot Egiazaryan zur Klärung der gegenständlichen Situation geführt. Die Rechtsvertreterin von Natalia Tsaglolva ((Noch-)Ehefrau von Ashot Egiazaryan) hält hierzu in ihrem Schreiben an die Herren Schächle und Näscher vom 18.06.2020 fest: «Als Ergebnis der Besprechung erlaube ich mir festzuhalten, dass die Begünstigtenstellung unserer Mandantin [gemeint Natalia Tsaglolva] gegenüber dem Alpha Trust unstrittig [Hervorhebung durch den Verfasser] ist.»*

*Nach Angaben ihrer Rechtsvertreterin stünden Natalia Tsaglolva geldwerte Ansprüche gegenüber Ashot Egiazaryan in Höhe von zumindest USD 10 Mio. zu. Der genaue Betrag würde derzeit vor den kalifornischen Gerichten geklärt werden.*

■     Seite 10     ■

*Mit Anerkennung von Natalia Tsaglolva als Begünstigte des ALPHA Trusts
besteht sohin die erhöhte Gefahr von Ausschüttungen zu deren Gunsten
und folglich zu Lasten des Anzeigers, dessen Begünstigtenstellung
gegenüber dem ALPHA Trust – im Gegensatz zu jener von Natalia
Tsaglolva – tatsächlich unbestritten ist.*

*Weder die Anerkennung von Natalia Tsaglolva als Begünstigte des ALPHA
Trust noch eine offenkundig drohende Vornahme von Ausschüttungen an
sie sind jedoch Gegenstand des inländischen Exekutionsverfahrens zu 08
EX.2016.5802 und auch nicht gemäss Beschluss des Landgerichts vom
21.04.2020   (ON   125   zu   08   EX.2016.5802)   vom   Umfang   der
Exekutionsbewilligung umfasst. Die belangten Personen zu 1. und 2.
nehmen hier somit also offensichtlich Rechtshandlungen zu Lasten des
Trusts bzw. der Beteiligten vor, zu welchen die im Zuge des Verfahrens zu
08 EX.2016.5802 quasi interimistisch eingesetzten belangten Personen vom
Landgericht nicht ermächtigt sind. Solche Handlungen gehen jedenfalls
über die Hereinbringung einer konkreten Forderung von Vitaly Smagin
weit hinaus. Es liegt damit eine Schädigung des sonstigen und von der
Forderung Smagins nicht betroffenen Trustvermögens und damit
einhergehend eine Kompetenzüberschreitung sowie Pflichtverletzung
seitens der belangten Personen vor.*

*Damit ist nunmehr aber auch eindeutig belegt, dass eben sehr wohl die
Gefahr von überschiessenden Handlungen der von Smagin bestellten
Treuhänder bzw. die Gefahr einer Überverwertung besteht. Dies entgegen
der seinerzeitigen Auffassung des Landgerichts in seinem Beschluss vom
21.04.2020 zu 08 EX.2016.5802 (ON 125).*

10. *In diesem Zusammenhang sei zudem erneut darauf hingewiesen, dass
nach   wie   vor   die   zentrale   Frage   ungeklärt   ist,   ob   der   im
Exekutionsverfahren zu 08 EX.2016.5802 und ohne Beteiligung des ALPHA
Trusts «en passant» vorgenommene Haftungsdurchgriff auf eben diesen
überhaupt zulässig ist. Dies wird vom Anzeiger bestritten.*

*Der Ansicht, dass es zur Klärung der Frage des Haftungsdurchgriffs eines eigens dafür vorgesehenen Zivilverfahrens bedarf, war offensichtlich auch die Rechtsvertreterin von Vitaly Smagin, welche bereits mit Datum vom 09.03.2016 – also parallel zur Einleitung des Exekutionsverfahrens – eine solche Zivilklage zum Aktenzeichen 04 CG.2016.115 bzw. neu 04 CG.2019.5 zur Klärung dieser Frage eingereicht hat (s. dazu vorne Ziff. 6). Als Beklagte wurde dabei die CTX Treuhand AG als (vormalige) Treuhänderin des ALPHA Trusts aufgeführt. Es ist daher evident, dass auch die Rechtsvertreterin von Vitaly Smagin der Auffassung ist, dass es zur Klärung der Frage eines Haftungsdurchgriffs auf das Trustvermögen für persönliche Schulden von Ashot Egiazaryan auch der Beteiligung des Trusts bedarf und der im Exekutionsverfahren bewilligte Durchgriff zur Vornahme von Ausschüttungen an Vitaly Smagin jedenfalls nicht ausreichend ist.*

11. *Die belangten Personen haben als Treuhänder des ALPHA Trust eine weitere (zur Hereinbringung der Forderung von Smagin unnötige) Kompetenzüberschreitung begangen, indem sie nachweislich den jahrelangen Vermögensverwalter des ALPHA Trusts, die Alpenrose Wealth Management AG, abgesetzt haben. Zudem haben die belangten Personen eigenmächtig die Abdisponierung der gesamten (!) Vermögenswerte des Trusts vom Konto bei der Compagnie Monégasque de Banque veranlasst. Dieses Konto wird zwar im Namen der Savannah Advisors Inc., einer Gesellschaft mit Sitz auf der Insel Nevis, gehalten. Allerdings hält der ALPHA Trust 100% der Aktien an der Savannah. Das Kontoguthaben beträgt laut Klage von Vitaly Smagin (zu 04 CG.2016.115 bzw. neu 04 CG.2019.5) rund USD 188 Mio. und somit einen die Forderung von Smagin weit übersteigenden Betrag.*

*Es ist nicht ersichtlich, weshalb die Abberufung des Vermögensverwalters des Trust-Vermögens zum beschränkten Zweck der Hereinbringung einer konkreten Forderung von Vitaly Smagin notwendig sein sollte. Einem Vermögensverwalter kommt von vornherein kein Zugriffsrecht auf das Vermögen zu, sondern eben nur ein Verwaltungsrecht. Zudem besteht*

*durch die Abberufung der bisherigen, äusserst erfolgreich arbeitenden Vermögensverwalter die Gefahr für das gesamte Trustvermögen, dass dieses auch über die konkrete Forderung des Herrn Smagin hinaus mangels professioneller Verwaltung erheblichen Schaden erleidet. Diese Gefahr besteht umso mehr, als sich die Finanzmärkte seit Monaten in einem äusserst kritischen Umfeld befinden. Durch die Handlungen der belangten Personen erleidet der ALPHA Trust und sein Vermögen einen nachhaltigen Schaden.*

*Der bis anhin amtende Vermögensverwalter wurde sodann durch Beschluss der belangten Personen durch eine – im Interesse des Vitaly Smagin liegenden – Person ersetzt. Daraufhin wurde die Compagnie Monégasque de Banque, bei welcher sich das Konto der Savannah Advisors Inc. befindet, von den neuen Direktoren instruiert, die gesamten Vermögenswerte des Trusts auf ein Konto einer anderen Bank im Ausland zu überweisen. Mutmasslich handelt es sich dabei um die Kaiser Partner Privatbank in Vaduz. Es wird daher offensichtlich versucht, die Gelder des Trusts ohne notwendige Ermächtigung aus Monaco abzutransferieren. Aber auch diese Handlungen sind jedenfalls nicht vom Umfang der Exekutionsbewilligung gedeckt und die belangten Personen überschreiten damit ihre Kompetenzen.*

*Ferner ist ausdrücklich darauf hinzuweisen, dass auch die Bestellung der neuen Direktoren der Savannah Advisors Inc. rechtlich mehr als fragwürdig ist, weshalb auch der Registered Agent der Gesellschaft, namentlich die Prestige Trust Company Ltd., durch ihren Rechtsvertreter mit Schreiben vom 15.07.2020 mitteilen liess, dass die Ersatzbestellung der Direktoren Gegenstand von Rechtsstreitigkeiten ist, so dass das sog. Certificate of Incumbency vom 31.03.2020, welches Herrn Silvio Vogt sowie das JGT Treuunternehmen reg., Vaduz, als neue Direktoren ausweist, nicht als Grundlage etwa für Kontozeichnungsrechte benutzt werden sollte. Offenkundig wird dies aber getan.*

■ Seite 13 ■

12. *Zusammenfassend ist daher belegt und diesbezüglich auch Gefahr im Verzug, dass die belangten Personen, zum Teil via die unrechtsmässig bestellten Direktoren der Savannah Advisors Inc. (Herr Vogt und JGT Treuunternehmen reg.), Handlungen vorgenommen haben und vornehmen werden, welche zweifelsfrei durch den Zweck des Exekutionsverfahren zu 08 EX.2016.5802, nämlich die Hereinbringung einer ziffernmässig bestimmten und das Trustvermögen nicht übersteigenden Forderung von Vitaly Smagin, bei Weitem nicht gedeckt sind bzw. über diesen Zweck hinausgehen. Die einzig und allein für diesen Zweck eingesetzten belangten Personen (und auch die Direktoren der Savannah Advisors Inc.) überschreiben somit in vielerlei Hinsicht ihre gerichtlich festgelegten (aber noch strittigen) Kompetenzen. Es besteht dabei die unmittelbare Gefahr, dass das gesamte Trustvermögen und damit insbesondere auch das nach durchgeführter Exekution im freien Verfügungsbereich des Trusts verbleibende Trustrestvermögen nachhaltig erheblichen Schaden erleidet, wenn das Gericht als Trustaufsichtsgericht nicht umgehend alle notwendigen Massnahmen trifft, um diesem Treiben der belangten Personen ein Ende zu setzen. Hierzu werden von Amtes wegen auch einstweilige Massnahmen nach pflichtgebundenem Ermessen des Landgerichts unumgänglich sein.*

## IV.   Aufsichtsverfahren

13. *Kommt ein Treuhänder seinen Pflichten nicht nach, so kann das Landgericht auf Grund einer Anzeige eines Treuhänders oder eines Begünstigten oder von Amts wegen nach Anhörung der Beteiligten und nach vorheriger Ermahnung, bei wichtigen im Treuhandverhältnisse selbst liegenden Gründen jedoch ohne weiteres, im Ausserstreitverfahren den Treuhänder seines Amtes entheben und die Bestellung eines anderen Treuhänders veranlassen oder einen solchen selbst bestellen, wobei der Weiterzug des Entscheides vorbehalten bleibt (Art. 929 Abs. 3 PGR).*

■   Seite 14   ■

*Dem Anzeiger kommt als Ermessensbegünstigter des Trusts gemäss Rechtsprechung zwar kein formales Antragsrecht an das Aufsichtsgericht gemäss Art. 927 Abs. 2 PGR zu (OGH 03.03.2017, LES 2017, 66). Gemäss Rechtsprechung des Staatsgerichtshofs steht dem Ermessensbegünstigten allerdings jederzeit die Möglichkeit offen, dem Gericht Missstände bei der Trustverwaltung anzuzeigen (StGH 30.06.2015, StGH 2015/047). Dem Anzeiger kommt sohin in seiner Stellung als Ermessensbegünstigter eine Legitimation nach Art 929 Abs. 3 PGR zu.*

*Wie dargelegt, beschränkt sich die Aufgabe und die Pflicht der belangten Personen vorliegend darauf, im Sinne der im Verfahren zu 08 EX.2016.5802 ergangenen Exekutionsbewilligung die dort festgelegte Forderung des Vitaly Smagin zur Auszahlung zu bringen. Verwertungshandlungen, welche nicht mehr in diesem Sinne vorgenommen werden und betragsmässig über die konkrete Forderung von USD 92.5 Mio. hinausgehen, sind auch nach der im Beschluss vom 21.04.2020, ON 125 zu 08 EX.2016.5802, geäusserten Ansicht des Landgerichts nicht zulässig. Indem jedoch bereits die Anerkennung von Natalia Tsaglolva als Begünstigte des ALPHA Trusts erfolgte, der Vermögensverwalter abberufen wurde und zudem bereits versucht wurde, die gesamten Vermögenswerte des Trusts, welche sich derzeit auf der Compagnie Monégasque de Banque befinden, auf eine ausländische Bank abzutransferieren, handelten die belangten Personen in ihrer Funktion als Treuhänder des ALPHA Trusts über ihre Kompetenzen hinaus. Darin liegt eine schwere Pflichtverletzung begründet.*

14. *Auch wenn dem Anzeiger kein formelles Antragsrecht zukommt (s. dazu Ziff. 13), so soll die nachfolgende Antragstellung gleichwohl dem Landgericht als Vorschlag und Leitfaden bei der Setzung der gebotenen Aufsichtsmassnahmen von Amtes wegen dienen.*

Mit am 07.08.2020 (ON 4) eingegangenem Schriftsatz ergänzte der Antragsteller seine Anzeige ON 1 wie folgt:

■   Seite 15   ■

1.  *In der Anzeige vom 04.08.2020 hat der Anzeiger in Punkt III. die
    Pflichtverletzungen der belangten Personen als Treuhänder des Alpha
    Trusts dargelegt und insbesondere in Ziffer 11. ausgeführt, dass die
    belangten Personen als Treuhänder des Alpha Trusts versucht haben, das
    gesamte Vermögen des Trusts via die Direktoren der Tochtergesellschaft
    (Savannah Advisors Inc.) vom Konto bei der Compagnie Monégasque de
    Banque auf eine ausländische Bank abzutransferieren.*

    *Der Anzeiger hat zwischenzeitlich weitere Unterlagen erhalten, welche
    diesen Verdacht untermauern. Dem Anzeiger liegt ein Antrag der
    Direktoren der Savannah Advisors Inc. vom 27.07.2020 vor, wonach diese
    (als Inhaberin des Kontos Nr. 631.562) beim zuständigen Gericht in
    Monaco (als einstweilige Massnahme) beantragte, die Compagnie
    Monégasque de Banque unter Strafandrohung von EUR 50'000.00 pro Tag
    der Verzögerung zu verpflichten, die Vermögenswerte des Alpha Trusts,
    gehalten über das Konto der Savannah Advisors Inc., Konto Nr. 631.562,
    freizugeben und die Instruktion der Direktoren der Savannah Advisors Inc.
    auf Übertragung dieser Vermögenswerte auf ein Konto Nr. 2507281 bei
    der Kaiser Partner Privatbank durchzuführen.*

2.  *Aus dem Antrag geht hervor, dass die belangten Personen via die
    Direktoren der Savannah Advisors Inc. bereits am 12.05.2020 gegenüber
    der Bank in Monaco die Instruktion erteilten, die Vermögenswerte des
    Trusts auf die Kaiser Partner Privatbank zu übertragen, sich die Bank aber
    seither aufgrund der laufenden Streitigkeiten und Verfahren zwischen den
    Parteien weigerte, diese Instruktion umzusetzen. Damit ist unter Beweis
    gestellt, dass die betroffenen Personen im gewollten Zusammenwirken mit
    den neu eingesetzten Direktoren der Savannah Advisors Inc., JGT
    Treuunternehmen reg. und Silvio Vogt, versucht haben, Fakten zu
    schaffen und die Vermögenswerte des Trusts ins Ausland
    abzutransferieren. Da nicht absehbar ist, wie lange die Bank in Monaco
    diesem Druck standhalten wird, sind aufsichtsrechtliche Massnahmen des
    Landgerichtes unumgänglich.*

3.   *Im Übrigen wird auf die in der Anzeige vom 04.08.2020 gemachten Ausführungen und Anträge verwiesen.*

Mit Äusserung vom 20.08.2020 (ON 7) beantragten die Antragsgegner die Zurückweisung bzw. Abweisung der gestellten Anträge und brachten vor wie folgt:

### 1.   *Einleitende Ausführungen*

a)   *Streitwert*

1.1.   *Vorab wird der vom Anzeiger angegebene Streitwert in Höhe von CHF 30'000.00 bemängelt und bestritten. Das Trustvermögen des ALPHA TRUST beträgt rund USD 186 Mio. Die belangten Personen haben als Treuhänder des ALPHA TRUST, deren Enthebung der Anzeiger nunmehr wünscht, somit Kontrolle und Verfügungsberechtigung über einen Trust im dreistelligen Millionenbereich und es handelt sich zudem gegenständlich um eine Angelegenheit mit weittragender Bedeutung. Aus diesem Grunde ist der Streitwert des gegenständlichen Verfahrens mit zumindest CHF 500'000.00 festzulegen.*

b)   *Unschlüssigkeit*

1.2.   *Der Anzeiger stützt seine Anzeige auf Art. 879 ff PGR (Anzeige, ON 1, Seite 2, 1. Absatz sowie Punkt I.1.). An dieser Stelle ist anzumerken, dass die Bestimmungen zu Art. 879 ff PGR die «Einzelunternehmungen mit beschränkter Haftung» betreffen und bereits aufgehoben, somit nicht mehr Bestandteil des PGR, sind. Ohnehin hätte der Anzeiger ausführen müssen, auf welche Einzelbestimmung(en) im PGR sich diese Anzeige stützt, anstatt pauschalisierend auf einen ganzen Abschnitt im PGR zu verweisen. Der Anzeige kann überdies nicht entnommen werden, gestützt auf welche Vorwürfe, welche Massnahme zu ergreifen wären. Die*

■   Seite 17   ■

Anzeige ist damit unschlüssig und bereits aus diesem Grund zurückzuweisen.

c) _Fehlende Antragslegitimation_

1.1. Das Written Instrument of Appointment of Beneficiaries of the Alpha Trust vom 31.03.2020 ist nicht gültig und die darin beschlossene Bestellung von Begünstigen nicht rechtswirksam. Dieser Beschluss wurde von Ashot Egiazaryan sowie von Artur Airapetov und von Natalia Dozortseva unterzeichnet. Die Gesamtrechte des Ashot Egiazaryan als Begünstigter, Protektor und Treugeber des ALPHA TRUST waren zu diesem Zeitpunkt infolge des Exekutionsverfahrens zu 08 EX.2016.5802 aber bereits gepfändet. Insoweit sich der Anzeiger darauf stützt, ist diese Benennung also nicht geeignet, ihm die erforderliche Legitimation zu verschaffen.

