# EXHIBIT 36

Seal:

STATEMENT OF EVGENII NIKOLAEVICH RATNIKOV

I, Evgenii Nikolaevich Ratnikov, state as follows:

1. I make this statement to support the answer filed to support the motion on the interference into this case. I am personally aware of the facts set forth in this statement and, if I were asked to testify as a witness, I could and will competently testify on these issues.

2. On 26.08.2020 I requested certain information from Vitalii Ivanovich Smagin ("Smagin"), the plaintiff and creditor upon a court decision in these proceedings, which conforms to my title of the court-appointed receiver for Smagin's affairs. I requested the following documents:

   1. inventory of property with the place of location or storage of property, including property constituting the collateral, with the pledgee's name or given name, patronymic and last name;
   2. information on opened settlement accounts with credit institutions with the number of settlement account, details of a credit institution, opened safe depository boxes, information on the availability of securities, information on claims to third parties with the ground for the occurrence of claims, amount of claims and debtor's details;
   3. information on financial income;
   4. information on the availability of shares in the Companies;
   5. information on marital property pursuant to Art. 34 of the Family Code of the Russian Federation;
   6. information on performed transactions on the purchase and disposal of movable and immovable property for the last 3 years.

Additionally, on 07.09.2020 I requested from Smagin the following information:

   A) Information and copies of documents confirming your payables to individuals or legal entities, including, but not limited to:
   - services of lawyers representing your interests in court cases in the Russian Federation and abroad;
   - services of third parties involved in the recovery of your receivables.
   In case of partial or full payment for such services, you are kindly requested to provide also confirming payment documents.

   B) Information and copies confirming your receivables to individuals or legal entities, including, but not limited to:
   - information on receivables on the recovery from Ashot Egiazarian and Kalken Holdings Limited of over USD 70,000,000 by the decision of the London Court of International Arbitration dd. 11.11.2014, including proper copies of all court rulings;
   - information on the results of recovery from Ashot Egiazarian of monetary funds under the above decision, including other court disputes, resolutions of bailiffs, information on the property of Ashot Egiazarian and other recovery-related documents.

   C) Contact information of representatives for prompt communication and exchange of documents.

Smagin has not answered this request and has not provided any requested information

3. On 07.09.2020 I additionally requested information from Baker & McKenzie LLP, Smagin's official lawyer. Namely, I requested:
- copies of all valid and performed agreements with V. I. Smagin, citizen of the Russian Federation;
- copies of all annexes, certificates, payment orders, etc. within the above agreements;
- reconciliation reports with V. I. Smagin for the entire term of contractual relations;

  - information on receivables on the recovery from Ashot Egiazarian and Kalken Holdings Limited of over USD 70,000,000 by the decision of the London Court of International Arbitration dd. 11.11.2014, including proper copies of all court rulings;
  - information on the results of recovery from Ashot Egiazarian of monetary funds under the above decision, including other court disputes, resolutions of bailiffs, information on the property of Ashot Egiazarian and other recovery-related documents;
  - copies of all statements, motions, revocations, written positions, etc. stated by you within the recovery of monetary funds from Ashot Egiazarian.

Baker & McKenzie LLP has not answered this request and has not provided any requested information.

4. Pursuant to the current Russian laws on insolvency, par. 9 of Art. 213.9 of Federal Law No. 127 "On Insolvency", Smagin must provide the following information: "any information on the composition of his property, location of such property, composition of his obligations, creditors and other information related to his bankruptcy proceedings within fifteen days from the date of receipt of the relevant request". **However, as of today Smagin has only stated that he has common income with his spouse and has no real estate or other significant assets.** The only asset he has disclosed is interests in potential collections under court decisions obtained in other jurisdictions, including a court decision in this case.

5. Pursuant to the current Russian laws on insolvency, I am authorized to request from Smagin, and Smagin must provide a full report on all of his financial transactions pursuant to par. 9 of Art. 213.9 of Federal Law No. 127 "On Insolvency"; Smagin must provide the following information: "any information on the composition of his property, location of such property, composition of his obligations, creditors and other information related to his bankruptcy proceedings within fifteen days from the date of receipt of the relevant request". Besides, I am allowed to seek injunction, including in this court, to prevent waste by Smagin of his assets. Pursuant to par. 9 of Art. 213.9 of Federal Law No. 127 "On Insolvency", receiver is entitled to "file to the arbitration court a motion for measures to ensure preservation of citizen's property, as well as cancellation of such measures". This right is additionally recorded in par. 3 of Art. 213.11: "upon a creditor's or receiver's motion, the arbitration court is entitled to take measures to secure creditor's claims and citizen's interests pursuant to the arbitration procedural laws, including imposition of a ban on the disposal of a part of citizen's property, including a ban on auctions to sell citizen's property".

6. To confirm the thesis that "the receiver is entitled to control Smagin's assets", it is possible to state a number of references and interpretations of the bankruptcy laws of the Russian Federation.

