# EXHIBIT 37

MAITZ
Rechtsanwaltskanzlei


**By registered mail**

To

Mr. RA Mag. Rudolf Schachle

Mr. RA Mag.Raphael Nascher, LL.M,

Pflugstrasse 16

P.O. Box 635

9490 Vaduz

**In advance by e-mail:** REDACTED

REDACTED

REDACTED

Ruggell, October 15, 2020

**Vitaly Ivanovich Smagin - opening bankruptcy proceedings**

Dear colleague Schachle

Dear colleague Nascher

At the beginning, I inform you that I am a legal representative of Mr. Evgenii Nikolaevich Ratnikov, Druzby ul 9, 200 Lyubertsy, 140013, Moscow obl..

My client is the trustee of Vitaly Ivanovich Smagin (GZ A 40-17597 / 20-4-36 F) appointed by the Moscow bankruptcy court on August 20, 2020. This is registered in the Russian state register of trustees under the number 15827. The announcement of the opening of bankruptcy concerning the above-mentioned debtor was made both in the Russian daily newspaper "*Kommersant*" (message number 35210028667) and in the Russian "*Unified Federal Information Register on Bankruptcy*" (message number 5370072). The exact information of the state publication of the bankruptcy on the debtor Vitaly Ivanovich Smagin can be found at https // bankrot.fedresurs.ru. The requirements standardized in Art. 213.7 russInsG with regard to the publication of bankruptcy proceedings opened in Russia are thus fulfilled.

As a trustee of the Alpha Trust (FL-0002.510.771-1), you should be aware that the insolvent and overindebted debtor is acting as the enforcing party and / or plaintiff in several pending proceedings in Liechtenstein.

Pursuant to § 159 ZPO in conjunction with Art 20 Paragraph 1 KO, **all legal disputes** in which a debtor is a party **are interrupted ex lege** as far as they concern the assets belonging to the bankruptcy estate (LES 2003, 296). This also applies to pending enforcement and legal remedies (LES 2017, 215; cf. Art 51 in conjunction with Section 159 ZPO in conjunction with Art 20 Paragraph 1 KO). The interruption also occurs ipso facto. The **decision** common in court practice **regarding the interruption** due to bankruptcy opening only has a **declarative effect** (GE 2017, 215; LES 2003, 196, guiding principle a).

With the opening of bankruptcy, a debtor fundamentally loses the administrative and disposal authority over the bankruptcy estate according to the Liechtenstein legal situation and can no longer take (procedural) actions. In addition, in property law disputes, the trustee takes the place of the debtor in the name of the bankruptcy estate (LES 2007, 280 - guiding principle a). Any powers of attorney granted by the debtor have finally expired with the opening of insolvency proceedings (*P. Bydlinski in KBB[6]* § 1024 ABGB margin number 1). These bankruptcy effects that occur when bankruptcy is opened can be assumed to be known to Liechtenstein lawyers.

1

MAITZ
Rechtsanwaltskanzlei

In this context, my client would like to refer in particular to Art 1 Z 6 russInsG, according to which, in the absence of international contracts, decisions by foreign courts in bankruptcy matters in Russia are recognized on the basis of reciprocity (see OLG Hamburg, judgment of 01.03.2018, 6 U 242 / 15 margin no.56, https://openjur.de/u/2194602.html). In addition, there are numerous decisions by Russian courts that have recognized Liechtenstein decisions in Russia due to the existing reciprocity.

Due to the bankruptcy of the debtor Vitaly Ivanovich Smagin in Moscow, my client submitted an application for interruption in the Liechtenstein proceedings on 04 CG.2019.5 (previously 04 CG.2016.115), 08 EX.2016.839 and 08 EX.2016.5802 on September 11, 2019 . The declarative decisions of the judge responsible in each case are still pending.

