```
                              FILED
                     CLERK, U.S. DISTRICT COURT

                     03/29/2021

                 CENTRAL DISTRICT OF CALIFORNIA
                 BY:      SW      DEPUTY
```

1    Authorities, as well as the pleadings and papers on file in this action and any and

2    all documents properly before this Court at the time of the hearing.

3    Dated: _March 29, 2021 _____

4                                        Ashot Egiazaryan

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff seeks civil RICO remedies for alleged injuries arising from his efforts to collect a $92 million judgment that accrues interest at $20,000 a day, from a trust funded with $188 million, based on his alleged inability collect from Egiazaryan's assets that Russia attached for Plaintiff's benefit and from the trust, as well as other funds alleged to have been placed beyond Plaintiff's reach.

Many of the alleged predicate acts and injuries occurred more than four years before the filing of the complaint, and thus any civil RICO claims would be barred by the applicable statute of limitations. For any predicate acts and injuries that might not be time-barred, Plaintiff lacks standing because he cannot show that he has in fact been injured, or that Egiazaryan has caused him any injury, given that his $130 million judgment grows $20,000 each day but remains secured by the attachment of property in Russia and the $188 million trust.

The complaint also fails to state a claim for relief given that the alleged predicate acts do not constitute "racketeering activity" under the any of the statutes used to define that term in RICO. Finally, the complaint fails to meet the pleading standards of Rule 8 and Rule 9. The complaint and the action should be dismissed.

### II.   ALLEGATIONS OF COMPLAINT

All descriptions of the complaint are made for the purposes of explaining why this action should be dismissed, and do not constitute agreement, disagreement, admission, or denial of any of the allegations of the complaint. The specific allegations are discussed below under the relevant ground for dismissal.

### III.   THE ACTION SHOULD BE DISMISSED

#### A.   The claims should be dismissed for any conduct occurring outside the United States.

Given the presumption that civil RICO statutes do not have extraterritorial effect unless the predicate acts have extraterritorial effect, the complaint should be

1   dismissed with respect to all foreign injury claims.  See RJR Nabisco, Inc. v.
2   European Community, 136 S. Ct. 2090 (2016); City of Almaty v. Khrapunov, 956
3   F.3 1129, 1131-34 (9th Cir. 2020).  The complaint fails to allege a domestic injury
4   with respect to the Alpha Trust.  The gist of the complaint is that Egiazaryan placed
5   the Kerimov Settlement payment in a Monaco bank account of a Nevis corporation
6   owned by a Liechtenstein trust settled by Egiazaryan.

7       Plaintiff obtained a money judgment in Liechtenstein that Plaintiff alleges
8   is secured by attachment of Egiazaryan's rights in the trust as well as a Russian
9   judgment that is secured by attachment of Egiazaryan's rights in his property
10  located in Russia.  Plaintiff alleges that Egiazaryan and the other defendants have
11  taken steps in Liechtenstein, Nevis, and Monaco to frustrate his ability to collect
12  on the judgment from the trust assets.  Notwithstanding that the complaint alleges
13  that this overseas activity caused an injury to the California Judgment, it is the
14  Liechtenstein judgment that is secured by the trust and which was allegedly
15  injured.  Thus, this does not state a claim for a domestic injury and should be
16  dismissed.

17      The complaint alleges an injury to Plaintiff's California Judgment, but links
18  that injury primarily to the Alpha Trust.  There are a few references to other
19  predicate acts, such as an alleged funneling of $17 million in London real estate
20  sale proceeds to Egiazaryan's cousin Suren and the payment of $20 million to
21  Suren.  As described below, these claims fail for other reasons.

