**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| VITALY IVANOVICH SMAGIN,<br>　　　*Plaintiff-Appellant*,<br><br>　　　v.<br><br>ASHOT YEGIAZARYAN, AKA Ashot Egiazaryan, an individual; COMPAGNIE MONÉGASQUE DE BANQUE, AKA CMB Bank; NATALIA DOZORTSEVA, an individual; ARTEM EGIAZARYAN, an individual; VITALY GOGOKHIA, an individual; MURIELLE JOUNIAUX, an individual; RATNIKOV EVGENY NIKOLAEVICH, an individual; PRESTIGE TRUST COMPANY, LTD.; H. EDWARD RYALS, an individual; ALEXIS GASTON THIELEN, an individual; STEPHAN YEGIAZARYAN, AKA Stephan Egiazarian, an individual; SUREN YEGIAZARYAN, AKA Suren Egiazaryian, an individual,<br>　　　*Defendants-Appellees*. | No. 21-55537<br><br>D.C. No.<br>2:20-cv-11236-<br>RGK-PLA<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 6, 2022
Pasadena, California

Filed June 10, 2022

Before: Mary M. Schroeder and Susan P. Graber, Circuit Judges, and Stephen M. McNamee,[*] District Judge.

Opinion by Judge Graber

## SUMMARY[**]

### RICO

The panel reversed the district court's dismissal, for lack of statutory standing, of a civil action under the Racketeer Influenced and Corrupt Organizations Act and remanded for further proceedings.

Plaintiff Vitaly Smagin, a Russian citizen who resides in Russia, filed a civil RICO suit against Ashot Yegiazaryan, a Russian citizen who resides in California, and eleven other defendants. After securing a foreign arbitration award against Ashot, Smagin obtained a judgment from a United States district court confirming the award and giving Smagin the rights to execute on that judgment in California and to pursue discovery. Smagin alleged that defendants engaged

---

[*] The Honorable Stephen M. McNamee, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

in illegal activity, in violation of RICO, to thwart the execution of that California judgment.

Consistent with the Second and Third Circuits, but disagreeing with the Seventh Circuit's residency-based test for domestic injuries involving intangible property, the panel held that the alleged injuries to a judgment obtained by Smagin from a United States district court in California were domestic injuries to property such that Smagin had statutory standing under RICO. The panel concluded that, for purposes of standing under RICO, the California judgment existed as property in California because the rights that it provided to Smagin existed only in California. In addition, much of the conduct underlying the alleged injury occurred in, or was targeted at, California.

## COUNSEL

Alexander D. Burch (argued), Baker & McKenzie LLP, Houston, Texas; Barry J. Thompson, Baker & McKenzie LLP, Los Angeles, California; Nicholas O. Kennedy, Baker & McKenzie LLP, Dallas, Texas; for Plaintiff-Appellant.

Michael C. Tu (argued) and Peter J. Brody, Cooley LLP, Santa Monica, California, for Defendant-Appellee Compagnie Monégasque de Banque.

David J. Stein (argued), Masuda Funai Eifert & Mitchell Ltd., Chicago, Illinois; Asa Markel, Masuda Funai Eifert & Mitchell Ltd., Torrance, California; for Defendant-Appellee Alexis Gaston Thielen.

Ashot Yegiazaryan (argued), Beverly Hills, California, pro se Defendant-Appellee.

## OPINION

GRABER, Circuit Judge:

Plaintiff Vitaly Smagin, a Russian citizen who resides in Russia, filed a civil suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, against Defendant Ashot Yegiazaryan ("Ashot"), a Russian citizen who resides in California, and eleven other defendants.[1] After securing a foreign arbitration award against Ashot, Plaintiff obtained a judgment from a United States district court confirming the award and giving Plaintiff the rights to execute on that judgment in California and to pursue discovery. Plaintiff alleges that Defendants engaged in illegal activity, in violation of RICO, to thwart the execution of that California judgment. On appeal, we are asked to decide whether the alleged injuries to a judgment obtained by Plaintiff from a United States district court in California are domestic injuries such that Plaintiff has statutory standing under RICO. We conclude that Plaintiff alleges a domestic injury, reverse the district court's dismissal of the complaint, and remand for further proceedings.

