MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
Asa W. Markel (Bar No. 263029)
amarkel@masudafunai.com
Jiwon J. Yhee (*pro hac vice*)
jyhee@masudafunai.com
Shane Bekian (Bar No. 343957)
sbekian@masudafunai.com
19191 South Vermont Avenue, Suite 420
Torrance, CA  90502
Telephone:  (310) 630-5900
Facsimile:  (310) 630-5909
Attorneys for Defendant Alexis Gaston Thielen

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| VITALY IVANOVICH SMAGIN,<br>        Plaintiff,<br><br>        vs.<br><br>COMPAGNIE MONÉGASQUE DE BANQUE a/k/a CMB Bank; ASHOT YEGIAZARYAN a/k/a Ashot Egiazaryan, an individual; SUREN YEGIAZARYAN a/k/a Suren Egiazaryan, an individual; ARTEM YEGIAZARYAN a/k/a Artem Egiazaryan, an individual; STEPHAN YEGIAZARYAN a/k/a Stephan Egiazaryan, an individual; VITALY GOGOKHIA, an individual; NATALIA DOZORTSEVA, an individual; MURIELLE JOUNIAUX, an individual; ALEXIS GASTON THIELEN, an individual; RATNIKOV EVGENY NIKOLAEVICH, an individual; H. EDWARD RYALS, an individual; and PRESTIGE TRUST COMPANY, LTD.,<br>        Defendants. | Case No:  2:20-cv-11236-RGK-MAA<br><br><br>**DEFENDANT ALEXIS GASTON THIELEN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Judge:  Hon. R. Gary Klausner**<br>**Date:    May 13, 2024**<br>**Time:   9:00 a.m.**<br>**Courtroom: 850, 8th Floor** |

**TABLE OF CONTENTS**

I.   **Introduction**…………………………………………………………….1

II.  **Statement of Undisputed Facts** ........................................ 1

III. **Legal Standard** .................................................................... 5

IV.  **Argument** ............................................................................. 6

  A.   Thielen is Entitled to Summary Judgment Under 18 U.S.C. §1962(c). ........... 7

    1.   No Proof of a RICO Enterprise or Evidence That Thielen Directed the Same 7

    2.   There is No Proof of Requisite Pattern of Racketeering Activity. ................. 11

      a.   Closed-Ended Continuity .................................................. 13

      b.   Open-Ended Continuity ..................................................... 14

    3.   The Predicate Acts Fail ...................................................... 15

      a.   No Evidence of Specific Intent ...................................... 16

      b.   Extraterritorial Communications ................................. 17

    4.   No Evidence of Proximate Cause ....................................... 18

    5.   No Standing ....................................................................... 19

  B.   Thielen is Entitled to Summary Judgment Under 18 U.S.C. §1962(d). ......... 20

# TABLE OF AUTHORITIES

## CASES

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143, 154 (1987) ........................................................................... 11

*Allwaste, Inc. v. Hecht*,
   65 F.3d 1523, 1530 (9th Cir. 1995) ........................................................... 12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 248 (1986) ............................................................................. 6

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir.1993) .................................................................... 8, 20

*Bulan v. JP Morgan Chase Bank*,
   No. C-10-05952 EDL, 2011 WL 13266527, at * (N.D. Ca. Apr. 6, 2011) ............ 20

*Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
   818 F.2d 1466, 1468 (9th Cir. 1987) ........................................................... 6

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 323 (1986) ............................................................................. 6

*Concorde Equity II, LLC v. Miller*,
   732 F. Supp. 2d 990, 998 (N.D. Cal. 2010) ............................................... 12

*Couch v. Cate*,
   379 Fed.Appx. 560, 565 (9th Cir. 2010) ................................................... 18

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
   528 F.3d 1001, 1027 (8th Cir. 2008) ........................................................... 7

*DeFalco v. Bernas*,
   244 F.3d 286, 306 (2d Cir. 2001) ................................................................. 7

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*,
   924 F. Supp. 449, 466 (S.D.N.Y. 1996) (citing *Baumer*, 8 F.3d at 1341) .............. 10

ii

*Dorian v. Harich Tahoe Dev.*,
  No. C-94-3387 DLJ, 1996 WL 925859, at *10 (N.D. Cal. Jan. 16, 1996)............. 20

*Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*,
  751 F.3d 990, 997 (9th Cir. 2014)............................................................. 7

*Efron v. Embassy Suites (P.R.), Inc.*,
  223 F.3d 12, 20 (1st Cir. 2000) ............................................................... 15

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ............................................................................. 11

*Hahn v. Rothman*,
  No. 09-cv-0249-ODW, at *4 (C.D. Cal. Jan. 12, 2010) ........................................ 12

*Hamilton v. Willms,*
  No. CV F 02 6583 AWI SMS, 2005 WL 3797562, at *7 (E.D. Cal. Oct. 28, 2005) 9

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1, 9 (2010) ......................................................................... 18, 19

*High v. Choice Mfg. Co.*,
  No. C-11-5478 EMC, 2012 WL 3025922, at *8 (N.D. Cal. July 24, 2012)............ 10

*Howard v. Am. Online Inc.*,
  208 F.3d 741, 751 (9th Cir. 2000)........................................................... 20