Diesbezüglich sei anzumerken, dass das Fürstliche Landgericht im Verfahren 07 HG.2020.93 mit Beschluss vom 27.07.2020 (ON 6) zur Stellung von Ashot Egiazaryan in Bezug auf den ALPHA TRUST auf S. 79 Folgendes ausführte:

«Mit Beschluss des Fürstlichen Landgerichts vom 21.11.2016 (iVm mit dem Beschluss vom 24.02.2016, 08 EX.2016.839) zu 08 EX.2016.5802 wurden sämtliche Rechte des Antragstellers als Treugeber, Protektor und Begünstiger gepfändet. Aufgrund dessen fehlt es ihm an der Beteiligtenstellung etwa gemäss Art. 927 Abs. 2 oder Art. 929 Abs. 3 PGR, weshalb der Antrag allein schon aus diesem Grund aufgrund mangelnder Aktivlegitimation abzuweisen war.»

Diese mangelnde Legitimation von Ashot Egiazaryan – sowie auch von Artur Airapetov und Natalia Dozortseva – schlägt auch auf jene vom Anzeiger, Stephan Egiazaryan, im vorliegenden Verfahren durch.

*Allerdings wurde mit Instrument of Nomination vom 03.07.2015 «Mr Ashot Egiazaryan's wife and children» in den Kreis der Ermessensbegünstigten aufgenommen. Den Treuhändern ist aber bis dato kein Antrag von «Stephan Egiazaryan» um Aufnahme in den Kreis der Ermessensbegünstigten samt entsprechender Dokumentation (u.a. beglaubigte Passkopie, Familienbuch, Geburtsurkunde) eingegangen. Damit steht aktuell nicht fest, wer mit «children» gemeint ist, und wer allenfalls in diese Kategorie fällt (beispielsweise nur eheliche Kinder oder Kinder ab einem bestimmten Alter usw.). Vom Anzeiger wurde jedenfalls nichts Entsprechendes behauptet. Bis eine entsprechende Prüfung der Stellung von Stephan Egiazaryan durchgeführt werden kann, muss die Stellung des Stephan Egiazaryan in Bezug auf den ALPHA TRUST daher aus treuhänderischer / diskretionärer Vorsicht offen bleiben. Insoweit kommt dem Anzeiger auch keine Legitimation zur Stellung dieser Anzeige zu. Die Anzeige muss daher mangels Antragslegitimation zurückgewiesen werden.*

## 2. *Treuhänder des Alpha Trust*

### a) *Rechtmässige Treuhänder des ALPHA TRUST*

2.1. *Treuhänder des ALPHA TRUST, einer im Handelsregister unter der Nummer FL-0002.510.771-1 eingetragenen Treuhänderschaft, sind Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher, LL.M. Diese wurden mit Beschluss vom 09.03.2020 rechtmässig als Treuhänder des ALPHA TRUST bestellt.*

*Im Verfahren zu 08 EX.2016.5802, welches von Vitaly Smagin gegen Ashot Egiazaryan geführt wird, wurde mit Beschluss des Fürstlichen Landgerichts vom 02.03.2020 (ON 109) die Verwertung der mit Exekutionsbewilligung des Fürstlichen Landgerichts vom 21.11.2016 (ON 3) zugunsten des Vitaly Smagin gepfändeten, Ashot Egiazaryan als Treugeber, Protektor und Begünstigter des ALPHA TRUST zustehenden Gesamtrechte bewilligt. Zu diesen Gesamtrechten zählt unter anderem das Recht zur Bestellung und*

*Abberufung der Treuhänder des ALPHA TRUST sowie das Recht zur Ausübung sämtlicher der im First Schedule des Declaration of Trust aufgeführten Rechte. Vitaly Smagin wurde in weiterer Folge somit unter anderem zur Abberufung der CTX Treuhand Aktiengesellschaft als Treuhänderin des ALPHA TRUST und zur Bestellung neuer Treuhänder ermächtigt. Entsprechend hielt auch das Landgericht im Verfahren 07 HG.2020.93 im Beschluss ON 6 fest, dass der Beschluss ON 109 im Verfahren zu 08 EX.2016.5802 sofort vollstreckbar ist und es Herr Smagin freisteht, sich selbst oder eben die Antragsgegner (vorliegend: die belangten Personen) als Treuhänder zu bestellen. Dies entspreche auch der Entscheidung des OGH zu 08 EX.2016.5802, wonach es dem betreibenden Gläubiger (= Vitaly Smagin) erlaubt sei, sich selbst zum Treuhänder zu bestellen, weil die Treuhandurkunde kein Verbot diesbezüglich vorsehe. Wenn Herr Smagin sogar berechtigt sei, sich selbst zum Treuhänder zu bestellen, könne kein Interessenkonflikt vorliegen, der zu Massnahmen nach Art. 929 Abs. 3 PGR Anlass biete (07 HG.2020.93, ON 6, S. 79).*

*Vitaly Smagin hat von diesem, ihm überwiesenen Recht Gebrauch gemacht und mit Beschluss vom 09.03.2020 die CTX Treuhand Aktiengesellschaft als Treuhänderin des ALPHA TRUST abberufen sowie die belangten Personen, Mag. iur. Rudolf Schächle sowie Mag, iur, Raphael Näscher, LL.M. zu den neuen Treuhändern des ALPHA TRUST bestellt. Mit Annahmeerklärung vom 09.03.2020 haben Rudolf Schächle und Raphael Näscher ihre Bestellung angenommen.*

2.2. *Gegen den Beschluss des Fürstlichen Landgerichts vom 02.03.202020, ON 109 zu 08 EX.2016.5802 ist zwar noch ein Rechtsmittelverfahren beim Fürstlichen Obergericht anhängig, jedoch ist der Beschluss bereits vollstreckbar. Ashot Egiazaryan versuchte die aufschiebende Wirkung im Exekutionsverfahren in Liechtenstein bezüglich dieses Verwertungsbeschlusses vom 02.03.2020, ON 109, zu erreichen. Das Fürstliche Landgericht war zu Recht der Ansicht, dass das Abbestellen und Neubestellen der Treuhänder rechtsgültig ist und die klagende Partei die*

Rechte berechtigt ausübt. Die beantragte einstweilige Hemmung wurde mangels Erlag einer Sicherheitsleistung von USD 125 Mio. nicht gewährt. Aus diesem Grunde kommt dem Rekurs im Verfahren zu 08 EX.2016.5802 _keine_ aufschiebende Wirkung zu und ist der Beschluss vom 02.03.2020 (ON 109) vollstreckbar.

2.3.   Die Bestellung der belangten Personen als Treuhänder des ALPHA TRUST ist somit zulässig und rechtswirksam. Nur die belangten Personen dürfen und können daher für den Trust tätig werden. Von der Wirksamkeit dieser Bestellung ist auch das Gericht im Exekutionsverfahren ausgegangen (siehe den Beschluss zu 08 EX.2016.5802 ON 125, Seite 30). Die belangten Personen sind als einzige Treuhänder des ALPHA TRUST im Handelsregister eingetragen.

Davon ist im Übrigen das Gericht auch bereits im Beschluss vom 27.07.2020 zu 07 HG.2020.93 ausgegangen, wenn es ausführt, dass die belangten Personen durch gerichtlichen Beschluss Treuhänder geworden sind (Beschluss vom 27.07.2020, 07 HG.2020.93, Seite 79)

b)  _Falsche Interpretation der exekutionsrechtlichen Beschlüsse durch den Anzeiger_

2.4.   Der Anzeiger behauptet, die Exekutionsbewilligung vom 21.11.2016 (ON 3 zu 08 EX.2016.5802) erfasse lediglich die Ashot Egiazaryan als Treugeber, Protektor und Begünstigter zustehenden Rechte gegenüber der CTX Treuhand AG (in weiterer Folge «CTX») als Treuhänderin des ALPHA TRUST, welche von Vitaly Smagin in weiterer Folge abberufen worden sei (Anzeige, ON 1, Seite 5, Ziff. 5, 1. Absatz). Dies trifft nicht zu.

2.5.   Richtigerweise muss der entsprechende Spruchpunkt im Beschluss ON 3 zu 08 EX.2016.5802 klar sämtliche Gesamtrechte von Ashot Egiazaryan gegenüber dem ALPHA TRUST umfassen. Dass im Spruch von den Gesamtrechten gegenüber der CTX als Treuhänderin die Rede ist, hängt

■  Seite 21  ■

*schlicht damit zusammen, dass eine Treuhänderschaft keine eigenständige (juristische) Person ist, sondern bei einer Treuhänderschaft die Rechte und Pflichten vielmehr rechtlich den jeweiligen Treuhändern zufallen, wobei diese bei einem Wechsel der Treuhänder im Rahmen einer Universalsukzession übergehen. Da für die Begründung von Pfandrechten eine gewisse Publizität erforderlich ist, wurde die CTX als damalige Treuhänderin in den Spruch aufgenommen. Unabhängig davon, wer also Treuhänder des ALPHA TRUST ist, wurden die Gesamtrechte von Ashot Egiazaryan als Treugeber, Protektor und Begünstigter und damit alle Rechte gegenüber dem ALPHA TRUST gepfändet und im Rahmen der Verwertung an Vitaly Smagin übertragen. Würde man der Leseart des Anzeigers folgen, wäre eine Hereinbringung der Forderung des Vitaly Smagin durch die Verwertung der gepfändeten Rechte nach einer Abberufung der CTX gar nicht mehr möglich. Nach der ersten Verwertungshandlung, nämlich der Abberufung der CTX, hätte Vitaly Smagin seine ihm mit Verwertungsbeschluss vom 02.03.2020 (ON 109) übertragenen Rechte somit selbst wieder entzogen. Dies kann keinesfalls gemeint sein, zumal die Abberufung der Treuhänder explizit erlaubt wurde. Die Pfändung der Gesamtrechte von Ashot Egiazaryan als Treugeber, Protektor und Begünstigter des ALPHA TRUST sowie deren Überweisung zur Verwertung bleiben somit auch nach der Abberufung der CTX aufrecht und haben nach Bestellung der neuen Treuhänder weiter Bestand.*

*c) Unzulässige Bestellung neuer (Schein-)Treuhänderinnen*

2.6.   *Der Anzeiger behauptet, dass Natalia Dozortseva und Murielle Jouinaux mittels den Beschlüssen von Ashot Egiazaryan vom 31.03.2020 und vom 16.04.2020 zu Treuhänderinnen des ALPHA TRUST bestellt worden seien (ON 1, S. 5). Dem ist zu entgegnen, dass Natalia Dozortseva und Murielle Jouinaux keine Treuhänderinnen des ALPHA TRUST sind. Sie haben daher keine wie auch immer gearteten Rechte oder Ansprüche im Zusammenhang mit den Angelegenheiten des ALPHA TRUST. Es handelt*

■ Seite 22 ■

*sich bei ihnen in Bezug auf den ALPHA TRUST vielmehr schlicht um
Drittparteien.*

*Wie bereits ausgeführt, sind die Gesamtrechte des Ashot Egiazaryan als
Treugeber, Begünstigter und Protektor des ALPHA TRUST mittels Beschluss
vom 02.11.2016 gerichtlich gepfändet, und es wurde mittels Beschluss
vom 02.03.2020 deren Verwertung bewilligt (ON 109 zu 08 EX.2016.5802).
Die Gesamtrechte kommen damit alleine dem Gläubiger, Vitaly Smagin,
zu. Zu den Rechten des Protektors zählt gemäss Beschluss des Fürstlichen
Landgerichts, ON 109 zu 08 EX.2016.5802 sowie gemäss Trust Deed des
ALPHA TRUST auch das Recht, neue Treuhänder zu bestellen. Daher
konnte Ashot Egiazaryan am 31.03.2020 und am 16.04.2020 <u>nicht</u>
rechtswirksam neue Treuhänderinnen für den ALPHA TRUST bestellen.*

2.7. *folgt, dass auch das vom Anzeiger vorgelegte Written Instrument of
Appointment of Beneficiaries of the Alpha Trust vom 31.03.2020 nicht
gültig und die in diesem beschlossene Benennung von Begünstigen nicht
rechtswirksam ist. Dieser Beschluss wurde von Ashot Egiazaryan, Artur
Ariapetov und von Natalia Dozortseva unterzeichnet. Die Gesamtrechte
des Ashot Egiazaryan waren zu diesem Zeitpunkt schon lange gepfändet
und eine teilweise Verwertung bewilligt.*

*Derzeit muss davon ausgegangen werden, dass noch das Written
Instrument of Nomination vom 03.07.2015 gültig und die in diesem
Dokument gewünschte/beschlossene Begünstigtenregelung aufrecht ist,
mit welchem verschiedene Ermessensbegünstigungen festgelegt wurden.*

2.8. *Zum Vorbringen des Anzeigers hinsichtlich des Verfahrens vor dem Amt für
Justiz in Zusammenhang mit der Eintragung von Natalia Dozortseva als
Treuhänderin des ALPHA TRUST (Seite 5, Ziff. 5, 2. Absatz) ist Folgendes
klarzustellen: Mit Schreiben vom 31.03.2020 der Walch & Schurti
Rechtsanwälte AG an das Amt für Justiz erklärte Ashot Egiazaryan die
Bestellung des Artur Ariapetov als weiteren Mittreuhänder. Zudem wurde
mit Schreiben der BWB Rechtsanwälte AG vom 09.04.2020, als Vertreter*

*der Natalia Dozortseva, an das Amt für Justiz die Eintragung von Natalia Dozortseva als Treuhänderin und von Ashot Egiazaryan als Protektor beantragt. Die Pfändung der Protektorenrechte des Ashot Egiazaryan wurde dabei gegenüber dem Amt für Justiz verschwiegen. Ohne eingehende Prüfung wurde den Ansuchen um Eintragung von Artur Ariapetov und Natalia Dozortseva als Treuhänder des ALPHA TRUST entsprochen und dieselben im Handelsregister eingetragen. Nachdem dem Amt für Justiz jedoch den Fehler bemerkte, korrigierte es die Eintragung mit Verfügung vom 27.04.2020 wieder (im Übrigen ohne Zutun der belangten Personen; die belangten Personen wurden erst infolge der Beschwerde zur Äusserung aufgefordert). Von Seiten der Natalia Dozortseva wurde die Verfügung des Amtes für Justiz vom 27.04.2020 mit Vorstellung und Beschwerde angefochten. Aufschiebende Wirkung wurde keine gewährt. Zudem ist das Verfahren für Natalia Dozortseva aufgrund der klaren Umstände wenig aussichtsreich. Das Verfahren vor dem AJU steht zudem in keinem Zusammenhang mit den belangten Personen.*

**3.    _Zu der behaupteten Pflichtverletzung der Treuhänder_**

a) _Zu den behaupteten Pflichtverletzungen im Allgemeinen_

3.1.    Der Anzeiger behauptet mehrfach, die belangten Personen hätten die ihnen zustehenden Kompetenzen überschritten. Dies begründet der Anzeiger damit, dass die belangten Personen im Verfahren zu 08 EX.2016.5802 lediglich zum Zweck der Sicherung der Betragsforderung von Vitaly Smagin eingesetzt worden seien.