Namely:

Pursuant to par. 4 of Art. 20.3, performing procedures applied in a bankruptcy case, receiver must act in a good faith and reasonably in the debtor's, creditors' and company's interests.

Par. 8 of Art. 213.9 expressly provides for the receiver's obligation "to take measures to detect and ensure preservation of citizen's property".

Pursuant to par. 5 of Art. 213.11, in the course of restructuring of citizen's debts, Smagin may perform the following transactions or several interrelated transactions only upon prior written consent of the receiver:
- on the purchase, disposal of or in connection with the possible disposal of, directly or indirectly, property costing over RUR 50,000, immovable property, securities, shares in the authorized capital and vehicles;

- on the obtainment and granting of loans, obtainment of credits, issue of sureties and warranties, assignment of claims, transfer of debt, as well as establishment of trust management of citizen's property;
- on the pledge of citizen's property.

In case of disagreements on the performance of such transactions between a citizen and a receiver, they are entitled to ask the arbitration court considering a bankruptcy case for the resolution of such disagreements.

Upon introduction of the restructuring of citizen's debts, he is not entitled to transfer his property as a contribution or unit into the authorized capital or unit capital of a legal entity, purchase shares (participation interests, units) in the authorized (joint) capitals or unit capitals of legal entities or perform free transactions.

Pursuant to par. 5 of Art. 213.11, Smagin is entitled to open a special bank account and dispose of monetary funds thereon without receiver's consent. Amount of transactions on the disposal of monetary funds on a special bank account performed by a citizen cannot exceed RUR 50,000 per month.

Upon a citizen's motion, the arbitration court is entitled to increase the maximum size of monetary funds on a debtor's special bank account a citizen may dispose of monthly.

Debtor shall dispose of monetary funds on other accounts (deposits) **upon receiver's prior written consent.**

In case credit organizations perform transactions on citizen's bank accounts and deposits, including bank card accounts, in a breach of the rules established by this paragraph, credit organizations may be brought to liability only if a credit organization was or should have been aware of the introduction of the restructuring of citizen's debts upon transaction date, taking into account par. 3 of Art. 213.7 and the eighth passage of par. 8 of Art. 213.9 of the said Federal Law/

Pursuant to par. 3 of Art. 213.11, upon a creditor's or receiver's motion, the arbitration court is entitled to takes measures to secure creditors' claims and citizen's interests pursuant to the arbitration procedural laws, including imposition of a ban on the disposal of a part of citizen's property, including a ban on auctions to sell citizen's property.

The above provisions show that in the restructuring of Smagin's debts, receiver Ratnikov must control his assets to prevent a breach of the above provisions of the Russian laws and creditors' interests.

To control debtor's assets, the laws of the Russian Federation provide for the following measures to prevent illegal actions both of a debtor and other persons:
Receiver is entitled to:
1. participate in the restructuring of debts as a third party, which does not file separate claims "on the subject of a dispute, on the citizen's side in all court cases on disputes concerning property (including on the recovery of money from or in favor of a citizen, on the seizure or transfer of citizen's property or in favor of a citizen)", par. 7 of Art. 213.9;
2. get information on citizen's property, accounts and deposits, including on bank cards, on balances of e-money and on wire transfers of monetary funds from citizens and legal entities (including credit organizations), from public and self-governing authorities, par. 7 of Art. 213.9;
3. control performance of the plan of the restructuring of citizen's debts, par. 8 of Art. 213.9;
4. control timely performance by a citizen of creditors' current claims, timely and full transfer of monetary funds to repay creditors' claims, par. 8 of Art. 213.9;

5. upon a creditor's or receiver's motion, the arbitration court is entitled to take measures to secure creditor's claims and citizen's interests pursuant to the arbitration procedural laws, including imposition of a ban on the disposal of a part of citizen's property, including a ban on auctions to sell citizen's property, par. 3 of Art. 213.11;
6. file to the arbitration court on behalf of a citizen statements for the recognition of transactions null and void on the grounds stipulated by Art. 61.2 and 61.3 of the said Federal Law, as well as transactions performed in a breach of the said Federal Law, par. 7 of Art. 213.9.

Summing up the above, it is possible to make the following conclusion: the receiver's main task in the restructuring of Smagin's debts is control over the debtor's assets to prevent waste and illegal withdrawal of the debtor's property. In the restructuring of Smagin's debts, limit for the performance of monetary transactions or other actions with property in the size of RUR 50,000 per month is established by the current laws of the Russian Federation. The receiver has the right and duty to control Smagin's actions on the disposal of his assets within the established limit and other restrictions established in relation to the debtor. If the receiver does not participate in the considered dispute as a third party, he will not be able to ensure balance of interests of Smagin's creditors and the debtor himself. The receiver will be deprived of the possibility to control disposal by Smagin of his assets, which may damage his creditors.