As the trustee appointed by the Moscow bankruptcy court, my client acts exclusively in the interests of the creditors of the debtor Vitaly Ivanovich Smagin. For this reason, my client, as a trustee of the Alpha Trust, would like to inform you of the effects of bankruptcy proceedings that have been opened in Russia. The Russian insolvency proceedings are very similar to the Liechtenstein bankruptcy proceedings with regard to the bankruptcy effects, whereby the appointed trustee under Russian law has more and more powers depending on the respective stage of the proceedings.

The bankruptcy proceedings opened in Russia are currently in the first stage. At this stage, the appointed trustee is obliged to control the assets of the debtor and his (intended) asset dispositions. After bankruptcy has been opened, no actions should be taken by the debtor that harm the debtor's creditors or that favor certain creditors. This therefore also applies to the payment of any fees from trustees and / or lawyers of the debtor with whom the bankruptcy estate is reduced and these are therefore treated preferentially over other creditors.

The restrictions imposed by law on the debtor in the first stage are standardized in Art. 213[.11 russinsG. According to Art. 213.11 para 5 russinsG, **the debtor is <u>prohibited without the written consent</u> of the trustee to dispose** of assets **of over RUB 50,000.00** (CHF 590.00). This applies in particular to the transfer, acquisition, sale of real estate, securities, stocks and vehicles and transactions that are directly or indirectly related to these processes. In addition, the debtor is prohibited from issuing and / or receiving any loans and / or credits in excess of this amount, issuing sureties and / or guarantees, assigning rights and / or claims, transferring debts and / or property, and setting up trusts. Any deposit orders for movable property and / or encumbrances on real estate also require the written consent of the asset manager.

According to Art. 213.11 Paragraph 5.1 russinsG, the debtor is only allowed to set up a special bank account. **The <u>monthly</u> property dispositions made by the debtor** without the consent of the trustee **may <u>not</u> exceed the amount of RUB 50,000.00** on this bank account. **Disposals of assets from other accounts** (custody accounts) **are** again **permitted** with <u>**the written consent**</u> **of the administrator**. This prohibition also applies to the persons authorized by the joint debtor or those persons who hold assets and / or arrange asset dispositions on behalf of the joint debtor. This restriction therefore also applies to trustees and / or trustees.

As far as my client is aware, the execution proceedings on 08 EX.2016.839 and 08 EX.2016.5802 are intended to enforce the arbitration award of the London Court of International Arbitration (LCIA) of November 11, 2014. According to the current state of knowledge of my client, this involves reclaiming the assets of the Alpha Trust, which is in a Monegasque bank account of the subsidiary Savannah. The debtor intends to transfer these assets to a Liechtenstein account with Kaiser Partner Privatbank AG.

As the trustee of Vitaly Ivanovich Smagin, my client must also determine the economic situation of the debtor and the status of the bankruptcy estate. Subsequently, my client must satisfy the bankruptcy believes of the debtor with the existing bankruptcy estate. However, my client cannot see the economic purpose of the intended transfer of assets from Monaco to Liechtenstein. In this context, my client would also like to emphasize that the debtor may only dispose of assets to his Russian bank accounts at Absolut Bank, Sberbank and Promswjasbank. All other asset transfers are illegal (cf. Art. 213.11 russinsG).

MAITZ
Rechtsanwaltskanzlei

In addition, my client would like to inform you about the fact that on October 12, 2020, the Russian Federal Tax Service filed an application to open bankruptcy proceedings against Ashot Yeghiazaryan at the Moscow Bankruptcy Court. The Russian insolvency law regards all payments that Ashot Yeghiazaryan made to any creditors (including Vitaly Ivanovich Smagin) within six months of the aforementioned application as a creditors' favor (see Art 61.3 russinsG). As a result, Ashot Yegiazaryan's creditors (including the Russian Federal Tax Service) will also contest all of the Alpha Trust's asset dispositions to the debtor Vitaly Ivanovich Smagin and / or to third parties. The intended transfer of assets to Liechtenstein is therefore also illegal for this reason.

As a result, my client is very interested in receiving information on the whereabouts of the assets of the Alpha Trust and other assets of the debtor Vitaly Ivanovich Smagin, so that the bankruptcy creditors can then be proportionately satisfied with these assets. In the second stage of the procedure, the trustee is given the authority to replace the protector of the Alpha Trust (debtor) and to take his place.