22      **B.    The claims relating to placing the Kerimov settlement into a trust**
23          **should be dismissed.**

24          *a.  These claims are barred by the applicable statute of limitations.*

25      Civil RICO claims are subject to a four-year statute of limitations.  The
26  action accrues when the plaintiff has either actual or constructive notice of the
27  injury, i.e., that plaintiff knows or should know of the injury.  Pincay v. Andrews,
28  238 F.3d 1106, 1108 (9th Cir. 2001); Grimmett v. Brown, 75 F.3d 506, 610 (9th

4

1    Cir. 1996).

2         The complaint first seeks to recover "$90 million (plus legal interest)" (¶ 4),

3    which has already been reduced to judgments issued in this district ("California

4    Judgment") (¶ 28) and Liechtenstein (¶ 29) based on a November 11, 2014

5    arbitration award ("London Award") (¶ 27).  Plaintiff alleges that Defendants

6    caused an injury to the California Judgment by acts that prevented and delayed

7    Plaintiff from collecting on the judgment including the concealment and

8    transferring away of assets that could be used to satisfy the judgment, giving rise

9    to civil RICO claims (¶¶ 136, 143).  On December 22, 2014, in this District,

10   Plaintiff sought and obtained, based on an alleged "**pattern and practice** of

11   concealing beneficial ownership of assets by holding them in the name of foreign

12   nominee persons," a temporary and preliminary injunctive freeze of the assets of

13   Egiazaryan, "specifically and without limitation the amounts received or to be

14   received by Respondent Yegiazaryan, his agents or any person or entity acting

15   under his direction and control in payment or satisfaction of an **arbitration award**

16   **from Suleyman Kerimov**" ("Kerimov Award").  (¶¶ 41-45 (emphasis added).)

17        On February 9, 2016, Plaintiff learned of a settlement payment with respect

18   to the Kerimov Award and an alleged "scheme to hide Ashot's assets in the U.S.

19   by using shell companies . . . ."  (¶ 58.)  Fifteen days later, when obtaining the

20   award-confirmation judgment in Liechtenstein, Plaintiff also obtained the

21   attachment of Egiazaryan's claims for distribution or repayment from the Alpha

22   Trust (that indirectly hold the Kerimov settlement payment).  (¶ 29, Ex. 3.)

23        Smagin says that he "has been injured in his inability to collect this massive

24   judgment and interest on the judgment; he has incurred millions of dollars in

25   attorney's fees litigating actions around the world against Mr. Egiazaryan, CMB

26   and their nominees (including hundreds of thousands of dollars in fees for legal

27   proceedings in the Central District of California)."  (¶ 5.)  More particularly,

28   Smagin says that he was injured by Egiazaryan's receipt and allegedly improper

1    concealment of the $180 million recovery on the Kerimov Award that is held by
2    the Alpha Trust and Savannah Advisors. (¶¶ 1-5, 11-13, 15-17, 19-21, 30-31, 33-
3    34, 41-58, 62, 64-126, 129-131, 133-136, 140-143.)

4         Plaintiff, however, did not bring this action until more than four years after
5    he was allegedly injured by how the Kerimov settlement payment was received
6    and more than four years after he learned of this alleged injury. These claims are
7    time barred. (Although overt acts occurring during the limitations period may give
8    to a new RICO claims, damages may not be recovered or injuries sustained for
9    acts occurring before the limitations period. Grimmett, 75 F.3d at 512.)

10         *b. Plaintiff lacks standing because he fails to show any injury.*

11         To show standing, Plaintiff must show that he sustained injury caused by
12    Egiazaryan's violation of § 1961. See 18 U.S.C. § 1964(c); Bridge v. Phoenix
13    Bond & Indem. Co., 553 U.S. 639, 654 (2008). With respect to the California
14    Judgment, Plaintiff would need to show that it is uncollectible in whole or part.
15    According to the complaint, Egiazaryan placed $188 million in the Alpha Trust
16    (¶ 33) and the Liechtenstein courts have attached Egiazaryan's rights in the Alpha
17    Trust and have authorized Plaintiff to seize and exercise rights in the trust (¶¶ 29-
18    31). Further, the Russian judgment for the same debt has attached to assets in
19    Russian. (¶ 53.) The complaint does not allege that the trust (or Russian collateral)
20    is insufficient to satisfy Plaintiff's judgment (which has grown to $130 million
21    (¶ 50)) and thus no injury to the judgment is alleged. Plaintiff lacks standing.