## BACKGROUND

Plaintiff's allegations span decades and continents. As alleged, the chief architect of Plaintiff's woes is Defendant

---

[1] Plaintiff asserts that the alleged RICO enterprise comprised (1) Compagnie Monegasque De Banque ("CMB Bank"); (2) Ashot Yegiazaryan; (3) Suren Yegiazaryan; (4) Artem Yegiazaryan; (5) Stephan Yegiazaryan; (6) Natalia Dozortseva; (8) Murielle Jouniaux; (9) Alexis Gaston Thielen; (10) Ratnikov Evgeny Nikolaevich; (11) H. Edward Ryals; and (12) Prestige Trust Company, Ltd. For simplicity, we will refer to Defendant Ashot Yegiazaryan as Ashot.

Ashot Yegiazaryan. Between 2003 and 2009, Ashot and others used a series of fraudulent transactions to steal Plaintiff's shares in a joint real estate investment in Moscow, Russia. In 2010, Russian authorities criminally indicted Defendants Ashot and Artem Yegiazaryan in Russia for that fraud. The pair fled to California. They now live in Beverly Hills, in a home owned by Ashot's cousin, Defendant Suren Yegiazaryan.

Also in 2010, Plaintiff commenced arbitration proceedings in London, U.K., against Ashot for his alleged fraudulent actions and for his attempts to conceal the fraud. In November 2014, the arbitration panel rendered a final award in Plaintiff's favor and against Ashot in the amount of $84 million ("London Award").

Plaintiff then filed an enforcement action in the Central District of California to confirm and enforce the London Award against Ashot. In December 2014, a district judge confirmed the London Award and entered a judgment against Ashot under Federal Rule of Civil Procedure 58 ("California Judgment"). The district judge entered the California Judgment pursuant to the New York Convention, also known as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The Federal Arbitration Act provides that the New York Convention is enforceable in the United States and that federal district courts have original jurisdiction of actions falling under the Convention. 9 U.S.C. §§ 201–209; *China Nat'l Metal Prods. Imp./Exp. Co. v. Apex Digit., Inc.*, 379 F.3d 796, 799 (9th Cir. 2004).

On December 23, 2014, the district court entered a temporary protective order freezing Ashot's assets in California. That order specifically referenced assets that Ashot may receive in the future, related to an arbitration

dispute between Ashot and Suleymon Kerimov. In February 2015, that temporary order was converted into a preliminary injunction with the same terms.

In May 2015, Ashot settled the arbitration dispute against Suleymon Kerimov for $198 Million ("Kerimov Award"). Plaintiff alleges in this action that, in order to avoid using these funds to pay the London Award, which also would satisfy the California Judgment, Ashot "create[d] a web of offshore entities and a complex ownership structure to secret the Kerimov Award settlement proceeds and avoid [the district] court's reach."

Many of the alleged components of Ashot's scheme occurred outside the United States. For example, Plaintiff alleges that Ashot received the Kerimov Award through his attorneys in London; established a trust in Lichtenstein to hold proceeds from the Kerimov Award ("the Alpha Trust"); purchased a business incorporated in Nevis to create additional layers of complexity; established a bank account in Monaco with Defendant CMB Bank for that Nevis corporation; and then moved the funds from the Alpha Trust to that bank account.

But Plaintiff also alleges numerous RICO activities involving domestic entities and property in the United States. For example, Plaintiff alleges that, as a part of keeping the settlement proceeds out of the California district court's reach, Ashot, with the help of others, developed a scheme to hide assets in the United States by using shell companies owned by Suren and other members of the Yegiazaryan family. The shell companies included Clear Voices, Inc., a Nevada company "created by Suren Yegiazaryan, but controlled by Ashot Yegiazaryan, for the purpose of sheltering Ashot Yegiazaryan's U.S. assets from his creditors."

Plaintiff also alleges that Ashot schemed to have associates file fraudulent claims against him in foreign jurisdictions so that they could obtain sham judgments that were designed to compete with the California Judgment. On April 1, 2020, the district court issued an order stating that Ashot, Defendant Suren Yegiazaryan, and others acting on behalf of Ashot "must immediately cease all actions in Nevis or any other jurisdiction that would prevent, hinder, or delay [Plaintiff's] ability to collect on the assets of the Alpha Trust pursuant to the current and forthcoming orders of the Liechtenstein Court or this Court." On July 9, 2020, the district court issued another order that prohibited Ashot from making further modifications to the Alpha Trust or to the administration of the bank account opened with CMB Bank without first obtaining court approval. On September 16, 2020, the district court found Ashot in contempt for violating the previous two orders.

Plaintiff further alleges that, in an attempt to avoid following the district court's orders, Ashot submitted to the district court in California a doctor's note that Plaintiff believed to be forged. Plaintiff alleges that, when Plaintiff attempted to depose the California doctor who wrote the note, Ashot used "intimidation, threats, or corrupt persuasion" to influence the doctor to avoid service of the subpoena so as to prevent her from providing evidence to the district court.