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) ........................................... 7

*Kan-Di-Ki, LLC v. Sorenson*,
  723 F. App'x 432, 434 (9th Cir. 2018) ..................................... 7, 12, 14

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.2d 397, 404 (9th Cir. 1991); *Best Deals on TV, Inc. v. Naveed*, No. C 07–
  1610 SBA, 2007 WL 2825652, at *8 (N.D. Cal. Sept. 26, 2007) ........................... 16

*Marshall v. Goguen*,
  604 F. Supp. 3d 980, 1011 (D. Mont. 2022), appeal dismissed, 2023 WL 4230375
  (9th Cir. Apr. 7, 2023)................................................................... 14

*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*,

    833 F.2d 1360, 1363 (9th Cir. 1987)................................................................. 12

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,

    No. 18-CV-02539-HSG, 2019 WL 1048252, at *10 (N.D. Cal. Mar. 5, 2019) ...... 11

*Odom v. Microsoft Corp.*,

    486 F.3d 541, 547 (9th Cir. 2007)...................................................................... 7

*Palantir Techs. Inc. v. Abramowitz*,

    2021 WL 2400979, at *6-7 (N.D. Cal. June 11, 2021)........................................ 14

*Reves v. Ernst & Young*,

    507 U.S. 170, 179 (1993) ................................................................................. 8

*Richardson v. Reliance Nat. Indem. Co.*,

    No. C 99-2952 CRB, 2000 WL 284211, at *9 (N.D. Cal. Mar. 9, 2000)............... 13

*RJR Nabisco, Inc. v. Eur. Cmty.*,

    579 U.S. 325, 337 (2016) ................................................................................. 18

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*,

    690 F.2d 1235, 1238 (9th Cir. 1982).................................................................. 6

*Sever v. Alaska Pulp Corp.*,

    978 F.2d 1529, 1535 (9th Cir. 1992).................................................................. 12

*Silver Screen Films, Inc. v. Hollywood Media Venture, LLC*,

    No. 2:22-CV-08901-SB-SSC, 2023 WL 8938398, at *1 (C.D. Cal. Nov. 20, 2023)

    ........................................................................................................... 17, 20

*Tatung Co., Ltd. v. Shu Tze Hsu*,

    217 F. Supp. 3d 1138, 1170 (C.D. Cal. 2016) ................................................... 16

*United Energy Owners Committee, Inc. v. U.S. Entergy Mgmt. Sys.*, Inc.,

    837 F.2d 356, 360 (9th Cir. Cir. 1988) ............................................................. 12

*United States v. Brugnara*,

    856 F.3d 1198, 1207 (9th Cir. 2017).................................................................. 16

*United States v. Sidorenko*,

    102 F. Supp. 3d 1124, 1129, 1132 (N.D. Cal. 2015) ................................. 18

*Villiarimo v. Aloha Island Air, Inc.*,

    281 F.3d 1054, 1061 (9th Cir. 2002) ........................................................ 6

*W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,

    235 F.3d 629, 636-37 (D.C. Cir. 2001) ................................................... 15

*Walter v. Drayson*,

    538 F.3d 1244, 1248-49 (9th Cir. 2008) ................................................... 9

*Webster v. Omnitrition International*,

    79 F.3d 776 (9th Cir.1996) ....................................................................... 9

*Wellpoint*,

    865 F. Supp. 2d at 1034 ............................................................................ 8

*Zimmie v. Warner*,

    No. CV 21-07853 AFM, at *4 (C.D. Cal. Feb. 15, 2022) ................... 13, 14

**STATUTES**

18 U.S.C. § 1961(1) ....................................................................................... 15

18 U.S.C. § 1962(c) ................................................................................... 6, 11

18 U.S.C. §§ 1961(4) & 1962(c) ............................................................... 7, 10

18 U.S.C. §1962(d) ........................................................................................ 19

**RULES**

Fed. R. Civ. P. 56(a) .................................................................................. 5, 20

## I.      INTRODUCTION

Plaintiff dedicated a lengthy 104 pages for his Corrected Third Amended Complaint, but he made very few allegations about Thielen. Discovery has revealed why: Plaintiff simply has no direct proof that Thielen engaged in any misconduct. In just over a one-month period, when Thielen believed that he the right and duty to do so, Thielen took three actions as the Interim Protector of the Alpha Trust. Thielen has testified that he was unaware of and never agreed to engage in fraudulent conduct to deprive Plaintiff of anything that he was entitled to receive.

Plaintiff has no evidence to rebut Thielen's testimony. His star witness, Evgeny Viktorovich Novichikhin ("Novichikhin"), admits that he does not know whether Thielen knew his appointment was "false" and admits he has no direct knowledge about Thielen. Plaintiff also has very little direct knowledge or information about Thielen, as shown in his deposition. As discussed below, Plaintiff has failed to show the existence of an enterprise, that Thielen engaged in predicate acts, that there was a pattern of racketeering, that there was more than a single victim or that Thielen's actions were the proximate cause of any injury suffered by Plaintiff, who lacks standing due to his assignment of his rights.  Thielen is entitled to summary judgment as to both counts of the Corrected Third Amended Complaint.