Das ist unrichtig. Die Exekution im genannten Verfahren wurde zur Hereinbringung der Forderung von Vitaly Smagin bewilligt. Hierzu wurden die Gesamtrechte des Ashot Egiazaryan als Treugeber, Protektor und Begünstigter des ALPHA TRUST gepfändet und anschliessend zwecks Verwertung an Vitaly Smagin überwiesen. Aufgrund dieser Pfändung und Überweisung der genannten Gesamtrechte ist Vitaly Smagin nunmehr

■    Seite 24    ■

*u.a. berechtigt, Treuhänder des ALPHA TRUST abzuberufen sowie neue
Treuhänder zu bestellen. In Ausübung der zugunsten von Vitaly Smagin
gepfändeten und diesem überwiesenen Gesamtrechte hat dieser die
ehemalige Treuhänderin des ALPHA TRUST abberufen und die belangten
Personen als neue Treuhänder bestellt.*

*Weder in der Exekutionsbewilligung, ON 3, noch im Verwertungsbeschluss,
ON 109, im Verfahren zu 08 EX.2016.5802 wurde festgehalten, dass die
Kompetenzen/Aufgaben von allfälligen neu bestellten Treuhändern
beschränkt sein sollen. Eine allfällige Beschränkung ist durch die
gesetzliche Lage auch nicht vorgesehen. Als Treuhänder haben die
belangten Personen eine umfassende Pflicht, die Interessen des Trusts, von
dessen Begünstigten und von dessen Vermögen zu wahren. Hätten die
belangten Personen nur beschränkte Befugnisse, dürften diese keine
Abwehrmassnahmen gegen die unzähligen Interventionen treffen und
müssten in sämtlichen Gerichtsverfahren untätig bleiben. Auch müssten
sie sämtliche Korrespondenz mit Steuerberatern, Buchhaltern, dem Amt
für Justiz, Steuerverwaltung, IRS (USA) und sonstigen Stellen sowie Dritten
(zB Direktoren und Rechtsanwälte der Savannah Advisors Inc.) verweigern.
Der Trust bzw. seine Agenden müssen unabhängig von der Forderung des
Vitaly Smagin (zB AIA- und FATCA-Pflichten, Buchführungspflichten,
Fristeinhaltung in Gerichtsverfahren etc.) würden – würde man der
Rechtsansicht des Anzeigers folgen – stillstehen. Das Risiko der
Verhängung von Strafzahlungen sowie des Unterliegens in
Gerichtsverfahren aufgrund Untätigkeit der Treuhänder und in weiterer
Folge eines drastischen Vermögensabflusses sowie Vermögensverlusts
wäre immens. Es kann nicht Sinn der Verwertung der Gesamtrechte
gegenüber dem ALPHA TRUST sein, dass die belangten Personen von den
dargelegten Handlungen absehen und ihre Treuhänderpflichten grob
verletzen müssten, nur, weil diese Handlungen nicht direkt der
Hereinbringung der Forderung des Vitaly Smagin dienen. Die
ordnungsgemässe und sorgfältige Verwaltung des Trusts muss weiterhin
gewährleistet sein, widrigenfalls die Verwertung infolge des bereits
beschriebenen drohenden Vermögensabfalls von vornherein erfolglos*

■    Seite 25    ■

*wäre. Gerade auch zum Zweck der Hereinbringung der Forderung des Vitaly Smagin ist es daher unumgänglich den Trust ordentlich und sorgfältig zu verwalten, auch wenn dies nur mittelbar der Hereinbringung der Forderung dient.*

*Das hat das Gericht auch bereits im Beschluss vom 27.07.2020, 07 HG.2020.93 festgehalten, wenn es ausführt, dass das Trustaufsichtsgericht nicht in exekutionsrechtliche Zuständigkeiten eingreifen kann und es nicht dessen Aufgabe ist, diese Vorschriften auszuhebeln. Es ist durch das Exekutionsverfahren ausreichend geregelt, dass vorzeitige Dispositionen verhindert sind. Das Gericht ist auch davon ausgegangen, dass es die Aufgabe der Treuhänder ist die Interessen des Alpha Trust bei Ansprüchen zu prüfen und gegebenenfalls Verfügungen zu treffen.*

3.2. *Vergleichbar ist die Situation der Treuhänder mit der Bestellung von Verwaltungsräten durch Aktionäre. Ein vom Aktionär A (51% der Aktien) bestellter Verwaltungsrat ist in Ausübung seiner Funktion nicht dafür da, die Interessen des einzelnen Aktionärs zu verfolgen, sondern die Interessen der Gesellschaft. Auch sind seine Befugnisse niemals auf die 51% des Aktionär A beschränkt. Die Abberufung der CTX sowie die Bestellung der belangten Personen stellen die Verwertungshandlungen dar. Die Ausübung ihrer Funktionen als Treuhänder des ALPHA TRUST ist davon jedoch unabhängig und im Sinne der Treuhandurkunde und des Gesetzes vollumfänglich auszuüben.*

   b) *Zu den behaupteten Pflichtverletzungen im Einzelnen*

3.3. *Zunächst sieht der Anzeiger eine Pflichtverletzung der belangten Personen darin gelegen, dass diese Natalia Tsaglolova, die Ehefrau von Ashot Egiazaryan als Begünstigte des ALPHA TRUST ansehen würden. Es würde zudem die Gefahr bestehen, dass Ausschüttungen zu deren Gunsten und zu Lasten des Anzeigers vorgenommen würden und dadurch die Gefahr der Überverwertung bestehe.*

An dieser Stelle ist festzuhalten, dass seitens der belangten Personen keine
Verfügungen im Zusammenhang mit Begünstigten getroffen wurden. Eine
Begünstigtenstellung der Natalia Tsagolova (iSe Ermessensbegünstigten)
wurde jedoch von den früheren Treuhändern, der CTX Treuhand AG mit
dem Instrument of Nomination vom 03.07.2015 beschlossen und
unterzeichnet. Die belangten Personen haben darauf weder Einfluss
genommen noch Ausschüttungen an Natalia Tsagolova getätigt. Es sind
auch keine solche geplant und keine Anerkenntnisse erfolgt. Von Seiten
der belangten Personen geht daher keinerlei Gefährdung aus.
Unabhängig davon hätte der Anzeiger als Ermessensbegünstigter auch
kein subjektives Recht darauf, dass andere (Ermessens-)Begünstigte
ausgeschlossen oder deren Rechtsstellung verändert wird. Darüber hinaus
legt der Anzeiger auch keinerlei Belege vor, aus welchen sich ergeben
soll, dass Natalia Tsagolova keine Ermessensbegünstigte sein sollte. Dazu
wird abermals auf den Beschluss des Gerichtes vom 27.07.2020, 07
HG.2020.93, S. 80 verwiesen.

3.4.  Eine weitere angebliche Kompetenzüberschreitung der belangten
Personen sieht der Anzeiger in der Kündigung des
Vermögensverwaltungsvertrags mit der Alpenrose Wealth Management
AG (in weiterer Folge «Alpenrose») sowie in der geplanten Übertragung
der Vermögenswerte der 100%igen Tochtergesellschaft des ALPHA TRUST,
der Savannah Advisors Inc. (in weiterer Folge «Savannah») von der
Compagnie Monegasque de Banque in Monaco (in weiterer Folge
«CMB») auf ein Konto bei einer Bank «im Ausland», womit die Kaiser
Partner Privatbank  AG in Liechtenstein gemeint ist (vgl. ON 1, Ziff. 11
sowie ON 4).

Zunächst ist darauf hinzuweisen, dass der Vermögensverwaltungsvertrag,
welcher zwischen der Alpenrose und der Savannah bestanden hat, nicht
durch die belangten Personen (welche hierzu gar keine Befugnis gehabt
hätten), sondern durch die Direktorin der Savannah, die JGT
Treuunternehmen reg., gekündigt wurde. Es kann daher schon aus diesem

Grund nicht von einer Pflichtverletzung oder Kompetenzüberschreitung durch die belangten Personen ausgegangen werden.

Im Übrigen hatten die Direktoren der Savannah aber auch sehr gute und zwingende Gründe, sich vom bisherigen Vermögensverwalter zu trennen. Beim neuen Vermögensverwalter handelt es sich um die Kaiser Partner Privatbank AG. Die Kaiser Partner Privatbank AG ist ein international anerkannter und professioneller Vermögensverwalter mit einer Bankbewilligung. Demgegenüber verfügt die Alpenrose Wealth Management AG weder über eine Bankenbewilligung noch über eine Bewilligung als Vermögensverwalter. Ganz im Gegenteil verfügt die Alpenrose Wealth Management AG über keine Bewilligung der schweizerischen Finanzmarktaufsicht (FINMA), wie eine Registersuche unter «https://www.finma.ch/de/finma-public/bewilligte-institute-personen-und-produkte/» ergibt. Die Alpenrose hat sich vielmehr lediglich einer Selbstregulierungsorganisation (SRO) in der Schweiz angeschlossen, nämlich dem «Verein zur Qualitätssicherung von Finanzdienstleistungen» (SRO VQF), wie eine SRO-Finanzintermediärsuche unter «https://www.finma.ch/de/bewilligung/selbstregulierungsorganisationen-sro/sro-mitglieder-suche/» ergibt. Europäische Standards, wie sie unter anderem von MIFID II vorgegeben werden und in Liechtenstein insbesondere auch mit dem VVG umgesetzt wurden, werden durch eine Selbstregulierung ohne staatliche Finanzmarktaufsicht nicht erfüllt. Ergänzend sei anzumerken, dass die Alpenrose Wealth Management AG gemäss HR-Auszug vom 19.08.2020 lediglich über ein Aktienkapital von CHF 100'000.00 verfügt, während das Mindestkapital einer liechtensteinischen Bank wie der Kaiser Partner Privatbank AG mind. CHF 10 Mio. beträgt. Durch die Kündigung des Vermögensverwaltungsvertrages mit der Alpenrose Wealth Management AG wurde damit keine Gefahr geschaffen, sondern vielmehr eine solche abgewendet. Die Kaiser Partner Privatbank AG verfügt nämlich über sämtliche Bewilligungen der liechtensteinischen Finanzmarktaufsicht, wodurch nicht nur liechtensteinische, sondern durch die weitgehende Harmonisierung des europäischen Finanzmarktrechts auch

europarechtliche Vorgaben (u.a. MIFID II) erfüllt werden. Vor diesem
Hintergrund entbehren die Vorwürfe des Anzeigers jeder Grundalge. Es
muss davon ausgegangen werden, dass der Anzeiger pauschal – ohne
konkrete Argumente und wider die Tatsachen – sämtliche Handlungen
der Treuhänder ohne weiteres als «gefährlich» taxiert. Damit untergräbt er
seine eigene Glaubwürdigkeit.

Unabhängig davon arbeiten die Vermögensverwalter in keinster Weise
mit den Treuhändern des ALPHA TRUST sowie mit den Direktoren der
Savannah zusammen. So anerkannte die Alpenrose u.a. Silvio Vogt und
das JGT Treuunternehmen reg. nicht als Direktoren der Savannah, obwohl
Silvio Vogt und das JGT Treuunternehmen reg. noch von der ehemaligen
Treuhänderin des ALPHA TRUST, der CTX, als neue Direktoren ernannt
worden und im Staat ihres Sitzes, Nevis & St. Kitts, im Register eingetragen
sind. Seit mehreren Monaten «ignorieren» die Vermögensverwalter die
Treuhänder und Direktoren und erteilen keinerlei Auskünfte oder
Informationen, sodass die Treuhänder und Direktoren ihren
Überwachungs- und Beweispflichten nicht nachkommen können. Zudem
beantworten die Vermögensverwalter keine Fragen der Treuhänder und
Direktoren. Demgegenüber informieren die Vermögensverwalter all jene
Personen, die gegen die Treuhänder Prozesse führen und somit aus
prozessualer Sicht die «Gegenparteien» darstellen, wie Ashot Egiazaryan,
Natalia Dozortseva und weitere, wie exemplarisch der E-Mail von Pierre
Gabris an Ashot Egiazaryan vom 31.07.2020, und zwar nach Pfändung
und Verwertung (!) sämtlicher diesem zustehenden Gesamtrechte,
entnommen werden kann.

3.5.  Was die Argumentation des Anzeigers angeht, wonach eine
      Kompetenzüberschreitung der belangten Personen vorliege, da diese
      «eigenmächtig die Abdisponierung der gesamten (!) Vermögenswerte
      des Trusts vom Konto bei der Compagnie Monégasque de Banque
      veranlasst» hätten (Anzeige, ON 1, Seite 10, zweiter Absatz) und «die
      gesamten Vermögenswerte auf ein Konto einer anderen Bank im Ausland
      zu überweisen» bzw. «die Gelder des Trusts ohne notwendige

*Ermächtigung aus Monaco abzutransferieren» versuchen würden
(Anzeige ON 1, Seite 11, erster Absatz), ist festzuhalten, dass grundsätzlich
die Direktoren der Savannah die Entscheidung zur Übertragung der
Vermögenswerte des Kontos der Savannah bei der CMB treffen müssen.
Zudem war es die CMB, die die Savannah mit Schreiben vom 21.04.2020
darüber informierte, dass sich die CMB dazu entschieden habe, die
Geschäftsbeziehung mit der Savannah aufzulösen und das Konto der
Savannah innerhalb von 30 Tagen aufgelöst werde. Aus diesem Grund
bestand dringender Handlungsbedarf, da damit gerechnet werden
musste, dass die Bank das Konto schliesst, auch wenn keine neue
Bankverbindung bekanntgegeben wird. Da eine erhebliche Gefahr der
Vermögensverminderung bei der Savannah und damit auch beim ALPHA
TRUST bestand, bemühten sich die Direktoren der Savannah mit
Unterstützung der belangten Personen darum, schnellstmöglich eine Bank
zu finden, welche innerhalb dieser 30-tägigen Frist bereit und in der Lage
ist/war, ein Konto für die Savannah zu eröffnen und die Vermögenswerte
zu verwalten. Man fand auch schnell eine renommierte
Liechtensteinische Bank, die Kaiser Partner Privatbank, bei welcher ein
neues Konto für die Savannah eröffnet werden konnte und welche
überdies auch die Vermögensverwaltung übernehmen kann und
entgegen der Alpenrose Wealth Management AG auch über eine
entsprechende Bewilligung verfügt.*

*Dem Vorbringen des Anzeigers, dass das Geld auf ein «Konto im Ausland
abdisponiert» werden sollte, ist zu entgegnen, dass es sich bei dem
Vermögen auf dem Konto der Savannah um das Trustvermögen des
ALPHA TRUST handelt, dessen Treuhänder 100% Shareholder der Savannah
sind und der ALPHA TRUST seinen Sitz in Liechtenstein hat. Zudem haben
auch die belangten Personen sowie die Direktoren der Savannah, auf
welche das Konto lautet, ihren Sitz in Liechtenstein. Es kann daher keine
Rede von einer «Abdisponierung auf ein Konto im Ausland» sein. Dies
zumal weder die Savannah noch der ALPHA TRUST oder einer der mit der
Verwaltung dieser Gesellschaften betrauten Personen seinen (Wohn-)Sitz
in Monaco hat und daher ein weitaus engerer Bezug zu Liechtenstein als*

zu Monaco besteht. Eine Verwaltung des Vermögens von Liechtenstein aus ist daher weitaus einfacher und effizienter. Zudem sind die belangten Personen und die Direktoren der Savannah als Rechtsanwälte und Treuhänder in Liechtenstein sehr gut vernetzt, was die Verwaltung des Trusts mit dem Trustvermögen bei einer liechtensteinischen Bank weiter vereinfacht. Hinzu kommt, dass aufgrund des enormen Zeitdrucks und aufgrund des Umstands, dass nur mit geringer Wahrscheinlichkeit innerhalb von 30 Tagen eine Bank am Sitz der Savannah (Nevis) oder in Monaco hätte gefunden werden können, diese Variante – welche aus den zuvor genannten Gründen ohnehin wenig Sinn gemacht hätte – schwer umsetzbar gewesen wäre. Es war daher sinnvoll und im Interesse des Trusts und der Savannah, ein Konto in Liechtenstein zu eröffnen.

Es steht somit fest, dass die belangten Personen stets im Interesse des ALPHA TRUST gehandelt haben und unter keinen Umständen davon die Rede sein kann, dass die Gefahr einer unprofessionellen Vermögensverwaltung besteht oder das Trustvermögen auf ein Konto im «Ausland» «abdisponiert» werden sollte. Im Gegenteil haben die belangten Personen genau das getan, was im Interesse des ALPHA TRUST erforderlich und sinnvoll war und ist.

3.6.   Wenn der Anzeiger vermeint, dass die Bestellung der neuen Direktoren der Savannah "rechtlich mehr als fragwürdig" sei (Anzeige, ON 1, Seite 11, 2. Absatz) ist darauf hinzuweisen, dass diese noch von der CTX, der ehemaligen Treuhänderin des ALPHA TRUST und ehemaligen Aktionärin der Savannah, bestellt wurden. Es liegt ein ordentlicher Aktionärsbeschluss der CTX vom 31.03.2020 sowie ein Rücktritt der ehemaligen Direktoren ebenfalls vom 31.03.2020 vor. Es ist daher nicht ersichtlich, weshalb die Bestellung der neuen Direktoren der Savannah fragwürdig sein sollte. Was das vom Anzeiger vorgelegte Schreiben der Prestige Trust Company Ltd. (in weiterer Folge „Prestige") in diesem Zusammenhang anbelangt, ist darauf hinzuweisen, dass es sich hierbei allen Informationen nach um eine Fälschung handelt. Die Echtheit und Richtigkeit dieses Schreibens des Prestiges vom 31.03.2020 wird ausdrücklich bestritten und dieser

Sachverhalt der Staatsanwaltschaft übermittelt. Insbesondere führt Stevyn, ein Vertreter des Prestiges, in seiner E-Mail vom 03.08.2020 an Rosalind Nicholson bezugnehmend auf das Schreiben vom 31.03. 2020 aus, dass der in diesem Schreiben verwendete Briefkopf nicht jener des Prestige sei («is NOT our letterhead»). Zudem wird von Stevyn jede Verantwortlichkeit im Zusammenhang mit diesem Schreiben abgelehnt («we will NOT accept any responsibility whatsoever with regards this letter»).

Diesbezüglich sei anzumerken, dass die Savannah gegen die Prestige eine einstweilige Verfügung erwirkt hat, mit welcher es der Prestige verboten wird, jemand anderen als Silvio Vogt und JGT Treuunternehmen reg. als Direktoren der Savannah einzutragen, das Register in einer Weise abzuändern, welche in weiterer Folge dazu führt, dass JGT Treuunternehmen reg. und Silvio Vogt nicht mehr als Direktoren der Savannah registriert sind sowie jemand anderen als Rudolf Schächle und Raphael Näscher als Aktionäre der Savannah einzutragen.

Insgesamt steht fest, dass Silvio Vogt und das JGT Treuunternehmen reg. die rechtmässigen Direktoren der Savannah sind.