I would like to draw the attention of the court to the court practice on the consideration of receiver's statements for injunctive relief for the debtor's property, namely, the High Court of London has frozen Anatolii Motylev's assets upon a statement of the Russian businessman's receiver.

This precedent states that the receiver is entitled to turn to international courts to limit a debtor in the management of monetary funds and other assets.

Despite the fact that this court ruling is made in the course of bankruptcy proceedings – stage of the sale of property, similar injunctive relief aimed at the restriction of the debtor's powers and ensuring preservation of his property may be stated by the receiver in the course of bankruptcy, too – stage of the restructuring of debts, on the basis of par. 3 of Art. 213.11 of the Insolvency (Bankruptcy) Law of the Russian Federation.

E. N. Ratnikov                    /signed/                    05.10.2020

/Перевод с русского языка на французский язык/

## DÉCLARATION DE RATNIKOV EVGENY NIKOLAEVICH

Moi, Ratnikov Evgeny Nikolaevich, je déclare ce qui suit:

1. Je fais cette déclaration à l'appui de la réponse déposée à l'appui de la demande d'intervention dans cette affaire. Je connais personnellement les faits exposés dans cette déclaration, et si j'étais assigné à témoigner en tant que témoin, je pourrais et je vais témoigner avec compétence sur ces questions.

2. Le 26.08.2020 conformément à la décision de justice dans cette procédure, j'ai demandé certaines informations au demandeur et créancier Smagin («Smagin») Vitaly Ivanovich, ce qui correspond à ma fonction, nommée par le tribunal, en tant qu'administrateur judiciaire dans le cadre de l'affaire d'insolvabilité de Smagin. J'ai demandé les documents suivants:

   1. inventaire des biens, indiquant l'emplacement ou le stockage des biens, y compris les biens faisant l'objet d'un gage, indiquant le nom, le prénom et le patronyme du créancier gagiste.
   2. informations sur les comptes courants ouverts dans les établissements de crédit, indiquant le numéro du compte courant, les coordonnées de l'établissement de crédit, les coffres ouverts, les informations sur la disponibilité des titres, les informations sur le droit de la créance à des tiers avec l'indication de la raison de la créance, le montant de la créance et les détails du débiteur.
   3. informations sur les revenus financiers.
   4. informations sur les participations dans des Associations.
   5. informations sur les biens acquis conjointement pendant le mariage conformément à l'art. 34 du Code de la famille de la Fédération de Russie.
   6. informations sur les transactions finalisées d'acquisition et d'aliénation de biens mobiliers et immobiliers au cours des 3 dernières années.

Le 07.09.2020 j'ai demandé supplémentairement les informations suivantes au citoyen Smagin:

   A.) Informations et copies de documents confirmants que vous avez des comptes créditeurs envers des personnes physiques ou morales, y compris, mais sans s'y limiter:
   - les services d'avocats représentants vos intérêts dans des affaires judiciaires à l'extérieur et sur le territoire de la Fédération de Russie;
   - les services de tiers liés à la procédure de recouvrement de vos créances.
   En cas de paiement partiel ou total de ces services, je demande de fournir des documents justificatifs.

   B.) Informations et copies de documents confirmant que vous avez des créances envers des personnes physiques ou morales, y compris, mais sans s'y limiter:
   - des informations sur les créances sur le recouvrement de Egiazaryan Ashot et de Kalken Holdings Limited par la décision de la Cour internationale d'arbitrage de Londres du 11.11.2014 de plus de 70 000 000 de dollars américains, y compris des copies appropriées de tous les actes judiciaires;
   - des informations sur les résultats du recouvrement de l'argent de Egiazaryan Ashot conformément à la décision ci-dessus, y compris d'autres litiges, des décisions des huissiers de justice, des informations sur la propriété de Egiazaryan Ashot et d'autres documents liés à la procédure du recouvrement.

   C.) Fournir des contacts de représentants pour la communication et l'échange rapides de documents.

Jusqu'à présent, les informations demandées ainsi qu'aucune explication du citoyen Smagin n'ont pas été fournies.

3. Le 07.09.2020 j'ai également demandé des informations à l'avocat de Smagin, la société Baker&McKenzie. Plus précisément, j'ai demandé :

- des copies de tous les contrats valides et terminés avec le citoyen de la Fédération de Russie Smagin V.I.;
- des copies de toutes les annexes, actes, ordres de paiement etc. dans le cadre des accords ci-dessus.
- actes de rapprochement avec le citoyen Smagin V.I. pendant toute la durée de la relation contractuelle.
- des informations sur les créances sur le recouvrement de Egiazaryan Ashot et de Kalken Holdings Limited par la décision de la Cour internationale d'arbitrage de Londres du 11.11.2014 de plus de 70 000 000 de dollars américains, y compris des copies appropriées de tous les actes judiciaires;
- des informations sur les résultats du recouvrement de l'argent de Egiazaryan Ashot conformément à la décision ci-dessus, y compris d'autres litiges, des décisions des huissiers de justice, des informations sur la propriété de Egiazaryan Ashot et d'autres documents liés à la procédure du recouvrement.
- des copies de toutes les déclarations, pétitions, réponses, positions écrites etc., déclarées par vous dans le cadre du recouvrement de l'argent de Egiazaryan Ashot.