A violation of these statutory restrictions is a criminal offense in Russia and also leads to civil liability for the debtor and all other persons involved. Therefore, should dispositions be made with any assets belonging to the bankruptcy estate and / or in the Alpha Trust (including to Kaiser Partner Privatbank AG), which thwart and / or narrow the satisfaction of the bankruptcy creditor, my client feels compelled to call the debtor and the debtor to hold the people involved accountable. This is particularly in view of the fact that the debtor refuses to contact the appointed trustee and apparently intends to move assets at the expense of his bankrupt believers. Such procedures are also punishable in Liechtenstein (cf. § 156ff StGB). In addition, such acts also constitute a criminal offense of money laundering (cf. § 165 StGB), which means that my client also has to report the facts to the public prosecutor's offices in Liechtenstein or other jurisdictions to the Financial Intelligence Unit.

For this reason, on behalf of my client, I ask you to provide any information and documents relating to the assets of Vitaly Ivanovich Smagin. In addition, based on the facts described, no above-mentioned prohibited property dispositions should be made. I made a note of **Thursday, October 29, 2020** for the receipt of your reply.

Kind regards

Mag. Christian Maitz, LL.M

3



Rechtsanwaltskanzlei

<u>Per Einschreiben</u>

An
Herrn RA Mag. Rudolf Schächle
Herrn RA Mag. Raphael Näscher, LL.M.
Pflugstrasse 16
Postfach 635
9490 Vaduz

**Vorab per E-Mail:**  REDACTED
                        REDACTED
                        REDACTED

Ruggell, 15. Oktober 2020

**Vitaly Ivanovich Smagin – Eröffnung eines Konkursverfahrens**

Sehr geehrter Herr Kollege Schächle
Sehr geehrter Herr Kollege Näscher

Eingangs teile ich Ihnen mit, dass ich Herrn Evgenii Nikolaevich Ratnikov, Druzby ul 9, 200 Lyubertsy, 140013, Moskau obl. rechtsfreundlich vertrete.

Bei meinem Mandanten handelt es sich um den am 20. August 2020 vom Konkursgericht Moskau bestellten Masseverwalter von Vitaly Ivanovich Smagin (GZ A 40-17597/20-4-36 F). Dieser ist im russischen staatlichen Register der Masseverwalter unter der Nummer 15827 eingetragen. Die Bekanntmachung über die Konkurseröffnung betreffend den genannten Gemeinschuldner erfolgte sowohl in der russischen Tageszeitung «Kommersant» (Nachrichtennummer 35210028667) als auch im russischen «Einheitlichen Bundesinformationsregister zum Konkurs» (Nachrichtennummer 5370072). Die genauen Informationen der staatlichen Veröffentlichung des Konkurses über den Gemeinschuldner Vitaly Ivanovich Smagin können Sie unter https//bankrot.fedresurs.ru abrufen. Die in Art 213.7 russInsG normierten Voraussetzungen hinsichtlich der Veröffentlichung eines in Russland eröffneten Konkursverfahrens sind damit erfüllt.

Maitz Rechtsanwaltskanzlei
Industriering 14 ● FL-9491 Ruggell
T +423 340 83 00 ● F +423 340 83 17
office@maitz.li



Rechtsanwaltskanzlei

Als Trustees des Alpha Trusts (FL-0002.510.771-1) dürfte Ihnen bekannt sein, dass der zahlungsunfähige und überschuldete Gemeinschuldner in mehreren in Liechtenstein anhängigen Verfahren als betreibende Partei und/oder Kläger auftritt.