22         *c. Plaintiff fails to show any loss.*

23         For similar reasons, Plaintiff's fails to show any losses with respect to the
24    California Judgment (including accruing interest and any legal expenses to which
25    Plaintiff might be entitled) or with respect to the extensive property (i.e., cash)
26    securing the judgment (i.e., that it has been doing down in value). Without loss or
27    damage, there is no civil RICO claim. First Nationwide Bank v. Gelt Funding
28    Corp., 27 F.3d 763, 768 (2d Cir. 1994) (loss cannot be established until defrauded

1    lender determines what is collectible and what is not).

2      The claim that the California Judgment was injured in the form of lost

3    interest is belied by the 8% interest added each day, in the amount of $20,000.

4      The other components of alleged damages are too speculative and remote

5    under RICO.  Plaintiffs are not entitled to lost opportunity costs such as speculative

6    profits or the "loss of use or enjoyment" of cash.  See id. at 769-70 ("risk of loss'

7    is not injury under RICO); In re Taxable Mun. Bond Sec. Litig., 51 F.3d 518, 522

8    (5th Cir. 1995) (farmer's "lost opportunity" to obtain loan insufficient to constitute

9    RICO injury); Grantham & Mann, Inc. v. Am. Safety Prods., Inc., 831 F.2d 596,

10   604-06 (6th Cir. 1987) (plaintiff failed to show actual lost profits).

11    **C.**  **Claims for alleged predicate acts during the past four years also**

12      **should be dismissed.**

13      *a.*  *The claims based on predicate acts during the past four years fail*

14       *to state a claim because the alleged amount of loss cannot be*

15       *established.*

16     Plaintiff contends that Defendants have continued frustrate his efforts to

17   collect his California Judgment.  But the alleged amount of his loss, if any, cannot

18   be established until it is determined whether the property subject to attachment for

19   his judgment is sufficient to satisfy the judgment or to what extent it is not.

20   Similarly, the other forms of relief requested---legal fees and costs---are similarly

21   not subject to final determination.  First Nationwide Bank, 27 F.3d at 768.

22      *b.*  *The alleged conduct during the past four years does not constitute*

23       *predicate acts under RICO.*

24     Plaintiff alleges that Egiazaryan and others obstructed justice in

25   Liechtenstein and other non-U.S. courts in violation of RICO. (¶¶ 2, 4, 10, 17-19,

26   31-32, 58, 69-72, 73-77, 79, 80-82, 83, 85-88, 89-97, 109-110, 111-113, 116, 117-

27   122, 126.)  The statute governing obstruction for RICO purposes, however, does

28   not apply to courts other than courts of the United States.  Capasso v. CIGNA Ins.

1   Co., 765 F. Supp. 839, 843 (S.D.N.Y. 1991).

2       Plaintiff alleges that the initiation of actions in other jurisdictions by other

3   defendants constitutes predicate acts for his RICO claims.  Malicious prosecution

4   is not a RICO predicate act.  Id. at 843 n.2.

5       Plaintiff alleges that Egiazaryan and other defendants submitted false

6   documents to various courts.  Perjury, like malicious prosecution, is not a predicate

7   act.  Id. at 840 n.1.

8       Improper submissions to Courts of the United States are governed by their

9   own rules, including Rule 11, 28 U.S.C. § 1927, and court's inherent contempt

10  powers.  They are not predicate acts subject to civil RICO claims.

11          *c.   The mail fraud and wire fraud claims are not adequately pled with*

12              *particularity.*

13      Rule 9(b) applies to civil RICO claims based on predicate acts of fraud.

14  Edwards v. Marin Park, Inc., 356 F.3d 1068, 1066 (9th Cir. 2004).   Fraud

15  allegations based on "information and belief" remain subject to Rule 9(b)'s

16  particularity requirement and must set forth the source of the information and the

17  facts on which the belief is founded.  Neubronner v. Milken, 6 F3d 666, 672 (9th

18  Cir. 1993); United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d

19  220, 226 (1st Cir. 2004).  Even the elements not subject to Rule 9(b)'s particularity

20  requirement can require more factual detail when stating a more complex claim

21  such as a civil RICO claim, to meet the standing of showing plausibility.  See

22  Eclectic Props. E., LLC v. Marcus & Millichap Co. 751 F3d 990, 997-98 (9th Cir.

23  2014).