On December 11, 2020, Plaintiff filed his complaint in this case. The complaint contains two claims against all Defendants: (1) a substantive RICO claim of participating in a criminal enterprise in violation of 18 U.S.C. § 1962(c) and (2) a RICO conspiracy claim of conspiring to participate in a criminal enterprise in violation of 18 U.S.C. § 1962(d). Plaintiff alleges that Defendants' illegal conduct has harmed

his property, namely, the California Judgment, through the delay and loss of opportunity to execute on the judgment. On May 5, 2021, the district court dismissed the complaint on the ground that Plaintiff "fail[ed] to adequately plead a domestic injury in support of his two RICO claims."

Plaintiff timely appeals.

## STANDARD OF REVIEW

We review de novo a district court's dismissal of a complaint for failure to plead statutory standing. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004). We accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in Plaintiff's favor. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013).

## DISCUSSION

RICO provides a private right of action for persons pursuing civil remedies. Specifically, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue [] in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). To have statutory standing, "a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was by reason of the RICO violation, which requires the plaintiff to establish proximate causation." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118–19 (9th Cir. 2017) (quoting *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008)) (internal quotation marks omitted).

In *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016), the Supreme Court held that there is an additional standing requirement for the alleged harm to business or

property. The Court explained that, although RICO may have some extraterritorial effects, the statute's private right of action does not overcome the presumption against extraterritoriality. "A private RICO plaintiff therefore must allege and prove a *domestic* injury to its business or property." *Id.* The Court offered no further explanation of what constitutes a domestic injury. *See id.* at 354 ("The application of this rule in any given case will not always be self-evident, as disputes may arise as to whether a particular alleged injury is 'foreign' or 'domestic.' But we need not concern ourselves with that question in this case.").

"A judgment is property . . . ." *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 352 (9th Cir. 1999). It provides legal rights to a judgment creditor, including the right to have the judgment enforced by a writ of execution in a manner that "accord[s] with the procedure of the state where the court is located" and the right to "obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a); *see also* JUDGMENT CREDITOR, Black's Law Dictionary (11th ed. 2019) ("A person having a legal right to enforce execution of a judgment for a specific sum of money."); Restatement (Second) of Judgments § 18 cmt. c (1982) ("A judgment for the plaintiff awarding him a sum of money creates a debt in that amount in his favor. He may maintain proceedings by way of execution for enforcement of the judgment.").

The nature of a domestic judgment is unaffected by the fact that it confirms a foreign arbitration award. Once a foreign arbitration award is confirmed by a federal district court under the New York Convention, "the judgment has the same force and effect of a judgment in a civil action and

may be enforced by the means available to enforce any other judgment." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011).

The key question, then, is *where* the California Judgment exists as property. We have previously concluded that "the location of intangible property varies depending on the purpose to be served" by that property. *See Off. Depot Inc. v. Zuccarini*, 596 F.3d 696, 702 (9th Cir. 2010) (noting that "attaching a situs to intangible property is necessarily a legal fiction; therefore, the selection of a situs for intangibles must be context-specific, embodying a common-sense appraisal of the requirements of justice and convenience in particular conditions." (internal quotation marks omitted)).

We conclude that, for purposes of standing under RICO, the California Judgment exists as property in California. The rights that the California Judgment provides to Plaintiff exist only in California, the place where he can obtain a writ of execution against or obtain discovery from Ashot. Indeed, Plaintiff obtained the judgment in California precisely because Ashot resides in California, and that is where Plaintiff desires to exercise the rights conferred by the California Judgment. It would make no sense to conclude that the California Judgment exists as property in Russia, because the judgment grants no rights whatsoever to Plaintiff in Russia.

Our conclusion is bolstered by the fact that much of the conduct underlying the alleged injury also occurred in, or was targeted at, California. As noted, Plaintiff alleges that Defendants corruptly and illegally prevented him from executing the judgment by, among other things, filing false documents in the California court; intimidating a witness who resides in California; and directing, from California, a

SMAGIN V. YEGIAZARYAN 11

scheme to funnel millions of dollars into the United States through various companies, including a U.S.-based company that Ashot effectively controlled. Plaintiff also alleges that Ashot had associates file fraudulent claims against him in various jurisdictions in order to obtain sham judgments that were designed to compete with the California Judgment. Those alleged illegal acts were designed to subvert Plaintiff's rights that are executable in California. Accordingly, the alleged harm to Plaintiff's rights under the California Judgment constitutes a domestic injury.