## II.      Statement of Undisputed Facts

In support of Thielen's Motion for Summary Judgment, Thielen's Statement of Uncontroverted Facts ("SOF") has been filed herewith and is incorporated by reference. Vitaly Smagin ("Plaintiff") is an individual Russian citizen residing in Moscow. (SOF ¶1.) Defendant Ashot Yegiazaryan ("Yegiazaryan") is an individual residing at 655 Endrino Place, Beverly Hills, California 90201. (SOF ¶2.) Between 2003 and 2009, Yegiazaryan allegedly perpetrated a scheme to steal Plaintiff's shares in a real estate investment in Moscow. (Corrected Third Amended Complaint, Doc. 280-1 ¶35, "TAC") In October 2010, Plaintiff commenced an arbitration proceeding in London against Yegiazaryan. (TAC ¶27.) On November 11, 2014, the Arbitration panel rendered an award for Plaintiff and against Yegiazaryan for $84,290,064.20, plus interest ("London Award").  (TAC ¶27), which was confirmed by a California Court in 2016.  (TAC ¶28.)

On May 26, 2015, in an unrelated matter, Yegiazaryan received a $198 million dollar settlement, referred to as the Kerimov Award. (TAC ¶45.) The Alpha Trust is a Liechtenstein trust that was formed by Yegiazaryan and CTX Treuhand AG on May 27, 2015. (TAC ¶19.) Yegiazaryan funded the Alpha Trust with the Kerimov Award. The funds reside in an account at Defendant Compagnie Monégasque de Banque ("CMB"), with the funds held in the name of Savannah Advisors, Inc. (TAC ¶19.) Yegiazaryan was the original Protector of the Alpha Trust with the power to appoint and remove Trustees. (*Id.*)

2

Defendant Alexis Gaston Thielen ("Thielen") is an individual residing in Luxembourg. (SOF ¶3.) He is a member of the Luxembourg Bar and is not admitted to practice law in any other jurisdiction. (SOF ¶4.)

In late March 2020, Thielen was introduced to Yegiazaryan by his client, Sergei Pugachev ("Pugachev"). (SOF ¶11.) Pugachev said Plaintiff had obtained an arbitral award in the amount USD $72 million against Yegiazaryan. (SOF ¶12.) Yegiazaryan had offered to settle the debt, but Smagin refused and wanted to use the judgment to seize the entirety of the Alpha Trust. (SOF ¶12.) Pugachev said Yegiazaryan wanted help with understanding documents issued by a court written in German. (SOF ¶13.) Thielen said he is not licensed to practice law in Liechtenstein. *Id.* The initial scope of Thielen's engagement was to review the German-language documents and refer Yegiazaryan to an attorney in Liechtenstein. (SOF ¶15; 17.)

On or about April 3, 2020, Yegiazaryan nominated Thielen to become the Protector of the Alpha Trust if Yegiazaryan died or became disabled. (SOF ¶18; Exhibit 57 to the Second Amended Complaint ("SAC"), Doc. 221-2.) Thielen believed that Yegiazaryan was the lawful Protector of the Alpha Trust and had the right and power to nominate a substitute Protector and appoint trustees. (SOF ¶19.) He understood that he had no powers or obligations as the named nominee Protector. (SOF ¶20)

In September 2020, Thielen was told that Yegiazaryan was in poor health and wanted to appoint Thielen as Interim Protector. Thielen had a videoconference call with Yegiazaryan, who was in a hospital bed with various tubes and monitors attached. (SOF ¶25.) On September 23, 2020, by the Written Notice of Transfer of the Powers of the Protector in the Event of Disability of the Alpha Trust, Yegiazaryan delegated the powers of the Protector of the Alpha Trust to Thielen. (SOF ¶26.) Thielen did not know that there was a final decision in effect granting Plaintiff the power to appoint trustees.  (SOF ¶19.)

Thielen was told that the trustees appointed by Plaintiff, Rudolf Schächle and Raphael Näscher, were trying to transfer all the funds out of the Alpha Trust. (SOF ¶30.) After receiving a legal opinion regarding his authority as Protector, Thielen executed the Instrument of Removal (SOF ¶¶29; 31.) On October 30, he also approved the Written Instrument of Share Transfer signed by Dozortseva and Murielle Journiaux (SOF 35.) At all times, Thielen acted in good faith and did what he believed was in the best interest of the trust. (SOF ¶37.)

Neither Plaintiff or Novichikhin ever spoke to, met, or communicated with Thielen. (SOF ¶¶54-55, 60.) Plaintiff does not know who drafted the Instrument of Removal and the Written Instrument of Share Transfer, which are the only documents that Plaintiff complains of with respect to Thielen (collectively, "Documents"). (SOF ¶¶65, 68, 87.) Plaintiff does not have any information that Thielen filed or presented

the Documents to any court or bank, or instructed Defendant Dozortseva to do so. (SOF ¶¶69-71.) Although Thielen emailed the Instrument of Removal to Schächle and Näscher, Plaintiff does not believe that these individuals were deceived by the document. (SOF ¶¶73-74.) Plaintiff has no evidence that Thielen knew these Documents were fraudulent when he signed them. (SOF ¶66.) Novichikhin never paid attention to anything related to Thielen and has no knowledge or information that Thielen himself knew that his appointment as Protector was false. (SOF ¶57.) Plaintiff does not know if any of his attorneys ever sent Thielen a copy of the March and September 2020 orders entered by the Liechtenstein courts or Judge Klausner's September 16, 2020 contempt order against Yegiazaryan. (SOF ¶¶75-77.)