3.7. Aus all diesen genannten Gründen ist keinesfalls von einer Gefahr eines nachhaltigen erheblichen Schadens für das Trustvermögen auszugehen. Die belangten Personen haben den Verwertungsbeschluss, ON 109 zu 08 EX.2016.5802 nicht verletzt und werden diesen auch nicht verletzen. Sie handeln stets im Interesse des Trusts, dessen Begünstigten sowie zum Schutze des Trustvermögens. **Es besteht zusammengefasst <u>kein</u> Anlass zur Einleitung eines Amtsenthebungsverfahrens.**

## 4.    <u>Ausführungen zum Aufsichtsverfahren und Anträgen des Anzeigers</u>

4.1. Wie bereits ausgeführt hat der Anzeiger die Möglichkeit, dem Aufsichtsgericht Missstände bei der Trustverwaltung anzuzeigen, jedoch ist

dieser als Ermessenbegünstigter nicht berechtigt, Anträge an das Aufsichtsgericht zu stellen (vgl. LES 2017, 66, Leitsatz 1b). Der StGH hat ausgesprochen, dass dadurch das Recht auf den ordentlichen Richter nicht verletzt wird, wenn die Antragslegitimation restriktiv ausgelegt wird (StGH 2015/47). Die auf S. 13 bis 15 der Anzeige, ON 1, gemachten Anträge zu 1. bis 4. des Anzeigers sind somit ohnehin allesamt zurückzuweisen.

4.2. Sollte das Fürstliche Landgericht – wider Erwarten – auf die Anträge dennoch eintreten, so sind diese mit Verweis auf die vorstehenden Ausführungen jedenfalls allesamt abzuweisen.

4.3. Im Übrigen wird mit Verweis auf die vorstehenden Ausführungen zudem nochmals ausdrücklich festgehalten, dass die belangten Personen stets darum bemüht sind, die Interessen des ALPHA TRUST und dessen Begünstigten zu wahren, das Trustvermögen zu schützen und endlich Ruhe und Ordnung in die gesamte Angelegenheit rund um den ALPHA TRUST zu bringen. Hierbei werden sie durch zahlreiche Interventionen von Ashot Egiazaryan, des Anzeigers sowie von Natalia Dozortseva und Murielle Jouinaux gehindert. Die in dieser Äusserung geschilderten Ausführungen zeigen deutlich auf, dass die belangten Personen in ihrer Funktion als Treuhänder des ALPHA TRUST im Einklang mit den gesetzlichen Bestimmungen, der Trusturkunde und der anderen einschlägigen Trust-Dokumente sowie den einschlägigen und vollstreckbaren Gerichtsentscheidungen handeln, weshalb von einer Verletzung oder einer beabsichtigten Verletzung des Beschlusses ON 109 zu 08 EX.2016.5802 keine Rede sein kann.

Es besteht daher auch kein Anlass der Anregung des Anzeigers, eine Amtsenthebungsverfahren (von Amtes wegen) einzuleiten, Folge zu leisten.

Vitaly Invanovich Smagin brachte am 20.08.2020 als weitere Partei eine Äusseurng ein, beantragte die Zurück- bzw. Abweisung der gestellten Anträge des Anzeigers und brachte vor wie folgt:

**1      Parteien**

### 1.1      Antragslegitimation Stephan Egiazarian

*Der Anzeiger Stephan Egiazaryan stützt sich bei seinem Vortrag, Begünstigter des Trusts zu sein (ON 1 Punkt 1) nur auf einen englischsprachigen "Written Deed of Appointment of Beneficiaries of the Alpha Trust vom 31. März 2020". Abgesehen von der Fremdsprachigkeit der Urkunde ist dieser offensichtlich nicht von einem gültig bestellten Treuhänder unterzeichnet und rechtlich unbeachtlich (siehe unten).*

*Ob Stephan Egiazaryan Begünstigter des Trusts ist oder nicht, ist irrelevant, da der Trust Deed in jedem Fall nur eine Ermessensbegünstigung vorsieht und gemäss LES 2017, 66 keine Antragslegitimation besteht.*
*Eine "Anzeige" kann jeder einbringen, wird dann aber nicht Verfahrenspartei. Wie unten ausgeführt besteht für eine amtswegiges Verfahren kein Anlass.*

### 1.2      Vitaly Smagin als Partei

*Obwohl Stephan Egiazaryan mit Lippenbekenntnissen den Exekutionstitel des Vitaly Smagin nicht bestreitet (nur falsch berechnet), richten sich seine Anträge unmittelbar gegen die Durchsetzung und würden diese, bei Stattgebung durch das Gericht, unmittelbar in die derzeit bestehenden Rechte des Vitaly Smagin eingreifen. Vitaly Smagin ist daher selbst Partei, wie weiter unten ausgeführt wird.*

**2      Wiederholungen**

*Ashot wird nicht müde, verschiedenste Strohmänner und -frauen für seine Zwecke einzuspannen, die letztlich alle versuchen, die Vollstreckung des rechtskräftigen Titels durch Herrn Smagin zu verhindern. Sie sind auch seit <u>acht Jahren</u> erfolgreich. Herr Smagin hat sein sonstiges Vermögen nach vielen Millionen Kosten durch das Schiedsverfahren und zwischenzeitlich vereitelter*

*Vollstreckung weitgehend aufgebraucht und musste im Zivilverfahren Verfahrenshilfe beantragen.*

*Durch die grosse Anzahl von parallelen Verfahren sind die Vorträge an verschiedenen Stellen Wiederholungen, weil das Rad nicht neu erfunden werden muss.*

### 3      Streitwert

*Der vom Anzeiger angegebene Streitwert wird aufgrund der Bedeutung der Sache bemängelt und beantragt, diesen mit zumindest CHF 500'000.00 festzulegen.*

### 4      Forderung Smagins und die Exekutionsverfahren

#### 1.1      Yegiazaryans ursprünglicher Betrug

*Hintergrund dieses Falles ist ein Betrug durch Ashot Yegiazaryan, dem Vater des Stephan Egiazaryan, aufgrund dessen das Opfer Vitaly Smagin seinen Schadenersatztitel vollstrecken möchte.*

*Der Ashot Yegiazaryan und Vitaly Smagin waren Geschäftspartner. Vitaly Smagin hat in Aktien der Gesellschaft "Centurion Alliance" investiert, welcher wiederum das Shoppingcenter "Europark" in Moskau gehörte. Er wurde dann von Ashot Yegiazaryan um seine Aktien betrogen. Ashot Yegiazaryan und sein Netzwerk haben die Betrügereien auf Basis eines vorgefassten kriminellen Planes, über ein kompliziertes Netzwerk von Strohmännern und Strohgesellschaften im Rahmen einer kriminellen Vereinigung ausgeführt. Ashot Yegiazaryan wurde wegen Betruges zu sieben Jahren Freiheitsstrafe verurteilt, sein Komplize Artem Yegiazaryan zu 5 Jahren und sein Komplize Vitaly Gogokhiya zu 4 Jahren.*

#### 1.2      Smagins vollstreckbarer Titel

*Derselbe Sachverhalt war auch Gegenstand einer Schiedsklage von Herrn Smagin gegen den Sicherungswerber, um sein Geld wieder zurückzuerlangen. Als Ergebnis der gerichtlichen Auseinandersetzungen hat Vitaly Smagin am 11.11.2014 ein endgültiges und rechtskräftiges Schiedsurteil (Final Arbitration*

*Award) zu Case No 101721 ("Yegiazaryan-Urteil") vor dem London Court of International Arbitration (LCIA) gegen Ashot Yegiazaryan erwirkt. Ashot Yegiazaryan und die Kalken Holdings Limited (die Ashot Yegiazaryan gehört) wurden solidarisch zur Zahlung von USD 72'243'000.00 zuzüglich kapitalisierten Zinsen in Höhe von USD 6'899'701.32 zuzüglich 8% Zinsen aus USD 72'243'000.000 seit dem 11. November 2014 sowie zur Zahlung von Schiedsverfahrens- und Anwaltskosten in Höhe von GBP 2'658'151.93, USD 672'354.08 und RUB 2'958'750.00, jeweils an Smagin, verurteilt. Das Schiedsgericht kam zum gleichen Ergebnis wie die Strafbehörden.*

*Bislang wurde weder von Ashot Yegiazaryan noch von der Kalken Holding Limited eine Zahlung geleistet. **Der momentan ausstehende Betrag ist ca. USD 128 Mio.**, nicht wie von Stephan Egiazaryan angegeben USD 92.5 Mio. Letzterer vergisst die Zinsen der letzten 8 Jahre.*

### 1.3 Alpha Trust und Gläubigerverkürzung

*Kurz <u>nach</u> dem Schiedsurteil vom 11.11.2014 hat Ashot Yegiazaryan sein gesamtes offizielles liquides Vermögen in Höhe von ca. USD 188 Mio in einen Trust verschoben. Von der Einbringung des Vermögens in einen Trust hat Herr Smagin erstmals durch das Vorbringen der in Scheidung lebenden Ehegattin, Natalia Tsaglolva, im Scheidungsverfahren erfahren. Diese bringt vor, dass der Sicherungswerber mit Hilfe von Trusts, Strohfirmen und Strohmännern die Vollstreckung des Schiedsurteils aus 2014 verhindern will.*

*Über diese Quelle erfuhr Vitaly Smagin von der Gründung des Alpha Trusts. Der Alpha Trust wurde am 27.05.2015 von der CTX Treuhand AG gegründet und am 30.11.2015 im Handelsregister unter der Nummer FL-0002.510.771-1 eingetragen.*

*Der Trust gründete sodann eine Gesellschaft auf Nevis, die Savannah Advisors Inc. Letztere eröffnete dann ein Konto bei der CMB in Monaco. Auf dieses Konto der Savannah Advisors Inc. übertrug Ashot Yegiazaryan als Einlage in den Trust über seine Anwälte Gibson Dunn per 08.06.2015 USD 188'146'102.08.*

**5      Die Exekutionsverfahren**

**1.4     Die Vollstreckungsschritte Smagins**

In einem ersten Schritt pfändete Vitaly Smagin nur die Begünstigtenrechte von Yegiazaryan. Die Zwangsvollstreckung wurde zu 08 EX.2016.839 am 24.2.2016 bewilligt. Die CTX und Yegiazaryan bekämpften die Exekutionsbewilligung bis zum StGH, verloren aber.

Der Alpha Trust war relativ ungewöhnlich ausgestaltet und enthielt derart starke Einflussrechte des Ashot Yegiazaryan, dass diese einen Vermögenswert im Sinne der Exekutionsordnung bildeten. Deshalb leitete Vitaly Smagin die Vollstreckung des Schiedsurteils in Liechtenstein in die Wege. Mit Exekutionsbewilligung vom 21.11.2016 des Fürstlichen Landgerichtes (08 EX.2016.5802-3) wurde die Exekution bewilligt. Ashot Yegiazaryan und die CTX Treuhand AG als Treuhänderin des Alpha Trusts bekämpften die Entscheidung durch **alle Instanzen**, bis sie vom StGH bestätigt wurde. Ashot Yegiazaryan durfte ab der zweiten Exekutionsbewilligung (23.11.2016) keine Rechte mehr ausüben. Der **Spruch** der Exekutionsbewilligung lautet **ausdrücklich** auf die Gesamtrechte des Ashot Yegiazaryan, einschliesslich seiner Rechte als Protektor und dem Recht, Treuhänder zu bestellen und abzuberufen. Diese Pfändung ist nach wie vor aufrecht und <u>seit dem 21.11.2016</u> kann Ashot Yegiazarian über seine Gesamtrechte <u>nicht</u> verfügen.

Die Vollstreckung auf diese Art von Vermögenswerten im Wege einer Vollstreckung auf "andere Vermögenswerte" erfolgt in einem ersten Schritt durch Pfändung dieser Vermögenswerte und in einem zweiten Schritt durch Ermächtigung der Ausübung der entsprechenden Rechte durch das Gericht im Rahmen des Verwertungsverfahrens. Mit weiterem Beschluss vom 02.03.2020 (ON 109) wurde die **Verwertung der gepfändeten Gesamtrechte bewilligt**. Die Ermächtigung zur Verwertung der gepfändeten Gesamtrechte lautet unter anderem (insbesondere) auf das Recht zur Abberufung von Treuhändern und Bestellung u.a. der derzeitigen Treuhänder.

Ein solcher Beschluss ist sofort vollstreckbar, weshalb Herr Vitaly Smagin am 09.03.2020 die Rechtsanwälte Mag. Rudolf Schächle und Mag. Raphael

Näscher als neue Treuhänder des Alpha Trusts bestellte. Die CTX Treuhand AG
wurde gleichzeitig abberufen. Die Eintragung der Antragsgegner wurde mit
18.05.2020 im Handelsregister durchgeführt.

### 1.5   Aufschiebung der Exekution

Ashot Yegiazaryan versuchte noch die aufschiebende Wirkung bezüglich dem
Verwertungsbeschluss vom 02.03.2020 zu erreichen. Das Fürstliche Landgericht
war aber der Ansicht, dass die Abberufung der CTX und die Neubestellung der
Treuhänder rechtsgültig ist (Seite 30) und Vitaly Smagin die Rechte **berechtigt
ausübt**. Die einstweilige Hemmung wurde nur **gegen Erlag einer
Sicherheitsleistung von USD 125 Mio gewährt**. Diese hat Ashot Yegiazaryan
nicht erlegt.

### 1.6   Strafverfahren in Liechtenstein

Das Fürstliche Landgericht führt seit dem Jahre 2016 zu 11 UR.2016.77 gegen
Yegiazaryan, Dr. Thomas Wilhelm, Nikolaus Wilhelm und die CTX Treuhand AG
strafrechtliche Vorerhebungen wegen des Verdachts des Verbrechens des
betrügerischen Konkurses (§ 156 Abs. 1 und 2 StGB) und des Vergehens der
Vollstreckungsvereitelung (§ 162 Abs. 1 und 2 StGB). Dem Verfahren liegt
gleiche Sachverhalt zugrunde, wie dem Zivilverfahren 04 CG.2019.5.

### 6   Treuhänder des Alpha Trust

### 6.1   Bestellung der Treuhänder durch den betreibenden Gläubiger

Wie oben erwähnt wurden die Treuhänder des Alpha Trust aufgrund der
Verwertung der Gesamtrechte des Ashot Yegiazaryan bestellt. Davon ist auch
das Landgericht im Exekutionsverfahren ausgegangen (siehe den Beschluss zu
08 EX.2016.5802 ON 125, **siehe Seite 30**). Nur diese sind Treuhänder (siehe auch
Rz. 0). Ebenso das Trustaufsichtsgericht im Beschluss vom 27.07.2020 zu 07
HG.2020.93 (Seite 79 ff).

Es gibt mehrere Personen, die behaupten, dass das Pfandrecht des Vitaly
Smagin sei durch Abbestellung der CTX erloschen. Die Idee geht auf RA Moritz
Blasy von Walch & Schurti zurück, welcher sie erst gegenüber Schächle und

Näscher und dann in den USA als Zeuge äusserte. Sie wurde von RA Christian Batliner von bwb und nun wohl von RA Thomas Struth übernommen. **Auch der nunmehrige Anzeiger behauptet, die Pfändung habe sich nur auf die gegenüber der CTX bestehenden Rechte bezogen.**

Es wäre **wichtig**, wenn das Landgericht hier **klärend beiträgt**, denn dieser Unsinn ist ansteckend und bildet das Rückgrat der derzeit laufenden Gläubigerverkürzung. Klärende Begründungen der hiesigen Gerichte werden im Ausland ernst genommen.

Zum Inhalt: Die Formulierung im Verwertungsbeschlusses ON 109 "Die Verwertung der mit Exekutionsbewilligung [...] gepfändeten, der verpflichteten Partei als Treugeber, Protektor und Begünstigter des Alpha Trusts [...] gegenüber der CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha Trust [...]" (Beschluss vom 02.03.2020, Punkt 1.1 Seite 1) ist keine Einschränkung der Rechte auf die CTX, sondern alleine darauf zurückzuführen, dass der Trust selbst keine Rechtsperson ist. Ein Trust nach liechtensteinischem Recht ist eine Rechtsbeziehung zwischen Personen, die anders als Aktiengesellschaften oder Stiftungen, keine eigene Rechtspersönlichkeit hat und nur durch seinen Treuhänder (als natürliche oder juristische Person) berechtigt und verpflichtet werden kann. Aufgrund der für die Begründung von Pfandrechten erforderlichen Publizität wurde die CTX (als Treuhänderin zum Zeitpunkt des Erlasses der Exekutionsbewilligung) auch in den Spruch aufgenommen.