À ce jour, la société Baker McKenzie n'a pas répondu à cette demande et n'a fourni aucune des informations demandées.

4. Conformément à la loi russe sur l'insolvabilité, la clause 9 de l'art. 213.9 de la loi fédérale № 127 "Insolvabilité", Smagin est obligé de fournir les informations suivantes : «toutes les informations sur la composition de son bien, l'emplacement de ce bien, la composition de ses obligations, les créanciers et autres informations pertinentes pour le cas de faillite dans les quinze jours à compter de la date de réception de la réclamation à propos de cela". Cependant, à ce jour, Smagin a seulement déclaré qu'il a un revenu commun avec sa femme et qu'il n'a pas de biens immobiliers ou d'autres actifs importants. Le seul actif(s) qu'il a divulgué sont des intérêts dans des collections potentielles fondées sur des jugements qu'il a reçus dans d'autres juridictions, y compris un jugement dans cette affaire.

5. Conformément à la loi russe sur l'insolvabilité, je suis autorisé à demander à Smagin, et Smagin est obligé de fournir un rapport complet sur toutes ses transactions financières conformément au paragraphe 9 de l'art. 213.9 de la loi fédérale № 127 "Insolvabilité", Smagin est obligé de fournir les informations suivantes : «toutes les informations sur la composition de son bien, l'emplacement de ce bien, la composition de ses obligations, les créanciers et autres informations pertinentes pour le cas de faillite dans les quinze jours à compter de la date de réception de la réclamation à propos de cela". De plus, je suis autorisé à demander une injonction, y compris devant ce tribunal, pour prévenir Smagin de dilapider ses biens. Conformément au paragraphe 9 de l'art. 213.9 de la loi fédérale № 127 "Insolvabilité" l'administrateur judiciaire a le droit «de saisir un tribunal d'arbitrage avec une demande pour prendre des mesures pour assurer la sécurité des biens d'un citoyen, ainsi que pour annuler ces mesures», ce droit est en outre inscrit au paragraphe 3 de l'art. 213.11 "à la demande du créancier ou d'administrateur judiciaire, le tribunal arbitral a le droit de prendre des mesures pour garantir les réclamations des créanciers et les intérêts du citoyen conformément à la législation procédurale d'arbitrage, y compris d'interdire la cession d'une partie de la propriété du citoyen, y compris une interdiction de la vente de la propriété du citoyen".

6. Il existe certain nombre de références et d'interprétations de la loi sur la faillite de la Fédération de Russie qui peuvent être citées pour confirmer la thèse selon laquelle "l'administrateur judiciaire a le droit d'exercer un contrôle sur les actifs du citoyen Smagin".

Notamment:

Conformément au paragraphe 4 de l'art. 20.3 Lors de l'exécution des procédures appliquées en cas de faillite, le responsable de l'arbitrage (administrateur judiciaire) est obligé d'agir de bonne foi et raisonnablement dans l'intérêt du débiteur, des créanciers et de la société.

le paragraphe 8 de l'art. 213.9 prévoit directement l'obligation d'administrateur judiciaire "Prendre des mesures pour identifier des biens d'un citoyen et assurer la sécurité de ces biens";

Conformément au paragraphe 5 de l'article 213.11, lors de la restructuration de la dette d'un citoyen, Smagin ne peut effectuer des transactions ou plusieurs transactions interdépendantes qu'avec l'accord écrit préalable d'administrateur judiciaire:
- l'acquisition, l'aliénation ou d'aliénation possible, directement ou indirectement, des biens dont la valeur est supérieure à cinquante mille roubles, des biens immobiliers, des titres, des parts du capital autorisés et des véhicules;
- l'obtention et l'octroi de prêts, l'obtention de prêts, l'émission de cautions et de garanties, la cession de créances, le transfert de dettes, ainsi que la constitution de la gestion fiduciaire des biens d'un citoyen;
- le transfert de la propriété d'un citoyen à titre de gage.
  En cas de désaccord entre le citoyen et l'administrateur judiciaire concernant l'exécution de ces opérations, ils ont le droit de demander la résolution de ces désaccords auprès du tribunal arbitral qui examine l'affaire de la faillite d'un citoyen.
  À partir de la date de l'introduction de la restructuration de la dette d'un citoyen, il n'a pas le droit d'apporter ses biens à titre de dépôt ou de part sociale au capital social ou au fond commun de placement d'une personne morale d'acquérir des parts (actions, part social) aux capitaux sociaux ou aux fonds communs des personnes morales, ainsi que de faire des transactions à titre gratuit pour le citoyen.