Gemäss § 159 ZPO iVm Art 20 Abs 1 KO werden in Liechtenstein durch eine Konkurseröffnung **sämtliche Rechtstreitigkeit**en, in denen ein Gemeinschuldner Partei ist, **ex lege unterbrochen** soweit diese das zur Konkursmasse gehörende Vermögen betreffen (LES 2003, 296). Das gilt auch für hängige Exekutions- und Rechtsmittelverfahren (LES 2017, 215; vgl. Art 51 iVm § 159 ZPO iVm Art 20 Abs 1 KO). Die Unterbrechung tritt zudem ipso facto ein. Der in der Gerichtspraxis gängige **Beschluss über** den Eintritt der **Unterbrechung** wegen Konkurseröffnung hat lediglich **deklarative Wirkung** (GE 2017, 215; LES 2003, 196, Leitsatz a).

Mit der Konkurseröffnung verliert ein Gemeinschuldner nach der liechtensteinischen Rechtslage grundsätzlich die Verwaltungs- und Verfügungsbefugnis über die Konkursmasse und kann keine (Verfahrens-)Handlungen mehr setzen. Zusätzlich tritt in vermögensrechtliche Streitigkeiten an die Stelle des Gemeinschuldners der Masseverwalter namens der Konkursmasse (LES 2007, 280 – Leitsatz a). Allfällige vom Gemeinschuldner erteilte Vollmachten sind mit Eröffnung des Insolvenzverfahrens endgültig erloschen (P. *Bydlinski* in *KBB*[6] § 1024 ABGB Rz 1). Diese eintretenden Konkurswirkungen bei einer Konkurseröffnung darf man bei liechtensteinischen Rechtsanwälten als bekannt voraussetzen.

Mein Mandant möchte in diesem Zusammenhang insbesondere auf Art 1 Z 6 russInsG hinweisen, wonach bei Fehlen internationaler Verträge, Entscheidungen ausländischer Gerichte in Konkursangelegenheiten in Russland auf Grundlage der Gegenseitigkeit anerkannt werden (vgl. OLG Hamburg, Urteil vom 01.03.2018, 6 U 242/15 Rz 56, https://openjur.de/u/2194602.html). Zudem gibt es auch zahlreiche Entscheidungen russischer Gerichte, die aufgrund der bestehenden Gegenseitigkeit liechtensteinische Entscheidungen in Russland anerkannt haben.

Aufgrund der Konkurseröffnung des Gemeinschuldners Vitaly Ivanovich Smagin in Moskau reichte mein Mandant am 11. September 2019 in den liechtensteinischen Verfahren zu 04 CG.2019.5 (vormals 04 CG.2016.115), 08 EX.2016.839 und 08 EX.2016.5802 jeweils einen Antrag auf Unterbrechung ein. Die deklarativen Beschlüsse des jeweils zuständigen Richters in den genannten Verfahren sind noch ausständig.

Als vom Konkursgericht Moskau bestellter Masseverwalter handelt mein Mandant ausschliesslich im Interesse der Gläubiger des Gemeinschuldners Vitaly Ivanovich Smagin. Aus diesem Grund möchte mein Mandant Sie als Trustee des Alpha Trusts über die Wirkungen eines in Russland eröffneten Konkursverfahrens informieren. Das russische Insolvenzverfahren ist betreffend den Konkurswirkungen dem liechtensteinischen Konkursverfahren sehr ähnlich, wobei dem bestellten

**Maitz Rechtsanwaltskanzlei**
Industriering 14 ● FL-9491 Ruggell
T +423 340 83 00 ● F +423 340 83 17
office@maitz.li



Rechtsanwaltskanzlei

Masseverwalter nach russischem Recht abhängig vom jeweiligen Verfahrensstadium immer mehr Kompetenzen zukommen.

Zurzeit befindet sich das in Russland eröffnete Konkursverfahren im ersten Verfahrensstadium. In diesem Stadium ist der bestellte Masseverwalter verpflichtet, das Vermögen des Gemeinschuldners und dessen (beabsichtigte) Vermögensdispositionen zu kontrollieren. Nach erfolgter Konkurseröffnung sollen vom Gemeinschuldner eben keine Handlungen gesetzt werden, die die Gläubiger des Gemeinschuldners schädigen oder bestimmte Gläubiger bevorzugen. Das gilt demzufolge auch um die Begleichung etwaiger Honorare von Trustees und/oder Rechtsanwälten des Gemeinschuldners mit denen die Konkursmasse geschmälert und diese somit bevorzugt vor anderen Gläubigern behandelt werden.