24      The RICO statute requires a showing that the defendant participated in

25  (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a

26  pattern (4) of racketeering activity.  18 U.S.C. § 1962(c).

27      Racketeering activity, the fourth element, requires predicate acts.  Here,

28  Plaintiff fails to adequately plead the requirements of mail fraud and wire fraud

1  under 18 U.S.C. §§ 1341 and 1343. Each predicate violation contains three
2  elements: (1) the formation of a scheme to defraud, (2) the use of the mails or
3  wires in furtherance of that scheme, and (3) the specific intent to defraud. As noted
4  above, there must be a showing of harm and that the defendant's conduct was the
5  proximate cause of harm.   In other words, that someone relied on the
6  misrepresentation or fraudulent act. Bridge v. Phoenix Bond & Indem. Co., 553
7  U.S. 639, 654 (2008).

8       Plaintiff uses "information and belief" at least 18 times in his complaint,
9  and rarely does it provide the facts supporting the belief or the source of the
10 information.

11       "On information and belief, [Suren] is being compensated by
12  Mr. Yegiazaryan to do these things for the criminal enterprise run by
13  Mr. Yegiazaryan." (¶ 8.)

14       "On information and belief, [Artem] is being compensated by
15  Mr. Yegiazaryan to do these things for the criminal enterprise run by
16  Mr. Yegiazaryan." (¶ 9.)

17       "On information and belief, [Stephan] is being compensated by
18  Mr. Yegiazaryan to do these things for the criminal enterprise run by
19  Mr. Yegiazaryan." (¶ 10.)

20       "On information and belief, [Vitaly Gogokhia] is being compensated
21  by Mr. Yegiazaryan to do these things for the criminal enterprise run by
22  Mr. Yegiazaryan." (¶ 11.)

23       "On information and belief, [Natalia Dozortseva] is being paid by
24  Mr. Yegiazaryan to do these things for the criminal syndicate run by
25  Mr. Yegiazaryan." (¶ 12.)

26       "But, on information and belief, under this false color of authority,
27  Ratnikov [Evgeny Nikolaevich] has colluded with Mr. Yegiazaryan, and
28  Ratnikov has attempted to intervene in Plaintiff's legal proceedings in the

United States, Liechtenstein and Monaco for the purpose of delaying Plaintiff's enforcement efforts in each.  On information and belief, he is being paid by Mr. Yegiazaryan to do these things for the criminal syndicate run by Mr. Yegiazaryan."  (¶ 14.)

"On information and belief, Thielen is being paid by Mr. Yegiazaryan to do these things for the criminal enterprise run by Mr. Yegiazaryan." (¶ 15.)

"On information and belief, CMB Bank is taking direction from and being paid by Mr. Yegiazaryan to do these things for the criminal syndicate run by Mr. Yegiazaryan, including, but not limited to Mr. Yegiazar[y]an paying CMB Bank's legal fees in the Monaco proceeding brought by Plaintiff and the Alpha Trustees."  (¶ 16.)

"On information and belief, Prestige is being paid by Mr. Yegiazaryan to do these things for the criminal enterprise run by Mr. Yegiazaryan." (¶ 17.)

"On information and belief, Ryals is being paid by Mr. Yegiazaryan to do these things for the criminal syndicate run by Mr. Yegiazaryan." (¶ 18.)

"Suren is the funding source for Mr. Yegiazaryan and his criminal enterprise and on information and belief he funds Mr. Yegiazaryan in whole or in part from this entity."  (¶ 22.)

"On information and belief, all of Ashot Yegiazaryan's, Suren Yegiazaryan's and Artem Yegiazaryan's acts have been committed in and for and/or directed from California."  (¶ 24.)