Our conclusion comports with our prior case law. We have discussed domestic injuries under RICO only once in the years since the Supreme Court issued *RJR Nabisco*. In *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1130–31 (9th Cir. 2020), the plaintiff, a city in Kazakhstan, alleged that the defendants, citizens of Kazakhstan who resided in California, violated RICO by rigging auctions of public properties in Kazakhstan and then laundering money into property in the United States. The plaintiff asserted that its alleged domestic injury was the city's voluntary expenditure of funds to track down the stolen property, which was now in the United States. *Id.* at 1132. We concluded that this alleged injury was not an independent harm, but "a mere downstream effect of the Khrapunovs' initial theft." *Id.* at 1133. Because the voluntary expenditure of funds was only a consequential damage of the initial theft suffered in Kazakhstan, it was not causally connected to the predicate act of money laundering. *Id.* at 1134. We held that, accordingly, the plaintiff had "fail[ed] to state a cognizable injury at all." *Id.* Importantly, we noted that the plaintiff was not left without recourse in the United States: The city could "obtain[] a legal judgment anywhere in the world against Defendants," and then it "could bring that judgment to the United States and execute it against any of

Defendants' assets for the full amount of the money owed." *Id.* at 1133.

Here, Plaintiff has done exactly what we suggested the plaintiff could do in *City of Almaty*—he obtained a legal judgment and brought it to the United States to execute it against the Defendants' assets. In so doing, Plaintiff obtained domestic property in the United States—a judgment issued by a United States district court, conferring rights that Plaintiff can exercise in California. Plaintiff now alleges that Defendants engaged in RICO-violating activity (much of it in the United States) that harmed that property. Accordingly, Plaintiff has alleged an injury that is both cognizable and domestic.

Our decision is also consistent with the approaches taken by the Second and Third Circuits after *RJR Nabisco*. We part ways, however, with the Seventh Circuit, which has adopted a rigid, residency-based test for domestic injuries involving intangible property.

In *Bascuñán v. Elsaca*, 874 F.3d 806, 809 (2d Cir. 2017), a citizen and resident of Chile brought a civil RICO action against another citizen and resident of Chile. The plaintiff alleged that the defendant had fraudulently stolen $64 million from the plaintiff through four separate schemes. *Id.* at 811. The district court dismissed the case because the plaintiff had failed to allege a domestic injury. *Id.* at 813. Because the plaintiff resided in Chile, the district court reasoned, any economic loss he suffered had occurred in Chile. *Id.* at 814. The Second Circuit reversed the dismissal, concluding that the plaintiff had alleged a

SMAGIN V. YEGIAZARYAN 13

domestic injury.[2] The court reasoned that "us[ing] bank accounts located within the United States to facilitate or conceal the theft of property located outside of the United States, on its own, does not establish that a civil RICO plaintiff has suffered a domestic injury." *Id.* at 824. But when a plaintiff alleges that a defendant misappropriated "tangible property located in the United States . . . even if the owner of the property resides abroad," the plaintiff has alleged a domestic injury. *Id.* at 824–25.[3]

The Second Circuit limited its holding to tangible property, leaving for another day the question of when an injury to intangible property is domestic. *Id.* at 814 ("At a minimum, when a foreign plaintiff maintains tangible property in the United States, the misappropriation of that property constitutes a domestic injury."). But here, as in *Bascuñán*, Plaintiff's allegations go beyond Defendants' use of the United States' financial system to hide property located outside the United States. Although Plaintiff alleges, among other things, that Defendants hid assets by moving them through shell companies in the United States, his

---

[2] The *Bascuñán* court concluded that there were four distinct RICO schemes alleged in the complaint and that two of those schemes, as pleaded by the plaintiff, involved a domestic injury. *Bascuñán*, 874 F.3d at 811, 824. Nevertheless, it reversed the district court's dismissal of the complaint in its entirety because the district court had "erred in dismissing Bascuñán's Amended Complaint on the grounds that he alleged *only* foreign injuries." *Id.* at 824 (emphasis added).

[3] After reversal and remand, the plaintiffs in *Bascuñán* filed a second amended complaint, the district court dismissed the second amended complaint, and the plaintiffs appealed. *Bascuñán v. Elsaca* (*Bascuñán II*), 927 F.3d 108 (2d Cir. 2019). The Second Circuit again reversed the district court's dismissal, concluding that, with one exception, "each of the injuries alleged in the [second amended complaint] . . . calls for a domestic application of civil RICO." *Id.* at 120.

central allegation is that those predicate acts injured his right to seek property in California from a California resident under the California Judgment. Accordingly, we see no conflict between our holding and that of *Bascuñán*.