Further, a substantial portion of Plaintiff's claims were assigned to a third party. (SOF ¶80). Plaintiff knew that the Alpha Trust's funds exceeded the amounts owed him for the London Award. (SOF ¶ 81.) Nevertheless, Plaintiff's trustees attempted to transfer *all* of the Alpha Trust's funds to another bank in 2020. (SOF ¶ 82.)

## III.   **Legal Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where the resolution of that fact "might affect the outcome of the suit under the governing law," and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). The non-moving party must show that there are "genuine factual issues that ... may reasonably be resolved in favor of either party." *Id.*

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See Id.* "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 248–49). Moreover, "uncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

**IV.   Argument**

**A.**     **Thielen is Entitled to Summary Judgment Under 18 U.S.C. §1962(c).**

To state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kan-Di-Ki, LLC v. Sorenson*, 723 F. App'x 432, 434 (9th Cir. 2018) (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007)).  "In addition, the conduct must be the proximate cause of harm to the victim." *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). The requirements of 1962(c) must be established as to each individual defendant. *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008); *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). "The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise . . .." *Craig*, 528 F.3d at 1027; *DeFalco*, 244 F.3d at 306; *see also, In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011). Plaintiff has failed to present evidence of any of the elements of RICO.

**1.**     **No Proof of a RICO Enterprise or Evidence That Thielen Directed the Same**

Plaintiff alleges that Savannah Advisors is a legal entity and constitutes the "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c). (TAC ¶182.)  It is undisputed that Thielen never conducted, participated in, engaged in, operated or managed (directly or indirectly) the affairs of Savannah Advisors. (SOF ¶59) In the

alternative, Plaintiff alleges that "Ashot Yegiazaryan, Suren, Artem Gogokhia, Stephan, Dozortseva, Jouniaux, Ratnikov, Thielen, CMB Bank, Prestige, and Ryals (*or any subset thereof*) constituted an 'enterprise'." (TAC ¶183.)(emphasis added). But, Plaintiff has failed to identify or establish any alleged enterprise or that Thielen directed such "enterprise".

The Supreme Court has held that an association-in-fact enterprise must have structure and have must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. Boyle v. United States, 556 U.S. 938, 944-46 (2009). The Supreme Court has stated that liability for participating in the conduct of a RICO enterprise extends only to those who "have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "More is required than 'simply being involved.'" *Wellpoint*, 865 F. Supp. 2d at 1034. The Ninth Circuit first addressed the "conduct or participate" requirement of § 1962(c) under *Reves* in *Baumer v. Pachl*, 8 F.3d 1341 (9th Cir.1993). In *Baumer*, the allegedly fraudulent scheme began in 1976 and continued until 1987. *Baumer*, 8 F.3d at 1344. Defendant Pachl, an attorney, allegedly became involved in the scheme in 1982 when he wrote several letters and allegedly "knowingly filed a false partnership agreement." *Id.* at 1342. His role thereafter was at best sporadic. Based on these facts, the Court held Pachl at no time held any formal position in the limited partnership. Nor did he

play any part in directing the affairs of the enterprise. "Whether Pachl rendered his services well or poorly, properly or improperly, is irrelevant to the *Reves* test." *Id.* at 1344.

Here, the alleged fraudulent scheme began in 2003 and Thielen's involvement in the same was limited to his actions as Interim Protector from September 23, 2020 to October 30, 2020, a period of just over a month. The facts are undisputed that Thielen did not occupy a position in a chain of command through which the affairs of the enterprise are conducted and did not knowingly implement the decisions of upper management. Nor was his participation "indispensable to [the] achievement of the enterprise's goal," and he never exerted control "by anything akin . . . to bribery." *Walter v. Drayson*, 538 F.3d 1244, 1248-49 (9th Cir. 2008); s*ee also Hamilton v. Willms,* No. CV F 02 6583 AWI SMS, 2005 WL 3797562, at *7 (E.D. Cal. Oct. 28, 2005) ("Courts have held that it is not sufficient to merely take directions and perform tasks that may be necessary or helpful to a RICO enterprise."); *Webster v. Omnitrition Int'l*, 79 F.3d 776 (9th Cir.1996) (granting summary judgment in favor of the defendant attorney, where, even though the attorney held a position within the company and allegedly used that position to promote the enterprise, the plaintiff did not produce any facts refuting the attorney's assertion that his role was ministerial and did not give him authority to direct the enterprise's affairs). Moreover, "having influence over the enterprise is not enough" to establish such control. *High v. Choice Mfg. Co.*, No. C-11-

5478 EMC, 2012 WL 3025922, at *8 (N.D. Cal. July 24, 2012). There is a "difference between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under *Reves.*" *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 924 F. Supp. 449, 466 (S.D.N.Y. 1996) (citing *Baumer*, 8 F.3d at 1341).