Es handelt es sich somit um eine exekutionsrechtlich technische Notwendigkeit, dass im Spruch die Verwertung der gepfändeten Rechte gegenüber der CTX (als damalige Drittschuldnerin) ausgesprochen wird. **Das hat der OGH im konkreten Verfahren 08 EX.2016.5802 in ON 72 auch ausdrücklich festgehalten:**

> "7.1.1. Gem. Gern Art 242 Abs 1 EO (=§ 331 Abs 1 öEO) hat zum Zwecke der Exekution auf Vermögensrechte, die nicht zu den Forderungen gehören, das Gericht auf Antrag des betreibenden Gläubigers das Gebot zu erlassen, sich jeder Verfügung über das Recht zu enthalten (Pfändung). Ist kraft dieses Rechts eine bestimmte Person zu Leistungen verpflichtet, **so ist**

*die Pfändung erst dann als bewirkt anzusehen, wenn auch dieser dritten Person das gerichtliche Verbot, an den Verpflichteten zu leisten, zugestellt wurde. Gem Art 242 Abs 2 EO ist die Art der Verwertung des Rechtes vom Gericht auf Antrag des betreibenden Gläubigers nach Einvernahme des Verpflichteten und aller Gläubiger, zu deren Gunsten Pfändung erfolgte, zu bestimmen."*

*Ändert sich nun der Treuhänder, ist das ein klarer Fall der Gesamtrechtsnachfolge des Drittschuldners, bei welchem die neuen Treuhänder das Treugut mit allen Belastungen übernehmen, wie sie zuvor bestanden. Die Exekutionsbewilligung lautete denn auch ausdrücklich auf die CTX in ihrer Funktion als Treuhänder des Alpha Trusts. Art. 911 Abs. 4 PGR besagt:*

> *Ergibt sich aus dem Gesetz oder sonstiger Treuanordnung nichts anderes, so finden auf das Treugut als Sondergut die Vorschriften über das Gesamteigentum, jedoch mit Ausschluss jener über die Teilung, mit der Massgabe Anwendung, dass die Treuhänder zur gesamten Hand berechtigt und verpflichtet sind und, **dass bei Ausscheiden eines Treuhänders oder bei Eintritt eines neuen Treuhänders die Rechte und Pflichten ohne weiteres soweit für die Übertragung nicht besondere Formvorschriften aufgestellt sind und, abgesehen von der Pflicht zur Bestellung neuer Treuhänder, den jeweiligen Treuhändern anwachsen.***

*Daraus folgt, dass bei Abberufung des alten und Bestellung des neuen Treuhänders dieser im Wege der Gesamtrechtsnachfolge in die Rechte und Pflichten des Treuhandverhältnisses eintritt.*

*Art. 5 und 34 EO enthalten Bestimmungen zur Universalrechtsnachfolge von betreibender und verpflichteter Partei, wobei der allgemeine Grundsatz gilt, dass der zugunsten des oder gegen den ursprünglichen Inhaber der Sache ergangene Exekutionstitel auch für bzw. gegen den Rechtsnachfolger, und zwar auch für und gegen den Einzelrechtsnachfolger, wirkt . Zur Rechtsnachfolge beim Drittschuldner oder sonstige Fälle der Universalsukzession sind dort aber nicht geregelt, ebenso wenig wie Fälle der Einzelnachfolge auf Gläubiger- oder Schuldnerseite. Eine besondere Regelung*

im Zusammenhang mit Gehaltsforderungen betreffend den Umfang des Pfandrechtes enthält Art. 221 EO, da es dort um die Pfändung zukünftiger Forderungen geht. Nach hM hat der Wechsel des Drittschuldners im Wege der Gesamtrechtsnachfolge auch hier den einfachen Übergang des Pfandrechts zur Folge. Beispielhaft wird hier der Eintritt des Masseverwalters in das Dienstverhältnis oder ein Übergang des Dienstverhältnisses gemäss § 3 öAVRAG angeführt. Auch ein nachträglicher Schuldbeitritt eines Dritten - sei es vertraglich, sei es ex lege (etwa nach § 1409 öABGB, § 38 öUGB, § 6 öAVRAG) - führt zu einer Pfandrechtserstreckung auf diesem Dritten. Nachdem bei Gesamtrechtsnachfolge auf Seiten des betreibenden Gläubigers oder des Schuldners eine Änderung der betreffenden Partei von selbst eintritt, ist eine prozessuale Handlung nicht erforderlich.

Unter Berücksichtigung der Regelungen des Art. 911 PGR kann kein Zweifel bestehen, dass Raphael Näscher und Rudolf Schächle im Wege der Universalsukzession in die Rechte und Pflichten der CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha Trust (und Drittschuldnerin im Rahmen der Exekutionsbewilligung vom 21. November 2016) eingetreten sind, ohne dass es einer besonderen Handlung oder eines gerichtlichen Beschlusses bedarf.

### 6.2    Verfahrensstand

Gegen den Beschluss des Fürstlichen Landgerichts ON 109 ist zwar noch ein Rekurs beim OG anhängig, jedoch ist der Beschluss bereits vollstreckbar. Die beantragte einstweilige Hemmung wurde gegen Erlag einer Sicherheitsleistung von USD 125 Mio. gewährt, welche nicht erlegt wurde. Aus diesem Grunde kommt dem Rekurs im Verfahren zu 08 EX.2016.5802 keine aufschiebende Wirkung zu.

### 7    Parallele Zivilklage

In ON 1 Punkt 6 erwähnt der Anzeiger das Verfahren 04 CG.2019.5, legt aber nichts vor, sondern beantragt nur den Beizug des Aktes. Nach ständiger Gerichtspraxis werden solche Akten nicht beigezogen, da damit über die

*Akteneinsicht von einem unzuständigen Richter entschieden wird. Bescheinigt ist also diesbezüglich nichts.*

*Im Übrigen ist es aber richtig, dass ein solches Verfahren existiert. Es ist ein Mantra Ashots, Herr Smagin wäre ausschliesslich auf das Zivilverfahren beschränkt und der "Alpha Trust" wäre im Exekutionsverfahren nicht gehört worden. Beides ist nicht richtig.*

*Die CTX als Treuhänderin des Alpha Trust hat die Pfändung bis zum StGH bekämpft und auch beim Verwertungsverfahren an der Verhandlung teilgenommen.*

*Bei einer Gläubigerverkürzung und einer Vollstreckungsvereitelung wie von Ashot Egiazaryan begangen gibt es <u>mehrere Anspruchsgrundlagen</u>, die parallel geltend gemacht werden können.*

*a. Das Exekutionsverfahren auf die Rechte von Ashot Egiazaryan kann indirekt zu Vermögen führen.*

*b. Gleichzeitig unterliegt der Transfer der paulianischen Schenkungsanfechtung nach Art. 64 und 65 RSO.*

*c. Ashot Yegiazarian und die CTX verwirklichten auch das Delikte nach § 156 StGB (betrügerischer Konkurs) und § 162 StGB (Vollstreckungsvereitelung). Das sind Schutznormen und es besteht daher ein Schadenersatzanspruch (vgl. Rz. 0 oben).*

*Dass insbesondere eine Straftat verschiedene Anspruchsgrundlagen nach sich zieht, die durchaus parallel geltend gemacht werden können, ist nichts Ungewöhnliches.*

*Im Übrigen ist das eine Sache des Exekutionsgerichts gegebenenfalls in den Rechtsmittelinstanzen zu entscheiden, aus welchen Gründen die Exekution zulässig ist oder nicht. Was aber rechtmässig entschieden wurde, kann das Aufsichtsgericht nicht unterlaufen. Das entspricht der Meinung des Landgericht im Beschluss vom 27.07.2020 zu 07 HG.2020.93. Das Gericht führt aus, dass das*

*Trustaufsichtsgericht nicht dazu da sei, die exekutionsrechtlichen
Zuständigkeiten und Vorschriften auszuheben.*

**8      Angebliche Pflichtverletzungen**

*In ON 1 Punkt 7 ff. suggeriert der Anzeiger, die Bestellung der Treuhänder
Schächle und Näscher sei in irgendeiner Form nur "teilwirksam". Diese dürften
nicht vollumfänglich über das Treuvermögen verfügen.*

*Das ist natürlich grober Unsinn und ein ordnungsgemäss durch rechtsgültigen
Beschluss des Protektors bestellter Treuhänder – ob der Beschluss nun im
Exekutionsverfahren substituiert oder nicht – ist ordnungsgemäss bestellt. **Er hat
damit alle Rechte und Pflichten** eines solchen. "Halbtreuhänder" kennt das
Gesetz nicht und wäre das auch eine praktisch unmögliche Rechtslage, da
keiner mehr weiss, wer was eigentlich genau tun darf.*

*Der Beschluss des Gläubigers hat gleiche Wirkung, wie ein Beschluss des
Schuldners selbst, da der Gläubiger dessen Rechte genau so ausübt, wie dies
der Schuldner konnte.*

*Davon abgesehen ist natürlich richtig, dass Herr Smagin **Ausschüttungen an
sich** nur im Umfang der ausstehenden Schuld genehmigen darf und die
Treuhänder auch nicht mehr ausschütten werden. Das steht derzeit aber nicht
zur Debatte, denn ohne Kontrolle über das Vermögen können die Treuhänder
keinen Rappen ausschütten.*

*Das momentane Problem der Treuhänder liegt aber ganz woanders, denn
ihnen wird durch Ashot Egiazaryan, die Scheintreuhänderinnen Natalija
Dozortseva und Murielle Jouniaux und andere die Verfügung über das
Treuvermögen behaupten, überhaupt verunmöglicht. Dabei versuchen diese
jede Verfügung über das Trustvermögen zu verhindern und nicht, wie Stephan
Egiazaryan versucht zu suggerieren, eine überschiessende Befriedigung des
Gläubigers Smagin.*

■ Seite 43 ■

*Derzeit versuchen die Treuhänder nur, das Vermögen unter Kontrolle zu bringen - insbesondere zur Befriedigung der anstehenden Verbindlichkeit. Die Tochtergesellschaft des Trusts, die Savannah Advisors Inc., kann selbst nicht über ihr Vermögen verfügen – aus den gleichen Gründen wie oben dargestellt. Die Bank in Monaco stellt sich quer, weil sie mit Drohungen und strafrechtlichem Hintergrund seitens Ashot Egiazaryans und Natalia Dozortsevas konfrontiert wird und wohl auch mit ihrem langjährigen Kunden freundlich gesinnt - das verwaltete Vermögen weiter verwalten will. Entsprechend kann nicht einmal die Savannah Advisors Inc. ihre eigenen Verbindlichkeiten befriedigen, wie bspw. die Anwälte aus Nevis bezahlen.*

*Es ist daher sehr verständlich und in der Entscheidungshoheit der Direktoren der Savannah Advisors Inc., das Vermögen an geeigneten Orten anzulegen. Wenn sie es für angebracht halten, ein Bankkonto in Liechtenstein zu führen, dann ist ihnen das unbenommen und eine Gefährdung nicht ersichtlich. Das gilt sowohl für die Gesellschaft wie auch für den Trust.*

## 9      Natalija Tsagolova

*Frau Natalija Tsagolova ist die Mutter von Stephan Egiazaryan und tauscht offenbar mit ihm Dokumente aus, wie eben die Schreiben ihrer Anwälte an die Treuhänder. Es müsste dem Anzeiger also auch mehr über die Begünstigteneigenschaft seiner Mutter bekannt sein.*

*Der Anzeiger hat jedenfalls nicht bescheinigt, dass seine Mutter keine Begünstigte ist. Warum er sich dann über ein "Anerkenntnis" überhaupt aufregt, versteht man nicht.*

*Einen Rechtsakt der Treuhänder hat der Anzeiger auch nicht vorgelegt, sondern nur ein Schreiben vom Anwalt Tsagolovas, wie er eine Besprechung verstanden hat.*

*Jedenfalls ist Herrn Smagin kein Rechtsakt von Schächle und Näscher bekannt, der sie zur Begünstigten bestellte. Eine Bestellung Tsagolovas hätte Smagins Zustimmung benötigt, die er nicht gegeben hat.*

Selbst wenn Natalija Tsaglolva Ermessensbegünstigte des Trusts wäre, bedeutet das noch nicht, dass sie irgendetwas bekommt oder etwas an sie ausgeschüttet werden soll. Das ist derzeit, wie oben erwähnt, ohnehin für _alle Begünstigte unmöglich_.

Darüber hinaus hätte der Anzeiger auch kein subjektives Recht darauf, andere Personen als Begünstigte durch die Treuhänder ausschliessen zu lassen. Es handelt sich gemäss Treuurkunde generell um Ermessensbegünstigte.

Nach Befriedigung von Smagins Forderung fällt die Verfügungsmacht wieder an Ashot Yegiazarian. Die von ihm dann neu bestellten Treuhänder können dann Begünstigte bestellen oder entfernen, wie sie das für richtig erachten (Treuurkunde Punkt 8).

### 10   Direktoren der Savannah Advisors Inc.

Grundsätzlich ist es die Entscheidung der Treuhänder, wen sie als Direktor der 100%igen Tochtergesellschaft Savannah Advisors Inc. einsetzen. Die Aktien gehören ihnen und das ist eine Geschäftsführungsentscheidung. Wenn Treuhänder beschliessen, einen lizenzierten liechtensteinischen Treuhänder gemeinsam mit einer lizenzierten liechtensteinischen Treuhändergesellschaft als Direktoren einzusetzen, ist eine Gefährdung nicht ersichtlich.

Die vormaligen Direktoren der Savannah Advisors Inc. _traten freiwillig zurück_. Es liegt nicht in der Hand der nunmehrigen Treuhänder, sie gegen ihren Willen "wieder einzusetzen".

Nach dem Recht von Nevis wo die Savannah Advisors Inc. domiziliert ist, ist derjenige Aktionär, der im Aktienbuch eingetragen ist. Das war zum Zeitpunkt der neuen Treuhänder die CTX Treuhand AG. Diese beschloss die Änderung der Direktoren (in Abstimmung mit den neuen Treuhändern Schächle und Näscher). Die Direktoren wurden also sicher gültig bestellt.

Ashot Egiazaryan will nun über seine Strohmänner Stephan Egiazaryan und Natalija Dozortseva _von einer Verwirrung profitieren, die sie selbst hergestellt_

_haben_. Sie hat den Registered Agent in Nevis angeschrieben und ihm Unsinn über die Treuhänder erzählt.

Kern des ganzen Problems ist wiederum die Behauptung, Natalija Dozortseva und Murielle Jouniaux wären die eigentlichen Treuhänder.

**11     Anträge zur Verhinderung der Vollstreckung**

Während Stephan Egiazaryan behauptet, nur das nicht von Smagins Exekution betroffene Vermögen schützen zu wollen, _sind seine Anträge genau das Gegenteil_. Er versucht die Vollstreckung zu verhindern.

Die Vollstreckung basiert darauf, dass Herr Smagin die Gesamtrechte des Protektors ausüben kann. Es ist gerade die kumulierte Macht, die die Gesamtrechte des Ashot zum Vermögenswert im Sinne der EO macht. Dieser enthält ganz wesentlich, die Treuhänder nach Belieben einsetzen und abberufen zu können, wie das auch Ashot konnte. Nachdem Ausschüttungen bei mehreren Treuhändern nur einstimmig erfolgen können, ist jede zusätzliche Bestellung eines Treuhänders de facto eine Blockade des Exekutionsverfahrens.

Wenn Stephan Egiazaryan tatsächlich Sorge um das Restvermögen hätte, wäre es das Sinnvollste, mit den Treuhändern zusammen zu arbeiten um eine rasche Zahlung zu ermöglichen, damit der Zinslauf beendet wird.

Im Übrigen ist der Vortrag von Stephan Egiazaryan insofern widersprüchlich, als dass eine Bestellung eines "neutralen Dritten" natürlich nur dann überhaupt in Frage käme, wenn Natalija Dozortseva und Murielle Jouniaux nicht bereits Treuhänder wären. Andernfalls ginge es um die Durchsetzung ihrer Zustimmungspflichten, was nicht mit der Bestellung weiterer Treuhänder oder Abberufung der anderen erfolgen kann. Dann läge es an ihnen, entsprechende Anträge bei Gericht zu stellen und nicht am Begünstigten.