Conformément au paragraphe 5.1 de l'article 213.11, Smagin a le droit d'ouvrir un compte bancaire spécial et de disposer des fonds de ce compte sans l'accord d'administrateur judiciaire. Le montant des transactions effectuées par un citoyen pour gérer des fonds placés sur un compte bancaire spécial ne peut excéder cinquante mille roubles par mois.

À la demande d'un citoyen, le tribunal arbitral a le droit d'augmenter le montant maximum des fonds déposés sur le compte bancaire spécial du débiteur, dont le citoyen a le droit de disposer mensuellement.

Le débiteur dispose des fonds placés sur d'autres comptes (dépôts) **sur la base de l'accord écrit préalable d'administrateur judiciaire.**

En cas des opérations sur les comptes bancaires et les dépôts bancaires d'un citoyen effectuées par des établissements de crédit, y compris les comptes de carte bancaire, en violation des règles établies par le présent paragraphe, les établissements de crédit ne peuvent être tenus responsables que si, au moment de l'opération, l'établissement de crédit savait ou devait être au courant de l'introduction de la restructuration de la dette d'un citoyen, compte tenu du paragraphe 3 de l'article 213.7 et du alinéa de paragraphe 8 de l'article 213.9 de la Loi Fédérale.

Conformément au paragraphe 3 de l'art. 213.11 à la demande du créancier ou d'administrateur judiciaire, le tribunal arbitral a le droit de prendre des mesures pour garantir les réclamations des créanciers et les intérêts du citoyen conformément à la législation procédurale d'arbitrage, y

compris d'interdire la disposition d'une partie des biens du citoyen, y compris une interdiction de la vente de la propriété du citoyen.

Les normes ci-dessus indiquent que dans la procédure de restructuration de la dette de citoyen Smagin, Ratnikov est obligé de contrôler les actifs du débiteur Smagin, afin d'éviter la violation des normes ci-dessus de la loi russe et des intérêts des créanciers.

Pour contrôler les biens du débiteur, la législation de la Fédération de Russie prévoit les mécanismes suivants pour prévenir les actions illégales du débiteur et d'autres personnes:

L'administrateur judiciaire a le droit de:

1. participer au cours de la procédure de restructuration de la dette en tant que tiers ne déclarant pas de réclamation indépendante sur l'objet du litige, du côté du citoyen dans tous les cas devant les tribunaux pour les litiges relatifs aux biens (y compris le recouvrement de l'argent de citoyen ou en faveur d'un citoyen, en réclamant ou en transférant la propriété d'un citoyen ou en faveur d'un citoyen. le paragraphe 7 de l'art. 213,9
2. recevoir des informations sur les biens d'un citoyen, ainsi que sur les comptes et les dépôts du citoyen, y compris sur les cartes bancaires, sur les soldes de monnaie électronique et sur les transferts de monnaie électronique des citoyens et des personnes morales (y compris les établissements de crédit), des organes du pouvoir de l'État, des autorités locales. le paragraphe 7 de l'art. 213,9
3. exercer le contrôle du plan de restructuration de la dette d'un citoyen; le paragraphe 8 de l'art. 213,9
4. exercer le contrôle sur l'exécution en temps opportun par le citoyen des réclamations actuelles des créanciers, sur le virement opportun et en volume total des fonds pour rembourser les réclamations des créanciers. le paragraphe 8 de l'art. 213,9
5. À la demande du créancier ou d'administrateur judiciaire, le tribunal d'arbitrage a le droit de prendre des mesures pour garantir les réclamations des créanciers et les intérêts du citoyen conformément à la législation procédurale d'arbitrage, y compris d'interdire la cession d'une partie de la propriété du citoyen, y compris l'interdiction de la vente de la propriété du citoyen. le paragraphe 3 de l'art. 213,11
6. soumettre à un tribunal d'arbitrage, au nom d'un citoyen, les demandes d'annulation d'opérations pour les motifs prévus aux articles 61.2 et 61.3 de la présente Loi Fédérale, ainsi que les opérations effectuées en violation de cette Loi Fédérale. le paragraphe 7 de l'art. 213,9

En résumant les arguments ci-dessus, on peut faire la conclusion suivante: la tâche principale d'administrateur judiciaire dans la procédure de restructuration de la dette du citoyen Smagin est de contrôler les actifs du débiteur afin d'éviter la dilapidation et l'élimination illégale des biens du débiteur. La législation actuelle de la Fédération de Russie sur la procédure de restructuration de la dette du citoyen Smagin fixe une limite de 50 000 roubles par mois aux transactions monétaires ou autres actions avec des biens. L'administrateur judiciaire est habilité à exercer un contrôle sur les actions de Smagin pour disposer de ses actifs dans la limite établie et sur les autres restrictions établies par rapport au débiteur. Si l'administrateur judiciaire ne participe pas au litige considéré en tant que tiers, il ne pourra pas équilibrer les intérêts des créanciers de Smagin et du débiteur lui-même. L'administrateur judiciaire sera privé de la capacité de contrôler la cession des actifs de Smagin, ce qui pourrait nuire à ses créanciers.