Die dem Gemeinschuldner im ersten Stadium gesetzlich auferlegten Beschränkungen sind in Art 213 ff russInsG normiert. Gemäss Art 213.11 Abs 5 russInsG ist es dem **Gemeinschuldner ohne schriftliche Zustimmung** des Masseverwalters **untersagt**, Vermögensverfügungen **von über RUB 50'000.00** (CHF 590.00) **vorzunehmen**. Das betrifft insbesondere die Übertragung, den Erwerb, die Veräusserung von Immobilien, Wertpapieren, Aktien und Fahrzeugen und mit diesen Vorgängen direkt oder indirekt in Zusammenhang stehen Transaktionen. Zusätzlich ist es dem Gemeinschuldner untersagt, etwaige diesen Betrag übersteigende Darlehen und/oder Kredite auszugeben und/oder zu erhalten, Bürgschaften und/oder Garantien abzugeben, Rechte und/oder Forderungen abzutreten, Schulden und/oder Eigentum zu übertragen sowie Treuhandschaften einzurichten. Etwaige Pfandbestellungen von beweglichen Sachen und/oder Belastungen von Liegenschaften bedürfen ebenfalls der schriftlichen Zustimmung des Masseverwalters.

Entsprechend Art 213.11 Abs 5.1 russInsG ist es dem Gemeinschuldner lediglich erlaubt, ein spezielles Bankkonto einzurichten. Auf diesem Bankkonto dürfen die vom **Gemeinschuldner** ohne Zustimmung des Masseverwalters **getätigten monatlichen Vermögensverfügungen** den Betrag von **RUB 50'000.00 nicht** übersteigen. **Vermögensverfügungen von anderen Konten** (Depots) **dürfen** wiederum der **schriftlichen Zustimmung des Masseverwalters**. Dieses Verbot gilt auch für die vom Gemeinschuldner bevollmächtigten Personen oder jene Personen, die im Auftrag des Gemeinschuldners Vermögen halten und/oder Vermögensdispositionen veranlassen. Somit gilt diese Beschränkung auch für Treuhänder und/oder Trustees.

Nach Kenntnis meines Mandanten soll mit den Exekutionsverfahren zu 08 EX.2016.839 und 08 EX.2016.5802 der Schiedsspruch des London Court of International Arbitration (LCIA) vom 11. November 2014 vollstreckt werden. Dabei geht es nach dem derzeitigen Wissenstands meines Mandanten um eine Rückforderung von Vermögen des Alpha Trusts, welches sich auf einem monegassischen Bankkonto der Tochtergesellschaft Savannah befindet. Der Gemeinschuldner beabsichtigt, diese Vermögenswerte auf ein liechtensteinisches Konto bei der Kaiser Partner Privatbank AG zu überweisen.

**Maitz Rechtsanwaltskanzlei**
Industriering 14 ● FL-9491 Ruggell
T +423 340 83 00 ● F +423 340 83 17
office@maitz.li



Rechtsanwaltskanzlei

Als Masseverwalter von Vitaly Ivanovich Smagin muss mein Mandant auch die wirtschaftliche Lage des Gemeinschuldners und den Stand der Konkursmasse ermitteln. Im Anschluss muss mein Mandant mit der vorhandenen Konkursmasse die Konkursgläubiger des Gemeinschuldners befriedigen. Mein Mandant kann jedoch den wirtschaftlichen Zweck des beabsichtigten Vermögenstransfers von Monaco nach Liechtenstein nicht erkennen. In diesem Zusammenhang möchte mein Mandant zudem hervorheben, dass der Gemeinschuldner ausschliesslich Vermögensdispositionen an seine russischen Bankkonten bei der Absolut Bank, Sberbank und Promswjasbank vornehmen darf. Sämtliche andere Vermögenstransfers sind rechtswidrig (vgl Art. 213.11 russInsG).