"[O]n information and belief, CMB Bank was handsomely paid to join the Mr. Yegiazaryan's criminal enterprise as the "bag man," to wit, the agent that would hold collect and distribute the proceed of Mr. Yegiazaryan's illicit scheme(s). . . .  On information and belief, Mr. Yegiazaryan stood at the time, and stands to this day, as one of CMB Bank's largest and most

1   profitable clients, accounting for approximately 20% of CMB Bank's annual

2   holdings." (¶ 54.)

3        "On information and belief, this letter was sent as a deliberate

4   falsehood and was sent as part of Mr. Yegiazaryan's scheme to defraud the

5   court, delay the legal proceedings, and further the goals and purpose of the

6   Yegiazaryan syndicate." (¶ 89.)

7        "On information and belief, this letter was sent as a deliberate

8   falsehood and was sent as part of Mr. Yegiazaryan's scheme to defraud the

9   court, delay the legal proceedings, and further the goals and purpose of the

10   Yegiazaryan syndicate." (¶ 91.)

11        "On information and belief, Ratnikov is colluding with Mr.

12   Yegiazaryan to try to reduce or nullify his debt and judgments to Plaintiff

13   Smagin." (¶ 113.)

14        "On information and belief, Mr. Yegiazaryan put the Ratnikov

15   Notification Letter in Dozortseva's hands as part of his coordination of the

16   enterprise efforts to thwart Plaintiff Smagin." (¶ 117.)

17   The complaint must remedy these deficiencies, if leave to amend were granted.

18       **D.**    **The claims relating to the alleged receipt of overseas real estate**

19           **proceeds should be dismissed.**

20          *a. These claims are barred by the applicable statute of limitations.*

21        Plaintiff contends that that he was injured by Egiazaryan's alleged funneling

22   almost $17 million, from 2014 real estate sales, into the United States through

23   various companies held in his cousin Suren Egiazaryan's name and transfer of $20

24   million to his Suren in or before 2012, but Plaintiff also learned of these alleged

25   injuries in or no later than February 2016, more than four years before this action

26   was filed. (¶¶ 59-60.) Any claims for these alleged predicate acts are time barred.

27

28

1     **E.**     **The claims relating to alleged witness tampering should be**
2             **dismissed.**

3          *a. Plaintiff lacks standing.*

4         To show standing, Plaintiff must show that he sustained injury as a result of

5 Egiazaryan's violation of § 1961. <u>See</u> 18 U.S.C. § 1964(c). The complaint,

6 however, fails to show that Plaintiff was injured by the alleged witness tampering

7 of a treating physician. (¶¶ 101-102, 129(o), 133, 142.) The complaint contains

8 no explanation for how or to any extent Plaintiff was harmed. Egiazaryan was in

9 contempt of court and subject to daily fines before the alleged event and the

10 complaint does not allege that anything has changed, or was prevented from

11 changing, as a result of the alleged witness tampering.

12          *b. The complaint fails to adequately plead witness tampering.*

13         The complaint states that Plaintiff "believes" that Egiazaryan engaged in

14 witness tampering in solely conclusory terms, without any facts or detail showing

15 that the claim is plausible. (¶ 102.) To state a plausible RICO claim, a complaint

16 must contain "more than labels and conclusions" or "formulaic recitations of the

17 elements of a cause of action." <u>Eclectic Properties. East</u>, 751 F.3d at 995-96.

18     **F.**     **Without a viable § 1962(c) claim, the § 1962(d) conspiracy claim**
19             **also fails.**

20         For the reasons set forth above, the first claim for relief fails. As a result,

21 the second claim for relief based on conspiracy also fails. <u>Simon v. Value</u>

22 <u>Behavioral Health, Inc.</u>, 208 F.3d 1073, 1084 (9th Cir. 2000), <u>amended</u>, 234 F.3d

23 428 (9th Cir. 2000), <u>overruled on other grounds by</u> Odom v. Microsoft Corp., 486

24 F.3d 541 (9th Cir. 2007).

25 **IV. CONCLUSION**

26         For the reasons set forth above, the action should be dismissed.

27 Dated: _March 29, 2021

28                             Ashot Egiazaryan