In *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 696 (3d Cir. 2018), the plaintiffs, who resided in China and owned a business in China, filed RICO claims against a multinational company with offices in the United States and England. They alleged that the defendants had "engaged in widespread bribery in China in order to obtain improper commercial advantages" and that the defendants' corrupt dealing in China eventually led to the plaintiffs' being imprisoned by Chinese authorities. *Id.* at 696–97. The district court dismissed the RICO claims because the plaintiffs failed to allege a domestic injury: "Plaintiffs' business was in China, their only offices were in China, no work was done outside of China, Plaintiffs resided in China, and . . . any destruction of Plaintiffs' business occurred while Plaintiffs were imprisoned in China by Chinese authorities." *Id.* at 697–98.

The Third Circuit affirmed, adopting a "standard that is not susceptible to mechanical application" and by which "few answers will be written in black or white." *Id*. at 707–08 (internal quotation marks omitted). The inquiry would "ordinarily include consideration of multiple factors that vary from case to case." *Id.* at 701.

> Whether an alleged injury to an intangible interest was suffered domestically is a particularly fact-sensitive question requiring consideration of multiple factors. These include, but are not limited to, where the injury itself arose; the location of the plaintiff's residence or principal place of

> business; where any alleged services were provided; where the plaintiff received or expected to receive the benefits associated with providing such services; where any relevant business agreements were entered into and the laws binding such agreements; and the location of the activities giving rise to the underlying dispute.

*Id.* at 707. In addition to noting that its list of factors is not exhaustive, the Third Circuit explained that "the applicable factors depend on the plaintiff's allegations; no one factor is presumptively dispositive." *Id.*

In adopting its standard, the Third Circuit explicitly rejected a rigid, residency-based rule developed by the Seventh Circuit. *See id.* at 708–09 ("Although the ease with which [the Seventh Circuit's] bright-line rule can be applied gives it some surface appeal, we resist the temptation to adopt it as the law of this circuit.") In *Armada (Sing.) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1091 (7th Cir. 2018), a Singaporean shipping company brought RICO claims against defendants who resided in Illinois and India. As in this case, the plaintiff alleged that the defendants had attempted to thwart a judgment issued by a United States district court that confirmed a foreign arbitration award. *Id.* at 1092. The Seventh Circuit affirmed the district court's dismissal of the case after concluding that the plaintiff had failed to allege a domestic injury. *Id.* at 1095. It distinguished *Bascuñán* on the ground that a judgment, unlike the assets at issue in *Bascuñán*, is "intangible property." *Id.* at 1094. The Seventh Circuit then concluded that "a party experiences or sustains injuries to its intangible property at its residence." *Id.* Because the plaintiff was a foreign corporation, any injury to its intangible property,

| 16 | SMAGIN V. YEGIAZARYAN |
|---|---|

even if that property is a judgment issued by a United States district court, is a foreign injury. *Id.* at 1095.

We agree with the Third Circuit that the Seventh Circuit's residency test does not align with *RJR Nabisco*. The *Armada* test strays from the Supreme Court's decision in two ways. First, the test makes the location of the *plaintiff* dispositive, when the Supreme Court stated that it is the location of the *injury* that is relevant to standing. *RJR Nabisco*, 579 U.S. at 346. Second, the Seventh Circuit's test effectively truncates the standing requirement set forth in *RJR Nabisco* if the harm is to intangible property. Rather than asking whether a plaintiff alleges "a domestic injury to its business *or property*," as the Supreme Court described, *id.* (emphasis omitted and added), the Seventh Circuit requires that a plaintiff allege a domestic injury to its business only, with the location of that business defined by the plaintiff's residence.

We also agree with the Third Circuit that determining whether a plaintiff has alleged a domestic injury is a context-specific inquiry that turns largely on the particular facts alleged in a complaint. Even though few, if any, of the listed factors in *Humphrey* are relevant here, as this case does not concern corrupt dealings between competitors, we see no conflict between the Third Circuit's ruling in *Humphrey* and our conclusion that Plaintiff has alleged a domestic injury.

Finally, we note that, in holding that Plaintiff alleges a domestic injury, we express no view on the merits of Plaintiff's claims. Nor do we assess whether the district court has jurisdiction over all parties in the action or whether Plaintiff has sufficiently alleged proximate causation for each Defendant, *Just Film, Inc.*, 847 F.3d at 1118–19. We

hold only that Plaintiff's well-pleaded allegations include a domestic injury.

**REVERSED AND REMANDED** for further **proceedings.**