Plaintiff rests solely on the conclusory allegations of his Complaint. Thielen, through an interrogatory, asked Plaintiff to state with particularity the factual basis for the contention that Thielen conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering. Plaintiff could not and responded by merely referring Thielen to the Third Amended Complaint and the Exhibits thereto. A copy of Smagin's Responses to Thielen's Interrogatories is attached to the Declaration of Asa Markel. Clearly, Plaintiff has no proof to substantiate his baseless allegations.

The testimony of Evgeny Viktorovich Novichikhin, Plaintiff's star witness and an attorney who submitted a witness statement and a declaration to provide a "detailed account of the enterprise's schemes," attached as exhibits to the TAC, does not help Plaintiff's case.  (TAC ¶70, SAC Ex. 50, Doc. 220-6). However, in his deposition, Novichikhin admitted that his statements in his declaration and witness statement regarding Thielen were incorrect, obtained secondhand and without foundation. He testified that he never met Thielen, never communicated with him or exchanged letters or messages with Thielen. (SOF ¶53). Novichikhin does not know if Thielen even knew

10

his appointment as a Protector was false (SOF ¶56); and has no knowledge regarding any payments made to Thielen (SOF ¶57).

## 2. There is No Proof of Requisite Pattern of Racketeering Activity.

The disputed record is devoid of any proof that Thielen engaged in a pattern of racketeering activity. The heart of a RICO claim is a pattern of racketeering activity. *See, Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 154 (1987). RICO defines "racketeering activity" to include carrying out one of the predicate acts listed in the statute (18 U.S.C. § 1961(1)). "To allege a 'pattern of racketeering activity,' a plaintiff must plead that 'the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *Kan-Di-Ki, LLC v. Sorenson*, 723 F. App'x 432, 434 (9th Cir. 2018) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)). To establish continuity, a plaintiff must show "either a closed period of repeated conduct that persisted over a substantial period of time (closed-ended continuity) or past conduct that by its nature projects into the future with a threat of repetition (open-ended continuity)." *Id*. Merely proving two predicate acts does not establish a pattern. *Id.*

"[T]he Ninth Circuit has explained that activity spanning only a matter of months, involving a single victim, with a singular goal, cannot sustain a RICO claim." *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-CV-02539-HSG, 2019 WL 1048252, at *10 (N.D. Cal. Mar. 5, 2019). In other words, there can be no "pattern of racketeering

activity," whether through "open-ended" or "closed-ended" continuity, when the RICO

predicate conduct was focused on a singular plan, occurring over a relatively short

period of time with a fixed end point, and only one or a small handful of victims. *See*

*Kan-Di-Ki*, 723 F. App'x at 434 (finding no pattern where the scheme lasted ten months

and "involved a limited number of participants and a limited number of alleged actual

victims [three]"); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992)

(single-victim cases with a single episode—*regardless of the alleged number of actual*

*acts*—and a single purpose do not meet the continuity requirement); *United Energy*

*Owners Committee, Inc. v. U.S. Energy Mgmt. Sys.*, Inc., 837 F.2d 356, 360 (9th Cir.

Cir. 1988)(same); *Medallion Television Enterprises, Inc. v. SelecTV of Cal., Inc.*, 833

F.2d 1360, 1363 (9th Cir. 1987)(same).

The "pattern" element must be judged only on the actual RICO predicate activity

alleged in the complaint. *H.J. Inc.*, 492 U.S. at 240; *Hahn v. Rothman*, No. 09-cv-0249-

ODW, at *4 (C.D. Cal. Jan. 12, 2010). When determining whether a pattern has been

established against a particular defendant, courts consider only the predicate offenses

alleged against that individual defendant. See, *Allwaste, Inc. v. Hecht*, 65 F.3d 1523,

1530 (9th Cir. 1995) (finding a pattern against some defendants, but not others who

were alleged only to have committed isolated predicate acts); *Concorde Equity II, LLC*

*v. Miller*, 732 F. Supp. 2d 990, 998 (N.D. Cal. 2010).

### a.   Closed-Ended Continuity

Closed-ended continuity is not present in cases such as this one, involving a single scheme with a single victim. Plaintiff is the only victim identified in the TAC, and the scheme alleged in the TAC sets forth a singular purpose—to prevent him from obtaining money from a trust account. Moreover, the predicate acts alleged against Thielen only extend a period of just over a month, from September 23, 2020 to October 30, 2020. Plaintiff fails to allege two predicate acts against Thielen extending over a "substantial period of time." See, *Kan-Di-Ki*, 723 at 434; *Mocha Mill*, 2019 WL 1048252, at *10 (no pattern where the scheme lasted one year with a single victim and singular goal).

This Court should conclude that Plaintiff has failed to establish closed-ended continuity ***against Thielen***, as courts routinely do when a scheme's duration, scope, and small number of victims, taken together, demonstrate that the RICO activity simply is not extensive enough to amount to a continuous pattern. See, e.g, *Zimmie v. Warner*, No. CV 21-07853 AFM, at *4 (C.D. Cal. Feb. 15, 2022) (finding no pattern, where even though the predicate acts extended over a period of two years, the allegations concerned "a single episode with a single purpose aimed at a single individual rather than a pattern of predicate acts."); *Richardson v. Reliance Nat. Indem. Co.,* No. C 99-2952 CRB, 2000 WL 284211, at *9 (N.D. Cal. Mar. 9, 2000) (finding no pattern where,

13

even though the predicate acts spanned a period of 35 months, "defendants' scheme had a single victim-plaintiff-and a single goal.")