**12     Vage Anordnungen – faktische Blockade**

In Antragspunkten 2 und 3 will Stephan Egiazaryan ganz vage und unklare Anordnungen an die Treuhänder erreichen, bei denen dann niemand genau

*weiss, was die Treuhänder danach dürften und was nicht. Nach Stephan Egiazaryans Theorie wäre schon der Wechsel eines Bankkontos oder die Überweisung der Savannah Advisors Inc. an ihr eigenes Konto in Liechtenstein eine "Zwecküberschreitung". Wie sollen die Treuhänder denn dann jemals den Titel vollstrecken oder die Savannah auch nur ihren normalen Geschäftsbetrieb aufrechterhalten?*

*Weder die Treuhänder, noch die Banken oder ausländischen Gerichte könnten mit solch unklaren Weisungen irgendetwas anfangen und der Trust wird de facto vollkommen blockiert. Das Gericht darf sich nicht vor diesen Karren spannen lassen.*

*Im Übrigen ist unklar, warum ein Wechsel eines Bankkontos oder Vermögens-verwalters oder auch die Übernahme des Vermögens von der Savannah Advisors Inc. auf den Trust nicht eine sinnvolle Massnahme sein sollte, völlig unabhängig von der Frage, wer Begünstigter oder Protektor ist.*

### 13 Streitverhandlung und mündliche Einvernahme

*Sollte das Gericht die Anträge des Stephan Yegiazarian relevant erachten, wird beantragt, die Sache mündlich zu erörtern und die Treuhänder über die Sachlage und die Situation des Trusts einzuvernehmen.*

### 14 Sicherheitsleistung

*Sollte das Gericht Anordnungen im Aufsichtsverfahren erwägen, dann wäre das wegen des offensichtlichen Schadens nur gegen Erlag einer Sicherheitsleistung möglich. Wie sich aus dem Exekutionstitel ergibt, fallen für diesen laufend Zinsen von ca. CHF 28'000.00 pro Tag an. De facto läuft es auf einen Eingriff in die Protektorenrechte hinaus, welche zur Vollstreckung einer derzeit ausstehenden Schuld von über USD 128 Mio. von Herrn Smagin in Exekution gezogen sind. Es ist durchaus möglich, dass Herr Smagin bei den beantragten Massnahmen seine Forderung nicht mehr durchsetzen kann, weshalb über die volle Summe Sicherheit zu leisten ist.*

Zum wiederstreitenden Vorbringen wurde Beweis zugelassen und aufgenommen durch:

Einsichtnahme in die vom Antragsteller gelegten Urkunden:

| | | |
|---|---|---|
| Declaration of Trust vom 27.05.2015 | Beilage | A |
| Letter of Wishes of Ashot Egiazaryan vom 03.07.2015 | Beilage | B |
| Written Deed of Appointment of Beneficiaries of | | |
| Alpha Trust vom 31.03.2020 | Beilage | C |
| Auszug aus dem Handelsregister vom 25.05.2020 | Beilage | D |
| Beschluss vom 09.03.2020 | Beilage | E |
| Rekurs vom 23.03.2020 gegen den Verwertungsbeschluss vom | | |
| 02.03.2020 zu 08 EX.2016.5802 (ON 109) | Beilage | F |
| Instrument of Appointment of Additional Trustees betreffend | | |
| Frau Natalia Dozortseva vom 31.03.2020 | Beilage | G |
| Instrument of Appointment of Additional Trustees betreffend | | |
| Frau Murielle Jouniaux vom 16.04.2020 | Beilage | H |
| Vorstellungen bzw. Beschwerden vom 13.05.2020 an das | | |
| Amt für Justiz bzw. die Beschwerdekommission | | |
| für Verwaltungsangelegenheiten (zu TB-Nr. 3261) | Beilage | I |
| Klage Vitaly Smagin vom 09.03.2016 | Beilage | J |
| Beschluss des Fürstlichen Landgerichts vom 21.04.2020, | | |
| ON 125 zu 08 EX.2016.5802 | Beilage | K |
| Schreiben Schwärzler Rechtsanwälte AG vom 07.05.2020 | Beilage | L |
| Schreiben Schwärzler Rechtsanwälte AG vom 18.06.2020 | Beilage | M |
| Schreiben der Compagnie Monégasque de Banque vom | | |
| 29.07.2020 | Beilage | N |
| Schreiben der Prestige Trust Company Ltd. vom 15.07.2020 | Beilage | O |

■   Seite 48   ■

| | | |
|---|---|---|
| Certificate of Incumbency vom 31.03.2020 | Beilage | P |
| Antrag vom 27.07.2020 samt Beilagen | Beilage | Q |

Einsichtnahme in die von den Antragsgegnern gelegten Urkunden:

| | | |
|---|---|---|
| Portfoliobewertung der Vermögenswerte des Alpha Trusts bei der CMB per 31.07.2020 (S. 1) | Beilage | 1.1 |
| Beschluss des Fürstlichen Landgerichts vom 02.03.2020, ON 109, zu 08 EX.2016.5802 | Beilage | 1.2 |
| Beschluss des Fürstlichen Landgerichts vom 02.11.2016, ON 3 zu 08 EX.2016.5802 | Beilage | 1.3 |
| Beschluss des Fürstlichen Landgerichts vom 27.07.2020, ON 6 zu 07 HG.2020.93 | Beilage | 1.4 |
| Beschluss von Vitaly Smagin vom 09.03.2020 | Beilage | 1.5 |
| Annahmeerklärung von Mag. iur. Rudolf Schächle und Mag. iur. Raphael Näscher vom 09.03.2020 | Beilage | 1.6 |
| Beschluss des Fürstlichen Landgerichts vom 21.04.2020, ON 125 zu 08 EX.2016.5806 | Beilage | 1.7 |
| Handelsregisterauszug des Alpha Trust (FL-0002.510.771-1) vom 04.08.2020 | Beilage | 1.8 |
| Instrument of Appointment of Additional Trustees vom 31.03.2020 (inkl. deutscher Übersetzung der Seite 3) | Beilage | 1.9 |
| Instrument of Appointment of Additional Trustees vom 16.04.2020 (inkl. deutscher Übersetzung der Seite 3) | Beilage | 1.10 |
| Instrument of Appointment of Additional Trustees vom 30.03.2020  (inkl. deutscher Übersetzung der Seite 3) | Beilage | 1.11 |
| Instrument of Nomination vom 03.07.2015 (inkl. deutscher Übersetzung) | Beilage | 1.12 |

| | | |
|---|---|---|
| Letter of Wishes von Ashot Egiazaryan vom 03.07.2015 | | |
| (inkl. deutscher Übersetzung) | Beilage | 1.13 |
| Schreiben Walch & Schurti vom 31.03.2020 | Beilage | 1.14 |
| Treuhandurkunde (Declaration of Trust) vom 27.05.2015 | | |
| samt deutsche Übersetzung | Beilage | 1.15 |
| Antrag BWB Rechtsanwälte vom 09.04.2020 | Beilage | 1.16 |
| Verfügung des Amtes für Justiz vom 27.04.2020 | Beilage | 1.17 |
| Schriftsatz BWB Rechtsanwälte vom 13.05.2020 | Beilage | 1.18 |
| Entscheidung des Fürstlichen Obersten Gerichtshofs | | |
| vom 07.09.2018, ON 72 zu 08 EX.2016.5802 | Beilage | 1.19 |
| Schreiben Savannah Advisors Inc. an Alpenrose Wealth | | |
| Management vom 13.07.2020 | Beilage | 1.20 |
| Auszug SRO-Mitgliedersuche auf finma.ch vom 19.08.2020 | Beilage | 1.21 |
| HR-Auszug Alpenrose Wealth Management AG | | |
| vom 19.08.2018 | Beilage | 1.22 |
| E-Mail von Pierre Gabris an Ashot Egiazaryan vom 31.07.2020 | Beilage | 1.23 |
| Schreiben der CMB vom 21.04.2020 | Beilage | 1.24 |
| Resignation of former directors dated 31 March, 2020 | Beilage | 1.25 |
| Resolution reg. Transfer of Signatory Rights | | |
| dated 31 March 2020 | Beilage | 1.26 |
| Shareholder Resolution dated 31 March, 2020 | Beilage | 1.27 |
| Declaration of Acceptance of new directors of | | |
| Savannah Advisors Inc. dated 15 May, 2020 | Beilage | 1.28 |
| E-Mail von Stevyn, Prestige Trust, an Rosalind Nicholson | | |
| vom 03.08.2020 | Beilage | 1.29 |
| Certificate of Incumbency der Savannah Advisors Inc. | | |
| dated 31 March, 2020 | Beilage | 1.30 |
| Register of Directors der Savannah Advisors Inc. | | |

dated 31 March, 2020                                          Beilage    1.31

Einsichtnahme in die von der weiteren Partei gelegten Urkunden:

| | | |
|---|---|---|
| Urteil Moskau vom 31.05.2018 samt deutscher Übersetzung | Beilage | 2.1 |
| Wikipedia-Auszug Ashot Yegiazaryan samt dt. Übersetzung | Beilage | 2.2 |
| Interpol-Auszug Ashot Yegiazaryan | Beilage | 2.3 |
| Schiedsurteil vom 11.11.2014 samt deutscher Übersetzung | Beilage | 2.4 |
| Vorbringen Natalia Tsagolova 10.12.2015 mit dt. Übersetzung | Beilage | 2.5 |
| Treuhandurkunde (Declaration of Trust) vom 27.05.2015 samt deutscher Übersetzung | Beilage | 2.6 |
| Handelsregister-Auszug Alpha Trust (FL-002.510.771-1) vom 13.07.2020 | Beilage | 2.7 |
| Certificate of Incumbency re. Savanna Advisors Inc. vom 02.06.2015 | Beilage | 2.8 |
| Shareholder Resolution Savannah Advisors Inc. vom 02.06.2015 samt deutscher Übersetzung | Beilage | 2.9 |
| Brief CTX Treuhand AG an CMB vom 02.06.2015 samt deutscher Übersetzung | Beilage | 2.10 |
| Kontoauszug CMB vom 05.06.-03.08.2015 | Beilage | 2.11 |
| Beschluss 08 EX.2016.839-4 vom 24.02.2016 | Beilage | 2.12 |
| Urteil StGH 2017/127 vom 26.03.2018 | Beilage | 2.13 |
| Beschluss Fürstliches Landgericht 08 EX.2016.5802-3 vom 21.11.2016 | Beilage | 2.14 |
| Beschluss OGH zu 08 EX.2016.5802-72 vom 07.09.2018 | Beilage | 2.15 |
| Urteil StGH 2018/111 vom 29.10.2019 | Beilage | 2.16 |
| Verwertungsbeschluss zu 08 EX.2016.5802-109 vom 02.03.2020 | Beilage | 2.17 |
| Beschluss Vitaly Smagin vom 09.03.2020 | Beilage | 2.18 |
| Gerichtsbeschluss des Central District of California | | |

| | | |
|---|---|---|
| vom 01.04.2020 samt deutscher Übersetzung | Beilage | 2.19 |
| Beschluss Fürstliches Landgericht zu 08 EX.2016.5802-125 | | |
| vom 21.04.2020 | Beilage | 2.20 |
| Rechtshilfeersuchen 11 UR.2016.77-279 vom 10.09.2019 | Beilage | 2.21 |
| Beschluss Fürstliches Landgericht zu 07 HG.2020.93-6 | | |
| vom 27.07.2020 | Beilage | 2.22 |
| Urteil StGH 2018/114 zur Beschwerde der CTX | Beilage | 2.23 |
| Protokoll vom 18.02.2020 vom 29.10.2019 zu 08 EX.2016.5802 | Beilage | 2.24 |
| Shareholder Resolution Savannah Advisors Inc. | | |
| vom 31.03.2020 | Beilage | 2.25 |
| Brief an Batliner Wanger Batliner an Prestige vom 15.05.2020 | Beilage | 2.26 |
| E-Mail-Verkehr Natasha Grey und Edward Ryals | | |
| vom 04.08.2020 | Beilage | 2.27 |
| E-Mail-Verkehr Dozortseva an Kevin W. vom 02.07.2020 | Beilage | 2.28 |

Folgender Sachverhalt steht fest:

<u>Feststellungen aus dem Verfahren 07 HG.2020.93 die auch für das
vorliegende Verfahren übernommen werden</u>:

(Die in Klammer angeführten Beilagen beziehen sich auf die in diesem
Verfahren vorgelegten Urkunden und sind aus dem vorgelegten Beschluss
vom 28.07.2020, 07 HG.2020.93, Beilage 1.4, ersichtlich)

Das Fürstliche Landgericht fasste am 21.11.2016 auf Antrag des Vitaly
Ivanovich Smagin als betreibende Partei wider den nunmehrigen
Antragsteller Ashot Egiazaryan als verpflichtete Partei zu 08 EX.2016.5802
folgenden Beschluss (Beilage 13):

*Aufgrund des vollstreckbaren Schiedsspruches des London Court of International Arbitration (LCIA), London, Grossbritannien, vom 11. November 2014 (berichtigt mit Entscheid vom 9. Januar 2015) zu Fall No. 101721, in der Schiedssache der klagenden Partei Vitaly Ivanovich SMAGIN, Krasnoproletarskaya st., h. 9, 127006 Moskau, Russland, gegen die beklagten Parteien 1. KALKEN HOLDINGS LIMITED, 15 Agiou Paviou Street, Ledra House, Agios Andreas 1105, Nikosia, Zypern, und 2. Ashot YEGIAZARYAN, 655 Endrino Place, Beverly Hills, California, Vereinigte Staaten von Amerika*

*wird der <u>betreibenden Partei</u>, Vitaly Ivanovich SMAGIN, Krasnoproletarskaya st., h.9, 127006 Moskau, Russland,*

*wider die <u>verpflichtete Partei</u> Ashot YEGIAZARYAN, 655 Endrino Place, Beverly Hills, California, Vereinigte Staaten von Amerika,*

*zur Hereinbringung der vollstreckbaren Forderung von*

- *USD 72'243'000.00 (an Hauptsache), und*
- *USD 6'899'701.32 (an kapitalisierten Zinsen) und*
- *GBP 2'776'473.68 und USD 672'354.08 und RUB 2'958'750.00 (an Kosten) und*
- *weiteren Zinsen in Höhe eines vierteljährlich aufgezinsten Jahreszinssatz von 8% aus USD 72'243'000.00 und USD 6'899'701.32 seit 11. November 2014 sowie*
- *der mit CHF 63'880.00 bestimmten Kosten des Exekutionsantrages, die <u>Exekution bewilligt</u> durch*

1. *<u>Pfändung</u> der der verpflichteten Partei als Treugeber, Protektor und Begünstigter des Alpha Trusts (FL-0002.510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, 9490 Vaduz, gegenüber der*

   *CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha Trust (FL-0002-510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, FL- 9490 Vaduz,*

   *zustehenden Gesamtrechte, insbesondere das Recht zum Erhalt von Zahlungen und Zuwendungen aller Art aus dem Treugut, das Recht zur Bestellung und Abberufung der Treuhänder des Alpha Trusts (Art. (2) Written Instrument vom 2. Juni 2015), das Recht des Treuhänders zur Beendigung des Trusts (Art. 3, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Bestellung der Begünstigten des Alpha Trusts (Art. 8, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Änderung der Treuhandurkunden des Alpha Trusts (Art. 12, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), das Recht des Treuhänders zur Delegation sämtlicher Rechte des Treuhänders einschliesslich seiner Ermessensbefugnisse*

■   Seite 53   ■

*(Art. 11, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written
Instrument), das Recht des Treuhänders zur Ausübung sämtlicher der
im First Schedule des Declaration of Trust festgelegten Rechte (Art.
11, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written
Instrument) und den Rechten als Vermögensverwalter des Trusts
(Minutes of a Meeting of the Directors of CTX Treuhand AG vom 3.
Juni 2015).*

**2.   *An die verpflichtete Partei Ashot YEGIAZARYAN wird das Gebot
erlassen, sich jeder Verfügung über die oben (1.) bezeichneten
Rechte zu enthalten.***

**3.   *An die CTX Treuhand Aktiengesellschaft als Treuhänderin des Alpha
Trust** (FL-0002-510.771-1), c/o Dr.iur. Thomas Wilhelm, Lova Center, FL-
9490 Vaduz, **wird das Verbot erlassen, aus diesen Ansprüchen oder
unter Ausübung dieser Rechte (1.) an die verpflichtete Partei Ashot
YEGIAZARYAN und/oder einen Dritten zu leisten, insbesondere
Weisungen durch die verpflichtete Partei Ashot YEGIAZARYAN zu
befolgen und/oder Zustimmungen durch die verpflichtete Partei
Ashot YEGIAZARYAN zu akzeptieren und ihren Entscheidungen
zugrunde zu legen.***

**4.   *Ausgenommen von dieser Exekutionsbewilligung sind die durch die
Forderungsexekutionsbewilligung des Fürstlichen Landgerichtes vom
24. Februar 2016, 08 EX.2016.839, ON 4, bereits gepfändeten
Forderungen,** nämlich die der verpflichteten Partei aufgrund seiner
Rechtstellung als wirtschaftlich Berechtigter, Treugeber, Begünstigter
und Auftraggeber des Alpha Trusts oder anderer Treuhand-
verhältnisse gegen die Drittschuldner (i) CTX Treuhand AG als
Treuhänderin des Alpha Trust, (ii) Dr. Thomas Wilhelm und (iii) Nikolaus
Wilhelm zustehenden Geldforderungen und
Rückzahlungsansprüche.*

Dieser Beschluss wurde angefochten, vom Obergericht aufgehoben und
vom OGH wieder hergestellt (Beilage 14). Der StGH gab der dagegen
erhobenen Individualbeschwerde mit Urteil vom 29.10.2019 keine Folge
(Beilage 15).