En outre, j'attire l'attention du tribunal sur la pratique judiciaire en matière d'examen des déclarations d'administrateur judiciaire pour l'imposition de mesures provisoires sur les biens du débiteur, en particulier: la Haute Cour de Londres a gelé les actifs de Motylev Anatoly à la demande d'administrateur judiciaire d'un homme d'affaires russe.

Ce précédent juridique montre que l'administrateur judiciaire a le droit de saisir les tribunaux internationaux pour restreindre le débiteur dans la gestion de son argent et autres actifs.

Malgré le fait que cet acte judiciaire a été émis pendant la procédure de mise en faillite - l'étape de la réalisation des biens, des mesures provisoires similaires visant à limiter les pouvoirs du débiteur et à assurer la sécurité de ses biens peuvent être déclarées par l'administrateur judiciaire et dans la procédure de faillite - l'étape de restructuration de la dette sur la base du paragraphe 3 l'article 213.11 de la loi sur l'insolvabilité (faillite) de la Fédération de Russie.

Ratnikov Evgeny Nikolaevich
L'administrateur judiciaire
du citoyen de la Fédération de Russie Smagin Vitaly Ivanovich _____ 05.10.2020
/(signature)

## ЗАЯВЛЕНИЕ РАТНИКОВА ЕВГЕНИЯ НИКОЛАЕВИЧА

Я, Ратников Евгений Николаевич, заявляю следующее:

1. Я делаю это заявление в поддержку ответа, поданного в поддержку ходатайства о вмешательстве в это дело. Я лично знаком с фактами, изложенными в этом заявлении, и если бы меня вызвали для дачи показаний в качестве свидетеля, я мог бы и буду компетентно свидетельствовать по таким вопросам.

2. 26.08.2020г. я запросил определенную информацию у истца и кредитора по решению суда в этом разбирательстве Виталия Ивановича Смагина ("Смагин"), что соответствует моей должности назначенного судом управляющего по делам о несостоятельности Смагина. Мною были запрошены следующие документы:

    1. опись имущества, с указанием места нахождения или хранения имущества, в том числе имущества, являющегося предметом залога, с указанием наименования или фамилии, имени и отчества залогодержателя.
    2. сведения об открытых расчетных счетах в кредитных учреждениях, с указанием № расчетного счета, реквизитов кредитного учреждения, открытых депозитных ячеек, сведения о наличии ценных бумаг, информацию о праве требования к третьим лицам с указанием основания возникновения права требования, суммы требования и реквизитов должника.
    3. информацию о финансовых доходах.
    4. информацию о наличии долей в Обществах.
    5. сведения о совместно нажитом имуществе в период брака согласно ст. 34 СК РФ.
    6. сведения о совершенных сделках по приобретению и отчуждению движимого и недвижимого имущества за последние 3 года.

Дополнительно 07.09.2020г. мной была запрошена у гражданина Смагина следующая информация:

А.) Сведения и копии документов, подтверждающих наличие у вас кредиторской задолженности перед физическими или юридическими лицами, в том числе, но не ограничиваясь:

- услуги адвокатов, представляющих ваши интересы в судебных делах за пределами и на территории Российской Федерации;
- услуги сторонних лиц, имеющих отношение к процедуре взыскания вашей дебиторской задолженности.

В случае частичной или полной оплаты указанных услуг, прошу в том числе предоставить подтверждающие платежные документы.

Б.) Сведения и копии документов, подтверждающих наличие у вас дебиторской задолженности перед физическими или юридическими лицами, в том числе, но не ограничиваясь:

- сведения о дебиторской задолженности о взыскании с Ашота Егиазарян и Kalken Holdings Limited решением Лондонского международного арбитражного суда от 11.11.2014 года более 70 000 000 долларов США, включая надлежащие копии всех судебных актов;
- сведения о результатах взыскания с Ашота Егиазаряна денежных средств по указанному выше решению, в том числе иные судебные споры, постановления приставов, информация об имуществе Ашота Егиазаряна и иные имеющие отношение к процедуре взыскания документы.

В.) Предоставить контакты представителей для оперативной связи и обмена документами.

До настоящего времени Смагин не ответил на этот запрос и не предоставил никакой запрошенной информации.

3. 07.09.2020г. я дополнительно запросил информацию у официального адвоката Смагина, компании Baker & McKenzie LLP ("Бейкер Маккензи"). В частности, я запросил:
- копии всех действующих и завершенных договоров с Гражданинов РФ Смагиным В.И.;
- копии всех приложений, актов, платежных поручений и т.д. в рамках вышеуказанным договоров.
- акты сверки с гражданином Смагиным В.И. за весь период договорных отношений.
- сведения о дебиторской задолженности о взыскании с Ашота Егиазаряна и Kalken Holdings Limited решением Лондонского международного арбитражного суда от 11.11.2014 года более 70 000 000 долларов США, включая надлежащие копии всех судебных актов;
- сведения о результатах взыскания с Ашота Егиазаряна денежных средств по указанному выше решению, в том числе иные судебные споры, постановления приставов, информация об имуществе Ашота Егиазаряна и иные имеющие отношение к процедуре взыскания документы;
- копии всех заявлений, ходатайств, отзывов, письменных позиций и т.д., заявляемых вами в рамках взыскания денежных средств с Ашота Егиазаряна.
На сегодняшний день компания Baker McKenzie не ответила на этот запрос и не предоставила никакой запрошенной информации.