Zusätzlich möchte mein Mandant Sie über den Umstand informieren, dass der russische Föderale Steuerdienst am 12. Oktober 2020 einen Antrag auf Eröffnung des Konkursverfahrens betreffend Ashot Yeghiazaryan beim Konkursgericht Moskau einreichte. Das russische Insolvenzgesetz betrachtet sämtliche Zahlungen, die Ashot Yeghiazaryan innerhalb von sechs Monaten vor der genannten Antragsstellung an etwaige Gläubiger (einschliesslich Vitaly Ivanovich Smagin) tätigte, als Gläubigerbegünstigung (vgl. Art 61.3 russInsG). Demzufolge werden die Gläubiger von Ashot Yegiazaryan (einschliesslich der russische Förderale Steuerdienst) ebenfalls sämtliche Vermögensdispositionen des Alpha Trusts an den Gemeinschuldner Vitaly Ivanovich Smagin und/oder an Dritte anfechten. Der beabsichtigte Vermögenstransfer nach Liechtenstein ist daher auch aus diesem Grund rechtswidrig.

Demzufolge ist mein Mandant sehr daran interessiert, Informationen über den Verbleib der Vermögenswerte des Alpha Trusts und anderem Vermögen des Gemeinschuldners Vitaly Ivanovich Smagin zu erhalten, um daraufhin die anteilsmässige Befriedigung der Konkursgläubiger aus diesem Vermögen vornehmen zu können. Im zweiten Verfahrensstadium erhält der Masseverwalter die Kompetenz, den Protektor des Alpha Trusts (Gemeinschuldner) auszutauschen und an seine Stelle zu treten.

Ein Verstoss gegen diese gesetzlich normierten Beschränkungen ist in Russland strafbar und führt auch zu einer zivilrechtlichen Haftung für den Gemeinschuldner und allen anderen daran beteiligten Personen. Sollten daher Dispositionen mit etwaigen zur Konkursmasse gehörenden und/oder im Alpha Trust befindlichen Vermögenswerten (ua an die Kaiser Partner Privatbank AG) vorgenommen werden, welche die Befriedigung der Konkursgläubiger vereitelt und/oder schmälert, sieht sich mein Mandant gezwungen, den Gemeinschuldner und die daran beteiligten Personen zur Verantwortung zu ziehen. Dies insbesondere unter dem Gesichtspunkt, dass sich der Gemeinschuldner weigert, mit dem bestellten Masseverwalter in Kontakt zu treten und offenbar beabsichtigt, zu Lasten seiner Konkursgläubiger Vermögensverschiebungen vorzunehmen. Auch in Liechtenstein sind derartige Vorgehensweisen strafbar (vgl. § 156ff StGB). Darüber hinaus erfüllen solche Handlungen auch den Straftatbestand der Geldwäscherei (vgl § 165 StGB), womit mein Mandant zusätzlich zur



Rechtsanwaltskanzlei

Sachverhaltsdarstellung an die Staatsanwaltschaften in Liechtenstein oder anderen Jurisdiktionen auch eine Meldung bei der Stabstelle Financial Intelligent Unit erstatten müsste.

Aus diesem Grund ersuche ich Sie im Namen meines Mandanten, etwaige Informationen und Dokumente betreffend die Vermögenswerte von Vitaly Ivanovich Smagin zur Verfügung zu stellen. Darüber hinaus sollten aufgrund der geschilderten Tatsachen keine oben genannten verbotenen Vermögensdispositionen vorgenommen werden. Für das Einlangen Ihres Antwortschreibens habe ich mir **Donnerstag, den 29. Oktober 2020** vorgemerkt.

Mit freundlichen kollegialen Grüssen

Mag. Christian Maitz, LL.M.

**Maitz Rechtsanwaltskanzlei**
Industriering 14 ● FL-9491 Ruggell
T +423 340 83 00 ● F +423 340 83 17
office@maitz.li