### b.    Open-Ended Continuity

Nor is this a case in which Plaintiff can establish a "pattern" against Thielen through open-ended continuity, which "is established by showing either that the predicate acts include a specific threat of repetition extending indefinitely into the future or that the predicate acts were part of an ongoing entity's regular way of doing business." *Palantir Techs. Inc. v. Abramowitz*, 2021 WL 2400979, at *6-7 (N.D. Cal. June 11, 2021). "Only predicate acts can form the basis of an open-ended continuity allegation." *Id.* at *9 (emphasis in original). As with closed-ended continuity, Plaintiff cannot establish open-ended continuity against Thielen by relying on the predicate acts alleged against other defendants. *See Marshall v. Goguen*, 604 F. Supp. 3d 980, 1011 (D. Mont. 2022), appeal dismissed, 2023 WL 4230375 (9th Cir. Apr. 7, 2023) ("plaintiffs cannot manufacture continuity by simply relying on the continuous conduct of the other defendants.")

Plaintiff has not set forth any evidence showing any sort of regularity **as to Thielen's conduct**. Cf., *Kan-Di*, 723 at 434; *Zimmie*, No. CV 21-07853 AFM, at *5 (allegations that the defendant used a fraudulent power of attorney "to perpetrate his RICO actions" were insufficient for open-ended continuity because the claim was based on a single act of fraud with a singular purpose).

14

Here, the isolated acts alleged against Thielen were allegedly done with a singular purpose, e.g., Thielen "fraudulently misrepresent[ed] his authority to the valid Trustees … to prevent recovery Savannah Advisors' assets from CMB Bank." (TAC ¶120) Plaintiff's claim that Thielen somehow obstructed justice by misrepresenting his authority, does not change the fact that the alleged actions served a single purpose. There are no allegations to suggest that this was anything other than a one-time scheme. There is no evidence that the predicate acts were part of Thielen's regular way of doing business. Nor is there any evidence that the predicate acts alleged against Thielen include a specific threat of repetition extending indefinitely into the future. Accordingly, this Court should conclude that Plaintiff has failed to establish a pattern against Thielen.

### 3.   The Predicate Acts Fail

Plaintiff also fails to show that Thielen actually engaged in any predicate acts based on mail or wire fraud. All "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 636-37 (D.C. Cir. 2001) (quoting *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)). Here, Plaintiff's allegations of mail and wire fraud fall well short of the conduct required to state a RICO claim, and in any event are impermissibly extraterritorial.

Plaintiff alleges that Thielen: (1) signed a fraudulent Notice of Transfer of Powers of the Alpha Trust on April 3, 2020, which he returned to Yegiazaryan by wire (TAC ¶117), (2) accepted the appointment as Interim Protector due to Yegiazaryan's disability (TAC ¶118), (3) executed an Instrument of Removal on October 28, 2020 (TAC ¶119), and emailed the Instrument of Removal to Trustees Schächle and Näscher on October 30, 2020. (TAC at ¶ 120)  But, as shown below, none of these actions are sufficient to qualify as predicate acts under RICO.

### a.    No Evidence of Specific Intent

To state a RICO claim based on either mail or wire fraud, a plaintiff must plead "(1) a scheme to defraud, (2) the use of either the mail or wire, radio, or television to further the scheme, and (3) the specific intent to defraud." *U.S. v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017). If the alleged predicate requires a plaintiff to prove intent, then a defendant will not be liable under RICO unless the plaintiff proves intent. *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991); *Best Deals on TV, Inc. v. Naveed*, No. C 07–1610 SBA, 2007 WL 2825652, at *8 (N.D. Cal. Sept. 26, 2007) (dismissing RICO claim where plaintiff could not prove an intent to commit the predicate act of money laundering); *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1170 (C.D. Cal. 2016) (granting summary judgment on §1962(c) claim, where plaintiff "failed to identify evidence supporting its assertion that [defendant] committed predicate acts of mail/wire or money laundering.")

In *Silver Screen Films, Inc. v. Hollywood Media Venture, LLC*, No. 2:22-CV-08901-SB-SSC, 2023 WL 8938398, at *1 (C.D. Cal. Nov. 20, 2023), the plaintiff sued defendant and his attorneys for taking millions of dollars from him. *Id.* The attorneys moved for summary judgment on plaintiff's RICO claims. The Court entered summary judgment for the attorneys on the 1962(c) claim because "there is no evidence that [defendants] even knew about their clients' wrongdoing at the time, much less that the email was part of a scheme in which the lawyers participated to defraud Plaintiff." *Id.* Likewise, the 1962(d) claim was dismissed because the attorneys were "unaware of any improper business at the relevant time precludes a finding that he was aware of a criminal enterprise and agreed to participate in it." *Id.*

There exists no evidence or testimony here that would support a finding that Thielen had the "specific intent to defraud," nor can that intent be inferred from the actions that Thielen took. The undisputed record shows that, when Thielen took these actions, he believed that Yegiazaryan had the power to appoint him as Protector, that Plaintiff's appointed trustees were trying to obtain more than Plaintiff was entitled to obtain and that he was acting in the best interests of the Alpha Trust (SOF ¶¶19, 32, 35, 36).