Mit Beschluss vom 02.03.2020 (08 EX.2016.5802-109) wurde vom fürstlichen
Landgericht in der Folge die Verwertung der gepfändeten
Gesamtrechte wie folgt bewilligt:

■  Seite 54  ■

**1.1**  Die **_VERWERTUNG_** der mit Exekutionsbewilligung des Fürstlichen Landgerichts vom 21. November 2016, 08 EX.2016.5802, ON 3, gepfändeten, der verpflichteten Partei **als Treugeber, Protektor und Begünstigter des Alpha Trusts** (FL-0002-510.771-1), c/o Dr. iur. Thomas Wilhelm, Lova Center, FL-9490 Vaduz gegenüber der **CTX Treuhand Aktiengesellschaft** als Treuhänderin des Alpha Trust (FL-0002-510.771-1), c/o Dr .iur. Thomas Wilhelm, Lova Center, FL-9490 Vaduz zustehenden Gesamtrechte, nämlich insbesondere des Rechts zum Erhalt von Zahlungen und Zuwendungen aller Art aus dem Treugut, des Rechts zur Bestellung und Abberufung der Treuhänder des Alpha Trusts (Art. (2) Written Instrument vom 2. Juni 2015), des Rechts des Treuhänders zur Beendigung des Trusts (Art. 3, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), des Rechts des Treuhänders zur Bestellung der Begünstigten des Alpha Trusts (Art. 8, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), des Rechts des Treuhänders zur Änderung der Treuhandurkunden des Alpha Trusts (Art. 12, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), des Rechts des Treuhänders zur Delegation sämtlicher Rechte des Treuhänders einschliesslich seiner Ermessensbefugnisse (Art. 11,14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument) und des Rechts des Treuhänders zur Ausübung sämtlicher der im First Schedule des Declaration of Trust festgelegten Rechte (Art. 11, 14.3 Declaration of Trust i.V.m. Art. (1) und (2) des Written Instrument), wird **_bewilligt_**, und zwar durch

**Ermächtigung** der betreibenden Partei, die oben bezeichneten Rechte der verpflichteten Partei anstelle des Verpflichteten geltend zu machen, nämlich insbesondere:

**a)**   **Abberufung der CTX:**

Das Recht anstelle des Verpflichteten gemäss Art. 14.05 des Trust Deeds des Alpha Trusts i.d.F.d. des Written Instruments vom 2.6.2015 die bisherige Treuhänderin des Alpha Trusts, die CTX Treuhand AG, Lova-Center, 9490 Vaduz mit sofortiger Wirkung abzuberufen.

b)   **Benennung neuer Treuhänder:**

*Im Einklang mit Art. 10.1. der Treuurkunde neue Treuhänder des Alpha Trust zu benennen und zu bestellen,*

- *sei dies die betreibende Partei,*
- *die Herren Rechtsanwälte Mag.iur. Rudolf Schächle und lic. iur. Raphael Näscher oder*
- *sonstige von der betreibenden Partei bestimmte natürliche Personen oder eine Treuhandgesellschaft mit Sitz im In- oder Ausland,*

c)   **Ausschüttung an Yegiazarian begehren und genehmigen:**

*Von der gegenwärtigen oder neu bestellten Treuhänderin des Alpha Trust anstelle des Verpflichteten auf Basis des Letter of Wishes des Verpflichteten vom 3.7.2015 und der Treuurkunde des Alpha Trusts i.d.F.d. des Written Instruments vom 2.6.2015 sowie auf Basis seines tatsächlich bestehenden Instruktionsrechts gegenüber der Treuhänderin des Alpha Trusts*

- *die Ausschüttung der verfahrensgegenständlich vollstreckbaren Forderung von CHF 91'595'445.97 (08 EX.2016.5802, ON 3) zuzüglich Zinsen (nämlich vierteljährlich aufgezinsten Jahreszinssatz von 8% aus USD 72'243'000.00 und USD 6'899'701.32 seit 15. November 2016) und Kosten an die verpflichtete Partei an eine von der betreibenden Partei zu bestimmende Zahlstelle zu fordern und zu wünschen, und*
- *anstelle des Verpflichteten dieser Ausschüttung und ihrer Durchführung (einschliesslich der von der betreibenden Partei bestimmten Zahlstelle) in seiner Position als Protektor (i.S.d. Art. 14.4 i.V.m. Art. 8.1.2 des Trust Deeds des Alpha Trust vom 27.5.2015 i.d.F.d. des Written Instruments vom 2.6.2015) und Begünstigter (i.S.d. Art. 1.1.2 und des Third Schedules des Trust Deeds des Alpha Trust vom 27.5.2015) zuzustimmen.*

d) **Rechte aus der Vereinbarung zum Letter of Wishes ausüben:**

*Von der gegenwärtigen oder neu bestellten Treuhänderin des Alpha Trust anstelle des Verpflichteten auf Basis der Rechte des Verpflichteten gemäss der Vereinbarung zum Letter of Wishes*

■ Seite 56 ■

*vom 3.7.2015*

- *die Bestellung der betreibenden Partei als Begünstigter des Alpha Trusts,*
- *die Ausschüttung der verfahrensgegenständlich vollstreckbaren Forderung von CHF 91'595'445.97 (08 EX.2016.5802, ON 3) zuzüglich Zinsen (nämlich vierteljährlich aufgezinsten Jahreszinssatz von 8% aus USD 72'243'000.00 und USD 6'899'701.32 seit 15. November 2016) und Kosten an die betreibende Partei (in deren Eigenschaft als bestellte Begünstigte) zu fordern und zu wünschen, sowie*
- *anstelle des Verpflichteten dieser Ausschüttung und ihrer Durchführung (einschliesslich der von der betreibenden Partei bestimmten Zahlstelle) in seiner Position als Protektor (i.S.d. Art. 14.4 i.V.m. Art. 8.1.2 des Trust Deeds des Alpha Trust vom 27.5.2015 i.d.F.d. des Written Instruments vom 2.6.2015) und Begünstigter (i.S.d. Art. 1.1.2 und des Third Schedules des Trust Deeds des Alpha Trust vom 27.5.2015) zuzustimmen*

### e) Administrative Rechte des Protektors zur Durchführung ausüben:

*Anstelle des Verpflichteten auf Basis der Treuurkunde des Alpha Trusts i.d.F.d. des Written Instruments vom 2.6.2015 die Zustimmung zu Handlungen des Treuhänders gemäss der Punkte 4,11,16.2 und des First Schedule der Treuurkunde geben sowie alle Informationsrechte des Verpflichteten gegenüber dem Treuhänder auszuüben.*

**1.2** *Die **Pfändung** der der verpflichteten Partei aufgrund der gegenständlichen Verwertung nach Ziff. 1.1 gegen den Alpha Trust bzw. dessen Treuhänder zustehenden Geldforderungen und Zahlungsansprüche, insbesondere Ausschüttungsansprüche in Höhe von CHF 91'595'445.97 und **Überweisung** dieser gepfändeten Forderungen zur Einziehung bis zur Höhe der vollstreckbaren Forderung unbeschadet etwa früher erworbener Rechte dritter Personen, wird bewilligt.*

*Der Drittschuldnerin wird verboten, an die verpflichtete Partei*

■ Seite 57 ■

*Zahlung zu leisten. Letzterer wird jede Verfügung über die gepfändete Forderung sowie über das für sie bestellte Pfand insbesondere die gänzliche oder teilweise Einziehung dieser Forderung untersagt. Mit Zustellung dieses Zahlungsverbotes an die Drittschuldnerin ist die bewilligte Pfändung als bewirkt anzusehen und zu Gunsten der vollstreckbaren Forderung der betreibenden Partei an der oben bezeichneten Forderung ein Pfandrecht erworben.*

**2.** *Die weiteren Exekutionskosten der betreibenden Partei werden mit CHF 83'297.75 bestimmt.*

Nachdem ein solcher Beschluss sofort vollstreckbar ist, bestellte Vitaly Smagin am 09.03.2020 entsprechend der weiteren Exekutionsbewilligung die Rechtsanwälte Mag. Rudolf Schächle und Mag. Raphael Näscher, die Antragsgegner in diesem Verfahren, als neue Treuhänder des Alpha Trusts. Die CTX Treuhand AG wurde gleichzeitig abberufen. Die Eintragung der Antragsgegner wurde mit 18.05.2020 im Handelsregister durchgeführt.

(Beilage 17 und 5)

Gegen den Beschluss vom 02.03.2020 erhob Ashot Egiazaryan am 23.03.2020 Rekurs an das Obergericht, dieser ist noch hängig, verbunden mit den Antrag, dem Rekurs hemmende Wirkung zuzuerkennen (Beilage F).

Mit Beschluss vom 21.04.2020 sprach das Fürstliche Landgericht zur Hemmung folgendes aus:

1. *Dem Rekurs der verpflichteten Partei gegen den Beschluss des Fürstlichen Landgerichts vom 02.03.2020, ON 109, wird die einstweilige Hemmung gegen Erlag einer Sicherheitsleistung von USD 125 Mio. gewährt.*

   *Die Hemmung tritt ein, sobald die verpflichtete Partei die Sicherheitsleistung erlegt hat, wobei die Sicherheitsleistung auf*

■ Seite 58 ■

> *das Konto des Fürstlichen Landgerichtes bei der Liechtensteinische Landesbank AG, 9490 Vaduz, Konto Nr. SP 673.468.05 (IBAN LI38 0880 0000 0673 4680 5) oder in Form einer unbefristeten, unwiderruflichen, unbedingten und unter Vorlage des Bankgarantiedokuments über erste Aufforderung des Fürstlichen Landgerichts zu zahlenden Bankgarantie eines Bankinstituts mit dem Sitz im EWR-Rechtsraum gerichtlich zu erlegen ist.*

Der Erlag einer solchen Sicherheitsleistung wurde weder behauptet noch nachgewiesen.

Im ordentlichen Zivilverfahren zu 04 CG.2019.5 begehrt Herr Vitaly Smagin mit Klage vom 09.03.2016 Zahlung vom Alphatrust in Höhe des ihm gegenüber Ashot Egiazaryan aufgrund des Schiedsurteils zustehenden Betrages, wobei er sich in erster Linie auf die Gläubigeranfechtungstatbestände nach RSO stützt sowie einen Haftungsdurchgriff geltend macht.

(Beilage G)

Der vorherige Treuhänder CTX und Ashot Egiazaryan haben den Anspruch seit 2016 bestritten. Als die Klage eingebracht wurde, betrug die Forderung des Vitaly Smagin USD 90,3 Mio. und ca. USD 100 Mio. standen für die Begünstigten netto zur Verfügung. Durch die jahrelange Verzögerung, die Vermögensveränderungen und den Zinslauf ist die Forderung mittlerweile auf USD 128,8 Mio. (plus Kosten) angewachsen und den Begünstigten verbleiben noch ca. USD 42 Mio. der ursprünglichen USD 188 Mio. In ca. dreieinhalb Jahren wird aufgrund des Zinsenlaufes die Forderung die Höhe des gesamten noch bestehenden Vermögens erreichen.

(Beilage 35)

Die Treuhandurkunde vom 27.05.2015 legt ua nachstehende Aufgaben der Treuhänder fest:

- Verwaltung des Trustvermögens im Hinblick auf Investitionen oder Eigentum treuhänderisch nach ihrem Ermessen, wozu auch der Verkauf, die Einziehung oder Umwandlung zählt (Punkt 4)
- Verwaltung des Kapitals und der Einkünfte zugunsten allen, einem oder mehreren Begünstigten (Punkt 5.1)
- Bezahlung oder Übertragung von Einkommen oder Kapital aus dem Trustversmögen an die Treuhänder eines anderen Trusts (Punkt 5.2.4.2)
- Begünstigte hinzuzufügen oder auszuschliessen
- Zahlung von Schadenersatz, Garantien, Bürgschaften, Verpflichtungen oder Vertragsabreden ("Der erste Anhang", Punkt 8, Seite 18/19).

(Beilage 4)

<u>Folgende weitere Feststellungen werden getroffen</u>:

Die Treuhandvereinbarung des Alpha Trust, die „Declaration of Trust" vom 27. Mai 2015, hat unter anderem folgenden Inhalt:

DIESE TREUHANDERKLÄRUNG erfolgt am 27. Mai zweitausendfünfzehn

**DURCH**

CTX Treuhand AG („Treuhänder", wobei der Begriff - sofern der Kontext es erlaubt - den oder die
zum jeweiligen vorhandenen Treuhänder des Trusts einschliesst).

**VORAUSSETZUNGEN**

  i.  Die Treuhänder bestätigen, das im zweiten Anhang angegebene Vermögen erhalten zu haben,
      um es nach den folgenden Bedingungen treuhänderisch zu verwalten.

  ii. Dieser Trust wird unwiderruflich errichtet.

iii. Dieser Trust wird als „ALPHA TRUST" bezeichnet.

**DIESE URKUNDE BEZEUGT** Folgendes:

**1.    Definitionen**

(...)

1.1.2. „die Begünstigten" sind und umfassen die Personen, die im dritten Anhang genannt oder
beschrieben werden;

(...)

**3.        Beendigung des Treuverhältnisses**

Die Treuhänder haben die Befugnis, im Rahmen einer Urkunde ein Datum festzulegen (das
nicht vor dem Datum der Ausfertigung dieser Urkunde liegen darf), das als Ende des
Treuhandverhältnisses anzusehen ist.

**4.        Verkauf von Trustvermögen**

Die Treuhänder verwalten das Trustvermögen im Hinblick auf Investitionen oder Eigentum
(ausser Geld) treuhänderisch nach ihrem eigenen Ermessen, um diese Investitionen oder
das Vermögen insgesamt oder teilweise zu verkaufen, einzuziehen oder in Geld
umzuwandeln, wobei jedoch die Möglichkeit besteht, diesen Verkauf, die Einziehung oder
die Umwandlung zu verschieben und die Möglichkeit einzuräumen, dass diese Investitionen
erhalten bleiben und das Geld treuhänderisch verwaltet wird, wobei sie denselben
Ermessensspielraum haben, das Geld oder Eigentum in ihrem Namen oder unter ihrer
Kontrolle in einer von diesem Trust oder vom Gesetz genehmigten Weise anzulegen, und
die Befugnis diese Anlagen zu ändern oder gegen andere zulässige auszutauschen, wenn
sie dies nach eigenem Ermessen für angebracht halten.

**5.    Treuhänderschaft von Einkünften und Kapital**

5.1.    Die Treuhänder verwalten das Kapital und die Einkünfte des Treuhandvermögens
treuhänderisch zugunsten von allen, einem oder mehreren Begünstigten, wobei ein oder
mehrere andere Begünstigte ausgeschlossen sein können, in Form von Anteilen oder in
einem bestimmten Verhältnis, wenn mehr als ein Begünstigter vorgesehen ist, mit und auf
der Basis von Befugnissen und Bestimmungen für deren Unterhalt, Ausbildung,
Weiterentwicklung oder sonstigen Vorteilen oder zur Ansammlung von Einkünften
(einschliesslich Verwaltungsbefugnissen und Bestimmungen oder Ermessens-Trusts und
Befugnissen, die von einer oder mehreren Personen auszuführen oder auszuüben sind, ob
diese nun als Treuhänder fungieren oder nicht oder ob die Treuhänder oder ein
Treuhänder eingeschlossen ist oder nicht), so dass die Ausübung dieser Befugnis zur
Bestimmung von Berechtigten in einem bestimmten Umfang und in einer Art und Weise
delegiert werden kann, die die Treuhänder durch eine oder mehrere Urkunden, die

während der Trust-Dauer widerrufen werden können oder die unwiderruflich sind und während der Trust-Dauer ausgeübt werden, benennen können, wobei jedoch VORAUSGESETZT wird, dass durch die Ausübung dieser Befugnis eine vorherige Zahlung oder Verwendung des gesamten Kapitals oder Einkommens oder eines Teils des Kapitals oder Einkommens aus dem Treuhandvermögen nicht ungültig gemacht wird, die im Rahmen einer Befugnis vorgenommen wurde, welche von dieser Urkunde oder vom Gesetz erteilt wird.

5.2.    Bis zu einer Bestimmung nach Klausel 5.1., in Abhängigkeit oder in Ermangelung davon

5.2.1. zahlen die Treuhänder die Einkünfte des Treuhandvermögens an alle, einen bestimmten oder mehrere Begünstigte oder verwenden es zu dessen/deren Gunsten, wobei der andere oder andere ausgeschlossen sein können, wenn zum jeweiligen Zeitpunkt vorhanden und - bei mehreren Begünstigten - in Anteilen und in einer Art und Weise, die die Treuhänder nach ihrem alleinigen Ermessen jeweils für angemessen halten.

5.2.2. Ungeachtet der Bestimmungen in Klausel 5.2.1. können die Treuhänder zu einem oder mehreren beliebigen Zeitpunkten während der Trust-Dauer nach ihrem alleinigen Ermessen die Einkünfte im Wege der Aufzinsung ansammeln anstatt es insgesamt oder teilweise zu verwenden, indem sie die Einkünfte oder" die daraus resultierenden Einkünfte jeweils in einer Art und Weise anlegen oder anderweitig verwenden, die von dieser Urkunde oder vom Gesetz gestattet ist; auf der Basis von Klausel 5.2.3. verwalten sie diese Kapitalansammlungen als Kapitalzuwachs.

5.2.3. Die Treuhänder können zu einem oder mehreren Zeitpunkt/en während der Trust-Dauer die nach Unterpunkt 5.2.2. angesammelten Einkünfte insgesamt oder teilweise verwenden, als wenn es sich um Einkünfte handeln würde, die in dem jeweiligen Jahr angefallen sind.

5.2.4. Ungeachtet der Treuhandvollmachten und Bestimmungen, die in dieser Klausel aufgeführt werden und enthalten sind, können die Treuhänder

5.2.4.1 zu einem beliebigen Zeitpunkt während der Trust-Dauer das Kapital des Trustvermögens insgesamt oder teilweise an alle, einen oder mehrere Begünstigte/n unter Ausschluss von anderen Begünstigten zahlen oder zu dessen/deren Gunsten verwenden, wobei bei mehreren Begünstigten entsprechende Anteile vorzusehen sind und die Auszahlung oder Verwendung in einer Art und Weise erfolgen kann, die die Treuhänder nach ihrem alleinigen Ermessen für angebracht halten.

5.2.4.2.  Einkommen oder Kapital aus dem Trustvermögen an die Treuhänder eines anderen Trusts bezahlen der übertragen, unabhängig von dem Ort der Errichtung, an dem ein oder mehrere Begünstigte beteiligt sind (unabhängig davon ob alle Begünstigten oder ein oder mehrere Begünstigte die einzigen Personen sind, die an diesem anderen Trust beteiligt sind oder als Nutzniesser in Frage kommen), wenn die Treuhänder nach ihrem alleinigen Ermessen der Meinung sind, dass diese Zahlung oder Übertragung allen, einem oder mehreren Begünstigten zugute kommen soll.

5.3.    Bei Nichtausübung der genannten Befugnisse, die den Treuhändern durch die vorhergehenden Unterpunkte erteilt wurden, und in Abhängigkeit von der Ausübung dieser Befugnisse können die Treuhänder bei Ablauf der Trust-Dauer TREUHÄNDERISCH Ober

das Trustvermögen verfügen, wobei die Begünstigten, die zu dem betreffenden Zeitpunkt leben, absolut gleiche Teile erhalten.

5.4    Auf der Basis der obigen Ausführungen und wenn und sofern Kapital und Einkünfte des Treuhandvermögens nicht aus einem beliebigen Grund nach den obigen Bestimmungen insgesamt veräussert werden, werden Kapital und Einkünfte des Treuhandvermögens treuhänderisch für das Rote Kreuz und Amnesty International verwaltet, und im Falle eines Scheiterns dieses Trusts für wohltätige Zwecke im Allgemeinen.