4. Согласно соответствующему российскому законодательству о несостоятельности п.9 ст. 213.9 ФЗ №127 «О Несостоятельности», Смагин обязан предоставить следующую информацию «любые сведения о составе своего имущества, месте нахождения этого имущества, составе своих обязательств, кредиторах и иные имеющие отношение к делу о банкротстве гражданина сведения в течение пятнадцати дней с даты получения требования об этом». **Однако на сегодняшний день Смагин только заявил, что у него есть совместный доход с супругой и что у него нет недвижимости или других значимых активов.** Единственный актив(Ы), который он раскрыл, - это интересы в потенциальных коллекциях по судебным решениям, полученным им в других юрисдикциях, включая судебное решение по этому делу.

5. Согласно соответствующему российскому законодательству о несостоятельности, я уполномочен требовать от Смагина, и Смагин обязан предоставить полный отчет обо всех его финансовых операциях согласно п.9 ст. 213.9 ФЗ №127 «О Несостоятельности», Смагин обязан предоставить следующую информацию «любые сведения о составе своего имущества, месте нахождения этого имущества, составе своих обязательств, кредиторах и иные имеющие отношение к делу о банкротстве гражданина сведения в течение пятнадцати дней с даты получения требования об этом». Кроме того, мне разрешено добиваться судебного запрета, в том числе в этом суде, чтобы предотвратить растрату Смагиным своих активов. В соответствии с п.9 ст. 213.9 ФЗ №127 «О Несостоятельности» финансовый управляющий в праве «обращаться в арбитражный суд с ходатайством о принятии мер по обеспечению сохранности имущества гражданина, а также об отмене таких мер». дополнительно данное право закреплено в п.3 ст. 213.11 «по ходатайству кредитора или финансового управляющего арбитражный суд вправе принять меры по обеспечению требований кредиторов и интересов гражданина в соответствии с арбитражным процессуальным законодательством, в том числе наложить запрет на распоряжение частью имущества гражданина, включая запрет на проведение торгов по продаже имущества гражданина».

6. В качестве подтверждения тезиса, что «финансовый управляющий имеет права осуществлять контроль активов гражданина Смагина» можно привести ряд ссылок и толкований закона о банкротстве Российской Федерации.

В частности:

Согласно п. 4 ст. 20.3 При проведении процедур, применяемых в деле о банкротстве, арбитражный управляющий (финансовый управляющий) обязан действовать добросовестно и разумно в интересах должника, кредиторов и общества.

п. 8 статьи 213.9 напрямую предусматривает обязанность финансового управляющего «принимать меры по выявлению имущества гражданина и обеспечению сохранности этого имущества»;

В соответствии с пунктом 5 статьи 213.11 в ходе реструктуризации долгов гражданина Смагин может совершать только с выраженного в письменной форме предварительного согласия финансового управляющего сделки или несколько взаимосвязанных сделок:
- по приобретению, отчуждению или в связи с возможностью отчуждения прямо либо косвенно имущества, стоимость которого составляет более чем пятьдесят тысяч рублей, недвижимого имущества, ценных бумаг, долей в уставном капитале и транспортных средств;
- по получению и выдаче займов, получению кредитов, выдаче поручительств и гарантий, уступке прав требования, переводу долга, а также учреждению доверительного управления имуществом гражданина;
- по передаче имущества гражданина в залог.

В случае наличия разногласий по поводу совершения указанных сделок у гражданина и финансового управляющего они вправе обратиться за разрешением таких разногласий в арбитражный суд, рассматривающий дело о банкротстве гражданина.

С даты введения реструктуризации долгов гражданина он не вправе вносить свое имущество в качестве вклада или паевого взноса в уставный капитал или паевой фонд юридического лица, приобретать доли (акции, паи) в уставных (складочных) капиталах или паевых фондах юридических лиц, а также совершать безвозмездные для гражданина сделки.

В соответствии с пунктом 5.1 статьи 213.11 Смагин вправе открыть специальный банковский счет и распоряжаться денежными средствами, размещенными на нем, без согласия финансового управляющего. Сумма совершенных гражданином операций по распоряжению денежными средствами, размещенными на специальном банковском счете, не может превышать пятьдесят тысяч рублей в месяц.

По ходатайству гражданина арбитражный суд вправе увеличить максимальный размер денежных средств, размещенных на специальном банковском счете должника, которыми гражданин вправе ежемесячно распоряжаться.