### b.    Extraterritorial Communications

Because mail and wire fraud statutes do not apply extraterritorially, Plaintiff can assert them as predicate acts only "[i]f the conduct relevant to the statute's focus

occurred in the United States[.]" *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016); *see also U.S. v. Sidorenko*, 102 F. Supp. 3d 1124, 1129, 1132 (N.D. Cal. 2015) (wire fraud statute not extraterritorial). Plaintiff has presented no evidence sufficient to create a question of fact as to whether any of the predicate acts alleged against Thielen had a domestic nexus. The funds were in Monaco, the trustees are in Liechtenstein and Thielen's emails were sent from and received in Europe. It is undisputed that Thielen sent the Notice of Transfer of Powers by email to Natalia Dozortseva, who was in France; that his acceptance of the interim appointment occurred in Luxembourg, and that Schächle and Näscher were in Liechtenstein. (SOF ¶33).

### 4. No Evidence of Proximate Cause

Next, the undisputed record shows that Plaintiff cannot establish proximate case. "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a but for cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010). The central question "is whether the alleged violation led directly to the plaintiff's injuries." *Id.* at 12. The plaintiff must show that the predicate acts "are the proximate, and not just foreseeable, causes of the [alleged] injuries." *Couch v. Cate*, 379 Fed.Appx. 560, 565 (9th Cir. 2010). A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Hemi*, 559 U.S. at 9. Where "[m]ultiple steps separate the alleged fraud

from the asserted injury," civil RICO liability cannot rest on "the independent actions of third and even fourth parties." *Hemi*, 559 U.S. at 3.

Here, Plaintiff alleges that the Monaco court froze the funds based on "misrepresentations and fraudulent omissions from CMB Bank[.]" (TAC ¶96.) In other words, Plaintiff alleges that the funds were frozen based on the independent actions of a third party. In its November 9, 2020 order, the Monaco Court does not refer to Thielen or any documents purported submitted or signed by Thielen. (TAC Exhibit 56; ECF 221-1.) Accordingly, no reasonable fact-finder could conclude that the alleged predicate acts of Thielen were a "but for" cause, let alone a proximate cause, of the injury to Plaintiff's property interest.

### 5.   <u>No Standing</u>

Plaintiff filed the TAC seeking an award of $170 million, plus interest. (TAC ¶196.) Yet, at his April 9, 2024 deposition, Plaintiff admitted that he assigned the majority of his current claims to a third party.[1] The assignment bars Plaintiff's RICO claims because he seeks to recover the same monies against the defendants that the assignee is entitled to pursue under the assignment. *See Silver Screen Films, Inc. v. Hollywood Media Venture, LLC*, No. 2:22-CV-08901-SB-SSC, 2023 WL 8938398, at

---

[1] On April 10, 2024, Plaintiff designated certain portions of his deposition transcript as "Confidential" pursuant to the Protective Order entered in this case, including his testimony regarding the assignment. Therefore, Thielen shall file a motion to file the relevant pages of Plaintiff's deposition under seal, while reserving the right to object to the designation.

*4 (C.D. Cal. Nov. 20, 2023) (entering summary judgment on RICO claims where the plaintiff assigned its rights to a third party.)

**B.      Thielen is Entitled to Summary Judgment Under 18 U.S.C. §1962(d).**

As Plaintiff has failed to establish the requisite substantive elements of his Section 1962(c) claim against Thielen, Thielen is entitled to summary judgment on the Section 1962(d) claim. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). "From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements . . . an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts." *Baumer*, 8 F.3d at 1346. "There must be a mutual understanding between the co-conspirators, and the plaintiff must provide specific facts that indicate this mutual understanding." *Dorian v. Harich Tahoe Dev.*, No. C-94-3387 DLJ, 1996 WL 925859, at *10 (N.D. Cal. Jan. 16, 1996); *see Bulan v. JP Morgan Chase Bank*, No. C-10-05952 EDL, 2011 WL 13266527, at * (N.D. Ca. Apr. 6, 2011). "A RICO conspiracy requires the assent of each defendant who is charged." *Baumer*, 8 F.3d at 1346.  In addition, a Section 1962(d) claim "requires a showing that [the] defendant was aware of the essential nature and scope of the enterprise and intended to participate in it." *Id.* As discussed above, even if Yegiazaryan was the mastermind of a scheme the undisputed evidence is that Thielen had no knowledge of the fraudulent scheme and therefore, could not, and did not, agree or conspire with Yegiazaryan or anyone.

WHEREFORE, Defendant Alexis Gaston Thielen respectfully requests that the Court grant Thielen's Motion for Summary Judgement pursuant to FRCP 56(a), enter judgment in favor of Thielen and against Plaintiff Smagin on both counts and such further relief that the Court deems just and appropriate.