(...)

### 8.    Befugnis. Begünstigte hinzuzufügen und auszuschliessen

8.1.    Die Treuhänder können zu einem beliebigen Zeitpunkt während der Trust-Dauer schriftlich erklären, dass

8.1.1. eine Person, Gruppe oder Beschreibung von Personen kein Begünstigter mehr ist, so dass diese Person, Gruppe oder Beschreibung von Personen daraufhin kein Begünstigter mehr ist, als wenn dieser Begünstigte bereits ursprünglich als Begünstigter ausdrücklich ausgeschlossen worden wäre, jedoch unbeschadet bisheriger Zahlungen von Kapital oder Einkünften an diese/n Begünstigten.

8.1.2. eine Person, Gruppe oder Beschreibung von Personen, die von den Treuhändern benannt worden ist, von nun an Begünstigter ist, VORAUSGESETZT, dass eine Hinzufügung von Begünstigten die bereits getroffene Bestimmung für die Verwendung von Kapital oder Einkünften nicht beeinträchtigt, ändert oder beeinflusst.

(...)

### 10.    Änderung der Treuhänder

10.1.   Für diesen Trust sind mindestens zwei Treuhänder oder eine Trustgesellschaft und maximal fünf Treuhänder vorzusehen.

10.2.   Bei mehr als einem ernannten Treuhänder müssen alle Treuhänder einstimmig handeln. Die Treuhänder haben jedoch das Recht, alle geschäftlichen Vorgänge, die Ausübung von Vollmachten und Ermessensfragen an einen oder mehreren ihrer Mit-Treuhänder zu delegieren, sofern sie diese Übertragung nach eigenem Ermessen für ratsam halten.

10.3.   Ein Treuhänder, der zurücktreten und oder aus dem Treuhandverhältnis entlassen werden möchte, kann den Mit-Treuhändern (sofern vorhanden), und der/den Person/en, die befugt sind, neue Treuhänder zu ernennen, eine schriftliche Nachricht schicken und wird einen Monat nach dem Versand dieser Nachricht entlassen, oder zu einem früheren Zeitpunkt, wenn die Person/en, die zur Ernennung neuer Treuhänder berechtigt sind, nach den Bestimmungen dieser Klausel 10 ihre schriftliche Zustimmung erteilen, VORAUSGESETZT, dass diese Entlassung erst dann wirksam wird, wenn nach der Entlassung mindestens ein Treuhänder vorhanden ist.

10.4.   Wenn ein Treuhänder zurücktreten und aus allen Treuhandverhältnissen entlassen werden

möchte oder er es ablehnt zu handeln oder er handlungsunfähig wird, oder er nicht mehr geschäftsfähig ist oder stirbt oder wenn eine Gesellschaft, die als Treuhänder fungiert, aufgelöst wird, dann ernennt

10.4.1.  der Protektor oder wenn er verstorben ist (oder es sich dabei um eine Gesellschaft handelt, die aufgelöst wird) oder wenn er nicht in der Lage oder bereit ist zu handeln;

10.4.2.  die Begünstigten (ausser Wohltätigkeitsorganisationen), wenn sie geschäftsfähig sind und mehrheitlich entscheiden, oder wenn sie nicht in der Lage oder bereit sind zu handeln;

10.4.3.  die jeweils im Amt befindlichen Treuhänder oder wenn es keine Treuhänder gibt;

10.4.4 das Liechtensteinische Landgericht Vaduz durch schriftliche Urkunde eine oder mehrere Personen, unabhängig davon, ob sie am Verwaltungssitz des Trusts wohnen oder an einem anderen Ort, zu Treuhändern am Ort des verstorbenen oder aufgelösten Treuhänders oder des Treuhänders, der entlassen werden möchte, eine Handlung ablehnt oder handlungsunfähig ist oder nicht mehr geschäftsfähig ist, wie oben angegeben.

10.5.  Die Person, die zur Ernennung neuer Treuhänder nach Unterpunkt 10.4.1. und 10.4.2. berechtigt ist kann in derselben Reihenfolge wie oben beschrieben eine oder mehrere Personen zu weiteren Treuhändern ernennen bis die maximal zulässige Anzahl erreicht ist.

10.6.  Ein Treuhänder kann überall in der Welt wohnen.

10.7.  Die Person, die zur Ernennung zusätzlicher Treuhänder berechtigt ist, kann jederzeit und ohne Grund einen oder mehrere Treuhänder durch Zustellung einer schriftlichen Nachricht absetzen.

## 11.  Befugnis zu delegieren

11.1.  Ein Treuhänder hat die Befugnis (ungeachtet aller anderslautenden gesetzlichen Vorschriften), mit einer Urkunde, die während der Trust-Dauer widerrufen werden kann oder die unwiderruflich ist, an eine Person die Ausführung oder Ausübung aller treuhänderischen Befugnisse und Ermessensspielräume zu delegieren, die dem Treuhänder hiermit oder per Gesetz übertragen wurden.

## 12.  Befugnis zu ändern oder zu widerrufen

12.1.  Die Treuhänder können jederzeit nach ihrem Ermessen Bestimmungen dieser Urkunde ändern, wobei die Ausübung dieser Befugnis nicht die Wirkung einer Widerrufung dieses Trusts hat.

## 13.  Weitere Befugnisse

13.1. Die Treuhänder haben zusätzlich und unbeschadet aller gesetzlichen Befugnisse die Vollmachten und Immunitäten, die im ersten Anhang definiert werden, vorausgesetzt, dass die Treuhänder keine der Befugnisse so ausüben, dass sie mit den Bestimmungen dieses Trusts in Verbindung mit den Begünstigungen in Konflikt geraten.

## 14.    Der Protektor

14.1. Der Protektor kann seinen Wohnsitz oder - im Falle einer Gesellschaft - seinen Firmensitz an einem beliebigen Ort in der Welt haben.

14.2. Der erste Protektor ist Ashot Egiazaryan.

14.3. Der Protektor kann seine Befugnisse, Rechte und/oder Pflichten für einen bestimmten Zeitraum oder dauerhaft zu jeder Zeit durch ein Schriftstück an eine Person oder Personen delegieren oder übertragen und zu Bedingungen, die er für angemessen hält, wobei immer vorausgesetzt wird, dass diese Übertragung erst wirksam wird, wenn die Treuhänder darüber schriftlich in Kenntnis gesetzt wurden.

14.3.1. Wenn diese Übertragung scheitert oder kein Protektor vorhanden ist oder wenn ein Protektor stirbt (oder - im Falle einer Gesellschaft - aufgelöst wird) oder unfähig oder nicht bereit ist zu handeln, ohne seine Befugnisse, Rechte und/oder Pflichten gültig übertragen zu haben, dann ernennt/ernennen

14.3.1.1.    die Begünstigten (ausser im Falle von Wohltätigkeitsorganisationen), die geschäftsfähig sind und mehrheitlich entscheiden oder wenn sie unfähig oder nicht bereit sind zu handeln

14.3.1.2.    das Liechtensteinische Landgericht Vaduz innerhalb von 90 Tagen einen Protektor.

14.4. Für die Ausübung der Befugnisse und Rechte nach den Klauseln 2.4., 2.5.1., 3.5., 8., 11., 12., 16.2., 16.3. und Klausel 11 des ersten Anhangs durch die Treuhänder ist die schriftliche Zustimmung des Protektors erforderlich.

(...)

## 16.    Rechenschaftspflicht und Informationen

16.1. De Treuhänder führen vollständige und genaue Aufzeichnungen über alle Transaktionen im Zusammenhang mit dem Trustvermögen.

16.2. Die Aufzeichnungen stehen den Begünstigten oder ihren rechtlichen oder ordnungsgemäss bevollmächtigten Vertretern innerhalb eines angemessenen Zeitraums zur Prüfung zur Verfügung. Ungeachtet der obigen Ausführungen sind die Treuhänder nicht verpflichtet, einem Begünstigten mitzuteilen, welchem anderen Begünstigten sie Kapital oder Einkünfte aus dem Trustvermögen haben zukommen lassen oder an welchen Begünstigten sie eine Zahlung aus dem Kapital oder den Einkünften des Trustvermögens geleistet haben; sie müssen auch keine Gründe für die Ausübung oder Nichtausübung oder die Art der Ausübung ihrer Befugnisse, Rechte und Ermessensspielräume im Rahmen des Trusts nennen.

16.3.  Die Treuhänder können nach eigenem Ermessen eine Kontrollstelle nach Art. 923 PGR
ernennen, wobei die Kontrollstelle dann die einzige Person ist, die die oben genannten
Informationen erhält.

(...)

### DRITTER ANHANG

1.      Ashot Egiazaryan
2.      Eine Person oder Personen, die die Treuhänder jeweils als
weitere Begünstigte benennen.

(Beilage 1.15)

Ausser dem Instrument of Appointment vom 31.03.2020, unterzeichnet
von Ashot Egiazaryan als Protektor und Natalia Dozortseva und Artur
Airapetov als Treuhänder liegen keine Beschlüsse vor, mit welchen der
Antragsteller in den Kreis der Ermessensbegünstigten aufgenommen
worden wäre.

Dass die Antragsgegner Verfügungen im Zusammenhang mit
Begünstigten getroffen haben, kann nicht festgestellt werden. Eine
Begünstigtenstellung der Natalia Tsaglolva (iSe Ermessensbegünstigten)
wurde jedoch von den früheren Treuhändern, der CTX Treuhand AG mit
dem Instrument of Nomination vom 03.07.2015 beschlossen und
unterzeichnet.

Die Vermögensverwaltung wurde durch die Savannah Advisors Inc. unter
anderem deshalb gewechselt, weil diese die neuen Direktoren der
Savannah Advisors Inc. nicht anerkannten und nicht mit diesen
zusammen arbeiteten (Beilage 1.20).

Zur Beweiswürdigung:

Die Feststellungen ergeben sich im Wesentlichen aus den in Klammer
zitierten unbedenklichen Urkunden.

Dass die Antragsgegner Verfügungen im Zusammenhang mit Begünstigten getroffen haben, ergibt sich aus dem Schreiben der Rechtsvertreter von Frau Tsaglolva nicht, zumal sich die Bezugnahme auf die Begünstigtenstellung wohl auf das Instrument of Nomination vom 03.07.2015 beziehen dürfte, mit welchem die damalige Treuhänderin CTX Treuhand AG sowie der Protektor Ashot Egiazaryan seine Frau (Frau Tsaglolva)  als Begünstigte ernannt haben (Beilage 1.12). Überhaupt liegen keine Beweisergebnisse vor, dass die Antragsgegner Verfügungen im Zusammenhang mit Begünstigten getroffen haben.


In rechtlicher Hinsicht ergibt sich folgendes:

Ein Trust nach liechtensteinischem Recht ist – wie der Vertreter der weiteren Partei richtig ausführte - eine Rechtsbeziehung zwischen Personen, die anders als Aktiengesellschaften oder Stiftungen, keine eigene Rechtspersönlichkeit hat und nur durch seinen Treuhänder (als natürliche oder juristische Person) berechtigt und verpflichtet werden kann. Aufgrund der für die Begründung von Pfandrechten erforderlichen Publizität war daher die CTX (als Treuhänderin zum Zeitpunkt des Erlasses der Exekutionsbewilligung) in den Spruch aufzunehmen.

Es darf auch als bekannt vorausgesetzt werden, dass wenn Forderungen gegen einen Trust geltend gemacht werden, die Parteienbezeichnung nicht auf den Trustnamen zu lauten hat, sondern auf „Treuhänder des Trust X". Die Anführung der CTX im Spruch bedeutete somit nicht eine Fixierung auf diese, sondern lediglich die zum damaligen Zeitpunkt korrekte Bezeichnung des gepfändeten Treuhandverhältnisses. Wie man bei dieser Ausgangslage auf den Gedanken kommen kann, die Exekutionsbewilligung sei mit der Abberufung der CTX erloschen und die Antragsgegner seien nicht wirksam Treuhänder geworden, ist für das Gericht nicht verständlich. Den diesbezüglichen detaillierten Ausführungen des Vertreters der weiteren Partei ist nichts hinzuzufügen.

Mit Beschluss des Fürstlichen Landgerichts vom 02.03.2020 zu    08
EX.2016.5802 wurden sämtliche - bereits gepfändeten - Rechte des Ashot
Egiazaryan als Treugeber, Protektor und Begünstigter an Herrn Smagin
übertragen. Aufgrund dessen fehlte es ihm an der Kompetenz, neue
Treuhänder zu bestellen und den Antragsteller mit Instrument of
Appointment vom 31.03.20 als Begünstigten zu berufen. Unabhängig
davon, dass einem Ermessensbegünstigten kein Antragsrecht nach Art
929 PGR zukommt, ist der Antragsteller kein Ermessensbegünstigter. Ihm
fehlt es somit jedenfalls an der Beteiligtenstellung, weshalb seine Anträge
zurückzuweisen waren.

Darüber hinaus konnte nicht festgestellt werden, dass die Antragsgegner
Verfügungen im Zusammenhang mit Begünstigten getroffen haben. Eine
allfällige Pflichtverletzung kann daraus daher nicht resultieren.
Ausgehend vom Instrument of Nomination vom 03.07.2015, mit welchem
die damalige Treuhänderin CTX Treuhand AG sowie der Protektor Ashot
Egiazaryan seine Frau (Frau Tsaglolva) als Begünstigte ernannt haben,
wäre von den Antragsgegnern auch nicht zu verlangen, deren
Begünstigtenstellung zu bestreiten.

Die Vermögensverwaltung wurde durch die Savannah Advisors Inc. unter
anderem deshalb gewechselt, weil diese die neuen Direktoren nicht
anerkannten und nicht mit diesen zusammen arbeiteten. Dies ist ein
nachvollziehbarer und nicht zu beanstandender Grund. Da der Wechsel
durch die Savannah Advisors Inc. und nicht durch die Treuhänder
erfolgte, kann darin schon allein deshalb keine Pflichtverletzung der
Treuhänder begründet sein.

Aber selbst wenn die Treuhänder den Wechsel vorgenommen hätten,
liegt solches im normalen Ermessensbereich eines Treuhänders,
insbesondere dann, wenn von einem Vermögensverwalter, der über
keine Bewilligung der Finanzmarktaufsicht verfügt, gewechselt wird zu
einem, der eine solche hat.

Was der Versuch des Transferierens der Vermögenswerte des Trusts nach Liechtenstein betrifft, ist für das Gericht nicht ersichtlich, warum darin eine Pflichtverletzung liegen soll. Der Trust und die Treuhänder sind in Liechtenstein ansässig und es ist das gute Recht eines Treuhänders, die Vermögenswerte auch nach Liechtenstein zu transferieren.

Es liegen daher keine Pflichtverletzungen der Antragsgegner vor, die ein amtswegiges Vorgehen und die Eröffnung eines Aufsichtsverfahrens rechtfertigen würden.

Zu den Kosten:

Da der Antragsteller – auch wenn er letztlich nur Massnahmen „angeregt" hat – damit eine Äusserung der Antragsgegner erforderlich gemacht hat, ebenso des Vitaly Smagin, dem in Bezug auf die Treuhänder aufgrund der Verwertung der Recht umfassende Rechte zukommen, hat er für diese Kosten im Sinne des Art 78 AussStrG aufzukommen.

Die Antragsgegner haben eingewendet, dass der Streitwert mit CHF 30'000.00 viel zu niedrig bemessen ist. Es sollten CHF 500'000.00 angesetzt werden.

Der Einwand der Antragsgegner ist berechtigt. Wie sich aus dem Vorbringen ergibt, geht es um die Kontrolle und die Verfügungsberechtigung über ein Trustvermögen im dreistelligen Millionenbereich. Selbst CHF 500'000.00 als Bemessungsgrundlage sind bei dieser Ausgangsgrundlage ein moderater Ansatz. Gemäss Art 8 Abs 4 RATG war daher die Bemessungsgrundlage mit CHF 500'000.00 festzusetzen.

Auf Basis dieser Bemessungsgrundlage haben die Antragsgegner und die weitere Partei daher Anspruch auf Ersatz ihrer Gegenäusserung.

Seite 69

Fürstliches Landgericht
Vaduz, 24.08.2020
Mag. Stefan Rosenberger
Fürstlicher Landrichter



Für die Richtigkeit der Ausfertigung

Tanja Verling

## Rechtsmittelbelehrung

Gegen diesen Beschluss ist binnen der unerstreckbaren Frist von 4 Wochen ab Zustellung das Rechtsmittel des Rekurses an das Fürstliche Obergericht in Vaduz zulässig. Der Rekurs ist schriftlich in zweifacher Ausfertigung beim Landgericht einzubringen. Er kann von Parteien, die nicht durch einen Rechtsanwalt vertreten sind, auch mündlich zu Protokoll erklärt werden. Der Rekurs hat die Bezeichnung der Sache, Vor- und Familiennamen und Anschrift des Rekurswerbers und die Bezeichnung des Beschlusses zu enthalten, gegen den er erhoben wird. Der Rekurs muss kein bestimmtes Begehren enthalten, aber hinreichend erkennen lassen, aus welchen Gründen sich die Partei beschwert erachtet und welche andere Entscheidung sie anstrebt (Rekursbegehren); im Zweifel gilt der Beschluss, gegen den Rekurs erhoben worden ist, als zur Gänze angefochten.