Денежными средствами, размещенными на иных счетах (вкладах), должник распоряжается на **основании предварительного письменного согласия финансового управляющего.**

В случае совершения кредитными организациями операций по банковским счетам и банковским вкладам гражданина, включая счета по банковским картам, с нарушением правил, установленных настоящим пунктом, кредитные организации могут быть привлечены к ответственности только в том случае, если к моменту проведения операции кредитная организация знала или должна была знать о введении реструктуризации долгов гражданина с учетом пункта 3 статьи 213.7 и абзаца восьмого пункта 8 статьи 213.9 настоящего Федерального закона.

Согласно п. 3 ст. 213.11 по ходатайству кредитора или финансового управляющего арбитражный суд вправе принять меры по обеспечению требований кредиторов и интересов гражданина в соответствии с арбитражным процессуальным законодательством, в том числе наложить запрет на распоряжение частью имущества гражданина, включая запрет на проведение торгов по продаже имущества гражданина.

Выше приведенные нормы говорят о том, что в процедуре реструктуризации долгов гражданина Смагина, финансовый управляющий Ратников обязан осуществлять контроль активов должника Смагина, для не допущения нарушения выше приведённых норм Российского законодательства и интересов кредиторов.

Для контроля активов должника законодательством РФ предусмотрены следующие механизмы для пресечения незаконных действий, как должника, так и иных лиц:

Финансовый управляющий имеет право:

1. участвовать в ходе процедуры реструктуризации долгов в качестве третьего лица, не заявляющего самостоятельных требований относительно предмета спора, на стороне гражданина во всех делах в судах по спорам, касающимся имущества (в том числе о взыскании денег с гражданина или в пользу гражданина, об истребовании или о передаче имущества гражданина либо в пользу гражданина). п. 7 ст. 213.9
2. получать информацию об имуществе гражданина, а также о счетах и вкладах (депозитах) гражданина, в том числе по банковским картам, об остатках электронных денежных средств и о переводах электронных денежных средств от граждан и юридических лиц (включая кредитные организации), от органов государственной власти, органов местного самоуправления. п. 7 ст. 213.9
3. осуществлять контроль за ходом выполнения плана реструктуризации долгов гражданина; п. 8 ст. 213.9
4. осуществлять контроль за своевременным исполнением гражданином текущих требований кредиторов, своевременным и в полном объеме перечислением денежных средств на погашение требований кредиторов. п. 8 ст. 213.9
5. По ходатайству кредитора или финансового управляющего арбитражный суд вправе принять меры по обеспечению требований кредиторов и интересов гражданина в соответствии с арбитражным процессуальным законодательством, в том числе наложить запрет на распоряжение частью имущества гражданина, включая запрет на проведение торгов по продаже имущества гражданина. п. 3 ст. 213.11
6. подавать в арбитражный суд от имени гражданина заявления о признании недействительными сделок по основаниям, предусмотренным статьями 61.2 и 61.3 настоящего Федерального закона, а также сделок, совершенных с нарушением настоящего Федерального закона. п.7 ст. 213.9

Резюмируя выше приведенные доводы, можно сделать следующий вывод, что основной задачей финансового управляющего в процедуре реструктуризации долгов гражданина Смагина, является контроль активов должника с целью не допущения растраты и незаконного выбытия имущества должника. Действующим законодательством РФ в процедуре реструктуризации долгов гражданина Смагина установлен лимит на совершение денежных операций либо иных действий с имуществом в сумме 50 000 рублей в месяц. Финансовый управляющий наделен правом и обязанностью осуществить контроль за действиями Смагина по распоряжению своими активами в рамках установленного лимита и других ограничений, установленных в отношении должника. В случае если финансовый управляющий не примет участие в рассматриваемом споре в качестве третьего лица, он не сможет обеспечить баланс интересов кредиторов Смагина и самого должника. Финансовый управляющий будет лишен возможности контроля по распоряжению Смагиным своими активами, что может причинить вред его кредиторам.

Дополнительно обращаю внимание суда на судебную практику по рассмотрению заявлений финансового управляющего по наложению обеспечительных мер на имущество должника, в частности: Высокий суд Лондона заморозил активы Анатолия Мотылева по заявлению финансового управляющего российского бизнесмена.

Данный правовой прецедент говорит о том, что финансовый управляющий имеет право обращаться в международные суды для ограничения должника в управлении им денежными средствами и другими активами.

Не смотря на то, что данный судебный акт вынесен в ходе процедуры банкротства – стадия реализация имущества, аналогичные обеспечительные меры, направленные на ограничение полномочий должника и обеспечение сохранности его имущества могут быть заявлены финансовым управляющим и в процедуре банкротства – стадия реструктуризация долгов на основании пункта 3 статьи 213.11 закона о несостоятельности (банкротстве) РФ.

Ратников Е.Н. /подпись/ 05.10.2020 г.