DATED:  April 10, 2024

                                                Respectfully Submitted,

                                                **MASUDA, FUNAI, EIFERT, & MITCHELL, LTD.**

                                       By: /s/ Jiwon J. Yhee
                                                Asa W. Markel
                                                Jiwon J. Yhee
                                                Shane E. Bekian

                                       Attorneys for Defendant Alexis Gaston Thielen

21

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Alexis Gaston Thielen, certifies that this brief contains less than 5,600 words, which complies with the word limit set by Judge R. Gary Klausner's Standing Order dated May 2023. Counsel relies on the word count of the computer program used to prepare this brief.

DATED:  April 10, 2024          MASUDA, FUNAI, EIFERT & MITCHELL, LTD.


                                By: /s/ Jiwon J. Yhee
                                    Asa W. Markel
                                    Jiwon J. Yhee
                                    Shane E. Bekian

                                Attorneys for Defendant Alexis Gaston Thielen

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the City of Torrance, County of Los Angeles, State of California.  I am over the age

4

of 18 years and not a party to the within action.  My business address is 19191 South Vermont Avenue, Suite 420, Torrance, California, 90502.  On the date signed below, I served the documents named below on the

5

parties in this action as follows:

6

**DEFENDANT ALEXIS GASTON THIELEN'S MEMORANDUM OF**

7

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY**

8

**JUDGMENT**

Upon the parties named below as follows:

9

See attached service list.

10

11

☐ (BY MAIL WHERE INDICATED) I caused the above referenced document(s) to be placed in an

12

envelope, with postage thereon fully prepaid, and placed in the United States mail at Torrance, California.  I am readily familiar with the practice of the firm for collection and processing of

13

correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.  I am aware

14

that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

15

☐ (BY FACSIMILE WHERE INDICATED)  The above-referenced document(s) was/were transmitted

16

by facsimile transmission and the transmission was reported as complete and without error.  Pursuant

17

to Rule 2001 et. seq. of the Cal. Rules of Court, I caused the transmitting facsimile machine to issue properly a transmission report, a copy of which is attached to this Declaration, unless service by

18

facsimile transmission was executed as a matter of professional courtesy.

19

☐ (BY PERSONAL SERVICE WHERE INDICATED) I caused the above-referenced document(s) to be personally delivered to the person and/or the address listed above.

20

☒ (BY ELECTRONIC TRANSMISSION WHERE INDICATED) I caused the above-referenced

21

document(s) to be transmitted electronically to the interested parties in this action to their most recently known email address, via email.

22

☒ (STATE)  I declare under penalty of perjury under the laws of the State of California that the above

23

is true and correct.

24

☒ (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court, at

25

whose direction this service was made.

26

Executed on April 10, 2024 at Torrance, California.

27

28

Yuko Perdue

Service List:

Nicholas O. Kennedy, Esq.                    nicholas.kennedy@bakermckenzie.com
Baker & McKenzie LLP
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
*Attorneys for Plaintiff*
(via CM/ECF)

Barry J. Thompson, Esq.                      barry.thompson@bakermckenzie.com
Thomas A. D. Tysowsky, Esq.                  thomas.tysowsky@bakermckenzie.com
Baker & McKenzie LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067
*Attorneys for Plaintiff*
(via CM/ECF)

Kevin M. Askew, Esq.                         kaskew@orrick.com
Orrick Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
*Attorneys for Defendant Compagnie Monégasque de Banque*
(via CM/ECF)

Michael C. Tu, Esq.                          mctu@cooley.com
Sharon Soohyun Song                          ssong@cooley.com
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, California 90071
Telephone: (213) 561-3250
Facsimile: (213) 561-3244
*Attorneys for Defendant CMB MONACO (f/k/a COMPAGNIE MONÉGASQUE DE BANQUE)*
(via CM/ECF)

Mazda K. Antia, Esq.                         mantia@cooley.com
Cristina M. Ferruolo, Esq.                   cferruolo@cooley.com
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420
*Attorneys for Defendant CMB MONACO (f/k/a COMPAGNIE MONÉGASQUE DE BANQUE)*
(via CM/ECF)

Artem Egiazaryan                             artem3artem@gmail.com
342 Hauser Boulevard, Apt. 429
Los Angeles, California 90036
*Defendant pro se*
(via CM/ECF)

Proof of Service

1
2   John M. Genga, Esq.                          jgenga@gengalaw.com
    Genga & Associates, P.C.
3   16501 Ventura Blvd., Suite 400
    Encino, CA 91436
4   *Attorneys for Defendant Ashot Yegiazaryan*
    (via CM/ECF)
5
    Khurram A. Nizami, Esq.                      khurram@nizamilaw.com
6   Law Office of Khurram A. Nizami
    22287 Mulholland Hwy., #355
7   Calabasas, CA 91302
    *Attorneys for Defendant Suren Egiazaryian*
8   (via CM/ECF)
9
    H. Edward Ryals                              ed@stlouisfamilylawgroup.com
10  7501 Murdoch Avenue
    St. Louis, Missouri 63119
11  Tel: (314) 926-0939
    Defendant pro se
12  (via e-mail)
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Proof of Service